**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN,<br>BRAUN IP LAW, LLC &<br>LAUREN PROPSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | Hon. J. |
| REBEKAH M. DAY NEE BOX,<br>KC THE OWNER & OPERATOR OF THE<br>ONLINE SOCIAL MEDIA ACCOUNT<br>@CAFFINATEDKITTI,<br>LILY MARSTON, &<br>JESSICA VAZQUEZ, | ) ) ) ) ) ) ) | Mag. J. |
| Defendants. | ) ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Jeanette Braun ("Attorney Braun"), Braun IP Law, LLC ("Braun Law"), and

Lauren Propson ("Propson"), ("collectively Plaintiffs"), present their Complaint against Rebekah

M. Day nee Box ("Day"), Jessica Vazquez ("Vazquez"), and Lily Marston ("Marston"), and KC[1]

the user and operator of the social media accounts @CaffinatedKitti ("KC" or "CaffinatedKitti")[2]

and alleges as follows:

**NATURE OF THE CASE**

1.      This is a diversity action asserting Illinois state law claims for defamation *per se*,

trade libel, false light, intentional infliction of emotional distress, and tortious interference with

---

[1] The owner and operator of the social media account @CaffinatedKitti has not publicly disclosed her real name or identity. For the purposes of this Complaint, this Defendant is referred to as "KC" or "CaffinatedKitti".

[2] The social username @CaffinatedKitti intentionally misspells the word "caffeinated" by not including the letter "e" after the second "f."

business interests, because of Defendants' publication and dissemination of slanderous and defamatory statements regarding the Plaintiffs that were false, harmful, and offensive.

## PARTIES

2.     Plaintiff Jeanette Braun is licensed to practice law in Illinois and operating the law firm Braun IP Law, LLC ("Braun Law") in DuPage County, Illinois, and resides in Illinois on a part time basis.

3.     Plaintiff Braun Law is a limited liability company organizing and existing under the laws of the State of Illinois, with a contact address of 1600 W. Lake Street, Suite 103B, Addison, Illinois 60101.

4.     Plaintiff Lauren Propson is a citizen and resident of the State of Wisconsin.

5.     Upon information and belief, Defendant Rebekah Day nee Box is a citizen and resident of the State of Missouri.

6.     Upon information and belief, Defendant KC is a citizen and resident of the State of Georgia.

7.     Upon information and belief, Defendant Jessica Vazquez is a citizen and resident of a State that is neither Illinois nor Florida.  Upon information and belief, Defendant Vazquez is a victim of certain crimes and out of respect to her privacy, Plaintiffs request to not directly plead Mz. Vazquez's current state of residence.

8.     Upon information and belief, Defendant Lily Marston is a citizen and resident of the State of California.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between Plaintiff Braun who is a part time resident of and owns

a business in the State of Illinois and Braun Law, an Illinois limited liability company, against Defendants KC, Day, Marston, and Vazquez, who upon information and belief are citizens of various states including Missouri, Georgia, and California, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

10.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391 because Plaintiff Jeanette Braun and Plaintiff Braun Law are in this District and the reputational harm to Plaintiff Braun and her legal practice occurred in this District.

11.     In accordance with Rule 20(a)(1) of the Federal Rules of Civil Procedure, Attorney Braun, Braun Law, and Propson join in bringing this action as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and the questions of law or fact common to all Plaintiffs will arise in this action.

12.     Defendants KC, Day, Marston, and Vazquez are properly joined in this action pursuant to Rule 20(a)(2) as their involvement in the same series of transactions or occurrences, and the same questions of law or fact are common to all Defendants.

## BACKGROUND

***Defamatory Statements Against Plaintiff Lauren Propson pka "Lauren the Mortician" by Defendant KC pka @CaffinatedKitti***

13.     Ms. Propson is a licensed mortician and operates a social media account known publicly as "Lauren the Mortician."

14.     Ms. Propson posts social media videos and commentary that bring awareness about common safety issues causing death. Her content provides lighthearted and educational videos that discuss death, the loss of loved ones, and demystify occupations and professions that work with deceased persons.

3

15.     In her social media career, Ms. Propson amassed millions of followers on the social media platform TikTok, as well as sponsorships and monetization of her videos.

16.     Of these sponsorship deals, Ms. Propson was sponsored in a brand partnership with a famous documentary channel.

17.     Defendant KC is a social media personality, publicly known as @CaffinatedKitti.

18.     Defendant KC describes herself as a "villain life coach."

19.     On or around October 24, 2023, Defendant KC published a video of herself to TikTok where she made statements about Ms. Propson and identified her by public persona "Lauren the Mortician."

20.     In the October 24, 2023 video, Defendant KC accused Ms. Propson of being "transphobic" and a "TERF" because she liked posts by a conservative social media personality, who is in a gay relationship.

21.     "TERF" is derogatory slur in feminist groups and a highly offensive term.

22.     "TERF" is an acronym standing for "Trans-Exclusionary Radical Feminist" which is a term used to refer to or describe "an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans women in the feminist movement." Dictionary.com, TERF Definition (accessed on Dec. 12, 2023), https://www.dictionary.com/browse/terf.

23.     The below images are screenshots from the October 24, 2023, video post where Defendant KC accuses Ms. Propson of being a "TERF" and "transphobic":

**[See Next Page for Image]**



@CaffinatedKitti, Oct. 24, 2023, tiktok.com.

24.     In explaining her reasoning for her accusations, Defendant KC stated that she was

not accusing Ms. Propson of being transphobic because Ms. Propson has a larger fan base and

following, but because people were confusing Ms. Propson's "Laura the Mortician" persona with

Defendant KC's "@CaffinatedKitti" persona:



5

*Id.*

25.    Along with the video, Defendant KC announced that she compiled a list of links to posts that Ms. Propson "liked" contained "transphobic and hateful rhetoric."



26.    Upon information and belief, none of the videos Defendant KC linked contain transphobic and hateful rhetoric.

27.    Upon information and belief, Defendant KC's motive and intent behind these posts were to tarnish and damage Ms. Propson's reputation.

28.    Due to Ms. Propson's following and fame, the allegation that she is transphobic spread quickly throughout the internet and became the source of multiple posts, comments, and blog articles.

29.    The impact of this allegation caused Ms. Propson immediate and irreparable harm to her reputation.

30.     Specifically, Ms. Propson lost numerous followers her contract with a famous and popular documentary channel, and a podcast deal that was in negotiations.

***Defamatory Statements Against Jeanette Braun and Braun Law by Defendant KC pka @CaffinatedKitti***

31.     Along with the video, Defendant KC used screenshots of comments that were authored by Ms. Propson to engage with her fans. These comments included original opinions and thoughts that did not relate to or support the allegations that Ms. Propson was transphobic.

32.     Ms. Propson hired Attorney Jeanette Braun to assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to the social media platforms hosting the video.

33.     Attorney Braun filed a DMCA complaint to the social media company Meta regarding the use of copyrighted material on Defendant KC's post on Facebook that copied Ms. Propson's copyright protectable material.

34.     The DMCA complaint, and request for removal of the content, was limited to just the post identified.

35.     Following the DMCA complaint being filed, the platform agreed with Ms. Propson's claim and approved the DMCA removal request.

36.     On November 4, 2023, Meta removed Defendant KC's post that copied her copyrighted material.

37.     Upon information and belief, on or around November 4, 2023, Defendant KC's entire Facebook account was locked by Meta and Defendant KC could not access it.

38.     On or around November 4, 2023, to November 5, 2023, in TikTok story posts following Meta locking Defendant KC's account, Defendant KC posted various videos where she appeared irrational and engaging in erratic behavior, such as threatening people online through

various social media platforms. A TikTok Story post is a brief video on the platform that remains visible for 24 hours or until the user decides to delete it, and typically once the 24 hours expires, the post is not reposted or republished.

39.     The Plaintiffs were concerned about Defendant KC's mental health and safety; which prompted them to call a wellness check to Defendant KC's local non-emergency hotline.

40.     Defendant KC used her social media accounts to express her anger and resentment of Plaintiff Jeanette Braun and her law firm.

41.     On or about November 13, 2023, counsel for Defendant KC contacted Attorney Braun to engage in a discussion about the copyright infringement report and were in settlement discussions.

42.     On or about November 21, 2023, while settlement discussions were still ongoing, Defendant KC posted a video accusing Ms. Propson of using Attorney Braun to file bad faith copyright claims with social media platforms.



43.     In the same video, Defendant KC accused Attorney Braun of filing bad faith copyright infringement strikes against Defendant KC.

44.     As of the filing of this Complaint, the video identified above was viewed approximately 928,000 times

45.     On November 25, 2023, Defendant KC posted the same video again on TikTok. As of December 14, 2023, the second posting has received over 263,000 views and published it through this link: https://www.tiktok.com/@caffinatedkitti/video/7305440685589630250.



@CaffinatedKitti, Nov. 25, 2023, Post, tiktok.com (accessed on Dec. 15, 2023), https://www.tiktok.com/@caffinatedkitti/video/7305440685589630250

46.     Upon information and belief, Defendant KC receives compensation from TikTok based on the number of views a video receives, and thus is profiting from their posts that spread the false statements about Attorney Braun and Ms. Propson that are described in this Complaint.

47.     Upon information and belief, on or around November 21, 2023, Defendant KC created a page on the donation platform called GoFundMe.

48.     On the GoFundMe page, Defendant KC revealed Attorney Braun's name and identity by posting a portion of Attorney Braun's cease and desist letter.

49.     On or around December 8, 2023, Defendant KC published her email response to Attorney Braun and falsely claiming that Attorney Braun filed a "false copyright claim" and that she was a fan of Lauren the Mortician that was not actually retained to be Ms. Propson' attorney.

50.     Upon information and belief, Defendant KC knowingly published these statements after learning that Attorney Braun was in fact retained by Ms. Propson.

51.     The below screenshot is an accurate copy of the GoFundMe page.



**Kitti is a Spiteful Cee You Next Tuesday**

Kitti LaLune is organizing this fundraiser.

Ya'll know what this is here for

**Updates (5)**

**December 8th, 2023** by Kitti LaLune, Organizer

The email I sent in response to the copyright claim. Reminder that my following post indicated I was ensuring I was legally doing what was correct before whistleblowing. Also according to her call to the police, Jeanette wants to report this to the FBI (My reading of this coming soon)

It Reads

Subject Line: False Copyright Claim - Sent 1:40pm 11/4/2023
Good afternoon Jeanette,

I've reached out to the owner of the video you had taken down for copyright, and she confirmed that she did not have any issue with my reposting of her content- as I explicitly asked for her permission beforehand and still maintain it.

My team and I would love further details on your client and how the video had grounds for a copyright strike, as it clearly falls under fair use. ("Under the fair use doctrine of the U.S. copyright statute, it is permissible to use limited portions of a work including quotes, for purposes such as commentary, criticism, news reporting, and scholarly reports. There are no legal rules permitting the use of a specific number of words, a certain number of musical notes, or percentage of a work. Whether a particular use qualifies as fair use depends on all the circumstances. See, Fair Use Index, and Circular 21, Reproductions of Copyrighted Works by Educators and Librarians." if you needed a refresher.)

I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's scandals, and while I understand your desire to protect a creator you enjoy- if you were not legally obtained as counsel for her and I speak on this via my platform, your actions are going to cause her significantly more strife. I would imagine it would reflect very negatively on you and your practice as well for you to attempt to use your personal law firm to intimidate people because you don't like what they have to say. You should patch me in with your business development and PR team, I'm sure they'd have some interesting advice for you.

I look forward to your response,
Kitti

Kitti Lalune, "Kitti is Spiteful Cee You Next Tuesday" gofundme.com (accessed on Dec. 15, 2023), https://www.gofundme.com/f/cc9n3-kitti-is-a-spiteful-cee-you-next-tuesday.

### *Defamatory Statements Made by Defendant Rebekah Day nee Box*

52. Defendant Day is a social media content creator known as "Bekah Day" who holds herself out to be an unbiased content creator and an independent investigative reporter.

53. Upon information and belief, Defendant Day has no professional training or degree in journalism.

54. Upon information and belief, the below screenshot is an accurate copy of Defendant Day's LinkedIn profile, as of the filing of this Complaint.



Bekah Day, "Bekah Day Profile" linkedin.com (accessed on Dec. 15, 2023), https://www.linkedin.com/in/bekah-day-98457a177/.

55.    Upon information and belief, Defendant Day creates content that disparages public figures and other celebrities that she monetizes for income from TikTok.

56.    Upon information and belief, Defendant Day receives compensation from TikTok based on the number of views a video receives, and thus is profiting from her posts that spread the false statements about Attorney Braun and Ms. Propson that are described in this Complaint.

57.    During her social media career, Ms. Day has been accused of posting false and untrue statements about public figures, such as Grammy award winning musician Diplo and other prominent social media personalities.



Bekah Day, Post September 5, 2023, tiktok.com (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7275351757197200683?lang=en.; Bekah Day, Post Oct. 5, 2023 (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7286578172643003678?lang=en.

58.     In November 2023, Defendant Day made content regarding Defendant KC's claims about Ms. Propson and Attorney Braun.

59.     Upon information and belief, Defendant Day did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts.

60.     Defendant Day never contacted the Plaintiffs to verify the information in her posts.

61.     Defendant Day created and posted videos stating the false claim that Attorney Braun files "false copyright strikes," is "unethical," and is a "rogue attorney;" some of which are shown below:

***Attorney Braun files "false copyright strikes"***

 **bekah day**
replied to your comment: I posted proof on my page that your legal name is attatched to the false copyright strikes. Don't know why you're behaving like this on the internet. 2h



 Reply     Like

**[Space Left Intentionally Blank]**

*Attorney Braun is "unethical" and files "false copyright strikes"*



*Attorney Braun is a "Rogue Attorney"*

62. In a since deleted video from TikTok, Defendant Day stated her intent to ruin Attorney Braun's career as a social media lawyer:

> "But I just wanted to make it very clear that my position is to ensure that there is not a rogue attorney on this app."

***Harassment Campaign Against Former Clients***

63. Upon information and belief, Defendant Day is using the above false statements to incite an angry mob and harassment campaign against Attorney Braun's past clients that are social media influencers.

64. Defendant Day's harassment campaign has had detrimental effects on Attorney Braun's former clients and caused emotional distress and harm.

65.     In particular, Defendant Day has focused her criticism of Attorney Braun for her past representation of her client Kaitlyn Dempsey pka "Demps."

66.     Upon information and belief, Defendant Day communicated with a known stalker and harasser of Ms. Dempsey named Erica Fisk.

67.     Ms. Dempsey has an active order of protection against Ms. Fisk to stop her from stalking and harassing Ms. Dempsey and her young child. Ms. Dempsey's child is protected by the order of protection.

68.     Upon information and belief, Defendant Day also communicated with Christin Williams, who is a known associate of Ms. Fisk and works with her to harass Ms. Dempsey.

69.     Upon information and belief, Ms. Williams told Defendant Day about Ms. Dempsey's order of protection.

70.     Upon information and belief, Defendant Day contacted Ms. Dempsey after communicating with Ms. Fisk and Ms. Williams, while knowing that Ms. Dempsey had an order of protection against Ms. Fisk in part, to protect her young child.

71.     Upon information and belief, Defendant Day posted a video about Ms. Dempsey after communicating with Ms. Williams to assist Ms. Williams and Ms. Fisk with continuing to harass Ms. Dempsey.

### *Harassment Campaign Against Attorney Braun and Braun Law*

72.     In a TikTok story post, Defendant Day created and posted a story on TikTok stating that the Illinois Attorney Registration & Disciplinary Commission told her they received "multiple *credible* complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter." (emphasis added).



@bekahday, "Dec. 11, 2023 Story Post" tiktok.com (captured on Dec. 11, 2023).

73.     The Attorney Registration and Disciplinary Commission ("ARDC") is the governing body overseeing and regulating the conduct of attorneys. The ARDC operates under the authority of the Illinois Supreme Court, which has sole authority to regulate the admission and discipline of lawyers in Illinois. ARDC, "Overview of ARDC" iardc.org (accessed on Dec. 15, 2023), https://www.iardc.org/About.

74.     All attorney investigations are confidential until the Commission brings a complaint against an attorney. *Id.*

75.     Upon information and belief, the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney.

76.     Upon information and belief, the Illinois Attorney Registration & Disciplinary Commission would only confirm whether or not the attorney in question was registered, convey the date they were registered, share if the attorney is in good standing, and share if the attorney has ever been found to have engaged in misconduct.

77.     As of the filing of this Complaint, Attorney Braun is an attorney in good standing and has zero misconduct violations on her record with the Illinois Attorney Registration & Disciplinary Commission.

### *Defamatory Statements Made by Defendants Jessica Vazquez and Lily Marston*

78.     Upon information and belief, Defendant Vazquez and Defendant Marston are owners and co-hosts of the "Do We Know Them" podcast.

79.     The "Do We Know Them" podcast is online weekly video podcast that is also disseminated through various audio platforms where Defendant Vazquez and Defendant Marston promote online controversies, rumors, and celebrity gossip, all of which are monetized.

80.     Upon information and belief, neither Defendant Vazquez or Defendant Marston have any professional training as a news reporter, journalist, or any degrees in those industries or related ones.

81.     Upon information and belief, Defendants Vazquez and Marston did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts.

82.     Defendants Vazquez and Marston did not contact the Plaintiffs to verify the information in their posts prior to publishing them.

83.     In November 2023, Defendant Vazquez and Defendant Marston began posting several videos discussing the dispute between Defendant KC and the Plaintiffs.

84.    In the videos, Defendants Vazquez and Marston expressed a strong contempt for Ms. Propson and Attorney Braun.

85.    In the videos, Defendant Vazquez and Defendant Marston mocked Attorney Braun by mis-pronouncing her name as "Janet" instead of "Jeanette".

86.    Defendant Vazquez and Defendant Marston identified Attorney Braun by her full name and expressly noted that they intentionally mispronounced her name because it was "fun" but that they were still referring to Attorney Braun.

87.    In detailing Defendant KC's disputes with the Plaintiffs, Defendants Vazquez and Defendant Marston published statements about Attorney Braun's clients and her legal practice.

88.    In the videos, Defendant Vazquez and Defendant Marston stated that reputable and known content-creators hire Attorney Braun to represent them and take down videos that use their likeness or photographs without their permission.

89.    Without discussing the full context of any specific post or takedown, Defendant Marston stated that Attorney Braun's practices were "unethical."



90.     Following this comment, Defendant Marston and Defendant Vazquez discussed Attorney Braun's other clients to remove posts that misused their intellectual property and images.

91.     Following this, Defendant Vazquez stated that Attorney Braun is "unethical."



92.     Upon information and belief, Defendant Marston continued to make false accusations and accused Attorney Braun of unethical behavior on various platforms.

93.     In a since removed post, Defendant Marston made further false accusations and referenced Attorney Braun through a past client and accused her of "actively committing perjury."



***Damage to Reputation and Harm to Braun Law and Attorney Jeanette Braun***

94.    As a direct result of the false and defamatory statements made by Defendants KC and Defendant Day, Vazquez, and Marston, an angry internet mob was incited to further echo and spread the collective false statements that:

      a.   Ms. Propson is transphobic

      b.   Attorney Braun is unethical

      c.   Attorney Braun files false copyright claims

      d.   Attorney Braun is a rogue attorney

95.    The posts and comments published by the Defendants caused their various fans and followers to post negative and 1-Star Google Reviews against Attorney Braun and Braun Law to harm its reputation.

96.    In addition, fans and followers of the Defendants searched for, contacted, and harassed Ms. Braun's known and suspected social media clients.

97.    As a direct result of the negative attention from the Defendants' false statements, Attorney Braun lost a potential client due to fear of being harassed for using Attorney Braun's legal services.

98.    In addition to the above statements, fans and followers of the Defendants are encouraging others to file ARDC complaints against Attorney Braun.

99.    The continued spread and reposting of these false statements against Attorney Braun and Braun Law cause damage and irreparable reputational harm on a daily basis.


**[Space Left Intentionally Blank]**

## COUNT I

**Defamation Per Se**
**Against Defendant KC by Plaintiff Lauren Propson**

100.    Plaintiff Propson repeats and realleges by reference the allegations in paragraphs 1 through 99 as if fully set forth herein.

101.    Defendant KC defamed Plaintiff Propson by publicly stating that Plaintiff Propson was a "TERF" and "transphobic" and used her platform to attack Plaintiff Propson's character and reputation.

102.    Defendant KC made these defamatory statements publicly across multiple social media platforms, including but not limited to Facebook, Instagram and TikTok.

103.    Defendant KC's defamatory statements concerned Plaintiff Propson, as they referenced her by her public persona "Lauren the Mortician." The average viewer understood the statements to be about Plaintiff Propson.

104.    The statements were defamatory because they harmed Plaintiff Propson's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

105.    The false statements were defamation *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face. Being called transphobic is akin to being a called a bigot or a racist, and these defamatory statements caused Plaintiff Propson to be viewed by others as transphobic and not an inclusive person.

106.    These statements resulted in Plaintiff Propson losing her contract with a famous documentary channel and a podcast deal that was in its final negotiations.

107.    These statements prejudice Plaintiff Propson in her profession and harmed her ability to earn future sponsorships and followers.

21

108.    Defendant KC's posting to TikTok was an unprivileged publication of the statements to third parties.

109.    As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she sustained injuries to her good name, character, and reputation, so as to established presumed damages.

110.    As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she was harmed and continue to be harmed in that she has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, and harm to her career.

111.    Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

## COUNT II

**Defamation**
**Against Defendant KC by Plaintiffs Jeanette Braun and Braun Law**

112.    Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 99 as if fully set forth herein.

113.    Defendant KC defamed Plaintiffs Braun and Braun Law by publicly stating that Ms. Braun files "false copyright lawsuits" and by implying that she was acting as an attorney without being hired by Lauren the Mortician and used her platform to attack their character and reputation.

114.    Defendant KC made these defamatory statements publicly across social media.

115.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced Attorney Braun by her first and last name in the documents. The average viewer understood the statements to be about Jeanette Braun the owner of Braun Law.

116.    The statements were defamatory because they harmed Plaintiff's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

117.    The false statements were defamation *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer that files frivolous copyright claims that painted Attorney Braun in a false light and incited others to act against her. This resulted in Attorney Braun losing potential clients and having others repeat the same false accusations against her. These statements prejudice Plaintiff in her profession and harmed her ability to be retained by new clients.

118.    Defendant KC's assertions regarding Attorney Braun and Braun Law's competency and her legal ethics were intended to harm, discredit, and tarnish Attorney Braun's reputations.

119.    Defendant KC's posting to GoFundMe was an unprivileged publication of the false statements to third parties.

120.    As a proximate result of Defendant KC's publication of false and defamatory statements about Attorney Braun and Braun Law, they sustained injuries to their good name, character, and reputation.

121.    Because Defendant KC's statements were defamation *per se* damages are presumed.

122.    As a proximate result of Defendant KC's publication of false statements of fact about Attorney Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including harm to reputation, and harm to her career.

123.    Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

23

## COUNT III

### Defamation
### Against Rebekah Day nee Box by Plaintiffs Jeanette Braun and Braun IP, Law LLC

124.    Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 99 as if fully set forth herein.

125.    Defendant Day defamed Plaintiffs Braun and Braun Law by publicly stating that Attorney Braun was "unethical" and that she files "false copyright lawsuits" without proper investigation and used her platform to attack their character and reputation.

126.    Defendant Day made these defamatory statements publicly across multiple social media platforms.

127.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced her by her full legal name "Jeanette Braun." The average viewer understood the statements to be about Jeanette Braun the owner of Braun Law.

128.    The statements were defamatory because they harmed Plaintiff's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

129.    The false statements were defamation *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer that files frivolous copyright claims painted Attorney Braun in a false light and incited others to act against her. This resulted in Attorney Braun losing a current client and potential clients. These statements prejudice Plaintiff in her profession and harmed her ability to be retained by new clients.

130.    Defendant Day's posting to TikTok was an unprivileged publication of the false statements to third parties.

131. As a proximate result of Defendant Day's publication of false statements of fact about Attorney Braun and Braun Law, they sustained injuries to their good name, character, and reputation, so as to established presumed damages.

132. As a proximate result of Defendant Day's publication of false statements of fact about Attorney Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including harm to reputation, and harm to her career.

133. Defendant Day's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

**COUNT IV**

**Defamation**
**Against Jessica Vazquez and Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

134. Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 99 as if fully set forth herein.

135. Defendant Vazquez and Defendant Marston are business partners that defamed Plaintiffs Braun and Braun Law by publicly stating that Attorney Braun is unethical and commits perjury and using their platform to smear Attorney Braun's character and reputation.

136. Defendants Marston and Vazquez made these defamatory statements publicly across multiple online platforms, including but not limited to YouTube, Twitter, Spotify, Apple Podcasts, Google Podcasts, Castbox, RSS, Pocket Casts, Overcast, Bullhorn, Castro, Player FM, Podcast Addict, Podbean, Podhero, Podcast Guru, Podcast Republic, Podfriend, RadioPublic, Sonnet, and Subscribe on Android.

137.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced her by her full legal name "Jeanette Braun." The average viewer understood the statements to be about Jeanette Braun the owner of Braun Law.

138.    The statements were defamatory because they harmed Plaintiff's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

139.    The false statements were defamation *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer that perjures herself while filing copyright claims painted Attorney Braun in a false light and incited others to act against her. This resulted in Attorney Braun losing potential clients. These statements prejudice Plaintiff in her profession and harmed her ability to be retained by new clients.

140.    Defendant Vazquez and Defendant Marston's posts on various platforms are unprivileged publications of false statements to third parties.

141.    As a proximate result of Defendant Marston's and Vazquez's publication of defamatory and false statements about Attorney Braun and Braun Law, they sustained injuries to their good name, character, and reputation, so as to established presumed damages.

142.    As a proximate result of Defendant Marston's and Defendant Vazquez's publication of false statements of fact about Attorney Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including harm to reputation, and harm to her career.

143.    Defendant Marston's and Vazquez's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

## COUNT V

**False Light**
**Against Defendant KC by Plaintiff Lauren Propson**

144.     Plaintiff Lauren Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 99.

145.     Defendant KC's actions in falsely portraying Plaintiff Propson as being transphobic and not inclusive placed Plaintiff Propson in false light.

146.     Defendant KC's conduct placed Plaintiff Propson in a false light that would be highly offensive to a reasonable person.

147.     Defendant KC acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Defendant KC intentionally mischaracterized her evidence to fit her pre-determined narrative. Defendant KC had reason to know that her actions had the potential to incite large amounts of people to protest and retaliate against Plaintiff Propson, and that her allegations needed to be carefully sourced. Nonetheless, Defendant KC made false accusations to attack Plaintiff Propson and differentiate her own online persona from Plaintiff Propson.

148.     As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she sustained injuries to her good name, character, and reputation, so as to established presumed damages.

149.     As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, and harm to her career.

150.    Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

## COUNT VI

**False Light**
**Against Defendant KC**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

151.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

152.    Defendant KC's actions in falsely portraying Plaintiff Braun as a rogue attorney that was not hired by Plaintiff Propson and claiming that she files false copyright claims placed Plaintiff Braun in a false light.

153.    Defendant KC's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person.

154.    Defendant KC acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Defendant KC intentionally posted only a portion of Attorney Braun's cease and desist letter after knowing that she was already an attorney for Plaintiff Propson, and mischaracterized her evidence to fit her pre-determined narrative that she was being falsely accused of copyright infringement. Defendant KC had reason to know that her actions had the potential to incite large amounts of people to protest and retaliate against Plaintiff Braun and her law firm, and that her allegations needed to be carefully sourced. Nonetheless, Defendant KC made false accusations to attack Plaintiff Braun and Braun Law's reputation.

155.    As a proximate result of Defendant KC's publication of false statements of fact about Attorney Braun and Braun Law, they sustained injuries to their good name, character, and reputation, so as to established presumed damages.

156.     As a proximate result of Defendant KC's publication of false statements of fact about Attorney Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including harm to reputation, and harm to her career.

157.     Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, so as to justify an award of punitive damages.

## COUNT VII

**False Light**
**Against Rebekah Day nee Box**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

158.     Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

159.     Defendant Day's actions in falsely portraying Plaintiff Braun as an unethical attorney filing false copyright claims placed Plaintiff Braun in a false light.

160.     Defendant Day's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person.

161.     Defendant Day acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Defendant Day intentionally posted several TikTok videos and comments for the sole purpose of creating and monetizing content on her social media profile. Defendant Day had reason to know that her actions had the potential to incite large amounts of people to protest and retaliate against Plaintiff Braun and her law firm, and that her allegations needed to be carefully sourced. Nonetheless, Defendant Day made false accusations to attack Plaintiff Braun and Braun Law's reputation.

162.    As a result of Defendant Day's conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including harm to her reputation and harm to her career.

## COUNT VIII

### False Light
### Against Jessica Vazquez and Lily Marston
### by Plaintiffs Jeanette Braun and Braun IP, Law LLC

163.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

164.    Defendant Vazquez and Defendant Marston's collective actions in falsely portraying Plaintiff Braun as an unethical attorney that commits perjury placed Plaintiff Braun in a false light.

165.    Defendant Vazquez and Defendant Marston's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person.

166.    Defendant Vazquez and Defendant Marston both acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Defendants Vazquez and Marston intentionally posted several Youtube videos and podcast episodes and, multiple tweets for the sole purpose of monetizing and driving traffic to their social media profiles. Defendant Vazquez and Defendant Marston both had reason to know that their actions had the potential to incite large amounts of people to protest and retaliate against Plaintiff Braun and her law firm, and that their allegations needed to be carefully sourced. Nonetheless, both Defendant Vazquez and Defendant Marston accused of Plaintiff Braun of being unethical and committing perjury to harm Plaintiff Braun and Braun Law's reputation.

167. As a result of Defendant Day's conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including harm to her reputation and harm to her career.

## COUNT IX

### Trade Libel
### Against Defendant KC by Plaintiff Lauren Propson

168. Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 99.

169. Beginning in or about November 2023, and continuing through the present, Defendant KC willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Propson and her beliefs on the LGTBQ community and transgender rights to third parties, including but not limited to Defendant KC's followers on their @CaffinatedKitti social media accounts. Defendant KC's statements described in this Complaint improperly disparaged Plaintiff Propson's services and credibility as a social media influencer by making the false and misleading statements that Plaintiff Propson is transphobic and a "TERF." Defendant KC either knew the statements she was making were false or she intentionally failed to conduct an appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation and baseless conjecture.

170. As a proximate result of Defendant KC's publication of the above-referenced statements, Plaintiff Propson's existing and prospective sponsors have been deterred from sponsoring and otherwise dealing with her as a further proximate result of Defendant KC's publication of the above-referenced statements, on information and belief, Plaintiff Propson has endured numerous comments and criticisms that were incited from Defendant KC's false statements that she is transphobic.

171.    As a result of Defendant KC's actions, Plaintiff Propson suffered injury to her business and reputation as a social media influencer in an amount currently unknown but believed to be in excess of the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT X

### Trade Libel
### Against Defendant KC by Plaintiffs Jeanette Braun and Braun IP, Law LLC

172.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

173.    Beginning in or about November 2023, and continuing through the present, Defendant KC willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant KC's followers on their @CaffinatedKitti social media accounts. Defendant KC's statements described in this Complaint improperly disparaged Plaintiff Braun and her law firm's services and credibility by making the false and misleading statements that Plaintiff Attorney Braun files false copyright claims and by implying that Plaintiff Braun did not represent Plaintiff Propson and was acting on her own accord. Defendant KC either knew the statements she was making were false or she intentionally failed to conduct an appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation.

174.    As a proximate result of Defendant KC's multiple publications of the above-referenced statements, Plaintiff Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her.

175. As a further proximate result of Defendant KC's publication of the above-referenced statements, on information and belief, Plaintiff Braun and Braun Law endured and continues to endure an angry mob of numerous offensive comments and criticisms that were incited from Defendant KC's original false statement that Plaintiff Braun files "false copyright strikes."

176. From Defendant KC's statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be in excess of the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT XI

### Trade Libel

**Against Defendant Rebekah Day nee Box**
**by Plaintiff Jeanette Braun and Plaintiff Braun Law**

177. Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

178. Beginning in or about November 2023, and continuing through the present, Defendant Day willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant Day's followers on TikTok.

179. Defendant Day's statements described in this Complaint improperly disparaged Plaintiff Braun and her law firm's services and credibility by making the false and misleading accusations that Plaintiff Braun is unethical and files false copyright claims. Defendant Day either knew the statements she was making were false or she intentionally failed to conduct an

appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation.

180.    As a proximate result of Defendant Day's publication of the above-referenced statements, Plaintiff Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her. As a further proximate result of Defendant Day's publication of the above-referenced statements, on information and belief, Plaintiff Braun and Braun Law have endured numerous comments and criticisms that were incited from Defendant Day's false statements that Plaintiff Braun lacks ethics, is a "rogue attorney", and files false copyright strikes.

181.    From these statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be more than the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

### COUNT XII

**Trade Libel**
**Against Defendants Jessica Vazquez and Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

182.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 99.

183.    Beginning in or about November 2023, and continuing through the present, Defendant Vazquez and Defendant Marston willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant Vazquez and Defendant Marston's followers on numerous platforms. Defendant Day's statements described in this

Complaint improperly disparaged Plaintiff Braun and her law firm's services and credibility by making the false and misleading accusations that Plaintiff Braun is unethical and commits perjury.

184.    Vazquez and Marston either knew the statements they were making were false or that they intentionally failed to conduct an appropriate investigation to determine the truth of their claims and not rely entirely on mere speculation and conjecture.

185.    As a proximate result of Defendant Vaquez and Marston's publication of the above-referenced statements, Plaintiff Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her. As a further proximate result of Defendant Vazquez and Marston's publication of the above-referenced statements, on information and belief, Plaintiff Braun and Braun Law have endured numerous comments and criticisms that were incited from Vazquez and Marston's false statements that Plaintiff Braun lacks ethics and files false copyright strikes.

186.    From these statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be more than the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT XIII

### Tortious Interference with Contract
### Against Defendant KC
### by Plaintiff Lauren Propson

187.    Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 99.

188.     Prior to the initiation of Plaintiff Propson's action, Plaintiff Propson had a content creation contract with a famous and well-known documentary channel. Plaintiff Propson had a valid and enforceable contract with the documentary channel to make content for them.

189.     Upon information and belief, Defendant KC was aware of Plaintiff Propson's career and her contract with the documentary channel.

190.     Upon information and belief, Defendant KC used her platform and posted videos to ruin Plaintiff Propson's reputation and content partnerships.

191.     On or about October 24, 2023, Defendant KC intentionally, unjustifiably, and maliciously posted videos to her TikTok account @CaffinatedKitti to falsely accuse Plaintiff Propson of being transphobic. Defendant KC's actions were willful and constituted intentional and unjustified inducement of a termination of the contract between Defendant Plaintiff Propson and the documentary channel.

192.     Defendant KC's intentional, unjustified, and malicious actions caused the documentary channel termination of its contract with Plaintiff Propson in November 2023.

193.     Defendant KC unlawfully tortiously interfered with an existing contract between Plaintiff Propson and the documentary channel.

194.     Plaintiff Propson has been damaged by Defendant KC's willful tortious interference in an amount to be determined at trial, including but not limited to lost income from her contract. Furthermore, Defendant KC has irreparably harmed Plaintiff Propson and caused Plaintiff Propson to suffer a substantial loss of goodwill and reputation, and such harm will continue unless Defendant KC is enjoined by this Court.

## COUNT XIV

**Tortious Interference with Existing and Potential Business Relationships
Against Defendants KC, Rebekah Day nee Box, Jessica Vazquez, and Lily Marston
By Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC**

195.    Plaintiff Braun and Braun Law reallege and incorporates as though fully set forth herein, paragraphs 1 through 99.

196.    Defendants' false and defamatory statements have caused and are likely to continue to cause the public and content creators not to employ Plaintiff Braun and Braun Law for legal representation. The false statements published by the Defendants interferes with Attorney Braun's existing and prospective client relationships as an attorney.

197.    Defendants' past and present false statements on their aforesaid social media platforms caused great damage to Plaintiff Braun and Braun IP Law's business and harm to their reputation. The individual and joint actions of the Defendants were intended to cause and have caused deception of the public, misleading clients and prospective clients of Plaintiff Braun and Braun Law's as to the true characteristics and qualities of their services and have disparaged Plaintiff Braun and Braun Law's name in the legal profession, social media services industry, and besmirched their reputation through false and defaming statements as detailed in this Complaint.

198.    Defendants' conduct as aforesaid in disseminating false and disparaging accusations and dissuading the public from dealing with Plaintiff Braun and Braun Law constitutes unlawful interference with Plaintiff Braun and Braun Law's existing and prospective contracts with its current and prospective clients to their severe damage and detriment, as a result of which Plaintiff Braun and Braun law have suffered damage to their business, harm to their reputations, lost income, attorney's fees, and other economic loss.

## COUNT XV

### Intentional Infliction of Emotional Distress
### Against Defendant KC
### by Plaintiff Lauren Propson

199.    Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 99.

200.    KC's conduct in publishing false and defamatory statements about Plaintiff Propson and in threatening Plaintiff Propson with continuing to defame her if she did not admit to being anti-trans was extreme and outrageous.

201.    KC willfully, maliciously, and intentionally engaged in extreme and outrageous conduct with the intent to inflict severe emotional distress upon Plaintiff Propson or, alternatively with the knowledge that there was a high probability that such conduct would cause Plaintiff Propson severe emotional distress.

202.    As a direct and proximate result of KC's conduct, and the resulting emotional distress, Plaintiff Propson has suffered humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, mental anguish, with and without physical symptoms.

## COUNT XVI

### Intentional Infliction of Emotional Distress
### Against Defendant Day
### by Plaintiff Lauren Propson

203.    Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 99.

204.    Defendant Day's conduct in publishing false and defamatory statements about Plaintiff Propson and in threatening Plaintiff Propson with continuing to defame her by posting more videos about her was extreme and outrageous.

205. Defendant Day willfully, maliciously, and intentionally engaged in extreme and outrageous conduct with the intent to inflict severe emotional distress upon Plaintiff Propson or, alternatively with the knowledge that there was a high probability that such conduct would cause Plaintiff Propson severe emotional distress.

206. As a direct and proximate result of Defendant Day's conduct, and the resulting emotional distress, Plaintiff Propson has suffered humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, mental anguish, with and without physical symptoms.

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in their favor and against the Defendants, each of them jointly and severally, as follows:

(a)     Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, and punitive damages;

(b)     Awarding an accounting to Plaintiff for the gains and profits of Defendants arising from the unlawful conduct;

(c)     Permanently enjoining Defendants and their respective partners, agents, representatives, successors, assigns and employees, and any and all persons in active convert or participation with Defendants, and each of their executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing, and each of them, from: making, disseminating, broadcasting, or publishing any statements that:

- Plaintiff Propson is transphobic.
- Attorney Braun is an unethical lawyer.
- Attorney Braun files false copyright claims
- Attorney Braun is a rogue attorney.
- Attorney Braun commits perjury.

(d)     Issuing an order requiring Defendant KC to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff Lauren Propson;

(e)     Issuing an order requiring the Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding the Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC;

(f)     Awarding Plaintiff's attorneys' fees and costs; and

(g)     Granting Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com
(773) 340-0011

***Attorney for Plaintiffs***