**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON,<br>Plaintiffs,<br>v.<br><br>REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ<br><br>Defendants. | ) | Case No. 23 C 16856 |

**REBEKAH M. DAY NEE BOX'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

## I. INTRODUCTION

Plaintiff Jeanette Braun/Braun IP Law (collectively, "Braun") filed this Complaint against Defendant Rebekah M. Day nee Box ("Day") in an improper effort to silence Day, and other unrelated individuals, who have independently voiced opinions about Braun on social media that she deems unflattering. Braun contends that Day has "defamed" her through posts and/or stories that Day has posted on her personal account on the social media platform Tik Tok, in which Day has referred to Braun as "unethical" and "rogue" and expressed her *subjective belief* that Braun has filed "false" copyright strikes under the "Digital Millennium Copyright Act" on behalf of her clients, including her co-Plaintiff Lauren Propson ("Propson"). But as explained in detail below, Illinois law is clear: whether someone is "unethical" or "rogue" is so ambiguous and indefinite that it cannot be verified; thus, such hyperbole is deemed to be a constitutionally-protected opinion and *not* actionable as defamation. The fact that these statements were made in the context of stories or comments Day posted on her personal Tik Tok account only underscores that they amount to nothing more than Day's unfiltered, subjective beliefs. The same can be said for allegations that Braun files "false" copyright strikes. How would one go about verifying whether a lawsuit or other proceeding is "false"? As explained herein, Day believes the defamation claims asserted against her in *this* action are "false." Does she open herself up to further defamation claims by expressing that opinion? Certainly not. Given that none of the statements on which Braun bases her defamation claim are actionable, Braun has failed to state a claim for defamation.

Not only are the alleged defamatory statements on which this action is based nonactionable opinions, but they are subject to a qualified privilege under Illinois law which requires that Braun plead facts supporting claims of actual malice. As Braun has alleged nothing more than *boilerplate, conclusory allegations* regarding Day's alleged "malice", Braun has failed to overcome the

qualified privilege. Accordingly, Day respectfully requests that this Court dismiss Braun's defamation claim, along with the remaining defectively pled tort claims based on nonactionable defamatory statements, under Federal Rule of Civil Procedure 12(b)(6).

## II. BACKGROUND

### A. Case Background.

Plaintiff Lauren Propson ("Propson") is a social media personality and Plaintiff Jeanette Braun – through Plaintiff Braun IP Law, LLC (collectively, "Braun") – is her lawyer. (Complaint Dkt. 1 ("Compl.")). Propson is a licensed mortician residing in Wisconsin (*id.,* ¶ 4), who operates a social media account on Tik Tok under the name "Lauren the Mortician." (*Id.*, ¶¶ 13, 15). Propson alleges that she has "amassed millions of followers" on Tik Tok, as well as sponsorships and monetization of the videos she posts of Tik Tok, including a "brand partnership with a famous documentary channel." (*Id.,* ¶¶ 15-16). Propson alleges that her "lighthearted and educational videos" posted on Tik Tok "discuss death, the loss of loved ones, and demystify occupations and professions that work with deceased persons." (*Id.,* ¶ 14).

Propson hired Braun, a lawyer, to "assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to social media platforms hosting a video" created by one of the defendants, who the Complaint names as "KC the owner and operator of the social media account @CaffinatedKitti" (hereafter referred to as "KC"). (*Id.,* ¶ 32). The Complaint alleges that KC is a "social media personality," and is a citizen and resident of Georgia. (*Id.,* ¶¶ 6, 17). Propson and Braun have asserted individual defamation and other tort claims against KC in this action based on statements allegedly made by KC on social media about Propson and – after the filing of the DMCA copyright strike against her – about Braun. (*Id.,* ¶¶ 19-51).

In addition to asserting defamation and other tort claims against KC, Plaintiffs have also named other defendants based on alleged "defamatory statements" these individuals purportedly made on social media, including Day. The Complaint alleges that Day is a "social media content creator known as 'Bekah Day' who holds herself out to be an unbiased content creator and an independent investigative reporter." (*Id.,* ¶ 52). The Complaint alleges that Day is a "citizen and resident of the State of Missouri." (*Id.,* ¶ 5). The Complaint further alleges that that "[i]n November 2023, Defendant Day made content regarding Defendant KC's claims about Ms. Propson and Attorney Braun" on which Plaintiffs' base their claims. (*Id.,* ¶ 58).

**B. Defendant Day's Alleged Defamatory Statements.**

Day allegedly "created and posted videos stating the false claim that Attorney Braun files 'false copyright strikes,' is 'unethical' and is a 'rouge attorney". (*Id.,* ¶ 61). In support of this allegation, the Complaint sets forth a screenshot of a "reply" to a comment allegedly posted by Day stating "I posted proof on my page that your legal name is attached to the false copyright strikes. Don't know why you are behaving like this on the Internet." (*Id.*) The Complaint does not identify to whom the comment is directed, when the comment allegedly was posted, or where on the Internet the comment allegedly was posted. (*Id.*) The Complaint also sets forth a screen shot of what appears to be a social media post by Day, in which Day states "There are a group if [sic] creators on this app who have weaponized Jeanette's aggressive, threatening, and unethical tactic to scare creators off the app. I have a list of creators who have utilized Jeanette, and another list of creators who have been wrongfully impacted by false copyrights strikes sent in by Jeanette. This is just the beginning. Shocked and applauded [sic] to see women im MUTUALS with hiring this woman to do their dirty work. Tis the season of exposing, I suppose! . . . ." (*Id.*) The Complaint does not allege where on the Internet the statements were posted or when the statements were

posted. The Complaint further alleges that in a "since deleted video from Tik Tok," Day stated the following: "But I just want to make it very clear that my position is to ensure that there is not a rogue attorney on this app." (*Id.,* ¶ 62). Finally, the Complaint alleges that Day posted a story on Tik Tok stating that "the Illinois Attorney Registration & Disciplinary Commission told [Day] they received 'multiple ***credible*** complaints about Jeanette Braun and that they have assigned multiple attorneys to investigate this matter." (*Id.,* ¶ 72) (emphasis in original). *The Complaint contains no allegation that this statement is false*; rather, it states that "upon information and belief, the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney," and "upon information and belief, the Illinois Registration & Disciplinary Commission would only confirm whether or not the attorney in question was registered, convey the date they were registered, share if the attorney is in good standing, and share if the attorney has ever been found to have engaged in misconduct." (*Id.,* ¶ 76).[1] The Complaint is devoid of any allegation that Day made false or defamatory statements about Plaintiff Propson.

## III. ARGUMENT

### A. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6)[2]. In determining whether a complaint satisfies Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in plaintiff's favor. *Parish v. City of Elkhart*,

---

[1] The Complaint contains other allegations regarding Day's purported conduct directed at *other* individuals who are *not* parties to this action and that have no bearing or relation on any alleged statements made by Day regarding either of the Plaintiffs. (Complaint, ¶¶ 57 (allegations regarding statements Day allegedly made about the singer Diplo that has no connection with either Braun or Propson), 71 (allegation regarding a video Day allegedly posted about a former client of Braun, Kaitlyn Dempsey, but that does not allege *what* Day stated in the video or how it was in any way defamatory to Braun or Propson)).

[2] Day has not moved to strike the claims asserted against her under anti-SLAPP law, as the other defendants have, because the state of Missouri, where the Complaint alleges Day resides, has not enacted an anti-SLAPP statute that would apply to the statements at issue.

614 F.3d 677, 679 (7th Cir. 2010). Though a complaint need not contain "detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Here, as explained below, Plaintiffs have failed to state facts sufficient to constitute any cause of action against Day.

**B. The Complaint Does Not State a Claim for Defamation Against Day.**

To state a claim for defamation under Illinois law,[3] a plaintiff must plead facts showing: "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner,* 351 Ill.App.3d 963, 968 (2004). Count III of the Complaint asserts a claim for defamation *per se* by Braun against Day based on Day's alleged statements that "Braun was 'unethical' and that she files 'false copyright lawsuits' without proper investigation" and that Day "used her platform to attack [Braun's] character and reputation." (Compl., ¶¶ 125-129). The Complaint does not include any claim for defamation asserted by Propson against Day. Braun fails to state a claim for defamation against Day for a variety of reasons.

**1. Day's Alleged "False Copyright Lawsuits," "Unethical," and "Rogue" Statements Are Nonactionable Opinions.**

[3] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases). Here, as explained above, the Complaint alleges that Jeanette Braun is a resident of Illinois, is licensed to practice law in Illinois, and operates her law firm, Braun IP law in Illinois; further, Braun IP Law was organized and exists under Illinois law. (Compl., ¶¶ 2-3).

The Complaint alleges that Day defamed Braun by publicly stating that Braun "files 'false copyright lawsuits'" and is "unethical"[4] (Compl., ¶ 125); however, such statements are nonactionable, as they constitute constitutionally-protected *opinions* rather than verifiable statements of fact. "A statement is constitutionally-protected opinion if it cannot reasonably be interpreted as stating actual facts about the plaintiff, when viewed 'from the perspective of an ordinary reader.'" *Doctor's Data, Inc. v. Barrett*, 170 F.Supp.3d 1087, 1113–1114 (N.D. Ill. 2016) (citations omitted); *see also Moriarty v. Greene,* 315 Ill.App.3d 225, 233 (2000) ("Only statements capable of being proven true or false are actionable; opinions are not"). "To determine whether a statement is factual in nature, Illinois courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. If it is clear that the speaker is expressing a subjective view or interpretation, such as when the speaker discloses the facts forming the basis for the statement, the statement is not actionable as defamation." *Doctor's Data,* 170 F.Supp.3d at 1113-14.

Here, Day is expressing her subjective opinion that the copyright claims filed by Braun lacked substantive merit. *See e.g., McGurren v. Hubbard Radio Chicago, LLC*, 2022 WL 602467, at *3 (N.D. Ill. Mar. 1, 2022), *appeal dismissed* 2022 WL 18493433 (7th Cir. Aug. 16, 2022) (statement by employer that it disagreed with Plaintiff's characterization of events underlying EEOC claim was a "classic statement of opinion"). Moreover, the term "false" is not verifiable

---

[4] The Complaint also alleges that Day defamed Braun by "using her platform to attack [Braun's] character and reputation." (Compl., ¶ 125). This allegation cannot support a claim for defamation because Braun fails to identify any specific statements allegedly made by Day. *See Osundairo,* 447 F.Supp.3d at 738–739 (dismissing defamation and false light claims because "plaintiffs do not identify any particular statement that forms the basis for this allegation . . . This imprecision leaves Defendants and this Court guessing as to which statements are at issue"). Thus, the vague allegation that Day attacked Braun's "character and reputation" without precise identification of the actual words used by Day makes "it virtually impossible for [Day] to formulate a responsive pleading" and should be dismissed for lack of specificity. *Id.*

because it has no "precise and readily understood meaning." What does it mean for a DMCA copyright claim or strike to be "false"? That it lacks merit? And by whose standard? Does it mean that there are substantive defenses that the content creator at whom the strike is directed can assert or that the claim was filed for an improper motive? The term "false" is so broad in scope that it "lacks the necessary detail" to have a "precise and readily understood meaning" required to be actionable. *See Hopewell v. Vitullo,* 299 Ill.App.3d 513, 519-20 (1998) (holding that the term "incompetent" is a nonactionable opinion because there are "numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's"); *Green v. Rogers*, 234 Ill.2d 478, 496–498 (2009) (holding that word "misconduct" was too general and imprecise to constitute actionable defamation); *Solaia Tech., LLC v. Specialty Pub. Co.,* 221 Ill.2d 558, 582–583 (2006) ("The phrase 'deeply greedy people' has no precise meaning, and it is not verifiable. Further, the context in which that phrase appeared indicates that it may have been judgmental, but it was not factual"). Individuals speak out all the time regarding the merits of pending litigation, whether it is the litigant her/himself, a legal commentator, etc. Under Braun's distorted interpretation of the law, a lawyer would have a claim for defamation anytime an individual publicly disagreed with the merit of a claim the lawyer filed. That cannot be the law.

Likewise, ***"[w]hether a person's actions are ethical or deceptive is not objectively verifiable***." *See Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1213 (N.D. Ill. 2013) (emphasis added) (citing *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (holding that the Illinois Supreme Court has filed that "calling someone a 'crook' or 'incompetent'" was "nonactionable because such bare statements contain no verifiable factual information"); *Law Offices of David Freydin, P.C. v. Chamara,* 24 F.4th 1122, 1131 (7th Cir. 2022) (generally calling

someone a "chauvinist" or "racist" is a nonactionable statement of opinion). Thus, such allegations cannot state a claim for defamation. *Id*. (dismissing claims for defamation based on nonactionable opinion). Here, the Complaint makes clear that Day's alleged reference to Braun as "unethical" is based on Day's *subjective opinion* of Braun's "aggressive, threatening, and unethical tactic to scare creators off the app" by filing "false copyright strikes." (Comp., ¶¶ 61-62). Again, whether Braun has filed "false copyright strikes" is not objectively verifiable, as explained above, nor is whether Braun is using "aggressive or threatening" tactics. What is "aggressive," "threatening," and unethical" to one person, may not be to another. *Law Offices of David Freydin,* 24 F.4th at 1131 (dismissing defamation claim based on statements made on Internet about a law firm because "there are numerous reasons why someone may have had a 'terrible experience' or suggest that a product or service would be a 'waste of money'"). As the Seventh Circuit has held, "Legal representation is attended by a great deal of uncertainty. Excellent lawyers may lose most of their cases because they are hired only in the most difficult ones, while poor lawyers may win cases because they turn away all the ones that would challenge their meager abilities. Many lawyers are good at some things and poor at others . . ., so that the evaluation of them will depend on what the evaluator is interested in. It would be unmanageable to ask a court, in order to determine the validity of the defendants' defense of truth, to determine whether "in fact" Sullivan is a poor lawyer." *See Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998). The same can be said as to whether a lawyer is "aggressive," "threatening," "unethical," or files "false" claims. Indeed, in *Black v. Wrigley,* 2017 WL 8186996, at *8 (N.D. Ill. Dec. 8, 2017), the district court granted a motion to dismiss a defamation claim based on alleged statements that a lawyer and law professor "acted unethically during litigation and is unfit to be a law professor", finding the statements to be "nonactionable expressions of opinion." The district court reasoned that these "alleged statements

are ***interpretations or characterizations*** of other facts defendants disclosed" and, therefore, nonactionable. *Id.* (emphasis added) (citing *Patlovich v. Rudd*, 949 F. Supp. 585, 594 (N.D. Ill. 1996) (putting "subjective labels" like "reprehensible" and "self-serving" on previously described factual assertions does not add any new facts and is "pure opinion")). The same can be said for Day's characterization or interpretation of Braun's filing of DMCA strikes as "false" or "unethical". As for the allegation that Day "stated her intent to ruin [Braun's] career as a social media lawyer" (Compl., ¶ 62), the only factual allegation supporting this claim is an alleged statement by Day that she wants "to ensure that there is not a rogue attorney on this app." *Id.* Nowhere does Braun identify a statement made by Day that she wanted to "ruin Braun's career," and calling Braun a "rogue attorney" is a nonactionable opinion for the reasons set forth above. *Id.; see also Hopewell,* 299 Ill.App.3d at 520 (statement was nonactionable opinion because it was so "ambiguous and indefinite" that the "veracity" of the statement could not be verified); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc*., 227 Ill.2d 381, 397–399 (2008) ("Specifically, the first amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts").

Moreover, under Illinois law "social contexts are a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion." *Brennan v. Kadner,* 351 Ill.App.3d 963, 970 (Ill. App. Ct. 2004). "Thus, where potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Id.* For example, in *Brennan,* the Court found the defendant's statements could not be construed as a literal assertion that the plaintiff had committed mail fraud because the

"alleged defamatory statement was made in the literary context of 'a regularly featured column by a journalist who regularly expressed his personal opinions on a wide range of public and social issues.'" *Id.; see also Freydin*, 24 F.4th at 1130 (holding that "we must consider the particular social context of these online reviews and what it may signal about their contents. The defendants posted their reviews on . . . Facebook, Yelp, and Google pages, which invite unfiltered comments. We trust that readers of online reviews are skeptical about what they read, both positive and negative"). Here, the Complaint alleges that Day is a "social media content creator" and the alleged defamatory statements were made in connection with posts and stories Day created to post *on her own* Tik Tok account. Given this context, followers and/or other social media users would understand Day's statements to be her own unfiltered subjective views[5].

**2. Day's Alleged "False Copyright Lawsuits" and "Unethical" Statements Are Subject to a Qualified Privilege.**

Allegations that Braun is "unethical" or files "false copyright claims" are subject to a qualified privilege under Illinois law. "Such a privilege may exist 'where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published.'" *Tamburo,* 974 F.Supp.2d at 1214 (citing *DePinto v. Sherwin-Williams Co*., 776 F.Supp.2d 796, 804 (N.D.Ill. 2011)). "Courts also recognize as privileged communications involving a recognized public interest." *Id.* Whether a qualified privilege exists is a question of law for the court. *Id.* Day's statements are privileged because they relate to her interest in protecting her freedom of speech in her social media posts and in *not* being subject to

---

[5] Indeed, courts have "emphasized the generally informal and unedited nature" of statements made on the Internet. *See Ganske v. Mensch*, 480 F.Supp.3d 542, 553 (S.D.N.Y. 2020) (citing *Sandals Resorts Int'l Ltd. v. Google, Inc*., 86 A.D. 3d 32, 44, 925 N.Y.S.2d 407 (1st Dep't 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'"). Social media platforms are "equally — if not more — informal and 'freewheeling' and as such convey "a strong signal to a reasonable reader" that a statement is opinion. *Id.* (referring to statements on Twitter).

DMCA copyright strikes filed by Braun in response to statements made on social media with which Braun's clients disagree. Moreover, the statements made by Day were published *to those* who share that interest, *i.e.,* other individuals who have social media accounts who have been or could be subject to DMCA copyright strikes filed by Braun. Thus, under Illinois law, these statements are subject to a qualified privilege. *See Tamburo,* 974 F.Supp.2d at 1214 (holding that alleged defamatory statements made by owner of dog breed database website that plaintiff "stole" her data and was "unethical" were subject to qualified privilege because they "related to her interests in protecting the substantial time and effort spent accumulating her data and in making it freely available to the community of [dog] breeders, to promote the health of the breed . . . [and] the statements were published to people who likewise had an interest in the way in which the dog pedigree data was made available, and they involved a public interest in how access to information available on the internet is regulated"); *Haywood v. Lucent Tech., Inc*., 169 F.Supp.2d 890, 917 (N.D. Ill. 2001), *aff'd* 323 F.3d 524 (7th Cir. 2003) (holding that defendant's statement that former employee was "unstable" to building security and other employees was privileged because defendant, security guards and other employees have a "compelling interest" in knowing that plaintiff was terminated and no longer allowed on the premises); *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015) (holding that student's statement to university regarding an alleged sexual assault by an employee "clearly implicates both her interest in her own safety and the university's interest in student safety and the resolution of claims against its employees . . . .").

"[O]nce qualified immunity has been identified, a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice — either knowledge of its falsity or in reckless disregard of the truth." *Id.* at 845. "Courts in this district, however, have looked for something ***more than conclusory statements*** in order to infer the defendant knew the

statements were untrue or recklessly disregarded the truth or falsity of those statements." *Id.* (emphasis added) (finding general allegation that defendant made "false statements during the 2014 investigation . . . knowing [those statements] were false" was inadequate to overcome qualified privilege); *Osundairo*, 447 F.Supp.3d at 742 (holding "the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss") (citation omitted). Here, the Complaint contains nothing more than conclusory statement that Day's "defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth . . . ." (Compl., ¶ 133). There are no facts alleged to support this boilerplate allegation, and without such facts, Braun cannot overcome application of the qualified privilege.[6]

**3. Day's Alleged Statement Regarding Information from the Illinois ARDC is Not Actionable.**

The Complaint alleges that Day posted a Tik Tok story in which she stated that the Illinois Attorney Registration & Disciplinary Commission ("ARDC") told Day they received "multiple credible complaints about [Braun] and they have assigned multiple attorneys to investigate this matter." (Compl., ¶ 72). It is unclear whether Braun's defamation claim is based on this allegation, as Count III refers to only the "unethical" and "false copyright claim" allegations. (Compl., ¶ 125). Regardless, such a claim is not actionable. *First,* there is no allegation that this statement is false, and a "false statement" is an essential element of a defamation claim. *Seitz-Partridge v. Loyola University of Chicago*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013). Nowhere in the Complaint does

[6] The Complaint does allege that Day did not "conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts," and "never contacted Plaintiff to verify the information in her posts." (Compl., ¶¶ 59-60). However, a "failure to investigate does not itself establish actual malice if the defendants did not seriously doubt the truth of their assertions." *Hardiman v. Aslam,* 125 N.E.3d 1185, 1189 (Ill. App. Ct. 2019). The Complaint contains no factual allegation establishing that Day "seriously doubted the truth" of her statements.

Braun allege that the ARDC ***did not*** tell Day that it had received multiple credible complaints about Braun and is investigating the matter or that the ARDC ***did not*** actually receive multiple credible complaints.[7] Without such an allegation, Braun cannot state a claim for defamation.

*Second*, a republisher — as Day is here — cannot be held liable unless the plaintiff establishes by clear and convincing evidence that the statement was published with actual malice, that is, with knowledge that the statement was false or with reckless disregard as to whether it was false. *Brennan v. Kadner,* 351 Ill.App.3d 963, 969–971 (Ill. App. Ct. 2004) (citing *Catalano v. Pechous*, 83 Ill.2d 146, 168 (1980)). Here, Day is merely republishing statements allegedly made to her by the ARDC; thus, Braun must allege facts establishing actual malice. As explained above, the Complaint is devoid of any factual allegations to support its conclusory claims of knowledge of falsity or reckless disregard for the truth; its barebones, boilerplate allegations are insufficient. *Third*, the statement is subject to an innocent construction. "The innocent construction rule requires the Court to adopt an innocent construction of allegedly defamatory statements if such an interpretation is reasonable." *McGurren,* 2022 WL 602467 at *3. A statement that the ARDC is investigating Braun does not – in and of itself – indicate that Braun has committed professional misconduct. Given that this statement is subject to an innocent construction, Braun cannot state a claim for defamation based on it.

### C. The Complaint Does Not State a Claim for False Light or Trade Libel Against Day.

Because Braun has failed to state a claim for defamation against Day, its false light and trade libel claims against Day (Counts VII and X) arising out of the same allegations of defamation

[7] Rather, the Complaint alleges *only* that "upon information and belief," the ARDC generally "does not comment or provide input on the merits of an investigation" and would only provide limited information to individuals calling to inquire about a registered attorney. (Compl., ¶¶ 75-76). The Complaint further alleges that as of its filing, Braun has "zero misconduct violations" on her record. (*Id.,* ¶ 77). None of these allegations establish that Day's statement is false.

(Compl., ¶¶ 159, 179), must fail as well. *See e.g., Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well.").

**D. The Complaint Does Not State a Claim for Tortious Interference Against Day.**

Braun has asserted a claim for tortious interference with existing and potential business relationships against all defendants, including Day (Count XIV) based on allegations that Day's "defamatory statements have caused and are likely to continue to cause the public and content creators not to employ" Braun for "legal representation." (Compl., ¶ 196). Under Illinois law, a claim for tortious interference with prospective economic advantage requires that plaintiffs show (1) their reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of that expectancy; (3) purposeful interference by the defendants preventing that expectancy from being fulfilled; and (4) damages resulting from such interference. *See Hackman v. Dickerson Realtors, Inc.*, 557 F.Supp.2d 938, 948 (N.D. Ill. 2008). Braun fails to allege any *facts* regarding the existing or prospective relationships with which Day allegedly interfered. (Compl., ¶ 196). Per the Complaint, the interference claim could be based on *any member of "the public"* — there are no specific relationships identified and no facts alleging that Day knew of these potential or existing relationships. Such conclusory allegations are "too vague to state a viable claim" for tortious interference under Illinois law. *Hackman,* 557 F.Supp.2d at 949 (dismissing tortious interference claim that alleged defendant's conduct "caused unidentified agents to quit Hackman's employ"). Moreover, Braun has alleged no facts to support any allegation that members of the public have failed to employ Braun for legal representation *as a result of* Day's statements. *Id.* (dismissing claim for tortious interference based on "generic" allegations that "fall short of establishing the causation required for a claim for tortious interference with an existing

business relationship" and are "too attenuated" and "too speculative and vague to state a 'plausible entitlement to relief") (citing *Twombly,* 550 U.S. at 559).

**E. The Complaint Does Not State a Claim for Intentional Infliction of Emotional Distress (IIED) Claim.**

Curiously, *Propson* has asserted a claim for IIED against Day based entirely on Day's alleged defamatory statements *about Propson* (Count XVI). (Compl., ¶¶ 203-206). However, Propson did not assert a defamation claim against Day, and the Complaint is devoid of any allegations of defamatory statements made by Day about Propson. Whether this claim was simply a typographical error or an effort by Plaintiffs to "see what sticks," Propson's IIED claim against Day based on nonexistent defamatory statements fails and must be dismissed.

## III. CONCLUSION.

For the foregoing reasons, Day respectfully requests that this Court dismiss Counts III, VII, XI, XIV, and XVI asserted by Braun and/or Propson against Day for failure to state a claim under Rule 12(b)(6).

Dated: February 29, 2024

Respectfully Submitted,

*s/ Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*s/ Amy Doig*
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

***Attorney for Plaintiffs***

Dated: February 29, 2024

/s/ *Brandon J. Witkow*
Brandon J. Witkow