IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ<br><br>　　　　　　Defendants. | Case No. 23 C 16856 |

**DEFENDANTS LILY MARSTON AND JESSICA VASQUEZ'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO O.C.G.A. § 9-11-11.1 AND CAL. CODE CIV. PROC. § 425.16, OR, ALTERNATIVELY, MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## I. INTRODUCTION

Defendants' Lily Marston ("Marston") and Jessica Vasquez ("Vasquez") are the third set of social media content creators who have been targeted in this action by Plaintiff Jeanette Braun/Braun IP Law (collectively, "Braun") – who allegedly is a social media lawyer – for the sole reason that Braun does not like what these two individuals have said about her practice online. As alleged in the Complaint, Marston and Vasquez co-host an online podcast called "Do We Know Them?", in which they allegedly "promote online controversies, rumors, and celebrity gossip." One such "controversy, rumor, and gossip" discussed by Marston and Vasquez was Braun's harassing and intimidating litigation tactics on behalf of her social media clients (including Plaintiff Lauren Propson), which Marston and Vasquez believe to be "unethical." Ironically, in response to Marston and Vasquez voicing their constitutionally-protected *opinions* regarding Braun's "unethical" tactics, Braun has now utilized that very tactic on them. Namely, Braun is attempting to silence their honest but unflattering opinions through *this* patently defective action, in which Braun asserts defamation and a myriad of other tort claims meant to intimidate Marston and Vasquez. While it appears that Braun has made a career out of silencing social media content creators, she cannot be permitted to do so in this case. Not only is Braun's claim for defamation legally insufficient, but it is based on a textbook example of a "protected activity" under applicable anti-SLAPP statutes – statutes which were enacted for the *very purpose* of preventing this type of lawsuit "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." All four causes of action asserted by Braun against Marston and Vasquez should be stricken under the applicable anti-SLAPP statutes and/or dismissed under Fed. R. Civ. Proc. 12(b)(6), and Marston and Vasquez should be awarded their attorneys' fees.

## II. BACKGROUND

### A. Case Background.

Plaintiff Lauren Propson ("Propson") is a licensed mortician and social media personality with allegedly "millions of followers" on Tik Tok, and Plaintiff Jeanette Braun – through Plaintiff Braun IP Law, LLC (collectively, "Braun") – is her lawyer. (Complaint Dkt. 1 ("Compl."), ¶¶ 13-15, 32). Propson hired Braun to "assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to social media platforms hosting a video" created by one of the defendants — "KC the owner and operator of the social media account @CaffinatedKitti" (hereafter referred to as "KC"). (*Id.*, ¶ 32). Plaintiffs have asserted defamation and other tort claims against KC and three other (unrelated) individuals, including Defendants Marston and Vasquez, based on alleged "defamatory statements" these individuals purportedly made on social media regarding the dispute between Propson and KC and Braun's subsequent representation of Propson. The Complaint alleges that Marston and Vasquez are "owners and co-hosts of the 'Do We Know Them' podcast," which allegedly is an "online weekly video podcast" in which Marston and Vasquez "promote online controversies, rumors, and celebrity gossip." (Compl., ¶¶ 78-79). Marston is a "citizen and resident of the State of California" (*id.,* ¶ 8), and Vasquez is a "citizen and resident of the State of Georgia." (*See* Jurisdictional Supplement ("Jur. Supp."), Dkt. 9). Braun has alleged a defamation claim and other related tort claims against Marston and Vasquez based on alleged statements they made about her on their podcast and/or a social media post; Propson has asserted no claims against them.

B. **Marston's and Vasquez's Alleged Defamatory Statements.**

Per the Complaint, "[i]n November 2023, Defendant Vasquez and Defendant Marston began posting several videos discussing the dispute between Defendant KC and Plaintiffs," in which Defendants "expressed a strong contempt for [Plaintiffs]," "intentionally mispronounced [Braun's] name," "published statements about [Braun's] clients and her legal practice." (Compl*.,* ¶¶ 83-87). The Complaint further alleges that "[w]ithout discussing the full context of any specific post or takedown, Defendant Marston stated that Attorney Braun's practices were 'unethical.'" (*Id.,* ¶ 89).

2

Set forth below this allegation is a screenshot from what appears to be Episode 97 of Marston's and Vasquez's podcast titled "Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where Are They NOW" with a subtitle stating as follows: "about a Creator she basically goes to like allegedly unethical lengths to". (*Id.*) The screenshot indicates that the episode has (at the time of the screenshot) received "5.5k" "likes", and that the podcast has (at the time of the screenshot) "97.6k subscribers." (*Id.*) The Complaint alleges that in the same episode, Vasquez also states that Braun is "unethical," and sets forth a screenshot from the same episode (Ep. 97) with the following subtitle: "is that as unhinged as Janet is as unethical as Janet is she". (*Id.*, ¶ 91). The Complaint further alleges that Marston "continued to make false accusations and accused Attorney Braun of unethical behavior on various platforms," without identifying the specific accusations or platforms on which they allegedly were made. (*Id.*, ¶ 92). Finally, the Complaint alleges that in a "since removed post," Marston "made further false accusations and referenced [Braun] through a past client and accused her of 'actively committing perjury.'" (*Id.*, ¶ 93). Below this allegation is a screenshot of what appears to be a 12/10/23 Twitter post by Marston stating: "I gotta say . . . one of our biggest questions in all of this, is do we think demps knows that her embarrassing excuse of a lawyer I using her name while actively committing perjury? Someone might want to tell her." (*Id.*)

### III. ARGUMENT

#### A. Plaintiffs' Claims Should Be Stricken Under Applicable Anti-SLAPP Statutes.

##### 1. The California and Georgia Anti-SLAPP Statutes Apply in this Case.

"In the case of an anti-SLAPP statute raised as a defense to a defamation claim, the choice-of-law question regarding the anti-SLAPP law is treated separately from whether a statement is defamatory because the anti-SLAPP question involves whether a statement is privileged, not whether its content is defamatory." *Osundairo v. Geragos,* 447 F.Supp.3d 727, 743 (N.D. Ill. 2020) (citing

3

*Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722 (N.D. Ill. 2014). Pursuant to dépeçage, the Court can apply different states' laws to different elements of the lawsuit. *See Underground Sols.*, 41 F. Supp. 3d at 722. Although the place of alleged injury might be critical in determining the law applicable to the defamation claim, the choice of law for anti-SLAPP protection involves protecting the speaker's exercise of First Amendment rights – and could lead to the application of different state law. *Id.* at 722; *Chi v. Loyola Univ. Med. Ctr.*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011). Namely, "[i]n determining which law to apply to defenses raised pursuant to anti-SLAPP statutes, courts have found the place where the allegedly tortious speech took place and the domicile of the speaker central to the choice-of-law analysis." *Intercon Sols., Inc. v. Basel Action Network,* 969 F.Supp.2d 1026, 1035 (N.D. Ill. 2013), *aff'd* 791 F.3d 729 (7th Cir. 2015). Here, Marston and Vasquez are "citizen[s] and resident[s]" of the California and Georgia, respectively (Compl., ¶ 8; Juris. Supp., Dkt. 9), and there is no allegation that the alleged defamatory speech originated anywhere other than California and Georgia. Thus, California and Georgia have a strong interest in protecting Marston's and Vasquez's speech, respectively, and their anti-SLAPP laws apply to Braun's claims. *See Osundairo,* 447 F.Supp.3d at 743; *Underground Sols.*, 41 F. Supp. 3d at 725.[1]

      **2.    Martson's and Vasquez's Statements Constitute a "Protected Activity" Under the Georgia and California Anti-SLAPP Statutes.**

As a preliminary matter, the Georgia anti-SLAPP statute (set forth in O.C.G.A. § 9-11-11.1) and the California ant-SLAPP statute (set forth in Code Civ. Proc. § 425.16) are virtually identical, such that Georgia courts look to California case law interpreting the California anti-SLAPP statute for guidance. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 258 (2019). Under both

---

[1] The Georgia anti-SLAPP statute "does not directly conflict with a Federal Rule of Civil Procedure and, thus, is substantive and can apply in federal court. *Amin v. NBCUniversal Media, LLC,* 2022 WL 16964770, at *7 (S.D. Ga. Nov. 16, 2022); *see also Planned Parenthood Fed. of Amer., Inc. v. Center for Medical Progress,* 890 F.3d 828, 833 (9th Cir. 2018) (holding that there was no conflict between anti-SLAPP statute and federal procedural rules when court reviews anti-SLAPP statute based on legal deficiencies under Rule 12(b)(6) standard).

Georgia and California law, the analysis of an anti-SLAPP motion to strike involves two steps. *See ACLU, Inc. v. Zeh,* 312 Ga. 647, 650 (2021) (citing *Wilkes & McHugh,* 306 Ga. at 261; *Clarity Co. Consulting, LLC v. Gabriel,* 77 Cal.App.5th 454, 461–462 (2022) (citing *Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871, 884 (2019)). First, the court must decide whether the party filing the anti-SLAPP motion "has made a threshold showing that the challenged claim is one 'arising from' protected activity." *Wilkes,* 306 Ga. at 262; *see also Clarity,* 77 Cal.App.5th at 461. If so, the court must then "decide whether the plaintiff 'has established that there is a probability that the [plaintiff] will prevail on the claim." *Wilkes*, 306 Ga. at 262 (quoting O.C.G.A. § 9-11-11.1 (b) (1)); *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 819–820 (2011) (second step in anti-SLAPP analysis is to "consider whether the plaintiff has demonstrated a probability of prevailing on the claim").

A "protected activity" under O.C.G.A. § 9-11-11.1 (b) (1) and Code Civ. Proc. § 425.16(b)(1) is conduct "which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under" the Constitution of the United States or the Constitution of the State of Georgia/the California Constitution "in connection with an issue of public interest or concern" or a "public issue" *See* O.C.G.A. § 9-11-11.1(b)(1); Code Civ. Proc. § 425.16(b)(1). "Protected Activities" under *both* the Georgia and California anti-SLAPP statutes include: "[a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"; "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern," and "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." *See Barnwell v. Trivedi*, 366 Ga.App. 168, 170–171 (2022)

5

(citing OCGA § 9-11-11.1); *see* Cal. Civ. Proc. § 425.16(e).[2] The statute "is intended to protect persons exercising their constitutional rights of petition and freedom of speech. To accomplish this goal, the statute is to be construed broadly." *Barnwell,* 366 Ga.App. at 171; *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 421 (9th Cir. 2014) (Section 425.16(a) states that it "shall be construed broadly", and the California Supreme Court has "interpreted the anti-SLAPP statute broadly, cautioning that a narrow construction 'would serve Californians poorly'").

There can be no question that Braun's claims here are based on statements made by both individuals "in a public forum" "in connection with a public issue or an issue of public concern [or public issue]." *See* O.C.G.A. § 9-11-11.1(c)(3)(4); Code Civ. Proc. § 425.16(e). The Complaint alleges that the statements were published on the Internet in connection with a podcast that has at least "97.6k subscribers," and the video itself received at least "5.5k" "likes." (Compl., ¶¶ 89, 91). The Complaint also alleges that Marston made an additional alleged defamatory statement on Twitter. (*Id.,* ¶ 93). Social media and online platforms are considered "public forums" under both Georgia and California anti-SLAPP statutes. *See Equity Prime Mortg. v. Greene for Congress, Inc.,* 366 Ga.App. 207, 216 (Ga. Ct. App. 2022) (statements made on social media fell within scope of O.C.G.A. § 9-11-11.1); *Prehired, LLC v. Provins,* 2023 WL 2717509, at *6 (E.D. Cal. Mar. 30, 2023) ("statements posted on internet sites are posted in a public forum within the meaning of § 425.16(e)(3)").

"To determine whether an issue is an 'issue of public concern' under the [Georgia anti-SLAPP] statute, courts consider 'whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the

---

[2] The California statute varies slightly in text from the Georgia statute, defining an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Code Civ. Proc. § 425.16(e).

6

activity occurred in the context of an ongoing controversy, dispute or discussion, or affected a community in a manner similar to that of a governmental entity.'" *Amin v. NBCUniversal Media, LLC,* 2022 WL 16964770, at *6 (S.D. Ga., Nov. 16, 2022) (citing *Lane Derm. v. Smith,* 861 S.E.2d 196, 204 (Ga. Ct. App. 2021). Courts also "broadly" construe the phrase "issue of public interest" when applying the California anti-SLAPP statute. *Prehired,* 2023 WL 2717509, at *6. "[A]n issue of public interest' ... is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected . . . it is enough that it is one in which the public takes an interest." *See Cross v. Cooper,* 197 Cal.App.4th 357, 373 (2011); *FilmOn.com Inc. v. DoubleVerify Inc.,* 7 Cal.5th 133, 145 (2019) (courts look to "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants'").

Marston's and Vasquez's statements on their podcast, as well as Marston's statement on Twitter, constitute a matter of public interest or concern and, thus, qualify as "protected activities" under both the Georgia and California anti-SLAPP statutes. This is not a matter that affects only Marston, Vasquez and Braun. Rather, they were communicating to their over 97,600 subscribers about Braun's litigation tactics on behalf of her social media clients and their impressions of Braun based on her conduct, namely, their belief that Braun's "practices are unethical." (Compl., ¶¶ 87-93). When the alleged defamatory statements are viewed in the context in which they were made in the video referenced in the Complaint (*i.e.,* Episode 97 of Marston's and Vasquez's podcast), as opposed to merely the screenshots included in the Complaint, it is apparent that Marston and Vasquez are alerting their viewers to their belief that Braun is utilizing unethical litigation tactics and trying to intimidate social media content creators who post content that Braun's clients find unflattering. Indeed, with respect to the screenshot in Paragraph 89 of the Complaint, the allegedly defamatory statements made by Marston and/or Vasquez *in context* are as follows: "And that's the common thread. [Braun] takes down things that are either embarrassing to a creator or negative about a creator"; "She basically goes

7

to like, allegedly, unethical lengths to silence people's critics or 'bullies', as she says, but like, come on."[3] (*See* Episode 97 Link at timestamp 31:06-31:20). Likewise, with respect to the screenshot at Paragraph 91 of the Complaint, the allegedly defamatory statements made by Marston and/or Vasquez *in context* are as follows: "Okay, so that's the common thread, we believe, is that Bunny XO, longtime client, has been referring this girl to everybody, and all of the sudden Janet[4] is way too many people's lawyer, as I said. The crazy part is, that as unhinged as Janet is, as unethical as Janet is, she is finding some success in her practices, like whether short term or not, but like, she's kind of low-key slaying, but in the worst way." (*See* Episode 97 Link at timestamp 32:19-40). They go on to discuss how "it seems like" Braun was "successfully silencing [content creators], and no one was coming forward until now" and "it's just like, there is no shortage of people [Braun] has harassed with legalese and a bunch of gibberish . . . most people don't understand, and they'll just be like . . . I'm going to jail." (*See* Episode 97 Link at 33:01-33:27). Marston's Twitter post alleged in Paragraph 93 of the Complaint similarly relates to a statement regarding unethical tactics engaged in by Braun on behalf of one of her social media clients referred to as "demps." (Compl., ¶¶ 63, 65, 93).

Under both Georgia and California law, statements that Braun is engaging in unethical or harassing conduct is unquestionably a matter of public concern affecting a large group of individuals, *i.e.*, social media content creators who might be targeted by Braun or who might be considering using

---

[3] The complete video in which the alleged defamatory statements were made can be viewed using the link: Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where Are They NOW? (Ep 97) (youtube.com) (hereafter, the "Episode 97 Link"). As this Court held in considering transcripts of television shows and a podcast on which defendants made alleged defamatory statements in ruling on the sufficiency of the complaint: "[w]hile courts normally do not consider such extrinsic evidence without converting a motion to dismiss into one for summary judgment, where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss." *Osundairo*, 447 F.Supp.3d at 738. "This standard is met" where a plaintiff "explicitly refer[s]" to a media appearance "in their Complaint and the very statements at issue were made by Defendants during these media appearances." *Id.* Because Braun explicitly refers to the Episode 97 of Marston's and Vasquez's podcast "Where are They NOW?" in the Complaint, and the very statements at issue were allegedly made by Marston and Vasquez in Episode 97, the Court should consider the video itself (rather than screenshots from the video) when determining the sufficiency of the Complaint. Further, given that the video is over 1 hour and 24 minutes in length, Defendants feel a lengthy written transcript of the entire episode would not be useful to the Court; however, Defendants are happy submit a written transcript of the entire Episode upon the Court's request, should the Court deem it useful.

[4] As alleged in the Complaint, Marston and Vasquez referred to Braun as "Janet" in Episode 97. (Compl., ¶ 85).

8

Braun as a lawyer. Marston's and Vasquez's warnings to content creators about Braun's conduct in Episode 97 is a "protected activity" under the anti-SLAPP statutes, ***regardless of whether the warning was sincere, accurate or truthful.*** See *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,* 946 F.Supp.2d 957, 969 (N.D. Cal. 2013) (emphasis added) (finding that online blog post "warning ... consumers not to do business with plaintiffs because of their allegedly faulty business practices" concerns an issue of public interest, and "[i]t makes no difference, for purposes of the public interest requirement, that the warning was not sincere, accurate, or truthful"); *Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012) (concluding that online statements regarding plaintiff's character and business practices were "of public interest" because they "were intended to serve as a warning to consumers about his trustworthiness."); *ACLU,* 312 Ga. at 650 (holding that statement on blog post that public defender had charged an indigent defendant was protected under Georgia anti-SLAPP).[5]

### 3. There is No Probability That Braun Can Prevail on Her Claims.

Once a defendant has established that the claims asserted against it arise out of protected activity, as Marston and Vasquez have done here, the burden then shifts to the plaintiff to demonstrate that there is a probability that the plaintiff will prevail on his or her claims. *See* O.C.G.A. § 9-11-11.1(b)(1); Code Civ. Proc. § 425.16(b)(1). In federal district court, an anti-SLAPP motion "may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," and if "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as

---

[5] Marston's and Vasquez's statements also constitute a "protected activity" under both Georgia and California anti-SLAPP statutes because they were made in connection with an issue under consideration or review by a legislative, executive, or judicial body, ***or any other official proceeding authorized by law.***" *See* O.C.G.A. § 9-11-11.1(c)(2) (emphasis added); Code Civ. Proc. § 425.16(e)(2) (emphasis added). And *"*statement made in connection with an issue under consideration by any official proceeding" is a "protected activity. *Johnson v. Cordtz*, 366 Ga.App. 87, 91 (2022). The filing of a complaint or copyright strike under the DMCA constitutes an "official proceeding" as it is expressly "authorized by law." *See* 17 U.S.C. § 512(c)(3)). Thus, it constitutes an "official proceeding authorized by law," and Marston's and Vasquez's alleged statements made in connection with DMCA strikes filed by Braun are protected.

9

a motion under Rule 12(b)(6) *except that the attorney's fee provision of [the anti-SLAPP statute] applies*." *Planned Parenthood*, 890 F.3d at 834 (9th Cir. 2018); *see also Osundairo,* 447 F.Supp.3d at 744 (same). Though a complaint need not contain "detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Here, Braun has failed to state facts sufficient to constitute any cause of action against Marston and Vasquez; thus, each of the claims should be stricken and attorneys' fees should be awarded to Marston and Vasquez under the Georgia and California anti-SLAPP statutes. *See* Code Civ. Proc. § 425.16(c)(1); O.C.G.A. § 9-11-11.1(b.1).

      a.      **Braun Cannot Prevail on Her Defamation Claim.**

To state a claim for defamation under Illinois law,[6] a plaintiff must plead facts showing: "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner,* 351 Ill.App.3d 963, 968 (2004). Here, Count IV of the Complaint alleges that Marston and Vasquez defamed Braun by "publicly stating that [Braun] is unethical and commits perjury" and "using their platform to attack [Braun's] character and reputation."[7] (Compl., ¶ 135). The allegation that Marston and Vasquez defamed Braun by stating that Braun is "unethical" cannot state a claim for defamation under Illinois law, as such a statement constitutes a nonactionable opinion protected under the First Amendment.

---

[6] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura,* 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases).

[7] A general allegation that Marston and Vasquez defamed Braun by "using their platform to attack [Braun's] character and reputation," does not state a claim for defamation under Illinois law because it does not "identify any particular statement that forms the basis for this allegation." *Osundairo,* 447 F.Supp.3d at 738–739 (holding that "plaintiffs do not identify any particular statement that forms the basis for this allegation . . . This imprecision leaves Defendants and this Court guessing as to which statements are at issue").

"A statement is constitutionally-protected opinion if it cannot reasonably be interpreted as stating actual facts about the plaintiff, when viewed 'from the perspective of an ordinary reader.'" *Doctor's Data, Inc. v. Barrett*, 170 F.Supp.3d 1087, 1113–1114 (N.D. Ill. 2016) (citations omitted). "To determine whether a statement is factual in nature, Illinois courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. If it is clear that the speaker is expressing a subjective view or interpretation, such as when the speaker discloses the facts forming the basis for the statement, the statement is not actionable as defamation." *Id.* Here, it is clear that Marston and Vasquez are expressing their subjective opinion that Braun is using harassing litigation tactics to intimidate social media content creators who post unflattering statements about her clients, tactics that Marston and Vasquez deem to be "unethical." Moreover, it is impossible to "verify" whether Braun's conduct is unethical because the term has no "precise and readily understood meaning." *See Solaia Tech., LLC v. Specialty Pub. Co.,* 221 Ill.2d 558, 582–583 (2006) ("The phrase "deeply greedy people" has no precise meaning, and it is not verifiable . . . it may have been judgmental, but it was not factual. This statement is not actionable"). Indeed, in *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1212 (N.D. Ill. 2013), the court held that statements that a plaintiff's actions were "unethical" and "deceitful" are "***plainly subjective***", ***not "objectively verifiable",*** and ***"not actionable." Id.*** (emphasis added); *see also Black v. Wrigley*, 2017 WL 8186996, at *8 (N.D. Ill. Dec. 8, 2017) (holding that "Defendant's alleged statements that [lawyer and law professor] acted unethically during litigation and is unfit to be a law professor are also nonactionable expressions of opinion"); *Hopewell v. Vitullo,* 299 Ill.App.3d 513, 519-20 (1998) (holding that the term "incompetent" is a nonactionable opinion because there are "numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's"); *Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir.

11

1998) ("It would be unmanageable to ask a court, in order to determine the validity of the defendants' defense of truth, to determine whether "in fact" Sullivan is a poor lawyer"). Moreover, the Complaint admits that the "unethical" statement was made "[w]ithout discussing the full context of any specific post or takedown." (Compl., ¶ 89). Without factual context, a statement cannot be actionable. *Piersall v. SportsVision of Chicago,* 230 Ill.App.3d 503, 510 (Ill. App. Ct. 1992)

Equally defective is Braun's allegation that Marston defamed Braun by stating in a Twitter post that she "commits perjury." (Compl., ¶ 135). The Twitter post does not identify any particular statement made by Braun that Marston contends constitutes perjury. Essentially, this statement is nothing more than Marston calling Braun a liar without any factual context. Illinois law is clear that a "general statement that someone is a liar, not being put in context of specific facts, is merely opinion." *Piersall,* 230 Ill.App.3d at 510; *Schivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 762 (Ill. App. Ct. 2002) (holding that statement that plaintiff was "cheating the city," in the absence of any factual context, "was a nonactionable opinion, as it was too broad, conclusory, and subjective to be objectively verifiable"). For this statement to be actionable, Marston's Twitter post would have had to provide some *factual context* as to *why* or *how* Braun had "committed perjury," and it did not. *See Black,* 2017 WL 8186996, at *8 (statement that plaintiff's testimony lacked credibility was opinion because defendant "did not specify the subject of the testimony to which she refers or explain what made the testimony less credible"; thus, it "does not contain 'an objectively verifiable assertion'").

Moreover, under Illinois law "social contexts are a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion." *Brennan,* 351 Ill.App.3d at 970. "Thus, where potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Id.* (statements was deemed opinion

12

because it "was made in the literary context of 'a regularly featured column by a journalist who regularly expressed his personal opinions on a wide range of public and social issues'"); *see also Freydin*, 24 F.4th at 1130 (holding that statements posted on "Facebook, Yelp, and Google pages, which invite unfiltered comments" were opinion and not fact because "readers of online reviews are skeptical about what they read, both positive and negative"). Here, the Complaint alleges that Marston and Vasquez made the alleged defamatory statements on an online podcast that "promote[s] online controversies, rumors, and celebrity gossip . . . ." (Compl., ¶ 79). Certainly, their viewers would understand that their general statements regarding Braun's ethics or litigation tactics in the context of an online controversy to be opinions. The fact that these statements were made on the Internet and social media posts further underscore that they constitute an opinion.[8]

Not only are Marston's and Vasquez's statements about Braun nonactionable opinions, but they are also subject to a qualified privilege under Illinois law. "Such a privilege may exist 'where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published.'" *Tamburo,* 974 F.Supp.2d at 1214 (citation omitted). "Courts also recognize as privileged communications involving a recognized public interest." *Id.* Whether a qualified privilege exists is a question of law for the court. *Id.* Marston's and Vasquez's statements are privileged because they relate to their own and their viewers' interest in protecting their freedom of speech as social media content creators and *not* being subject to intimidating litigation tactics by Braun on behalf of her clients, as well as the public interest in protective free speech on social media. *Id.; Haywood v. Lucent Tech., Inc.*, 169 F.Supp.2d 890, 917 (N.D. Ill. 2001),

---

[8] Courts have "emphasized the generally informal and unedited nature" of statements made on the Internet. *See Ganske v. Mensch*, 480 F.Supp.3d 542, 553 (S.D.N.Y. 2020) (citing *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D. 3d 32, 44 (1st Dep't 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'"). Social media platforms are "equally — if not more — informal and 'freewheeling' and as such convey "a strong signal to a reasonable reader" that a statement is opinion. *Id.* (referring to statements on Twitter).

13

*aff'd* 323 F.3d 524 (7th Cir. 2003); *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015). "[O]nce qualified immunity has been identified, a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice-either knowledge of its falsity or in reckless disregard of the truth," but must do so with "***more than conclusory statements***." *Id.* at 845 (emphasis added). Here, the Complaint fails to satisfy this burden. (Compl., ¶ 143). Because the Complaint fails to state a claim for defamation, Braun cannot satisfy her burden under the Georgia and California anti-SLAPP statutes of demonstrating a probability of prevailing on the claim.

### b. Braun Cannot Prevail on Her False Light and Trade Libel Claims.

Braun cannot demonstrate a probability of prevailing on her false light claim (Count VIII) or trade libel claims because they are based on the same failed allegations as Braun's defamation claim. (Compl., ¶¶ 164-167, 183-185). Because Braun cannot state a claim for defamation (*see* Section III.A.3(a), *supra*), these claims must fail as well. *See Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well.").

### c. Braun Cannot Prevail on Her Tortious Interference Claim.

A claim for tortious interference requires that plaintiffs show (1) their reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of that expectancy; (3) purposeful interference by the defendants preventing that expectancy from being fulfilled; and (4) damages resulting from such interference. *See Hackman v. Dickerson Realtors, Inc.*, 557 F.Supp.2d 938, 948 (N.D. Ill. 2008). Braun fails to allege any specific facts regarding the existing or prospective relationships with which Marston and Vasquez allegedly interfered; rather, the Complaint alleges only conclusory allegations that they have caused "the public and content creators not to employ" Braun. (Compl., ¶ 196). Braun identifies no specific relationships and alleges no facts that Marston or Vasquez knew of these relationships. Such conclusory allegations are "too vague to state a viable

14

claim" for tortious interference. *Hackman,* 557 F.Supp.2d at 949 (dismissing tortious interference claim that alleged defendant's conduct "caused unidentified agents to quit Hackman's employ"). Moreover, Braun has alleged no facts to support any allegation that members of the public have failed to employ Braun for legal representation *as a result of* Marston's or Vasquez's statements. Instead, the Complaint relies on a conclusory assertion that their statements "have caused" or are "likely to continue to cause" people not to hire Braun. That simply is not enough to state a claim for tortious interference. *Id.* (dismissing claim based on "generic" allegations that "fall short of establishing the causation required for a claim for tortious interference with an existing business relationship" and are "too attenuated" and "too speculative and vague to state a 'plausible entitlement to relief'").

\* \* \* \*

Because the second prong of the anti-SLAPP statutes has been satisfied, Marston and Vasquez respectfully request that the Court strike the claims and award them their attorneys' fees.

### B. Alternatively, Braun's Claims Should Dismissed Under Fed. R. Civ. P. 12(b)(6).

As explained above in Sections III.A.3(a) through (c) *supra*, Braun is not likely to prevail on any of the four causes of action asserted against Marston and Vasquez because they are legally insufficient, *i.e.*, they fail to state a claim under Fed. R. Civ. P. 12(b)(6). If the Court determines that Marston's and Vasquez's conduct is not a protected activity under applicable anti-SLAPP statutes, Marston and Vasquez respectfully request that the Court dismiss the claims under Rule 12(b)(6).

### III. CONCLUSION.

For the foregoing reasons, Marston and Vasquez respectfully request that this Court: (1) strike Counts IX, VIII, XII, and XIV of the Complaint and award them the attorneys' fees they have incurred in connection with this motion under O.C.G.A. § 9-11-11.1 and Code Civ. Proc. § 425.16; or, alternatively, (2) dismiss Counts IX, VIII, XII, and XIV for failure to state a claim under Rule 12(b)(6).

Dated: February 29, 2024　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　*s/　　Brandon J. Witkow*
　　　　　　　　　　　　　　　　　　　Attorney for Defendants

　　　　　　　　　　　　　　　　　　　Brandon J. Witkow [pro hac vice]
　　　　　　　　　　　　　　　　　　　WITKOW | BASKIN
　　　　　　　　　　　　　　　　　　　21031 Ventura Boulevard, Suite 700
　　　　　　　　　　　　　　　　　　　Woodland Hills, California 91364
　　　　　　　　　　　　　　　　　　　(818) 296-9508
　　　　　　　　　　　　　　　　　　　bw@witkowlaw.com


　　　　　　　　　　　　　　　　　　　*s/　　　Amy Doig*
　　　　　　　　　　　　　　　　　　　Attorney for Defendants

　　　　　　　　　　　　　　　　　　　Amy M. Doig
　　　　　　　　　　　　　　　　　　　COZEN O'CONNOR
　　　　　　　　　　　　　　　　　　　123 N. Wacker Dr., Suite 1800
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　(312) 474-7900
　　　　　　　　　　　　　　　　　　　adoig@cozen.com

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

*Attorney for Plaintiffs*

Dated: February 29, 2024 /s/ *Brandon J. Witkow*
Brandon J. Witkow