**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN,<br>BRAUN IP LAW, LLC &<br>LAUREN PROPSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | Hon. J. Mary Rowland |
| REBEKAH M. DAY NEE BOXX,<br>KC THE OWNER & OPERATOR OF THE<br>ONLINE SOCIAL MEDIA ACCOUNT<br>@CAFFINATEDKITTI,<br>LILY MARSTON, &<br>JESSICA VAZQUEZ, | ) ) ) ) ) ) ) | Mag. J. M. David Weisman<br><br>**DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

**AMENDED COMPLAINT**

Plaintiffs, Jeanette Braun ("Braun"), Braun IP Law, LLC ("Braun Law"), and Lauren Propson ("Propson"), ("collectively Plaintiffs"), present their Complaint against Rebekah M. Day nee Boxx ("Day"), Jessica Vazquez ("Vazquez"), and Lily Marston ("Marston"), and KC[1] the user and operator of the social media accounts @CaffinatedKitti ("KC" or "CaffinatedKitti")[2] and alleges as follows:

**NATURE OF THE CASE**

1.      This is a diversity action asserting Illinois state law claims for defamation *per se*, trade libel, false light, intentional infliction of emotional distress, and tortious interference with business interests, and Wisconsin state law claims for defamation *per se*, defamation *per quod*, tortious interference with contract, trade libel, and intentional infliction of emotional distress because of the Defendants' publication and dissemination of slanderous and defamatory statements

1

regarding the Plaintiffs that were false, harmful, and offensive, and made for monetary and commercial gain.

## PARTIES

2.      Plaintiff Jeanette Braun is a citizen of Illinois.

3.      Plaintiff Braun Law is a limited liability company organizing and existing under the laws of the State of Illinois, with a contact address of 1600 W. Lake Street, Suite 103B, Addison, Illinois 60101.

4.      Plaintiff Lauren Propson is a citizen of the State of Wisconsin.

5.      Defendant Rebekah Day nee Box is a citizen of the State of Missouri.

6.      Defendant KC is a citizen of the State of Georgia.

7.      Defendant Jessica Vazquez is a citizen of the State of Georgia.

8.      Defendant Lily Marston is a citizen of the State of California.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action by Plaintiff Braun, who is a citizen of the State of Illinois and Braun Law, an Illinois limited liability company, against Defendants KC, Day, Marston, and Vazquez, who upon information and belief are citizens of various states including Missouri, Georgia, and California, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

10.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391 because Plaintiff Jeanette Braun and Plaintiff Braun Law are in this District and the reputational harm to Plaintiff Braun and her legal practice occurred in this District.

11.     In accordance with Rule 20(a)(1) of the Federal Rules of Civil Procedure, Ms. Braun, Braun Law, and Propson are permissively joined in bringing this action as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and the same questions of law or fact common to all Plaintiffs will arise in this action. The allegations central to the Plaintiffs' claims arise from the same videos and series of videos posted by the Defendants.

12.     Defendants KC, Day, Marston, and Vazquez are properly joined in this action pursuant to Rule 20(a)(2) as their involvement in the same series of transactions or occurrences, and the same questions of law or fact are common to all Defendants.

## **BACKGROUND**

***Defamatory Statements Against Plaintiff Lauren Propson pka "Lauren the Mortician" by Defendant KC pka @CaffinatedKitti***

13.     Ms. Propson is a licensed mortician and operates a social media account known publicly as "Lauren the Mortician."

14.     Ms. Propson posts social media videos and commentary that bring awareness about common safety issues causing death. Her content provides lighthearted and educational videos that discuss death, the loss of loved ones, and demystify occupations and professions that work with deceased persons.

15.     Defendant KC is a social media personality and influencer, publicly known as @CaffinatedKitti.

16.     Defendant KC describes herself as a "villain life coach" and uses her platform to create content that she monetizes from views and user engagement.

17.     Upon information and belief, Defendant KC followed Ms. Propson on social media and viewed her content.

18.     On or around October 24, 2023, Defendant KC published a video of herself to TikTok where she made statements about Ms. Propson and identified her by her public persona "Lauren the Mortician."

19.     In the October 24, 2023 video, Defendant KC goes on to accuse Ms. Propson of being "transphobic" and a "TERF" because she liked posts by a conservative social media personality, who is in a gay relationship.

20.     The video starts off with the following monologue by Defendant KC:

> "Lauren the Mortician is a TERF, I have **receipts**, I have **deets**, and you should just go ahead and take a seat."

21.     "TERF" is a derogatory slur in feminist groups and a highly offensive term.

22.     "TERF" is an acronym standing for "Trans-Exclusionary Radical Feminist" which is a term used to refer to or describe "an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans women in the feminist movement." Dictionary.com, TERF Definition (accessed on Dec. 12, 2023), https://www.dictionary.com/browse/terf.

23.     "DEETS" is slang for "details." Merium-Webster.com, DEETS Definition (accessed on March 21, 2024), https://www.merriam-webster.com/dictionary/deets.

24.     Upon information and belief, the above statement's reference to "receipts" and "deets" was intended to tell audiences that Defendant KC had verifiable proof that Ms. Propson was transphobic.

25.     Urban Dictionary, an online resource that defines modern slang and internet slang, defines "receipts" as, "Evidence or proof. Often in the form of screenshots or saved snaps." [3]

26.     Lauren the Mortician is the only person discussed and accused in the video (aside from references to the other social media personality).

4

27. Defendant KC goes on to explain the meaning of her opening statement in the video by stating:

> "[A]nd not only was she following him but she was actively liking incredibly **transphobic** and hateful rhetoric and content. So, as you can see here, I decided to make a fun and helpful little list of all the different videos I caught her liking."

28. Along with the video, Defendant KC announced that she compiled a list of links to posts that Ms. Propson "liked" contained "transphobic and hateful rhetoric."

29. In using the word "TERF" to describe Ms. Propson, Defendant KC provided the following clarification in her video after discussing the posts and beliefs allegedly endorsed by Ms. Propson by noting:

> "[she is] trying to divert the attention by saying she is just pro LGBTQ and bisexual as if that is some kind of hall pass that prevents her from being prejudiced to other sub-genres of the rainbow. Just like any other person can be biphobic, **bi people can be transphobic**. (Text Caption: "Unfriendly Reminder: we see transphobic so we're saying transphobic. That ain't bullying it's an observation").

30. In showing the list in her video, Defendant KC expressed, "this is obsessive. Maybe – but I just like being *thorough* when dealing with accusations. Seems responsible to me."

31. Upon information and belief, none of the videos Defendant KC linked contain transphobic content.

32. Upon information and belief, Defendant KC's motive and intent behind these posts were to tarnish and damage Ms. Propson's reputation while boosting her own social media career.

33. In explaining her reasoning for her accusations, Defendant KC stated that she was making her claims because people were confusing Ms. Propson's "Lauren the Mortician" persona with Defendant KC's "@CaffinatedKitti" persona:



*Id.*

34.     Upon information and belief, Defendant KC is aware that, at the time of her post, Defendant Propson followed and liked pro-LGBTQ and pro-trans rights content on social media.

35.     Upon information and belief, Defendant KC acted with malice in stating that Ms. Propson was a TERF and transphobic because she either knew or had a reckless disregard for the truth that Ms. Propson followed pro-LGBTQ and pro-trans rights content.

36.     Upon information and belief, Defendant KC chose to highlight only Ms. Propson's interactions with the conservative social media personality, while ignoring or recklessly disregarding evidence contradicting her transphobia claims.

37.     Upon information and belief, Defendant KC made her false statements to tarnish Ms. Propson's reputation and career as a social media influencer.

### *Damage to Ms. Propson's Reputation*

38.     Due to Ms. Propson's following, the allegation that she is transphobic spread quickly throughout the internet and became the source of multiple posts, comments, and blog articles.

39.     The impact of this allegation caused Ms. Propson immediate and irreparable harm to her reputation, lowered her in the eyes of her community, and deterred people in the content creation community from associating with her.

40.     Specifically, Ms. Propson lost numerous followers, her contract with a famous and popular travel documentary channel, and a podcast deal that was in negotiations.

41.     In her social media career, Ms. Propson amassed millions of followers on the social media platform TikTok, as well as sponsorships and monetization of her videos.

42.     Of these sponsorship deals, Ms. Propson secured a brand partnership in 2023 with a famous travel documentary channel.

43.     As a part of the sponsorship, Ms. Propson was paid to make monthly videos for the travel documentary channel.

44.     Upon information and belief, Defendant KC was aware of Ms. Propson's sponsorships and her contract with the famous travel documentary channel from studying Ms. Propson's Lauren the Mortician social media account.

45.     Upon information and belief, fans of Defendant KC's commented on the famous travel documentary channel's posts accusing Ms. Propson of being transphobic.

46.     Upon information and belief, this led to the famous travel documentary channel deleting comments accusing Ms. Propson of being transphobic.

47.     On or about October 31, 2023, representatives told Ms. Propson that due to the online controversy surrounding her, they needed to protect themselves from the negativity and would no longer post her videos.

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

***Defamatory Statements Against Plaintiff Braun and Braun Law by Defendant KC pka @CaffinatedKitti***

48.    Along with the video, Defendant KC used a copyrighted photograph belonging to Ms. Propson and a screenshot of copyrighted text that Ms. Propson authored to engage with her fans and obtain likes.

49.    The copyrighted text and image did not relate to Defendant KC's allegations that Ms. Propson was transphobic.

50.    Defendant KC did not transform, comment on, or critique Ms. Propson's photo and copyrighted text.

51.    Defendant KC's video used Ms. Propson's photograph without her permission and violated her registered copyrights in the work.

52.    Defendant KC's video used Ms. Propson's copyrighted text without her permission and violated her registered copyrights in the work.

53.    Ms. Propson hired Attorney Jeanette Braun to assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to the social media platforms hosting the video.

54.    Ms. Braun filed a DMCA complaint to the social media company Meta regarding the use of copyrighted material on Defendant KC's post on the social media site Facebook that copied Ms. Propson's copyright protectable material.

55.    The DMCA complaint, and request for removal of Defendant KC's content, was limited to just the post identified.

56.    As a part of its DMCA process, Meta requests a copy of the original work that is being infringed and verifies that the original work is being used before removing the infringing post.

8

57.     Upon information and belief, Meta/Facebook does not remove posts unless there is evidence to substantiate the copyright claim in the DMCA removal request.

58.     Facebook removed Defendant KC's content because Ms. Braun provided the information required when using the DMCA process, including evidence that Ms. Propson owned the copyright to the material included in Defendant KC's post.

59.     On November 4, 2023, Meta removed Defendant KC's post that copied Ms. Propson's copyright protectable material.

60.     Upon information and belief, on or around November 4, 2023, Defendant KC's entire Facebook account was locked by Meta and Defendant KC could not access it.

61.     On or around November 4, 2023, to November 5, 2023, in TikTok story posts[1] following Meta locking Defendant KC's account, Defendant KC posted various videos where she appeared irrational and engaging in erratic behavior, such as threatening people online through various social media platforms.

62.     The Plaintiffs were concerned about Defendant KC's mental health and safety; which prompted them to call a wellness check to Defendant KC's local non-emergency hotline.

63.     Defendant KC used her social media accounts to express her anger and resentment of Plaintiff Jeanette Braun and her law firm.

64.     On or about November 13, 2023, counsel for Defendant KC contacted Ms. Braun to engage in a discussion about the copyright infringement report and were in settlement discussions.

---

[1] A TikTok Story post is a brief video on the platform that remains visible for 24 hours or until the user decides to delete it, and typically once the 24 hours expires, the post is not reposted or republished.

65.     On or about November 21, 2023, while settlement discussions were still ongoing, Defendant KC posted a video accusing Ms. Propson of using Ms. Braun to file "false copyright claims" with social media platforms.

66.     In the same video, Defendant KC accused Ms. Braun of filing bad faith copyright infringement strikes against Defendant KC.

67.     In the video, Defendant KC links and tells her followers to visit her GoFundMe page.

68.     As of the filing of this Amended Complaint, the video identified above was viewed over 928,000 times.

69.     On November 25, 2023, Defendant KC posted the same video again on TikTok. As of December 14, 2023, the second posting has received over 263,000 views and published it through this link: https://www.tiktok.com/@caffinatedkitti/video/7305440685589630250.

a.     @CaffinatedKitti, Nov. 25, 2023, Post, tiktok.com (accessed on Dec. 15, 2023), https://www.tiktok.com/@caffinatedkitti/video/7305440685589630250

70.     Upon information and belief, on or around November 21, 2023, Defendant KC created a page on the donation platform GoFundMe and titled the fundraiser "Kitti is a Spiteful Cee You Next Tuesday."

71.     On the GoFundMe page, Defendant KC identified Ms. Braun in her social media posts by posting communications she had with Ms. Braun and those communications contained Ms. Braun's first name and last name.

72.     On November 21, 2023, Defendant KC posted a Tik Tok video and posts on GoFundMe, where she identified Plaintiff Jeanette Braun by her first and last name (see below):



73.     On or around December 8, 2023, Defendant KC published on her GoFundMe page her response to Ms. Braun's cease and desist letter.

74.     In the December 8, 2023 post, Defendant KC's response letter addressed Ms. Braun by her first name, Jeanette.

75.     The subject line of the letter in the December 8, 2023 GoFundMe post reads, "False Copyright Claim."

76.     In the letter, Defendant KC states

> "I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's Scandals, and while I understand your desire to protect a creator you enjoy - if you were not legally obtained as counsel for her and I speak on this via my platform, your actions are going to cause her *significantly* more strife."

11

77.     Upon information and belief, Defendant KC's publication of her November 4, 2023, letter claiming that Ms. Braun filed a "false copyright claim" was intended to paint Ms. Braun as an attorney who files baseless or frivolous copyright claims.

78.     Upon information and belief, Defendant KC made the false claim that Ms. Braun files "false copyright claims" to encourage her fans to donate to her legal defense, and paint Ms. Braun in a false light.

79.     Upon information and belief, Defendant KC knowingly published her false accusation that Ms. Braun did not represent Ms. Propson after learning that Ms. Braun was in fact retained by Ms. Propson.

80.     Upon information and belief, Defendant KC published this information to false portray Attorney Braun as zealous fan that abused her position as an attorney.

81.     The below screenshot is an accurate copy of the GoFundMe Post:

**Updates (5)**

**December 8th, 2023** by Kitti LaLune, Organizer
The email I sent in response to the copyright claim. Reminder that my following post indicated I was ensuring I was legally doing what was correct before whistleblowing. Also according to her call to the police, Jeanette wants to report this to the FBI (My reading of this coming soon)

It Reads

Subject Line: False Copyright Claim - Sent 1:40pm 11/4/2023
Good afternoon Jeanette,

I've reached out to the owner of the video you had taken down for copyright, and she confirmed that she did not have any issue with my reposting of her content- as I explicitly asked for her permission beforehand and still maintain it.

My team and I would love further details on your client and how the video had grounds for a copyright strike, as it clearly falls under fair use. ("Under the fair use doctrine of the U.S. copyright statute, it is permissible to use limited portions of a work including quotes, for purposes such as commentary, criticism, news reporting, and scholarly reports. There are no legal rules permitting the use of a specific number of words, a certain number of musical notes, or percentage of a work. Whether a particular use qualifies as fair use depends on all the circumstances. See, Fair Use Index, and Circular 21, Reproductions of Copyrighted Works by Educators and Librarians." if you needed a refresher.)

I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's scandals, and while I understand your desire to protect a creator you enjoy- if you were not legally obtained as counsel for her and I speak on this via my platform, your actions are going to cause her significantly more strife. I would imagine it would reflect very negatively on you and your practice as well for you to attempt to use your personal law firm to intimidate people because you don't like what they have to say. You should patch me in with your business development and PR team, I'm sure they'd have some interesting advice for you.

I look forward to your response,
Kitti

12

82. The below screenshot is an accurate copy of the GoFundMe page.

83. Kitti Lalune, "Kitti is Spiteful Cee You Next Tuesday" gofundme.com (accessed on Mar. 21, 2024), https://www.gofundme.com/f/cc9n3-kitti-is-a-spiteful-cee-you-next-tuesday.

84. Upon information and belief, Defendant KC receives compensation from TikTok based on the number of views her videos receive and thus is profiting from her posts that spread the false statements about Ms. Braun and Ms. Propson that are described in this Complaint.

### *Defamatory Statements Made by Defendant Rebekah Day nee Boxx*

85. Defendant Day is a social media content creator known professionally as "Bekah Day" and holds herself out to be an unbiased content creator and an independent investigative reporter.

86. Upon information and belief, Defendant Day has no professional training or degree in journalism.

87. Bekah Day, "Bekah Day Profile" linkedin.com (accessed on Dec. 15, 2023), https://www.linkedin.com/in/bekah-day-98457a177/.

88. Defendant Day creates content that disparages social media creators and celebrities, which she monetizes for income from TikTok.

89. Upon information and belief, Defendant Day receives compensation from TikTok based on the number of views a video receives.

90. During her social media career, Ms. Day has been accused of posting false and untrue statements about public figures, such as Grammy award winning musician Diplo and other prominent social media personalities.



91.     In November 2023, Defendant Day made content regarding Defendant KC's claims about Ms. Propson and Ms. Braun.

92.     Upon information and belief, Defendant Day did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts about Ms. Braun and Ms. Propson.

93.     Defendant Day never contacted the Plaintiffs to verify the information in her posts.

***Plaintiff Braun is "unethical" and files "false copyright strikes."***

94.     In November 2023, Defendant Day posted a "deep dive" video about Defendant KC's dispute with the Plaintiffs.

---

2    Bekah Day, Post September 5, 2023, tiktok.com (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7275351757197200683?lang=en.; Bekah Day, Post Oct. 5, 2023 (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7286578172643003678?lang=en.

95.     In her "deep dive" video about Defendant KC's dispute with the Plaintiffs, Defendant Day identified Ms. Braun by her first and last name.

96.     Upon information and belief, Ms. Braun is the only attorney that Defendant Day has ever discussed on her tabloid TikTok channel.

97.     Upon information and belief, due to the success of her content about Ms. Propson and Ms. Braun, and the amount of money TikTok paid her for those posts, Defendant Day made plans to make more videos about Ms. Braun's other clients that are social media creators.

98.     In a TikTok story post made in December 2023, Defendant Day said she was in possession of: "proof of another VERY large & well-liked content creator that is utilizing the same attorney that Lauren the Mortician has used (Jeanette) to harass a small creator on this app & misuse the copyright strike system to have her account taken down.". (Original Below)



99. In another video posted in December 2023, Defendant Day discussed Ms. Braun's representation of another one of her clients, Demps.

100. Upon information and belief, Defendant Day learned of Ms. Braun's representations by communicating with a stalker and anti-fan of Demps.

101. In the December 2023 video about Demps, Defendant Day published the following caption with her video and accused Ms. Braun of filing "false copyright strikes" and using an "unethical tactic to scare creators off this app."

102. In discussing Ms. Braun and her representation of her client Demps, Defendant Day asserted the following:

> "I will not be showing any photos or screenshots of the faces of the creators involved but I will be saying names so let's get into this so yesterday we talked about how a Creator on here named Demps hired an attorney named Jeanette Braun to file a *false copyright strike* against a small Creator named Kristen."

103. In the same December 2023 post, Defendant Day claimed,

> "I have a list of creators who have utilized Jeanette, and ***another list of creators who have been wrongfully impacted by false copyright strikes sent in by Jeanette.***"

104. Upon information, Defendant Day's reference to a list of content creators using Ms. Braun and her list creators who have been impacted is intended to represent to her audience that she has proof of Ms. Braun "filing false copyright strikes".

105. The original post is shown below:



*Plaintiff Braun is a "Rogue Attorney"*

106.    In a since deleted video from TikTok, following her December 2023 posts about Ms. Braun's client, Defendant Day stated her intent to ruin Ms. Braun's career as a social media lawyer:

> "But I just wanted to make it very clear that my position is to ensure that there is not a rogue attorney on this app."

107.    Upon information and belief, Defendant Day's fans knew Defendant Day was discussing Ms. Braun due to the number of videos and posts that Defendant Day made about Ms. Braun and her clients.

108.    Upon information and belief, and the context of Defendant's other posts, Defendant Day intended to falsely cast Ms. Braun as an unethical attorney that files baseless claims by calling her a "rogue attorney."

**[THIS SPACE IS LEFT INTENTIONALLY BLANK]**

*Defendant Day's Harassment of Ms. Braun's Clients*

109.    Upon information and belief, Defendant Day is using the above false statements to incite an angry mob and harassment campaign against Ms. Braun and her past clients that are social media influencers.

110.    Defendant Day's harassment campaign has had detrimental effects on Ms. Braun, her former clients, her practice, and has caused emotional distress and harm to Ms. Braun.

111.    In particular, Defendant Day has focused her criticism of Ms. Braun for her past representation of her client Kaitlyn Dempsey publicly known as "Demps."

112.    Upon information and belief, Defendant Day posted a video about Ms. Dempsey after communicating with a known stalker, Erick Fisk.

113.    Ms. Dempsey has an active order of protection against Ms. Fisk to stop her from stalking and harassing Ms. Dempsey and her young child. Ms. Dempsey's child is protected by the order of protection.

114.    Upon information and belief, Defendant Day has not stopped her campaign of unwanted communications and harassment of Ms. Braun's clients.

115.    On March 21, 2024, Defendant Day contacted one of Ms. Braun's clients knowing that the person was one of Ms. Braun's clients.

116.    Upon information and belief, Defendant Day is contacting Ms. Braun's clients to possibly intimidate them, interfere with their contract with Ms. Braun for legal representation, and/or to collect a statement which she can twist and publish on social media for more likes and follows.

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

### *Bekah Day's Smear Campaign Against Plaintiff Braun and Braun Law*

117.    On December 11, 2023, Defendant Day created and posted a story on TikTok stating that the Illinois Attorney Registration & Disciplinary Commission told her they received "multiple *credible* complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter." (emphasis added). @bekahday, "Dec. 11, 2023 Story Post" tiktok.com (captured on Dec. 11, 2023).

118.    Upon information and belief, the ARDC made no such comment to Defendant Day.

119.    Upon information and belief, Defendant Day made this statement with actual malice in that she either knew the statement's falsity or had a reckless disregard for the truth that the ARDC would not make such a statement.

120.    Upon information and belief, Defendant Day made this statement to incite and encourage the public to make ethics complaints against Ms. Braun.

121.    Upon information and belief, numerous people filed requests to investigate Ms. Braun with the ARDC since Defendant Day's publication on December 11, 2023.

122.    The Attorney Registration and Disciplinary Commission ("ARDC") is the governing body overseeing and regulating the conduct of attorneys. The ARDC operates under the authority of the Illinois Supreme Court, which has sole authority to regulate the admission and discipline of lawyers in Illinois. ARDC, "Overview of ARDC" iardc.org (accessed on Dec. 15, 2023), https://www.iardc.org/About.

123.    All attorney investigations are confidential until the Commission brings a complaint against an attorney. *Id.*

124.    Upon information and belief, the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney.

125.    Upon information and belief, the Illinois Attorney Registration & Disciplinary Commission would only confirm whether the attorney in question was registered, convey the date they were registered, share if the attorney is in good standing, and share if the attorney has ever been found to have engaged in misconduct.

126.    As of the filing of this Amended Complaint, Ms. Braun is an attorney in good standing and has no misconduct violations on her record with the Illinois Attorney Registration & Disciplinary Commission.

### *Defamatory Statements Made by Defendants Jessica Vazquez and Lily Marston*

127.    Upon information and belief, Defendant Vazquez and Defendant Marston are owners and co-hosts of the "Do We Know Them" podcast.

128.    The "Do We Know Them" podcast is an online weekly video podcast that is also disseminated through various audio platforms where Defendant Vazquez and Defendant Marston promote online controversies, rumors, and celebrity gossip, all of which are monetized.

129.    Upon information and belief, neither Defendant Vazquez or Defendant Marston have any professional training as a news reporter, journalist, or any degrees in those industries or related ones.

130.    Upon information and belief, Defendants Vazquez and Marston routinely use copyright protectable material to enhance and promote their videos.

131.    Defendants Vazquez and Marston have admitted to receiving copyright violations from Youtube in the past.

132.    Upon information and belief, Defendants Vazquez and Marston have received copyright infringement notifications from their unauthorized use of copyrighted materials.

133.    Upon information and belief, Defendants Vazquez and Marston are paid by YouTube and at least 18 other platforms based on the number of views/plays their videos/podcast receives and thus are profiting from their posts that spread the false statements about Ms. Braun and Ms. Propson that are described in this Complaint.

134.    Defendants Day, Vazquez, and Marston communicated about Ms. Propson and Ms. Braun to make videos and a podcast.

135.    In their December 2, 2023 episode, Defendants Vazquez and Defendant Marston acknowledged that they spoke to Defendant Day by referring to her username @bekahdayy and tagging her TikTok post:

> "HUGE SHOUTOUT TO THE LOVELY BEKAH DAY FOR PROVIDING US WITH THE STUFF WE NEEDED TO NAVIGATE THRU JANET'S BS!
>
> For more information and detailed up to date coverage on all of the claims that Janet's been doling out to people like she's passing out candy on Halloween, go check out Bekah's Tiktok! @bekahdayyy"

136.    In discussing Ms. Braun's past representations, Defendants Vazquez and Marston played Defendant Day's video discussing Ms. Braun's representation of Demps."

137.    Upon information and belief, Defendants Vazquez and Marston did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in their video.

138.    Upon information and belief, Defendants Marston and Vazquez relied on the false information provided by Defendant Day

139.    Defendants Vazquez and Marston acted with malice in that they knew Defendant Day's information was false or held a reckless disregard as to the truth about their statements prior to publishing them.

140.    In a video posted on December 3, 2023, Defendant Vazquez and Defendant Marston mocked Ms. Braun by mis-pronouncing her name as "Janet" instead of "Jeanette."

141.    In the December 3, 2023 video, Defendant Vazquez and Defendant Marston identified Ms. Braun by her full name and expressly noted that they intentionally mispronounced her name because it was "fun" but that they were still referring to Ms. Braun.

142.    In the videos, Defendant Vazquez and Defendant Marston discussed in detail about Ms. Braun's past representations and clients.

143.    In the video, Defendant Vazquez and Defendant Marston played a clip of a video from Ms. Braun's former client.

144.    The Defendants noted that reputable and known content-creators hire Ms. Braun to represent them and take down videos that use their likeness or photographs without their permission.

145.    In discussing the videos posted by Defendant KC, Defendant Vazquez alleged that she had heard from other content creators who had received a "false copyright strike" from one of Ms. Braun's clients:

> "**So she's basically using all this jargon that she made up in her head and she's using that as a scare tactic to represent her clients** and give the clients what they want which is usually to like stop being criticized yeah **from what we've heard because I got a couple DMs** like pretty immediately after we uploaded I was shocked I know I was like that was click **and even an email from someone as well that is not a creator** that we were like oh interesting **but apparently she had issued them a false copyright strike** but um the DMs I got definitely show that intimidation tactics are the norm for her and she thinks that that's appropriate turns out like we said Janet has been around far more than we thought."

146.    Upon information and belief, Defendant Vazquez made these statements to make her audience believe that she had verifiable proof that Ms. Braun filed a "false copyright strike", or a baseless or frivolous DMCA takedown.

147.    In discussing Ms. Braun's representations of Lauren the Mortician and other clients, Defendant Vazquez stated

> "[A]s unhinged as Janet is, **as unethical as Janet is**, she is finding some success **in her practices**; like whether short term or not, she's kind of low-key slaying, **but in the worst way**. Like she is getting the job done really poorly."

148.    Upon information and belief, Defendant Vazquez made this statement with the intention of casting Defendant Braun as an incompetent attorney resorting to unethical practices and tactics in her representation of past clients, such as Lauren the Mortician and Demps.

149.    In a since removed post, Defendant Marston accused Ms. Braun of "actively committing perjury."



150.    Upon information and belief, the name "Demps" in Defendant Marston's post refers to Ms. Braun's client Demps.

151.    Upon information and belief, Defendant Marston's followers were aware that Demps was represented by Ms. Braun from Defendant Marston's December 2, 2023 video on the topic.

### *Damage to Reputation and Harm to Braun Law and Attorney Jeanette Braun*

152.    As a direct result of the false and defamatory statements made by Defendants KC, Day, Vazquez, and Marston, an angry internet mob was incited to further echo and spread the collective false statements that:

- Ms. Propson is transphobic

- Ms. Braun is unethical in her profession

- Ms. Braun commits perjury

- Ms. Braun files false or frivolous copyright claims

- Ms. Braun is a rogue attorney that files lawsuits for people she does not represent

153.    The posts and comments published by the Defendants caused their various fans and followers to post negative and 1-Star Google Reviews against Ms. Braun and Braun Law to harm its reputation.

154.    In addition, fans and followers of the Defendants searched for, contacted, and harassed Ms. Braun's known and suspected social media clients.

155.    As a direct result of the negative attention from the Defendants' false statements, Ms. Braun lost clients and potential clients due to fear of being harassed for using Ms. Braun's legal services.

156. In addition to the above statements, fans and followers of the Defendants are encouraging others to file ARDC complaints against Ms. Braun.

157. The continued spread and reposting of these false statements against Ms. Braun and Braun Law cause damage and irreparable reputational harm daily.

158. As of the filing of this Amended Complaint, the Defendants false statements have all been echoed and spread by other content creators as blanket truths for commercial gain by the other content creators (I.e. generate views, likes, and follows by fans of the Defendants).

159. To capitalize on the interest of the Defendants' fans, a multitude of content creators have republished these posts to pander to the Defendant's fans as a means of building their brands and internet relevance.

160. As a proximate cause of these false statements, the Plaintiffs have all been harassed with online messages, comments, and pages dedicated to sharing harassing content.

161. The online harassment has spread across various platforms and into real life. The Defendants have encouraged their followers to view and support disparaging content that spreads the Defendant's false claims by self-proclaimed legal experts and people who are not licensed to practice law.

162. The Defendants actions, false statements, and encouragement of their fans to harass the Plaintiffs, have caused the Defendants' fans to invade Plaintiffs' privacy, file real-life ethics complaints against Ms. Braun, leave false 1-Star business reviews against Braun Law, create and publish harassing images, and publish AI-generated pornography of Ms. Braun on the internet.

## COUNT I

### Defamation
### (Wisconsin Law)
### Against Defendant KC by Plaintiff Lauren Propson

163.    Plaintiff Propson repeats and realleges by reference the allegations in paragraphs 1 through 162 as if fully set forth herein.

164.    Defendant KC defamed Plaintiff Propson by publicly stating that Plaintiff Propson was a "TERF" and "transphobic" and used her platform to attack Plaintiff Propson's character and reputation.

165.    Defendant KC made these defamatory statements publicly across multiple social media platforms, including but not limited to Facebook, Instagram, and TikTok.

166.    Defendant KC's defamatory statements concerned Plaintiff Propson, as they referenced her by her public persona "Lauren the Mortician." The average viewer understood the statements to be about Plaintiff Propson.

167.    The statements were defamatory because they harmed Plaintiff Propson's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

168.    The false statements were defamatory because the harm to Plaintiff's reputation is obvious and apparent on its face. Being called transphobic is akin to being called a bigot or a racist, and these defamatory statements caused Plaintiff Propson to be viewed by others as transphobic and not an inclusive person.

169.    Defendant KC's statements caused Ms. Propson to lose followers and have her sponsors disassociate from her.

170.     Defendant KC's statements resulted in Plaintiff Propson losing her contract with a famous travel documentary channel and a podcast deal that was in its final negotiations.

171.     Defendant KC's statements prejudice Plaintiff Propson in her profession and harmed her ability to earn future sponsorships and followers.

172.     Defendant KC's posting to TikTok was an unprivileged publication of the statements to third parties.

173.     As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she sustained injuries to her good name, character, and reputation, so as to established presumed damages.

174.     As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Propson, she was harmed and continues to be harmed through economic and non-economic damages, emotional distress, mental anguish, harm to reputation, and harm to her career.

175.     Defendant KC made these statements with knowledge of their falsity and with a reckless disregard for the truth and for commercial gain, so as to justify an award of punitive damages.

## COUNT II

### Defamation *Per Se*
### Against Defendant KC by Plaintiffs Jeanette Braun and Braun Law

176.     Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 162 as if fully set forth herein.

177.     Defendant KC defamed Plaintiffs Braun and Braun Law by publishing her claim stating that Ms. Braun files "false copyright lawsuits" to imply that Ms. Braun and her law firm file baseless and frivolous DMCA actions.

178.    Defendant KC also defamed Plaintiff Braun by publishing her letter accusing her of not in fact being Plaintiff Propson's attorney.

179.    This statement was made by Defendant KC either knowing that Plaintiff Braun did represent Plaintiff Propson or was made with a reckless disregard for the truth.

180.    Defendant KC made these defamatory statements publicly across multiple social media platforms.

181.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced Ms. Braun by her first and last name in the documents. The average viewer understood the statements to be about Jeanette Braun, the owner of Braun IP Law, LLC.

182.    Defendant KC's statements were defamatory because they harmed Plaintiff Braun's and Plaintiff Braun Law's reputation by lowering them in the eyes of the community and deterring the community from associating with them.

183.    Defendant KC's false accusations prompted an online mob to harass and attack Plaintiff Braun and her business.

184.    The false statements were defamation *per se* because the harm to Plaintiff Braun's and Braun Law's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer that files frivolous copyright claims that painted Plaintiff Braun in a false light and incited others to act against her. This resulted in Plaintiff Braun losing potential clients and having others repeat the same false accusations against her. These statements prejudice Plaintiff Braun in her profession and harmed her ability to retain new clients.

185.    Defendant KC's assertions regarding Plaintiff Braun's and Braun Law's competency and her legal ethics were intended to harm, discredit, and tarnish Plaintiffs Braun's and Braun Law's reputations.

186.    Defendant KC's statements in her fundraiser titled "Kitti is a Cee You Next Tuesday" on the GoFundMe platform was an unprivileged publication of the false statements to third parties.

187.    As a proximate result of Defendant KC's publication of false and defamatory statements about Plaintiffs Braun and Braun Law, they sustained injuries to their good name, character, and reputation.

188.    Because Defendant KC's statements were defamation *per se*, damages are presumed.

189.    As a proximate result of Defendant KC's publication of false statements of fact about Plaintiffs Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including emotional distress, mental anguish, harm to reputation, and harm to her career.

190.    Defendant KC's defamatory statements were made with knowledge of their falsity or a reckless disregard for the truth; and for a commercial gain, so as to justify an award of punitive damages.

## <u>COUNT III</u>

### Defamation *Per Se*
### Against Rebekah Day nee Boxx by Plaintiffs Jeanette Braun and Braun IP, Law LLC

191.    Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 162 as if fully set forth herein.

192.    Defendant Day defamed Plaintiffs Braun and Braun Law by publicly stating that Ms. Braun was an "unethical" and "rogue" attorney who files "false copyright lawsuits" without proper investigation and used her platform to attack their character and reputation, all for a commercial gain.

193.    The context of Defendant's comments explicitly and implicitly conveyed that Plaintiff Braun lacks integrity in her profession and files frivolous copyright lawsuits.

194.    Defendant Day made these defamatory statements publicly across multiple social media platforms.

195.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced her by her full legal name, "Jeanette Braun." The average viewer understood the statements to be about Jeanette Braun the owner of Braun IP Law, LLC.

196.    The statements were defamatory because they harmed Plaintiff Braun's and Plaintiff Braun Law's reputation by lowering them in the eyes of the community and deterring the community from associating with them.

197.    The false statements were defamation *per se* because the harm to Plaintiffs Braun's and Braun Law's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer who lacks integrity in her profession and files frivolous copyright claims painted Plaintiff Braun in a false light and incited others to act against her. This resulted in Plaintiffs Braun and Braun Law losing current clients and potential clients. These statements prejudice Plaintiffs in their profession and harmed their ability to retain new clients.

198.    Defendant Day's posting to TikTok was an unprivileged publication of the false statements to third parties.

199.    As a proximate result of Defendant Day's publication of false statements of fact about Plaintiffs Braun and Braun Law, they sustained injuries to their good name, character, and reputation; all for a commercial gain, so as to establish presumed damages.

200.    As a proximate result of Defendant Day's publication of false statements of fact about Ms. Braun and Braun Law, they were harmed and continue to be harmed in that they have

30

experienced economic and non-economic damages, including emotional distress, mental anguish, harm to reputation, and harm to her career.

201.     Defendant Day's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, all for a commercial purpose, so as to justify an award of punitive damages.

202.     Defendant Day held a reckless disregard for whether Plaintiffs Braun and Braun Law, and their clients, had a good faith basis for their copyright infringement filings, and instead published statements without any proper investigation into the truth of the matter being asserted to make money.

## COUNT IV

**Defamation**
**Against Jessica Vazquez and Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

203.     Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 162 as if fully set forth herein.

204.     Defendant Vazquez and Defendant Marston are business partners that defamed Plaintiffs Braun and Braun Law by publicly stating that Ms. Braun is unethical and commits perjury and using their platform to smear Ms. Braun's character and reputation.

205.     Defendants Marston and Vazquez made these defamatory statements publicly across multiple online platforms, including but not limited to YouTube, Twitter, Spotify, Apple Podcasts, Google Podcasts, Castbox, RSS, Pocket Casts, Overcast, Bullhorn, Castro, Player FM, Podcast Addict, Podbean, Podhero, Podcast Guru, Podcast Republic, Podfriend, RadioPublic, Sonnet, and Subscribe on Android.

206.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced her by her full legal name "Jeanette Braun." The average viewer understood the statements to be about Jeanette Braun the owner of Braun Law.

207.    The statements were defamatory because they harmed Plaintiff Braun's and Plaintiff Braun Law's reputation by lowering them in the eyes of the community and deterring the community from associating with them.

208.    The false statements were defamation *per se* because the harm to Plaintiff's reputation is obvious and apparent on its face. Being accused of being an unethical lawyer that perjures herself while filing copyright claims painted Plaintiffs Braun and Braun Law in a false light, and incited others to act against her. This resulted in Plaintiffs Braun and Braun Law losing current and potential clients. These statements prejudice Plaintiffs Braun and Braun Law in their profession and harmed their ability to retain new clients.

209.    Defendant Vazquez and Defendant Marston's posts on various platforms are unprivileged publications of false statements to third parties.

210.    As a proximate result of Defendant Marston's and Defendant Vazquez's publication of defamatory and false statements about Plaintiffs Braun and Braun Law, they sustained injuries to their good name, character, and reputation, all for a commercial purpose, so as to establish presumed damages.

211.    As a proximate result of Defendant Marston's and Defendant Vazquez's publication of false statements of fact about Plaintiffs Braun and Braun Law, they were harmed and continue to be harmed by economic and non-economic damages, including emotional distress, mental anguish, harm to reputation, and harm to her career.

212.     Defendant Marston's and Defendant Vazquez's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, for a commercial gain, so as to justify an award of punitive damages.

## COUNT V

**False Light**
**Against Defendant KC by Plaintiff Braun and Braun IP Law**

213.     Plaintiff Lauren Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 162.

214.     Defendant KC portrayed Plaintiffs Braun and Braun Law in a false light by claiming that they filed a "false copyright strike" against her.

215.     Defendant KC's conduct placed Plaintiffs Braun and Braun Law in a false light that would be highly offensive to a reasonable person; in that Plaintiffs Braun and Braun Law lack integrity in their profession and file baseless lawsuits.

216.     Defendant KC acted with actual malice; that is, she acted with knowledge that her statements were false or with reckless disregard for whether the statements were true or false. Defendant KC intentionally mischaracterized her evidence to fit her pre-determined narrative. Defendant KC knew that Facebook had removed her post using Lauren the Mortician's content for copyright infringement and the claim was valid. Despite being aware of Facebook's removal of Defendant KC's post for a valid copyright infringement claim, Defendant KC posted her claim that Plaintiff Braun filed a "false copyright strike" against her.

217.     As a proximate result of Defendant KC's publication of false statements, Plaintiffs Braun and Braun Law sustained injuries to their good name, character, and reputation; all for a commercial gain, so as to establish presumed damages.

218.     As a proximate result of Defendant KC's publication of false statements of fact about Plaintiffs Braun and Braun Law, they were harmed and continue to be harmed by economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, and harm to her career.

219.     Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, all for a commercial gain, so as to justify an award of punitive damages.

### COUNT VI

**False Light**
**Against Defendant KC**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

220.     Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

221.     Defendant KC portrayed Plaintiff Braun in a false light by publishing her accusation to her fans that she was Plaintiff Braun as an attorney that was not hired by Plaintiff Propson and was just a zealous fan.

222.     Defendant KC's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person.

223.     Defendant KC acted with actual malice; that is, she acted with knowledge that her statements were false or with reckless disregard for whether the statements were true or false. Defendant KC intentionally posted her response to Plaintiff Braun to cast a false light about Ms. Braun's copyright filings and to imply that she and her firm had no authority to represent Plaintiff Propson. Defendant KC knew that Ms. Braun was representing Plaintiff Propson's attorney because the DMCA takedown request required Plaintiff Braun to attach a copy of the Power of

Attorney signed by Plaintiff Propson. Defendant KC received a copy of the DMCA takedown request from Facebook, which she acknowledges in the FALSE COPYRIGHT CLAIM email she sent to Plaintiffs Braun and Braun law. Despite this knowledge, Defendant KC posted her accusations with a reckless regard for the truth and for a commercial purpose.

224.    Defendant KC, as a social media influencer with a sizable following, had reason to know that her actions had the potential to incite an online mob that would retaliate against and harass Plaintiffs Braun and Braun Law, and that her allegations needed to be carefully sourced. Nonetheless, Defendant KC made false accusations to attack Plaintiff Braun and Braun Law's reputation.

225.    Upon information and belief, Defendant KC knew that her actions had a potential to include a large number of people to attack and retaliate against Plaintiff Braun and her law firm because, in her Tik Tok video posted November in 2023, she acknowledges that some of her fans may harass Plaintiffs Braun and Braun Law.

226.    As a proximate result of Defendant KC's publication of false statements of fact about Ms. Braun and Braun Law, all for a commercial purpose, they sustained injuries to their good name, character, and reputation, so as to establish presumed damages.

227.    As a proximate result of Defendant KC's publication of false statements of fact about Plaintiff Braun and Braun Law, they were harmed and continue to be harmed by economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, and harm to her career.

228.    Defendant KC's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, all for commercial gain, so as to justify an award of punitive damages.

## COUNT VII

**False Light**
**Against Rebekah Day nee Box**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

229.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

230.    Defendant Day's claims that Plaintiff Braun is an unethical attorney filing baseless and frivolous copyright claims placed Plaintiff Braun in a false light.

231.    Defendant Day's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person, because they are accused of being unethical in the legal profession.

232.    Defendant Day acted with actual malice; that is, she acted with knowledge that her statements were false or with reckless disregard for whether the statements were true or false. Defendant Day intentionally posted several TikTok videos and comments for the sole purpose of creating and monetizing content on her social media profile. Defendant Day had reason to know that her actions had the potential to incite a large number of people to attack and retaliate against Plaintiff Braun and her law firm, and that her allegations needed to be carefully sourced. Nonetheless, Defendant Day made false accusations to attack Plaintiff Braun's and Braun Law's reputation.

233.    As a result of Defendant Day's false statements and conduct, Plaintiffs Braun and Braun Law were harmed and continue to be harmed by economic and non-economic damages, including emotional distress and mental anguish, harm to their reputation, and harm to her career.

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

## COUNT VIII

**False Light**
**Against Jessica Vazquez and Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

234. Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

235. Defendant Vazquez and Defendant Marston's collective actions in falsely portraying Plaintiff Braun as an "unethical" attorney that files "false copyright strikes" and commits perjury placed Plaintiffs Braun and Braun Law in a false light.

236. Defendant Vazquez and Defendant Marston's conduct placed Plaintiff Braun and her law firm in a false light that would be highly offensive to a reasonable person.

237. Defendants Vazquez and Marston's claims that Plaintiff Braun perjured herself in her representation of her clients portrays Plaintiffs Braun and Braun Law in a false light of being an attorney without integrity.

238. Defendant Vazquez and Defendant Marston both acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Defendants Vazquez and Marston intentionally posted several Youtube videos and podcast episodes, and multiple tweets, for the sole purpose of monetizing and driving traffic to their social media profiles. Defendants Vazquez and Marston both had reason to know that their actions had the potential to incite a large number of people to attack and retaliate against Plaintiffs Braun and Braun Law, and that their allegations needed to be carefully sourced. Nonetheless, both Defendant Vazquez and Defendant Marston accused Plaintiff Braun of being unethical and committing perjury to harm Plaintiffs Braun and Braun Law's reputation.

239.     As a result of Defendant Day's conduct, Plaintiffs were harmed and continue to be harmed through economic and non-economic damages, including emotional distress, mental anguish, harm to her reputation and harm to her career or ethics.

## COUNT IX

### Trade Libel (Wisconsin)
### Against Defendant KC by Plaintiff Lauren Propson

240.     Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 162.

241.     Beginning in or about November 2023, and continuing through the present, Defendant KC willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Propson and her beliefs about the LGTBQ community and transgender rights to third parties, including but not limited to Defendant KC's followers on their @CaffinatedKitti social media accounts. Defendant KC's statements described in this Complaint improperly disparaged Plaintiff Propson's services and credibility as a social media influencer by making the false and misleading statements that Plaintiff Propson is "transphobic" and a "TERF." Defendant KC either knew her statements she was making were false or she intentionally failed to conduct an appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation and baseless conjecture.

242.     As a proximate result of Defendant KC's publication of the above-referenced statements, Plaintiff Propson's existing and prospective sponsors have been deterred from sponsoring and otherwise dealing with her as a further proximate result of Defendant KC's publication of the above-referenced statements, on information and belief, Plaintiff Propson has endured numerous comments and criticisms that were incited by Defendant KC's false statements that she is transphobic.

243.    As a result of Defendant KC's actions, Plaintiff Propson suffered injury to her business and reputation as a social media influencer in an amount currently unknown but believed to be in excess of the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT X

**Trade Libel**
**Against Defendant KC by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

244.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

245.    Beginning in or about November 2023, and continuing through the present, Defendant KC willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant KC's followers on their @CaffinatedKitti social media accounts. Defendant KC's statements described in this Complaint improperly disparaged Plaintiff Braun and her law firm's services and credibility by making the false and misleading statements that Plaintiff Ms. Braun files false copyright claims and by implying that Plaintiff Braun did not represent Plaintiff Propson and was acting on her own accord. Defendant KC either knew the statements she was making were false or she intentionally failed to conduct an appropriate investigation to determine the truth of her claims because she had notice that Plaintiff Braun represented Lauren the Mortician based on the DMCA notice.

246.    As a proximate result of Defendant KC's multiple publications of the above-referenced statements, Plaintiff Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her.

247.     As a further proximate result of Defendant KC's publication of the above-referenced statements, Plaintiff Braun and Braun Law endured and continues to endure an angry mob of numerous offensive comments and criticisms that were incited by Defendant KC's original false statement that Plaintiff Braun files "false copyright strikes."

248.     From Defendant KC's statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be in excess of the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT XI

### Trade Libel
### Against Defendant Rebekah Day nee Box
### by Plaintiff Jeanette Braun and Plaintiff Braun Law

249.     Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

250.     Beginning in or about November 2023, and continuing through the present, Defendant Day willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiffs Braun and Braun law, and her reputation as an attorney, and her firm's reputation, including but not limited to Defendant Day's followers on TikTok.

251.     Defendant Day's statements described in this Complaint disparaged Plaintiff Braun and her law firm's services and credibility. Defendant Day made the false and misleading accusations that Plaintiff Braun is unethical, and she and her law firm filed baseless or "false copyright claims". Defendant Day either knew the statements she was making were false or she

intentionally failed to conduct an appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation to make money.

252.    As a proximate result of Defendant Day's publication of the above-referenced statements, Plaintiff Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her. As a further proximate result of Defendant Day's publication of the above-referenced statements, on information and belief, Plaintiff Braun and Braun Law have endured, and continue to endure, an angry mob attacking her and her firm that was incited by Defendant Day's false statements that Plaintiff Braun lacks ethics, is a "rogue attorney", and files "false copyright strikes."

253.    From these statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be more than the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT XII

**Trade Libel**
**Against Defendants Jessica Vazquez and Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

254.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 162.

255.    Beginning in or about November 2023, and continuing through the present, Defendant Vazquez and Defendant Marston willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant Vazquez and Defendant

Marston's followers on numerous platforms. Defendant Day's statements described in this Complaint improperly disparaged Plaintiff Braun and her law firm's services and credibility by making the false and misleading accusations that Plaintiff Braun is unethical and commits perjury in her lawsuits.

256.     Defendants Vazquez and Marston acted with actual malice in that they either knew the statements they were making were false or that they intentionally failed to conduct an appropriate investigation to determine the truth of their claims and not rely entirely on mere speculation and conjecture.

257.     As a proximate result of Defendants Vasquez and Marston's publication of the above-referenced statements, Plaintiffs Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her and her law firm. As a further proximate result of Defendants Vazquez's and Marston's publication of the above-referenced statements, on information and belief, Plaintiffs Braun and Braun Law have endured, and continues to endure, numerous digital attacks by an angry mob that were incited by Defendants Vazquez's and Marston's false statements that Plaintiff Braun lacks ethics as a lawyer and commits perjury in representing her clients.

258.     From these statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be more than the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT XIII

**Tortious Interference with Contract**
**Against Defendant KC**
**by Plaintiff Lauren Propson**

259.     Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 162.

260.     Prior to the initiation of Plaintiff Propson's action, Plaintiff Propson had a content creation contract with a famous and well-known travel documentary channel. Plaintiff Propson had a valid and enforceable contract with the travel documentary channel to make content for them.

261.     Upon information and belief, Defendant KC was aware of Plaintiff Propson's career and her contract with the travel documentary channel from researching and studying Plaintiff Propson's social media activity.

262.     Upon information and belief, Defendant KC used her platform and posted videos to intentionally ruin Plaintiff Propson's reputation and content partnerships.

263.     On or about October 24, 2023, Defendant KC intentionally, unjustifiably, and maliciously posted videos to her TikTok account @CaffinatedKitti to falsely accuse Plaintiff Propson of being transphobic. Defendant KC's actions were willful and constituted intentional and unjustified inducement of a termination of the contract between Defendant Plaintiff Propson and the travel documentary channel.

264.     Defendant KC's intentional, unjustified, and malicious actions caused the travel documentary channel to terminate its contract with Plaintiff Propson in November 2023.

265.     Defendant KC's actions were meant to unlawfully and tortiously interfere with an existing contract between Plaintiff Propson and the travel documentary channel.

266.    Plaintiff Propson has been damaged by Defendant KC's willful tortious interference in an amount to be determined at trial, including but not limited to lost income from her contract. Furthermore, Defendant KC has irreparably harmed Plaintiff Propson and caused Plaintiff Propson to suffer a substantial loss of goodwill and reputation, and such harm will continue unless Defendant KC is enjoined by this Court.

## COUNT XIV

**Tortious Interference with Existing and Potential Business Relationships
Against Defendants KC, Rebekah Day nee Box, Jessica Vazquez, and Lily Marston
By Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC**

267.    Plaintiff Braun and Braun Law reallege and incorporates as though fully set forth herein, paragraphs 1 through 162.

268.    Defendants Marston and Vazquez discussed Plaintiff Braun and Braun Law's clients and past representations.

269.    Defendants' false and defamatory statements about Plaintiff Braun's legal practice were made to cause interference with her current clients, and to other content creators from hiring Braun Law for legal representation.

270.    The false statements published by the Defendants interfered with Ms. Braun's existing and prospective client relationships as an attorney. Following Defendant Vazquez and Defendant Marston's statements, Plaintiff Braun and Braun Law received several 1 star google reviews for Braun Law, and had clients end their use of Braun Law for legal services out of fear of harassment.

271.    Defendants' past and present false statements on their aforesaid social media platforms caused great damage to Plaintiff Braun and Braun IP Law's business and harm to their reputation. The individual and joint actions of the Defendants were intended to cause and have

caused deception of the public, misleading clients and prospective clients of Plaintiff Braun and Braun Law's as to the true characteristics and qualities of their services.

272.    The individual and joint actions of the Defendants have disparaged Plaintiff Braun and Braun Law's name in the legal profession, social media services industry, and besmirched their reputation through false and defaming statements as detailed in this Complaint.

273.    Defendants' conduct as aforesaid in disseminating false and disparaging accusations and dissuading the public from dealing with Plaintiff Braun and Braun Law constitutes unlawful interference with Plaintiff Braun and Braun Law's existing and prospective contracts with its current and prospective clients to their severe damage and detriment, as a result of which Plaintiff Braun and Braun law have suffered damage to their business, harm to their reputations, lost income, attorney's fees, and other economic loss.

## COUNT XV

**Intentional Infliction of Emotional Distress**
**Against Defendant KC**
**by Plaintiff Lauren Propson**

274.    Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 162.

275.    KC's conduct in publishing false and defamatory statements about Plaintiff Propson and in threatening Plaintiff Propson with continuing to defame her if she did not admit to being anti-trans was extreme and outrageous.

276.    KC willfully, maliciously, and intentionally engaged in extreme and outrageous conduct with the intent to inflict severe emotional distress upon Plaintiff Propson or, alternatively with the knowledge that there was a high probability that such conduct would cause Plaintiff Propson severe emotional distress.

277.    As a direct and proximate result of KC's conduct, and the resulting emotional distress, Plaintiff Propson has suffered humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, mental anguish, with and without physical symptoms.

278.    As a social media influencer, Defendant KC should have been aware that her actions would lead to an online mob being incited to act against Plaintiff Propson.

279.    As of the filing of this Amended Complaint, Plaintiff Propson has dealt with harassing comments, intimidation, and threats because of Defendant KC's false statements accusing her of being transphobic.

## COUNT XVI

**Intentional Infliction of Emotional Distress**
**Against Defendant KC, Day, Vazquez, and Marston**
**by Plaintiff Jeanette Braun**

280.    Plaintiff Braun realleges and incorporates as though fully set forth herein, paragraphs 1 through 162.

281.    Defendants KC, Day, Vazquez, and Marston should have been aware that their defamatory statements and false light of Ms. Braun and her firm would incite an online mob to harass and attack her professional reputation.

282.    Defendants KC, Day, Vazquez, and Marston willfully, maliciously, and intentionally engaged in extreme and outrageous conduct with the intent to inflict severe emotional distress upon Plaintiff Braun or, alternatively with the knowledge that there was a high probability that such conduct would cause Plaintiff Propson severe emotional distress.

283.    As a direct and proximate result of the Defendants' conduct, and the resulting emotional distress, Plaintiff Braun has suffered humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, mental anguish, with and without physical symptoms.

284.    Since the Defendants began spreading their false statements, Ms. Braun deals with daily harassment and threats to her personal and professional wellbeing due to smear campaign and the false statements spread by the Defendants.

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in their favor and against the Defendants, each of them jointly and severally, as follows:

(a) Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, and punitive damages;

(b) Awarding an accounting to Plaintiff for the gains and profits of Defendants arising from the unlawful conduct;

(c) Permanently enjoining Defendants and their respective partners, agents, representatives, successors, assigns and employees, and any and all persons in active convert or participation with Defendants, and each of their executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing, and each of them, from: making, disseminating, broadcasting, or publishing any statements that:

- Plaintiff Propson is transphobic.

- Ms. Braun is an unethical lawyer.

- Ms. Braun files false copyright claims

- Ms. Braun is a rogue attorney.

- Ms. Braun commits perjury.

(d) Issuing an order requiring Defendant KC to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff Lauren Propson;

(e) Issuing an order requiring the Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding the Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC;

(f) Awarding Plaintiff's attorneys' fees and costs; and

(g) Granting Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,


*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com
(773) 340-0011
***Attorney for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

***Attorney for Plaintiffs***

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

Brandon J. Witkow
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*Attorneys for Defendants*

Dated: March 21, 2024                    *Benjamin Lockyer*