**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | |
| REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ | ) ) ) ) ) | |
| | ) ) ) | |
| Defendants. | ) | |

**REBEKAH M. DAY NEE BOX'S MEMORANDUM OF POINTS & AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

## I.    INTRODUCTION

This is the second attempt by Plaintiffs Jeanette Braun and Braun IP Law (collectively, "Braun") to state a viable claim against Defendant Rebekah M. Day nee Box ("Day") for defamation and other related tort claims based on Day's expression of her opinions and subjective beliefs on social media. In response to Day's motion to dismiss Braun's original Complaint, Braun filed an Amended Complaint against Day and three other defendants, which fails to correct any of the pleading deficiencies Day identified in her motion to dismiss and which is based on the *same, nonactionable* alleged defamatory statements as the original Complaint. The amendment was nothing more than a blatant effort to protract this litigation, filed for no other reason than to silence Day from voicing opinions about Braun on social media that Braun deems unflattering. Just like the original, the Amended Complaint is based on Day's alleged statements made on the social media platform Tik Tok, referring to Braun as an "unethical" and "rogue" attorney and expressing her *subjective belief* that Braun has filed "false" copyright strikes under the "Digital Millennium Copyright Act" on behalf of her clients, including co-Plaintiff Lauren Propson ("Propson").

But as explained in detail below, Illinois law is clear: whether someone is "unethical," "rogue" or has filed a "false" copyright strike is so ambiguous and indefinite that it cannot be verified; thus, such hyperbolic speech is deemed to be a constitutionally-protected opinion and *not* actionable as defamation. Not only are the alleged defamatory statements on which this action is based nonactionable opinions, but they are subject to a qualified privilege under Illinois law which requires that Braun plead facts supporting claims of actual malice. As Braun has alleged nothing more than *boilerplate, conclusory allegations* regarding Day's alleged "malice", Braun has failed to overcome the qualified privilege.  Accordingly, Day respectfully requests that this Court dismiss

Braun's defamation claim, along with the remaining defectively pled tort claims which are tethered to the nonactionable defamatory statements, under Federal Rule of Civil Procedure 12(b)(6).

## II.     BACKGROUND

### A.     Case Background.

Propson is a licensed mortician residing in Wisconsin who operates a social media account on Tik Tok under the name "Lauren the Mortician." (Amended Complaint [Dkt. 29] ("Am. Compl."), ¶¶ 4, 13-14). Propson alleges that she has "amassed millions of followers" on Tik Tok, as well as sponsorships and monetization of the videos she posts of Tik Tok, including a "brand partnership with a famous documentary channel." (*Id.*, ¶¶ 40-42). Propson alleges that her "lighthearted and educational videos" posted on Tik Tok "discuss death, the loss of loved ones, and demystify occupations and professions that work with deceased persons." (*Id.*, ¶ 14).

Propson hired Braun, a lawyer, to "assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to social media platforms hosting a video" created by one of the defendants, who the Amended Complaint names as "KC the owner and operator of the social media account @CaffinatedKitti" (hereafter referred to as "KC"). (*Id.*, ¶¶ 52-53). KC allegedly is a "social media personality," and is a citizen and resident of Georgia. (*Id.*, ¶¶ 6, 15). Propson has not asserted any copyright claims against KC in this action, however. Instead, both Propson and Braun have asserted individual defamation and other tort claims against KC based on statements KC allegedly made on social media about Propson – and after the filing of the DMCA copyright strike against her – about Braun. (*Id.*, ¶¶ 18-84).

In addition to asserting defamation and other tort claims against KC, Braun also has named in this action *three other unrelated defendants* – Day and Defendants Jessica Marston ("Marston") and Lily Vasquez ("Vasquez") – based on alleged "defamatory statements" these individuals

purportedly made on social media about Braun. (*Id.,* ¶¶ 91-151).[1] Day, a citizen of Missouri, is a "social media content creator known as 'Bekah Day' who [allegedly] holds herself out to be an unbiased content creator and an independent investigative reporter." (*Id.,* ¶¶ 5, 85).

### B. Day's Alleged Defamatory Statements.

The Amended Complaint alleges that Day made a "Tik Tok story post" in "December 2023," in which she stated she was "in possession of: 'proof of another VERY large & well-liked content creator that is utilizing the same attorney that Lauren the Mortician has used (Jeanette) to harass a small creator on this app & misuse the copyright strike system to have her account taken down.'"[2] (*Id.,* ¶ 98). In another "December 2023 video," Day allegedly stated that a social media content creator "hired an attorney named Jeanette Braun to file a ***false copyright strike*** against a small Creator named Kristin." (*Id.,* ¶ 102). The Amended Complaint sets forth a screen shot of what appears to be a social media post by Day, in which Day states "There are a group if [sic] creators on this app who have weaponized Jeanette's aggressive, threatening, and unethical tactic to scare creators off the app. I have a list of creators who have utilized Jeanette, and another list of creators who have been wrongfully impacted by false copyrights strikes sent in by Jeanette. This is just the beginning. Shocked and applauded [sic] to see women im MUTUALS with hiring this woman to do their dirty work. Tis the season of exposing, I suppose! . . . ." (*Id.,* ¶ 105). Braun alleges that in a "since deleted video from Tik Tok," Day stated "her intent to ruin [Braun's] career as a social media lawyer" with the following statement: "But I just want to make it very clear that my position is to ensure that there is not a rogue attorney on this app." (*Id.,* ¶ 106).

---

[1] Propson asserts no claims against Day in the Amended Complaint.

[2] The Amended Complaint also alleges that in November 2023, Day "posted a 'deep dive' video about "KC's dispute with the Plaintiffs"; however, Braun fails to identify any specific "defamatory" statements made by Day in this November 2023 video, instead alleging only that Day "identified [Braun] by her first and last name." (*Id.,* ¶¶ 94-95). Thus, it appears Braun's claims are not based on any statements made in the alleged November 2023 post.

Day also allegedly posted a story on Tik Tok on December 11, 2023, stating that "the Illinois Attorney Registration & Disciplinary Commission [("ARDC")] told [Day] they received 'multiple *credible* complaints about Jeanette Braun and that they have assigned multiple attorneys to investigate this matter." (*Id.,* ¶ 117) (emphasis in original). *The Amended Complaint contains no allegation explaining how this statement is false*; rather, it asserts only the conclusory allegation that "upon information and belief, the ARDC made no such comment to [] Day." (*Id.,* ¶ 118).[3]

## III. ARGUMENT

### A. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6)[4]. In determining whether a complaint satisfies Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in plaintiff's favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). Though a complaint need not contain "detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Here, as explained below, Braun has failed to state facts sufficient to constitute any cause of action against Day.

---

[3] The Amended Complaint contains other allegations regarding Day's purported conduct directed at *other* individuals who are *not* parties to this action and that have no bearing or relation on any alleged statements made by Day regarding either of the Plaintiffs. (*Id.,* ¶¶ 90 (allegations regarding statements Day allegedly made about the singer Diplo that has no connection with either Braun or Propson), 112 (allegation regarding a video Day allegedly posted about a former client of Braun, Kaitlyn Dempsey, but that does not allege *what* Day stated in the video or how it was in any way defamatory to Braun or Propson)).

[4] Day has not moved to strike the claims asserted against her under anti-SLAPP law, as the other defendants have, because the state of Missouri, where the Complaint alleges Day resides, has *not* enacted an anti-SLAPP statute that would apply to the statements at issue.

**B.      Braun Does Not State a Claim for Defamation Against Day.**

To state a claim for defamation under Illinois law,[5] a plaintiff must plead facts showing:

"(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged

publication of the defamatory statement to a third party by defendant; and (3) publication of the

defamatory statement damaged the plaintiff." *Brennan v. Kadner,* 351 Ill.App.3d 963, 968 (2004).

Count III of the Amended Complaint asserts a claim for defamation *per se* by Braun against Day

based on Day's alleged statements that "Braun was an 'unethical' and 'rogue' attorney who files

'false copyright lawsuits' without proper investigation." (Am. Compl., ¶ 192). Braun fails to state

a claim for defamation against Day for multiple reasons.

**1.      Day's Alleged "False Copyright" Strikes/Lawsuits "Unethical," and "Rogue" Statements Are Nonactionable Opinions.**

The Amended Complaint alleges that Day defamed Braun by publicly stating that Braun

"files 'false copyright lawsuits'" and is an "unethical", "rogue" attorney (*id*., ¶ 192); however,

such statements are nonactionable, as they constitute constitutionally-protected *opinions* rather

than verifiable statements of fact. "A statement is constitutionally-protected opinion if it cannot

reasonably be interpreted as stating actual facts about the plaintiff, when viewed 'from the

perspective of an ordinary reader.'" *Doctor's Data, Inc. v. Barrett*, 170 F.Supp.3d 1087, 1113–1114

(N.D. Ill. 2016); *Moriarty v. Greene,* 315 Ill.App.3d 225, 233 (2000) ("Only statements capable of

being proven true or false are actionable; opinions are not"). To determine whether a statement is

factual, Illinois courts consider "whether the statement has a precise and readily understood

---

[5] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases). Here, as explained above, the Amended Complaint alleges that Jeanette Braun is a resident of Illinois, is licensed to practice law in Illinois, and operates her law firm, Braun IP law in Illinois; further, Braun IP Law was organized and exists under Illinois law. (Am. Compl., ¶¶ 2-3).

meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. If it is clear that the speaker is expressing a subjective view or interpretation, such as when the speaker discloses the facts forming the basis for the statement, the statement is not actionable as defamation." *Doctor's Data,* 170 F.Supp.3d at 1113-14.

Here, Day is expressing her subjective opinion that the copyright claims filed by Braun lacked substantive merit. *See e.g., McGurren v. Hubbard Radio Chicago, LLC*, 2022 WL 602467, at *3 (N.D. Ill. Mar. 1, 2022), *appeal dismissed* 2022 WL 18493433 (7th Cir. Aug. 16, 2022) (statement by employer that it disagreed with Plaintiff's characterization of events underlying EEOC claim was a "classic statement of opinion"). Moreover, the term "false" is not verifiable because it has no "precise and readily understood meaning." What does it mean for a DMCA copyright claim or strike to be "false"? That it lacks merit? And by what standard? Does it mean that there are substantive defenses that the content creator at whom the strike is directed can assert or that the claim was filed for an improper motive? The term "false" is so broad in scope that it "lacks the necessary detail" to have a "precise and readily understood meaning" required to be actionable.[6] *See Hopewell v. Vitullo,* 299 Ill.App.3d 513, 519-20 (1998) (holding that the term "incompetent" is a nonactionable opinion because there are "numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's"); *Green v. Rogers*, 234 Ill.2d 478, 496–498 (2009) (holding that word "misconduct" was too general and imprecise to constitute actionable

---

[6] The Amended Complaint alleges that Day defamed Braun by publicly stating that Braun "filed 'false copyright lawsuits' ***without proper investigation*** . . . ." (Am. Compl., ¶ 192) (emphasis added). However, nowhere in the Amended Complaint does Braun identify any statement by Day that Braun has filed copyright lawsuits "without proper investigation." Rather, the statements set forth in the Amended Complaint support only the allegation that Day stated that Braun "misuse[d] the copyright strike system" (*id.,* ¶ 98) and has filed "false copyright strikes" – without any explanation as to why they are "false." (*id.,* ¶¶ 102-103, 105). *See Osundairo,* 447 F.Supp.3d at 742 (dismissing defamation claim when defendant did not make any statement that could reasonably be interpreted as being implicated by the allegations in Plaintiffs' complaint and holding that plaintiffs "fail to allege with adequate particularity the statements that form the basis for their defamation and false light claims").

defamation); *Solaia Tech., LLC v. Specialty Pub. Co.,* 221 Ill.2d 558, 582–583 (2006) ("The phrase 'deeply greedy people' has no precise meaning, and it is not verifiable. Further, the context in which that phrase appeared indicates that it may have been judgmental, but it was not factual"). Individuals speak out all the time regarding the merits of pending litigation, whether it is the litigant her/himself, a legal commentator, etc. Under Braun's distorted interpretation of the law, a lawyer would have a claim for defamation anytime an individual publicly disagreed with the merit of a claim the lawyer filed. That cannot be the law.

Likewise, ***"[w]hether a person's actions are ethical or deceptive is not objectively verifiable."*** *See Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1213 (N.D. Ill. 2013) (emphasis added) (citing *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (holding that the Illinois Supreme Court has filed that "calling someone a 'crook' or 'incompetent'" was "nonactionable because such bare statements contain no verifiable factual information"); *Law Offices of David Freydin, P.C. v. Chamara,* 24 F.4th 1122, 1131 (7th Cir. 2022) (generally calling someone a "chauvinist" or "racist" is a nonactionable statement of opinion). Thus, such allegations cannot state a claim for defamation. *Id*. (dismissing claims for defamation based on nonactionable opinion). Here, the Amended Complaint makes clear that Day's alleged reference to Braun as "unethical" is based on Day's *subjective opinion* of Braun's "aggressive, threatening, and unethical tactic to scare creators off the app" by filing "false copyright strikes." (Am. Compl., ¶ 105). Again, whether Braun has filed "false copyright strikes" is not objectively verifiable, as explained above, nor is whether Braun is using "aggressive or threatening" tactics. What is "aggressive," "threatening," and "unethical" to one person, may not be to another. *Freydin,* 24 F.4[th] at 1131 (dismissing defamation claim based on statements made on Internet about a law firm because "there are numerous reasons why someone may have had a 'terrible experience' or suggest that a

product or service would be a 'waste of money'").  Indeed, in *Black v. Wrigley,* 2017 WL 8186996, at *8 (N.D. Ill. Dec. 8, 2017), the district court granted a motion to dismiss a defamation claim based on alleged statements that a lawyer and law professor "acted unethically during litigation and is unfit to be a law professor", finding the statements to be "nonactionable expressions of opinion." The district court reasoned that these "alleged statements are ***interpretations or characterizations*** of other facts defendants disclosed" and, therefore, nonactionable. *Id.* (emphasis added) (citing *Patlovich v. Rudd*, 949 F. Supp. 585, 594 (N.D. Ill. 1996) (putting "subjective labels" like "reprehensible" and "self-serving" on previously described factual assertions does not add any new facts and is "pure opinion")). The same can be said for Day's interpretation of Braun's filing of DMCA strikes as "false" or "unethical".[7]

As for the allegation that Day "stated her intent to ruin [Braun's] career as a social media lawyer" (Am. Compl., ¶ 106), the only factual allegation supporting this claim is an alleged statement by Day that she wants "to ensure that there is not a rogue attorney on this app." *Id.* Nowhere does Braun identify a statement made by Day that she wanted to "ruin Braun's career." Moreover, the definition of "rogue" is "corrupt" or "dishonest"[8], which as explained above, is nonactionable opinion.  *Black,* 2017 WL 8186996, at *8; *see also Hopewell,* 299 Ill.App.3d at 520 (statement was nonactionable opinion because it was so "ambiguous and indefinite" that the "veracity" of the statement could not be verified); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill.2d 381, 397–399 (2008) (First Amendment "prohibits defamation actions

---

[7] The Amended Complaint also alleges that Day's statement that she has a "list of creators who have utilized Jeanette, and another list of creators who have been wrongly impacted by false copyright strikes sent in by Jeanette" is "intended to represent to [Day's] audience that she has proof of [] Braun 'filing false copyright strikes." (Am. Comp., ¶ 104). At no point did Day state that she has "proof" that Braun filed "false copyright strikes," only that she has a list of people who have been affected by Braun's actions and – as explained above – whether something is or is not a "false copyright strike" is entirely subjective and not verifiable by any "proof."

[8] *Rogue,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/rogue?src=search-dict-box (last visited April 16, 2024).

based on loose, figurative language . . . ."). Moreover, under Illinois law "social contexts are a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion." *Brennan,* 351 Ill.App.3d at 970. "Thus, where potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Id.* For example, in *Brennan,* the Court found the defendant's statements could not be construed as a literal assertion that the plaintiff had committed mail fraud because the "alleged defamatory statement was made in the literary context of 'a regularly featured column by a journalist who regularly expressed his personal opinions on a wide range of public and social issues.'" *Id.; Freydin,* 24 F.4th at 1130 (holding that "we must consider the particular social context of these online reviews and what it may signal about their contents. The defendants posted their reviews on . . . Facebook, Yelp, and Google pages, which invite unfiltered comments. We trust that readers of online reviews are skeptical about what they read, both positive and negative"). Here, the Amended Complaint alleges that Day is a "social media content creator" and the alleged defamatory statements were made in connection with posts and stories Day created to post *on her own* Tik Tok account. Given this context, social media users would understand Day's statements to be her own unfiltered subjective views.[9]

### 2. Day's Alleged "False Copyright Claims", "Unethical" and "Rogue" Statements Are Also Subject to a Qualified Privilege.

---

[9] Indeed, courts have "emphasized the generally informal and unedited nature" of statements made on the Internet. *See Ganske v. Mensch*, 480 F.Supp.3d 542, 553 (S.D.N.Y. 2020) (citing *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D. 3d 32, 44, 925 N.Y.S.2d 407 (1st Dep't 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'"). Social media platforms are "equally — if not more — informal and 'freewheeling' and as such convey "a strong signal to a reasonable reader" that a statement is opinion. *Id.* (referring to statements on Twitter).

Allegations that Braun is "unethical," "rogue" or files "false copyright claims" are also subject to a qualified privilege under Illinois law. "Such a privilege may exist 'where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published.'" *Tamburo,* 974 F.Supp.2d at 1214 (citing *DePinto v. Sherwin-Williams Co.*, 776 F.Supp.2d 796, 804 (N.D.Ill. 2011)). "Courts also recognize as privileged communications involving a recognized public interest." *Id.* Whether a qualified privilege exists is a question of law for the court. *Id.* Day's statements are privileged because they relate to her interest – as a social media content creator – in protecting her freedom of speech in her social media posts and in *not* being subject to DMCA copyright strikes filed by Braun in response to statements made on social media with which Braun's clients disagree. Moreover, the statements made by Day were published *to those* who share that interest, *i.e.,* other individuals who have social media accounts who have been or could be subject to DMCA copyright strikes filed by Braun. Thus, under Illinois law, these statements are subject to a qualified privilege. *Id.* (holding that alleged defamatory statements made by owner of dog breed database website that plaintiff "stole" her data and was "unethical" were subject to qualified privilege because they "related to her interests in protecting the substantial time and effort spent accumulating her data and in making it freely available to the community of [dog] breeders, to promote the health of the breed . . . [and] the statements were published to people who likewise had an interest in the way in which the dog pedigree data was made available, and they involved a public interest in how access to information available on the internet is regulated"); *Haywood v. Lucent Tech., Inc.*, 169 F.Supp.2d 890, 917 (N.D. Ill. 2001), *aff'd* 323 F.3d 524 (7th Cir. 2003) (holding that defendant's statement that former employee was "unstable" to building security and other employees was privileged because defendant, security guards and other employees have a "compelling interest"

in knowing that plaintiff was terminated and no longer allowed on the premises); *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015) (holding that student's statement to university regarding an alleged sexual assault by an employee "clearly implicates both her interest in her own safety and the university's interest in student safety and the resolution of claims against its employees . . . .").

"[O]nce qualified immunity has been identified, a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice — either knowledge of its falsity or in reckless disregard of the truth." *Id.* at 845. "Courts in this district, however, have looked for something ***more than conclusory statements*** in order to infer the defendant knew the statements were untrue or recklessly disregarded the truth or falsity of those statements." *Id.* (emphasis added) (finding general allegation that defendant made "false statements during the 2014 investigation . . . knowing [those statements] were false" was inadequate to overcome qualified privilege); *Osundairo v. Geragos*, 447 F.Supp.3d 727, 742 (N.D. Ill. 2020) (holding "the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss"). Here, the Amended Complaint contains nothing more than conclusory statement that Day's "defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth. . . ." (Am. Compl., ¶ 201). There are no facts alleged to support this boilerplate allegation, and without such facts, Braun cannot overcome application of the qualified privilege.[10]

### 3. Day's Alleged Statement Regarding Information from the Illinois ARDC is Not Actionable.

---

[10] The Amended Complaint does allege that Day did not "conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts," and "never contacted Plaintiff to verify the information in her posts." (Am. Compl., ¶¶ 91-93). However, a "failure to investigate does not itself establish actual malice if the defendants did not seriously doubt the truth of their assertions." *Hardiman v. Aslam,* 125 N.E.3d 1185, 1189 (Ill. App. Ct. 2019). The Amended Complaint contains no *factual* allegation establishing that Day "seriously doubted the truth" of her statements.

The Amended Complaint alleges that Day posted a Tik Tok story in which she stated that the Illinois ARDC told Day they received "multiple credible complaints about [Braun] and they have assigned multiple attorneys to investigate this matter." (Am. Compl., ¶ 117). However, Count III of the Amended Complaint refers to only the alleged "unethical" and "false copyright claim" statements (*id*., ¶ 192); thus, the alleged ARDC statement is irrelevant to a determination of the sufficiency of Braun's defamation claim.[11] Even if Braun's defamation claim is based on the alleged ARDC statement, it would not be actionable.

*First,* there is no *factual* allegation that this statement is false, and a "false statement" is an essential element of a defamation claim. *Seitz-Partridge v. Loyola University of Chicago*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013). While the Amended Complaint does allege that "[u]pon information and belief, the ARDC made no such comment to Defendant Day", there are no *facts* to support it. In ruling on a motion to dismiss, a court is "not obliged to accept mere conclusory allegations, without any supporting facts, as true." *See Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1280 (N.D. Ill. 1996) (granting motion to dismiss claims when complaint failed "to set forth a single fact that would lead [plaintiff] to believe [allegations made on 'information and belief']. Instead, her pleadings suggest that she has little, if any, 'information' on which to base her 'belief' . . . ."); *see also Green,* 234 Ill.2d at 496 (holding amended complaint "facially deficient" when it alleged "only that plaintiff is informed and believes that defendant made [alleged defamatory] statements, and it does so in a factual vacuum . . . nowhere stat[ing] either how

---

[11] Braun's false light and trade libel claims similarly are *not* based on any allegation that Day stated that the ARDC told Day they received "credible complaints" about Braun and were investigating the matter. (Am. Compl., ¶¶ 230, 251). Thus, it is unclear what relevance, if any, such allegations have to Plaintiffs' claims.

plaintiff came to be so informed or what facts caused him to believe this").[12] *Second*, a republisher — as Day is here — cannot be held liable unless the plaintiff establishes by clear and convincing evidence that the statement was published with actual malice, that is, with knowledge that the statement was false or with reckless disregard as to whether it was false. *Brennan,* 351 Ill.App.3d at 969–971. Here, Day is merely republishing statements allegedly made to her by the ARDC; thus, Braun must allege facts establishing actual malice. As explained above, the Amended Complaint is devoid of any factual allegations to support its conclusory claims of malice, and its barebones, boilerplate allegations are insufficient. *Third*, the statement is subject to an innocent construction. "The innocent construction rule requires the Court to adopt an innocent construction of allegedly defamatory statements if such an interpretation is reasonable." *McGurren,* 2022 WL 602467 at *3. A statement that the ARDC is investigating Braun does not – in and of itself – indicate that Braun has committed professional misconduct. Given that this statement is subject to an innocent construction, Braun cannot state a claim for defamation based on it.

### C.  Braun Does Not State a Claim for False Light or Trade Libel Against Day.

Because Braun has failed to state a claim for defamation against Day, the false light and trade libel claims (Counts VII and XI) arising out of the same allegations of defamation (Am. Compl., ¶¶ 230, 251), must fail as well. *See e.g., Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well."); *Osundairo,* 447 F.Supp.3d at 738 (same); *Evanger's Cat and Dog Food Co., Inc. v. Thixton,* 412 F.Supp.3d 889, 904 (N.D.Ill. 2019)

---

[12]The Amended Complaint also *only* that "upon information and belief," the "all attorney investigations are confidential until the Commission brings a complaint against an attorney," the ARDC generally "does not comment or provide input on the merits of an investigation" and would only provide limited information to individuals calling to inquire about a registered attorney. (Am. Compl., ¶¶ 123-25). The Amended Complaint further alleges that as of its filing, Braun has "zero misconduct violations" on her record. (*Id.,* ¶ 126). None of these allegations establish that Day's statement is false.

("Like defamation claims, commercial disparagement claims [also referred to as trade libel] must be based on false statements of fact and cannot be based on expressions of opinion").

**D.      Braun Does Not State a Claim for Tortious Interference Against Day.** [13]

To state a claim for tortious interference, "[t]he plaintiff must specifically identify the person with whom the plaintiff expected to contract and allege specific acts of interference." *Kapotas v. Better Gov't Ass'n,* 30 N.E.3d 572, 596 (Ill. App. Ct. 2015). Braun fails to "specifically identify" the relationships with which Day allegedly interfered, instead alleging only that *Defendants collectively* interfered with Braun's "existing and prospective client relationships as an attorney." (Am. Compl., ¶ 270).[14] Such conclusory allegations are "too vague to state a viable claim" for tortious interference under Illinois law. *Hackman v. Dickerson Realtors, Inc.*, 557 F.Supp.2d 938, 949 (N.D. Ill. 2008) (dismissing tortious interference claim that alleged defendant's conduct "caused unidentified agents to quit Hackman's employ"). Moreover, Braun has alleged no facts to support any allegation that members of the public have failed to employ Braun for legal representation *as a result of* Day's statements. *Id.* (dismissing claim for tortious interference based on "generic" allegations that "fall short of establishing the causation required for a claim for tortious interference with an existing business relationship" and are "too attenuated" and "too speculative and vague to state a 'plausible entitlement to relief'") (citing *Twombly,* 550 U.S. at 559).[15]   Further, there are no *facts* establishing that Day acted with the *purpose* of interfering with

---

[13] The Amended Complaint refers to alleged false statements made by "Defendants Marston and Vasquez." (Am. Compl., ¶ 268). Thus, it is unclear against whom this claim is now being asserted.

[14] The Amended Complaint also alleges that "[f]ollowing Defendant Vasquez and Defendant Marston's statements, [Braun] received several 1 star google reviews . . . and had clients end their use of Braun law for legal services out of fear of harassment." (*Id.*, ¶ 270). Allegations of negative google reviews and the termination of Braun by unidentified "clients" as a result of alleged statements by *other defendants,* does nothing to salvage Braun's defective interference claim against Day.

[15] The Amended Complaint repeatedly references an "angry internet mob" that Defendants allegedly incited by their purported defamatory statements. (Am. Compl., ¶¶ 152-162); however, these allegations establish only that individuals *other than Defendants* allegedly have harassed Braun online; and the Amended Complaint is devoid of any *factual*

specific existing or prospective relationships (Am. Compl., ¶ 269), which is also fatal to this claim. *Kapotas,* 20 N.E.3d at 569 ("the lack of specific allegations that the defendants acted with the purpose of injuring plaintiff's expectancies is fatal to his claim" of tortious interference).

### E. Braun Does Not State a Claim for Intentional Infliction of Emotional Distress.

Because Braun has failed to state a claim for defamation against Day, Braun's emotional distress claim premised on "defamatory statements and false light" also fails. *Huon v. Breaking Media, LLC*, 75 F.Supp.3d 747, 773 (N.D.Ill. 2014), *aff'd in part, rev'd in part sub nom Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016) (dismissing emotional distress claims based on failed defamation claim "since statements that do not rise to the level of defamation logically cannot rise to the even higher level of 'extreme and outrageous conduct'"). Further, the allegation that Defendants "***should have been aware*** that their defamatory statements and false light of [Braun] would incite an online mob to harass and attack [Braun's] professional reputation" precludes Braun's claim, as Illinois requires that a defendant *intend to cause* or *recklessly disregard* the probability of causing emotional distress. *Lewis v. Cotton,* 932 F.Supp. 1116, 1119 (N.D. Ill. 1996) ("It is not enough that the defendant's causing emotional distress to the plaintiff was simply 'reasonably foreseeable'"). Finally, "conclusory allegations" that conduct was "intentional, willful, reckless, extreme and outrageous" (Am. Compl., ¶ 282) are not enough to "save [Braun's] complaint." *Id.*

## III.   CONCLUSION.

For the foregoing reasons, Day respectfully requests that this Court dismiss Counts III, VII, XI, XIV, and XVI for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

---

allegation establishing that these *other individuals* were acting on behalf of or at the direction of Defendants, nor does it allege any causal connection between Defendants' alleged statements and the purported actions of this "mob."

Dated: April 22, 2024                        Respectfully Submitted,

*s/    Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*s/    Amy Doig*
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

> Benjamin C.R. Lockyer
> Lockyer Law LLC
> 100 N. Riverside Plaza, Suite 2400
> Chicago, Illinois 60606
> ben@lockyerlaw.com
>
> ***Attorney for Plaintiffs***

Dated: April 22, 2024                    <u>/s/ *Brandon J. Witkow*</u>
                                        Brandon J. Witkow