**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | |
| REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ | ) ) ) ) ) | |
| | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS LILY MARSTON AND JESSICA VASQUEZ'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO O.C.G.A. § 9-11-11.1 AND CAL. CODE CIV. PROC. § 425.16, OR, <u>ALTERNATIVELY, MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

## I.    INTRODUCTION

Defendants' Lily Marston ("Marston") and Jessica Vasquez ("Vasquez") (collectively, "Defendants") are the third set of social media content creators who Plaintiff Jeanette Braun/Braun IP Law (collectively, "Braun") – an alleged social media lawyer – has targeted, simply because Braun does not like what these two individuals have said about her online. The Amended Complaint alleges that Defendants co-host an online podcast called "Do We Know Them?", in which they allegedly "promote online controversies, rumors, and celebrity gossip." One such "controversy, rumor, and gossip" discussed by Defendants was Braun's harassing and intimidating litigation tactics on behalf of her social media clients (including co-Plaintiff Lauren Propson), which Defendants believe to be "unethical." Ironically, in response to Defendants voicing their constitutionally-protected *opinions* regarding Braun's "unethical" tactics, Braun has now utilized that very tactic on them. Namely, Braun is attempting to silence their honest but unflattering opinions through *this* patently defective action, in which Braun asserts defamation and a myriad of other tort claims meant to intimidate Defendants. Not only are Braun's claims legally insufficient, but they are based on a textbook example of a "protected activity" under applicable anti-SLAPP statutes – statutes which were enacted for the *very purpose* of preventing this type of lawsuit "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Adding insult to injury, Braun has attempted to drag out this baseless litigation through the service of the Amended Complaint. In response to Braun's original complaint, Defendants moved to strike (and, in the alternative, dismiss) under anti-SLAPP law. Almost a month later, Braun filed the Amended Complaint asserting the *same defective claims*, based on the *same constitutionally-protected opinions*, forcing Defendants to expend additional resources to prepare and file the instant motion. Defendants respectfully request that the Court put an end to Braun's harassment of them and strike all five causes of action under the applicable anti-SLAPP

statutes (or, alternatively, dismiss them under Fed. R. Civ. Proc. 12(b)(6)) and award Defendants their attorneys' fees.

## II.     BACKGROUND

### A.     Case Background.

Plaintiff Lauren Propson ("Propson") is a licensed mortician and social media personality with allegedly "millions of followers" on Tik Tok, and Plaintiff Jeanette Braun/Braun IP Law, LLC (collectively, "Braun") is her lawyer. (Amended Complaint ("Am. Compl."), ¶¶ 13-14, 41, 53). Propson hired Braun to "assist with her copyright infringement claims by filing a Digital Millennium Copyright Act ("DMCA") complaint to social media platforms hosting a video" created by one of the defendants - "KC the owner and operator of the social media account @CaffinatedKitti" (hereafter referred to as "KC"). (*Id.*, ¶¶ 53-54). Plaintiffs have asserted defamation and other tort claims against KC and three other (unrelated) individuals, Defendants Marston and Vasquez, as well as Defendant Rebekah M. Day ("Day"), based on alleged "defamatory statements" they purportedly made on social media regarding the dispute between Propson and KC and Braun's subsequent representation of Propson. The Amended Complaint alleges that Defendants are "owners and co-hosts of the 'Do We Know Them' podcast," an "online weekly video podcast" in which Defendants "promote online controversies, rumors, and celebrity gossip." (*Id.*, ¶¶ 127-128). Marston is a citizen of California, (*id.*, ¶ 8), and Vasquez is a citizen of Georgia (*Id.*, ¶ 7). Braun has alleged a defamation claim and other related tort claims against Defendants based on alleged statements they made about her on their podcast and/or a social media post; Propson has asserted no claims against them.

### B.     Marston's and Vasquez's Alleged Defamatory Statements.

The Amended Complaint alleges that in a December 2, 2023 episode of their "Do We Know Them?" podcast, Defendants "acknowledged that they spoke to Defendant Day" and "relied on the

false information provided by Defendant Day." (*Id.,* ¶¶ 127, 135, 138). The Amended Complaint does not identify what "false information" Defendants allegedly relied on, nor does it identify any alleged defamatory statements made by Defendants in the alleged December 2, 2023 episode. The Amended Complaint alleges that in a video posted on December 3, 2023, Defendants "mocked [] Braun by mispronouncing her name" and "discussed in detail about Ms. Braun's past representations and clients." (*Id.,* ¶¶ 140-142). The Amended Complaint does not identify that any of these "details" discussed by Defendants were false, instead identifying only a statement by Vasquez that social media content creators had informed her that they had received a "false copyright strike" from one of Braun's clients. (*Id.,* ¶ 145). The full episode of the "Do We Know Them?" podcast at issue can be viewed at: [Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where Are They NOW? (Ep 97) (youtube.com)](#) (hereafter, the "Episode 97 Link").[1] As indicated in the Episode 97 Link, the podcast has approximately 111,000 subscribers, and at the time this Motion was prepared, the episode was viewed approximately 190,000 times. (*Id.*)

Vasquez allegedly stated in Episode 97 that Braun was "basically using all this jargon that she made up in her head and she's using that as a scare tactic to represent her clients and give the clients what they want which is usually to like stop being criticized year from what we've heard because I got a couple of DMs like pretty immediately after we uploaded I was shocked I know I was like that

---

[1] As this Court held in considering transcripts of television shows and a podcast on which defendants made alleged defamatory statements in ruling on the sufficiency of the complaint: "[w]hile courts normally do not consider such extrinsic evidence without converting a motion to dismiss into one for summary judgment, where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss." *Osundairo v. Geragos,* 447 F.Supp.3d 727, 738 (N.D. Ill. 2020). "This standard is met" where a plaintiff "explicitly refer[s]" to a media appearance "in their Complaint and the very statements at issue were made by Defendants during these media appearances." *Id.* While Braun does not explicitly refer to "Episode 97 of Marston's and Vasquez's podcast 'Where are They NOW?'" in the Amended Complaint, it is apparent that this is the Episode in which the defamatory statements were made, as Braun set forth screen shots from this episode in the original Complaint (Dkt. 1, at ¶¶ 89, 91), and a review of Episode 97 reveals that the alleged defamatory statements were made during this episode. Because Braun "explicitly refers" to this episode in the Amended Complaint (while not identifying it by the specific episode number) and the "very statements at issue were made by Defendants during this [episode of their podcast]", the Court can consider the video itself when determining the sufficiency of the claims. Further, given that the video is over 1 hour and 24 minutes in length, Defendants feel a lengthy written transcript of the entire episode would not be useful to the Court; however, Defendants are happy submit a written transcript of the entire Episode upon the Court's request, should the Court deem it useful.

was click and even an email from someone as well that is not a creator that we were like oh interesting but apparently she had issued them a false copyright strike but um the DMs I got definitely show that intimidation tactics are the norm for her and she thinks that is appropriate turs out like we said Janet has been around far more than we thought." (*Id.,* ¶ 145). The Amended Complaint alleges that "[u]pon information and belief, [] Vasquez made these statements to make her audience believe that she had verifiable proof that [] Braun filed a 'false copyright strike,' or a baseless or frivolous DMCA takedown." (*Id.,* ¶ 146).[2] Vasquez allegedly stated: "as unhinged as Janet is, as unethical as Janet is, she is finding some success in her practices; like whether short term or not, she's kind of low-key slaying, but in the worst way. Like she's getting the job done really poorly." (*Id.,* ¶ 147 (emphasis removed); *see also* Episode 97 Link, at timestamp 32:30-32:42). Finally, the Amended Complaint alleges that in a "since removed post, [] Marston accused [] Braun of 'actively committing perjury,'" setting forth a screen shot of the alleged post, which states: "I gotta say . . . one of our biggest questions in all of this, do we think demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her". (*Id.*, ¶ 149).

## III.    ARGUMENT

### A.    Braun's Claims Should Be Stricken Under Applicable Anti-SLAPP Statutes.

#### 1.    The California and Georgia Anti-SLAPP Statutes Apply in this Case.

"In the case of an anti-SLAPP statute raised as a defense to a defamation claim, the choice-of-law question regarding the anti-SLAPP law is treated separately from whether a statement is defamatory because the anti-SLAPP question involves whether a statement is privileged, not whether its content is defamatory." *Osundairo v. Geragos,* 447 F.Supp.3d 727, 743 (N.D. Ill. 2020) (citing

---

[2] The Amended Complaint neglects to mention that later in Episode 97, Defendants show a screenshot of an email they received from an individual named "Christin" in which "Christin" stated that she had posted videos depicting screenshots of text message conversations she had with Braun's client "Demps", after which "Jeanette reported two of her [videos] for copyright"; Defendants also showed a screenshot of an "Appeal" that "Christin" filed, which indicated that the copyright violation was claimed by "Jeanette M. Braun." (*See* Episode 97 Link, at timestamp 25:23-25:49). Defendants go on to explain their belief that text messages are not copyrightable and, therefore, Braun had no basis to file a DMCA copyright strike against "Christin" for posting screenshots of text messages. (*Id.,* at timestamp 25:50-26:00).

*Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722 (N.D. Ill. 2014). Pursuant to dépeçage, the Court can apply different states' laws to different elements of the lawsuit. *See Underground Sols.*, 41 F. Supp. 3d at 722. Although the place of alleged injury might be critical in determining the law applicable to the defamation claim, the choice of law for anti-SLAPP protection involves protecting the speaker's exercise of First Amendment rights and could lead to the application of different state law. *Id.* at 722; *Chi v. Loyola Univ. Med. Ctr.*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011). Namely, "[i]n determining which law to apply to defenses raised pursuant to anti-SLAPP statutes, courts have found the place where the allegedly tortious speech took place and the domicile of the speaker central to the choice-of-law analysis." *Intercon Sols., Inc. v. Basel Action Net.,* 969 F.Supp.2d 1026, 1035 (N.D. Ill. 2013). Here, Marston and Vasquez are "citizen[s] and resident[s]" of the California and Georgia, respectively (Am. Compl., ¶¶ 7,8), and there is no allegation that the alleged defamatory speech originated anywhere other than California and Georgia. Thus, California and Georgia have a strong interest in protecting Marston's and Vasquez's speech, respectively, and their anti-SLAPP laws apply to Braun's claims. *See Osundairo,* 447 F.Supp.3d at 743; *Underground Sols.*, 41 F. Supp. 3d at 725.[3]

### 2. Martson's and Vasquez's Statements Constitute a "Protected Activity" Under the Georgia and California Anti-SLAPP Statutes.

As a preliminary matter, the Georgia anti-SLAPP statute (set forth in OCGA § 9-11-11.1) and the California ant-SLAPP statute (set forth in Code Civ. Proc. § 425.16) are virtually identical, such that Georgia courts look to California case law interpreting the California anti-SLAPP statute for guidance. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 258 (2019). Under both Georgia and California law, the analysis of an anti-SLAPP motion to strike involves two steps. *See ACLU, Inc. v. Zeh,* 312 Ga. 647, 650 (2021) (citing *Wilkes & McHugh,* 306 Ga. at 261; *Clarity Co.*

---

[3] The Georgia anti-SLAPP statute "does not directly conflict with a Federal Rule of Civil Procedure and, thus, is substantive and can apply in federal court. *Amin v. NBCUniversal Media, LLC,* 2022 WL 16964770, at *7 (S.D. Ga. Nov. 16, 2022); *see also Planned Parenthood Fed. of Amer., Inc. v. Center for Medical Progress,* 890 F.3d 828, 833 (9th Cir. 2018) (holding that there was no conflict between anti-SLAPP statute and federal procedural rules when court reviews anti-SLAPP statute based on legal deficiencies under Rule 12(b)(6) standard).

*Consulting, LLC v. Gabriel,* 77 Cal.App.5th 454, 461–462 (2022) (citing *Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871, 884 (2019)). First, the court must decide whether the party filing the anti-SLAPP motion "has made a threshold showing that the challenged claim is one 'arising from' protected activity." *Wilkes,* 306 Ga. at 262; *see also Clarity,* 77 Cal.App.5th at 461. If so, the court must then "decide whether the plaintiff 'has established that there is a probability that the [plaintiff] will prevail on the claim." *Wilkes,* 306 Ga. at 262 (quoting OCGA § 9-11-11.1 (b) (1)); *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 819–820 (2011) (second step in anti-SLAPP analysis is to "consider whether the plaintiff has demonstrated a probability of prevailing on the claim").

A "protected activity" under OCGA. § 9-11-11.1 (b) (1) and Code Civ. Proc. § 425.16(b)(1) is conduct "which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under" the Constitution of the United States or the Constitution of the State of Georgia/the California Constitution "in connection with an issue of public interest or concern" or a "public issue" *See* OCGA § 9-11-11.1(b)(1); Code Civ. Proc. § 425.16(b)(1). "Protected Activities" under *both* the Georgia and California anti-SLAPP statutes include: "[a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"; "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern," and "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." *See Barnwell v. Trivedi*, 366 Ga.App. 168, 170–171 (2022) (citing OCGA § 9-11-11.1); *see* Cal. Civ. Proc. § 425.16(e).[4] The statute "is intended to protect persons exercising

---

[4] The California and Georgia statutes vary slightly, California defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Code Civ. Proc. § 425.16(e).

their constitutional rights of petition and freedom of speech. To accomplish this goal, the statute is to be construed broadly." *Barnwell,* 366 Ga.App. at 171; *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 421 (9th Cir. 2014) (Section 425.16(a) states that it "shall be construed broadly", and the California Supreme Court has "interpreted the anti-SLAPP statute broadly, cautioning that a narrow construction 'would serve Californians poorly'").

There can be no question that Braun's claims here are based on statements made by both individuals "in a public forum" and "in connection with a public issue or an issue of public concern [or public issue]." *See* OCGA § 9-11-11.1(c)(3)(4); Code Civ. Proc. § 425.16(e). The Amended Complaint alleges that the statements were published on the Internet in connection with Defendants' "online weekly video podcast" "disseminated through various audio platforms" including "YouTube and at least 18 other platforms". (Am. Compl., ¶¶ 127-28, 133, 205). The Episode 97 Link demonstrates that the podcast has at least 111,000 subscribers, and Episode 97 itself received has been viewed at least 190,000 times. (*See* Episode 97 Link). Marston also allegedly made purported defamatory statements on Twitter. (*Id.,* ¶ 149). Social media and online platforms are considered "public forums" under both Georgia and California anti-SLAPP statutes. *See Equity Prime Mortg. v. Greene for Congress, Inc.,* 366 Ga.App. 207, 216 (Ga. Ct. App. 2022) (statements made on social media fell within scope of O.C.G.A. § 9-11-11.1); *Prehired, LLC v. Provins,* 2023 WL 2717509, at *6 (E.D. Cal. Mar. 30, 2023) ("statements posted on internet sites are posted in a public forum within the meaning of § 425.16(e)(3)").

"To determine whether an issue is an 'issue of public concern' under the [Georgia anti-SLAPP] statute, courts consider 'whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occurred in the context of an ongoing controversy, dispute or discussion, or affected a community in a manner similar to that of a governmental entity.'" *Amin v. NBCUniversal Media,*

*LLC,* 2022 WL 16964770, at *6 (S.D. Ga., Nov. 16, 2022) (citing *Lane Derm. v. Smith*, 861 S.E.2d 196, 204 (Ga. Ct. App. 2021). Courts also "broadly" construe the phrase "issue of public interest" when applying the California anti-SLAPP statute. *Prehired,* 2023 WL 2717509, at *6. "[A]n issue of public interest' ... is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected . . . it is enough that it is one in which the public takes an interest." *See Cross v. Cooper,* 197 Cal.App.4th 357, 373 (2011); *FilmOn.com Inc. v. DoubleVerify Inc.,* 7 Cal.5th 133, 145 (2019) (courts look to "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants'").

Defendants' statements on their podcast, as well as Marston's statement on Twitter, constitute a matter of public interest or concern and, thus, qualify as "protected activities" under both anti-SLAPP statutes. This is not a matter that affects only Marston, Vasquez and Braun. Rather, Defendants were communicating to their 111,000 subscribers about their impressions of Braun's litigation tactics, namely, their belief that Braun's "practices are unethical" and she files "false copyright strikes" to intimate individuals who voice unflattering opinions about her clients. (Am. Compl., ¶¶ 146-149). Indeed, Paragraph 145 of the Amended Complaint quotes Defendants' statement in Episode 97 that Braun is "using scare tactics to represent her clients and give the clients what they want[,] which is usually to like stop being criticized" (*id.,* ¶ 145), and Defendants' explanation that they have received messages and emails from people who have had Braun issue a "false copyright strike against them." (*Id.*) Later in the episode, Defendants showed a screenshot of an email they received from a content creator against whom Braun had filed a copyright strike, which Defendants explained they believed was improper. (*See* Episode 97 Link, at timestamp 25:23-26:00). Defendants also explain that Braun "takes down things that are either embarrassing to a creator or negative about a creator" and "goes to like, allegedly, unethical lengths to silence people's critics or 'bullies'…") (*Id.* at 31:06-31:20). With respect to the alleged statement in Paragraph 147 of the Amended Complaint, alleging that Braun is

"unethical," Defendants go on to discuss how "it seems like" Braun was "successfully silencing [content creators], and no one was coming forward until now" and "it's just like, there is no shortage of people [Braun] has harassed with legalese and a bunch of gibberish . . . most people don't understand, and they'll just be like . . . I'm going to jail." (*See* Episode 97 Link, at timestamp 32:19-33:27). Marston's Twitter post alleged in Paragraph 149 of the Amended Complaint similarly relates to a statement regarding unethical tactics engaged in by Braun on behalf of one of her social media clients referred to as "demps." (Am. Compl., ¶¶ 149-150).

Under both Georgia and California law, statements that Braun is engaging in unethical or harassing conduct is unquestionably a matter of public concern affecting a large group of individuals, *i.e.*, social media content creators who might be targeted by Braun or who might be considering using Braun as a lawyer. Marston's and Vasquez's warnings to content creators about Braun's conduct in Episode 97 is a "protected activity" under the anti-SLAPP statutes, ***regardless of whether the warning was sincere, accurate or truthful.*** *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,* 946 F.Supp.2d 957, 969 (N.D. Cal. 2013) (emphasis added) (finding that online blog post "warning ... consumers not to do business with plaintiffs because of their allegedly faulty business practices" concerns an issue of public interest, and "[i]t makes no difference, for purposes of the public interest requirement, that the warning was not sincere, accurate, or truthful"); *Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012) (concluding that online statements regarding plaintiff's character and business practices were "of public interest" because they "were intended to serve as a warning to consumers about his trustworthiness."); *ACLU,* 312 Ga. at 650 (holding that statement on blog post that public defender had charged an indigent defendant was protected under Georgia anti-SLAPP).[5]

---

[5] Marston's and Vasquez's statements also constitute a "protected activity" under both Georgia and California anti-SLAPP statutes because they were made in connection with an issue under consideration or review by a legislative, executive, or judicial body, ***or any other official proceeding authorized by law.*** *See* OCGA § 9-11-11.1(c)(2) (emphasis added); Code Civ. Proc. § 425.16(e)(2) (emphasis added). And *"statement made in connection with an issue under consideration by any official proceeding" is a "protected activity. Johnson v. Cordtz,* 366 Ga.App. 87, 91 (2022). The filing of a complaint or

### 3. There is No Probability That Braun Can Prevail on Her Claims.

Once a defendant has established that the claims asserted against it arise out of protected activity, as Marston and Vasquez have done here, the burden then shifts to the plaintiff to demonstrate that there is a probability that the plaintiff will prevail on his or her claims. *See* OCGA § 9-11-11.1(b)(1); Code Civ. Proc. § 425.16(b)(1). In federal district court, an anti-SLAPP motion "may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," and if "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) *except that the attorney's fee provision of [the anti-SLAPP statute] applies*." *Planned Parenthood*, 890 F.3d at 834 (9th Cir. 2018); *Osundairo,* 447 F.Supp.3d at 744 (same). Though a complaint need not contain "detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Here, Braun has failed to state facts sufficient to constitute any cause of action against Marston and Vasquez; thus, each of the claims should be stricken and attorneys' fees should be awarded to Marston and Vasquez under the Georgia and California anti-SLAPP statutes.

### a. Braun Cannot Prevail on Her Defamation Claim.

To state a claim for defamation under Illinois law,[6] a plaintiff must plead facts showing: "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner,* 351 Ill.App.3d 963, 968 (2004). Here, Count IV of the Amended Complaint alleges that Defendants defamed Braun by "publicly stating" that Braun: (1) "is unethical", and (2) "commits perjury."[7] (Am. Compl., ¶ 204).

---

copyright strike under the DMCA constitutes an "official proceeding" as it is expressly "authorized by law." *See* 17 U.S.C. § 512(c)(3)). Thus, it constitutes an "official proceeding authorized by law," and Marston's and Vasquez's alleged statements made in connection with DMCA strikes filed by Braun are protected.

[6] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases).

[7] The Amended Complaint also generally alleges that Defendants "us[ed] their platform to smear [Braun's] character and reputation," but this allegation cannot state a claim for defamation because it does not "identify any particular statement

The allegation that Defendants defamed Braun by stating that Braun is "unethical" cannot state a claim for defamation under Illinois law, as such a statement constitutes a nonactionable opinion protected under the First Amendment. "A statement is constitutionally-protected opinion if it cannot reasonably be interpreted as stating actual facts about the plaintiff, when viewed 'from the perspective of an ordinary reader.'" *Doctor's Data, Inc. v. Barrett*, 170 F.Supp.3d 1087, 1113–1114 (N.D. Ill. 2016) (citations omitted). "To determine whether a statement is factual in nature, Illinois courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. If it is clear that the speaker is expressing a subjective view or interpretation, such as when the speaker discloses the facts forming the basis for the statement, the statement is not actionable as defamation." *Id.* Here, Illinois courts have made clear that the term "unethical" has no "precise and readily understood meaning" and is, therefore, not verifiable. In *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1212 (N.D. Ill. 2013), the court held that statements that a plaintiff's actions were "unethical" and "deceitful" are "***plainly subjective***", ***not "objectively verifiable",*** and ***"not actionable." Id.*** (emphasis added); *see also Black v. Wrigley*, 2017 WL 8186996, at *8 (N.D. Ill. Dec. 8, 2017) (holding that "Defendant's alleged statements that [lawyer and law professor] acted unethically during litigation and is unfit to be a law professor are also nonactionable expressions of opinion"); *Hopewell v. Vitullo,* 299 Ill.App.3d 513, 519-20 (1998) (holding that the term "incompetent" is a nonactionable opinion because there are "numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's"). Further, it is apparent that Defendants' description of Braun as "unethical" is their *subjective belief* based on *their interpretation* of circumstances in which she has filed DMCA copyright strikes against content creators, i.e., Defendants *believed* that it was inappropriate for Braun to takedown a post

---

that forms the basis for this allegation." *Osundairo,* 447 F.Supp.3d at 738–739 (holding that "plaintiffs do not identify any particular statement that forms the basis for this allegation . . . This imprecision leaves Defendants and this Court guessing as to which statements are at issue").

reflecting uncopyrightable screenshots of text messages. *Tamburo,* 974 F.Supp.2d at 1212 ("A plainly

subjective remark is not actionable").

Equally defective is Braun's allegation that Marston defamed Braun by stating in a Twitter

post that she "commits perjury." (Am. Compl., ¶ 204). The Twitter post does not identify any

particular statement made by Braun that Marston contends constitutes perjury, and the Amended

Complaint is devoid of any facts explaining the context of this accusation. (*Id.,* ¶ 149). Essentially,

this statement is nothing more than Marston calling Braun a liar without any factual context. Illinois

law is clear that a "general statement that someone is a liar, not being put in context of specific facts,

is merely opinion." *Piersall,* 230 Ill.App.3d at 510; *Schivarelli v. CBS, Inc*., 333 Ill.App.3d 755, 762

(Ill. App. Ct. 2002) (statement that plaintiff was "cheating the city*," in the absence of any factual

context*, "was a nonactionable opinion, as it was too broad, conclusory, and subjective to be

objectively verifiable"). For this statement to be actionable, it would have had to provide some *factual

context* as to *why* or *how* Braun had "committed perjury," and it did not. Without such factual context,

the statement cannot be "objectively verified" and cannot constitute defamation. *Black,* 2017 WL

8186996, at *8 (statement that plaintiff's testimony "lacked credibility" was *opinion* because

defendant "did not specify the subject of the testimony to which she refers or explain what made the

testimony less credible" and did "not contain 'an objectively verifiable' assertion").

Moreover, under Illinois law "social contexts are a major determinant of whether an ordinary

reader would view an alleged defamatory statement as constituting fact or opinion." *Brennan,* 351

Ill.App.3d at 970. "Thus, where potentially defamatory statements are published in a . . . setting in

which the audience may anticipate efforts by the parties to persuade others to their positions by use

of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements

of fact may well assume the character of statements of opinion." *Id.* (statement deemed opinion

because it "was made in the literary context of 'a regularly featured column by a journalist who

regularly expressed his personal opinions on a wide range of public and social issues'")*; see also

Freydin*, 24 F.4th at 1130 (holding that statements posted on "Facebook, Yelp, and Google pages,

which invite unfiltered comments" were opinion and not fact because "readers of online reviews are

skeptical about what they read, both positive and negative"). Here, the Amended Complaint alleges that Defendants made the alleged defamatory statements on an online podcast that "promote[s] online controversies, rumors, and celebrity gossip . . . ." (Am. Compl., ¶ 128). Certainly, their viewers would understand that their general statements regarding Braun's ethics or litigation tactics in the context of an online controversy to be opinions. The fact that these statements were made on the Internet and social media posts further underscore that they constitute an opinion.[8]

Not only are Defendants' alleged statements nonactionable opinions, but they are also subject to a qualified privilege under Illinois law. "Such a privilege may exist 'where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published.'" *Tamburo,* 974 F.Supp.2d at 1214 (citation omitted). "Courts also recognize as privileged communications involving a recognized public interest." *Id.* Whether a qualified privilege exists is a question of law for the court. *Id.* Defendants' statements are privileged because they relate to their own and their viewers' interest in protecting their freedom of speech as social media content creators and *not* being subject to intimidating litigation tactics by Braun on behalf of her clients, as well as the public interest in protective free speech on social media. *Id.; Haywood v. Lucent Tech., Inc.,* 169 F.Supp.2d 890, 917 (N.D. Ill. 2001); *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015). "[O]nce qualified immunity has been identified, a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice-either knowledge of its falsity or in reckless disregard of the truth," but must do so with "***more than conclusory statements***." *Id.* at 845 (emphasis added). Here, the Amended Complaint fails to satisfy this burden. (Am. Compl., ¶¶ 139, 212).

> ### b. Braun Cannot Prevail on Her False Light and Trade Libel Claims.

Braun cannot demonstrate a probability of prevailing on her false light claim (Count VIII) or

---

[8] Courts have "emphasized the generally informal and unedited nature" of statements made on the Internet. *See Ganske v. Mensch*, 480 F.Supp.2d 542, 553 (S.D.N.Y. 2020) (citing *Sandals Resorts Int'l Ltd. v. Google, Inc*., 86 A.D. 3d 32, 44 (1st Dep't 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'"). Social media platforms are "equally — if not more — informal and 'freewheeling' and as such convey "a strong signal to a reasonable reader" that a statement is opinion. *Id.* (referring to statements on Twitter).

trade libel (Count XII) claims because they are based on the same failed allegations as Braun's defamation claim. (Am. Compl., ¶¶ 235-239, 255-258). Because Braun cannot state a claim for defamation (*see* Section III.A.3(a), *supra*), these claims must fail as well. *See Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well"); *Evanger's Cat and Dog Food Co., Inc. v. Thixton,* 412 F.Supp.3d 889, 904 (N.D.Ill. 2019) ("Like defamation claims, commercial disparagement claims [also referred to as trade libel] must be based on false statements of fact and cannot be based on expressions of opinion").

### c.    Braun Cannot Prevail on Her Tortious Interference Claim.

A claim for tortious interference requires that plaintiffs show (1) their reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of that expectancy; (3) purposeful interference by the defendants preventing that expectancy from being fulfilled; and (4) damages resulting from such interference. *See Hackman v. Dickerson Realtors, Inc.*, 557 F.Supp.2d 938, 948 (N.D. Ill. 2008). Braun fails to allege any specific facts regarding the existing or prospective relationships with which Marston and Vasquez allegedly interfered. Rather, Braun alleges only that following Defendants' "statements," Braun "received several 1 star google reviews for Braun Law, and had clients end their use of Braun Law for legal services out of fear of harassment." (Am. Compl., ¶ 270). First, the vague reference to "clients" is insufficient to state an intentional interference claim. *Hackman,* 557 F.Supp.2d at 949 (dismissing tortious interference claim that alleged defendant's conduct "caused unidentified agents to quit Hackman's employ"). Moreover, Braun has alleged no facts to support any allegation that members of the public have failed to employ Braun for legal representation *as a result of* Marston's or Vasquez's statements. The allegation that unidentified individuals (*not* Defendants) left "1 star google reviews" for Braun following Defendants' statements "fall[s] short of establishing the causation required for a claim for tortious interference with an existing business relationship" and is "too attenuated" and "too speculative and vague to state a 'plausible entitlement to relief." *Id.* Likewise, the allegation that unidentified clients stopped using Braun "out of fear of harassment" does not establish any causal connection with the alleged

defamatory statements and cannot state a claim for intentional interference.

### d.    Braun Cannot Prevail on Her Emotional Distress Claim.

Because Braun has failed to state a claim for defamation against Defendants, Braun's emotional distress claim premised on "defamatory statements and false light" also fails. *Huon v. Breaking Media, LLC*, 75 F.Supp.3d 747, 773 (N.D.Ill. 2014) (dismissing emotional distress claims based on failed defamation claim "since statements that do not rise to the level of defamation logically cannot rise to the even higher level of 'extreme and outrageous conduct'"). Further, the allegation that Defendants "***should have been aware*** that their defamatory statements and false light of [Braun] would incite an online mob to harass and attack [Braun's] professional reputation" precludes Braun's claim, as Illinois requires that a defendant *intend to cause* or *recklessly disregard* the probability of causing emotional distress. *Lewis v. Cotton,* 932 F.Supp. 1116, 1119 (N.D. Ill. 1996) ("It is not enough that the defendant's causing emotional distress to the plaintiff was simply 'reasonably foreseeable'"). Finally, "conclusory allegations" that conduct was "intentional, willful, reckless, extreme and outrageous" (Am. Complaint, ⁋ 282), are not enough to "save [Braun's] complaint." *Id.*

*        *        *        *

Because the second prong of the anti-SLAPP statutes has been satisfied, Marston and Vasquez respectfully request that the Court strike the claims and award them their attorneys' fees.

### B.    Alternatively, Braun's Claims Should Dismissed Under Fed. R. Civ. P. 12(b)(6).

As explained above in Sections III.A.3(a) through (d) *supra*, Braun is not likely to prevail on any of the five causes of action asserted against Marston and Vasquez because they are legally insufficient, *i.e.*, they fail to state a claim under Fed. R. Civ. P. 12(b)(6).  If the Court determines that Marston's and Vasquez's conduct is not a protected activity under applicable anti-SLAPP statutes, Marston and Vasquez respectfully request that the Court dismiss the claims under Rule 12(b)(6).

## III.    CONCLUSION.

Defendants respectfully request that this Court: (1) strike Counts IV, VIII, XII, XIV, and XVI and award them the attorneys' fees they have incurred under OCGA § 9-11-11.1 and Code Civ. Proc. § 425.16; or, alternatively, (2) dismiss these counts for failure to state a claim under Rule 12(b)(6).

Dated:  April 22, 2024                    Respectfully Submitted,

_s/    Brandon J. Witkow_
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com


_s/    Amy Doig_
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

_Attorneys for Defendants_

**CERTIFICATE OF SERVICE**

 The undersigned attorney hereby certifies that the foregoing document was filed and served on all

counsel of record noted below via the CM/ECF system of the United States District Court of the

Northern District of Illinois.

       Benjamin C.R. Lockyer
       Lockyer Law LLC
       100 N. Riverside Plaza, Suite 2400
       Chicago, Illinois 60606
       ben@lockyerlaw.com

       ***Attorney for Plaintiffs***

Dated: April 22, 2024                  */s/ Brandon J. Witkow*
                                    Brandon J. Witkow