```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   JEANETTE BRAUN, BRAUN IP LAW,   )  Case No. 23 C 16856
     and LAUREN PROPSON,             )
 4                                   )
                    Plaintiffs,      )
 5                                   )
             v.                      )
 6                                   )
     REBEKAH M. DAY NEE BOXX, KC THE )
 7   OWNER AND OPERATOR OF THE ONLINE)
     SOCIAL MEDIA ACCOUNT            )
 8   @CAFFINATEDKITTI, LILY MARSTON, )
     and JESSICA VAZQUEZ,            )  Chicago, Illinois
 9                                   )  April 17, 2024
                    Defendants.      )  1:30 p.m.
10

11              TRANSCRIPT OF PROCEEDINGS - STATUS
             BEFORE THE HONORABLE MARY M. ROWLAND
12
     APPEARANCES:
13

14   For the Plaintiffs:   LOCKYER LAW LLC
                           BY:  MR. BENJAMIN C.R. LOCKYER
15                         6515 W. Archer Avenue
                           Chicago, Illinois 60638
16

17   For the Defendants:   WITKOW BASKIN
                           BY:  MR. BRANDON WITKOW (via phone)
18                         21031 Ventura Boulevard, Suite 700
                           Woodland Hills, California 91364
19

20   Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                           Official Court Reporter
21                         219 S. Dearborn Street, Room 1224
                           Chicago, Illinois 60604
22                         312.435.6053
                           laura_renke@ilnd.uscourts.gov
23
                              * * * * *
24
                 PROCEEDINGS REPORTED BY STENOTYPE
25      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1       (In open court.)
2             THE CLERK:  Good afternoon.  The case before us is
3   23 CV 16856, Braun, *et al.* v. Day, *et al.*
4             THE COURT:  Good afternoon.
5             MR. LOCKYER:  Good afternoon, your Honor.  Benjamin
6   Lockyer, L-O-C-K-Y-E-R, on behalf of the plaintiffs.
7             MR. WITKOW:  Good afternoon, your Honor.  Brandon
8   Witkow, W-I-T-K-O-W, on behalf of the defendants.
9             THE COURT:  Good afternoon.
10            Okay.  I know yesterday I granted a motion for the
11  defendants to file a motion to dismiss that exceeded the page
12  limit.  But what I forgot to do is to tell defendant to file a
13  copy of that on the docket as a separate docket entry.
14            So, Mr. Witkow, I need you to file that today as a
15  separate docket entry.  Okay?
16            MR. WITKOW:  Just to be clear, your Honor, file an
17  order on it or --
18            THE COURT:  No, no.  But, you know --
19            MR. WITKOW:  -- the actual proposed --
20            THE COURT:  -- your motion yesterday attached as
21  Exhibit A your motion to dismiss.
22            MR. WITKOW:  Right.
23            THE COURT:  That exhibit needs to be filed on the
24  docket as a separate docket entry so that there's actually a
25  motion to dismiss on the docket.

1          MR. WITKOW:  Right, yeah.  We were planning -- our
2   deadline from your Court -- from the Court's previous order was
3   April 22nd.
4          THE COURT:  Okay.  Very good.
5          MR. WITKOW:  So we were planning to file all of our
6   motions on that day as a separate motion.
7          THE COURT:  Okay.  Very good.  Very good.
8          And have I set briefing on those?
9          MR. LOCKYER:  No, you have not, your Honor.
10         THE COURT:  Okay.  And what are you going to file
11  besides a motion to dismiss?
12         MR. WITKOW:  There will be three separate motions on
13  behalf of -- there's four defendants, but two of them, Marston
14  and Vazquez, are together.  So there will be one motion to
15  dismiss, an anti-SLAPP as to Marston and Vazquez that will stay
16  within the page limits; a separate motion to dismiss on behalf
17  of Day, which will also stay within the page limits; and then a
18  separate motion to dismiss, an anti-SLAPP as to defendant KC,
19  which is what the subject of the excess pages was.
20         THE COURT:  Okay.  And those will all be filed later
21  this month.
22         And then are you the only lawyer then on behalf of
23  plaintiffs?
24         MR. LOCKYER:  Yes, your Honor.
25         THE COURT:  Okay.  So what kind of briefing would you

1 like?

2 MR. LOCKYER: Your Honor, if we could have 30 days.

3 THE COURT: Sure.

4 MR. LOCKYER: I believe --

5 THE COURT: Go ahead.

6 MR. LOCKYER: I believe that puts us at May 20th, your
7 Honor -- or I'm sorry -- May 22nd.

8 THE COURT: Sure. So May 22nd for a response to all
9 four.

10 And are you going to be filing separate responses or
11 one response? Or --

12 MR. LOCKYER: We will try to see if we can do one
13 response, your Honor, just for brevity.

14 THE COURT: Okay.

15 MR. LOCKYER: But we might have to do two separate
16 motions for defendant CaffinatedKitti.

17 THE COURT: Okay. Okay. So response due May 22nd.

18 And then reply?

19 MR. WITKOW: I would request, your Honor, June 12th,
20 if that works.

21 THE COURT: That's fine. June 12th.

22 Okay. In the meantime, is -- have you filed a joint
23 initial status report? And are we in the midst of discovery?

24 MR. LOCKYER: Your Honor, we have filed a joint
25 initial status report. We have talked -- per the Court's

1   order, we have discussed discovery deadlines.  For the most
2   part, we have agreed on most of it.
3               There is a little disagreement between the parties on
4   whether there should be a written discovery deadline.  But for
5   the most part, we have agreed to do initial disclosures on
6   July 19th and do a status conference on September 18th.
7               In terms of --
8               THE COURT:  Did I enter those dates?
9               MR. LOCKYER:  No, your Honor.  We did not -- we've
10  currently discussed them.  We have not had a formal agreement
11  yet.
12              In terms of the dates we have agreed on, they are
13  July 19 for initial disclosures and discovery beginning, a
14  status conference on September 18th, a status conference on
15  October 16th, fact discovery closure on January 22nd.
16              Counsel and I have spoken, and we believe there might
17  be experts that are necessary for damages.  So we have
18  discussed expert disclosure deadlines of February 5th, 2025,
19  and expert disclosure -- or expert discovery cutoff of
20  May 15th, 2025.
21              THE COURT:  Okay.  Okay.  I'm looking at your status
22  report.  This is why I called you in.
23              So do you think that -- I want to hear from both of
24  you.  I have a couple things about this case.  Do you think
25  that you should -- we should engage in discovery before I rule

1 on the motions to dismiss? I generally do at least encourage
2 the parties to engage in written discovery while motions to
3 dismiss are pending.
4     MR. LOCKYER: Your Honor, we believe there are issues
5 of fact that will allow us to prevail on the motion to dismiss.
6 So we believe that for judicial efficiency, beginning discovery
7 would be appropriate.
8     I understand counsel's concerns about tendering
9 discovery given their arguments for the motion to dismiss. So
10 as a compromise, we are discussing doing initial discovery and
11 then beginning -- or I'm sorry -- initial disclosures earlier
12 and then beginning formal discovery at a later date after the
13 motions to dismiss are ruled on.
14     THE COURT: Mm-hmm.
15     Are you filing --
16     MR. WITKOW: Your Honor, this is Brandon Witkow on
17 behalf of --
18     THE COURT: Yeah, Mr. Witkow. Are you filing a motion
19 for change of venue?
20     MR. WITKOW: There is that being -- that is being
21 brought in the alternative as to defendant KC's motion to
22 dismiss because defendant KC is moving to dismiss both
23 plaintiff Lauren Propson's claims and plaintiff Jeanette
24 Braun's claims.
25     And in addition to the defenses that are being raised

Case: 1:23-cv-16856 Document #: 44 Filed: 04/25/24 Page 7 of 15 PageID #:502

7

1  in the motions to dismiss as to defendant Braun's claims,
2  defendant Propson is a Wisconsin resident.
3          THE COURT: Uh-huh.
4          MR. WITKOW: So if the -- if your Honor is inclined to
5  deny defendant Propson's -- or our motion to dismiss or SLAPP
6  motion as to plaintiff Propson's claims, then in the
7  alternative, those claims should be brought and continued or
8  transferred to the District of Wisconsin.
9          THE COURT: So in that event, you would use the
10 discovery anyway.
11         So this is what I'm going to do. I'm going to set a
12 disclosure -- an initial disclosure for May 24th and then
13 serving written discovery -- I'll set it out a ways -- on
14 July 22nd. And you should engage -- start engaging in written
15 discovery. I'm not going to rule on this -- on these motions
16 until well into the fall would be my guess, but I don't see any
17 reason to wait. And -- but I'll stay any oral discovery. And
18 I'm not going to set any expert dates or anything like that.
19         MR. WITKOW: Your Honor --
20         THE COURT: Okay. Yes?
21         MR. WITKOW: Your Honor, this is Brandon Witkow on
22 behalf of the defense.
23         Just to clarify, the July 22nd date, that is the first
24 date to serve written discovery?
25         THE COURT: Yes.

1          MR. WITKOW:  Okay.

2          THE COURT:  So that gets you through --

3          MR. WITKOW:  And that is fine, your Honor.

4          THE COURT:  That gets you through your briefing.
5    Okay?

6          MR. WITKOW:  Absolutely.

7          The only concern I have is there is a series of what
8    are claimed to be defamatory statements across each of the
9    defendants.  And each of those statements are being raised and
10   we're moving to dismiss on.  So it would be -- it's somewhat of
11   a moving target for the defense to serve discovery for a
12   statement that ultimately may be dismissed.  That would be my
13   only hesitation.

14         I have no problem starting, I guess, written discovery
15   in July, but I won't be able to refine my discovery as to what,
16   if any, remaining defamatory statements remain following your
17   Honor's ruling on the motion to dismiss.

18         THE COURT:  You say you will be able to refine it?

19         MR. WITKOW:  I will following your Honor's order.

20         THE COURT:  Okay.

21         MR. WITKOW:  Because, you know, for example,
22   there's -- let's say there's ten statements that are at issue
23   here, and we're moving to dismiss on all ten.  Obviously, we
24   hope your Honor dismisses all ten.  But let's say your Honor
25   dismisses eight of them.  I don't want to spend too much of my

1 clients' money taking discovery on eight statements that will
2 ultimately be dismissed.
3       THE COURT: I see. So, like, in terms of damages and
4 stuff?
5       MR. WITKOW: Yeah, or even part of the defamatory
6 statements is the truthfulness of the statements. So, you
7 know, that's a defense to defamation.
8       So I would be remiss to, you know, spend my clients'
9 money taking third-party discovery of various parties to
10 establish truthfulness if those claims are ultimate -- or if
11 those statements are ultimately going to be dismissed because
12 they're, you know, nonactionable opinion or whatnot.
13       THE COURT: Mm-hmm. Mm-hmm.
14       What do you think about that?
15       MR. LOCKYER: Your Honor, we believe that there are
16 issues of fact that do -- based on counsel's briefing, his main
17 argument that these are non-verifiable opinions, based on the
18 amended complaint, we believe that we have properly pled issues
19 of fact that make a motion -- a motion to dismiss appropriate
20 at this stage, your Honor.
21       I do understand counsel's concerns about damages. But
22 in terms of liability and the truthfulness of these statements,
23 I don't see any prejudice, your Honor. Most of the statements
24 have already been online. We're going to be tendering a lot of
25 screenshots and videos to counsel that they're already aware

1  of.

2  THE COURT: Right.

3  MR. LOCKYER: And so in terms of the truthfulness
4  defense, I think they would know what documents that they need
5  more than anybody.

6  I will note, your Honor, due to the nature of this
7  case and the online third parties that are causing damages on
8  behalf of the defendants, your Honor --

9  THE COURT: Right, right.

10  MR. LOCKYER: -- damages are ongoing in this matter.
11  And it is a little difficult to predict.

12  THE COURT: Right.

13  MR. LOCKYER: For that matter, though, we would like
14  to raise the issue of a protective order, your Honor.

15  THE COURT: Right. Well, let me say this. I
16  appreciate what you're saying. I don't want you spending time
17  and money, that's for sure.

18  So this is what I'll do. I'm still -- I'm not going
19  to get to this. I've got to tell you that. But I will -- I'll
20  start written discovery on August 26th. Okay? So you'll just
21  be talking about it into September, and that will be closer to
22  when I'm getting ready for a ruling. And I'm probably not
23  going to rule in September, but I'll be getting closer.

24  Okay. Tell me about the protective order.

25  MR. LOCKYER: Yes, your Honor. So given the nature of

1  this case, I will note that there are several people closely
2  watching the docket in this matter.  Given the nature of the
3  communications, we are worried that any statements or documents
4  provided to any party could subsequently be leaked online.  And
5  it would just further inflame the defendants' fans to react and
6  cause action against Ms. Propson and Ms. Braun and her law
7  firm.  For that, we ask that all documents tendered be
8  attorneys' eyes only, your Honor.
9         And, furthermore, if we do have any discovery disputes
10 or -- we can pass this along, but I would like to highlight to
11 the Court that we would move for a protective order on sealing
12 some discovery motions so that the parties can raise discovery
13 disputes without fear of retaliation from the Internet.
14         THE COURT:  Mr. Witkow?
15         MR. WITKOW:  Your Honor, this is the first I've heard
16 about this.  Mr. Lockyer has never raised this in any of our
17 previous discussions.  My initial reaction is I'm not sure I
18 understand the fear here.  These are statements that they're
19 alleging -- the crux of this case are statements that they're
20 alleging my clients are making online.  And he's stretching
21 that to the fact that somehow we control, almost like robots,
22 our fans and that we are instructing them to cause harm or some
23 further damage to his clients.
24         And therefore any documents that we're seeking in
25 discovery from him about the truthfulness, for example, of some

1 of the statements that my clients had make -- had made cannot
2 be then shown to my clients to have a thorough discussion with
3 them about whether those statements were, in fact, truthful?  I
4 find that very unmanageable to blanketly state that all
5 documents or information or discovery responses should have an
6 "attorneys' eyes only" designation.
7         THE COURT:  Yeah, we're not going to be able to have
8 that.  I'll tell you what.
9         MR. WITKOW:  I am happy to seal --
10         THE COURT:  I'll tell you what.
11         MR. WITKOW:  Yeah.
12         THE COURT:  I want you to -- you're not even starting
13 discovery till August.  But I want you two to work out a
14 confidentiality order like you do in every case.  And if you
15 come to the point where you have disputes, you can file a
16 motion.  I expect you'll be able to work it out.  I can't
17 imagine we're going to have every document as attorneys' eyes
18 only.
19         If the case goes to trial, it's going to be tried in
20 an open courtroom, and documents will be admitted in court.
21 There -- it's an open courtroom where people will be allowed to
22 attend.  There's no confidentiality order once you're in trial.
23         But I'm sure you're going to be able to work out a
24 confidentiality order for purposes of discovery.  We're not
25 going to have motions to compel -- hopefully there won't be

1  any, but if there are, we're not going to have them filed under
2  seal.
3       I do want to say, however -- and I put this in an
4  order, and I want to say it to both of you since you're
5  officers of the court and I have some control over you two.  I
6  have -- my staff, as you know, has received several e-mails
7  about this case, and there is interest in the case in the world
8  of the Internet, which is not a world I'm particularly
9  interested in or particularly involved in.
10      But I have gotten e-mails from someone named Side Eye
11 and someone named Georg Pete and someone named Hannah
12 McConville and other individuals.  And they are encouraging me
13 to get on to Reddit, to donate to the GoFundMe, The Girlies v.
14 Janet, in order to I guess fund this lawsuit and advising me on
15 how I should rule on things and I would say disparaging the
16 plaintiffs' case and telling me I should seek the advice of
17 MadCatser, the YouTube lawyer, who I believe is a lawyer from
18 Canada.
19      So I just want it clear that I'm not going to be
20 seeking the advice of a YouTube lawyer from Canada.  I'm not
21 going to be donating to a lawsuit on GoFundMe.  I don't want to
22 receive these e-mails anymore.  I throw these e-mails in the
23 trash when I get them.  They're not part of the record.  People
24 who are sending them are not parties to the case.  No parties
25 to the case have any ability, of course, to respond to this

1    information, so it's not appropriate that I consider it.  It's
2    a waste of my time.  It's a waste of my staff's time.
3            If anything coming into the Court becomes at all
4    threatening, of course, I'll send the United States Marshals
5    out to visit the sender of the e-mails.  I don't expect that to
6    happen.  And I haven't involved the marshals to date, but I
7    will.
8            But my request, if any -- if either of you two are
9    involved with these individuals, is that you extend my request
10   that this kind of business stop because -- mostly because it's
11   a waste of my time.  But I do want the senders to know that it
12   has no impact on the case.  It has no impact on me except to
13   aggravate me.  And it's not stuff I can or that I intend to
14   take into account because it's just not part of the record.
15   And it wouldn't be appropriate for me to take it into account,
16   and I don't intend to.
17           So I know you're all on the Internet.  I'm not on the
18   Internet.  I don't even have a Facebook page.  I don't care
19   what happens on the Internet.  I'm not interested in the
20   Internet.  I'm going to deal with this case like I deal with
21   every other case.  And lawyers are going to present evidence
22   that's admissible and appropriate.  And whatever kind of fights
23   or arguments are happening on the Internet are not of interest
24   to me.  So if you could let your fans know that, that would be
25   greatly appreciated.  Okay?

1     I'll look forward to the briefing.
2         MR. LOCKYER:  Thank you, your Honor.
3         THE COURT:  Okay.  Have a good day.
4         MR. WITKOW:  Thank you, your Honor.
5     (Concluded at 1:47 p.m.)
6                    * * * * *
7  I certify that the foregoing is a correct transcript of the
8  record of proceedings in the above-entitled matter.
9
10 */s/ LAURA R. RENKE*                    *April 25, 2024*
   LAURA R. RENKE, CSR, RDR, CRR
11 Official Court Reporter