## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE BRAUN, | ) | |
| BRAUN IP LAW, LLC & | ) | |
| LAUREN PROPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| | ) | |
| v. | ) | Hon. J. Mary Rowland |
| | ) | |
| REBEKAH M. DAY NEE BOXX, | ) | Mag. J. M. David Weisman |
| KC THE OWNER & OPERATOR OF THE | ) | |
| ONLINE SOCIAL MEDIA ACCOUNT | ) | |
| @CAFFINATEDKITTI, | ) | |
| LILY MARSTON, & | ) | |
| JESSICA VAZQUEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO STRIKE AND DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs Jeanette Braun ("Braun"), Braun IP Law LLC ("Braun Law"), and Lauren Propson ("Propson") (collectively "Plaintiffs"), by and through their attorney, Lockyer Law LLC, present their memorandum of law in opposition to Defendants KC the owner and operator of the online social media account @Caffinatedkitti ("KC"), Rebekah M. Day nee Boxx ("Day"), Jessica Vazquez[1] ("Vazquez"), and Lily Marston's ("Marston") (collectively "Defendants") motions to strike pursuant to O.C.G.A. § 9-11-11.1 and Cal. Code Civ. Proc. § 425.16 and motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), stating as follows:

---

[1] Defendant Vazquez in her motion to dismiss spells her last name as "Vasquez" throughout the motion. Online sources spell Defendant Vazquez's last name with a Z instead of an S.

## Table of Contents

TABLE OF AUTHORITIES ............................................................................................ iv

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 1

LEGAL STANDARD..................................................................................................... 3

ARGUMENT ................................................................................................................. 5

I.     Defendants KC, Vazquez, and Marston's Anti-SLAPP Should be Reviewed Under a
12(b)(6) Standard. ......................................................................................................... 5

   A.   Defendant KC's anti-SLAPP defense challenges the legal sufficiency of the Amended
   Complaint.................................................................................................................... 6

   B.   Defendants Vazquez and Marston's anti-SLAPP arguments challenge the legal
   sufficiency of the Amended Complaint. ...................................................................... 7

   C.   This Court should Deny Defendants' Anti-SLAPP Arguments that are Based on
   Contested Facts that are Outside the Complaint. ......................................................... 8

      1.   Defendant KC's anti-SLAPP arguments against Plaintiff Propson:.............................. 8

      2.   Defendant KC's anti-SLAPP arguments against Plaintiff Braun and Plaintiff Braun
      Law: ...................................................................................................................... 9

      3.   Defendant Vazquez and Defendant Marston's anti-SLAPP arguments against Plaintiff
      Braun and Plaintiff Braun Law:............................................................................... 11

II.    Plaintiffs Stated a Claim for Defamation and Defamation *Per Se* against Defendant KC
under Illinois and Wisconsin Law. ............................................................................... 13

   A.   Plaintiff Propson has pled sufficient facts to establish a cause of action for defamation
   and defamation *per se* under Wisconsin Law against Defendant KC. .................... 13

      1.   It is undisputed that Defendant KC published her statement to the public and is not
      raising any claim of privilege (aside from her anti-SLAPP argument). .............................. 14

      2.   The context of Defendant KC's statements show that she was calling Plaintiff Propson
      transphobic and claiming that she had proof of this. ............................................... 14

      3.   Calling Plaintiff Propson a TERF is defamatory and caused members of the public to
      believe she was transphobic and harass her online. ................................................. 16

      4.   Defendant KC's statement is not a mere expression of opinion and is not subject to any
      privilege or protection from the First Amendment. .................................................. 17

      5.   Defendant KC's accusation that "Lauren the Mortician is a TERF" is defamation *per
      se*. ........................................................................................................................ 18

   B.   Plaintiff Braun and Plaintiff Braun Law have pled sufficient facts to establish a cause of
   action for defamation and defamation *per se* under Illinois Law against Defendant KC......... 19

      1.   Defendant KC's defamatory statements are mixed opinions that are verifiable and not
      subject to First Amendment Protections or Qualified Privilege Protection......................... 20

2.    Defendant KC's defamatory statements are mixed opinions that are verifiable and not subject to First Amendment Protections or Qualified Privilege Protection.......................... 24

3.    Plaintiff Braun states a claim for defamation *per se* against Defendant KC, thus damages are assumed............................................................................................................ 26

III.    Plaintiffs Braun and Braun Law Stated a Claim for Defamation and Defamation *Per Se* against Defendants Jessica Vazquez and Lily Marston under Illinois Law................................. 27

A.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of defamation *per se* under Illinois law against Defendants Vazquez and Marston. ................... 27

1.    Defendants Vazquez and Marston's statements regarding Plaintiffs Braun and Braun Law. ................................................................................................................................ 27

2.    Defendant Marston and Defendant Vazquez made unprivileged publications to a third party. ........................................................................................................................ 28

3.    Defendants Vazquez and Marston's statements are not entitled to First Amendment protections because they are verifiable falsehoods. ............................................................ 28

4.    Defendants Vazquez and Marston's statements are not entitled to qualified privilege.29

5.    Damages are assumed because Defendant Marston and Defendant Vazquez's statements constitute defamation *per se*. ............................................................................ 29

IV.    Plaintiffs Braun and Braun Law Stated a Claim for Defamation and Defamation *Per Se* against Defendant Day under Illinois Law. ................................................................................. 31

A.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of defamation and defamation *per se* under Illinois law against Defendant Day. ....................... 31

1.    Defendant Day's statements regarding Plaintiffs Braun and Braun Law ..................... 31

2.    Defendant Day's statements were published to third parties on social media............. 32

3.    Defendant Day's Statements are verifiable and mixed opinions relying on underlying facts. ....................................................................................................................................... 32

4.    Defendant Day's statements are not entitled to qualified privilege. ............................. 33

5.    Defendant Day's false statements are defamation *per se* because they imply that Defendant Braun is not ethical and is incompetent in her profession, so damages are assumed.................................................................................................................................. 33

V.    Plaintiffs Braun and Braun Law Stated a Claim for False Light against Defendants under Illinois Law. ................................................................................................................................ 34

A.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of false light under Illinois law against Defendants. ....................................................................... 34

1.    Defendants' statements cast Plaintiffs Braun and Braun Law in a false light. ............. 34

2.    Defendants' statements were highly offensive because they imply that Plaintiff Braun is an unethical attorney that is committing illegal or dishonest acts and practices............... 35

3.    All Defendants acted with actual malice because their statements were either knowingly false or made with a reckless disregard for the truth, so that they could make content to boost their social media careers and engagement. ................................................ 36

VI.    Plaintiffs Stated a Claim for Trade Libel against Defendants under Illinois and Wisconsin Law. ................................................................................................................................ 37

   A.    Plaintiff Propson has pled sufficient facts to establish a cause of action for trade libel under Wisconsin Law against Defendant KC. ............................................................... 37

   B.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for trade libel under Illinois Law against Defendants.................................................. 38

VII.   Plaintiff Propson Stated a Claim for Tortious Interference with Contracts against Defendant KC under Wisconsin Law and Plaintiffs Braun and Braun Law Stated a Claim for Tortious Interference with Existing and Potential Business Relationships against Defendants under Illinois Law. ......................................................................................................... 39

   A.    Plaintiff Propson has pled sufficient facts to establish a cause of action for tortious interference with contracts under Wisconsin Law against Defendant KC. .............................. 40

   B.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for tortious interference with existing and potential business relationships under Illinois Law against Defendant KC. ............................................................................................. 41

VIII.  Plaintiffs Stated a Claim for Intentional Infliction of Emotional Distress (IIED) against Defendants under Illinois and Wisconsin Law. ........................................................... 42

   A.    Plaintiff Propson has pled sufficient facts to establish a cause of action for IIED under Wisconsin Law against Defendant KC. ...................................................................... 42

   B.    Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for IIED under Illinois Law against Defendant KC.................................................... 43

IX.    Venue is Proper for the Northern District of Illinois with Regards to Plaintiff Propson's Claims. ................................................................................................................... 44

   A.    A substantial part of the events or omissions giving rise to the claim occurred in Illinois. . ................................................................................................................................. 45

   B.    Alternatively, Plaintiff Propson may file her claims in this District because the Court has personal jurisdiction over Defendant KC. ............................................................... 46

CONCLUSION.................................................................................................................... 48

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................... 4, 13

*Bd. of Forensic. Doc. Exam'rs., Inc. v. Am. Bar. Assoc.*, 287 F. Supp. 3d 726, 736 (N.D. Ill. 2018) ....................................................................................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................... 4, 13

*Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 445 (Wis. 1994) ................. 42

*Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) ............................................... 43

*Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) ..................................................... 30

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ............................................................... 4

*Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263–64 (1977) ........ 17, 19

*Dobias v. Oak Park and River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 572 (Ill. App. 1st Dist. 2016) ................................................................................................................. 25

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) ................................................ 43

*Fiducial Bus. Ctrs., Inc. v. Schafer*, 2015 IL App (4th) 150528-U, ¶ 15 (Ill. App. Aug. 03, 2015) .............................................................................................................................. 38

*Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 665 (7th Cir. 2022) ............ 14, 16

*Finch v. Southside Lincoln-Mercury, Inc.*, 685 N.W.2d 154, n.8 (Wis. App. 2004).................... 40

*Glob. Relief v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) ............................................................................................................... 4

*Green v. Rogers*, 234 Ill. 2d 478, 491 (Ill. 2009) ....................................................... 26

*Hadley v. Doe*, 2014 IL App (2d) 130489 at ¶23 ........................................................ 23

*Intercon Sol., Inc. v. Basel Action Network*, 969 F. Supp. 3d 1026 (N.D. Ill. 2013)................... 35

*Jenkins v. Fuchs*, No. 17 C 1462, 2018 WL 905507, at *2 (Feb. 15, 2018) ................ 19

*Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) .............................. 34

*Kuwik v. Starmark Star Mkting. & Admin., Inc.*, 156 Ill.2d 16, 24 (1993) ................ 25

*Laughland v. Beckett*, 365 Wis. 2d 148, 167 (Wis. App. 2015) ............................ 16, 17

*Laughland*, 365 Wis. 2d at 167 ................................................................................... 18

*Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 419-23 (Ill. 1989) ................. 36

*Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 460, (1962) ............................... 19

*McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014).................. 41

*Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Employees of America, C.I.O.*, 79 N.E.2d 46, 52 (Ill. 1948) ............................................................................ 38

*Moonbug Entm't Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*, 3:21-cv-06536-EMC, 2022 WL 580788, at *11 (N.D. Cal. Feb. 25, 2022) ......................................................... 8

*Morton Grove Pharm v. National Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1043 (N.D. Ill. 2007) ............................................................................................................................... 46

*Next Techs. Inc. v. Beyond the Office Door, LLC*, 992 F.3d 589, 592-93 (7th Cir. 2021) ........... 38

*Osundairo v. Geragos*, 447 F. Supp. 3d 727, 744 (N.D. Ill. 2020) ...................... passim

*Overhill Farms Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (Cal. Ct. App. 2010)............... 18, 42

*Peterson v. Village of Downers Grove*, 150 F. Supp. 3d 910 (N.D. Ill. 2015).............................. 5

*Pippen v. NBC Universal Media, LLC*, No. 11-CV-8834, 2012 WL 12903167, at *2 (N.D. Ill. Aug. 2, 2012.................................................................................................................... 36

*Planned Parenthood Fed'n. of Am., Inv. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) .................................................................................................................... 4, 5, 8, 13

*Pompa v. Swanson*, 2013 IL app. (2d) 120911, ¶ 26 ..................................................... 25

*Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)......................................... 43

*Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001)..................................... 42

*Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *4 (7th Cir. Mar. 4, 2005) ........................................................................................................... 36

*RCP Publications Inc. v. City of Chicago*, 2016 WL 4593830 (N.D. Ill.) ..................................... 5

*Schweihs v. Chase Home Fin.*, LLC, 77 N.E.3d 50, 64 (Ill. 2016)................................... 43

*Select Creations, Inc. v. Paliafito Am.*, Inc., 911 F. Supp. 1130, 1156 (E.D. Wis. 1995) ............ 40

*Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 581 (Ill. 2006) ("*Solaia Tech.*")......... 20

*Torgerson v. J.Sentinel, Inc.*, 210 Wis. 2d 524 (1997) .................................................. 14

*Tornicelli v. Tornicelli*, 570 N.W.2d 439, 444 (Wis. Ct. App. 1997)............................. 42

*Voyles v. Sandia Mortg. Corp.*, 751 N.E. 2d 1126, 1133 (Ill. 2001) ........................... 41

*Wesbrook v. Ulrich*, 90 F.Supp.3d 803, 811 (W.D. Wis. 2015) ........................... 14, 15

*Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 258 (2019) ................................ 4

## Statutes

28 U.S.C. § 1391(b) ................................................................................................ 45, 47

720 ILCS 5/32-2 ............................................................................................................ 30

## Other Authorities

Wis. Civil Jury Instr., WIS. JI—CIVIL 2500 ............................................................... 18

## Rules

Fed. R. Civ. Pro. 12(h) ................................................................................................ 47

Fed. R. Civ. Pro. 20 ..................................................................................................... 47

Ill. R. Prof. Cond. 3.1................................................................................................ 20, 21

Ill. R. Prof. Cond. 8.4.................................................................................................... 30

## Treatises

Restatement (Second) of Torts § 599 cmt. a (Am. Law Inst. 1977)............................ 25

## **INTRODUCTION**

Defendants' separate motions to strike and motions to dismiss should be denied because Plaintiffs have pled sufficient facts to establish their causes of action and Defendants' anti-SLAPP arguments rely on disputed facts that require discovery and cannot be resolved at the pleadings stage. Plaintiffs have established sufficient facts to support their claims in the First Amended Complaint.

Specifically, Defendants KC, Vazquez, and Marston's anti-SLAPP arguments all rely on: (1) whether Jeanette Braun and Lauren Propson are public figures; (2) whether the audience of Defendants' statements would interpret such statements as opinions or speculation rather than factual claims; and (3) whether Defendant KC's statements about Plaintiff Propson being transphobic were a matter of public concern. In addition, regarding the legal sufficiency of Plaintiffs' claims, Plaintiffs each state sufficient facts to establish their claims for defamation, defamation *per se*, false light, trade libel, tortious interference with contracts, tortious interference with existing and prospective business relationships, and intentional infliction of emotional distress.

Because Defendants' motions raise the same legal issues and are generally the same, Plaintiffs address and oppose all arguments set forth in each of Defendants' pending motions in this memorandum of law. Due to the disputed factual issues in Defendants' anti-SLAPP motions, and because Plaintiffs pled sufficient facts to establish their claims, this Court should deny Defendants' motions to strike and motions to dismiss.

## **BACKGROUND**

The present case arises from a series of defamatory statements made by Defendants, which significantly damaged the professional reputation and business interests of Plaintiffs,

Jeanette Braun, Braun IP Law, LLC, and Lauren Propson. Amend. Compl., No. 23 C 16856, ("[29]")¶¶ 19-22, 27-30, 38-47, 65-66. Plaintiff Braun, an attorney and owner of Braun IP Law, LLC, alleges that Defendants made multiple false and defamatory statements across various social media platforms, accusing her of unethical behavior, filing false copyright claims, and committing perjury. [29] ¶¶ 19-22, 27-30, 38-47, 65-66. Plaintiff Propson, a social media content creator, alleges that Defendant KC falsely labeled her as transphobic, leading to severe reputational harm and loss of business opportunities. [29] ¶¶ 19-22, 27-30, 38-47. Defendant KC made her false statements for commercial gain to eliminate her competitor, Plaintiff Propson.

Defendant Day has publicly stated that Plaintiff Braun uses "unethical tactics to scare creators off" social media platforms, explicitly attacking Braun's professional integrity and ethics as an attorney. [29] ¶¶ 16-17. Furthermore, Defendant Day's allegations that Braun committed perjury imply criminal behavior, which under Illinois law, is considered defamation *per se* due to the serious nature of the accusation and its impact on professional reputation. [29] ¶ 151.

In addition to Day's statements, Defendants Vazquez and Marston made similar defamatory remarks. [29] ¶¶ 127-132. They publicly claimed that Plaintiff Braun files "false copyright strikes" and is an "unethical" attorney, further compounding the harm to Braun's professional reputation. [29] ¶ 98-103. These statements were disseminated through podcasts and various social media channels, reaching a wide audience and causing significant professional and personal harm to Plaintiff Braun. [29] ¶¶ 140-151.

Plaintiff Propson's claims focus on Defendant KC, who accused her of being a trans-exclusionary radical feminist (TERF) and published statements suggesting that Propson endorses transphobic content. [29] ¶¶ 19-22. These allegations were made without basis and were intended

to damage Propson's reputation among her followers and potential business partners. [29] ¶¶ 27-30. The resulting backlash included online harassment and loss of sponsorships, severely impacting her professional standing and financial interests. [29] ¶¶ 38-47.

Plaintiffs argue that these defamatory statements not only injured their reputations, but also led to substantial economic losses. [29] ¶¶ 152-157. Plaintiff Braun experienced a loss of clients and potential clients, and Plaintiff Propson lost a significant contract with a well-known travel documentary channel due to Defendants' false accusations. [29] ¶¶ 160-161. The claims of defamation *per se* and trade libel under Illinois and Wisconsin law, and false light under Illinois law, form the core of Plaintiffs' legal action against Defendants. [29] ¶¶ 127-132, 140-151.

This memorandum is submitted in opposition to Defendants' motions to dismiss and to strike under anti-SLAPP statutes, asserting that Plaintiffs have adequately stated claims for defamation, defamation *per se*, false light, trade libel, tortious interference with contracts, tortious interference with existing and prospective business relationships, and intentional infliction of emotional distress. [29] ¶¶ 1-3, 6-8. Plaintiffs further contend that Defendants' statements were made with actual malice and reckless disregard for the truth, warranting denial of Defendants' motions and continuation of the litigation to address the substantial harms suffered. *See* [29] ¶¶ 1-3, 6-8, 19-22, 27-30, 38-47, 65-66, 98-103, 111-116, 127-132, 140-151, 152-157, 160-161.

## LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, district courts must accept as true all well-pleaded facts contained in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff. The Supreme Court has unequivocally stated that a complaint must be construed in the light most favorable to the

plaintiff when facing a motion to dismiss. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(6), the purpose of the motion is to test the sufficiency of the complaint, not to resolve disputed facts or adjudicate the merits of the case. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of their claim which would entitle them to relief. *Id.* at 45-46.

When a court sits in diversity in a defamation action, the court applies the substantive law of the plaintiff's domiciled state. In reviewing a motion to strike under an anti-SLAPP statute, the court applies the law of the defendant's domicile. *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 744 (N.D. Ill. 2020) (citing *Glob. Relief v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (applying Illinois law to the plaintiff's defamation claim but California law to the defendant's anti-SLAPP defense)). California and Georgia's anti-SLAPP statutes both carry the same elements and procedures, and thus Georgia courts look to California caselaw for guidance. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 258 (2019).

However, to avoid a conflict in laws between California and Georgia anti-SLAPP laws and the Federal Rules of Civil Procedure, courts may review anti-SLAPP claims under a 12(b)(6) standard if the motion challenges only the legal sufficiency of a claim. *Osundairo*, 447 F. Supp. 3d at 744 (citing *Planned Parenthood Fed'n. of Am., Inv. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) ("Planned Parenthood"). Thus, when a motion to strike only challenges the legal sufficiency of the claim, a district court should consider whether Plaintiff's claims are properly stated under Rule 12(b)(6). *Planned Parenthood*, 890 F.3d at 834.

Defendants' anti-SLAPP motion challenges the factual sufficiency of the plaintiff's complaint, and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.* ("A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court."). In considering whether a statement is defamatory, the context of statements needs to be considered. *Osundairo*, 447 F. Supp. 3d at 739. Also, commercial speech, due to its commercial nature, is subjected to lesser First Amendment protection compared to noncommercial speech. See *Peterson v. Village of Downers Grove*, 150 F. Supp. 3d 910 (N.D. Ill. 2015) and *RCP Publications Inc. v. City of Chicago*, 2016 WL 4593830 (N.D. Ill.). The court has emphasized that the regulation of commercial speech is permissible to prevent consumer deception and promote fair competition, reflecting a broader acceptance of governmental intervention in such matters. *Id.*

## ARGUMENT

I. **Defendants KC, Vazquez, and Marston's Anti-SLAPP Should be Reviewed Under a 12(b)(6) Standard.[2]**

Defendants' California and Georgia anti-SLAPP arguments should be reviewed under a 12(b)(6) standard because they challenge the legal sufficiency of Plaintiffs' claims. *See Osundairo*, 447 F. Supp. 3d at 744 ("when a California anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.") (alterations omitted). Here, Defendants all argue that Plaintiffs have failed to identify verifiable falsehoods within Defendants' statements that are not protected by free speech. In addition, Defendants each

---

[2] Defendant Bekah Day is a citizen of Missouri. The State of Missouri does not have an anti-SLAPP statute, and thus is not bringing a motion to strike.

5

discuss Plaintiffs' pleadings to argue that Plaintiffs have failed to allege sufficient facts to show the falsity of Defendants' statements.

**A.    Defendant KC's anti-SLAPP defense challenges the legal sufficiency of the Amended Complaint.**

Defendant KC presents her argument as a "motion to strike" pursuant to Georgia anti-SLAPP laws, and in the alternative as a 12(b)(6) motion to dismiss for failure to state a claim and a 12(b)(3) motion to dismiss for improper venue. Defendant KC is not presenting a Rule 12(c) motion for judgment on the pleadings before this Court.

In the background section of her motion, Defendant KC argues that Plaintiff Propson failed to allege sufficient contextual facts to establish that Defendant KC's statement "Lauren the Mortician is a TERF, I have the receipts, I have the deets" was intended to say that Plaintiff Propson was transphobic, and that Defendant KC had proof:

- "Nowhere in the Amended Complaint does Plaintiff Propson identify any statements from the 10/24/23 TikTok Post that Propson *is* transphobic or that KC has "proof" that Propson *is* transphobic." [39] at 12.

- "Nowhere in the Amended Complaint do Plaintiffs allege that Propson has not 'liked' these posts or followed these individuals on social media. Nowhere in the Amended Complaint do Plaintiffs allege that KC has misstated what these posts say, rather, the Amended Complaint alleges only that '[u]pon information and belief, none of the videos Defendant KC linked contain transphobic and hateful rhetoric.' " [39] at 12-13 (citations omitted).

- "Moreover, nowhere in the Amended Complaint do Plaintiffs allege any facts demonstrating that any statements made by KC in the 10/24/23 TikTok Post are false. Rather, the Amended Complaint alleges only that KC was aware that Propson 'followed and liked pro-LGBTQ and pro-trans rights content on social media' and that 'KC chose to highlight only [] Propson's interactions with the conservative social media personality.' " [39] at 13 (citations omitted).

In addition, Defendant KC argues that Plaintiff Braun failed to allege sufficient facts to establish that Defendant KC knowingly made the verifiably false statement that Plaintiff Braun files "false copyright claims with social media platforms" and "a bad faith copyright strike

against Defendant KC." In essence, Defendant KC argues that Plaintiff Braun's allegations, regarding Defendant KC's statements that Plaintiff Braun filed a frivolous copyright strike against her, do not state a sufficient claim for defamation.

As the above arguments highlight, Defendant KC's motion challenges the legal sufficiency of Plaintiffs' claims and argue that Plaintiffs' allegations fail to state a claim for defamation. Due to this, Plaintiffs' allegations should be decided under a 12(b)(6) standard.

**B.      Defendants Vazquez and Marston's anti-SLAPP arguments challenge the legal sufficiency of the Amended Complaint.**

Like Defendant KC, Defendant Vazquez and Defendant Marston present their argument as a "motion to strike" pursuant to California and Georgia anti-SLAPP laws,[3] and in the alternative as a 12(b)(6) motion to dismiss for failure to state a claim. Defendants Vazquez and Marston are not presenting a Rule 12(c) motion for judgment on the pleadings:

> The Amended Complaint does not identify what 'false information' Defendants allegedly relied on, nor does it identify any alleged defamatory statements made by Defendants in the alleged December 2, 2023 episode.
> …
> The Amended Complaint does not identify that any of these 'details' discussed by Defendants were false, instead identifying only a statement by Vasquez [sic] that social media content creators had informed her that they had received a 'false copyright strike' from one of Braun's clients.

[43] at 4 (citations omitted).

In addition, Defendant Vazquez and Defendant Marston both raise general arguments claiming that Plaintiffs Braun and Braun Law fail to allege sufficient facts to show that the statements made by Defendant Vazquez and Defendant Marston are verifiably false. Here, Defendants present anti-SLAPP motions to strike that are combined with motions to dismiss and

---

[3] Defendant Vazquez is asserting an anti-SLAPP claim under Georgia law and Defendant Marston is asserting her anti-SLAPP claim under California law.

challenge the legal sufficiency of Plaintiffs' claims. Due to this, a Rule 12(b)(6) analysis should be applied in reviewing Plaintiffs' Amended Complaint.

### C. This Court should Deny Defendants' Anti-SLAPP Arguments that are Based on Contested Facts that are Outside the Complaint.

Much of Defendants' anti-SLAPP analysis involve factual disputes that require discovery. In cases where a "defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards and Plaintiffs are not required to present *prima facie* evidence supporting Plaintiffs claims." *Moonbug Entm't Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*, 3:21-cv-06536-EMC, 2022 WL 580788, at *11 (N.D. Cal. Feb. 25, 2022) (noting that "[t]he Ninth Circuit has clarified that anti-SLAPP motions are evaluated under different standards depending on the basis for the motion.") (citing *Planned Parenthood*, 890 F.3d at 833. The primary thrust of Defendants' anti-SLAPP arguments is that they are protected under the First Amendment because Plaintiffs are public figures and that Defendants' defamatory statements were made in response to an ongoing controversy. To support both arguments, the Defendants raise disputed facts that are outside the Amended Complaint and not appropriate for a motion to dismiss. As a result, Defendants' motions should be reviewed under a 12(b)(6) standard.

### 1. Defendant KC's anti-SLAPP arguments against Plaintiff Propson:

To argue that her statement about Plaintiff Propson was about a matter of public concern, Defendant KC argues:

- "Propson allegedly maintains a famous social media persona with 'millions of followers' on TikTok, as well as sponsorships and a brand partnership with a famous documentary channel; thus, she certainly is in the 'public eye.' [39] at 18.

    o The parties are in dispute over whether Plaintiff Propson is a limited purpose public figure, and whether all aspects of her life are in the public eye.

- "KC's statements allegedly were made as the result of confusion between these two 'social media personas' (*i.e.* KC and Propson) by social media followers." [39] at 10.

    o Plaintiffs dispute Defendant KC's unsupported claim that fans of either party were confused that Plaintiff Propson's Lauren the Mortician persona was Defendant KC's @CaffinatedKitti persona.

- "Thus, the public issue implicated by KC's alleged statements is the confusion by potentially hundreds of thousands to millions of individuals between two social media personas who are undoubtedly in the public eye, one of which has 'liked' and 'followed' posts containing 'transphobic' and 'hateful rhetoric.' "

    o The above argument relies on disputed facts because Plaintiffs have alleged that the posts referenced by Defendant KC do not contain transphobic and hateful rhetoric. [29] at ¶ 31.

Defendant KC's arguments against Plaintiff Propson rely on contested factual assertions that extend beyond the scope of the Amended Complaint. These disputed facts cannot be resolved at this stage and necessitate further discovery. The central contention is whether Plaintiff Propson is a limited purpose public figure and if her social media activities place all aspects of her life in the public eye. Moreover, Defendant KC's statements of social media follower confusion and alleged transphobic and hateful content of posts are vigorously contested by Plaintiffs. Since these issues involve substantial factual disputes, they are not appropriate for resolution through an anti-SLAPP motion.

Therefore, this Court should deny Defendants' anti-SLAPP motion, as it is predicated on disputed facts requiring further discovery and is outside the pleadings' four corners. The resolution of such factual disputes must await a more developed evidentiary record.

### 2. Defendant KC's anti-SLAPP arguments against Plaintiff Braun and Plaintiff Braun Law:

To argue that her statement about Plaintiff Propson was about a matter of public concern, Defendant KC argues:

- "The Amended Complaint demonstrates that KC claimed that Braun's DMCA copyright strike/complaint was 'false' because KC believed her use of Propson's alleged copyrighted material constituted 'fair use . . . .' Again, Propson allegedly has millions of social media followers; thus, whether she has hired an attorney to file meritless copyright strikes against content creators simply is a matter of public interest and concern." [39] at 12.

  o Plaintiff Braun's pleadings show that Meta agreed with the DMCA request and removed the infringing content, which creates a *prima facie* case that Defendant KC committed copyright infringement and is not protected by fair use. As alleged, the context of Defendant KC's claims of a "false copyright strike" establish the false assertion that Plaintiff Braun filed a baseless copyright strike against her.

  o Plaintiff's allegations establish that resolution of this factual dispute should be resolved after the Parties have had the opportunity to engage in discovery.

- "Likewise, if Braun were taking it upon herself to file baseless DMCA strikes against content creators without even being hired to do so, it would also constitute a matter of public concern." [39] at 12.

  o The Amended Complaint's allegations establish that Defendant KC was aware that Plaintiff Braun was Plaintiff Propson's lawyer and knowingly published the false accusation that Plaintiff Braun was not Lauren the Mortician's lawyer. To the extent that Defendant KC is claiming that she did not know that Plaintiff Braun was not Lauren the Mortician's attorney is a factual dispute that should be resolved on a motion for summary judgment.

- "The filing of a copyright strike under the DMCA constitutes an 'official proceeding' as it is expressly 'authorized by law.' " [39] at 11.

  o Defendant KC's argument that a DMCA notice constitutes an "official proceeding" relies on underlying factual disputes that are not before this Court. No court in federal or state court has ever found that a DMCA process constitutes an official proceeding for the purposes of anti-SLAPP.

Both of Defendant KC's protected activity arguments against Plaintiff Braun rely on contested factual assertions that extend beyond the scope of the Amended Complaint. These disputed facts cannot be resolved at this stage and necessitate further discovery. Defendant KC's claims regarding the alleged falsity of Plaintiff Braun's DMCA copyright strike and the status of

DMCA filings as "official proceedings" involve substantial factual disputes that require a more developed evidentiary record.

Plaintiff Braun's pleadings contradict Defendant KC's claim that she received a "bad faith" or "false copyright strike." Plaintiff Braun's pleadings assert that Defendant KC used Lauren the Mortician's content, and Meta subsequently removed Defendant KC's account. This directly contradicts Defendant KC's claim of a "bad faith" or "false copyright strike." Furthermore, Defendant KC's knowledge of Plaintiff Braun's role as Plaintiff Propson's attorney and the publication of allegedly false accusations about this relationship are factual matters that should be resolved through discovery and, if necessary, at summary judgment.

Therefore, this Court should deny Defendants' anti-SLAPP motion, as it is predicated on disputed facts that are outside the pleadings' four corners and require further evidentiary development. The resolution of these issues must await a more thorough examination of the facts.

**3. Defendant Vazquez and Defendant Marston's anti-SLAPP arguments against Plaintiff Braun and Plaintiff Braun Law:**

In their attempt to establish a matter of public concern, Defendants Vazquez and Marston both rely on the following disputed facts and information outside the Complaint:

- "Under both Georgia and California law, statements that Braun is engaging in unethical or harassing conduct is unquestionably a matter of public concern affecting a large group of individuals, *i.e.*, **social media content creators who might be targeted by Braun or who might be considering using Braun as a lawyer**." [43] at 9 (emphasis added).

    o Defendants' argument rests on an assumed fact that the information they received was in fact true and factual. Whether Defendants Vazquez and Marston actually received messages and DMs from other content creators is a fact not within the complaint and involves hearsay statements and additional documents that are not presently before the Court.

- "The Amended Complaint neglects to mention that later in Episode 97, Defendants show a screenshot of an email they received from an individual named 'Christin' in which 'Christin' stated that she had posted videos depicting screenshots of text message conversations she had with Braun's client "Demps,",", after which 'Jeanette reported two of her [videos] for copyright'; Defendants also showed a screenshot of an 'Appeal' that 'Christin' filed, which indicated that the copyright violation was claimed by 'Jeanette M. Braun.' " [43] at 4 fn. 2 (alterations in original).

  o The above statement references documents, additional videos, and information that are not before the Court. Further, this statement rests on underlying claims and hearsay from a witness that has not been deposed. This statement also assumes that the alleged victim is telling the truth and that the Court found in her favor. Defendants' argument that this was proof to back up their opinion shows a reckless disregard for the truth and blind reliance on hearsay without any further investigation. Further, Defendants' alteration to say "videos" above shows that Defendants did not provide any information regarding this alleged information about the alleged copyright suit and are now characterizing this as "videos" for the purposes of their motion to dismiss.

Defendants Vazquez and Marston's arguments rely on disputed facts and third-party witness testimony and should thus be resolved after the parties have had the chance to engage in discovery. Further, Defendants' request to review Defendants' entire 1.5-hour long episode ignores the fact that the video references documents that have not been tendered to the Plaintiffs and involves witness testimony that is not before this Court. Defendants Vazquez and Marston's arguments are a request for this Court to accept their characterizations of hearsay statements as true, without the opportunity to take discovery or hear Plaintiffs' facts and arguments. Thus, Defendants Vazquez and Marston's anti-SLAPP arguments should be addressed at summary judgment.

**II.**     **Plaintiffs Stated a Claim for Defamation and Defamation *Per Se* against Defendant KC under Illinois and Wisconsin Law.**

Plaintiffs' Amended Complaint alleges sufficient facts to establish defamation claims under Illinois and Wisconsin law.[4] As alleged in the Amended Complaint, Defendants' statements were made to a public forum, are verifiable in nature, false, and have caused the online internet community to engage in a harassment campaign on behalf of Defendants. Plaintiffs have also sufficiently alleged enough facts to show that the context of Defendants' defamatory statements were made solely for the commercial purpose of engaging with their fans and making social media content for monetary gain.

   **A.     Plaintiff Propson has pled sufficient facts to establish a cause of action for defamation and defamation *per se* under Wisconsin Law against Defendant KC.**

Defendant KC's statement—that Plaintiff Propson is a "TERF" in a video that was posted on social media—was a verifiably false statement that constitutes defamation under Wisconsin law. To state a claim for defamation under Wisconsin law, a plaintiff must show: "(1) was spoken to someone other than the person defamed; (2) is false; (3) is unprivileged; and (4) tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Wesbrook v. Ulrich*, 90 F.Supp.3d

---

[4] As noted above, this Court has adopted the standards set forth by the 9th Circuit in that to the extent an "anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rules of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Osundairo*, 447 F.Supp.3d at 744 (citing *Planned Parenthood*, 890 F.3d at 834). To overcome a motion to dismiss under 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

803, 811 (W.D. Wis. 2015) (quoting *Torgerson v. J.Sentinel, Inc.*, 210 Wis. 2d 524 (1997)); *see also Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 665 (7th Cir. 2022) (same).

       **1.**      **It is undisputed that Defendant KC published her statement to the public and is not raising any claim of privilege (aside from her anti-SLAPP argument).**

Based on Defendant KC's arguments, the first and fourth elements of defamation are not in dispute. Defendant KC concedes that her social media post about Plaintiff Propson was made in a public forum. In addition, Defendant KC does not raise any claim of privilege against Plaintiff Propson beyond her anti-SLAPP arguments which are addressed above and not ripe for a motion to dismiss.

       **2.**      **The context of Defendant KC's statements show that she was calling Plaintiff Propson transphobic and claiming that she had proof of this.**

Regarding the second element, Defendant KC's statement that "Lauren the Mortician is a TERF, I have the receipts, I've got the deets"[5] is a verifiably false statement that was intended to convey that Defendant KC had proof that Plaintiff Propson is transphobic. [29] at ¶ 20. As alleged in the Amended Complaint, Defendant KC tells her fans that she reviewed Plaintiff Propson's social media activity on her Lauren the Mortician Instagram page and identified that she liked "transphobic" online content and compiled a list of allegedly transphobic links. *See* [29] at ¶¶ 19, 27-30. Plaintiff Propson also alleges that Defendant KC implied that she spent a significant amount of time generating a list of the allegedly "transphobic" content that Plaintiff Propson liked:

---

[5] As noted in the Amended Complaint, "Deets" is modern slang for "details" and "receipts" is modern slang that is understood to mean proof. Merium-Webster, DEETS Definition (accessed on March 21, 2024), https://www.merriam-webster.com/dictionary/deets.; Urban Dictionary, Receipts Definitions (accessed on March 21, 2024), https://www.urbandictionary.com/define.php?term=receipts.

> "[A]nd not only was she following him, but she was actively liking incredibly transphobic and hateful rhetoric and content. So, as you can see here, I decided to make a fun and helpful little list of all the different videos I caught her liking.
>
> . . . .
>
> This [list] is obsessive? Maybe—but I just like being *thorough* when dealing with accusations. Seems responsible to me."

[29] at ¶¶ 27, 30. As alleged in the Amended Complaint, the posts compiled by Defendant KC are not transphobic. [29] at ¶ 31. To the extent that Defendant KC is saying that her research found transphobic content that Plaintiff Propson liked, this is an issue of fact that cannot be resolved on a motion to dismiss.

Despite the clear context of her statements, Defendant KC argues that she did not call Plaintiff Propson "transphobic" and merely expressed her opinion that Plaintiff Propson is a TERF. [29] at ¶¶19-22. Despite her claims that she did not say the exact statement of "Lauren the Mortician is transphobic, and I have proof," the context of Defendant KC's entire video is intended to say that she has proof that Lauren the Mortician is transphobic. *Wesbrook*, 90 F. Supp. 3d at 811; *see also Osundairo*, 447 F. Supp. 3d at 737 (noting that courts should consider the "context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning."). The full context of the statements below show that Defendant KC is accusing Plaintiff Propson of being transphobic.

> [A]nd not only was she following him, but she was actively liking incredibly transphobic and hateful rhetoric and content.
>
> . . . .
>
> [she is] trying to divert the attention by saying she is just pro LGBTQ and bisexual as if that is some kind of hall pass that prevents her from being prejudiced to other sub-genres of the rainbow. Just like any other person can be biphobic, bi people can be transphobic. (Text Caption: "Unfriendly Reminder: we see transphobic so we're saying transphobic. That ain't bullying it's an observation").

[29] at ¶¶ 27, 29. As explained in the Amended Complaint, the only person Defendant KC is talking about in the video is Plaintiff Propson, and thus the word "she" refers to Plaintiff Propson. [29] at ¶ 26. The context of these statements show that Defendant KC was calling Plaintiff Propson transphobic and claiming that she had proof. Thus, the second element of Plaintiff Propson's defamation claim is properly alleged.

### 3. Calling Plaintiff Propson a TERF is defamatory and caused members of the public to believe she was transphobic and harass her online.

Defendant KC's statement that "Lauren the Mortician is a TERF" is defamatory and meets the third element of Plaintiff's defamation claim. A statement is "defamatory" if it "tends to damage one's reputation in the community or to deter other persons from associating with the defamed individual." *Fin. Fiduciaries*, 46 F. 4th at Ft. 5 (quoting *Laughland v. Beckett*, 365 Wis. 2d 148, 167 (Wis. App. 2015)). Here, the term TERF is defamatory because it is commonly accepted as a derogatory term and caused the public to turn against Plaintiff Propson.

The term TERF is commonly accepted in feminist communities as a derogatory term to describe a woman as transphobic. In her motion to dismiss, Defendant KC seemingly makes the argument that TERF does not mean anything but fails to provide any other plain meaning that contradicts the definition provided by trusted online sources, such as Dictionary.com and Merriam Webster.[6] According to both sources, the word "TERF" means "trans-exclusionary radical feminist" and is a "disparaging" term. *See infra* at fn. 6. As alleged in the Amended

---

[6] With respect to the allegation that KC stated Propson was a "TERF" (which allegedly stands for "Trans-Exclusionary Radical Feminist" defined as "someone who is hostile to the inclusion of trans women in the feminist movement") . . . ." [39] at 18, *but compare with* Dictionary.com, TERF Definition (accessed on Dec. 12, 2023), https://www.dictionary.com/browse/terf ("TERF, noun, *disparaging*, trans-exclusionary radical feminist: an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans women in the feminist movement.") (italics in original); *see also* Merriam Webster, TERF definition (accessed on May 12, 2024), https://www.merriam-webster.com/dictionary/TERF (noting that the term TERF is "often disparaging").

Complaint, the context of the entire video shows that Defendant KC used the term "TERF" to disparage and attack Plaintiff Propson's character and reputation in the online community.

To further show the harm of being called a TERF, Plaintiff Propson's allegations establish that Defendant KC's statements incited an online mob and harassment campaign against her that caused her to lose her social media sponsorships. [29] at ¶¶ 38-47. The online harassment caused Plaintiff Propson to be viewed as a controversial figure and lose sponsorships that she relied upon for income. [29] at ¶¶ 44-47. As alleged by Plaintiff Propson, Defendant KC's statements and accusations that she was transphobic caused her reputational harm to her social media career and a loss of followers and sponsors. [39] at ¶¶ 44, 47. As such, the allegation that Plaintiff Propson is a TERF is defamatory and satisfies the third element of her defamation claim.

### 4. Defendant KC's statement is not a mere expression of opinion and is not subject to any privilege or protection from the First Amendment.

Defendant KC's statement is a mixed opinion that combines an expression of her opinion with a statement of fact. It is well established that statements merely claimed to be opinions are not automatically granted protection under the First Amendment. *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263–64 (1977) (noting that "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs."), cited by *Laughland*, 365 Wis. 2d at 167. As noted by courts and Wisconsin state law treatises:

> "Generally, the defamatory communication must be a statement of fact. An expression of opinion generally cannot be the basis of a defamation action. However, where the defamer departs from expressing 'pure opinion' and communicates what the courts have described as 'mixed opinion,' then liability may result . . . . 'Mixed opinion' is a communication which blends an expression of opinion with a statement of fact. This type of a communication is

17

> actionable if it implies the assertion of undisclosed defamatory
> facts as the basis of the opinion."

Wis. Civil Jury Instr., WIS. JI—CIVIL 2500, cited by *Laughland*, 365 Wis. 2d at 167. In other

courts, claims that someone is a "racist" can be verifiable if the conduct is given enough

specificity. *Overhill Farms Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (Cal. Ct. App. 2010)

("However, defendants did not merely accuse Overhill of being 'racist' in some abstract sense.

The press release contains language which expressly accuses it of engaging in racist firings and

declaims upon the disparate impact the firings have had on 'immigrant women.' ").

Here, Defendant KC did not simply call Plaintiff Propson transphobic; she claimed that

Plaintiff Propson is transphobic and that she has proof. As the context of Defendant KC

statement shows, "Lauren the Mortician is a TERF, I have receipts, I have deets, and you should

just go ahead and take a seat" is a mixed opinion that incorporates the alleged fact that Plaintiff

Propson liked transphobic materials. Furthermore, the statement that "[Plaintiff Propson] was

actively liking incredibly transphobic and hateful rhetoric and content" insinuates that Plaintiff

Propson endorsed and expressed transphobic rhetoric. Although Defendant KC casts her

statement as an opinion, she rests her entire assertion on a verifiable claim that Plaintiff Propson

liked and engaged in transphobic content by claiming she had links to this "transphobic content"

that Plaintiff Propson liked. This is not an abstract statement of opinion that Plaintiff Propson is

transphobic, but a mixed opinion relying on verifiable falsehoods. As a result, Defendant KC's

statements are not privileged nor protected by the First Amendment.

### 5. Defendant KC's accusation that "Lauren the Mortician is a TERF" is defamation *per se*.

Defendant KC's arguments—regarding Plaintiff Propson's "Lauren the Mortician"

persona potentially being transphobic and thus a matter of public concern—is an admission by

Defendant KC that Plaintiff Propson's image and professional career have been harmed by her

statement. Under Wisconsin law, "[t]he distinction between defamation, which is actionable by itself, or *per se*, and that which requires proof of special damages is not the same as the distinction between language which may be defamatory on its face or may convey a defamatory meaning only by reason of extrinsic circumstances." *Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 460, (1962). "If the only possible meaning or meanings of the communication under all the facts in the case are defamatory as applied to the plaintiff and could only be reasonably so understood by the recipient, the court may hold the language defamatory as a matter of law." *Id.* at 461–62. Statements are defamatory when they damage one's reputation in the community or deter others from associating with the defamed individual. *Converters Equip.*, 80 Wis.2d at 262.

Defendant KC's statement that Plaintiff Propson is a TERF constitutes defamation *per se*. Under Wisconsin law, a statement is defamation *per se* if its defamatory nature is obvious and apparent. *Martin*, 15 Wis.2d at 460. Such statements damage one's reputation in the community or deter others from associating with them. *Converters Equip.*, 80 Wis.2d at 262. Defendant KC's statements caused reputational harm and loss of sponsorships for Plaintiff Propson, demonstrating defamation *per se*.

> **B.** **Plaintiff Braun and Plaintiff Braun Law have pled sufficient facts to establish a cause of action for defamation and defamation *per se* under Illinois Law against Defendant KC.**

Defendant KC's claims that Plaintiff Braun filed a "false copyright claim" against her, and that Plaintiff Braun did not represent Lauren the Mortician, constitute defamation *per se* because they imply that Plaintiff Braun is an unethical lawyer that files frivolous lawsuits. A plaintiff pursuing a defamation claim under Illinois law must establish: (1) that "the defendant made a false statement about the plaintiff," (2) that "the defendant made an unprivileged publication of that statement to a third party," and (3) that "the publication caused her damages." *Jenkins v. Fuchs*, No. 17 C 1462, 2018 WL 905507, at *2 (Feb. 15, 2018).

      1.      **Defendant KC's defamatory statements are mixed opinions that are verifiable and not subject to First Amendment Protections or Qualified Privilege Protection.**

Defendant KC's statements that Plaintiff Braun "files bad faith copyright strikes" and did not represent Lauren the Mortician meet the first two requirements of defamation because they are verifiable statements that rely on asserted facts. A false assertion of fact can be defamatory even when couched as or presented as an opinion or rhetorical hyperbole. *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 581 (Ill. 2006) ("*Solaia Tech.*"). Under Illinois law, mixed opinions are actionable as defamatory statements, even if they are presented as just an opinion. *Bd. of Forensic. Doc. Exam'rs., Inc. v. Am. Bar. Assoc.*, 287 F. Supp. 3d 726, 736 (N.D. Ill. 2018) ("To be sure, a speaker cannot just couch a "false assertion of fact" in "terms of an opinion" and thereby evade liability.") (citing *Solaia Tech.*, 287 F. Supp. 3d at 384. As the Illinois Supreme Court has noted, "[i]t is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact." *Id.*

Here, Defendant KC's statements rest on the verifiably false claim that Plaintiff Braun filed a frivolous or baseless copyright infringement claim against her, and Plaintiff Braun did not represent Plaintiff Propson when she filed them. Defendant KC argues that the terms "false copyright claim" and "bad faith copyright infringement strike" are subjective opinions, and poses the question, "What does it mean for a claim to be 'false' or in 'bad faith,' and how would one verify that?" The answer to her question can be found in the context of her own statement and the Illinois Rules of Professional Conduct. *See Osundairo*, 447 F.Supp.3d at 737-38 (The innocent-construction rule requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning.) (internal quotations omitted); *see also*, Ill. R. Prof. Cond. 3.1 ("A lawyer shall not

bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous[7], which includes a good-faith argument for an extension, modification or reversal of existing law").

Defendant KC intentionally made public statements via social media on November 21, 2023, claiming that Plaintiff Braun filed a "false copyright claim," and on December 8, 2023, that Plaintiff Braun did not represent Plaintiff Propson. [29] at ¶¶ 71-81. With Meta removing Defendant KC's infringing posts on November 4, 2023, Defendant KC was on notice that she used content that did not belong to her and thus committed copyright infringement. [29] at ¶¶ 57-59. Further, by hiring a lawyer and having that lawyer communicate with Plaintiff Braun on November 13, 2023, Defendant KC knew that Plaintiff Braun did in fact represent Plaintiff Propson. [29] at ¶ 64. Despite this, Defendant KC still made her false statements on November 21, 2023 and December 8, 2023.

Defendant KC in her request for dépeçage, claims that she did not say "bad faith copyright infringement strikes" or "false copyright claim" in her November 21, 2023 video. This argument—as well as Defendant KC's request to watch her full ten minute and two second video—is frivolous and a disingenuous attempt by Defendant KC to mislead and distract this Court by considering Defendant KC's self-serving narrative of events that are factually disputed[8] and not in the four corners of the Amended Complaint. [39] at ¶14 ("A transcript of the 11/23

---

[7] According to the comments of Rule 3.1, an action is frivolous if "the lawyer is unable either to make a good-faith argument on the merits of the action taken or to support the action taken by a good-faith argument for an extension, modification or reversal of existing law." Here, Plaintiffs more than met this standard as they alleged in the Amended Complaint. *See* [29] at ¶¶ 48-60.

[8] Defendant KC complains primarily about a wellness check being called on her and makes the accusation that Plaintiff Braun did this in response to a letter Defendant KC sent her. Defendant KC also makes the claim that she had permission to use Plaintiff Propson's copyrighted material. These allegations are disputed and involve additional facts beyond the scope of Defendant KC's November 21, 2023 video and the Amended Complaint.

TikTok Posts reveals that nowhere in the 11/23 TikTok Posts does KC actually state that Braun filed 'bad faith' or 'false' copyright claims or copyright strikes against her."). As argued above, the additional facts Defendant KC is attempting to present before this Court are to challenge the factual sufficiency of Plaintiff Braun's claims and should be resolved on summary judgment. For judicial efficiency, the relevant text from Defendant KC's video is shown below:[9]

> "A sizeable content creator on this app has apparently hired an attorney to threaten me with all manner of legal actions and I need to come on here and set the record straight . . . . the name of the attorney associated with the copyright strike . . . . and it is such as bizarre copyright infringement strike . . . . that was in <u>Jeanette</u> and Lauren's opinions copyright infringement . . . . by the way the second problem for <u>Jeanette</u> in her missive to me she does indicate that we are not on a first name basis and that I should call her <u>Attorney Braun</u> . . . . and as for Lauren the Mortician herself, I'm just gonna throw out there that this kind of a—have you heard the phrase?--'that's a weird hill to die on?' well to make it more #onbrand for your channel Lauren this is kind of an odd pool to drown in because you yourself consistently use trademarked IP's . . . . and so I'm just saying if you're gonna go that route and say that that's the case for you you might want to put up a metaphorical pool fence to protect your own assets before one of them almost drowns in __bad faith copyright infringement strikes . . . ."__

@CaffinatedKitti, Nov. 21, 2023 Post, Tiktok.com (accessed on May 19, 2024) (https://www.tiktok.com/@caffinatedkitti/video/7304065297856613675?lang=en).

However, like her arguments against Plaintiff Propson, Defendant KC ignores the context of her own statements. When determining whether the defendant's statement is capable of an innocent construction, the context of the statement is critical to its meaning, and, therefore, the court must read any allegedly defamatory words in the context of the entire document in which the statement was published. *Osundairo*, 447 F. Supp. 3d at 738; *see also Hadley v. Doe*, 2014

---

[9] Defendant KC in her request for judicial notice requests the Court to take notice of a "certified transcript." Plaintiff's object to this characterization and note that the link is just a version of Defendant KC's video with auto-generated captions. There is not a certified transcript of Defendant KC's statement that is available.

IL App (2d) 130489 at ¶23 (noting that the defendant's statement could be reasonably construed as intended to present a fact about plaintiff not an expression of opinion, and that the statement implied the existence of undisclosed facts). The above text shows that throughout the video, Defendant KC complains that Plaintiff Propson p/k/a Lauren the Mortician hired an attorney to file a copyright strike against her and that these are "bad faith copyright infringement strikes." Furthermore, Defendant KC refers to Plaintiff Propson's lawyer as "Jeanette" throughout the video and even identifies Plaintiff Braun by her full name at the 3:37 mark in the video. [29] at ¶ 72. Defendant KC's statement that Lauren the Mortician's "bad faith copyright infringement strikes" through her attorney Plaintiff Braun implies the existence of undisclosed facts and thus makes it a mixed opinion relying on facts. *Hadley,* 2014 IL App (2d) 130489 at ¶23. Due to this, Plaintiff Braun's allegations establish the context of Defendant KC's statements and show that they assert verifiable falsehoods; namely that Lauren the Mortician used Plaintiff Jeanette Braun to file "bad faith copyright infringement strikes."

As alleged in the complaint, Defendant KC created a GoFundMe page to collect and raise money from her fans to pay for her legal expenses. On December 8, 2023, Defendant KC posted a response letter she drafted to her GoFundMe page with the subject "False Copyright Claim" and made the following claim:

> "I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's Scandals, and while I understand your desire to protect a creator you enjoy - if you were not legally obtained as counsel for her and I speak on this via my platform, your actions are going to cause her significantly more strife."

[29] at ¶¶ 70-71, 73-76. This statement about Plaintiff Braun not representing Lauren the Mortician was published without any additional context or clarification other than the accusation

that Plaintiff Braun does not represent Lauren the Mortician and was just some rogue fan. [29] at ¶ 81 (screenshot of the full GoFundMe Post).

This accusation that Plaintiff Braun did not represent Lauren the Mortician is a mixed opinion that is not protected by the First Amendment. The allegations of the Amended Complaint establish that Defendant KC published her letter—accusing Plaintiff Braun of being a fan that submitted a DMCA strike without permission—to her GoFundMe page without any context or qualifiers. [29] at ¶ 81. The allegations of the Amended Complaint show that this statement was published several weeks after her initial TikTok post with her clarification. [29] at ¶¶ 72-73.

Based on the previous interactions described in the Amended Complaint, Defendant KC was fully aware that her posts about Plaintiff Propson using Plaintiff Braun to file "bad faith copyright infringement strikes" and "false copyright claims" were not true and that there was a basis for removing her infringing social media posts. In addition, Defendant KC's publication of her letter on December 8, 2023 was made with no qualification after she knew that Plaintiff Braun was Plaintiff Propson's attorney. As alleged, Defendant KC went ahead with these posts anyway so that she could incite her fans to donate to her GoFundMe and set her own self-serving narrative as to why she lost her Facebook account. For these reasons, Plaintiff Braun's allegations establish the first and second elements of her defamation claim against Defendant KC.

### 2. Defendant KC's defamatory statements are mixed opinions that are verifiable and not subject to First Amendment Protections or Qualified Privilege Protection.

Defendant KC's false statements against Plaintiff Braun are not entitled to qualified privilege because she knowingly published her false statement with the sole intention of casting Plaintiff Braun in a false light to encourage her fans to donate to her GoFundMe. "The qualified

privilege in Illinois defamation law is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Dobias v. Oak Park and River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 572 (Ill. App. 1st Dist. 2016) (quoting *Kuwik v. Starmark Star Mkting. & Admin., Inc.*, 156 Ill.2d 16, 24 (1993) (internal quotation omitted)). However, even if a privilege exists in a case, the defendant may not rely on that privilege if he abuses it. *Id.* (noting that "[a] plaintiff claiming a defendant abused a qualified privilege must show a direct intention to injure another or a reckless disregard of the plaintiff's rights and of the consequences that may result to the plaintiff.").

"A qualified privilege can be exceeded and defeated, in circumstances where defendant makes false statements with intent to injure or with reckless disregard for statements' truth." *Id.* (citing *Pompa v. Swanson*, 2013 IL app. (2d) 120911, ¶ 26). "Conduct constituting an abuse of the privilege thus includes not only an intent to injure but also 'any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.* at (quoting *Kuwik*, 156 Ill.2d at 30; *see also* Restatement (Second) of Torts § 599 cmt. a (Am. Law Inst. 1977)) (qualified privilege of defamatory publications can be defeated by unreasonable exercise of privilege).

Here, Plaintiff Braun alleges enough facts to show that Defendant KC intended to harm Plaintiff Braun with her false statements, and thus is not entitled to any qualified privilege, even if applicable. Further, Plaintiff Braun alleges that Defendant KC made her false claims to incite her fan base by casting Plaintiff Braun as a rogue fan attorney that filed a frivolous copyright strike without the knowledge or consent of Lauren the Mortician. In addition, the false statement that Plaintiff Braun's DMCA take-down request was a "bad faith copyright infringement strike"

was done to incite the public into thinking that Defendant KC's free speech was wrongfully infringed. These false statements were knowingly made for monetary gain, to injure Plaintiff Braun's reputation, and to make the narrative favorable to Defendant KC. Due to this, Plaintiff Braun has alleged enough facts to overcome any claim of qualified privilege.

### 3. Plaintiff Braun states a claim for defamation *per se* against Defendant KC, thus damages are assumed.

Plaintiff Braun's allegations that Defendant KC cast her in a false light and accused her of "filing bad faith copyright strikes" and being a rogue attorney that filed a DMCA take-down request without the consent of Plaintiff Propson are defamation *per se*.

If a statement is defamatory *per se*, damages are assumed. *Green v. Rogers*, 234 Ill. 2d 478, 491 (Ill. 2009). "A statement is defamatory *per se* if its harm 'is obvious and apparent on its face,' such that damages are assumed." *Id.* at 491. In Illinois, courts recognize five categories of statements as defamation *per se*; of which two are applicable: (1) "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties;" or (2) "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Green*, 234 Ill. 2d at 491-92. Here, Defendants made several false statements about Plaintiffs, and each of these false statements were unprivileged publications that caused damages. Additionally, in the case of Plaintiffs Braun and Braun Law, the statements made by Defendants amount to defamation *per se*.

Here, Defendant KC's statements fall within these categories. By falsely claiming that Plaintiff Braun filed "false copyright claims" and "bad faith copyright infringement strikes," and implying that Plaintiff Braun did not represent Lauren the Mortician, Defendant KC imputed that Plaintiff Braun lacks integrity and ability in performing her professional duties as an attorney.

These false statements were unprivileged publications that harmed Plaintiff Braun's professional reputation.

III. **Plaintiffs Braun and Braun Law Stated a Claim for Defamation and Defamation** *Per Se* **against Defendants Jessica Vazquez and Lily Marston under Illinois Law.**

    A. **Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of defamation** *per se* **under Illinois law against Defendants Vazquez and Marston.**

Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for defamation *per se* under Illinois law[10] against Defendants Jessica Vazquez and Lily Marston.

    1. **Defendants Vazquez and Marston's statements regarding Plaintiffs Braun and Braun Law.**

**False Copyright Strikes**: Defendants accused Plaintiff Braun of filing false copyright strikes, implying that her actions were illegitimate and conducted in bad faith. [29] at ¶¶ 65-66, 72-81. For instance, Defendant Vazquez stated, "as unhinged as [Jeanette] is, as unethical as [Jeanette] is, she is finding some success in her practices."[11] This statement was made during a discussion about Plaintiff Braun's legal methods and insinuated that her success was built on unethical practices. [29] at ¶ 103.

**Unethical Attorney**: The repeated claims that Plaintiff Braun is an "unethical" attorney were made during discussions about her legal practices, suggesting she routinely engages in unethical conduct. [29] at ¶¶ 98-103, 111-116. These statements were made publicly in a podcast and on various social media platforms. Specifically, Defendants Vazquez and Marston accused Plaintiff Braun of filing "false copyright strikes" and of being an "unethical" attorney in their December 2, 2023 podcast episode and various social media posts. [29] at ¶¶ 127-132, 140-151.

---

[10] Plaintiff Braun and Braun Law rely upon the case law previously cited against the Defendants.

[11] Defendants Vazquez and Marston continue to purposefully and incorrectly refer to Plaintiff Braun as "Janet." [29] at 140.

27

Defendants also discussed Plaintiff Braun's representation of Kaitlynn Dempsey (Demps), alleging that Plaintiff Braun used unethical tactics to file false copyright strikes against smaller content creators, thus intimidating them and misusing the copyright strike system. [29] at ¶¶ 98-103, 111-116.

**Committing Perjury**: Defendants alleged that Plaintiff Braun commits perjury, accusing her of criminal behavior. Specifically, Defendant Marston, referring to Plaintiff Braun's client Kaitlynn "Demps" Dempsey after publishing their podcast, stated: "I gotta say . . . one of our biggest questions in all of this, is do we think Demps knows her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might want to tell her." [29] at ¶ 151.

> ### 2. Defendant Marston and Defendant Vazquez made unprivileged publications to a third party.

Plaintiffs Braun and Braun Law established the second element against Defendant Vazquez and Defendant Marston because defamatory statements were published widely and without privilege on multiple platforms, including YouTube, Twitter, Spotify, and other podcast dissemination platforms. The statements were disseminated through Defendants' podcast "Do We Know Them" and social media accounts. [29] at ¶¶ 127-132, 140-151.

> ### 3. Defendants Vazquez and Marston's statements are not entitled to First Amendment protections because they are verifiable falsehoods.

**False Copyright Strikes**: Defendants accused Plaintiff Braun of filing false copyright strikes, implying her actions were illegitimate and conducted in bad faith. These statements were verifiable because it can be determined whether the copyright strikes filed by Plaintiff Braun, on behalf of her clients referenced in the Defendants' video, were frivolous.

**Unethical Attorney**: Defendants repeatedly claimed that Plaintiff Braun is an "unethical" attorney, suggesting she routinely engages in unethical conduct. This statement is verifiable

because it can be investigated whether Plaintiff Braun's actions adhered to legal and ethical standards. As noted in the Amended Complaint, Plaintiff Braun is an attorney in good standing with the State of Illinois with no disciplinary actions made against her, and this information could have easily been found from the Illinois Attorney Registration & Disciplinary Commission (ARDC).

**Committing Perjury**: Defendants proclaimed that Plaintiff Braun committed perjury, accusing her of criminal behavior. This statement is verifiable because it can be determined whether Plaintiff Braun has ever been convicted of committing perjury.

### 4. Defendants Vazquez and Marston's statements are not entitled to qualified privilege.

Here, Plaintiffs Braun and Braun Law allege sufficient facts to show that Defendants Vazquez and Marston intended to harm Plaintiffs with their false statements. The statements about Plaintiff Braun's DMCA take-down request being a "bad faith copyright infringement strike" were made to incite the public into thinking Plaintiff Braun was unfairly suppressing free speech. These false statements were knowingly made to injure Plaintiff Braun's reputation and create a favorable narrative for Defendants. Therefore, Plaintiffs Braun and Braun Law have alleged sufficient facts to overcome any claim of qualified privilege.

Thus, Defendants Vazquez and Marston's false statements against Plaintiff Braun are not protected by any qualified privilege because they were made with a reckless disregard for the truth and with the intent to harm Plaintiff Braun's professional reputation.

### 5. Damages are assumed because Defendant Marston and Defendant Vazquez's statements constitute defamation *per se*.

As alleged, Defendants "defamatory statements led to a loss of clients, potential clients, and harm to Plaintiff Braun's professional reputation". Clients and potential clients were deterred from hiring her due to these defamatory statements." [29] at ¶¶ 152-157, 160-161.

**False Copyright Strikes**: Defendants accused Plaintiff Braun of filing false copyright strikes, implying that her actions were illegitimate and conducted in bad faith. This directly challenges Braun's honesty and ethics as an attorney. Such a statement impugns her professional capabilities, making it defamatory *per se*. [29] at ¶¶ 65-66, 72-81; s*ee e.g. Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (noting that statements are defamation *per se* when they impute a lack of ability in one's trade, profession, or business).

**Unethical Attorney**: The repeated claims that Plaintiff Braun is an "unethical" attorney were made in discussions about her legal practices, suggesting she routinely engages in unethical conduct. In addition, all attorneys in the State of Illinois must pass character and fitness to be barred to practice in the state. If any attorneys have violated the Rules of Professional Conduct, the attorney in question could be suspended or even disbarred. *See* Ill. R. Prof. Cond. 8.4 and cmt. 1 ("Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct.")

As such, Defendants' statements directly attack Plaintiff Braun's professional integrity, which Illinois law recognizes as defamation *per se*. [29] at ¶¶ 98-103, 111-116.

**Committing Perjury:** Defendants alleged that Braun committed perjury, accusing her of criminal behavior. Committing perjury is a class 3 felony in the State of Illinois. *See* 720 ILCS 5/32-2. Defendants' serious allegation of perjury directly impacts her professional reputation, suggesting she is untrustworthy and engages in illegal activities. Illinois courts have consistently held that false accusations of criminal activity are defamatory *per se*.

**IV.** **Plaintiffs Braun and Braun Law Stated a Claim for Defamation and Defamation** *Per Se* **against Defendant Day under Illinois Law.**

Defendant Day's statements accusing Plaintiff Braun of unethical conduct and making false copyright strikes constitute defamation *per se* because they imply that Plaintiff Braun is an unethical lawyer who engages in frivolous and illegitimate practices.

    **A.** **Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of defamation and defamation** *per se* **under Illinois law against Defendant Day.**

Defendant Day's publishing of the same false claims as Defendant KC, that Plaintiff Braun files "false copyright strikes," is an "unethical attorney", and is a "rogue attorney" are defamatory statements that were made with reckless disregard for the truth.

    **1.** **Defendant Day's statements regarding Plaintiffs Braun and Braun Law**

**False Copyright Strikes**: Defendant Day stated that Plaintiff Braun uses an "unethical tactic to scare creators off this app" and that Plaintiff Braun issues "false copyright strikes." [29] at ¶¶ 101, 104-108.

**Unethical Attorney**: Defendant Day claimed that Plaintiff Braun is "unethical," suggesting she routinely engages in unethical conduct and that "the Illinois Attorney Registration & Disciplinary Commission told her they received 'multiple *credible* complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter.' " [29] at ¶¶ 98-103, 111-117.

**Rogue Attorney:** Defendant Day claimed that Plaintiff Braun was an unethical attorney in a since deleted TikTok story post. Specifically, Day states to her fans, "But I just wanted to make it very clear that my position is to ensure that there is not a **rogue attorney** on this app." [29] at ¶¶ 106-107. Due to the number of videos Defendant Day was posting about Plaintiff

Braun when she made the statement, Defendant Day's fans presumably knew that Defendant Day was talking about Plaintiff Braun.

### 2. Defendant Day's statements were published to third parties on social media.

Plaintiff Braun established the second element against Defendant Day because the defamatory statements were published widely and without privilege on TikTok. [29] at ¶¶ 94-108.

### 3. Defendant Day's Statements are verifiable and mixed opinions relying on underlying facts.

**False Copyright Strikes**: Defendant Day's statements that Braun uses an "unethical tactic to scare creators off this app" and issues "false copyright strikes" are verifiable because it can be determined whether the copyright strikes filed by Plaintiff Braun were frivolous, as discussed above.

**Unethical Attorney**: The claim that Plaintiff Braun is an "unethical" attorney and that "the Illinois Attorney Registration & Disciplinary Commission told [Defendant Day] they received 'multiple *credible* complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter' " are verifiable. One could check with the ARDC to learn (1) whether Plaintiff Braun had ever been disciplined for ethical violations and (2) how the ARDC handles ethics complaints of attorneys barred in the State of Illinois. [29] at ¶¶ 117-126.

**Rogue Attorney:** As alleged, Defendant Day's statements showcase the existence of verifiable falsehood in her statements that Plaintiff Braun did something wrong as a "rogue attorney" on the TikTok app. In essence, Defendant Day is claiming that Plaintiff Braun is an unethical attorney using false copyright strikes to harass creators which, as shown above, is false. *See* [29] at ¶¶ 106-108.

4. **Defendant Day's statements are not entitled to qualified privilege.**

Here, Plaintiffs Braun and Braun Law pled sufficient facts to show that Defendant Day intended to harm her with her false statements. For instance, Defendant Day's statement about Plaintiff Braun's issuing "false copyright strikes" was made to incite the public into thinking Plaintiff Braun was unfairly suppressing free speech. This and Defendant Day's other false statements were knowingly made to injure Braun's reputation and create a favorable narrative for Defendant Day. Therefore, Plaintiff Braun has pled sufficient facts to overcome any claim of qualified privilege.

Defendant Day's false statements against Plaintiff Braun are not protected by any qualified privilege because they were made with reckless disregard for the truth and with the intent to harm Plaintiff Braun's professional reputation.

5. **Defendant Day's false statements are defamation *per se* because they imply that Defendant Braun is not ethical and is incompetent in her profession, so damages are assumed.**

As alleged in the First Amended Complaint, Defendant Day "us[ed] the above false statements to incite an angry mob and harassment campaign against Ms. Braun and her past clients that are social media influencers." [29] at ¶ 109. Defendant Day's statements have caused severe damage to Plaintiff Braun's reputation and professional standing, leading to assumed damages under Illinois defamation law. Further, Defendant Day's statements impute that Plaintiff Braun is an attorney that is committing unethical acts as a part of her practice. Due to these attacks on her profession and character, Plaintiff Braun's damages are assumed because Defendant Day's statements are defamation *per se*.

**V.**     **Plaintiffs Braun and Braun Law Stated a Claim for False Light against Defendants under Illinois Law.**

    **A.**     **Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action of false light under Illinois law against Defendants.**

Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for false light under Illinois Law against Defendants. "To state a claim for false light under Illinois law, the plaintiffs must allege that (1) they were placed in a false light before the public as a result of the [d]efendants' actions, (2) that false light would be highly offensive to a reasonable person, and (3) the defendants acted with actual malice." *Osundairo*, 447 F.Supp.3d at 738 (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) (internal quotations omitted). Here, Plaintiffs Braun and Braun Law have pled sufficient facts to establish that Defendants' actions placed Plaintiffs Braun and Braun Law in a (1) false light (2) that is highly offensive to a reasonable person, and that (3) Defendants' actions were malicious.

        **1.**     **Defendants' statements cast Plaintiffs Braun and Braun Law in a false light.**

Defendants KC, Vazquez, Marston, and Day made numerous false statements that cast Plaintiffs Braun and Braun Law in a false light by accusing Plaintiff Braun of unethical and illegal conduct. Specifically, Defendants stated that Plaintiff Braun files "false copyright strikes" and is an "unethical" attorney who commits perjury [29] at ¶¶ 127-132, 140-151. These statements all imply that Plaintiff Braun engages in dishonest and criminal activities, which significantly distort her professional reputation and character.

**Bad Faith Copyright Infringement Strikes and False Copyright Strikes**: Defendants all individually accused Plaintiff Braun of a variation of "filing bad faith copyright infringement strikes" and "false copyright strikes." Plaintiff Braun's allegations establish that the context of these statements was to paint Plaintiff Braun in the false light of being an unethical attorney that

engages in dishonest and frivolous copyright enforcement practices. *See Intercon Sol., Inc. v. Basel Action Network*, 969 F. Supp. 3d 1026 (N.D. Ill. 2013) (noting that Plaintiff's allegations that the defendants stated that the plaintiff engaged in improper business practices and criminal wrongdoing to impute a lack of inability in its trade, profession, or business was sufficient to state a false light claim).

**Unethical Attorney and Rogue Attorney and Not Representing Lauren the Mortician**: Defendants Day, Marston, and Vazquez repeatedly referred to Plaintiff Braun as "unethical," suggesting she routinely engages in unethical conduct in her legal practice. [29] at ¶¶ 98-103, 111-116. Further, Defendant Day's accusation that Plaintiff Braun is a rogue and unethical attorney painted Plaintiff Braun in the same light as someone engaging in dishonest and unethical practices as a part of her profession. Defendant KC's statement that Plaintiff Braun did not represent Lauren the Mortician was intended to have the same effect.

**Committing Perjury**: Defendant Marston stated, "Do we think Demps knows her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might want to tell her." [29] at ¶ 151. As the allegations of the Amended Complaint establish, Defendant Marston's statement referred to Plaintiff Braun based on her reference to Plaintiff Braun's client Demps and was meant to imply that Plaintiff Braun committed the crime of perjury.

2.     **Defendants' statements were highly offensive because they imply that Plaintiff Braun is an unethical attorney that is committing illegal or dishonest acts and practices.**

The false statements made by Defendants are highly offensive to a reasonable person as they accuse Plaintiff Braun of serious professional and criminal misconduct. Being labeled as "unethical" and accused of committing perjury directly attacks Plaintiff Braun's integrity, lawfulness, and her ability to perform her professional duties as an attorney. This type of

accusation is particularly damaging in the legal profession, where reputation and adherence to ethical standards and the law are paramount.

As alleged, these statements were made publicly through multiple platforms including podcasts and social media, reaching a broad audience, and causing significant harm to Plaintiff Braun's reputation. [29] at ¶¶ 127-132, 140-151. In *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 419-23 (Ill. 1989) (noting that falsely disparaging someone's integrity before the public can be highly offensive). Here, falsely accusing Plaintiff Braun of committing a felony (*e.g.*, perjury) as well as performing unethical conduct is far more offensive than merely questioning someone's financial integrity. Thus, Defendants' statements were highly offensive.

> **3.    All Defendants acted with actual malice because their statements were either knowingly false or made with a reckless disregard for the truth, so that they could make content to boost their social media careers and engagement.**

"Actual malice means 'that the defendants made... the false statements with knowledge of their falsity or in reckless disregard for their truth or falsity." *Id.* at 742 (citing *Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *4 (7th Cir. Mar. 4, 2005)). "Although malice may be alleged generally, 'the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss." *Id.* (quoting *Pippen v. NBC Universal Media, LLC*, No. 11-CV-8834, 2012 WL 12903167, at *2 (N.D. Ill. Aug. 2, 2012), *aff'd sub nom*. Furthermore, this Court has previously found that the general allegation of the defendant "'acted with actual malice and reckless disregard for the truth, knowing these statements were clearly false' " was sufficient to show actual malice when coupled with the inferences in favor of Plaintiffs. *Osundairo*, 447 F.Supp.3d at 742.

Here, Plaintiffs have alleged that Defendants acted with malice and a reckless disregard for the truth. In addition, Plaintiffs Braun and Braun Law have pled specific facts that, when held in their favor, support a finding that Defendants acted with actual malice. For example, Plaintiff Braun has pled facts that establish Defendant KC insinuated that Plaintiff Braun was a rogue attorney who filed frivolous copyright strikes for another without their permission even though, Defendant KC hired a lawyer and had that lawyer communicate with Plaintiff Braun almost a month before her statement. [29] at ¶¶ 64, 76. As another example, Defendants could have checked with the Illinois Attorney Registration & Disciplinary Commission's (ARDC) to see that Plaintiff Braun is an attorney in good standing with the State of Illinois, has not been disbarred, and has not been reprimanded or otherwise punished for unethical behavior or misconduct. [29] at ¶¶ 117-126.

Therefore, based on these examples and other facts alleged in the Amended Complaint, Plaintiffs have pled sufficient facts to establish a cause of action for false light.

**VI.**     **Plaintiffs Stated a Claim for Trade Libel against Defendants under Illinois and Wisconsin Law.**

Plaintiffs Braun and Propson state claims for trade libel under Illinois and Wisconsin law, respectively, because they have adequately alleged that Defendants made injurious false statements with reckless disregard for their truth, intending to harm Plaintiffs' reputations and divert their business to Defendants, resulting in significant damages as detailed in the Amended Complaint.

**A.**     **Plaintiff Propson has pled sufficient facts to establish a cause of action for trade libel under Wisconsin Law against Defendant KC.**

To state a claim for the tort of trade libel under Wisconsin law, a plaintiff must establish an "injurious falsehood," which § 623A of the Restatement (Second) of Torts defines as a statement that the speaker knows to be false or makes with reckless disregard of its truth or

falsity. The Seventh Circuit, while deciding on a case applying Wisconsin law, noted that Section 626 calls the subject 'trade libel' and covers 'disparagement of quality' of goods. *Next Techs. Inc. v. Beyond the Office Door, LLC*, 992 F.3d 589, 592-93 (7th Cir. 2021).

In this case, the injurious falsehood is that Plaintiff Propson endorses transphobic content and rhetoric, which affects current and potential viewers' perception of the quality of her "goods/services" (*i.e.*, her content). Additionally, Defendant KC mentioned that Plaintiff Propson follows a bunch of "red adjacent folk," further suggesting that Plaintiff Propson's content is politically charged or contains transphobic jokes.

Plaintiff Propson and Defendant KC are competitors in the online content creation space. Defendant KC's own motion to dismiss acknowledges that fans of both parties often confuse one for the other, demonstrating their competition in the same market. As alleged, Defendant KC intentionally made false statements about Plaintiff Propson to damage her reputation and divert her audience to herself, resulting in significant harm to Plaintiff Propson's business, including the loss of a contract with a well-known travel documentary channel.

### B. Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for trade libel under Illinois Law against Defendants.

To state a claim for trade libel under Illinois law, a plaintiff must show that the defendant is a "competitor" or "business rival" and that the defendant made a statement to "take away business and give it to another." *Fiducial Bus. Ctrs., Inc. v. Schafer*, 2015 IL App (4th) 150528-U, ¶ 15 (Ill. App. Aug. 03, 2015) (citing *Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Employees of America, C.I.O.*, 79 N.E.2d 46, 52 (Ill. 1948)).

Plaintiff Braun often posts monetized informational legal videos on TikTok to inform the public about areas of the law and advertise her legal services. Defendants KC, Day, Vazquez, and Marston are similarly engaged in creating online content, making them direct competitors.

They are commercially incentivized to sensationally depict Plaintiff Braun as an "unhinged" and "rogue" attorney for their TikTok gossip channels to draw in more viewers.

Defendants' false statements, such as insinuating that Plaintiff Braun is an "unhinged" and "unethical" attorney who commits perjury, were intended to damage her reputation and dissuade the public from hiring her or her law firm. These statements simultaneously incentivize viewers to watch Defendants' content to learn the "truth" about Plaintiff Braun. The defamatory remarks have led to significant harm, including negative reviews, a loss of clients, and damage to Plaintiff Braun and Braun Law's reputation and business.

Based on these examples and other facts alleged in the Amended Complaint, Plaintiffs have pled sufficient facts to establish a cause of action for trade libel under both Wisconsin and Illinois law. The intentional and injurious false statements made by Defendants, driven by competitive motives, have caused significant harm to the reputations and businesses of Plaintiffs Braun, Braun Law, and Propson.

**VII.** **Plaintiff Propson Stated a Claim for Tortious Interference with Contracts against Defendant KC under Wisconsin Law and Plaintiffs Braun and Braun Law Stated a Claim for Tortious Interference with Existing and Potential Business Relationships against Defendants under Illinois Law.**

Plaintiffs state claims for tortious interference with contracts and business relationships because they have sufficiently alleged that Defendants intentionally and unjustifiably interfered with their existing and prospective contractual and business relationships, causing significant damages. As alleged in the Amended Complaint, Defendants have all made false statements with the intention of making money off disparaging Plaintiffs and ruining their reputations and careers with false statements.

A. **Plaintiff Propson has pled sufficient facts to establish a cause of action for tortious interference with contracts under Wisconsin Law against Defendant KC.**

To state a claim for tortious interference with contracts under Wisconsin law, a plaintiff must demonstrate: "(1) the plaintiff must have had a contract or a prospective contractual relationship with a third party; (2) the defendant must have interfered with that relationship; (3) the interference by the defendant must have been intentional; (4) there must be a causal connection between the interference and damages; and (5) the defendant must not have been justified or privileged to interfere." *Finch v. Southside Lincoln-Mercury, Inc.*, 685 N.W.2d 154, n.8 (Wis. App. 2004) (quoting *Select Creations, Inc. v. Paliafito Am.*, Inc., 911 F. Supp. 1130, 1156 (E.D. Wis. 1995)).

Here, Plaintiff Propson had a valid content creation contract with a well-known travel documentary channel. The Amended Complaint alleges that Defendant KC was aware of Plaintiff Propson's contract through her research and study of Plaintiff Propson's social media activity. It is further alleged that Defendant KC intentionally used her platform to post false statements accusing Plaintiff Propson of being transphobic, with the intent to ruin Plaintiff Propson's reputation and content partnerships. As a result of Defendant KC's actions, the travel documentary channel terminated its contract with Plaintiff Propson in November 2023. This termination directly resulted in damages to Plaintiff Propson, including lost income from the contract and a substantial loss of goodwill and reputation.

These facts, as alleged, sufficiently demonstrate the elements of a tortious interference with contracts claim under Wisconsin law: the existence of a contract, intentional interference by the defendant, lack of justification, and resulting damages.

**B.** **Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for tortious interference with existing and potential business relationships under Illinois Law against Defendant KC.**

To state a claim for tortious interference with existing and potential business relationships under Illinois law, a plaintiff must establish: "(1) a reasonable expectation of continuing (or entering into) a valid business relationship; (2) the defendant's knowledge of the expectation; (3) purposeful 'interference' by the defendant that prevents the plaintiff's legitimate expectation from ripening; and (4) damages caused by the first three elements." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (quoting *Voyles v. Sandia Mortg. Corp.*, 751 N.E. 2d 1126, 1133 (Ill. 2001).

Plaintiffs Braun and Braun Law had ongoing and prospective business relationships with several clients for legal services. The Amended Complaint details that Defendants Vazquez and Marston disparaged Plaintiff Braun's clients and past representations with the intent to interfere with her existing client relationships and to prevent other content creators from hiring Plaintiffs Braun and Braun Law. Defendants' false and defamatory statements about Plaintiff Braun's legal practice led to members of the public who had never worked with Plaintiffs Braun and Braun Law to leave negative reviews and the termination of several client engagements, causing significant harm to Plaintiffs Braun and Braun Law's business and reputation.

These allegations establish that Plaintiff Braun had a reasonable expectation of continuing business relationships, that Defendants were aware of this expectation, and that Defendants purposefully interfered with this expectation, resulting in damages to Plaintiffs Braun and Braun Law.

Based on the detailed allegations in the Amended Complaint and the applicable caselaw, Plaintiffs have pled sufficient facts to establish causes of action for tortious interference with contracts and tortious interference with existing and potential business relationships. The

allegations demonstrate intentional interference by the defendants, lack of justification, and significant resulting damages.

## VIII.   **Plaintiffs Stated a Claim for Intentional Infliction of Emotional Distress (IIED) against Defendants under Illinois and Wisconsin Law.**

### A.   **Plaintiff Propson has pled sufficient facts to establish a cause of action for IIED under Wisconsin Law against Defendant KC.**

Plaintiff Propson has pled sufficient facts to establish a cause of action for IIED under Wisconsin law against Defendant KC. To state a claim for IIED under Wisconsin law, a plaintiff must prove four elements: "(1) the defendant's conduct was intended to cause emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001).

Regarding the "extreme and outrageous" standard, the conduct must be so egregious that it can be characterized as atrocious and utterly intolerable in a civilized society. *Alsteen v. Gehl*, 124 N.W.2d 312, 319 (Wis. 1963). Additionally, intent can be shown if the defendant knew that emotional distress was substantially certain to result from their actions. *Tornicelli v. Tornicelli*, 570 N.W.2d 439, 444 (Wis. Ct. App. 1997). Further, the resulting emotional distress must be of such substantial quantity or enduring quality that no reasonable person in a civilized society should be expected to endure it. *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 445 (Wis. 1994).

Here, Plaintiff Propson has sufficiently alleged in the Amended Complaint that Defendant KC's conduct was extreme and outrageous. *See supra* and [29] at ¶¶ 13-47; *see also Overhill Farms*, 190 Cal. App. 4th at, 1261 ("The term 'racist' is of course an exceptionally negative, insulting, and highly charged word — it is hard to imagine being called much worse.").

Furthermore, Plaintiff Propson has alleged that Defendant KC intended to inflict emotional distress or acted with knowledge that there was a high probability their conduct would cause such distress[12]. In addition, Plaintiff Propson has sufficiently alleged that Defendant KC's conduct in question did indeed cause severe emotional distress to Plaintiff Propson, manifesting in humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, and mental anguish with physical symptoms.

### B. Plaintiffs Braun and Braun Law have pled sufficient facts to establish a cause of action for IIED under Illinois Law against Defendant KC.

In Illinois, the elements of IIED are similar. The plaintiff must demonstrate: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflicts severe emotional distress or knows that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

Regarding the "extreme and outrageous" standard, Illinois caselaw emphasizes that the conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Additionally, recklessness can suffice for the intent requirement if the actor knows that severe emotional distress is certain or substantially certain to result from his conduct. *Kolegas*, 607 N.E.2d at 211. Further, distress must be so severe that no reasonable person could be expected to endure it. *Schweihs v. Chase Home Fin.*, LLC, 77 N.E.3d 50, 64 (Ill. 2016).

---

[12] In her initial TikTok video, Defendant KC states that the "only reason I'm saying anything about it is because I'm getting confused for [Plaintiff Propson]" acknowledging that her video would likely mobilize her fan base to ensure that she wouldn't be confused for Plaintiff Propson going forward. [29] at ¶ 33.

Here, as alleged in the Amended Complaint, Defendants' conduct—specifically their false statements which incited online hate mobs and threats—was extreme and outrageous. Furthermore, Plaintiff Braun has alleged that Defendants intended to inflict emotional distress or acted with knowledge that there was a high probability their conduct would cause such distress. And Plaintiff Braun has sufficiently alleged that the conduct in question did indeed cause severe emotional distress to Plaintiff Braun, manifesting in humiliation, embarrassment, headaches, depression, anxiety, lack of sleep, and mental anguish with physical symptoms.

Therefore, based on these examples and other facts alleged in the Amended Complaint, Plaintiffs have pled sufficient facts to establish a cause of action for IIED under both Illinois and Wisconsin law.

## IX.     **Venue is Proper for the Northern District of Illinois with Regards to Plaintiff Propson's Claims.**

In addition to the foregoing motions to strike under anti-SLAPP statutes and motions to dismiss under Fed. R. Civ. Proc. 12(b)(6), Defendant KC has also set forth a motion to dismiss for improper venue under Rule 12(b)(3) with regards to the claims asserted by Plaintiff Propson. [39] at 27.

In particular, Defendant KC argues that "venue is improper with respect to Propson's claims against KC because Propson is a resident of Wisconsin, KC is a resident of Georgia, and none of the claims asserted by Propson against KC have any connection to Illinois (*i.e.*, no statements made or directed at Illinois, no injury in Illinois)." *Id.* As such, Defendant KC further argues that Plaintiff Propson should have filed her causes of action in Wisconsin or Georgia instead. *Id.*

Venue is proper if a civil action is brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a

44

judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Given that the events giving rise to Plaintiffs' Braun and Braun Law's claims occurred within this district and that their claims are intertwined with Plaintiff Propson's claims, venue is proper under 28 U.S.C. § 1391(b)(2). The logical relationship between the claims and the presence of common questions of law and fact further support maintaining venue in this district to ensure an efficient and comprehensive resolution of the dispute. Because defendants reside in various districts, including districts of California, Georgia, and Missouri, no venue is proper under 28 U.S.C. § 1391(b)(1). As such, Plaintiff Propson asserts that venue is proper under either 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(b)(3).

### A.     A substantial part of the events or omissions giving rise to the claim occurred in Illinois.

Venue is proper in this case because the claims against the defendants arise from the same case or controversy, tying both plaintiffs together. Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, the defamatory statements made by the Defendants about both Plaintiffs in singular posts constitute a series of related events central to the claims of both Plaintiffs.

In *Morton Grove*, the plaintiff argued that venue was proper because "the second amended complaint alleges the defamatory statements were disseminated in Illinois to Illinois residents and that [the plaintiff] suffered economic and reputational injury in Illinois." *See*

*Morton Grove Pharm v. National Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1043 (N.D. Ill. 2007). Furthermore, this fact was not disputed by the defendant who merely argued that the newsletters containing the allegedly defamatory statements "were primarily intended for Michigan residents, both in content and distribution, and therefore the 'substantial part' of the events giving rise to [plaintiff]'s claims did not occur in Illinois but in Michigan." *Id.* The court in *Morton Grove* did not find the defendants' arguments persuasive and denied the 12(b)(3) motion to dismiss for lack of venue.

Similarly, in this case, Defendant KC's false statements were disseminated across the internet, including across Illinois-to-Illinois residents; and, as such, Plaintiff Propson suffered economic and reputational injury in Illinois. Furthermore, Defendant KC's only counter to this position is that her statements were not "made or directed at Illinois," but as noted above this is not the standard (based on *Morton Grove*, in a defamation suit, it is sufficient to allege that Defendant KC's statements were disseminated in Illinois-to-Illinois residents and that, as a result, Plaintiff Propson suffered economic and reputational injury in Illinois).

Therefore, venue is proper for Plaintiff Propson's claims under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in Illinois.

### B.   Alternatively, Plaintiff Propson may file her claims in this District because the Court has personal jurisdiction over Defendant KC.

Even if Defendant is correct in their claim that venue is improper under 28 U.S.C. § 1391(b)(2), Plaintiff Propson argues that venue must be proper under 28 U.S.C. § 1391(b)(3). Defendant KC argues that Plaintiff Propson should have filed her claims in either Wisconsin or Georgia because those are the districts where Plaintiff Propson and Defendant KC reside, respectively. However, this is not the correct standard for cases with multiple plaintiffs and defendants. As previously mentioned above, venue is not proper in either Wisconsin or Georgia

under 28 U.S.C. § 1391(b)(1) because some defendants reside in California and Missouri.[13] Similarly, if this Court found that venue is improper in this district under 28 U.S.C. § 1391(b)(2), then venue must also be improper in either Wisconsin or Georgia by the same rationale, as it could be argued that Defendants' statements were disseminated in Wisconsin to Wisconsin residents and in Georgia to Georgian residents. Nevertheless, Plaintiff Propson argues that venue is proper under, at least 28 U.S.C. § 1391(b)(3) since this Court has personal jurisdiction over Defendant KC with regards to Plaintiff Propson's claims.

Plaintiffs respectfully note that none of Defendants, including Defendant KC, have moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction in any of the currently pending motions. Instead, they have challenged Plaintiffs' claims on their merits and waived personal jurisdiction defenses. As such, all Defendants, including Defendant KC, are subject to this Court's personal jurisdiction with regards to all claims filed. *See* Fed. R. Civ. Pro. 12(h). Thus, this Court has personal jurisdiction over Defendant KC with regards to the claims made by Plaintiff Propson.

Therefore, if this Court finds that there is no district in which Plaintiff Propson may otherwise bring her causes of action pursuant to 28 U.S.C. § 1391(b)(1) or 28 U.S.C. § 1391(b)(2), Plaintiff Propson may bring her civil action in any judicial district in which Defendant KC is subject to the court's personal jurisdiction, including this one, under 28 U.S.C. § 1391(b)(3).

---

[13] Plaintiffs argue that Plaintiff Propson and her claims against Defendant KC should be joined to this suit under Fed. R. Civ. Pro. 20 as Plaintiff Propson's causes of action arose out of the same transaction, occurrence, or series of transactions or occurrences as Plaintiffs Braun and Braun Law's causes of action and the questions of law and fact are common to all plaintiffs in this case.

## **CONCLUSION**

Therefore, for the foregoing reasons, Plaintiffs respectfully request this Court to deny

Defendants' motions to strike and dismiss with prejudice and award such other and further relief

as this Court deems just and equitable.

Dated: May 22, 2024                                    Respectfully Submitted,

*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
ben@lockyerlaw.com
(773) 340-0011

**Attorney for Jeanette Braun, Braun IP Law LLC, & Lauren Propson**

48