**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | |
| REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS LILY MARSTON'S AND JESSICA VASQUEZ'S REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE AMENDED COMPLAINT PURSUANT TO O.C.G.A. § 9-11-11.1 AND CAL. CODE CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

## I.    INTRODUCTION

Plaintiff Jeanette Braun ("Braun") has sued Defendants Lily Marston ("Marston") and Jessica Vasquez ("Vasquez") (collectively, "Defendants") for statements they allegedly made about her on their online podcast, which the Amended Complaint concedes "promotes online controversies, rumors and celebrity gossip."  The allegations of the Amended Complaint and the podcast episode during which the statements were made reveals that Defendants' statements that Braun is "unethical" and files "false copyright claims" comprise Defendants' constitutionally protected, subjective opinions made in connection with an online controversy involving Braun's litigation tactics against social media content creators.  As explained in Defendants' Motion to Strike, there is no question that Defendants' statements are connected with an issue of "public concern" and, therefore, satisfy the first prong of the applicable Georgia and California anti-SLAPP statutes as a "protected activity." Indeed, Braun's Opposition does not refute any of the arguments or authorities cited in Defendants' Motion to Strike.

Instead, Braun's Opposition relies on the singular, conclusory argument that Defendants' Motion relies on "disputed facts and information outside the Complaint" to "establish a matter of public concern" under the first prong of the anti-SLAPP statutes. ***Yet, the Opposition does not identify any facts or information "outside the Complaint" relied on by Defendants, and there are none***. In reality, Defendants' Motion relies on two things: the plain allegations of the Amended Complaint and the podcast episode in which the alleged defamatory statements were made. Braun's "disputed facts" identified in her Opposition are nothing more than her *disagreement* with the truth of the statements made by Defendants in their podcast. But, as explained below, whether Defendants' statements are true have no bearing on whether they were made "in connection with an issue of public concern";

certainly every defamation plaintiff disputes the veracity of the defendants' statements. That cannot and does not create a "factual dispute" sufficient to deny an anti-SLAPP motion.

Braun's Opposition also fails to demonstrate the legal sufficiency of her causes of action, which is her burden under the second prong of the applicable anti-SLAPP statutes. As explained in Defendants' Motion, their statements in the podcast that Braun is "unethical" and files "false copyright claims" express their subjective belief – not assertions of fact – and are simply too general to be verified. If the statement cannot be verified, it cannot be actionable under Illinois defamation law. Indeed, Braun's Opposition does not distinguish any cases cited in Defendants' Motion demonstrating that these statements are not actionable, nor does the Opposition cite any contrary authority. Instead, Braun makes unsupported, conclusory assertions that Defendants' statements are not opinions because they can be verified – without saying how they can be verified. Similarly, Braun's Opposition ignores the cases Defendants cited in their Motion holding that Marston's statement on Twitter that Braun was "actively committing perjury" – *without any factual context* – cannot be verified and is a nonactionable opinion. Braun repeats this pattern for her remaining causes of action, *i.e.,* ignoring the cases cited in Defendants' Motion and making unsupported assertions that her claims are legally sufficient simply because she says so. Conclusory arguments devoid of legal support are inadequate to satisfy Braun's burden of demonstrating the legal sufficiency of her claims; thus, Defendants respectfully request that this Court grant its anti-SLAPP motion and grant Defendants' their attorneys' fees, or alternatively, grant their motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## II. THE OPPOSITION FAILS TO DEMONSTRATE THAT BRAUN'S CLAIMS SURVIVE THE GEORGIA OR CALIFORNIA ANTI-SLAPP STATUTES.

### A. Braun Fails to Demonstrate that Defendants' Statements Were Not a "Protected Activity" Under the California and Georgia Anti-SLAPP Statutes.

Braun's Opposition concedes that California and Georgia law would apply to an anti-SLAPP determination given that Marston and Vasquez are citizens of California and Georgia, respectively, and her Opposition concedes that this Court can make an anti-SLAPP determination based solely on the allegations of the Amended Complaint, applying a Fed. R. Civ. P. 12(b)(6) standard. (Opposition ("Opp."), pp. 3-8). Braun also does not dispute the anti-SLAPP standard laid out in Defendants' Motion to Strike. Namely, the Court must grant a Motion to Strike under Georgia and California anti-SLAPP law if: (1) the speech is considered a "protected activity" under the anti-SLAPP statute, and (2) the plaintiff cannot establish that there is a probability it will prevail on its claim. (Motion, pp. 5-6) (citing *ACLU, Inc. v. Zeh,* 312 Ga. 647, 650 (2021); *Clarity Co. Consulting, LLC v. Gabriel,* 77 Cal.App.5th 454, 461-62 (2022)). As explained in Defendants' Motion, speech is a "protected activity" if it is made in a "public forum" and "in furtherance of the person's or entity's right of petition or free speech under" the Constitution . . . ***in connection with an issue of public interest or concern***" or a "***in connection with a public issue***." *See* OCGA § 9-11-11.1(c)(3)(4); Code Civ. Proc. § 425(e) (emphasis added).

Here, as explained in Defendants' Motion, Braun claims Defendants defamed her by stating in Episode 97 of their podcast "Do We Know Them?" that Braun's "practices are unethical" and she has filed "false copyright strikes" against content creators.[1] (Am. Compl., ¶¶ 146-149).[2] Additionally,

---

[1] While the Opposition argues that Braun's defamation claim is based on the allegation that Defendants stated that Braun filed "false copyright claims," Braun's cause of action for defamation in the Amended Complaint is based *only* on the alleged "unethical" and "actively committing perjury" statements. (Am. Comp., ¶ 204) ("[Defendants] are business partners that defamed [Braun] by publicly stating that Ms. Braun is unethical and commits perjury and using their platform to smear [Braun's] character and reputation"). Braun should not be permitted to amend her complaint through an opposition to a motion to dismiss. *See Guajardo v. Skechers USA, Inc.,* 503 F.Supp.3d 746, 756–757 (C.D. Ill. 2020) ("a plaintiff may not amend her complaint in response to a motion to dismiss") (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011)).

[2] As explained in Defendants' Motion, while the Amended Complaint does not explicitly refer to Episode 97 of Defendants' podcast "Where are They NOW?", it is indisputable that this is the episode in which the alleged defamatory statements were made, as Braun sets forth screen shots from this episode in the original Complaint [Dkt. 1 (Orig. Compl.), at ¶¶ 89, 91], and a review of Episode 97 reveals that the alleged defamatory statements were made during it. (*See* https://www.youtube.com/watch?v=FWDqzt59xI4).

3

the Amended Complaint alleges Marston defamed Braun by accusing Braun on Twitter of "actively committing perjury." (*Id.,* ¶ 149). Relying *only on* the allegations of the Amended Complaint, Defendants' Motion establishes that their statements were made in connection with a "public issue" or an issue of "public interest or concern," because they were made in an open place or forum (*i.e.*, in a podcast disseminated on the Internet to more than 110,000 subscribers and on Twitter) and concerning a matter of public interest (*i.e.*, Defendants alerting their viewers about their impressions of Braun's litigation tactics against other social media content creators). (Motion, pp. 7-9).

In her Opposition, Braun *does not dispute* that Defendants' statements were made in an "open place or forum", and Braun *does not dispute* that statements regarding her litigation practices are connected to a "public issue" or a matter of "public interest or concern". (Opp., pp. 11-23). Thus, Braun has conceded these points. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (where a party fails to address a non-frivolous or dispositive argument, it is appropriate to infer acquiescence, and "acquiescence operates as a waiver"). Indeed, the Opposition makes no effort to refute or distinguish the cases cited in Defendants' Motion which stand for the proposition that online statements regarding a plaintiff's business practices are made "in connection with" a "public interest" for purposes of the Georgia and California anti-SLAPP statutes.[3] Braun's Opposition also does not address the argument in Defendants' Motion demonstrating that Defendants' statements are a "protected activity" made in connection with an "official proceeding authorized by law," *i.e.*, the filing of a copyright strike under the DMCA. (Motion, p. 9, n. 5).

---

[3] (*See* Motion, p. 9) (citing *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,* 946 F.Supp.2d 957, 969 (N.D. Cal. 2013) (finding that online blog post "warning . . . consumers not to do business with plaintiffs because of their allegedly faulty business practices" concerns an issue of public interest, and "it makes no difference , for purposes of the public interest requirement whether the warning was not sincere, accurate, or truthful"); *Chaker v. Mateo,* 209 Cal.App.4th 1138, 1146 (2012) (concluding that online statements regarding plaintiff's character and business practices were "of public interest" because they "were intended to serve as a warning to consumers about his trustworthiness"); *ACLU,* 312 Ga. at 650 (statement regarding lawyer's professional conduct on blog post was protected by Georgia anti-SLAPP statute)).

Instead, the Opposition argues *only* that Defendants rely on "disputed facts and information outside the Complaint" to "establish a matter of public concern" and those purported "disputed facts" prevent the Court from granting a motion to strike at this stage of the litigation. (Opp., p. 11). This assertion is nonsensical, as Defendants' Motion to Strike relies *only* on the allegations of the Amended Complaint and statements made in the podcast on which Braun's claims are based. While the Opposition vehemently argues that this Court cannot consider Episode 97 itself (in which Defendants made their alleged defamatory statements) because it is outside the "four corners" of the Amended Complaint (Opp., pp. 11-12), Braun ignores well-settled Seventh Circuit case law holding that "[i]n a defamation case, where the published material is central to a plaintiff's allegations, courts ***routinely*** look outside the four corners of the complaint to view the entire publication."[4] *Financial Fiduc., LLC v. Gannett Co., Inc*., 46 F.4th 654, 664 (7th Cir. 2022) (emphasis added); *see also Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1131 (7th Cir. 2022)(same); *Osundairo v. Geragos,* 447 F.Supp.3d 727, 738 (N.D. Ill. 2020) ("where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss").

Braun's Opposition does not point to any extrinsic evidence cited or relied on by Defendants. Instead, Braun argues that because Defendants' Motion purportedly relies on "assumed facts" with which Braun disagrees, these are somehow disputed facts that preclude granting an anti-SLAPP

---

[4] It should also be noted that nowhere in the Opposition does Braun dispute the authenticity of the video of Episode 97 of Defendants' podcast in which the alleged defamatory statements were made, a link to which Defendants provided to the Court in their Motion. (*See* Motion, p. 3). Braun does not argue that the link is not the actual episode on which her claims are based or otherwise not authentic; rather, she argues only that the "video references documents that have not been tendered to the Plaintiffs and involves witness testimony that is not before this Court", and Defendants' request that the Court view Episode is somehow a "request for this Court to accept their characterizations of hearsay statements as true . . . ." (Opp., p. 12). Defendants are not asking this Court to accept any characterizations or statements in the video as "true," and Defendants are in no way relying on "documents" or "witness testimony" to establish that their statements are in connection with a "public issue" or "public interest or concern" under anti-SLAPP law. Rather, Defendants are simply asking the Court to view the statements in the context in which they were made, i.e., Episode 97 in its entirety, which the Seventh Circuit has held is appropriate. *Financial Fiduc,,* 46 F.4th at 664; *Freydin*, 24 F.4th at 1131 ("courts must also analyze the entirety of [the publication in which the statement] appeared in to determine whether the [speaker] expressed a factual assertion or opinion"); *Osundairo,* 447 F.Supp.3d at 738.

Motion or Motion to Dismiss under Rule 12(b)(6). Specifically, Braun targets Defendants' argument that their statements regarding Braun's practices are connected to an issue of "public concern affecting a large group of individuals," *for example,* "social media content creators who might be targeted by Braun or who might be considering using Braun as a lawyer." (Opp., p. 11). Braun argues that there is a "factual dispute" precluding a motion to strike because "whether [Defendants] actually received messages and DM's from other content creators is a fact not within the complaint and involves hearsay statements and additional documents that are not presently before the Court." (*Id.*) The Opposition also argues that Braun disputes the veracity of statements Defendants made in Episode 97 of their podcast regarding an email they received from a content creator who claims to have been the subject of a copyright strike by Braun (although, those statements are *not* the subject of Braun's defamation action). (*Id.,* p. 12).

The question of whether Defendants *actually* received messages from other content creators about Braun's litigation tactics has ***nothing*** to do with the question at issue here: whether Defendants' alleged defamatory statements regarding Braun's practices are connected to a public issue under the Georgia and California anti-SLAPP statutes. Defendants do not have to prove that the "public" reached out to them to tell them that this is a matter in which they are interested in to satisfy the anti-SLAPP "public issue" requirement, and Braun has not cited any case law supporting any such argument. Rather, the inquiry to be made at this stage is a simple one: were Defendants' statements made "in connection with a public issue or an issue of public concern?" *See* OCGA 9-11-11.1(c)(3)(4); Code Civ. Pric. 425.16(e); *see also* Amin, 2022 WL 16964770, at *7 (holding that statements are made "in connection" with an issue of public concern if they "relate to" the public issue and "directly discuss[] and investigat[e]" the issue). As explained in Defendants' Motion, ***the answer is yes.*** (*See* Motion, p. 9); *see also Prehired, LLC v. Provins*, 2023 WL 2717509, at *7 (E.D.

Cal., Mar. 30, 2023) ("[W]arnings to the public regarding plaintiff's potentially unethical alleged business practices *plainly implicate the public's interest*") (emphasis added). The fact that Braun may disagree with Defendants' statements is irrelevant and does not create a "factual dispute" precluding a motion to strike. *Id.* at *6 ("California law does not require a statement to be serious or truthful in order to concern an issue of public interest"). Furthermore, Plaintiffs' allegations that Defendants' statements have been "spread and repost[ed]" (Am. Compl., ¶ 157) and that a "multitude of content creators have republished" (*id.*, ¶ 159) Defendants' statements, and that Defendants' statements have been the subject of "online messages, comments, and pages" (*id.*, at ¶ 160) further demonstrates that Defendants' statements are an issue of public interest. *Prehired, LLC*, 2023 WL 2717509 at *7 (holding that allegation that "defendant's statements have been viewed more than 750,000 times on LinkedIn" "support a finding that these statements pertain to an issue of public interest")[5] (citing *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695 (2012) ("The fact that [defendant's] posts drew numerous comments, including comments vehemently disagreeing with [defendant], suggests that the broad topic [of the statement], and the narrow topic of [plaintiff] and its personnel and activities, are matters of public discourse and are of considerable public interest.")[6]

Thus, while Braun's Opposition argues that Defendants' "arguments rely on disputed facts and third-party witness testimony" (Opp., p. 12), that simply is not the case. The plain allegations of the Amended Complaint alone (even without any reference to Episode 97 of Defendants' podcast for

---

[5] As explained in Defendants' Motion, the podcast episode in which Defendants made the alleged defamatory statements had been viewed at least 190,000 times at the time the Motion was filed. (Motion, p. 7).

[6] As explained in Defendants' Motion, the Georgia Supreme Court has held that the California anti-SLAPP statute is "very similar in text to the text of Georgia's revised anti-SLAPP statute, and because the California Supreme Court "has developed a considerable body of case law interpreting the text of [the California anti-SLAPP statute]," Georgia courts "may look to California case law" "for guidance" when interpreting the Georgia anti-SLAPP statute. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 258 (2019).

context) make clear that under cited Georgia and California law, Defendants' statements are connected to a public issue and the first prong of the anti-SLAPP analysis is satisfied.

**B.     Braun Fails to Demonstrate That Her Claims Are Legally Sufficient.**

     **1.  Braun Cannot State a Claim for Defamation.**

As explained in their Motion, because Defendants have satisfied the first prong of the Georgia and California anti-SLAPP statutes, the burden shifts to Braun to demonstrate there is a probability she will prevail on her claims. (Motion, p. 10). At this stage of the litigation, the Court looks to whether the causes of action are legally sufficient under federal pleading requirements. (*Id.*) Defendants' Motion demonstrated that Braun's defamation claim does *not* satisfy this standard because Defendants' statements: (1) are nonactionable, constitutionally protected *opinions,* and (2) are subject to a qualified privilege under Illinois law.  The Opposition does not distinguish, discuss or even mention *any* of the cases cited by Defendants. Instead, Braun makes conclusory assertions regarding the viability of her defamation claim – unsupported by any legal authority – that fall far short of overcoming a motion to strike or dismiss.

As to Braun's allegation that Defendants' reference to her as "unethical" constitutes defamation, Defendants' Motion explains that when examined in the context of Episode 97[7], it is apparent that Defendants were expressing their subjective belief of Braun's actions. (Motion, pp. 11-12) (citing *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1212 (N.D. Ill. 2013)) ("a plainly subjective remark is not actionable). The Opposition does not explain how or why Defendants' statement does not constitute their subjective opinion. Instead, the Opposition simply states – with no support whatsoever – that the "unethical" statement is actionable because it is "verifiable," *i.e.*, "it can be

---

[7] *Freydin*, 24 F.4th at 1131 ("courts must also analyze the entirety of [the publication in which the statement] appeared in to determine whether the [speaker] expressed a factual assertion or opinion").

investigated whether Plaintiff's Braun's actions adhered to legal and ethical standards" and because Braun "is an attorney in good standing" with "no disciplinary actions made against her." (Opp., p. 29). Whether Braun is an attorney in good standing or has not been subject to disciplinary action does not "verify" that her actions are *not* unethical. Certainly, there are many lawyers and other professionals who are considered "unethical," but have never been disciplined for their actions. And what conduct should one examine to determine whether Braun is or is not "unethical," and by what standards should Braun's conduct be measured to "verify" whether she has "adhered" to those standards? Certainly, what is "ethical" to one person may not be to another. That is precisely why the Seventh Circuit and this district have explicitly held that "[w]hether a person's actions are unethical" "is *not objectively verifiable*." *Tamburo,* 974 F.Supp.2d at 1213 (emphasis added); *Freydin*, 24 F.4th at 1132 (rejecting argument that term "unethical" "'carries a precise and understandable meaning which would subject the attorney to the discipline' of the Illinois Attorney Registration and Disciplinary Commission" and holding that statement was a "non-actionable expression of an opinion"); *see also Manjarres v. Nalco Co.,* 2010 WL 918072, at *5 (N.D. Ill., Mar. 9, 2010) ("Without citing to any authority, Plaintiff argues that the professional codes and ethical obligations of attorneys render Defendants' alleged statement capable of objective verification. Even if this were true, and professional codes generally provided a yardstick with which to measure behavior, Plaintiff still has not provided the necessary factual basis to allow for objective verification of the alleged statement here"); *Gardner v. Senior Living Systems, Inc*., 314 Ill.App.3d 114, 120 (Ill. App. Ct. 2000) ("[m]erely calling plaintiff 'unethical' here cannot not be reasonably interpreted as stating actual verifiable facts and therefore falls under a constitutionally protected opinion"). Here, the term "unethical" in Defendants' statement – "as unhinged as [Braun] is, as unethical as [Braun] is, she is finding some success in her practices" (Am. Compl., ¶ 47) – is no more "verifiable" or

grounded in facts than the term "unhinged." As a matter of law, these terms are nothing more than subjective opinions and rhetoric name-calling, neither of which are actionable as defamation. *Haberstroh v. Crain Publications, Inc.,* 189 Ill.App.3d 267, 271 (Ill. App. Ct. 1989) ("Numerous Illinois cases have found words that are mere name-calling not to be actionable").

As for Marston's statement on Twitter ("do we think demps knows that her embarrassing excuse of a lawyer is using her name while actively committing perjury?"), the Opposition argues that the statement is "verifiable" because it can be determined whether [Braun] has ever been convicted of committing perjury." (Opp., p. 29). As a preliminary matter, whether someone has "been convicted" for something is not the same as whether they have "committed" it, and verifying whether someone has or has not been convicted of a crime has no bearing on whether they actually committed it. More importantly, however, this argument flatly ignores the legal authority in Defendants' Motion, holding that a statement cannot be a verifiable statement of fact *without factual context.* (Motion, p. 12) (citing *e.g., Schivarelli v. CBS, Inc.,* 333 Ill.App.3d 755, 762 (Ill. Ct. App. 2002) (statement that plaintiff was "cheating the city", *in the absence of any factual context,* "was a nonactionable opinion, as it was too broad, conclusory, and subjective to be objectively verifiable"); *Piersall*, 230 Ill.App.3d at 511 (statement that "[plaintiff] is a liar" was nonactionable opinion because it lacked a factual basis surrounding the statement). Here, Marston's Tweet provides absolutely no factual context required to verify this statement. It does not explain how, when or under what circumstances she was "actively committing perjury." (Am. Compl., ¶ 149).

Finally, as to the Opposition's arguments regarding Defendants' statement that Braun filed "false copyright claims," the Amended Complaint does not include this alleged statement in Braun's defamation claim. (*Id.,* ¶ 204). As explained above, an attempt to amend her defamation claim in opposition to Defendants' Motion is improper. *Guajardo,* 503 F.Supp.3d at 756–757 ("a plaintiff may

not amend her complaint in response to a motion to dismiss"). Regardless, the Opposition's contention that the term "false copyright claim" is actionable because it can be verified is without merit. Specifically, the Opposition argues that the term "false copyright strike" can be verified because it can be "determined whether the copyright strikes filed by [Braun]" "were frivolous." (Opp., p. 12). But how can it be verified whether Braun's copyright strikes were "frivolous"? That term could vary from person to person and is simply too vague to be actionable. *Freydin,* 24 F.4th at 1130 (if there are numerous interpretations of a term or phrase, it cannot be actionable). Moreover, the Amended Complaint and Episode 97 make clear that Defendants are expressing their opinions about the merits of the copyright strikes filed by Braun, and "*[d]eprecatory statements regarding the merits of ligation are nothing more than the predictable opinion of one side to the lawsuit and cannot be the basis for a defamation claim.*" *Bauer v. Hill*, 2022 WL 18397513, at *6 (C.D. Cal. Nov. 23, 2022) (citing *GetFugu, Inc. v. Patton Boggs LLP,* 220 Cal.App.4th 141, 156 (2013) (statement that certain claims were "frivolous" were unactionable statements of opinion that are predictable in the context of litigation); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 2013 WL 3460707, at *4 (N.D. Cal. July 9, 2013) (holding that statements regarding the merits of a case "expressed Ozimals' opinions and purported to apply Ozimals' understanding of copyright law as applied to the facts"); *Alzheimer's Found. of Amer., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc*., 796 F.Supp.2d 458, 471 (S.D.N.Y. 2011) (holding that "statement condemning an opponent's legal claims as 'baseless' is mere opinion and is not defamatory" and dismissing claim).[8]

---

[8] Defendants were unable to locate any Illinois cases addressing the issue of whether statements as to the merits of a legal dispute or lawsuit are actionable as defamation. However, given that California, New York and Illinois consider similar factors in determining whether a statement is a nonactionable opinion, Defendants respectfully requests that the Court consider these holdings in making its determination on this issue. *See e.g., Freydin,* 24 F.4th at 1129 (discussing factors court considers in determining whether statement is fact or opinion); *compare with Brian v. Richardson,* 87 N.Y.2d 46, 51 (1995); *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996,* 302 F.3d 998, 1005–1006 (9th Cir. 2002).

Finally, the Opposition wholly ignores the social context in which these statements were made, *i.e.*, an online podcast "that promotes online controversies, rumors and celebrity gossip" and in Marston's personal Twitter account. (Am. Compl., ¶¶ 128, 149). As explained in Defendants' Motion, the Court must consider this context, and numerous courts have held that statements made in this realm give a "strong signal" to a viewer that the statement is opinion. (Motion, p. 12 and n. 8) (citing *Ganske v. Mensch*, 480 F.Supp.3d 542, 533 (S.D.N.Y. 2020) (holding social media platforms are "informal and freewheeling" and convey a "strong signal to a reasonable reader" that a statement is opinion); *Freydin*, 24 F.4th at 1130 (holding that readers of online reviews would be "skeptical about what they read, both positive and negative"). Indeed, in *Brennan v. Kadner*, 351 Ill.App.3d 963, 958-59 (Ill. App. Ct. 2004), the alleged defamatory statement was made in the context of a regular column by the defendant who, "regularly expressed his personal opinions on a wide range of public and social issues" and his statements concerned plaintiff's involvement in a public controversy. *Id.* The court held that "[i]n light of the nature of the controversy and the overall tenor of the column, we cannot conclude that [defendant's] statement was a factual assertion." *Id.* (holding that given the context in which the statements were made, "a reasonable reader would not have taken the statement as a literal assertion that plaintiff had actually committed mail fraud"). The same can be said here. Defendants' statements were made in the context of their personal opinions regarding "online controversies, rumors and celebrity gossip"; thus, a reasonable viewer would not perceive their name-calling and rhetoric as "assertions of fact."

Finally, the Opposition does not dispute that Defendants' statements are subject to a "public interest" qualified privilege[9], but instead claims that Braun has "overcome any claim of qualified privilege" because Defendants statements were made "knowingly" and with a "reckless disregard for

---

[9] Thus, Plaintiffs concede that the statements fall within the scope of this qualified privilege. *Cincinnati Ins.*, 260 F.3d at 747.

the truth" and "intent to harm" Braun's reputation. (Opp., p. 29). While Defendants agree that a plaintiff *may* overcome the qualified privilege at the pleading stage by alleging the statement was made with "actual malice," Braun simply has *not* satisfied this requirement. (*See* Motion, pp. 13). To overcome the qualified privilege on the grounds of "actual malice" by the defendant, "courts in this district [] have looked for something more than conclusory statements in order to infer that the defendant knew the statements were untrue or recklessly disregarded the truth or falsity of the statements." *Id.* (citing *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015)). Here, the Amended Complaint relies on nothing more than conclusory assertions regarding Defendants' purported intent (Am. Compl., ¶¶ 139, 212), and the Opposition simply echoes those inadequate allegations. (Opp., p. 29) (arguing that Braun "alleges sufficient facts to show that [Defendants] intended to harm [Braun]", without actually identifying what those "facts" are). Thus, Braun's defamation claim against Defendants is not legally sufficient and fails to satisfy the second prong of the anti-SLAPP statutes.

## 2. Braun Cannot State Claims for False Light and Trade Libel against Defendants.

As explained in Defendants' Motion, because Braun's defamation claim is insufficient, her false light and trade libel claims based on the identical allegations must fail as well. (Motion, pp. 13-14) (citing *Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008)). The Opposition does not explain how these claims can survive if the defamation claims fail (which they do); thus, dismissal of the defamation claims warrants dismissal of these claims based on identical inadequate allegations.

## 3. Braun Cannot State a Claim for Tortious Interference against Defendants.

As a preliminary matter, a failed defamation claim cannot serve as a basis for a claim of tortious interference with existing or potential business relationships. *Makhsous v. Mastroianni*, 2020

WL 1530740, at *4 (N.D. Ill. Mar. 31, 2020) (citing *Jacobson v. CBS Broad., Inc*., 19 N.E.3d 1165, 1182 (Ill. App. Ct. 2014) (holding that a dismissed defamation claim cannot serve as a basis for a claim of intentional interference with prospective economic advantage)). Here, as explained in Defendants' Motion, Braun's interference claim against Defendants is based entirely on their constitutionally protected opinions. (Motion, p. 14). The Opposition fails to address this argument or distinguish the cases Defendants cited. Instead, the Opposition simply reiterates the vague allegations of the Amended Complaint regarding the unidentified "members of the public" who left "negative reviews" about Braun and the termination of "several client engagements" that Braun experienced purportedly as a result of Defendants' statements. (Opp., p. 41). Again, however, vague references to "clients" is insufficient to state a claim for tortious or intentional interference. (Motion, p. 14) (citing *Hackman v. Dickerson Realtors, Inc.,* 557 F.Supp.2d 938, 948 (N.D. Ill. 2008)); *see also Kapotas v. Better Government Ass'n,* 30 N.E.3d 572, 596 (Ill. App. Ct. 2015) (holding that "[t]he hope of receiving a job offer is not a sufficient expectancy . . . The plaintiff must specifically identify the person with whom the plaintiff expected to contract and allege specific acts of interference"). Furthermore, Braun fails to allege "an action by the defendant directed *towards* [a] third party" with whom the plaintiff expected to contract, which is a factual allegation required to state a claim for intentional interference with prospective economic advantage. *See LoggerHead Tools, LLC v. Sears Holding Corp.,* 2013 WL 1858590, at *6 (N.D. Ill. May 1, 2013). Finally, the Amended Complaint does not contain a factual allegation that the statements by Defendants *caused* the unidentified clients not to employ Braun or to terminate their existing engagement. Braun's unsupported assumption that these individuals did not employ Braun or terminated their relationship with her because of Defendants' statements is wholly insufficient. *Hackman,* 557 F.Supp.2d at 949 (dismissing allegations that were "too attenuated" to plead causation element of an intentional inference claim).

4. **Braun Cannot State a Claim for Emotional Distress Against Defendants.**

As explained in Defendants' Motion, Braun's emotional distress claims are entirely derivative of their failed defamation claims. The law is clear that if Braun cannot state a claim for defamation, she cannot state a claim for emotional distress based on the purported defamation. (Motion, p. 15). The Opposition fails to address or distinguish the authorities cited by Defendants. (Opp., pp. 43-44). Thus, Braun's emotional distress claim cannot survive.

## III. ALTERNATIVELY, BRAUN'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6).

As explained in Defendants' Motion and above, the second prong of the Georgia and California anti-SLAPP statutes employ the same standard as Fed. R. Civ. P. 12(b)(6). Because Braun cannot satisfy the second prong of the anti-SLAPP statute, she cannot state a claim under Rule 12(b)(6). Thus, if the Court finds that Defendants' statements are not a "protected activity" under the anti-SLAPP statutes, Defendants respectfully request that this Court dismiss each of Braun's claims under Rule 12(b)(6).

Dated: June 12, 2024                Respectfully Submitted,

*s/ Brandon J. Witkow*

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, CA 91364
(818) 296-9508
bw@witkowlaw.com

*s/ Amy M. Doig*

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

      Benjamin C.R. Lockyer
      Lockyer Law LLC
      100 N. Riverside Plaza, Suite 2400
      Chicago, Illinois 60606
      ben@lockyerlaw.com

      ***Attorney for Plaintiffs***

Dated:  June 12, 2024                       *s/ Brandon J. Witkow*
                                           Brandon J. Witkow