**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| v. | ) ) | |
| | ) | |
| REBEKAH M. DAY NEE BOX, KC THE OWNER & OPERATOR OF THE ONLINE SOCIAL MEDIA ACCOUNT @CAFFINATEDKITTI, LILY MARSTON, & JESSICA VAZQUEZ | ) ) ) ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT REBEKAH DAY'S REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

## I. INTRODUCTION

At its core, this action is the result of Defendant Rebekah Day ("Day") calling Plaintiff Jeanette Braun ("Braun") names on social media – names that Braun does not like and with which she disagrees. But as explained in Day's Motion to Dismiss (the "Motion") and below, mere name-calling, no matter how unflattering, simply cannot constitute defamation under Illinois law, particularly when the names are so "ambiguous and indefinite" as the names at issue here. Specifically, the Amended Complaint alleges that Day has publicly called Braun an "unethical," "rogue" attorney who filed "false copyright strikes" in videos Day has posted to the social media platform Tik Tok from her personal account. Braun may not agree with Day's characterization of her on social media, and she may not like it, but it is Day's First Amendment right to publicly express her opinions about Braun, even if Braun finds them unflattering and offensive. As explained in Day's Motion, it is well-settled that subjective opinions, particularly when couched in terms of loose, figurative language, and particularly when made in such an informal and "free-wheeling" setting as social media, are constitutionally protected and not actionable. Indeed, Day has cited numerous cases in which courts have held that names similar or identical to those at issue here constitute nonactionable opinions incapable of verification.

The meritless nature of Braun's claims (all of which are based on the same nonactionable statements of opinion by Day) is highlighted by the conclusory and unsupported arguments asserted in Braun's Opposition to Day's Motion. Braun has not addressed or distinguished any of the cases Day has cited in her Motion, instead simply relying on the same inadequate statements alleged in the Amended Complaint. However, federal law is clear that "labels and conclusions" or "naked assertions devoid of further factual enhancement" are simply insufficient to defeat a Motion to

1

Dismiss.[1] Accordingly, Day respectfully requests that this Court grant her Motion under Fed. R. Civ. P. 12(b)(6).

## II. THE OPPOSITION FAILS TO DEMONSTRATE THAT BRAUN HAS ALLEGED FACTS SUFFICIENT TO STATE ANY CAUSE OF ACTION AGAINST DAY.

### A. Braun Has Not Stated a Claim for Defamation Against Day.

As explained in her Motion, Federal pleading standards require that a plaintiff allege "enough facts to state a claim to relief that is plausible on its face," and a "formulaic recitation of the elements of a cause of action" is insufficient to satisfy this requirement. (Motion, p. 4) (citing *Parish v. City of Elkhart,* 614 F.3d 677, 679 (7th Cir. 2010); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Day's Motion to Dismiss demonstrates that Braun's defamation claim does *not* satisfy this standard because Day's statements: (1) are nonactionable, constitutionally protected *opinions,* and (2) are subject to a qualified privilege under Illinois law. Braun's Opposition does not distinguish, discuss or even mention *any* of the cases cited by Day. Instead, Braun makes conclusory assertions regarding the viability of her defamation claim – unsupported by any legal authority – that fall far short of overcoming a motion to dismiss.

*First*, as to Day's alleged defamatory statement that Braun files "false copyright strikes," Day's Motion explains that this statement is Day's opinion regarding the substantive merit of Digital Millennium Copyright Act (DMCA) strikes filed by Braun against social media content creators, and the term "false" cannot be verified because it has no "precise and readily understood meaning." (Motion, pp. 6-7) (citing *McGurren v. Hubbard Radio Chicago, LLC,* 2022 WL 602467, at *3 (N.D. Ill. Mar. 1, 2022) (statement of disagreement with facts underlying EEOC claim was a "classic statement of opinion"); *Hopewell v. Vitullo,* 299 Ill.App.3d 513, 519-20 (1998) (holding that term "incompetent" is nonactionable opinion because there are "numerous reasons why one might

---

[1] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

conclude that another is incompetent; one person's idea of when one reaches that threshold of incompetence will vary from the next person's); *Green v. Rogers,* 235 Ill.2f 478, 496-498 (2009) ("misconduct" was too general and imprecise to constitute actionable defamation"). Braun's Opposition does not address or distinguish any of these cases. Instead, Braun argues that the phrase "false copyright strikes" is verifiable because "it can be determined whether the copyright strikes filed by Plaintiff were frivolous." (Opp., p. 32).

But how does Braun know that Day meant "frivolous" when she said false, and if so, how can it be verified whether Braun's copyright strikes were "frivolous"? That term could vary from person to person and is simply too vague to be actionable. *See Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1130 (7th Cir. 2022) (if there are numerous interpretations of a term or phrase, it cannot be actionable). Moreover, individuals speak out all the time about the merits of pending litigation, to hold an individual liable for defamation anytime he or she publicly disagreed with the merits of a case would yield absurd results. "Deprecatory statements regarding the merits of litigation are nothing more than the predictable opinion of one side to the lawsuit and cannot be the basis for a defamation claim." *Bauer v. Hill*, 2022 WL 18397513, at *6 (C.D. Cal. Nov. 23, 2022) (citing *GetFugu, Inc. v. Patton Boggs LLP,* 220 Cal.App.4th 141, 156 (2013) (statement that certain claims were "frivolous" were unactionable statements of opinion that are predictable in the context of litigation); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 2013 WL 3460707, at *4 (N.D. Cal. July 9, 2013) (holding that statements regarding the merits of a case "expressed Ozimals' opinions and purported to apply Ozimals' understanding of copyright law as applied to the facts"); *Alzheimer's Found. of Amer., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc*., 796

F.Supp.2d 458, 471 (S.D.N.Y. 2011) (holding that "statement condemning an opponent's legal claims as 'baseless' is mere opinion and is not defamatory").[2]

*Second*, as to Braun's allegation that Day's reference to her as "unethical" constitutes defamation, Day's Motion explains that Day was expressing her constitutionally-protected, ***subjective opinion*** of Braun's litigation tactics, *i.e.*, the Amended Complaint alleges that Braun's clients have "weaponized [Braun's] aggressive, threatening, and unethical tactics to scare creators off the app." (Motion, p. 3) (citing Am. Compl., ¶ 105). As demonstrated in Day's Motion, this allegation is *not* actionable as defamation because: (1) subjective opinions are not actionable; and (2) the term "unethical" is not verifiable. (Motion, pp. 7-8) (citing *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1213 (N.D Ill. 2013) ("[w]hether a person's actions are ethical or deceptive is not objectively verifiable"); *Freydin,* 24 F.4th at 1131 (generally calling someone a "chauvinist" or a "racist" is nonactionable statement of opinion); *Black v. Wrigley,* 2015 WL 8186996, at *8 (N.D. Ill. Dec. 8, 2017) (statement that lawyer acted unethically was nonactionable expression of opinion)). Braun's Opposition does not address or distinguish any of these cases. Instead, Braun argues that the statement that she is "unethical" is a verifiable fact actionable as defamation because "one could check with the [Illinois Attorney Registration & Disciplinary Committee ("ARDC")] to learn (1) whether Plaintiff Braun had ever been disciplined for ethical violations and (2) how the ARDC handles ethics complaints of attorneys barred in the State of Illinois." (Opp., p. 32).

---

[2] Day was unable to locate any Illinois cases addressing the issue of whether statements as to the merits of a legal dispute or lawsuit are actionable as defamation. However, given that California, New York and Illinois consider similar factors in determining whether a statement is a nonactionable opinion, Day respectfully requests that the Court consider these holdings in making its determination on this issue. *See e.g., Freydin,* 24 F.4th at 1129 (discussing factors court considers in determining whether statement is fact or opinion); *compare with Brian v. Richardson,* 87 N.Y.2d 46, 51 (1995); *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996,* 302 F.3d 998, 1005–1006 (9th Cir. 2002).

Whether Braun was the subject of disciplinary action by the Illinois ARDC does not "verify" that her actions are *not* "unethical." Certainly, there are many lawyers and other professionals who are considered "unethical," but have never been disciplined for their actions. And what conduct should one examine to determine whether Braun is or is not "unethical," and by what standards should Braun's conduct be measured to "verify" whether she has "adhered" to those standards? One cannot call up the ARDC and verify whether an attorney is "ethical." Certainly, what is "ethical" to one person may not be to another. That is precisely why the Seventh Circuit and this district have explicitly held that "[w]hether a person's actions are unethical" "is ***not objectively verifiable***" and why courts have rejected that the professional codes and rules can serve to verify whether a general statement that a lawyer is "unethical" is true. *See Tamburo,* 974 F.Supp.2d at 1213 (emphasis added); *Freydin*, 24 F.4th at 1132 (rejecting argument that term "unethical" "'carries a precise and understandable meaning which would subject the attorney to the discipline' of the Illinois Attorney Registration and Disciplinary Commission" and holding that statement was a "non-actionable expression of an opinion"); *see also Manjarres v. Nalco Co.,* 2010 WL 918072, at *5 (N.D. Ill., Mar. 9, 2010) ("Without citing to any authority, Plaintiff argues that the professional codes and ethical obligations of attorneys render Defendants' alleged statement [that lawyer was unethical] capable of objective verification. Even if this were true, and professional codes generally provided a yardstick with which to measure behavior, Plaintiff still has not provided the necessary factual basis to allow for objective verification of the alleged statement here"); *Gardner v. Senior Living Systems, Inc*., 314 Ill.App.3d 114, 120 (Ill. App. Ct. 2000) ("[m]erely calling plaintiff 'unethical' here cannot not be reasonably interpreted as stating actual verifiable facts and therefore falls under a constitutionally protected opinion"). Here, the term "unethical" in Day's statement – "Braun's clients have "weaponized [Braun's] aggressive, threatening, and unethical tactics to scare creators off the app"

(Am. Compl., ¶ 105) – is no more "verifiable" or grounded in facts than the terms "aggressive" or "threatening." As a matter of law, these terms are nothing more than subjective opinions and rhetoric name-calling, neither of which are actionable as defamation. *Haberstroh v. Crain Publications, Inc.,* 189 Ill.App.3d 267, 271 (Ill. App. Ct. 1989) ("Numerous Illinois cases have found words that are mere name-calling not to be actionable").

*Third,* as explained in her Motion, Day's alleged reference to Braun as a "rogue" attorney in a purported "since deleted" Tik Tok video is a constitutionally protected opinion that is so "ambiguous and indefinite" that it cannot be verified. (Motion, pp. 8-9). Indeed, the Amended Complaint makes clear that Day provided no "factual context" for this statement. (Am. Compl., ¶ 106 [Day allegedly stated *only*: "But I just wanted to make it very clear that my position is to ensure that there is not a rogue attorney on this app"]). Braun's Opposition does not explain how one would go about verifying whether Braun is a "rogue" attorney in this context, nor does it cite any cases holding that a reference to someone as "rogue" with no other supporting facts is actionable. Instead, Braun argues only that the statement "showcase[s] the existence of a verifiable falsehood in her statements that [Braun] did something wrong as a 'rogue attorney' on the TikTok app.  In essence, [] Day is claiming that [] Braun is an unethical attorney using false copyright strikes to harass creators which, as shown above, is false." (Opp., p. 32). This argument is unsupported and nonsensical.  The Amended Complaint does not allege that Day said Braun was "rogue" because she was an unethical attorney using false copyright strikes to harass creators. (Am. Compl., ¶ 106). She offered no explanation for why she was calling Braun "rogue" – a term that could have any number of meanings. Even if Day did offer that factual context, which she did not, such a statement is not actionable because the terms "unethical" and "false" are not actionable, as explained above.

6

Significantly, the Opposition wholly ignores the social context in which these statements were made, *i.e.*, on Day's personal Tik Tok account. As explained in Day's Motion, the Court must consider this context, and numerous courts have held that statements made in a social media realm give a "strong signal" to a viewer that the statement is opinion. (Motion, p. 9 and n. 9) (citing *Ganske v. Mensch*, 480 F.Supp.3d 542, 533 (S.D.N.Y. 2020) (holding social media platforms are "informal and freewheeling" and convey a "strong signal to a reasonable reader" that a statement is opinion); *Freydin,* 24 F.4th at 1130 (holding that readers of online reviews would be "skeptical about what they read, both positive and negative")*.* Indeed, in *Brennan v. Kadner,* 351 Ill.App.3d 963, 958-59 (Ill. App. Ct. 2004), the alleged defamatory statement was made in the context of a regular column by the defendant who, "regularly expressed his personal opinions on a wide range of public and social issues" and his statements concerned plaintiff's involvement in a public controversy. *Id.* The court held that "[i]n light of the nature of the controversy and the overall tenor of the column, we cannot conclude that [defendant's] statement was a factual assertion." *Id.* (holding that given the context in which the statements were made, "a reasonable reader would not have taken the statement as a literal assertion that plaintiff had actually committed mail fraud"). The same can be said here. Day's statements were made in the context of her personal opinions regarding an online controversy surrounding Braun's litigation tactics; thus, a reasonable viewer would not perceive her name-calling and rhetoric regarding her opinions of Braun as "assertions of fact."

Finally, the Opposition does not dispute that Day's statements are subject to a "public interest" qualified privilege[3], but instead claims that Braun has "overcome any claim of qualified privilege" because Day's statements were made "knowingly" and with a "reckless disregard for the truth" and "intent to injure" Braun's reputation. (Opp., p. 33). While Day agrees that a plaintiff *may* overcome

---

[3] Thus, Plaintiffs concede that the statements fall within the scope of this qualified privilege. *Cincinnati Ins.*, 260 F.3d at 747.

the qualified privilege at the pleading stage by alleging the statement was made with "actual malice," Braun simply has *not* satisfied this requirement. (*See* Motion, p. 10). To overcome the qualified privilege on the grounds of "actual malice" by the defendant, "courts in this district [] have looked for something more than conclusory statements in order to infer that the defendant knew the statements were untrue or recklessly disregarded the truth or falsity of the statements." *Id.* (citing *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015)). Here, the Amended Complaint relies on nothing more than conclusory assertions regarding Day's purported intent (Am. Compl., ¶¶ 108, 201-202), and the Opposition simply echoes those inadequate allegations. (Opp., p. 33) (arguing that Braun "alleges sufficient facts to show that [] Day intended to harm [Braun]", without actually identifying what those "facts" are). Thus, Braun has failed to state facts sufficient to constitute a claim for defamation against Day.

**B.    Braun Cannot State Claims for False Light and Trade Libel against Day.**

As explained in Day's Motion, because Braun's defamation claim is insufficient, her false light and trade libel claims based on the identical allegations must fail as well. (Motion, pp. 13-14) (citing *Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008)). The Opposition does not explain how these claims can survive if the defamation claims fail (which they do); thus, dismissal of the defamation claims warrants dismissal of these claims based on identical inadequate allegations.

**C.    Braun Cannot State a Claim for Tortious Interference against Day.**

As a preliminary matter, a failed defamation claim cannot serve as a basis for a claim of tortious interference with existing or potential business relationships. *Makhsous v. Mastroianni*, 2020 WL 1530740, at *4 (N.D. Ill. Mar. 31, 2020) (citing *Jacobson v. CBS Broad., Inc*., 19 N.E.3d 1165, 1182 (Ill. App. Ct. 2014) (holding that a dismissed defamation claim cannot serve as a basis for a claim of intentional interference with prospective economic advantage)). Here, Braun's interference

claim against Day is based entirely on her constitutionally protected opinions. (Am. Compl., ¶¶ 269-273). The Opposition fails explain how Braun's tortious interference claim can exist independently from her failed defamation claim. Instead, the Opposition simply reiterates the vague allegations of the Amended Complaint regarding the unidentified "members of the public" who left "negative reviews" about Braun and the termination of "several client engagements" that Braun experienced purportedly as a result of Defendants' collective statements (including those allegedly made by Day). (Opp., p. 41). Again, however, vague references to "clients" are insufficient to state a claim for tortious or intentional interference. (Motion, p. 14) (citing *Hackman v. Dickerson Realtors, Inc.,* 557 F.Supp.2d 938, 948 (N.D. Ill. 2008)); *see also Kapotas v. Better Government Ass'n,* 30 N.E.3d 572, 596 (Ill. App. Ct. 2015) (holding that "[t]he hope of receiving a job offer is not a sufficient expectancy . . . The plaintiff must specifically identify the person with whom the plaintiff expected to contract and allege specific acts of interference"). Furthermore, Braun fails to allege "an action by the defendant directed *towards* [a] third party" with whom the plaintiff expected to contract, which is a factual allegation required to state a claim for intentional interference with prospective economic advantage. *See LoggerHead Tools, LLC v. Sears Holding Corp.,* 2013 WL 1858590, at *6 (N.D. Ill. May 1, 2013). Finally, the Amended Complaint does not contain a factual allegation that the statements by any of the Defendants, including Day, *caused* the unidentified clients not to employ Braun or to terminate their existing engagement. Braun's unsupported assumption that these individuals did not employ Braun or terminated their relationship with her because of all of the Defendants' statements is wholly insufficient. *Hackman,* 557 F.Supp.2d at 949 (dismissing allegations that were "too attenuated" to plead causation element of an intentional inference claim).

        **D.**        **Braun Cannot State a Claim for Emotional Distress Against Day.**

As explained in Day's Motion, Braun's emotional distress claims are entirely derivative of their failed defamation claims. The law is clear that if Braun cannot state a claim for defamation, she cannot state a claim for emotional distress based on the purported defamation. (Motion, p. 15). The Opposition fails to address or distinguish the authorities cited by Day. (Opp., pp. 43-44). Thus, Braun's emotional distress claim cannot survive.

**III.**        **CONCLUSION.**

For the foregoing reasons, Day respectfully requests that this Court grant her Motion to Dismiss Counts III, VII, XI, XIV, and XVI for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: June 12, 2024                       Respectfully Submitted,

                                      *s/ Brandon J. Witkow*

                                      Brandon J. Witkow [pro hac vice]
                                      WITKOW | BASKIN
                                      21031 Ventura Boulevard, Suite 700
                                      Woodland Hills, CA 91364
                                      (818) 296-9508
                                      bw@witkowlaw.com


                                        *s/ Amy M. Doig*

                                      Amy M. Doig
                                      COZEN O'CONNOR
                                      123 N. Wacker Dr., Suite 1800
                                      Chicago, Illinois 60606
                                      (312) 474-7900
                                      adoig@cozen.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

***Attorney for Plaintiffs***

Dated:  June 12, 2024                          *<u>s/ Brandon J. Witkow</u>*
                                               Brandon J. Witkow