# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JEANETTE BRAUN, BRAUN IP LAW, LLC & LAUREN PROPSON., | |
| Plaintiffs, | Case No. 23-cv-16856 |
| v. | Judge Mary M. Rowland |
| REBEKAH M. DAY NEE BOX, KRISTINA CARTER, LILY MARSTON, & JESSICA VAZQUEZ, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jeanette Braun, Braun IP Law, LLC, and Lauren Propson have sued Defendants Rebekah M. Day, Kristina Carter, Lily Marston, and Jessica Vazquez[1], bringing a total of 16 counts stemming from allegedly defamatory or injurious statements made over social media, in podcasts, or both. Defendants Marston, Vazques, and Carter have moved to strike the claims against them, and, in the alternative, to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [38]; [42]. Carter has further moved to dismiss Propson's claims against her pursuant to Rule 12(b)(3). Day has moved to dismiss the claims against her under Rule 12(b)(6). [40]. The Table below sets forth the various claims in Plaintiffs' complaint:

---

[1] The parties intermittently spell Defendant's name as either "Vasquez" or "Vazquez." The Court spells her name "Vazquez" because that is how she is identified in the case caption.

| Count | Plaintiff | Defendant | Cause of Action |
|-------|-----------|-----------|-----------------|
| I | Propson | Carter | Defamation |
| II | Braun and Braun IP Law, LLC | Carter | Defamation Per Se |
| III | Braun and Braun IP Law, LLC | Day | Defamation Per Se |
| IV | Braun and Braun IP Law, LLC | Vazquez and Marston | Defamation |
| V | Braun and Braun IP Law, LLC | Carter | False Light |
| VI | Braun and Braun IP Law, LLC | Carter | False Light |
| VII | Braun and Braun IP Law, LLC | Day | False Light |
| VIII | Braun and Braun IP Law, LLC | Vazquez and Marston | False Light |
| IX | Propson | Carter | Trade Libel |
| X | Braun and Braun IP Law, LLC | Carter | Trade Libel |
| XI | Braun and Braun IP Law, LLC | Day | Trade Libel |
| XII | Braun and Braun IP Law, LLC | Vazquez and Marston | Trade Libel |
| XIII | Propson | Carter | Tortious Interference with Contract |
| XIV | Braun and Braun IP Law, LLC | All Defendants | Tortious Interference with Existing and Potential Business Relationships |
| XV | Propson | Carter | Intentional Infliction of Emotional Distress |
| XVI | Braun | All Defendants | Intentional Infliction of Emotional Distress |

## I.  Background

### A. *Propson's Claims Against Carter*

Propson is a resident of the state of Wisconsin and a licensed mortician. [29] ¶¶ 4,

13. Propson operates at least one social media account under the handle "Lauren the

Mortician," where she posts about matters related to her profession. [29] ¶ 14. Carter

is likewise a social media personality and a self-described "life coach villain" who operates under the handle "@CaffinatedKitti." [29] ¶ 15. Carter is a citizen of Georgia.

On or around October 24, 2023, Carter published a video on TikTok where she accused Propson of being transphobic and a "TERF." [29] ¶ 19. Specifically, Carter said "Lauren the Mortician is a TERF, I have receipts, I have deets, and you should just go ahead and take a seat." [29] ¶ 20. "TERF" is an acronym meaning "trans-exclusionary radical feminist" that at least one dictionary defines as "an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans-women in the feminist movement." [29] ¶ 22. "Receipts" and "deets" are slang words used to mean proof or evidence. [29] ¶¶ 23-25. Carter further explained that the "receipts" and/or "deets" referenced were evidence of Propson liking "incredibly transphobic and hateful rhetoric and content." [29] ¶ 27. Carter later explained that she made the post because people were confusing her for Propson. [29] ¶ 33.

Plaintiffs allege that because of Propson's online following, the allegations of her transphobia "spread quickly throughout the internet and became the source of multiple posts, comments, and blog articles." [29] ¶ 38. The allegations lowered her standing in the community, dissuaded people "in the content creation community" from associating with her, caused her to lose followers, and caused her to lose a contract with a travel documentary channel, various sponsorships, and a possible contract for a podcast deal. [29] ¶¶ 39-40. Plaintiffs allege that Carter was aware of the contract with the travel documentary channel as well as Propson's sponsorships,

and that Carter specifically commented on the documentary channel's social media posts to accuse Propson of being transphobic. [29] ¶¶ 43-47.

### B. Braun's[2] Claims Against Carter

Plaintiffs assert that, in the defamatory TikTok video where Carter accused Propson of being transphobic, Carter used a copyrighted photograph belonging to Propson and a screenshot of copyrighted text that Propson authored. [29] ¶ 48. Propson hired Plaintiff Braun, an attorney and resident of Illinois, to file a Digital Millenium Copyright Act ("DMCA") complaint with the social media platforms hosting the video. [29] ¶ 53. Meta, the owner of one of those social media platforms, removed Carter's post and temporarily locked her account because of the DMCA complaint. [29] ¶¶ 56-60. Plaintiffs allege that Carter than began acting "irrational" and "erratic," and out of their concern for her, called a non-emergency hotline to perform a wellness check on Carter at her home. [29] ¶ 62.

Carter then posted at least two videos on different social media platforms in which she accused Braun of filing "false copyright claims" and "bad faith copyright infringement strikes." [29] ¶¶ 65-66. Carter also began a GoFundMe page related to the DMCA complaint. [29] ¶ 70. On that page, Carter published a letter she had sent to Braun which contained the subject line "False Copyright Claim" and stated:

> I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's Scandals, and while I understand your desire to protect a creator you enjoy - if you were not legally obtained as counsel for her

---

[2] With one exception, Braun and Braun IP Law bring the same claims against the same Defendants based on the same factual allegations. The Court will refer to both Plaintiffs just as "Braun" except when meaningful differences arise.

4

and I speak on this via my platform, your actions are going to cause her *significantly* more strife.

[29] ¶¶ 73-76 (emphasis in original).

### C. *Braun's Claims Against Day*

Soon a new influencer entered the fray. [29] ¶ 91. Plaintiffs allege that Defendant Day is a self-stylized "unbiased content creator" and "independent investigative reporter" who has no journalistic training. [29] ¶¶ 85-86. Day allegedly creates content and monetizes videos that disparage social media creators and celebrities, and she has allegedly been accused of posting false and untrue statements about public figures. [29] ¶¶ 88-90. Day is a resident of Missouri.

Day posted a "deep dive" video about the dispute and posted that she had possession of "proof of another VERY large & well-liked content creator that is utilizing the same attorney that Lauren the Mortician has used ([Braun]) to harass a small creator on this app & misuse the copyright strike system to have her account taken down." [29] ¶ 94-98. In a separate video the next month, Day discussed another client of Braun's named "Demps" and accused Braun of filing "false copyright strikes" on Demps's behalf. [29] ¶ 99-102. Day is alleged to have learned about Braun's representation of Demps "by communicating with a stalker and anti-fan of Demps." [29] ¶ 100.

Day published another video within the same month wherein she said "I just wanted to make it very clear that my position is to ensure that there is not a rogue attorney on this app." [29] ¶ 106. Day has since deleted that video. Plaintiffs allege

5

that Day has contacted Braun's clients to intimidate them and interfere with their contracts with Braun. [29] ¶ 116.

On December 11, 2023, Day created yet another post on TikTok in which she said that the Illinois Attorney Registration & Disciplinary Commission ("ARDC") told her they received "multiple credible complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter." [29] ¶¶ 117 (the "ARDC Statement"). Plaintiffs allege that, prior to Day posting the December 11 video, Braun had in fact received no misconduct violations. [29] ¶¶ 124-126. Since Day posted the video, multiple individuals have filed requests to investigate Braun with the ARDC. [29] ¶ 121. Braun further alleges that the ARDC keeps all complaints and investigations confidential and that to the extent anyone had complained about her or her practice, Day could not possibly have known. [29] ¶¶ 117-126.

### D. Braun's Claims Against Defendants Vazquez and Marston

At or around the same time, Defendants Vazquez and Marston, hosts and owners of a weekly podcast, began covering the controversy. [29] ¶¶ 127-129. Vazquez and Marston played Day's video regarding Braun's representation of Demps on their podcast. [29] ¶ 136. In one episode, Vazquez says that Braun used "scare tactic[s] to represent her clients," issued "false copyright strikes," and was "unethical" and "unhinged;" Vazquez further states that she learned this from "a couple DMs" and "even an email from someone as well that is not a creator." (the "Podcast statements"). [29] ¶¶ 145-147. Separately, in a tweet, Marston said:

> I gotta say… one of our biggest questions in all of this, is do we think demps knows that her embarassing [sic] excuse for a lawyer is using her

6

name while actively committing perjury? Someone might wanna tell her. [29] ¶ 149.

Marston has since deleted the tweet. Vazquez is a citizen of Georgia and Marston is a citizen of California.

## II. Anti-SLAPP Motions to Strike

Under Georgia and California law,[3] an anti-SLAPP motion to strike involves two steps. First, the moving party must make "a threshold showing that the challenged claim is one 'arising from' protected activity." *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119, 126-27 (Ga. 2019) (quoting OCGA § 9-11-11.1(b)(1)); *see also* Cal. Code Civ. Proc. § 425.16(b)(1). A "protected activity" under both anti-SLAPP statutes is one "which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of [the respective state constitutions] in connection with an issue of public interest or concern." OCGA § 9-11-11.1(b)(1).[4] The statutes further define a relevant "act in furtherance" of a person's right of petition to include, in pertinent part:

> (1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
> (2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

---

[3] Carter and Vazquez, citizens of Georgia, and Marston, a citizen of California, each bring motions to strike pursuant to their states' anti-SLAPP statutes. The parties acknowledge that the anti-SLAPP statutes in Georgia and California are functionally identical. As a result, the Court will generally refer to the law from only one of the relevant states and note where meaningful differences arise.

[4] The California statute differs slightly from the Georgia statute in that it covers only acts ". . . in connection with a public issue." Cal. Code Civ. Proc. § 425.16(e).[2]

(3) Any written or oral statement or writing … made in a place open to the public or a public forum in connection with an issue of public interest or concern; or

(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

OCGA §§ 9-11-11.1(c)(1)-(4); Cal. Code Civ. Proc. § 425.16(e). The statutes allow a court to consider the pleadings and any supporting or opposing affidavits in determining whether the moving party has satisfied this first step. OCGA § 9-11-11.1(b)(2); Cal. Code Civ. Proc. § 425.16(b)(2).

Once the moving party has made their threshold showing, the burden shifts to the nonmoving party to establish a "probability" that the plaintiff will prevail on her claims. *Id*. Where, as here, a motion to strike is brought based solely on alleged deficiencies in the plaintiffs' complaint, the Ninth Circuit has held that a district court should treat the motion "in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of [the anti-SLAPP statute] applies." *Planned Parenthood Fed'n of Am., Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Defendants Carter, Vazquez, and Marston move to strike Plaintiffs' complaint pursuant to Georgia's and California's anti-SLAPP statutes. The problem for Defendants is that both Georgia's and California's anti-SLAPP statutes attempt to address an issue that the federal rules of civil procedure already cover and thus cannot be applied in federal court. The Supreme Court explained in *Shady Grove* that if a federal rule of civil procedure answers or covers a question in dispute, the federal rule governs unless that rule is invalid. *Shady Grove Orthopedic Assocs., P.A. v.*

8

*Allstate Ins. Co.*, 559 U.S. 393, 397 (2010). Federal Rules of Civil Procedure 12 and 56 "establish the ***exclusive*** criteria for testing the legal and factual sufficiency of a claim in federal court." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (citations omitted) (emphasis added). Defendants cannot rely on state statutes to dismiss Plaintiffs' claims in federal court where federal rules already provide the exclusive means to do so. *See, e.g., La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (holding that California's anti-SLAPP statute answers the same question as Rules 12 and 56); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1348 (11th Cir. 2018) (holding that Georgia's anti-SLAPP statute is a "special procedural mechanism" that cannot be applied in federal court); *In re Gawker Media LLC*, 571 B.R. 612, 633 (Bankr. S.D.N.Y. 2017) ("[L]iteral application of the California [anti-SLAPP] statute" would conflict with federal rules); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1041-53 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729 (7th Cir. 2015) (holding that Washington's substantially similar anti-SLAPP statute could not be applied in federal court).

The Court notes that other federal courts have held otherwise and applied states' anti-SLAPP statutes in federal proceedings. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010). For the reasons explained in *Intercon Solutions*'s thorough analysis, the Court declines to follow the *Godin* line of cases. As the *Intercon Solutions* court explained, "it is clear from the Advisory Committee Notes to the 1946 amendments to Rule 12 that Rules 12 and 56 . . . answer the same question that is in dispute in this case and, pursuant to *Shady Grove* and *Burlington Northern*, cannot

be applied by a federal court sitting in diversity." 969 F.Supp.2d at 1048. Defendants'
motions to strike are denied with prejudice.

### III.    Motions to Dismiss Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide
enough factual information to state a claim to relief that is plausible on its face and
raise a right to relief above the speculative level." *Haywood v. Massage Envy
Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank
Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2)
(requiring a complaint to contain a "short and plain statement of the claim showing
that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion
"construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all
well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's
favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements
of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins.
Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not
necessary to survive a motion to dismiss, [the standard] does require 'more than mere
labels and conclusions or a formulaic recitation of the elements of a cause of action to
be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614
(7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a
complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is

10

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### A. Count I – Propson's Defamation Claim Against Carter

Under Wisconsin law, a claim of defamation must "(1) assert or imply a fact that is capable of being proven false; or (2) it must assert an opinion that directly implies the assertion of an undisclosed defamatory fact." *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 810–11 (W.D. Wis. 2015) (citations omitted). Carter's allegedly defamatory statements about Propson do neither.

Carter allegedly stated that Propson is a "TERF," or trans-exclusionary radical feminist, and that she is transphobic.[5] Propson alleges that "[b]eing called transphobic is akin to being called a bigot or a racist." [29] ¶ 168. The problem for Propson is that courts universally recognize that allegations of racism or bigotry are not actionable in a defamation claim because they express subjective opinions that cannot be proven true or false. *See, e.g., Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face . . . [i]t is not actionable unless it implies the existence of undisclosed, defamatory facts."); *Tannous v. Cabrini Univ.*, 697 F.Supp.3d 350, 364 (E.D. Pa. 2023) ("A statement characterizing someone as racist, like a non-actionable opinion, is a subjective assertion, not sufficiently susceptible to being proved true or

---

[5] Carter disputes that she ever called Propson transphobic. [39] at 19. But in deciding a motion to dismiss, the Court is required to take all well-plead facts as true. *Lax*, 20 F.4th at 1181. Propson plausibly alleges that Carter called her transphobic. [29] ¶ 27, 29.

false to constitute defamation.") (internal quotations removed); *Garrard v. Charleston Cnty. School District*, 838 S.E.2d 698, 714 (S.C. Ct. App. 2019), *aff'd in part & vacated in part* 890 S.E.2d 567 (2023) (claims in a newspaper editorial that a high school football coach and his players were "racist douchebags" were not actionable because they were expressions of opinion); *Ward v. Zelikovsky*, 643 A.2d 972 (N.J. 1994) (defendant's claim that plaintiffs "hate jews" was nonactionable name-calling). Carter's claims that Propson is transphobic cannot on their own state a claim for defamation.

But Propson urges that, because Carter claimed she had "deets" and "receipts" of Propson's transphobia, her statement was one of "mixed opinion" rather than "pure opinion" and thus actionable. Indeed, Wisconsin law provides that this kind of statement may be actionable "if it implies the assertion of undisclosed defamatory facts as the basis of the opinion." *Laughland v. Beckett*, 870 N.W.2d 466, 475 (Wis. Ct. App. 2015). But this argument also fails because the "facts" that Carter implied the existence of were neither undisclosed nor defamatory.

As to whether the facts were undisclosed—Propson alleges Carter called her transphobic because Propson "liked posts by a conservative social media personality." [29] ¶ 19. Carter then allegedly "compiled a list of posts" that Propson liked which contained "transphobic and hateful rhetoric," and she allegedly showed that list of liked posts in her public video. [29] ¶¶ 28-30. In other words, Carter explicitly disclosed the facts that formed the basis of her opinion.

12

As to whether the facts were defamatory—the facts that allegedly formed the basis of Carter's opinion are not defamatory for the same reason the underlying statement is not defamatory. They are more non-actionable opinions. Propson does not dispute that she "liked" the allegedly transphobic social media posts; she only disputes whether the posts themselves were transphobic. *See* [48] at 15. And whether those posts were indeed transphobic is, like Carter's claim that Propson is transphobic, a matter of opinion that cannot form the basis of a defamation claim. Propson's claim for defamation fails because it is based on nonactionable opinion; she cannot save that claim by buttressing it with other opinions that are also not actionable.

Propson further argues that a claim of bigotry can be actionable if it is made with enough specificity to be verifiable, citing to *Overhill Farms*. The defendants there accused Overhill of being racist, of engaging in specific "racist firing" practices, and of discriminating against various groups of Latino immigrant workers. *Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 140 (Cal. Ct. App. 2010). The court held that the statements at issue were "not merely a hyperbolic characterization of Overhill's black corporate heart—[they] represented an accusation of concrete, willful conduct." *Id*. Here, there are no relevant accusations of concrete or willful conduct that can be proven or disproven. There is only Carter's belief that Propson is transphobic, buoyed by Propson expressing her opinion by liking posts that Carter also believed to be transphobic. This cannot support a claim for defamation. As a result, Count I of the amended complaint is dismissed with prejudice.

13

*B. Count II – Braun's Defamation Per Se Claim Against Carter*

In Count II, Braun alleges Carter defamed her by (1) claiming that Braun filed a "bad faith" or "false" copyright claim against her, and (2) by insinuating the Braun was not in fact Propson's actual attorney. Under Illinois law,[6] to state a claim for defamation, a plaintiff must plead facts showing "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner*, 814 N.E.2d 951, 956-57 (Ill. App. Ct. 2004).

Braun's defamation claim against Carter fails for the same reason that Propson's defamation claim failed—the statements at issues are opinions. "A statement is constitutionally-protected opinion if it cannot reasonably be interpreted as stating actual facts about the plaintiff, when viewed 'from the perspective of an ordinary reader.'" *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1113–14 (N.D. Ill. 2016) (citations omitted). With respect to Carter's assertions that any copyright strikes were in bad faith or "false," it is clear from the allegations of the complaint that Carter was only expressing her opinion that the copyright strike was baseless. Carter wrote that she "would love further details on your client and how the video had grounds for a copyright strike, as it clearly falls under fair use." [19] ¶ 81. Carter stated she did not agree that the at-issue video violated any copyright law and explained why—

---

[6] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases).

because she believed the fair use defense is available. And even if she was not expressing an opinion, the terms "bad faith" and "false" in this context are too vague and unverifiable to be actionable in a defamation claim. *See Tamburo v. Dworkin*, 974 F.Supp.2d 1199, 1213 (N.D. Ill. 2013 (statements claiming that plaintiff's actions were "unethical" and "deceitful" are "plainly subjective", not "objectively verifiable" and "not actionable.").

Braun argues that Carter's claims are in fact verifiable because Meta removed the at-issue posts after Braun filed the DMCA complaint. This argument does not persuade. Meta is not an arbitrator of copyright disputes whose findings establish as a verifiable fact what is or is not copyright infringement. Carter is allowed to believe that Braun and Meta were wrong to find that she had committed copyright infringement and cannot be punished in a defamation action for voicing that belief.

Similarly, Carter's insinuation that Braun may not have represented Propson cannot support a claim for defamation. Carter is alleged to have said:

> I do understand how you have reached out with cease and desists to smaller content creators speaking negatively about Lauren the Mortician's Scandals, and while I understand your desire to protect a creator you enjoy - *if you were not legally obtained as counsel for her* and I speak on this via my platform, your actions are going to cause her significantly more strife.

[29] ¶¶ 70-71, 73-76 (emphasis added). This is not, as Braun frames it, an 'accusation that Plaintiff Braun does not represent [Propson] and was just some rogue fan." [29] ¶ 81. By its plain language this is Carter speculating about what may happen if Braun did *not* represent Propson, and a "subjective view, an interpretation, a theory, conjecture[,] or surmise" is not actionable. *Moriarty v. Greene*, 732 N.E.2d

730, 740 (Ill. App. Ct. 2000) (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993)). The phrase "if you were not legally obtained as counsel" clearly sets up the subjective view or theory about what may result if Braun was not Propson's counsel; it cannot reasonably be read to mean Braun, as a factual and verifiable matter, did *not* represent Propson. Count II is thus dismissed with prejudice.

## C. *Count III – Braun's Defamation Per Se Claim Against Day*

In Count III, Braun alleges that Day defamed her by calling her "unethical" and a "rogue" attorney who files "false copyright lawsuits." For the reasons discussed in Count II, this is insufficient to state a claim. A non-party to litigation or a legal matter is allowed to comment on the perceived motivations or quality of a lawyer's work and cannot be punished in a defamation action for voicing that belief.

Count III does not mention the "ARDC Statement," wherein Day allegedly said the ARDC told her they had "multiple credible complaints about Jeanette Braun and [the ARDC] ha[d] assigned multiple attorneys to investigate this matter." [29] ¶ 117. And although Day addressed that statement in her motion to dismiss, Braun did not respond to it in her opposition. Any possible defamation claim related to the ARDC Statement is waived and Count III is dismissed without prejudice. *See Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir. 1990) (arguments that a plaintiff fails to raise in their opposition to a motion to dismiss are waived).

## D. *Count IV – Braun's Defamation Claim Against Vazquez and Marston*

In Count IV, Braun alleges that Defendants Vazquez and Marston defamed her by stating that she is "unethical" and saying that she has committed perjury. As to

any assertions about Braun's ethics or the quality of her copyright claims, those are not actionable for the reasons discussed above.

The perjury comment is a different matter. The Court repeats Marston's tweet in its entirety below:

> I gotta say… one of our biggest questions in all of this, is do we think demps knows that her embarassing [sic] excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her. [29] ¶ 149.

Publicly accusing a lawyer—or anyone—of committing a felony is no small thing. In Illinois, words imputing that a person has committed a crime are *per se* defamatory. *Harrison v. Addington*, 955 N.E.2d 700, 706 (Ill. App. Ct. 2011). Marston argues that because the tweet does not identify "any particular statement made by Braun that Marston contends constitutes perjury," the statement cannot be actionable. But Marston does not cite any law to support that broad proposition. Marston cites to *Piersall*, where an Illinois court held that a "general statement that someone is a liar, not being put in context of specific facts, is merely opinion." 595 N.E.2d 103, 107 (Ill. App. Ct. 1992). But Marston's statement was not a general claim that Braun was a liar, and it did not lack context. Marston's tweet—which came after an 84-minute podcast episode wherein Vazquez and Marston said that Braun was "unethical," "unhinged," and engaged in "scare tactics" in connection with her legal practice—specifically refers to Braun's representation of a former client and specifically accuses her of committing perjury, a crime, during that representation. During the podcast, Vazquez also said that she and Marston has received messages

and at least one email describing Braun's practice, giving rise to the inference that one of the messages contained evidence of Braun's claimed perjury.

Marston also argues that under Illinois law, when "potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." [43] at 12 (citing *Brennan*, 814 N.E.2d at 958). That may well be true. But there is no rule that simply because one has posted something on Twitter, one has a license to accuse others of committing crimes. The fact that Marston made her statement on Twitter does not mean her statement is not actionable.

Marston and Vazquez also argue that their statements are subject to a qualified privilege and therefore not actionable. In Illinois, a qualified privilege to a claim of defamation arises in three situations: (1) situations involving an interest of the publisher of the defamatory statement; (2) situations involving an interest of the recipient of the defamatory statement or some other third party; and (3) situations involving a recognized public interest. *Kuwik v. Starmark Star Marketing & Admin., Inc.*, 619 N.E.2d 129, 135 (Ill. 1993). A plaintiff can overcome a qualified privilege by proving that the defendant published the allegedly defamatory material with (1) an intent to injure the plaintiff or (2) with a reckless disregard for the plaintiff's rights. *Id.* at 136-136. A qualified privilege is an affirmative defense. *Dent v. Constellation NewEnergy, Inc.*, 202 N.E.3d 248, 255 (Ill. 2022). As a result, "a plaintiff is not

required to plead facts demonstrating that a statement is unprivileged." *Myers v. Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 WL 2403126, at *6 (N.D. Ill. Oct.26, 2004).

Marston and Vazquez claim that their statements are privileged because they "relate to their own and the viewers' interests in protecting their freedom of speech as social media content creators and not being subject to intimidating litigation tactics by Braun on behalf of her clients, as well as the public interest in protective free speech on social media." [43] at 13. It is far from clear, based only on the pleadings, that this was Marston's intent when she stated that Braun was "actively committing perjury." In any event this remains an affirmative defense. But defendants have not established that Marston's tweet was privileged for purposes of Rule 12(b)(6). Count IV survives dismissal as to Marston regarding her tweet accusing Braun of committing perjury. Count IV is dismissed with prejudice as to Vazquez.

### E. Counts V-VIII –Braun's False Light Claims against Carter, Day, Vazquez, and Marston.

In Counts V-VIII, Braun brings false light claims against Carter (Counts V and VI), Day (Count VII), and Vazquez and Marston (Count VIII). Braun's false light claims are premised on the statements and actions that Braun alleged were defamatory. Because Braun's defamation claims against Carter and Day have been dismissed, Counts V and VI are dismissed with prejudice and Count VII is dismissed without prejudice. *See Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008) (holding

that when an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well.").

However, Braun's defamation claim against Marston has survived dismissal, and Marston made no other arguments as to why the false light claim should be dismissed. Accordingly, Defendants' motion to dismiss Count VIII is denied as to Marston, but Count VIII is dismissed with prejudice as to Vazquez.

### F. Counts IX-XII – Propson and Braun's Trade Libel Claims Against Carter, Day, Vazquez, and Marston.

In Count IX, Propson brings a Trade Libel claim against Carter. In Counts X-XII, Braun brings the same claim against Carter (Count X), Day (Count XI), and Vazquez and Marston (Count XII). For similar reasons to Braun's false light claims, only Count XII survives and only as it relates to Marston. Under Illinois law (which applies to Braun's claims), commercial disparagement claims like trade libel "must be based on false statements of fact and cannot be based on expressions of opinion." *Evanger's Cat and Dog Food Co., Inc. v. Thixton*, 412 F.Supp.3d 889, 904 (N.D. Ill. 2019). Neither party cites to any Wisconsin law that would be relevant to Propson's trade libel claim, but Propson argues that she is required to allege an "injurious falsehood." As discussed above, Propson has failed to do so. Counts IX and X are dismissed with prejudice. Count XI is dismissed without prejudice. Count XII survives as to Marston and is dismissed with prejudice as to Vazquez.

### G. Count XIII – Propson's Claim for Tortious Interference with Contract against Carter.

In Count XIII, Propson brings a claim for tortious interference with contract against Carter. To state a claim for tortious interference with contract under

Wisconsin law, a plaintiff must demonstrate: "(1) the plaintiff must have had a contract or a prospective contractual relationship with a third party; (2) the defendant must have interfered with that relationship; (3) the interference by the defendant must have been intentional; (4) there must be a causal connection between the interference and damages; and (5) the defendant must not have been justified or privileged to interfere." *Finch v. Southside Lincoln-Mercury, Inc.*, 685 N.W.2d 154, 162 n.8 (Wis. Ct. App. 2004) (quoting *Select Creations, Inc. v. Paliafito Am., Inc.*, 911 F. Supp. 1130, 1156 (E.D. Wis. 1995)). Propson cannot satisfy the fifth element because she has not pled any facts showing that Carter's alleged interference in any contract was unjustified.

Under Wisconsin law, "[a] defendant's conduct may only be found justified if the means employed by the defendant were lawful." *Select Creations, Inc. v. Paliafito Am., Inc.*, 911 F. Supp. 1130, 1159 (E.D. Wis. 1995) (citations omitted). Conduct is "lawful" when it is ". . . not contrary to nor forbidden by the law." *Id.* (citing *Black's Law Dictionary* pp. 885–886 (6th ed. 1990)). Propson has alleged no conduct that is forbidden by law by Carter. And in her opposition brief, Propson's sole argument is that Carter "made false statements" about Propson. For the reasons discussed above, Propson has not sufficiently alleged that Carter made any false statements_as opposed to opinions. Propson's conclusory allegations that Carter's actions were "unjustifi[ed]" and "unlawful[]," *see* [29] ¶¶ 264-365, are not sufficient to state a claim.

Count XIII is dismissed without prejudice.

*H. Counts XIV – Braun's Claims for Tortious Interference with Existing and Potential Business Partners Against All Defendants.*

In Count XIV, Braun brings a claim for tortious interference with existing and potential business relationships against all Defendants. To state a claim for tortious interference with prospective economic advantage in Illinois, a plaintiff must allege: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir.2007) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877–78 (Ill. 1991)). A tortious interference claim requires that the plaintiff specifically identify the relationships in which the defendants allegedly interfered. *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005). Braun has identified no such relationships, so her claim necessarily fails. *See Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 596 (Ill. App. Ct. 2015) ("[T]he lack of specific allegations that the defendants acted with the purpose of injuring plaintiff's expectancies is fatal to his [tortious interference] claim."). Count XIV is dismissed without prejudice.

I. *Counts XV and XVI – Propson's Claim for Intentional Infliction of Emotional Distress against Carter (Count XV) and Braun's Claim for Intentional Infliction of Emotional Distress Against All Defendants.*

In Count XV, Propson brings a claim against Carter for intentional infliction of emotional distress. In Count XVI, Braun[7] brings the same claim against all Defendants. As an initial matter, courts generally dismiss intentional infliction of emotional distress claims when they are premised on a nonactionable defamation

---

[7] Braun brings this claim only as an individual and not jointly with Braun IP Law, LLC.

claim. *See, e.g., Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 773 (N.D. Ill. 2014), *aff'd in part, rev'd in part sub nom Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016) (dismissing emotional distress claims based on failed defamation claim "since statements that do not rise to the level of defamation logically cannot rise to the even higher level of 'extreme and outrageous conduct'") (citation omitted).

But Plaintiffs' claims also fail because they do not allege that Defendants engaged in "extreme and outrageous conduct" as both Wisconsin and Illinois law require. *Bowen v. Lumbermens Mut. Cas. Co.,* 517 N.W.2d 432, 442 (Wis. 1994); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012). Wisconsin courts have held that to state a claim, the alleged conduct must be "so severe that no reasonable man could be expected to endure it." *Bowen*, 517 N.W.2d at 442 n.23 (citing the Restatement (Second) of Torts § 46); *see also Kroeger v. Brautigam*, 886 N.W.2d 592 (Wis. Ct. App. 2016) (holding that "boorish behavior," "insults, indignities, threats, annoyances," and "childish nonsense," are insufficient; conduct must constitute "a complete denial of the plaintiff's dignity as a person" to state a claim). Likewise, Illinois courts have held that the alleged conduct must be "so extreme as to go beyond all possible bounds of decency" and be "regarded as intolerable in civilized society." *Feltmeier v. Feltmeier*, 798 N.E.2d, 75, 80-81 (Ill. 2003). "[U]nder no circumstances [do] "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' qualify as outrageous conduct." *Id.* at 80 (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)); *see also Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (allegations that an employee's boss regularly screamed at

him using profanity and slurs about his religion and ethnicity are mere "verbal insults" and not sufficient to state a claim).

Both Plaintiffs' allegations fall short of what is required to state a claim for intentional infliction of emotional distress. The Court cannot reasonably infer from Propson's claims that Carter has subjected her to conduct so severe that no reasonable person could be expected to endure it. And Braun has not alleged that any Defendants have subjected her to conduct that goes beyond all possible bounds of decency.

To be clear, the Court is extremely troubled by the allegations that an "online mob" has followed both Plaintiffs around the internet, harassed them with threatening messages, and even gone as far as creating AI-generated pornography of Braun. [29] ¶ 160-162. This is appalling behavior. But the complaint does not allege that Defendants themselves engaged in this conduct, nor does it allege that Defendants directed "the mob" to do so. Plaintiffs have not identified any authority indicating that a defendant can be liable for intentional infliction of emotional distress based on the actions of non-parties—even if they were inspired by the defendant's otherwise non-actionable conduct. As a result, Counts XV and XI are dismissed without prejudice.

## IV.    Carter's motion to dismiss pursuant to Rule 12(b)(3)

In the alternative to her motion to dismiss pursuant to Rule 12(b)(6) and motion to strike pursuant to Georgia's anti-SLAPP statute, Carter moves to dismiss Propson's claims under Rule 12(b)(3) for improper venue. Venue is proper in (1) a judicial district in which any defendant resides, if all defendants reside in the State

housing the district; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no such district in which the action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action. *See* 28 U.S.C. §§1391(b)(1)-(3); *see also Clark v. McDonald's Corp.*, 2023 WL 2648467, at *2 (S.D. Ill. Mar. 27, 2023). Propson argues that because the two plaintiffs and three defendants each reside in different districts in different states, there is no district where venue would be otherwise proper as to all parties, so the Northern District of Illinois is a proper venue pursuant to 28 U.S.C. § 1391(b)(3). The Court agrees. Section 1391(b)(1) is unavailing because each defendant resides in a different district. Section 1391(b)(2) is likewise unavailable as there is no one district in which a substantial part of the events or omissions giving rise to the action occurred; three of the four defendants committed the acts that gave rise to Plaintiffs' complaint in different states. *See Morton Grove Pharm. v. Nat'l Pediculosis Ass'n*, 525 F.Supp.2d 1039, 1042 (N.D. Ill. 2007) ("A tortious act is not committed in Illinois merely because defendants allegedly caused [plaintiff] reputational and economic injury within the state."). And no defendant has filed a motion under Rule 12(b)(2) for lack of personal jurisdiction, nor have they otherwise argued that this Court does not have personal jurisdiction over them.[8] Venue is thus proper under 28 U.S.C. § 1391(b)(3).

---

[8] The Court disagrees with Carter's argument that there is nothing "tying" Propson's and Braun's claims together. In Carter's original video in which she allegedly defamed Braun—a resident of Illinois and Propson's agent, whom Propson appears to have hired as a direct result of Carter allegedly defaming her—Carter mentioned Propson and/or the ongoing drama between Carter and Propson at least 16 times. *See, e.g.*, [39-1] at 11. Day's alleged harassment of Braun also arose out of the conduct giving rise to Propson's claims. *See* [29] ¶ 94-98.

## V.    Conclusion

For the stated reasons, the Defendants' motions are granted in part and denied in part.

Carter's motion to strike, and in the alternative motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) and 12(b)(3) [38] is granted in part and denied in part. Carter's motion to dismiss under Rule 12(b)(6) is granted; the motion is otherwise denied.

Day's motion to dismiss pursuant to Rule 12(b)(6) [40] is granted.

Vazquez and Marston's motion to motion to strike, and in the alternative motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) [42] is granted in part and denied in part. The motion is granted as to all claims against Vazquez. It is also granted as to all claims against Marston except Counts IV, VIII, and XII, which each survive dismissal. The motion is otherwise denied.

Counts I, II, IV (as to Vazquez), V, VI, VIII (as to Vazquez), IX, X, and XII (as to Vazquez) are dismissed with prejudice. Counts III, VII, XI, XIII, XIV, XV, and XVI are dismissed without prejudice. Counts IV, VIII, and XII survive dismissal, but only as to Marston.

E N T E R:

Dated: February 28, 2025

Mary M Rowland
_____
MARY M. ROWLAND
United States District Judge

26