**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JEANETTE BRAUN, BRAUN IP LAW, LLC & LAUREN PROPSON, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 23 C 16856 |
| v. | ) ) | Hon. J. Mary Rowland |
| REBEKAH M. DAY NEE BOXX, KRISTA CARTER, & LILY MARSTON, | ) ) ) ) ) | Mag. J. M. David Weisman  **DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

**THIRD AMENDED COMPLAINT**

Plaintiffs, Jeanette Braun ("Braun"), Braun IP Law, LLC ("Braun Law"), and Lauren Propson ("Propson"), ("collectively Plaintiffs"), present their Complaint against Rebekah M. Day nee Boxx ("Day"), Krista Carter ("Carter"), and Lily Marston ("Marston") and alleges as follows:

**NATURE OF THE CASE**

1.        This is a diversity action asserting Illinois state law claims for defamation *per se*, trade libel, false light, and tortious interference with contract and tortious interference with economic advantage, and Wisconsin state law claims for tortious interference with contract and tortious interference with economic advantage because of the Defendant Day and Marston's publication of defamatory statements regarding Plaintiff Braun, and the Defendants' public criticisms that were harmful, offensive, and made for monetary and commercial gain.

**PARTIES**

2.        Plaintiff Jeanette Braun is a citizen of Illinois.

1

3.      Plaintiff Braun Law is a limited liability company organizing and existing under the laws of the State of Illinois, with a contact address of 1600 W. Lake Street, Suite 103B, Addison, Illinois 60101.

4.      Plaintiff Lauren Propson is a citizen of the State of Wisconsin.

5.      Defendant Rebekah Day nee Box is a citizen of the State of Missouri.

6.      Defendant Krista Carter is a citizen of the State of Georgia.

7.      Defendant Lily Marston is a citizen of the State of California.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action by Plaintiff Braun, who is a citizen of the State of Illinois and Braun Law, an Illinois limited liability company, against Defendants Day, Carter, and Marston who upon information and belief are citizens of various states including Missouri, Georgia, and California, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

9.      Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391 because Plaintiff Jeanette Braun and Plaintiff Braun Law are in this District and the reputational harm to Plaintiff Braun and her legal practice occurred in this District.

10.     In accordance with Rule 20(a)(1) of the Federal Rules of Civil Procedure, Ms. Braun, Braun Law, and Propson are permissively joined in bringing this action as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and the same questions of law or fact common to all Plaintiffs will arise in this action. The allegations central to the Plaintiffs' claims arise from the same videos and series of videos posted by the Defendants.

11.     Defendants Day, Carter, and Marston are properly joined in this action pursuant to Rule 20(a)(2) as their involvement in the same series of transactions or occurrences, and the same questions of law or fact are common to all Defendants.

## BACKGROUND

***Defendant Krista Carter's Campaign to Damage the Reputation of Plaintiff Lauren Propson pka "Lauren the Mortician" and label her as transphobic***

12.     Ms. Propson is a licensed mortician and operates a social media account known publicly as "Lauren the Mortician."

13.     Ms. Propson posts social media videos and commentary that bring awareness about common safety issues causing death. Her content provides lighthearted and educational videos that discuss death, the loss of loved ones, and demystify occupations and professions that work with deceased persons.

14.     Defendant Carter is a social media personality and influencer, publicly known as @CaffinatedKitti.

15.     Defendant Carter describes herself as a "villain life coach" and uses her platform to create content that she monetizes from views and user engagement.

16.     Upon information and belief, Defendant Carter followed Ms. Propson on social media and viewed her content.

17.     Upon information and belief, Defendant Carter receives compensation from TikTok based on the number of views a video receives.

18.     On or around October 24, 2023, Defendant Carter published a video of herself to TikTok where she made statements about Ms. Propson and identified her by her public persona "Lauren the Mortician."

3

19.     In the October 24, 2023 video, Defendant Carter goes on to accuse Ms. Propson of being "transphobic" and a "TERF" because she liked posts by a conservative social media personality, who is in a gay relationship.

20.     The video starts off with the following monologue by Defendant Carter:

> "Lauren the Mortician is a TERF, I have **receipts**, I have **deets**, and you should just go ahead and take a seat."

21.     "TERF" is a derogatory slur in feminist groups and a highly offensive term.

22.     "TERF" is an acronym standing for "Trans-Exclusionary Radical Feminist" which is a term used to refer to or describe "an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans women in the feminist movement." Dictionary.com, TERF Definition (accessed on Dec. 12, 2023), https://www.dictionary.com/browse/terf.

23.     "DEETS" is slang for "details." Merium-Webster.com, DEETS Definition (accessed on March 21, 2024), https://www.merriam-webster.com/dictionary/deets.

24.     Upon information and belief, the above statement's reference to "receipts" and "deets" was intended to tell audiences that Defendant Carter had verifiable proof that Ms. Propson was transphobic.

25.     Urban Dictionary, an online resource that defines modern slang and internet slang, defines "receipts" as, "Evidence or proof. Often in the form of screenshots or saved snaps." [3]

26.     Lauren the Mortician is the only person discussed and accused in the video (aside from references to the other social media personality).

27.     Defendant Carter goes on to explain the meaning of her opening statement in the video by stating:

> "[A]nd not only was she following him but she was actively liking
> incredibly **transphobic** and hateful rhetoric and content. So, as you
> can see here, I decided to make a fun and helpful little list of all the
> different videos I caught her liking."

28.     Along with the video, Defendant Carter announced that she compiled a list of links

to posts that Ms. Propson "liked" contained "transphobic and hateful rhetoric."

29.     In using the word "TERF" to describe Ms. Propson, Defendant Carter provided the

following clarification in her video after discussing the posts and beliefs allegedly endorsed by

Ms. Propson by noting:

> "[she is] trying to divert the attention by saying she is just pro
> LGBTQ and bisexual as if that is some kind of hall pass that prevents
> her from being prejudiced to other sub-genres of the rainbow. Just
> like any other person can be biphobic, **bi people can be
> transphobic**. (Text Caption: "Unfriendly Reminder: we see
> transphobic so we're saying transphobic. That ain't bullying it's an
> observation").

30.     In showing the list in her video, Defendant Carter expressed, "this is obsessive.

Maybe – but I just like being *thorough* when dealing with accusations. Seems responsible to

me."

31.     Upon information and belief, none of the videos Defendant Carter linked contain

transphobic content.

32.     Upon information and belief, Defendant Carter's motive and intent behind these

posts were to tarnish and damage Ms. Propson's reputation while boosting her own social media

career.

33.     In explaining her reasoning for her accusations, Defendant Carter stated that she

was making her claims because people were confusing Ms. Propson's "Lauren the Mortician"

persona with Defendant Carter's "@CaffinatedKitti" persona:



*Id.*

34.     Upon information and belief, Defendant Carter is aware that, at the time of her post, Defendant Propson followed and liked pro-LGBTQ and pro-trans rights content on social media.

35.     Upon information and belief, Defendant Carter acted with malice in stating that Ms. Propson was a TERF and transphobic because she either knew her statements would enrage her fanbase and incite an internet mob against Ms. Propson.

36.     Upon information and belief, Defendant Carter chose to highlight only Ms. Propson's interactions with the conservative social media personality, while ignoring or recklessly disregarding evidence contradicting her transphobia claims.

37.     Defendant Carter actively engaged with and further incited her fans and the general public through public social comments, and upon information and belief, through direct messages on social media platforms.

38.     Upon information and belief, Defendant Carter made her false statements to tarnish Ms. Propson's reputation and career as a social media influencer.

39.     Upon information and belief, Defendant Carter accused Ms. Propson of being transphobic in an attempt to incite pro-LGBTQ community members to engage in a cancel culture campaign against Ms. Propson.

40.     Upon information and belief, Defendant Carter's actions were made with malice and in an attempt to remove a business competitor.

### *Damage to Ms. Propson's Reputation*

41.     Due to Ms. Propson's following, the allegation that she is transphobic spread quickly throughout the internet and became the source of multiple posts, comments, and blog articles.

42.     The impact of this allegation caused Ms. Propson immediate and irreparable harm to her reputation, lowered her in the eyes of her community, and deterred people in the content creation community from associating with her.

43.     Specifically, Ms. Propson lost numerous followers, her contract with The Travel Channel, and a podcast deal that was in negotiations, as well as brand endorsement contracts, such as Pair Eyeware.

44.     In her social media career, Ms. Propson amassed millions of followers on the social media platform TikTok, as well as sponsorships and monetization of her videos.

45.     Of these sponsorship deals, Ms. Propson secured a brand partnership in 2023 with The Travel Channel.

46.     As a part of the sponsorship, Ms. Propson was paid to make monthly videos for The Travel Channel.

47.     Upon information and belief, Defendant Carter was aware of Ms. Propson's sponsorships and her contract with The Travel Channel from studying Ms. Propson's "Lauren the Mortician" social media account.

48.     Fans of Defendant Carter's commented on The Travel Channel's posts accusing Ms. Propson of being transphobic.

49.     Upon information and belief, this led to The Travel Channel deleting comments accusing Ms. Propson of being transphobic.

50.     On or about October 31, 2023, representatives of The Travel Channel told Ms. Propson that due to the online controversy surrounding her, they needed to protect themselves from the negativity and would no longer post her videos.

51.     On or around this time, Ms. Propson's negotiations to start a podcast were also ended.

52.     In addition, Ms. Propson received an email from her sponsor Pair Eyeware stating that "We can't work with someone who has this kind of content out there."

***Defendant Carter pka @CaffinatedKitti's Campaign Against Plaintiff Braun and Braun Law***

53.     In attacking the reputation of Defendant Krista Carter, published social media videos using copyrighted material belonging to Lauren Propson without permission. In response, Propson retained Attorney Jeanette Braun to assist in filing a DMCA complaint with Meta, which resulted in the removal of Carter's Facebook post. Following that removal, Carter posted a series of inflammatory videos, including one accusing Braun of filing "false copyright claims" and acting in bad faith as an attorney.

54.     Carter's accusations were made during ongoing settlement discussions with Braun and were designed to discredit her professional conduct. In a TikTok video and on a GoFundMe

8

campaign page, Carter identified Braun by name, published private communications, and repeated the accusation that Braun filed copyright claims improperly. These posts received hundreds of thousands of views and were tied to Carter's fundraising efforts.

55.     Carter's statements were designed to incite her fanbase against Defendant Braun. By attacking Braun's legal conduct and encouraging public backlash during the course of her client representation, Carter interfered with Braun's law practice and damaged her professional reputation and business relationships.

### *Defamatory Statements Made by Defendant Rebekah Day nee Boxx*

56.     Defendant Day is a social media content creator known professionally as "Bekah Day" and holds herself out to be an unbiased content creator and an independent investigative reporter.

57.     Upon information and belief, Defendant Day has no professional training or degree in journalism.

58.     Bekah Day, "Bekah Day Profile" linkedin.com (accessed on Dec. 15, 2023), https://www.linkedin.com/in/bekah-day-98457a177/.

59.     Defendant Day creates content that disparages social media creators and celebrities, which she monetizes for income from TikTok.

60.     Upon information and belief, Defendant Day receives compensation from TikTok based on the number of views a video receives.

61.     During her social media career, Ms. Day has been accused of posting false and untrue statements about public figures, such as Grammy award winning musician Diplo and other prominent social media personalities.

9



62.     In November 2023, Defendant Day made content regarding Defendant Carter's claims about Ms. Propson and Ms. Braun.

63.     Upon information and belief, Defendant Day did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in her posts about Ms. Braun and Ms. Propson.

64.     Defendant Day never contacted the Plaintiffs to verify the information in her posts.

***Defendant Day's Campaign Against Jeanette Braun and Braun IP Law LLC***

65.     In November 2023, Defendant Day posted a "deep dive" video about Defendant Carter's dispute with the Plaintiffs.

---

1     Bekah Day, Post September 5, 2023, tiktok.com (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7275351757197200683?lang=en.; Bekah Day, Post Oct. 5, 2023 (accessed on Dec. 13, 2023), https://www.tiktok.com/@bekahdayyy/video/7286578172643003678?lang=en.

66.    In her "deep dive" video about Defendant Carter's dispute with the Plaintiffs, Defendant Day identified Ms. Braun by her first and last name.

67.    Upon information and belief, Ms. Braun is the only attorney that Defendant Day has ever discussed on her tabloid TikTok channel.

68.    Upon information and belief, due to the success of her content about Ms. Propson and Ms. Braun, and the amount of money TikTok paid her for those posts, Defendant Day made plans to make more videos about Ms. Braun's other clients that are social media creators.

69.    In a TikTok story post made in December 2023, Defendant Day said she was in possession of: "proof of another VERY large & well-liked content creator that is utilizing the same attorney that Lauren the Mortician has used (Jeanette) to harass a small creator on this app & misuse the copyright strike system to have her account taken down." (Original Below)



70.     In another video posted in December 2023, Defendant Day discussed Ms. Braun's representation of another one of her clients, Kaitlynn Dempsy p/k/a "Demps."

71.     Upon information and belief, Defendant Day learned of Ms. Braun's representations by communicating with a stalker that Ms. Dempsey has obtained numerous protective orders against.

72.     In the December 2023 video about Demps, Defendant Day published the following caption with her video and accused Ms. Braun of filing "false copyright strikes" and using an "unethical tactic to scare creators off this app."

73.     In discussing Ms. Braun and her representation of her client Demps, Defendant Day asserted the following:

> "I will not be showing any photos or screenshots of the faces of the creators involved but I will be saying names so let's get into this so yesterday we talked about how a Creator on here named Demps hired an attorney named Jeanette Braun to file a ***false copyright strike*** against a small Creator named Kristen."

74.     In the same December 2023 post, Defendant Day claimed,

> "I have a list of creators who have utilized Jeanette, and ***another list of creators who have been wrongfully impacted by false copyright strikes sent in by Jeanette***."

75.     Upon information, Defendant Day's reference to a list of content creators using Ms. Braun and her list creators who have been impacted is intended to represent to her audience that she has proof of Ms. Braun "filing false copyright strikes".

(This Space Left Intentionally Blank)

12

76.     The original post by Defendant Day is shown below:



77.     In a since deleted video from TikTok, following her December 2023 posts about Ms. Braun's client, Defendant Day stated her intent to ruin Ms. Braun's career as a social media lawyer:

> "But I just wanted to make it very clear that my position is to ensure that there is not a rogue attorney on this app."

78.     Upon information and belief, Defendant Day's fans knew Defendant Day was discussing Ms. Braun due to the number of videos and posts that Defendant Day made about Ms. Braun and her clients.

79.     Upon information and belief, and the context of Defendant's other posts, Defendant Day intended to falsely cast Ms. Braun as an unethical attorney that files baseless claims by calling her a "rogue attorney."

(This Space Left Intentionally Blank)

***Defendant Day's Harassment of Ms. Braun's Clients***

80.     Upon information and belief, Defendant Day used the above statements and rhetoric to incite her fans to become an angry mob and engage in a harassment campaign against Ms. Braun and her past clients that are social media influencers.

81.     Defendant Day's harassment campaign has had detrimental effects on Ms. Braun, her former clients, her practice, and has caused emotional distress and harm to Ms. Braun.

82.     In addition to her public comments, Defendant Day has made unsolicited communications to Ms. Braun's client in attempts to obtain disparaging information.

83.     On March 21, 2024, Defendant Day contacted one of Ms. Braun's clients knowing that the person was one of Ms. Braun's clients.

84.     Upon information and belief, Defendant Day is contacting Ms. Braun's clients to possibly intimidate them, interfere with their contract with Ms. Braun for legal representation, and/or to collect a statement which she can twist and publish on social media for more likes and follows.

***Bekah Day's Defamatory and False Statements About Plaintiff Braun and Braun Law***

85.     On December 11, 2023, Defendant Day created and posted a story on TikTok stating that she "Just got confirmation from the Illinois Attorney Registration & Disciplinary Commission thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter." (emphasis in original). @bekahday, "Dec. 11, 2023 Story Post" tiktok.com (captured on Dec. 11, 2023).

(This Space Left Intentionally Blank)

86.     The below screenshot is a true and accurate copy of the post made by Defendant Day.



87.      Defendant Day's statement that the ARDC told her that received "multiple credible complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter" is false and did not occur.

88.      Upon information and belief, the ARDC did not comment or provide information to Defendant Day about its investigation or other complaints made against Ms. Braun.

89.      Defendant Day intentionally made this statement on December 11, 2023 knowing that her report about the ARDC's commenting that it received "complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter" was false.

90.      Defendant Day made this false statement to place Ms. Braun and Braun IP Law in a false light and to sensationalize her social media post, add credibility to her claims, and disparage Ms. Braun before the public.

91.      Upon information and belief, Defendant Day made this statement with actual malice in that she either knew the statement's falsity and had a reckless disregard for the truth.

92.      Upon information and belief, Defendant Day made this statement to incite and encourage the public to make ethics complaints to the ARDC against Ms. Braun.

93.      As a proximate cause of Defendant Day's posts and comments, numerous people filed complaints to the ARDC and requested the ARDC to investigate Ms. Braun.

94.      All ARDC complaints that were filed against Ms. Braun by internet mob as a result of Defendant Day's false statements were closed without any warning, censure, or admonishment to Ms. Braun.

95.      The Attorney Registration and Disciplinary Commission is the governing body overseeing and regulating the conduct of attorneys. The ARDC operates under the authority of the Illinois Supreme Court, which has sole authority to regulate the admission and discipline of

16

lawyers in Illinois. ARDC, "Overview of ARDC" iardc.org (accessed on Dec. 15, 2023), https://www.iardc.org/About.

96. All attorney investigations are confidential until the Commission brings a complaint against an attorney. *Id.*

97. Upon information and belief, the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney.

98. As of the filing of this Amended Complaint, Ms. Braun is an attorney in good standing and has no pending investigations or misconduct violations on her record with the Illinois Attorney Registration & Disciplinary Commission.

99. Only one attorney was assigned to the numerous ethical complaints that were received about Ms. Braun because of Defendant Days encouragement of the public to submit complaints.

100. The ARDC closed the complaints against Ms. Braun.

101. The ARDC did not censure, disbar, or privately admonish Ms. Braun.

102. Although Defendant Day published numerous videos updating the public about the actions she had taken against Plaintiff Braun and refers to herself as a journalist, she did not post any video informing viewers that the ARDC chose not to pursue her Complaint against Braun.

### Defamatory Statements Made by Defendant Lily Marston and Tortious Interference by Defendant Marston

103. Upon information and belief, Defendant Marston and her co-host Jessica Vazquez are owners and co-hosts of the "Do We Know Them" podcast.

104. The "Do We Know Them" podcast is an online weekly video podcast that is also disseminated through various audio platforms where Defendant Marston and Ms. Vazquez promote online controversies, rumors, and celebrity gossip, all of which are monetized.

105.     Upon information and belief, Defendant Marston is paid by YouTube and at least 18 other platforms based on the number of views/plays their videos/podcast receives and thus is profiting from her posts that spread the false statements about Ms. Braun that are described in this Complaint.

106.     Defendants Day and Marston communicated with each other about Ms. Propson and Ms. Braun to make videos and a podcast.

107.     In their December 2, 2023 episode, Defendant Marston acknowledged that she spoke to Defendant Day by referring to her username @bekahdayy and tagging her TikTok post:

> "HUGE SHOUTOUT TO THE LOVELY BEKAH DAY FOR PROVIDING US WITH THE STUFF WE NEEDED TO NAVIGATE THRU JANET'S BS!
>
> For more information and detailed up to date coverage on all of the claims that Janet's been doling out to people like she's passing out candy on Halloween, go check out Bekah's Tiktok! @bekahdayyy"

108.     In discussing Ms. Braun's past representations, Defendant Marston and her co-host played Defendant Day's video discussing Ms. Braun's representation of Ms. Dempsey.

109.     Upon information and belief, Defendant Marston did not conduct any investigation that involved fact-checking or reaching out to knowledgeable parties to verify the information in Defendant Day's video.

110.     Upon information and belief, Defendants Marston relied on the false information provided by Defendant Day

111.     Defendant Marston acted with malice in that she knew Defendant Day's information was false or held a reckless disregard as to the truth about their statements prior to publishing them.

112.    In a video posted on December 3, 2023, Defendant Marston and her co-host mocked Ms. Braun by mis-pronouncing her name as "Janet" instead of "Jeanette."

113.    In the December 3, 2023 video, Defendant Marston and her co-host identified Ms. Braun by her full name and expressly noted that they intentionally mispronounced her name because it was "fun" but that they were still referring to Ms. Braun.

114.    In the videos, Defendant Marston discussed in detail about Ms. Braun's past representations and clients.

115.    In the video, Defendant Marston played a clip of a video from Ms. Braun's former client.

116.    Defendant Marston and her co-host noted that reputable and known content-creators, such as Alyssa DeFord p/k/a "Bunnie XO" and Kaitlynn Dempsey p/k/a "Demps" hire Ms. Braun to represent them and take down videos that use their likeness or photographs without their permission.

117.    In their December 3, 2023 video, Defendant Marston and her co-host criticized Ms. Braun and her legal practice, calling her unethical and unhinged.

118.    In a since removed post, Defendant Marston publicly accused Ms. Braun of "actively committing perjury."

119.    The below image is an accurate copy of Defendant Marston's



120.    The name "Demps" in Defendant Marston's post refers to Ms. Braun's client Kaitlynn Dempsey.

121.    Upon information and belief, Defendant Marston's followers were aware that Ms. Dempsey was represented by Ms. Braun from Defendant Marston's December 2, 2023 video on the topic.

### Damage to Reputation and Harm to Braun Law and Attorney Jeanette Braun

122.    As a direct result of the false and defamatory statements made by Defendants Day and Marston, and their collective efforts to publicly malign and discredit Plaintiffs Braun and Braun IP Law, an angry internet mob comprising the Defendants' followers was incited.

123.    Through public comments, videos, and messages to members of the internet mob, the Defendants personally fueled and incited the mob with the intention of making Ms. Propson and Ms. Braun endure public humiliation, harassment, and threats of harm and violence against them and their property.

124.    As a direct result of the statements made by the Defendants, the internet mob made online and in-person threats via online comments, direct messages, emails, phone calls, and calls to the police to conduct wellness checks on Ms. Propson.

125.    As a direct result of the statements made by the Defendants, the Defendants comments were made to incite members of the internet mob numerous intimidating communications and threats of harm to Ms. Propson and her children.

126.    As a direct result of the statements made by the Defendants, Plaintiff Braun received threats of violence against her and threats to burn her home down.

127.    In April 2024, Defendants through their counsel, were made aware of the death threats to Defendant Braun and the threat to burn her home. Despite these requests and pleas to

20

make a public comment to stop the harassment, Defendants refused to mitigate the harassment to the Defendants.

128.     As a direct result of the statements made by the Defendants, this Court has received ex parte communications from the internet mob to prejudice and bias the Plaintiff's case before the Court.

129.     The posts and comments published by the Defendants caused their various fans and followers to post negative and 1-Star Google Reviews against Ms. Braun and Braun Law to harm its reputation.

130.     The online harassment has spread across various platforms and into real life. The Defendants have encouraged their followers to view and support disparaging content that spreads the Defendant's false claims by self-proclaimed legal experts and people who are not licensed to practice law. The Defendants actions, false statements, and encouragement of their fans to harass the Plaintiffs, have caused the Defendants' fans to invade Plaintiffs' privacy, file real-life ethics complaints against Ms. Braun, leave false 1-Star business reviews against Braun Law, create and publish harassing images, and publish AI-generated pornography of Ms. Braun on the internet.

131.     As a result of the false and defamatory statements by Defendants Marston and Day, Ms. Braun lost her client Alyssa DeFord p/k/a BunnieXo and her client Monsters and Martians.

132.     Ms. DeFord and Monsters and Martians chose to terminate Ms. Braun's representation because of the online scrutiny caused by the Defendants Day and Marston's false statements and promotion of the online controversy.

133.     Upon information and belief, Defendants Day and Marston conspired with each other and third parties to spread their false statements that Ms. Braun was committing perjury and

that the ARDC was investigating Braun because they had received confirmation that multiple credible complaints about her.

134.    Upon information and belief, Defendants Day and Marston conspired with third-parties to create and post social media content, videos, and forums that are disparaging to the reputation and public image of Ms. Propson, Ms. Braun, and Braun IP Law. Defendants Day and Marston acted with the intent to damage the Plaintiffs' ability to conduct business as a social media influencer and attorney.

## COUNT I

### Defamation *Per Se*
### Against Rebekah Day
### by Plaintiffs Jeanette Braun and Braun IP, Law LLC

135.    Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 135 as if fully set forth herein.

136.    Defendant Day defamed Plaintiffs Braun and Braun Law and made a verifiably false statement by publicly stating that she received "confirmation from the Illinois Attorney Registration & Disciplinary Commission thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter."

137.    These statements are false and were made by Defendant Day to promote her platform's credibility and attack Plaintiff Braun and Braun Law's character and reputation, all for a commercial gain.

138.    The context of Defendant's comments were designed to explicitly and implicitly damage the reputation of Plaintiffs Braun and Braun Law by lowering them in the eyes of the community and deterring the community from associating with them.

139.    Defendant Day made these defamatory statements publicly across multiple social media platforms.

140.    The defamatory statements concerned Plaintiff Braun and Plaintiff Braun Law, as they referenced her by her full legal name, "Jeanette Braun." The average viewer understood the statements to be about Jeanette Braun the owner of Braun IP Law, LLC.

141.    The statements were defamatory because they harmed Plaintiff Braun's and Plaintiff Braun Law's reputation, and caused others to engage in harassing behavior, such as filing ARDC complaints against Plaintiff Braun.

142.    The false statements were defamation *per se* because the harm to Plaintiffs Braun's and Braun Law's reputation is obvious and apparent on its face. The statement that the ARDC told Day they had received confirmation of the ARDC receiving "multiple ***credible*** complaints about Jeanette Braun and they have assigned multiple attorneys to investigate this matter." Being accused of being an "unethical lawyer" that is being investigated due to "multiple credible complaints" painted Plaintiff Braun in a false light and incited others to act against her. This resulted in Plaintiffs Braun and Braun Law losing current clients and potential clients. These statements prejudice Plaintiffs Braun and Braun Law in their profession and harmed their ability to retain new clients.

143.    Defendant Day's statements are verifiably false because the ARDC does not comment on the existence or credibility of complaints or investigations, and no such information was communicated to Day by the ARDC.

144.    Defendant Day's statements are verifiably false because there were not multiple attorneys assigned to investigate Plaintiff Braun.

145.    Defendant Day's posting to TikTok was an unprivileged publication of the false statements to third parties.

146.    As a proximate result of Defendant Day's publication of false statements of fact about Plaintiffs Braun and Braun Law, they sustained injuries to their good name, character, and reputation; all for a commercial gain, so as to establish presumed damages.

147.    As a proximate result of Defendant Day's publication of false statements of fact about Ms. Braun and Braun Law, they were harmed and continue to be harmed in that they have experienced economic and non-economic damages, including emotional distress, mental anguish, harm to reputation, and harm to her career.

148.    Defendant Day's defamatory statements were made with knowledge of their falsity and with a reckless disregard for the truth, all for a commercial purpose, so as to justify an award of punitive damages.

149.    Defendant Day held a reckless disregard for whether Plaintiffs Braun and Braun Law, and their clients, had a good faith basis for their copyright infringement filings, and instead published statements without any proper investigation into the truth of the matter being asserted to make money.

## COUNT II

**Defamation *Per Se*
Against Lily Marston
by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

150.    Plaintiffs Braun and Braun Law repeat and reallege by reference the allegations in paragraphs 1 through 135 as if fully set forth herein.

151.     Defendant Lily Marston is a social media personality with a substantial online following. On or about December 10, 2023, Marston published a post on the social media platform X (formerly Twitter) stating:

> "I gotta say... one of our biggest questions in all of this, is do we think demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her."

152.     This statement was widely understood by the public to refer to Plaintiff Jeanette Braun, who was then publicly known to be representing the country music influencer Kaitlynn Dempsey p/k/a "Demps."

153.     Marston's post accused Braun of actively committing a crime—perjury—in the course of her legal representation of Demps.

154.     Marston's statement is verifiably false. Plaintiff Braun has never committed perjury, nor has she been found by any court or agency to have engaged in any unethical or criminal conduct.

155.     The accusation that Braun is "actively committing perjury" while acting as a lawyer imputes both criminal behavior and a lack of integrity in her profession. As such, the statement is defamatory *per se* under Illinois law.

156.     The statement was made publicly and was accessible to third parties. Upon information and belief, it was shared, liked, and viewed by others, further amplifying its impact and harm.

157.     The statement was not privileged and was not made in a context of opinion, satire, or rhetorical hyperbole. It was presented as a factual assertion regarding Plaintiff Braun's conduct as a lawyer.

158.     Defendant Marston made the statement with actual malice—knowingly, or with reckless disregard as to its falsity—and for the purpose of damaging Plaintiff Braun and Braun Law's professional reputation and inciting public backlash.

159.     As a direct and proximate result of Defendant Marston's false and defamatory statement, Plaintiffs Braun and Braun IP Law, LLC have suffered damage to their reputation, goodwill, emotional well-being, and business relationships, including the loss of clients and prospective clients.

160.     Plaintiffs are entitled to presumed damages due to the defamatory *per se* nature of the accusation, as well as punitive damages based on Defendant's malice, intent, and reckless disregard for the truth.

## COUNT III

**False Light**
**Against Rebekah Day nee Box**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

161.     Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 135.

162.     On or about December 11, 2023, Defendant Rebekah Day posted a TikTok video in which she stated that she "got confirmation from the Illinois Attorney Registration & Disciplinary Commission thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter."

163.     This statement was false. The ARDC does not disclose whether complaints have been filed, whether they are considered "credible," or whether specific attorneys have been assigned to investigate a lawyer. The ARDC made no such statement to Defendant Day or to any member of the public.

164.    Defendant Day's false statement placed Plaintiff Braun in a false light by suggesting she was the subject of an active and serious investigation for professional misconduct by the state agency charged with attorney discipline..

165.    Defendant Day's conduct placed Plaintiff Braun and her law firm in a false light. The false implication that Braun was under professional investigation and the subject of "multiple credible complaints" was highly offensive to a reasonable person, particularly given Braun's public-facing role as an attorney and her reliance on professional integrity and trust in her practice.

166.    Defendant Day made this statement publicly on a social media platform with a substantial audience, and the video was viewed and engaged with by a wide number of individuals.

167.    Defendant Day acted with actual malice; that is, she acted with knowledge that her statements were false or with reckless disregard for whether the statements were true or false.

168.    Defendant Day knew that the implication of misconduct and ongoing disciplinary action was false, or acted with reckless disregard for the truth or falsity of that impression.

169.    Defendant Day intentionally posted several TikTok videos and comments for the sole purpose of creating and monetizing content on her social media profile. Defendant Day had reason to know that her actions had the potential to incite a large number of people to attack and retaliate against Plaintiff Braun and her law firm, and that her allegations needed to be carefully sourced. Nonetheless, Defendant Day made false accusations to attack Plaintiff Braun's and Braun Law's reputation.

170.    As a direct and proximate result of being cast in this false light, Plaintiff Braun suffered reputational harm, emotional distress, and damage to her business relationships and legal practice.

171.    Defendant Day made her statement with actual malice—that is, with knowledge that the implication was false or with reckless disregard for whether it was true. The statement was part of a broader campaign by Defendant Day to discredit Braun online, drive engagement to her own platform, and inflame public outrage.

## COUNT IV

### False Light
### Against Lily Marston
### by Plaintiffs Jeanette Braun and Braun IP, Law LLC

172.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 135.

173.    On or about December 10, 2023, Defendant Lily Marston published a public tweet on X (formerly Twitter) falsely stating that Braun, while acting as an attorney, was "actively committing perjury." The tweet referred to Braun's representation of her client Kaitlynn Dempsey, publicly known as "Demps," and implied that Braun was misusing her client's name in an unethical and criminal manner.

174.    Defendant Marston's false statement placed Plaintiffs Braun and Braun Law in a false light by implying they engage in criminal and dishonest conduct while representing clients. Marston's statement was not couched in hyperbole or opinion but was a factual assertion intended to portray Braun as acting unlawfully in her professional capacity.

175.    Defendant Marston's portrayal would be highly offensive to a reasonable person, especially one in Braun's position as a licensed attorney whose reputation and career depend on trust, ethical conduct, and adherence to the law.

176.    Defendant Marston made the statement with actual malice—that is, with knowledge that the implication was false or with reckless disregard for whether it was true. The

statement was part of a broader campaign by Defendant Marston to discredit Braun online, drive engagement to her own platform, and inflame public outrage.

177.     As a result of Defendant Day's conduct, Plaintiffs were harmed and continue to be harmed through economic and non-economic damages, including emotional distress, mental anguish, harm to her reputation and harm to her career or ethics.

## COUNT V

**Trade Libel**
**Against Defendant Rebekah Day nee Box**
**by Plaintiff Jeanette Braun and Plaintiff Braun Law**

178.     Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 135.

179.     Beginning in or about November 2023, and continuing through the present, Defendant Rebekah Day made false and disparaging statements about the quality and lawfulness of Plaintiffs Braun and Braun Law's professional services. These statements were made orally and in writing to Day's large public audience, including followers on TikTok and other social media platforms.

180.     Specifically, Day stated or implied that Plaintiff Braun and her law firm file "false copyright claims," engage in unethical legal tactics, and operate as a "rogue" or unprofessional legal service. She further implied that Braun lacked the ethical or legal qualifications to represent clients and had been credibly investigated by the Illinois ARDC.

181.     Defendant Day also made the false statement that she "got confirmation from the Illinois Attorney Registration & Disciplinary Commission thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter."

182.    These statements did not merely attack Braun's personal reputation but specifically disparaged the quality and legality of the legal services offered by Braun and Braun Law, thereby constituting commercial disparagement and trade libel.

183.    Defendant Day knew these statements were false or acted with reckless disregard for their truth or falsity. Upon information and belief, she published these statements to increase her social media engagement, promote her personal brand, and raise money through online fundraising campaigns.

184.    As a direct and proximate result of these false and disparaging statements, Plaintiffs Braun and Braun Law suffered loss of current and prospective client relationships, diminished goodwill, and damage to their professional reputation in the legal and creator communities.

185.    Plaintiffs Braun and Braun Law continue to suffer economic harm, emotional distress, and reputational injury. Damages are ongoing and subject to proof at trial but are believed to exceed the jurisdictional minimum of this Court.

## COUNT VI

**Trade Libel**
**Against Defendant Lily Marston**
**by Plaintiffs Jeanette Braun and Braun IP, Law LLC**

186.    Plaintiffs Braun and Braun Law reallege and incorporate as though fully set forth herein, paragraphs 1 through 135.

187.    Beginning in or about November 2023, and continuing through the present, Defendant Marston willfully, without justification or privilege, published orally and in writing false, misleading, and disparaging statements about Plaintiff Braun and her reputation as an attorney, including but not limited to Defendant Marston's followers on numerous platforms. Defendant Marston's statements described in this Complaint improperly disparaged Plaintiff

Braun and her law firm's services and credibility by making the false and misleading accusations that Plaintiff Braun is unethical and commits perjury in her lawsuits.

188.    Defendant Marston acted with actual malice in that she either knew the statements she made were false or that she intentionally failed to conduct an appropriate investigation to determine the truth of her claims and not rely entirely on mere speculation and conjecture.

189.    As a proximate result of Defendant Marston's publication the claim that Plaintiff Braun committed perjury, Plaintiffs Braun and Braun Law's existing and prospective clients have been deterred from hiring and otherwise dealing with her and her law firm. As a further proximate result of Defendant Marston's publication of the above-referenced statements, on information and belief, Plaintiffs Braun and Braun Law have endured, and continues to endure, numerous digital attacks by an angry mob that were incited by Defendant Marston's false statements that Plaintiff Braun lacks ethics as a lawyer and commits perjury in representing her clients.

190.    From these statements, Plaintiff Braun and Plaintiff Braun Law suffered injury to their business and reputation as an attorney and law firm in an amount currently unknown but believed to be more than the jurisdictional minimum for this Court. Once damages have been determined, Plaintiff will seek leave to amend this Complaint or will otherwise inform Defendant of the damages that are sought.

## COUNT VII

**Tortious Interference with Contract**
**Against Defendant Carter**
**by Plaintiff Lauren Propson**

191.    Plaintiff Propson realleges and incorporates as though fully set forth herein, paragraphs 1 through 135.

31

192.     At all relevant times, Plaintiff Propson had a valid and enforceable agreement with the Travel Channel and Pair Eyeware under which she was to appear in a series of digital videos published on a monthly basis, highlighting her professional expertise and public education work as a mortician. The agreement provided for recurring features and compensated content creation.

193.     Defendant Krista Carter was aware of this agreement. Around October 24, 2023, Carter published multiple social media videos in which she falsely accused Propson of being a "TERF," "transphobic," and of liking and promoting "incredibly transphobic and hateful rhetoric and content." These accusations were not based in fact and misrepresented the content and context of Propson's social media activity.

194.     Carter framed her accusations as objective fact by stating that she had "receipts," "deets," and "proof" to support her claims. In reality, Carter's so-called evidence consisted of a misleading and decontextualized list of Propson's social media "likes," which she used to portray Propson as promoting hate-based rhetoric. Carter knew or recklessly disregarded the fact that her accusations could materially harm and damage Propson's reputation.

195.     In addition to her defamatory posts, Carter took \steps to interfere with Propson's contract relationships, such as the Travel Channel, by encouraging others to report or shame the company for working with Propson.

196.     Following Carter's actions, several sponsors including the Travel Channel and Pair Eyeware terminated their contracts with Propson, citing concerns over reputational backlash. Multiple sponsorship discussions and potential collaborations were also abandoned as a result of the reputational fallout.

197.     Carter's interference was intentional and unjustified. Her actions were motivated by animus and retaliation, not public discourse. Carter used her platform to target and harass

Propson, fundraise off the controversy, and elevate her own public profile as a self-styled provocateur. Her conduct was not protected speech, but a campaign of reputational sabotage directed at a known business relationship and to interfere with Propson's economic advantage.

198.    As a direct and proximate result of Carter's conduct, Propson has suffered substantial damages, including lost income, loss of professional opportunities, reputational harm, and emotional distress.

## COUNT VIII

### Tortious Interference with Economic Advantage
### Against Defendant Krista Carter
### by Plaintiff Lauren Propson

199.    Plaintiff Lauren Propson realleges and incorporates by reference Paragraphs 1 through 135 as though fully set forth herein.

300.    At all relevant times, Plaintiff Propson maintained an established and growing presence on social media platforms where she engaged in professional mortuary education, advocacy, and entertainment. Based on her reputation and public profile, she maintained active discussions with multiple brands and content sponsors regarding endorsement deals, collaborations, and content production opportunities.

301.    Plaintiff Propson had a reasonable expectation of entering into additional business relationships and contracts with various media outlets, sponsors, and commercial partners, based on her existing audience engagement, recent inquiries, and past commercial success.

302.    Defendant Krista Carter knew or reasonably should have known that Plaintiff Propson maintained such ongoing and developing commercial relationships. Defendant Carter publicly acknowledged Propson's visibility, influence, and marketability, and was aware that Propson's livelihood depended on public perception and brand collaborations.

303.    Despite that knowledge, Defendant Carter intentionally published multiple defamatory and misleading statements accusing Plaintiff Propson of transphobia and hateful conduct, framing her conduct as bigoted and unethical. These statements were designed to discourage others from working with or supporting Plaintiff.

304.    Carter further encouraged her followers to publicly report and call out Plaintiff Propson for being transphobic through public comments and direct messages.

305.    These actions were done in an attempt to prejudice the public against Plaintiff Propson and to pressure brands to cancel their relationships with her.

306.    Defendant Carter herself responded to follower comments and escalated claims against Plaintiff Propson in ways that directly targeted Plaintiff Propson's professional opportunities.

307.    As a direct and proximate result of Defendant Carter's actions, Plaintiff Propson was wrongfully cast as transphobic and lost multiple sponsorship opportunities and commercial relationships, including but not limited to those with content platforms, product partnerships, and brand sponsorships. These lost opportunities caused financial harm and reputational injury.

308.    Carter's conduct was not justified by any legitimate interest. Her actions were motivated by animus and executed with the intent to cause economic harm to her rival social media influencer. Her statements were malicious and inflammatory characterizations made to damage Plaintiff's professional viability and incite angry mob against her.

(Space Left Intentionally Blank)

<u>**COUNT IX**</u>

**Tortious Interference with Existing and Potential Business Relationships**
**Against Defendants Rebekah Day & Lily Marston**
**By Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC**

200.    Plaintiff Braun and Braun Law reallege and incorporates as though fully set forth herein, paragraphs 1 through 135.

201.    At all relevant times, Plaintiffs Braun and Braun IP Law, LLC maintained ongoing attorney-client relationships and had a reasonable expectation of entering into additional client engagements based on their reputation and continued presence in the legal and creator advocacy space.

202.    Defendants Rebekah Day and Lily Marston were aware, or reasonably should have been aware, that Braun operated an active legal practice and maintained professional relationships with clients, including content creators, influencers, and online entrepreneurs.

203.    Despite this knowledge, Defendants engaged in a coordinated campaign to damage Braun's professional reputation and interfere with her client relationships. Through social media posts, videos, podcasts, and commentary, Defendants accused Braun of filing "false copyright claims," acting as a "rogue attorney," abusing legal processes, being investigated by the Illinois ARDC and committing perjury.

204.    Defendant Marston intentionally posted several Youtube videos and podcast episodes, and multiple tweets, regarding the controversy involving Braun for the sole purpose of monetizing and driving traffic to their social media profiles. Defendants Marston both had reason to know that their actions had the potential to incite a large number of people to attack and retaliate against Plaintiffs Braun and Braun Law, and that their allegations needed to be carefully sourced.

Nonetheless, Defendant Marston accused Plaintiff Braun of being unethical and "committing perjury" to harm Plaintiffs Braun and Braun Law's reputation.

205.    Defendants Day and Marston discussed Plaintiff Braun and Braun Law's clients and past representations.

206.    Defendants' statements were not limited to generalized critique but included specific references to Braun's actual and prospective clients, such as country music influencers Alyssa DeFord p/k/a Bunnie XO and Kaitlynn Dempsey p/k/a "Demps."

207.    Defendants suggested that Braun was engaged in unlawful or unethical representation on behalf of such clients.

208.    As a proximate cause of the Defendants smear campaign and Defendant Day and Defendant Marston's false and defamatory statements, Plaintiff Braun and Braun Law lost work from numerous clients including, Ms. DeFord and Ms. Dempsey.

209.    As a result of Defendants' smear campaign and the resulting harassment directed at Plaintiff Braun and her clients by Defendants' followers, multiple clients, including Bunnie XO and Monsters and Martians, began to distance themselves from Braun Law and Plaintiff Jeanette Braun.

210.    Defendants' false and defamatory statements about Plaintiff Braun's legal practice were made to cause interference with her current clients, and to other content creators from hiring Braun Law for legal representation.

211.    The false statements published by the Defendants interfered with Ms. Braun's existing and prospective client relationships as an attorney. Following Defendant Marston's and Defendant Day's statements, Plaintiff Braun and Braun Law received several 1 star google reviews

for Braun Law, and had clients end their use of Braun Law for legal services out of fear of harassment.

212.   Plaintiff Braun also received numerous ARDC complaints that were filed after Defendant Day and Defendant Marston's posts.

213.   Defendants' past and present false statements on their aforesaid social media platforms caused great damage to Plaintiff Braun and Braun IP Law's business and harm to their reputation. The individual and joint actions of the Defendants were intended to cause and have caused deception of the public, misleading clients and prospective clients of Plaintiff Braun and Braun Law's as to the true characteristics and qualities of their services.

214.   Defendant Day further claimed, in a publicly posted video, that the Illinois Attorney Registration and Disciplinary Commission ("ARDC") told her that Braun was the subject of "multiple credible complaints" and that "multiple attorneys" had been assigned to investigate her. This statement was knowingly false or made with reckless disregard for the truth, as the ARDC does not disclose such investigatory information to the public.

215.   On information and belief, Defendant Day contacted or encouraged others to contact the Illinois ARDC and to leave 1-star Google reviews and public comments to instigate reputational harm and dissuade Braun's clients, or potential clients, from working with her.

216.   The individual and joint actions of the Defendants have disparaged Plaintiff Braun and Braun Law's name in the legal profession, social media services industry, and besmirched their reputation through false and defaming statements as detailed in this Complaint.

217.   Defendants' conduct as aforesaid in disseminating false and disparaging accusations and dissuading the public from dealing with Plaintiff Braun and Braun Law constitutes unlawful interference with Plaintiff Braun and Braun Law's existing and prospective contracts

with its current and prospective clients to their severe damage and detriment, as a result of which Plaintiff Braun and Braun law have suffered damage to their business, harm to their reputations, lost income, attorney's fees, and other economic loss.

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in their favor and against the Defendants, each of them jointly and severally, as follows:

(a) Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, and punitive damages;

(b) Awarding an accounting to Plaintiff for the gains and profits of Defendants arising from the unlawful conduct;

(d) Issuing an order requiring Defendant Krista Carter to retract, remove, and repudiate in full all videos and disparaging statements made regarding Plaintiff Lauren Propson;

(e) Issuing an order requiring Defendants Rebekah Day and Lily Marston to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff Jeanette Braun and Plaintiff Braun IP Law, LLC;

(f) Awarding Plaintiff's attorneys' fees and costs; and

(g) Granting Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
ben@lockyerlaw.com
(312) 881-8983

***Attorney for Plaintiffs***

38