**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, | ) | |
| & LAUREN PROPSON, | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| v. | ) | |
| | ) | |
| REBEKAH M. DAY NEE BOX, KRISTA | ) | |
| CARTER, & LILY MARSTON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS REBEKAH M. DAY AND LILY MARSTON'S MEMORANDUM OF**
**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD**
<u>**AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**</u>

## I.     INTRODUCTION

Plaintiffs Jeanette Braun, Braun IP Law, LLC (collectively "Braun") and Lauren Propson's ("Propson") Third Amended Complaint ("TAC") is yet another attempt to revive claims that this Court has already determined are legally deficient. Despite the Court's clear and reasoned ruling on Defendants' prior motion to dismiss, which dismissed the vast majority of Plaintiffs' claims with prejudice, the TAC repackages the same allegations, dresses them in conclusory assertions, and seeks to transform constitutionally-protected speech into actionable defamation and interference claims. That effort fails as a matter of law.

At its core, the TAC continues to target Defendants Rebekah M. Day ("Day") and Lily Marston's ("Marston") commentary on matters of undeniable public concern: the use of social media platforms, the misuse of copyright takedown procedures, and the credibility of an attorney whose own actions invited scrutiny. The two statements the TAC now focus on—Day's reference to information provided to her by the Illinois ARDC regarding Braun, and Marston's reference to Braun "actively committing perjury"—are either substantially true, incapable of defamatory meaning, or otherwise privileged under well-settled law. Indeed, the TAC itself concedes that the ARDC *did* receive complaints about Braun and assigned "at least one attorney" to investigate the matter at the time of Day's statement, and judicially-noticeable documents from Braun's concurrently-pending action against Marston before the Copyright Claims Board ("CCB") demonstrate that Braun *did* submit a copyright takedown notice "under penalty of perjury" which was later deemed "utterly meritless" by the CCB.  Thus, the Court can and should make a finding that the two remaining statements are "substantially true" at this stage of the pleadings. Further, as explained below, the two statements are unquestionably subject to a qualified privilege under Illinois law, and the TAC's conclusory allegations of "malice" are wholly insufficient to overcome that privilege.

Equally defective are Braun's claims for false light, trade libel, and tortious interference.

Because they rest on the same flawed allegations as the defamation claims, they cannot survive independently. Braun's conclusory assertions of lost business and client relationships—unsupported by specific factual allegations of causation—are precisely the type of speculative pleadings the Federal Rules do not tolerate. In short, Braun has had multiple opportunities to plead viable claims, yet she continues to rely on theories foreclosed by the First Amendment and Illinois law. The TAC offers nothing new that could save these claims from dismissal. Defendants respectfully request that the Court dismiss Counts I through VI and IX of the Third Amended Complaint with prejudice.

## II.     BACKGROUND

### A.     <u>Procedural Background and Prior Motion to Dismiss Ruling</u>.

Propson is a licensed mortician and social media personality with allegedly "millions of followers" on TikTok, and Braun is her lawyer. (TAC, ¶¶ 12-13, 44, 53). On June 30, 2024, Plaintiffs filed a Second Amended Complaint ("SAC") that asserted a total of sixteen (16) counts against Defendants Carter, Day, Marston and Jessica Vazquez ("Vazquez") arising out of allegations that all four Defendants made defamatory or injurious statements about Plaintiffs on social media, in podcasts, or both.[1] [Doc. No. 29]. Defendants moved to dismiss all sixteen claims and on February 28, 2025, the court granted that motion in large part, finding that the vast majority of the statements made by Defendants online (*e.g.*, referring to Propson as a "TERF", stating Braun filed "false copyright strikes" and was "unethical") were non-actionable, constitutionally-protected opinions and dismissing those claims with prejudice. [Doc. No. 59, at pp. 11-20] ("MTD Order").

As to the tortious interference and emotional distress claims, the Court dismissed Braun's claims for tortious interference with existing and potential business relationships against all Defendants without prejudice on the ground that Braun failed to specifically identify the relationships

---

[1] Specifically, Propson asserted claims for defamation, trade libel, tortious interference with contract, and intentional infliction of emotional distress against only Carter, while Braun asserted claims for defamation, false light, trade libel, tortious interference with potential and existing relationships, and intentional infliction of emotional distress against Carter, Day, Marston and Vazquez. (*Id.*)

in which the Defendants allegedly interfered. (*Id.*, p. 22). Finally, the Court dismissed both Plaintiffs' claims for intentional infliction of emotional distress on the grounds that they were based on the nonactionable defamation claims and they failed to allege that Defendants engaged in "extreme and outrageous conduct". While the Court recognized that allegations in the SAC regarding harassment of Plaintiffs by an "online mob" were troubling, it found that Plaintiffs did *not* allege that Defendants themselves engaged in this conduct or directed "the mob" to do so. (*Id.*) Because "Plaintiffs have not identified any authority indicating that a defendant can be liable for intentional infliction of emotional distress based on the actions of non-parties—even if they were inspired by the defendant's otherwise non-actionable conduct," the Court dismissed the claims without prejudice. (*Id.*)

**B.**     **TAC's Allegations Against Day and Marston.**

**1.**     **Braun's Defamation, False Light & Trade Libel Claims.**

The TAC, filed on August 4, 2025, asserts nine causes of action and names only Carter, Day, and Marston as defendants.[2] Counts I through VI are based on the two allegedly defamatory statements that were *not* dismissed with prejudice in the Court's MTD Order. ***First***, Counts I, III, and IV are based on a statement by Day in a TikTok story allegedly posted on December 11, 2023, in which Day stated: "Just got confirmation from the Illinois Attorney Registration & Disciplinary Commission [("ARDC")] thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter." (TAC, ¶ 85). The TAC alleges that this statement is false because the ARDC did not actually communicate this information to Day, the ARDC does not comment on or provide information to the public about investigations or complaints against attorneys, and such investigations are confidential. (*Id.*, ¶¶ 87, 88, 96, 143, 144, 163). While the TAC alleges that Day falsely stated ***that she was told by the ARDC*** that it had received complaints about Braun and that Braun was under investigation, nowhere in the

---

[2] Carter has moved to dismiss the two claims asserted against her in the TAC in a separate Motion to Dismiss filed concurrently herewith.

TAC does Braun allege that she actually was *not* under investigation or that there were in fact no complaints filed against her at the time Day made this statement. The TAC alleges that Day's statement was "defamatory" because it harmed Braun's reputation and "caused others to engage in harassing behavior, such as filing ARDC complaints against Plaintiff Braun." (*Id.,* ¶ 141).

***Second***, Counts II, IV and VI are based on a statement by Marston on X (formerly Twitter) posted on December 10, 2023, in which Marston stated: "I gotta say . . . one of our biggest questions in all of this is do we think demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her." (*Id.*, ¶ 119). As alleged in the TAC, "demps" refers to one of Braun's clients, Kaitlynn Dempsy a/k/a "Demps" ("Dempsy"), and Defendants allegedly posted on social media that Braun filed "false copyright strikes" against a content creator on behalf of Dempsy. (TAC, ¶¶ 70-73, 120-121). In their Motion to Dismiss the SAC, Defendants argued that Marston's use of the phrase "actively committing perjury" in the tweet was not actionable because the tweet did not identify any particular statement made by Braun. (MTD Order, p. 17). When ruling on the Motion to Dismiss, the Court rejected this argument, holding that Marston's tweet "did not lack context", as it "came after an 84-minute podcast episode" that "specifically refers to Braun's representation of a former client and specifically accuses her of committing perjury, a crime, during that representation." (*Id.*)

The "84-minute podcast episode" referred to by the Court in the MTD Order is central to the allegations of the TAC. The TAC alleges that the podcast episode was published to YouTube by Marston and Vazquez on December 2, 2023 as part of their "Do We Know Them?" podcast. In that episode, Marston and Vazquez discuss Braun's past representations and clients, play a clip of a video from Braun's former client, and criticize Braun and her legal practice. (TAC, ¶¶ 103-117). The TAC does not include a link to the episode itself, but the full episode of the "Do We Know Them?" podcast alleged in the TAC can be viewed at: Lauren the Mortician's Lawyer is WAY WORSE Than We

4

Thought + VLOG SQUAD: Where Are They NOW? (Ep 97) (youtube.com) ("Episode 97").[3]

Judicially noticeable documents filed with and issued by the CCB concerning Episode 97 provide critical context for Marston's alleged defamatory statement. Specifically, Braun submitted a notification of copyright infringement (aka a "Takedown Notice") to YouTube under the Digital Millennium Copyright Act ("DMCA"), requesting removal of Episode 97 on the ground that it contained a TikTok video she created and posted, referred to as *Bekah Day False Accusations,* which she claimed was subject to copyright protection. (RJN, Exh. A (the "Takedown Notice")). Braun submitted this Takedown Notice expressly "under penalty of perjury." (*Id*.) It was in this context— Braun's attempt to remove Episode 97 from YouTube by submitting the Takedown Notice under penalty of perjury—that Marston tweeted whether Braun's client "Demps" was aware that Braun was "actively committing perjury." Judicially noticeable documents confirm the basis for Marston's statement: notwithstanding Braun's sworn Takedown Notice, the use of Braun's TikTok video in Episode 97 constituted a "textbook example of fair use."

Specifically, YouTube denied Braun's request and allowed Episode 97 to remain live, in response to which Braun threatened YouTube with litigation. (RJN, Exh. A). Braun then filed a claim against Marston and Vazquez for copyright infringement with the CCB. (RJN, Exh. B (Opening Party Statement for Braun IP Law), at pp. 2-3). Braun admitted that Marston and Vazquez displayed her

---

[3] As this Court held in considering transcripts of television shows and a podcast on which defendants made alleged defamatory statements in ruling on the sufficiency of the complaint: "[w]hile courts normally do not consider such extrinsic evidence without converting a motion to dismiss into one for summary judgment, where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss." *Osundairo v. Geragos,* 447 F.Supp.3d 727, 738 (N.D. Ill. 2020). "This standard is met" where a plaintiff "explicitly refer[s]" to a media appearance "in their Complaint and the very statements at issue were made by Defendants during these media appearances." *Id.* While Braun does not explicitly refer to "Episode 97 of Marston's and Vazquez's podcast 'Where are They NOW?'" in the TAC, it is apparent that this is the Episode in which the defamatory statements were made, as Braun set forth screen shots from this episode in the original Complaint (Dkt. 1, at ¶¶ 89, 91), and a review of Episode 97 reveals that the alleged defamatory statements were made during this episode. Because Braun "explicitly refers" to this episode in the TAC (while not identifying it by the specific episode number), it provides the context to Marston's alleged defamatory statement, and is thus central to the claims, the Court can consider the video itself when determining the sufficiency of the claims. Further, given that the video is over 1 hour and 24 minutes in length, Defendants feel a lengthy written transcript of the entire episode would not be useful to the Court; however, Defendants are happy submit a written transcript of the entire Episode upon the Court's request, should the Court deem it useful.

copyrighted TikTok video during Episode 97 to "comment or critique small segments" of it. (*Id.,* at p. 3 and ¶ 13). The CCB issued a Final Determination in that matter on January 31, 2025, reciting a detailed description of Episode 97 and Marston and Vazquez's use of Braun's TikTok video in Episode 97. (RJN, Exh. C, at pp. 2-7). The CCB concluded that "the weight of the fair use factors clearly favors fair use in this case" and it dismissed Braun's claim with prejudice. (*Id.*, at p. 12). Braun sought reconsideration of this decision and on March 7, 2025, the CCB issued an Order on the Request for Reconsideration, which found that "this case was not close" and Marston and Vazquez's use of Braun's TikTok video in Episode 97 was a "textbook example of fair use." (RJN, Exh. D, at p. 1). The CCB also characterized Braun's arguments that Episode 97 was infringing her copyright as "utterly meritless" (*id.,* pp. 1-2), "strange" (*id.,* p. 4), and "preposterous" (*id.,* p. 5).[4] Again, it was in this context of Braun submitting the Takedown Notice to YouTube "under penalty of perjury," with the CCB finding her claims of infringement lacking any merit and being based on "preposterous" arguments, that Marston made her "perjury" statement.

### 2.     Braun's Tortious Interference Claims Against Day and Marston.

Count IX of the TAC is a claim for tortious interference with existing and potential business relationships by Braun against Day and Marston based on allegations that Braun "maintained ongoing attorney-client relationships and had a reasonable expectation of entering into additional client engagements based on their reputation and continued presence in the legal and creator advocacy space." (TAC, ¶ 200). Braun alleges that Day and Marston "were aware, or reasonably should have been aware, that Braun operated an active legal practice and maintained professional relationships with clients," and "despite this knowledge . . . Defendants accused Braun of filing 'false copyright

---

[4] The CCB further addressed the propriety of the very tactics that Defendants were publicly taking issue with here, stating "[r]ather than trying to identify a specific 'clear error of law,' the Request is dedicated to rearguing the fair use principle, including the first, third, and fourth factors. Again, it would be easy for the Board to deny the Request on that basis alone since every point made by Claimant was already made by her in her party statements. However, it will briefly explain the fair use factors again with the hope that Braun IP might change its tactics in the future." (*Id.*, at p. 3).

claims,' acting as a 'rogue attorney,' abusing legal processes, being investigated by the ARDC and committing perjury." (*Id.,* ¶¶ 202-203). Braun alleges that as a result of Defendants' "false and defamatory statements," Braun "lost work from numerous clients, including Ms. DeFord and Ms. Dempsy" and clients such as Ms. DeFord and Monsters and Martians "began to distance themselves" from Braun. (*Id.,* ¶¶ 207-208). The FAC also alleges that Braun "received several 1 star google reviews," "had clients end their use of Braun Law for legal services out of fear of harassment," and "received numerous ARDC complaints . . . ." (*Id.,* ¶¶ 210-211).

## III. ARGUMENT

### A. The Two Remaining Alleged Defamatory Statements Fail as a Matter of Law.

#### 1. The TAC Fails to Allege That Day's Statement is False.

To state a claim for defamation under Illinois law,[5] a plaintiff must plead facts showing: "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner,* 351 Ill.App.3d 963, 968 (2004). Count I of the TAC fails to satisfy the element of falsity. The TAC alleges that Day's alleged statement is "verifiably false because the ARDC does not comment on the existence or credibility of complaints or investigations, and no such information was communicated to Day by the ARDC." (TAC, ¶ 143; *see also* ¶¶ 88, 97, 163). Nowhere in the TAC does Braun address the central allegation, i.e., that the ARDC *did not* actually receive multiple credible complaints about Braun, nor does it allege that the ARDC was *not actually* investigating Braun at the time Day made this statement. To the contrary, the TAC concedes that the ARDC *did actually* "assign one attorney to review the matter" and that there

---

[5] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases). The TAC alleges that Braun is domiciled in Illinois. (TAC, ¶ 2-3).

***actually were*** complaints filed with the ARDC against Braun. (*Id.,* ¶¶ 99-100).[6]

Without an allegation that the underlying statement is false –that the ARDC actually did not receive multiple credible complaints about Braun and did not actually investigate the matter – this claim cannot survive. *See Wright v. Glover*, 778 F. Supp. 418, 423 (N.D. Ill. 1991) ("Without allegations of falsity there can be no defamation . . .")  The TAC merely alleges Day attributed a statement to the ARDC that is *not* alleged to be false and in fact, is supported by allegations in the TAC itself. If the ARDC *was actually* investigating Braun and had received complaints about her, which the TAC concedes, it is inconsequential where Day said she obtained that information.

"The gravamen of an action for defamation is not the injury to plaintiff's feelings, but damage to his reputation in the eyes of other persons." *Lemons v. Chronicle Publ'g Co.*, 625 N.E.2d 789, 791 (1993). "A statement is defamatory if it impeaches a person's integrity, virtue, human decency, respect for others, or reputation and thereby lowers that person in the estimation of the community or deters third parties from dealing with that person." *Id.* "A defendant is also not liable for a defamatory statement if the statement is true." *See J. Maki Constr. Co. v. Chi. Reg'l Council of Carpenters*, 379 Ill. App. 3d 189, 203 (2008). "Only 'substantial truth' is required for the defense. While determining 'substantial truth' is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established. Substantial truth refers to the fact that a defendant need prove the truth of only the 'gist' or 'sting' of the statement." *Id.*; *Hardiman v. Aslam,* 125 N.E.3d 1185, 1189 (2019) ("To be substantially true does not mean that every detail of the statement needs to be accurate"); *see also Coghlan v. Beck,* 984 N.E.2d 132, 146 (2013) ("allegedly defamatory material is not actionable even where it is not technically accurate in every detail").

Here, the allegations of the TAC, admit that at least one attorney was investigating Braun and

---

[6] While the TAC alleges that Braun had no pending investigations or violations on her record with the ARDC ***at the time the TAC was filed*** (TAC, ¶ 98), that fact has no bearing on whether Day's statement regarding complaints and investigations was true in 2023.

that the ARDC had received complaints about her. (TAC, ¶¶ 99-100). Moreover, the TAC contains no allegation that the ARDC had *not* received any complaints or was *not* conducting any investigation of Braun at the time Day made her statements. Even assuming that the ARDC never communicated this information to Day, which the Court must do at this stage of the litigation, that fact alone would not impeach Braun's integrity, virtue, or human decency and cannot be actionable as defamation. *Lemons*, 625 N.E.2d at 791. For the same reason, the allegation of the TAC that only one attorney was investigating Braun as opposed to "multiple" attorneys does not render Day's alleged statement false. Again, given that the TAC concedes that at least one ARDC attorney was investigating the matter, the "gist" of Day's statement is true, rendering the defamation claim fatally defective.

Further, Day's statement cannot be actionable because it is subject to an innocent construction. "If the statement may reasonably be innocently interpreted, it cannot be actionable *per se.*" *Green v. Rogers,* 234 Ill.2d 478, 500 (2009). In *Green v. Trinity Int'l Univ.,* the court held that statements that students had made complaints over the years about the plaintiff professor, and that the University had discussed these complaints with plaintiff "are capable of innocent construction and do not give rise to a defamation claim." 344 Ill. App. 3d 1079, 1095 (2003). Statements regarding such "complaints" "do not necessarily imply that plaintiff was unskilled or unqualified in his profession, or that he lacked integrity." *Id.* The same can be said here, a statement that the ARDC told Day it was investigating complaints regarding Braun does not "necessarily imply" that plaintiff was unskilled or unqualified as a lawyer and are, therefore, subject to an "innocent construction." *Id.*

### 2. The TAC Fails to Allege That Marston's Statement is False.

Count II of the TAC is based on Marston's tweet (TAC, ¶ 119), which this Court previously ruled made in the context of Marston's December 2, 2023 episode of her podcast "Do We Know Them?" that is also referenced in the TAC, *i.e.*, Episode 97. (MTD Order, p. 17). The TAC alleges that in Episode 97, Marston discusses Braun's past clients, plays a clip of a video from Braun's former client, and criticizes Braun and her legal practice. (TAC, ¶¶ 103-117).

9

As explained in Section II.B.1 *supra*, judicially noticeable documents confirm that Braun submitted the Takedown Notice to YouTube under penalty of perjury, alleging Episode 97 infringed Braun's copyrighted video posted on TikTok. However, as detailed above, both YouTube and the CCB rejected her claim. The CCB specifically found that Marston's use of the video in Episode 97 was a "textbook example of fair use," and it dismissed Braun's claim with prejudice. (RJN, Exh. C). In denying reconsideration, the CCB further described Braun's infringement arguments as "utterly meritless," "strange," and "preposterous." (RJN, Exh. D). Thus, Marston's statement questioning whether Braun's client knew Braun was "actively committing perjury" was grounded in the fact that Braun submitted a sworn DMCA notice based on objectively baseless legal claims. When considered in this context,[7] Marston's alleged defamatory statement was substantially true, regardless of whether a court or agency found Braun liable or guilty of perjury. As explained above, only "substantial truth" is required for the defense of truth, meaning that the defendant need only establish that the "gist" or the "sting" of the statement is true." *Maki*, 379 Ill. App. 3d at 203; *Hardiman v. Aslam*, 175, 125 N.E.3d 1185, 1193 (2019) (holding that statements that plaintiff pleaded guilty to and was convicted of "domestic violence" were substantially true despite the fact that plaintiff actually plead guilty to simple battery). Braun's filing of a DMCA copyright strike against Episode 97 "under penalty of perjury" in the face of two separate rulings by the Copyright Claims Board holding that the Episode was a "textbook example of fair use," demonstrates that Marston's statement that Braun was "actively committing perjury" was substantially true.

### 3. Both Day's and Marston's Statements are Privileged.

---

[7] As demonstrated in the RJN, the Takedown Notice, Opening Statement, CCB Final Determination, and CCB Order on Request for Reconsideration are judicially noticeable. *See, e.g.*, *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (judicial notice proper where proceedings in other tribunals bear directly on issues before the court); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Moreover, it is appropriate for the Court to consider these materials as they relate directly to and are central to the allegations of the TAC. *See e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered… in ruling on the motion to dismiss").

Not only are both statements substantially true, but they are subject to a qualified privilege under Illinois law. "Such a privilege may exist 'where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published.'" *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1214 (N.D. Ill. 2013). "Courts also recognize as privileged communications involving a recognized public interest." *Id.* Whether a qualified privilege exists is a question of law for the court. *Id.* Here, Day's and Marston's statements are privileged because they relate to their own and their viewers' interest in protecting their freedom of speech as social media content creators and *not* being subject to intimidating litigation tactics by Braun on behalf of her clients, as well as the public interest in protective free speech on social media. *Id.; Haywood v. Lucent Tech., Inc.*, 169 F.Supp.2d 890, 917 (N.D. Ill. 2001); *Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D. Ill. 2015). Indeed, the allegations of the TAC demonstrate that Day and Marston's motivation for speaking out against Plaintiffs was to protect content creators like themselves who were being harassed by Plaintiffs and having their content improperly taken down through the misuse of the DMCA. For example, the TAC contains a screenshot of a statement made by Day in a social media post in which she states: "I have just received proof of another VERY large & well liked content creator is utilizing the same attorney that Lauren the Mortician has used (Jeanette) to harass a small creator on this app & misuse the copyright strike system to have her account taken down…" (TAC, ¶¶ 69 & 76). Similarly, Marston explains in Episode 97 how "scary" it would be to the average person to receive the type of cease and desist letters sent by Braun on behalf of her clients, which she uses "as a scare tactic to represent her clients and give the clients what they want, which is usually to…stop being criticized." (*See* Episode 97 link, *supra*, at 6:47-7:13). Thus, Day and Marston, as content creators, have an interest in ensuring that their content and other creators' content is not unjustifiably taken down. Their viewers have an interest in individuals who seek to improperly censor the content they are viewing and/or censoring the viewers' own content. Moreover, there is also a public interest in ensuring that a lawyer is not misusing the DMCA process to silence those who criticize her clients.

Their statements alerting viewers that Braun was being investigated or was submitting DMCA complaints "under penalty of perjury" despite obvious "fair use" reflects that interest. *See e.g., Gerba v. Nat'l Hellenic Museum,* 2019 U.S. Dist. LEXIS 17208, at *21-24 (N.D. Ill. Feb. 4, 2019) (Defendant human resources director had an interest in maintaining the safety of company's employees and statement that staff should call police if the plaintiff was spotted on company grounds reflects defendant's concern in protecting those interests); *Ludlow,* 79 F.Supp.3d at 845 (holding that a 'student's complaint to her university's general counsel regarding an alleged sexual assault by an employee clearly implicates both her interest in her own safety and the university's interest in student safety and the resolution of claims against its employees. There is also a public interest in the reporting and resolution of such claims").

"[O]nce qualified immunity has been identified, a plaintiff may overcome this challenge ***at the pleading stage*** by alleging the statement was made with actual malice - either knowledge of its falsity or in reckless disregard of the truth," but must do so with "***more than conclusory statements***." *Id.* at 845 (emphasis added). Here, the TAC fails to satisfy this burden. With respect to Day's statement regarding the ARDC, the TAC alleges only that Day made the statement "upon information and belief, with actual malice in that she either knew the statement's falsity and had a reckless disregard for the truth." (TAC, ¶ 91; *see also* ¶ 148). The same boilerplate allegation was made with respect to Marston's statement, *i.e.,* "Defendant Marston made the statement with actual malice – knowingly, or with reckless disregard as to its falsity – and for the purpose of damaging Plaintiff Braun and Braun Law's professional reputation and inciting public backlash." (*Id.,* ¶ 158). The *Ludlow* Court found that conclusory allegations that statements were made knowing they were false were insufficient to meet the overcome qualified immunity *at the pleadings stage. Ludlow,* 79 F.Supp.3d at 846 (finding that none of the factual allegations of the complaint created "any kind of inference related to [the speaker's] state of mind when she [made the alleged defamatory statement]"); *compare Gerba,* 2019 U.S. Dist. LEXIS 17208, at *21-24 (holding that plaintiff "has alleged ***facts*** that, considered in the

light most favorable to him, plausibly suggest that … [the] accusations were false or [the speaker] may have entertained serious doubts as to the truth of the accusations") (emphasis added).

While the TAC contains repeated allegations that Day and Marston knew the statements were false, intended to make false statements about her, and  intended to destroy Braun's career, those are nothing more than conclusory assertions – there are no facts demonstrating how the Defendants knew their statements were false or why they would want to destroy Braun's career by making up these false statements about her. The only explanation the TAC provides for Day's statement is that she wanted to "sensationalize her social media post" and "add credibility to her claims". (TAC, ¶ 90). These conclusory allegations of the TAC are nothing more than "rank, and implausible, speculation" and cannot survive a motion to dismiss. *Robinson v. Pfister*, 2019 U.S. Dist. LEXIS 154805, at *11 (N.D. Ill. Sep. 11, 2019) ("Factual allegations must be enough to raise a right to relief above the speculative level…"). The "Seventh Circuit requires allegations to contain 'detail . . . fairly exact' as opposed to an unsubstantiated hunch", and this is particularly true where the statements are made "upon information and belief" as in the TAC. *Abc-Naco, Inc. v. Deruyter*, 1999 U.S. Dist. LEXIS 11025, at *9 (N.D. Ill. July 13, 1999) (holding that plaintiff "must plead more than a mere gut instinct" to support an allegation of malice). Because Braun has failed to plead any facts regarding malice, she cannot overcome the qualified immunity at the pleadings stage.

**B.** **Braun's False Light and Trade Libel Claims Fail as a Matter of Law.**

Because Braun cannot state a claim for defamation against Day or Marston, her claims for false light and trade libel based on the same alleged defamatory statements fail as well. *See Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well"); *Evanger's Cat and Dog Food Co., Inc. v. Thixton,* 412 F.Supp.3d 889, 904 (N.D. Ill. 2019) (same).

**C.** **Braun's Tortious Interference Claim Fails as a Matter of Law.**

In Count IX of the TAC, Braun asserts a claim for tortious interference with existing and

potential business relationships against both Day and Marston based on allegations that Defendants interfered with Braun's "professional relationships with clients, including content creators, influencers, and online entrepreneurs" by "accus[ing] Braun of filing 'false copyright claims,' acting as a 'rogue attorney', abusing legal processes, being investigated by the ARDC and committing perjury." (*Id.,* ¶¶ 200-202).

In dismissing this claim from the SAC, this Court held that a tortious interference claim "requires that the plaintiff specifically identify the relationships in which the defendants allegedly interfered." (MTD Order, p. 22) (citing *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005)). The Court found that because "Braun ha[d] identified no such relationships" in the SAC, "her claim necessarily fails." (MTD Order, p. 22). In the TAC, Braun once again relies on conclusory allegations of Defendants' alleged interference with unidentified "clients." While the TAC does reference *two examples* of relationships with which Defendants allegedly interfered by causing Braun to "lose work" (i.e., "Ms. DeFord and Ms. Dempsey"), listing two examples while still relying on multiple vague references to unidentified "clients" is insufficient to state a claim for tortious interference. (*See* TAC, ¶ 207 (Braun lost work from "numerous clients, including Ms. DeFord and Ms. Dempsey", ¶ 209 (Defendants statements "were made to cause interference with [Braun's] current clients, and to other content creators from hiring Braun . . ."), ¶ 210 (the "false statements interfered with Ms. Braun's existing and prospective client relationships . . . [and Braun] had clients end their use of Braun Law . . . ")). As this Court has ruled, the "specific relationships" with which Defendants have allegedly interfered must be identified (otherwise "lost clients" will be an ever-moving target), and the TAC fails in this regard.[8] Likewise,

---

[8] Equally inadequate is the allegation that Defendants caused certain specific clients to "distance" themselves from Braun. (*Id.,* ¶ 208). As explained above, an essential element of this claim is that Defendants' interference "prevents the plaintiff's legitimate expectations from ripening." *Ali*, 481 F.3d at 944. It is unclear whether a client "distancing itself" from Braun satisfies this element, i.e., did they refuse to hire her for specific matters or did they simply not return a phone call?

allegations that Braun received "several 1 star google reviews"[9] and "numerous ARDC complaints" are insufficient to establish the essential element of interference—namely, that Braun's legitimate expectation of prospective work was actually thwarted. (TAC, ¶ 211). A negative online review or professional complaint does not, in itself, demonstrate a loss of business or work opportunities.

Additionally, the TAC contains no factual allegations establishing that Ms. DeFord and Ms. Dempsey stopped using Braun as legal counsel *as a result of* Day's and Marston's statements. Instead, the TAC relies on a general and conclusory assertion that Braun lost work as a "proximate cause" of Defendants' statements. (TAC, ¶ 207). That simply is not enough to state a claim for tortious interference. *See Hackman v. Dickerson Realtors, Inc.*, 557 F.Supp.2d 938, 948 (N.D. Ill. 2008). Additionally, the TAC is devoid of any factual allegation that Braun had a reasonable expectation of additional legal work from Ms. DeFord or Ms. Dempsey, another essential element of this claim. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) (holding that plaintiff did not plead that he had a reasonable expectation that his relationships would continue longer than they did and nothing in the pleadings suggested that business relationships of longer duration could reasonably have been expected). Because the TAC fails to allege essential elements of Braun's claim for tortious interference, dismissal is warranted under Rule 12(b)(6).[10]

---

[9] The Seventh Circuit has recognized that "[a] person's rating reflects her own preferences, and preferences differ for many reasons" and "there is no measuring tool to gauge the reliability of a one-star rating or a five-star rating." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1132 (7th Cir. 2022)

[10] The TAC is riddled with allegations of conduct by an "online mob" that Braun contends was somehow "incited" by Defendants, and which allegedly caused Braun to "endure public humiliation, harassment, and threats of harm and violence," including "death threats" and "threats to burn down [Braun's] home." (TAC, ¶¶ 94, 122-134). While these allegations are no doubt troubling and disturbing, the alleged conduct of *unidentified* individuals who Braun does not allege are in any way related to Defendants is entirely irrelevant to Braun's defamation and tortious interference claims. As this Court noted in dismissing the emotional distress claims, Braun failed to identify any authority indicating that a defendant could be liable "based on the actions of non-parties—even if they were inspired by the defendant's otherwise non-actionable conduct." (MTD, p. 22). Notably, Braun did not include these failed claims in the TAC, apparently recognizing that no such authority exists. The actions of non-parties are equally irrelevant to Braun's remaining claims. The TAC is devoid of any "**specific, factual allegations**" showing that the members of this anonymous mob ever actually saw two specific defamatory statements at issue or that their conduct occurred as a result of those two statements – the TAC's conclusory allegations that the actions of this "mob" were the "direct result of the statements made by Defendants", are entirely insufficient. *Great N. Ins. Co. v. Shenzhen Gadgetwoo Ecommerce Co.*, 2025 U.S. Dist. LEXIS 49036, at *8 (N.D. Ill. Mar. 18, 2025) (dismissing negligence claim for failure to plead "specific, factual allegations" of proximate cause and finding that "conclusory allegation" that plaintiff's damage was "result" of defendant's breaches was

### III.    CONCLUSION.

Defendants respectfully request that this Court dismiss Counts I -VI and IX of the TAC for failure to state a claim under Rule 12(b)(6).


Dated:  August 27, 2025                              Respectfully Submitted,

                                                     s/     *Brandon J. Witkow*
                                                     Attorney for Defendants

                                                     Brandon J. Witkow [pro hac vice]
                                                     WITKOW | BASKIN
                                                     21031 Ventura Boulevard, Suite 700
                                                     Woodland Hills, California 91364
                                                     (818) 296-9508
                                                     bw@witkowlaw.com


                                                     s/     *Amy Doig*
                                                     Attorney for Defendants

                                                     Amy M. Doig
                                                     COZEN O'CONNOR
                                                     123 N. Wacker Dr., Suite 1800
                                                     Chicago, Illinois 60606
                                                     (312) 474-7900
                                                     adoig@cozen.com

                                                     *Attorneys for Defendants*

---

"insufficient"); *Bolotin v. Apotex Corp.*, 743 F. Supp. 3d 968, 971 (N.D. Ill. 2024) ("when the alleged facts fail to establish proximate causation, then dismissal is appropriate").

## **CERTIFICATE OF SERVICE**

 The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

        Benjamin C.R. Lockyer
        Lockyer Law LLC
        100 N. Riverside Plaza, Suite 2400
        Chicago, Illinois 60606
        ben@lockyerlaw.com

        ***Attorney for Plaintiffs***

Dated: August 27, 2025                           */s/ Brandon J. Witkow*
                                         Brandon J. Witkow