**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, ) | |
| Plaintiffs, ) | Case No. 23 C 16856 |
| v. ) | |
| REBEKAH M. DAY NEE BOX, KRISTA ) CARTER & LILY MARSTON, ) | |
| Defendants. ) | |

## DEFENDANTS REQUEST FOR JUDICIAL NOTICE PURSUANT TO FED. R. EVID. 201

NOW COMES, Defendants Rebekah M. Day Nee Box, Krista Carter & Lily Marston (together, "Defendants"), by and through her undersigned counsel, and hereby requests that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice of the following documents in support of their Memorandum of Points and Authorities in support of the Motions to Dismiss the Third Amended Complaint (the "Memorandum"). In support of their motions, Defendants state as follows:

Exhibit A:     The DMCA Notification sent by Braun IP to YouTube requesting removal of Episode 97 on the ground that it contained a TikTok video she created and posted, referred to as *Bekah Day False Accusations*, filed in the case of *Braun IP Law, LLC v. Jessica Vazquez and Lily Marston,* Copyright Claims Board, Docket No. 23-CCB-0404 the "CCB Action"), filed as Docket 66 (the "Takedown Notice").

Exhibit B: The Opening Party Statement of Claimant Braun IP Law, LLC, dated October 21, 2024, filed in the case of *Braun IP Law, LLC v. Jessica Vazquez and Lily Marston,* Copyright Claims Board, Docket No. 23-CCB-0404 (hereafter, the "Opening Party Statement").

Exhibit C:  The Final Determination of the Copyright Claims Board, dated January 31, 2025, filed in the case of *Braun IP Law, LLC v. Jessica Vazquez and Lily Marston,* Copyright Claims Board, Docket No. 23-CCB-0404 (hereafter, the "Final Determination").

Exhibit D: The Order on Request for Reconsideration of the Copyright Claims Board, dated March 7, 2025, filed in the case of *Braun IP Law, LLC v. Jessica Vazquez and Lily Marston,* Copyright Claims Board, Docket No. 23-CCB-0404 (the "Order on Reconsideration").

Pursuant to Federal Rule of Evidence 201, Defendants respectfully request that this Court take judicial notice of the Takedown Notice, the Opening Party Statement, the Final Determination and Order on Reconsideration filed in in *Braun IP Law, LLC v. Jessica Vazquez and Lily Marston,* Copyright Claims Board, Docket No. 23-CCB-0404.

The CCB is an adjudicatory tribunal established by Congress under the Copyright Alternative in Small-Claims Enforcement ("CASE") Act of 2020, 17 U.S.C. § 1501 *et seq*., and is authorized to render binding determinations in copyright disputes when the parties have consented. The CCB Decision is a matter of public record, maintained by the Copyright Office, and its authenticity cannot reasonably be disputed. *See* Fed. R. Evid. 201(b). Courts routinely take judicial notice of decisions and filings from other tribunals. *See, e.g.*, *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (judicial notice proper where proceedings in other tribunals bear directly on issues before the court); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citations omitted); *BP West Coast Products LLC v. Greene*, 318 F.Supp.2d 987, 994 (E.D.Cal. 2004) ("[j]udicial notice may be taken of court records . . . As

2

such, the court will take judicial notice of the opinions, complaints, briefs, and evidence filed in other actions").

Here, Defendants' Request is appropriate, as it asks the Court to take judicial notice of records from proceedings before the CCB which have a direct relation to the instant action. The documents listed above consist of records from a CCB Action brought by Claimant (and Plaintiff here) Braun IP Law, LLC against Respondents (and Defendant here) Lily Marston (and Jessica Vazquez now dismissed), alleging a claim of copyright infringement of an approximately eight-minute and forty-second long video, titled "Bekah Day False Accusations" (the "Work") as a result of  Respondents use and comment of portions of the Work published to YouTube by Marston and Vazquez on December 2, 2023 as part of their "Do We Know Them?" podcast ("Episode 97"). Episode 97 is the basis for Plaintiff Braun IP Law, LLC's defamation claim against Defendants in the instant action. *See* Third Amended Complaint, ¶¶ 103-117. Accordingly, the CCB Action, including the Final Decision, Order on Reconsideration and the Takedown Notice have a "direct relation" to the instant action, as it arises out of the same allegedly unlawful conduct. Thus, the fact that the CCB Action directly relates to the issues before this Court is beyond dispute.

Defendants therefore request judicial notice of the existence, contents, and finality of the Takedown Notice, Opening Party Statement, Final Determination & Order on Reconsideration.

Dated:  August 27, 2025                                        Respectfully Submitted,


                                                    s/        *Brandon J. Witkow*
                                                    **Attorney for Defendants**

                                                    Brandon J. Witkow [pro hac vice]
                                                    WITKOW | BASKIN
                                                    21031 Ventura Boulevard, Suite 700
                                                    Woodland Hills, California 91364
                                                    (818) 296-9508
                                                    bw@witkowlaw.com

                                                    s/        *Amy Doig*
                                                    **Attorney for Defendants**

                                                    Amy M. Doig
                                                    COZEN O'CONNOR
                                                    123 N. Wacker Dr., Suite 1800
                                                    Chicago, Illinois 60606
                                                    (312) 474-7900
                                                    adoig@cozen.com

                                                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that the foregoing document was filed and

served on all counsel of record noted below via the CM/ECF system of the United States District

Court of the Northern District of Illinois.


        Benjamin C.R. Lockyer
        Lockyer Law LLC
        100 N. Riverside Plaza, Suite 2400
        Chicago, Illinois 60606
        ben@lockyerlaw.com

        ***Attorney for Plaintiffs***


Dated: August 27, 2025                              /s/ *Brandon J. Witkow*
                                                    Brandon J. Witkow

4

**Exhibit A**

Electronically Filed
Docket: 23-CCB-0404
Filing Date: 12/21/2024 12:52:23 PM EST

| From: | Jeanette M. Braun |
|---|---|
| To: | YouTube Copyright |
| Subject: | Re: [4UOK7Y7ME6KE35YZYKLZVEZVWI] YouTube Copyright Complaint Submission |
| Date: | Friday, December 8, 2023 6:11:09 AM |

NOTICE OF INTENT TO LITIGATE-LITIGATION HOLD NOTICE

Dear YouTube,

You are hereby put on notice of the copyright owner's intent to litigate and to name YouTube as a defendant. YouTube has waived its protections under the DMCA.

Should YouTube possess a general liability insurance policy or a comparable coverage, it may be required to send this letter to them within 24 hours of receipt. Neglecting to do so may lead to the insurance policy declining coverage for your defense. Additionally, please furnish me with the name of your insurance carrier within the same timeframe.

To protect against spoliation of data, YouTube must stop all data deletion and destruction processes it has for the YouTube account DO WE KNOW THEM.

YouTube must notify all those involved with this matter to preserve any and all data and documents in their files or in those that they can access. This would include both hard copy documents and electronic or magnetically stored data.

Electronic data includes but is not limited to the following:

• All communications by email, gmail, Blackberry (or similar device), and other electronic means
• Text files
• Files on shared servers
• Databases
• Calendar entries
• Computer system activity logs
• Internet usage files
• Backup tapes
• Internal network applications

Other potentially relevant files or data include:

• Files stored on hard drives
• Laptops
• i-Pads, Notebooks, etc.
• Home computers
• Handheld devices
• Diskettes
• CD's
• DVD's
• Smartphones
• "Thumb drives"
• Voice-mail
• Video tape
• Twitter
• On-line social media sites

Those potentially having information regarding this matter who should be notified are those that determined the copyright owner's rights were not violated, as well as the head of the intellectual property department, or anyone who may possibly have relevant materials. Please verify compliance with those having been notified. Any information created following this notice is also subject to e-discovery and a litigation hold. Periodic requests and updates are required.

Very truly yours,
Jeanette M. Braun

On Fri, Dec 8, 2023 at 5:44 AM YouTube Copyright <youtube-disputes+2mquwaqobqfgk07@google.com> wrote:



Hi Jeanette M. Braun,

Thank you for your response. We've reviewed it and provided updates below.

## Request declined

We remain concerned that your copyright notification isn't valid for some or all videos identified in your notification. As a result, the content will remain live on YouTube.

If you have concerns about harassment, your privacy, safety, or other abuse issues, please visit our Policy and Safety Hub to help you better understand your situation as well as where to report such content.

If appropriate, you may submit a complaint regarding other legal issues (including trademark and defamation).

Videos in question:

https://www.youtube.com/watch?v=FWDqzt59xI4

| | Video (Internet video) |
|---|---|

Title of your video: Bekah Day False Accusations

Content found in: 0:22:40 to 1:24:08

---

To learn more about copyright, go to YouTube's Copyright Center. If you still think this copyright removal request is valid, you may appeal this decision. Learn more about your resolution options.

You may take back your claim of copyright infringement at any time if you change your mind.

- The YouTube Team

---

Here is the information you filled in:

Copyright Owner Name (Company Name if applicable): Braun IP Law, LLC
Your Full Legal Name (Aliases, usernames or initials not accepted): Jeanette M. Braun, Esq.
Your Title or Job Position (What is your authority to make this complaint?): Self/Owner
Address:
1600 W. Lake Street Suite 103B
Addison, IL 60101
US
Username: Jeanette M. Braun
Email Address: jmbraun@brauniplaw.com
Phone: 3123730330
URL of allegedly infringing video to be removed:
https://www.youtube.com/watch?v=FWDqzt59xI4
Describe the work allegedly infringed: My video
  - Title of video: Bekah Day False Accusations

- Source of video:
  https://www.tiktok.com/@braunlaw/video/7306554494966336810
- Type of video: Internet video
- Where does the content appear?
  The content appears in the targeted video from 0:22:40 to 1:24:08 :
  https://www.youtube.com/watch?v=FWDqzt59xI4&t=1360
  It appears in your source video:
  https://www.tiktok.com/@braunlaw/video/7306554494966336810

Country where copyright applies: US
I state UNDER PENALTY OF PERJURY that:
- I am the owner, or an agent authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
- I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
- This notification is accurate.
- I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages.
- I understand that abuse of this tool will result in termination of my YouTube channel.

Authorized Signature: Jeanette M. Braun, Esq.

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.



© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

On Dec 6, 2023 jmbraun@brauniplaw.com wrote:

Also, the copyright for the stolen art has been registered.  Please see attached.

On Wed, Dec 6, 2023 at 6:39 AM Jeanette M. Braun <jmbraun@brauniplaw.com> wrote:

Please explain to me how the owner's rights are not being violated. If YouTube is going to act as a judiciary here, when the original art was not posted by the owner on YouTube, provide me with an explanation as to why you have ruled how you have.  Using Justice Souter's analysis in the U.S. Supreme Court Decision Campbell v. Acuff-Rose Music (92-1292), 510 U.S. 569 (1994), no fair use would be found.  Your request for more information requires me to provide you with information that is attorney work product and attorney client privileged.  I will not provide that information without a subpoena from a court or without it being under seal.  If YouTube would like the protections under the DMCA, it must remove the stolen art.  If YouTube decides not to remove the stolen art, please institute a litigation hold for the reported account and do not delete any electronic data YouTube has stored for the reported video or reported account, which is a habitual violator of copyright rights.  The owner has the intent to institute litigation and reserves all rights and remedies available to it.

This ridiculous back and forth is increasing the damage every day the stolen art remains on YouTube.

On Wed, Dec 6, 2023 at 3:23 AM YouTube Copyright <youtube-disputes+2mquwaqobqfgk07@google.com> wrote:



Hi Jeanette M. Braun,

Thank you for your response. We've reviewed your request and need some more information from you before we can proceed. Please read the entire email carefully for a complete update of each video's status.

Add video details Action needed

We are concerned that your copyright notification may not be valid for the video(s) listed below. Please keep in mind that in many countries, it is legal to use copyrighted works in specific ways without the owner's authorization, particularly for transformative purposes such as news reporting, parody, commentary, or review.

Some countries protect such uses under doctrines of "fair use" or "fair dealing," while others allow for specific exceptions to copyright protection.

Learn more about fair use in the United States.

If you still believe your copyright is infringed by the YouTube video(s) identified below, please explain in detail why you think so. We ask that you provide more detail than was included in your initial notice. Here are questions you may wish to consider:

How much of your copyrighted work is used? How is the market for your original work affected by this use? Does this use significantly transform your original work, or does it serve the same purpose? Does this use fall into an exception to copyright protection? Please note that we may share your response with the uploader(s).

Videos in question:

https://www.youtube.com/watch?v=FWDqzt59xI4

 Video (Internet video)

Title of your video: Bekah Day False Accusations

Content found in: 0:22:40 to 1:24:08

You may take back your claim of copyright infringement at any time if you change your mind.

- The YouTube Team

Here is the information you filled in:

- Copyright Owner Name (Company Name if applicable): Braun IP Law, LLC
- Your Full Legal Name (Aliases, usernames or initials not accepted): Jeanette M. Braun, Esq.
- Your Title or Job Position (What is your authority to make this complaint?): Self/Owner
- Address:
  - 1600 W. Lake Street Suite 103B
  - Addison, IL 60101
  - US
- Username: Jeanette M. Braun
- Email Address: jmbraun@brauniplaw.com
- Phone: 3123730330
- URL of allegedly infringing video to be removed: https://www.youtube.com/watch?v=FWDqzt59xI4
- Describe the work allegedly infringed: My video
  - Title of video: Bekah Day False Accusations
  - Source of video: https://www.tiktok.com/@braunlaw/video/7306554494966336810
  - Type of video: Internet video
  - Where does the content appear? The content appears in the targeted video from 0:22:40 to 1:24:08 : https://www.youtube.com/watch?v=FWDqzt59xI4&t=1360

It appears in your source video:
https://www.tiktok.com/@braunlaw/video/7306554494966336810

- Country where copyright applies: US
- I state UNDER PENALTY OF PERJURY that:
  - I am the owner, or an agent authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
  - I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
  - This notification is accurate.
  - I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages.
  - I understand that abuse of this tool will result in termination of my YouTube channel.
- Authorized Signature: Jeanette M. Braun, Esq.

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.



© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

On Dec 4, 2023 jmbraun@brauniplaw.com wrote:

Hello,

Title: Bekah Day False Accusations
Type: Video  Here is the link to my original publication: https://www.tiktok.com/@braunlaw/video/7306554494966336810
Date Authored: November 29, 2023
By Whom: Me and the rights are owned by my company through work for hire or assignment.
Specific Timestamps: 22:41-23:01 and 47:03-48:03

Please remove my stolen art from YouTube.  I never published it on YouTube and no authorization was given to the thief to use my work for any purpose.

On Mon, Dec 4, 2023 at 5:24 AM YouTube Copyright <youtube-disputes+2mquwaqobqfgk07@google.com> wrote:



Hi Jeanette M. Braun,

Thank you for your removal request. We've reviewed your request and need some more information from you before we can proceed. Please read the entire email carefully for a complete update of each video's status.

Add video details Action needed

Your identification of the specific copyrighted work at issue is unclear. To identify the specific work allegedly infringed, answering some or all of the following questions will be helpful:

- Required:
  - What is the title of your copyrighted work? If your work is untitled, give a description of the contents in the work.
  - What type of copyrighted work is it?
- Encouraged:
  - When was it authored?

- By whom was it authored?
- If portions of your work appear in this video, what are the specific timestamps in which this occurs?

Videos in question:

https://www.youtube.com/watch?v=FWDqzt59xI4

 Video (Internet video)

Title of your video: Bekah Day False Accusations

Content found in: 0:22:40 to 1:24:08

You may take back your claim of copyright infringement at any time if you change your mind.

- The YouTube Team

Here is the information you filled in:

- Copyright Owner Name (Company Name if applicable): Braun IP Law, LLC
- Your Full Legal Name (Aliases, usernames or initials not accepted): Jeanette M. Braun, Esq.
- Your Title or Job Position (What is your authority to make this complaint?): Self/Owner
- Address:
  - 1600 W. Lake Street Suite 103B
  - Addison, IL 60101
  - US
- Username: Jeanette M. Braun
- Email Address: jmbraun@brauniplaw.com
- Phone: 3123730330
- URL of allegedly infringing video to be removed:
  https://www.youtube.com/watch?v=FWDqzt59xI4
- Describe the work allegedly infringed: My video
  - Title of video: Bekah Day False Accusations
  - Source of video:
    https://www.tiktok.com/@braunlaw/video/7306554494966336810
  - Type of video: Internet video
  - Where does the content appear?
    The content appears in the targeted video from 0:22:40 to 1:24:08 :
    https://www.youtube.com/watch?v=FWDqzt59xI4&t=1360
    It appears in your source video:
    https://www.tiktok.com/@braunlaw/video/7306554494966336810

- Country where copyright applies: US
- I state UNDER PENALTY OF PERJURY that:
  - I am the owner, or an agent authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
  - I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
  - This notification is accurate.
  - I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages.
  - I understand that abuse of this tool will result in termination of my YouTube channel.
- Authorized Signature: Jeanette M. Braun, Esq.

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.



© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

On Dec 3, 2023 YouTube Copyright



## Copyright Infringement Notification Confirmation

Thank you for submitting a copyright takedown request. Your request will be reviewed to make sure it's valid and includes all required elements.

In your request, you have asked that we remove the videos and prevent any copies from being uploaded in the future. We'll reply to this email when we've taken action on your request.

To check the status of your takedown request, go to the 'Removal requests' tab in YouTube Studio's Copyright page. From here, you can also turn off the "Prevent copies" feature. This is the feature that makes best efforts to prevent copies of the videos you asked us to remove from being reuploaded to YouTube.

Keep in mind that this feature should only be selected when you have exclusive worldwide rights to the content specified in your takedown request.

Here is the information you gave us:

- Copyright Owner Name (Company Name if applicable): Braun IP Law, LLC
- Your Full Legal Name (Aliases, usernames or initials not accepted): Jeanette M. Braun, Esq.
- Your Title or Job Position (What is your authority to make this complaint?): Self/Owner
- Address:
  - 1600 W. Lake Street Suite 103B
  - Addison, IL 60101
  - US
- Username: Jeanette M. Braun
- Email Address: jmbraun@brauniplaw.com
- Phone: 3123730330
- URL of allegedly infringing video to be removed:
  https://www.youtube.com/watch?v=FWDqzt59xI4
- Describe the work allegedly infringed: My video
  - Title of video: Bekah Day False Accusations
  - Source of video:
    https://www.tiktok.com/@braunlaw/video/7306554494966336810
  - Type of video: Internet video
  - Where does the content appear?
    The content appears in the targeted video from 0:22:40 to 1:24:08 :
    https://www.youtube.com/watch?v=FWDqzt59xI4&t=1360
    It appears in your source video:
    https://www.tiktok.com/@braunlaw/video/7306554494966336810

- Country where copyright applies: US
- I state UNDER PENALTY OF PERJURY that:
  - I am the owner, or an agent authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
  - I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
  - This notification is accurate.
  - I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages.
  - I understand that abuse of this tool will result in termination of my YouTube channel.
- Authorized Signature: Jeanette M. Braun, Esq.

- The YouTube Team

**Exhibit B**

Electronically Filed
Docket: 23-CCB-0404
Filing Date: 10/21/2024 11:02:04 PM EDT

## IN THE UNITED STATES COPYRIGHT CLAIMS BOARD

| | |
|---|---|
| BRAUN IP LAW, LLC<br>*CLAIM*<br><br>v.<br><br>JESSICA VAZQUES &<br>LILY MARSTON<br>*RESPONDENTS* | Case No: 23-CCB-0404 |

### <u>OPENING PARTY STATEMENT FOR CLAIMANT BRAUN IP LAW, LLC</u>

**<u>Introduction</u>**

1.  Braun IP Law, LLC ("Braun IP Law" or "Claimant"), by and through its attorney, John J. Mariane, hereby presents its Opening Party Statement and swears and asserts, under penalty of perjury, that all facts stated herein are true and correct to the best of Claimant's and the undersigned's personal knowledge.

2.  Braun IP Law is a limited liability company organized and existing under the laws of the State of Illinois with a contract address of 1600 W. Lake St., Suite 103B, Addison, Illinois 60101. The principal attorney of Braun IP Law is Jeanette M. Braun, an attorney actively barred with the State of Illinois and is in good standing with the state's Attorney Registration and Disciplinary Commission (ARDC).

3.  Lily Marston ("Respondent Marston") is a citizen of the state of California. Jessica Vazquez ("Respondent Vazquez") is a citizen of the state of Georgia. Both Respondent Marston and Respondent Vazquez (the "Respondents") are the owners of the "Do We Know Them" podcast (the "Podcast").

4.      Claimant and the Respondents (the "Parties") have consented to the jurisdiction and venue of the Copyright Claims Board (CCB) and have agreed to adhere to its procedures and rules to resolve the present copyright dispute.

**Factual Background**

**Claimant has a valid copyright in the work.**

5.      On November 28, 2023, Braun IP Law published a video onto the platform Tik Tok (the "Work") under its account @Braunlaw.  *See* attached "Bekah_Day_False_Accusations" video file ("Exhibit A").  Jeanette M. Braun, as the principal attorney of Braun IP Law, scripted, shot, and recorded the Work on behalf of Braun IP Law.  As such, Braun IP Law is the sole author and owner of the Work.

6.      On December 5, 2023, Braun IP Law filed an expedited application to register its copyright in the Work with the U.S. Copyright Office.  *See* attached "U.S. Copyright Office Application – Confirmation of Receipt" email ("Exhibit B").

7.      On December 6, 2023, the Copyright Office approved of Claimant's application and issued the registration of copyright as of December 5, 2023.  *See* attached "SR Num: 1-13267451763" email ("Exhibit C").

8.      The Copyright Registration Number for the Work is PA 2-443-503.  *See* attached "PA2443504 Office Certificate of Registration" file ("Exhibit D").

9.      A registered copyright is presumed to be valid.  *See Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F. 3d 522, 534 (6th Cir. 2004).  Respondents do not dispute the validity of the copyright in their answers.

**Respondents Unauthorized Use and Infringement.**

10.     Upon information and belief, Respondents publish episodes of their Podcast on several audio-visual platforms, such as YouTube, Spotify, Apple Podcasts, Google Podcasts, Castbox, Audioboom, RSS Pocket Casts, Overcast, Bullhorn, Castro, Player FM, Podcast Addict, Podbean, Podhero, Podcast Guru, Podfriend, RadioPublic, and Sonnet.

11.     On December 2, 2023, Respondents published a video to their YouTube channel titled "Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where Are They NOW?" (the "Video").  *See* attached "Lauren the Mortician's Lawyer is WAY WORSE (Ep 97)" video file ("Exhibit E").  Also on December 2, 2023, Respondents published audio-only versions of the Video to several other platforms, such as Spotify, Apple Podcasts, and Google Podcasts to name a few.

12.     In the Video, Respondents copied and used over a minute of Claimant's Work and the portion infringed is the heart of the work.  *See* Exhibit E at timestamp 47:02-48:03.

13.     The heart of the Work was displayed in its entirety within the Video, without cuts or edits, or the Respondents breaking up the heart of the Work to comment or critique small segments of said Work.  The portion infringed is an exact copy the heart of the Work and acts as a substitute of the original.  *See* Exhibits A and E.

14.     At no point did Respondents seek authorization or permission from Braun IP Law to use the Work in the Video.  At no point did Braun IP Law authorize or permit Respondents to use the Work in the Video, as Respondents admit in their respective Answers.  Specifically, as Respondent Vazquez stated in her Answer, "I was not given permission by the Claimant to use the Work," and Respondent Marston similarly admitted in her Answer that "no formal authorization was granted."

- 3 -

15.     Respondents, by uploading the heart of the Work to YouTube, gave YouTube a nonexclusive perpetual license to YouTube and Google to use said Work in any way it wants.  *See* Exhibit F for YouTube's Terms of Service.  At no point did Braun IP Law grant a license in the Work to Respondents or to YouTube/Google, or otherwise transfer any rights, titles, or interests in the Work to Respondents.

16.     Respondents had access to the Work in its entirety as it was originally published publicly on the platform Tik Tok, as Respondents admit in their Discovery Answers.  *See* Exhibit G for Respondents' Interrogatory Answers.  Respondents admit of that they copied the Work, distributed a substantial portion the Work (over a minute), publicly performed the portion of the Work, and publicly displayed a portion of the Work.  *See* Respondent Marston's Answer and Respondent Vazquez's Answer: Respondent Vazquez stated that they "had access to the Work as it was publicly available on TikTok," and Respondent Marston also admits that they "used portions of the Work from TikTok."

17.     The only point of dispute between Claimant and Respondents is whether Respondents' use of the Work in the Video constitutes fair use.  *Id.*

18.     On December 3, 2024, Braun IP Law sent an email to YouTube requesting that YouTube remove the Video from the platform under the DMCA.  *See* attached "[4UOK7Y7ME6KE35YZYKLZVEZVWI] YouTube Copyright Complaint Submission" email ("Exhibit H").

19.     To date, the Video remains publicly accessible on YouTube and has been viewed over 209,000 times.  Also to date, the audio-only version of the Video remains publicly accessible on at least seventeen other platforms, including but not limited to Spotify, Apple Podcasts, Google

Podcasts, Castbox, Audioboom, RSS Pocket Casts, Overcast, Bullhorn, Castro, Player FM, Podcast Addict, Podbean, Podhero, Podcast Guru, Podfriend, RadioPublic, and Sonnet.

**Claimant has suffered substantial damages as a result of Respondent's use.**

20.     Claimant uses a standard licensing agreement to allow licensees to "incorporate the [Work] into any materials desired, modify the [Work], and to reproduce, distribute, import and sell [the] modified [Work] on any optical media in print or electronically" in exchange for $7,500.00 USD.  *See* attached "BIP Example License Agreements" file ("Exhibit I").

21.     Respondents earned approximately $4,226.61 USD in revenue from the Video on YouTube.  *See* attached "DWKT Ep 97 Analytics_Revenue" file ("Exhibit J").  Respondents also earned approximately $1,236.24 for the month of December, 2023 for audio-only episodes of the Podcast posted on various platforms other than YouTube.  *See* attached "Red Circle Monthly Earnings" file ("Exhibit K").

22.     Claimant registered its copyright in the Work within 3 months of Respondent's publication of the Video.  *See* Exhibit D.  Further, Respondents have a basic understanding of copyright law—*e.g.*, by articulating the standards of fair use and citing relevant case law on the subject.  *See* Respondent Vazquez's Answer.

23.     Claimant is seeking statutory damages in the amount of no less than $12,962.85 USD.

**Arguments**

**The Only Matter at Issue is Respondents' Affirmative Defense of Fair Use.**

24.     Respondents do not dispute the validity of Claimant's copyright in the Work.  *See* Respondents' Answers.  Respondents admit they had access to, reproduced, displayed, and performed portions of the Work within the Video without Claimant's authorization or permission.

*Id.* The only issue Respondents raise is whether or not their use of the Work within the Video was fair.

**Relevant Legal Standards**

25.    There is no presumption of fair use.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994).  Rather, fair use is an affirmative defense that must be raised and argued by a defendant.  *See Harper & Row v. Nation Enterprises*, 471 U.S. 539, 561 (1985).

26.    As an affirmative defense, the burden of proving fair use falls on the defendant.  *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).

27.    As established by statute, there are, at a minimum, four fair use factors that are to be weighed: "(1) the purpose and character of the use…, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work."  *See* 17 U.S.C. § 107.

28.    Fair use is determined on a case by case basis and there is no use that is automatically determined fair use.  *See Andy Warhol Foundation for the Visual Arts v. Goldsmith, Et. Al.*, 143 S. Ct. 1258, 1262 (2023).

29.    The four statutory fair use factors, as set forth in *Campbell v. Acuff-Rose Music Inc.,* 510 U.S. 569, and the first factor clarification given in *Andy Warhol Foundation for the Visual Arts v. Goldsmith*, 143 S. Ct. 1258, must be utilized in the analysis of this case.

30.    Given the Supreme Court's decision in *Warhol v. Goldsmith* in 2023, many prior court rulings on fair use may no longer be reliable precedents.  This landmark decision provided significant clarifications on the interpretation of the fair use doctrine, particularly emphasizing the necessity of the Defendant's use in achieving a transformative purpose.  As a result, earlier rulings

- 6 -

that did not account for these refined standards may have been effectively superseded or diminished in relevance.

**Respondents' Use of the Work in the Video was not Fair.**

**Purpose and Character of the Use**

31.     The first fair use factor weighs in Claimant's favor.

32.     The first factor examines whether the use is for a commercial purpose or if it is transformative in nature.

33.     While Respondents will argue that their use of the Work in the Video is "transformative" to the extent it offers critique, criticism, analysis, and/or news reporting, as noted above, this determination is no longer dispositive in light of *Warhol*.  Rather, under *Warhol*, the Supreme Court emphasizes that the inquiry should focus on whether the use was necessary to achieve the new purpose or meaning claimed by the user.  *Warhol*, 143 S. Ct. at 1276.

34.     The original work provided two functions: (1) to provide Jeanette Braun's (and Braun IP Law's) side of an online dispute between her and another online content creator, and (2) to commercially generate revenue as a piece of audio-visual media.

35.     Respondents' use of the Work is the same as Claimant: (1) Respondents present Jeanette Braun's (and Braun IP Law's) side of an online dispute between her and another online content creator by displaying the heart of the Work within the Video and (2) Respondents commercially generated revenue from the Video using the Work as a piece of audio-visual media.

36.     Also, in *Warhol*, the Supreme Court looked at whether the taking of the copyright protected work was necessary to create the new/infringing work.  "The court correctly rejected the idea 'that any secondary work that adds a new aesthetic or new expression to its source material is necessarily transformative.'" *Warhol*, 143 S. Ct. at 1283.

37.     In this case, Respondents' use of over one minute of the Work was not necessary to achieve any transformative or new purpose.  Respondents merely displayed the heart of the Work in its original, unmodified form.  While parodies, for example, often require some degree of "taking" from the original work to evoke the original and create a parody, as the Court noted in *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. at 580-81, no such necessity exists here.

38.     Respondents did not create a parody, critique, or provide commentary that required taking of Claimant's Work.  Instead, Respondents simply displayed the Work as-is, which was not necessary for the alleged purpose of commentary or discussion.

39.     Furthermore, Braun IP Law's Work is licensed perpetually to TikTok, under which the Claimant receives in-kind compensation in exchange for licensing rights.  *See* Exhibit L for the TikTok License Agreement and in-kind compensation.  This includes access to TikTok's commercial music library, video editing software, and enhanced search engine optimization (SEO).  *See* Exhibit M for examples of the monetary value of the in-kind compensation.

40.     Braun IP Law received in-kind and just compensation from TikTok.

41.     Therefore, the taking of the Work was excessive and unnecessary under *Warhol*, and this factor weighs heavily against fair use.

42.     "In sum, if an original work and secondary use share the same or highly similar purposes, and the secondary use is commercial, the first fair use factor is likely to weigh against fair use, absent some other justification for copying."  *Warhol*, 143 S. Ct. at 1263.

## Nature of the Copyrighted Work

43.   The second factor, which considers the nature of the copyrighted work, also favors the Claimant.

44. The Work is a creative, original audiovisual piece entitled to at the least, a mid-level of protection under copyright law. Creative works, such as audiovisual content, are generally afforded stronger protection than factual or informational works.

45. Braun IP Law's Work, in particular, is a scripted and produced video that comprises set design and other artistic elements and presents the Claimant's perspective in an ongoing online dispute. This type of original, creative content is designed to attract attention, build the Claimant's brand, and generate engagement and revenue on platforms like TikTok. Therefore, the creative nature of the Work strengthens the Claimant's position that Respondents' unauthorized use weighs against a finding of fair use.

**Amount and Substantiality of the Use**

46. The third fair use factor weighs in Claimant's favor.

47. The third factor considers both the quantity and the quality of the portion used. The Supreme Court, in *Warhol*, noted that when assessing fair use, it is important to evaluate whether "the amount taken was reasonable in relation to the purpose of the copying." *Warhol*, 143 S. Ct. at 1277. Here, the Respondents' use of over one minute of the Work is excessive given their purpose, which was to create a Video for the same purpose as Claimant's purpose.

48. Moreover, unlike parodies, which require the original work to be recreated to convey humor or commentary, Respondents did not recreate Claimant's video. Rather, they took Claimant's original video when they did not need to take any portion of the Work to achieve their purpose.

49. In *Campbell v. Acuff-Rose Music Inc.*, the Supreme Court explained that parodies often need to take recognizable parts of the original work in order to "conjure up" the original.

- 9 -

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994).  However, Respondents' use here is not a parody and does not involve any recreation or alteration of the Work.

50.    Instead, Respondents took the original, unaltered heart of Claimant's Work and simply incorporated it into their video and podcast, which was unnecessary and disproportionate.  Thus, the excessive use of a substantial portion of the Work, without any modification, weighs heavily against fair use.

51.    Respondents did not use a minimum amount of the Work to make their points in the Video.  While Respondents will argue that they only selected and displayed the relevant portions of the Work to make their points, the fact of the matter is that Respondents did not need to display any portion of the Work at all.

52.    For example, Respondents could have selectively quoted from Claimant and paraphrased the rest of the Work.  Similarly, Respondents could have provided the direct link to it in the description of the Video.

53.    Thus, because Respondents did not need to use the Work at all, or did not use a minimal amount of the Work and they took the heart of the Work, the third fair use factor weighs in Claimant's favor.

### Effect on the Potential Market

54.    The fourth fair use factor weighs in Claimant's favor.

55.    The fourth fair use factor—the effect of the use on the potential market for the copyrighted work—carries significant weight and favors the Claimant.

56.    The Respondents' unauthorized use of the Work directly harms Braun IP Law's ability to control the commercial exploitation of its content. The Respondents' reproduction of a substantial

part of the Work for commercial gain interferes with the Claimant's ability to license or monetize the Work on other platforms, including TikTok and beyond.

57.     Respondents took the Work, distributed it across at least 18 different platforms within days of Braun IP Law publishing the Work, and destroyed the market for the Work.

58.     Braun IP Law receives in-kind compensation from TikTok in exchange for licensing the Work, including access to the platform's advanced commercial music library, video editing software, and improved visibility through TikTok's SEO advantages.  Further, Respondents licensed the Work to the at least 18 platforms, and they receive in-kind compensation from each platform.

59.     By reproducing the Work without permission, Respondents disrupted Braun IP Law's ability to control and benefit from this license, thereby causing significant market harm. Moreover, the Respondents generated revenue from the unauthorized use of the Work on platforms like YouTube, earning approximately $4,226.61 in ad revenue from YouTube and an additional $1,236.24 from audio platforms.

60.     Both Claimant and Respondent are in the same market of online content creator and influencer by generating and publicly publishing videos on social media platforms.  Respondents profited from the infringing use while reducing Braun IP Law's ability to benefit from its own Work.  As both parties operate within the same online content market, Respondents' infringement causes direct economic harm by undermining Braun IP Law's potential revenue streams.  This is further highlighted by the fact that both Claimant and Respondent have made and published separate videos on internet disputes focusing on the same subject matter.  Additionally, Claimant and Respondent are in the same market as monetizing their online content (*e.g.*, Claimant licenses

its videos to others while Respondents promote third-party products via sponsored advertisements).

61.     Thus, because Claimant and Respondent are in the same market, the fourth fair use factor weighs in Claimant's favor.

62.     Therefore, because all four of the fair use factors weigh in Claimant's favor, Respondents' use of the Work in the Video was not fair and, thus, Respondents have infringed upon Claimant's copyright in the Work.

### Claimant is entitled to Statutory Damages

63.     As noted above, Claimant contends that Respondents have infringed Claimant's copyright in the Work.

64.     Furthermore, Claimant asserts that this infringement was willful based on Respondents' sophistication of copyright law.

65.     Therefore, Claimant argues that Respondents are liable for the maximum amount of statutory damages under the law, but no less than $12,962.85 USD.

### Conclusion

66.     In consideration of the foregoing facts and arguments, Claimant respectfully requests the Board find in favor of Claimant and hold that Respondents have infringed Claimant's copyright in the Work and that Claimant is entitled to damages in an amount no less than $12,962.85 USD and any other such remedies the Board finds just and fair.

                                        Respectfully submitted,

Date: October 21, 2024                   /JohnJ.Mariane/
                                        John J. Mariane
                                        6515 W. Archer Ave.
                                        Chicago, IL 60638
                                        jmarianeiv@gmail.com
                                        *Attorney for the Claimant*

## Proof of Delivery

I hereby certify that on Monday, October 21, 2024, I provided a true and correct copy of the Opening Party Statement - Claimant BIP to the following:

Lily Marston, represented by Lily Marston, served via MANUALEEMAIL

Jessica Vazquez, represented by Jessica Vazquez, served via MANUALEEMAIL

Signed: /s/ John J Mariane, IV

**Exhibit C**



# COPYRIGHT CLAIMS BOARD

**Docket number:** 23-CCB-0404
January 31, 2025

| Braun IP Law, LLC | *v.* | Jessica Vazquez and Lily Marston |
|:---:|:---:|:---:|
| **CLAIMANT** | | **RESPONDENTS** |

## FINAL DETERMINATION

This matter has been fully submitted by the parties. For the reasons that follow, the Copyright Claims Board ("Board") finds in favor of Respondents Jessica Vazquez ("Vazquez") and Lily Marston ("Marston") (collectively, "Respondents") and dismisses the claim against Respondents with prejudice.

### I.     Procedural History

This claim was filed on December 11, 2023, by Braun IP Law, LLC ("Braun IP" or "Claimant"). Claim (Dkt. 1). The Board found the Claim compliant and, on December 12, 2023, directed Braun IP to serve Respondents. (Dkt. 6). After service on Respondents, the Board did not receive an opt-out form from either of them.

On February 21, 2024, the Board notified the parties that the Claim had entered the "active phase" because the Respondents did not opt out, ordered Braun IP to pay the second filing fee, and ordered the Respondents to register for the Board's online docketing system (eCCB). (Dkt. 11). Vazquez filed her Response on May 13, 2024. Vazquez Response (Dkt. 20). Marston filed her Response on May 14, 2024. Marston Response (Dkt. 21).

On August 29, 2024, the Board issued an order closing discovery as of September 6, 2024, and ordering the filing of written testimony. (Dkt. 27). For its written testimony, Braun IP filed evidence and an evidence list (Dkt. 28-36, 38-52, 54-59), as well as a Party Statement ("Braun IP Party Statement") (Dkt. 37), but not any separate witness statements. Respondents filed evidence and an evidence list (Dkt. 60-79, 81-83), as well as a Party

Statement ("Respondent Party Statement") (Dkt. 80), but not any separate witness statements.[1]  Braun IP filed a Reply Party Statement (Dkt. 85) on January 2, 2025.  This case is now ready for final determination.

## II.    Factual History

The facts relevant to this Final Determination are largely uncontested.

Braun IP states, and Respondents do not dispute, that Braun IP is the copyright owner of a video of an approximately eight-minute and forty-second long video, titled "Bekah Day False Accusations" (the "Work"). Exhibit A (Dkt. 36); Braun IP Party Statement ¶ 5.  The Work was first published by Braun IP on November 29, 2023, and was registered by the U.S. Copyright Office as a motion picture with an effective date of registration of December 5, 2023 (Reg. No. PA002443504).  Exhibit D (Dkt. 34).

Claimant's papers say little about the creative aspects of the Work, beyond saying it is a "scripted and produced video that comprises set design and other artistic elements."  Braun IP Party Statement ¶ 45.  The Work itself, however, makes it relatively clear what it is.

A review of the Work establishes that Braun IP or Jeanette Braun ("Braun") of Braun IP—the papers state that Braun created the video on behalf of Braun IP—was involved in an online dispute with a woman named Bekah Day ("Day").  Braun is an attorney who has filed takedown notices on behalf of clients to get material removed from online service providers (e.g., YouTube).  It is unclear how far back the dispute between Day and Braun goes (and, from Respondents' video in question, it appears without being clear that others may have also been involved in the accusations against Braun), but at some point, Braun felt the need to defend herself and posted her defense—the Work (Exhibit A)—to TikTok.

---

[1] Both parties appear to have set forth any factual statements within their party statements.  The Braun IP Party Statement is written in paragraph form and is submitted by its attorney, who signed the statement.  Paragraph 1 says that the attorney "swears and asserts, under penalty of perjury, that all facts stated herein are true and correct to the best of Braun IP's and the undersigned's personal knowledge."  Braun IP Party Statement ¶ 1.  An attorney signature on a Party Statement is not the same as a Witness Statement signed by the person with actual knowledge, and the majority of the Party Statement is legal argument, whereas a Witness Statement is intended to set forth facts.  The Respondent Party Statement is electronically signed by Vazquez and Marston, although it makes no reference to any swearing to the truth under penalty of perjury and similarly conflates statements of fact with legal argument.  In the interest of time and given that: (a) parties certify to the truth of filings on eCCB; (b) both parties have taken the same approach; and, (c) this case turns on undisputed facts and a review of the evidence, mainly Claimant's work and the allegedly infringing work, the Board will take uncontested factual statements as true for the purposes of the Determination.

The entirety of the Work depicts Braun sitting at her desk in an office, and it appears to be recorded on a computer or phone camera. Not every detail is necessary to this Determination, but, generally, Braun goes through a factual recitation[2] of how Day (who Braun says describes herself as an "investigative reporter") is spreading allegedly false information about Braun and Braun IP. Day's main accusation is that Braun is filing "false copyright strikes" against "small creators" such as podcasters and influencers on the internet so that she can get things her clients do not like taken down. Braun states in the Work that a purpose of creating the Work is to "talk through" how it is impossible for her to do that—although her main argument is highly semantic: that *she* does not file a copyright strike, but rather files a *request* for a strike and the online service provider performs the strike. Braun states in the video that because Day has chosen to bring their dispute into "social media court," Braun is going to likewise respond over social media. In fact, she specifically says that the viewers of the Work are likely "here for the tea and here for the drama." She also says that the Work was created to address the false copyright strike accusation and will not address some of the other drama in their dispute, saying that she is reserving her testimony "to be made under oath." Exhibit A.

Respondents' business revolves around, to use the words from the Work, "tea and drama." *See also* Respondent Party Statement ¶ 14; Exhibit J. They run a video podcast (on at least YouTube) called "Do We Know Them?" (the "Podcast"). A standard episode of the Podcast is the two hosts, Vazquez and Marston, sitting in chairs (they are not in the same room but the video is shot to make it look more like they are), talking to each other about drama they find on the internet. The Podcast has over 100,000 subscribers—primarily young adults according to Respondents—who clearly enjoy watching Vazquez and Marston give their opinions on the petty fights of others. Respondent Party Statement ¶ 14. As such, the Day-Braun fight was fresh meat for the Podcast.

Because of Braun's involvement with drama on the internet, the Podcast had already discussed Braun prior to the Work being published. Braun had represented another internet celebrity Respondents called "Lauren the Mortician" ("Lauren"), which also involved a dispute related to copyright takedown notices. In an episode prior to

---

[2] Braun IP claims that the Work contains "opinions and perspectives," as opposed to facts (Reply Statement ¶ 12), but does not make a material difference here and many of the statements in the Work are clearly presented as facts.

the one alleged as infringing, the Podcast had gone into detail about how Lauren had allegedly hired Braun to take down content of anyone Lauren did not like and, according to the Podcast, Braun had taken certain other aggressive actions on Lauren's behalf, even threatening jail time in cease-and-desist letters. *See generally* Exhibit E1, E2 (Dkt. 58, 55).

Respondents had therefore been monitoring drama related to Braun when they filmed the allegedly infringing episode (the "Episode"), posted on YouTube on December 2, 2023. Exhibit E1-E6 (Dkt. 54-59). In the Episode, Respondents' main story is dedicated to Braun. The title of that one hour and 24-minute episode is "Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where are they NOW?" After an approximately five-minute introduction discussing various things in their lives, they start discussing Braun by referencing their prior episode. They explain that they had gotten many comments and messages about Braun and that they had now realized she was "infamous, perhaps you could say, in the creator community" for going after "fellow drama commentators." Exhibit E1 at 5:30-8:00.

Respondents spend a lengthy amount of time discussing others in the "drama community," including images and clips from videos, to show the history of Braun and her actions on behalf of clients. *See generally* Exhibit E1, E2. In the Episode, Respondents make clear their distaste of Braun and what they view as Braun's lack of standards, going so far as to make the decision to call her "Janet," instead of her real name, "Jeanette." Exhibit E2 at 6:30-7:30 (Dkt. 55). At the 22:30 mark of the Episode (Exhibit E2 at 7:30), Marston decides to check Braun's TikTok account to see if she had posted anything more about her disputes and, upon seeing that there was a posting about Bekah Day (that is, the Work), Respondents proceed to give their "live reaction" to the posting—whether this was an actual immediate "reaction" to the Work, which is not live, but is taped in advance, or whether that was said to increase the drama is not material to this Determination.

Initially, the Episode plays just twenty seconds of the Work (22:40-23:00 of the Episode, found in Exhibit E2 at 7:40-8:00), the part of the Work in which Braun states that Day is making false accusations and that it is impossible for Braun to have filed false copyright strikes. The Episode pauses the Work before Braun further explains her reasoning in the Work. This is because Respondents were confused by Braun's statements given that, according to

the Respondents in the Episode, they recalled Braun herself previously discussing people filing false copyright strikes; and, as discussed in the prior episode, the core of Day's issue with Braun was her threats and other aggressive tactics to content creators (and Day had read Braun's cease-and-desist letter to a third-party on Day's video).  Exhibit E2 at 8:00-9:05.  Respondents note their belief that Day and Braun are going back and forth with each other because Braun "is pissed" that Day is calling out her tactics.  *Id.*  The Episode then shows a video from Day (in a faster speed than typical) where Day goes through some of the history of her dispute with Braun, although the Day video is stopped when Respondents are struck with the realization that Day has made a reference to someone who had emailed Respondents after their prior episode (about that person's dispute with Braun and claims that Braun was filing false takedown notices against her with respect to various material).  *Id.* at 9:05-10:00. Respondents then discuss that drama as well.  *Id.* at 10:00-12:00.

Respondents continue with a lengthy exposition of the drama and history of various internet celebrities and Braun's actions on their behalf, including one celebrity who was so pleased with Braun's tactics that she recommended Braun to others, which eventually caused a fight between many people with Braun at the center.  *See generally* Exhibit E2; Exhibit E3 (Dkt. 56).  The history uses different clips, including one from one of Braun's clients saying that she has Braun take down material, including when anyone "tries to defame" the client or "talk[s] shit" about the client and that the client "love[s] when they get upset about it."  Exhibit E3 at 1:00-2:00 (Dkt. 56). During their exposition, Respondents make clear their disgust with Braun and creators who they believe "harass" and "bully" those who say things they do not like.  Exhibit E3 at 2:00-4:00.

As part of the Episode, Respondents discuss the concept of fair use at some length as they believe that the tactics Braun is defending in the Work involve going after creators engaging in fair use, and Respondents' business and many others on the internet rely on that legal principle to discuss and critique various personalities and influencers and report on the drama between them.  Exhibit E3 at 7:30-9:00; Exhibit E4 at 00:10-1:10 (Dkt. 59). Respondents state in the Episode that podcasts like theirs engage in "commentary" and use videos in a "transformative" manner to give accurate context to their critiques, so the audience understands why they are agreeing or disagreeing with the content.  Exhibit E3 at 7:45-8:30.  They also call out Braun and her clients as being

5

hypocrites for sending takedown notices on content very similar in nature to the content those clients are also creating (that is, content using the works of others to give context to critiques and analysis). *Id.*

Within the fair use discussion, Respondents show (at the 45:40-46:10 mark) thirty seconds of a different video that Braun created (not at issue in this proceeding, and supposedly a year earlier) where Braun tells her viewers that anyone wanting to submit a takedown notice "must consider" fair use first. Exhibit E4 at 00:40-1:10. Respondents call out Braun for being hypocritical and perhaps changing her tune when she can make money from takedown notices. *Id.* at 1:10-1:30. Respondents discuss how Braun's statement in the Work that she herself does not perform a copyright strike but merely presents a request for a copyright strike and the strike is performed by the platform is mere "semantics." *Id.* at 1:30-2:03. It is at this point that the Episode plays a precisely one-minute clip of the Work (which includes the twenty seconds played earlier in the Episode) to show and criticize how, as explained above and as referred to at various points in the Episode, Braun used what Respondents consider to be very technical and disingenuous semantics to defend her actions with Day. *Id.* at 2:03-3:03. No other portion of the Work is shown in the Episode.

The Episode continues discussing more of Braun's activities against internet commentators and influencers, including doing enough to get pages banned, and including, according to Respondents, trying to take down material that could not possibly be protectable under copyright law. *Id.* at 3:15-6:00. Respondents also state that they fully expect Braun to file a takedown notice against them and that they would have no problem issuing a counternotice given their confidence that their uses of works constitute fair use. *Id.* at 8:30-9:00. At the almost 70-minute mark of the Episode, after further discussions of Braun's clients and her activities on their behalf, Respondents again discuss the importance of the fair use principle (and the difference between using a takedown for alleged defamation and copyright infringement) and then end their discussion related to Braun and Braun's clients. Exhibit E5 at 9:45-10:50 (Dkt. 57).

There is no dispute regarding the Respondents' lack of permission to use the Work in the Episode. On December 3, 2023, Braun IP sent a takedown to YouTube regarding the Episode, and Respondents sent YouTube a counternotice. Respondent Party Statement ¶ 20; Exhibit R (Dkt. 66). Although YouTube's opinion does not

factor into the Board's decision, YouTube sent Braun IP an email on December 8, 2023, and Respondents an email on December 12, 2023, stating that they had unilaterally made the decision that (regardless of whether Braun IP filed a copyright infringement lawsuit concerning the Episode) they would not take the Episode down because YouTube independently determined that the Episode's use of the Work clearly fell within the category of fair use. Respondent Party Statement ¶¶ 19-24; Exhibit O, P, Q, R.  (Dkt. 64, 82, 81, 66).

Regarding Respondents' potential profits attributable to the alleged infringement, Braun IP states that Respondents made $4,226.61 in revenue from the Episode on YouTube and $1,236.24 from audio-only versions of the Episode on other platforms.  Braun IP Party Statement ¶ 21; Exhibit J (Dkt. 39); Exhibit K (Dkt. 44). Regarding possible losses of Braun IP, Braun IP states that it uses a standard licensing agreement for videos it creates, for which it charges $7,500, and attaches two sample licensing agreements—although it is extremely unclear what types of videos the licenses cover and whether those videos are anything like the Work.  Braun IP Party Statement ¶ 20; Exhibit I (Dkt. 48).  Respondents state that: the number for their revenues is overstated; there is no evidence that anyone has paid Braun IP's claimed license rate; one of the two sample agreements allows services in lieu of payment; and the Work is extremely different from any of Braun IP's past content.  Respondent Party Statement ¶¶ 25-37.

Braun IP seeks statutory damages of "no less than $12,962.85."  Braun IP Party Statement ¶ 23.

### III.    Defenses

To succeed on a claim for copyright infringement, a claimant must establish: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  Respondents do not contest Braun IP's ownership of the Work (which is documented in the certificate of registration, Exhibit D, and which acts as a prima facie presumption of copyrightability and ownership of the Work), nor do they contest that they copied constituent elements of the work (which is clearly evidenced by a comparison of the works at issue).  However, Respondents claim that their use of the Work qualifies for the fair use defense.

7

As the proponent of the affirmative defense of fair use, Respondents have the burden of proof on the issue. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020), *cert. den.*, 141 S. Ct. 2803 (2021).

Four non-exclusive factors are considered when analyzing a fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and, (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107; *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012). Based on the evidence in the record, the weight of the factors overwhelmingly favors a finding of fair use.

As to the first factor, while the use of the Work was for a commercial podcast, there is no question that the use was to comment on and criticize the content of the Work. Respondents used the one-minute clip to accurately report on the story they were discussing and to allow their viewers to understand the context of the story and their critiques of Braun and the precise content in the clip. Braun IP suggests that the clip was used for its original purpose, which was to "provide Jeanette Braun's (and Braun IP Law's) side of an online dispute between her and another online content creator." Braun IP Party Statement ¶¶ 34-35. However, Respondents' use was literally for the opposite purpose: namely, to give reasons why Braun's side of the story did not hold water. To do that, Respondents needed to present Braun's reasoning, and they used no more of her content than was reasonable to critique it. There is no doubt that this use falls into the category of "criticism" and "comment[ary]" explicitly set forth in 17 U.S.C. § 107. To be clear, while Respondents could be accused of insulting or belittling Braun, the Episode is far more than that: it is a lengthy and comprehensive history, review, criticism, and dismantling of the arguments presented by Braun in the one-minute clip of the Work shown in the Episode.

Many courts have found that copying of a work in the context of commentary or criticism on the subject within the work, or use of a work to enhance a movie or video discussing the subject of the work, qualifies for the fair use defense—and, at the very least, it strongly tilts the first factor analysis towards a defendant. In fact, in similar situations, courts have specifically said that when one video is used to present a point of view and the second video

uses the first to criticize that position, the use is "fundamentally at odds with [the] original purpose" of the first work and, therefore, inherently transformative. *See, e.g.*, *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 519-20 (S.D.N.Y. 2022) (quashing subpoena related to YouTube video because using the original video, which had been created to support the Jehovah's Witness religion, in order to criticize the religion was clearly fair use); *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991) (finding a "strong presumption" that the first factor favors the defendant if the allegedly infringing work fits into one of the uses specifically described in Section 107 such as "criticism, scholarship or research" and that typically, the "assessment of the first fair use factor should be" over once one of those stated uses is established) (quotations omitted); *Hughes v. Benjamin*, 437 F. Supp.3d 382, 392 (S.D.N.Y. 2020) (granting motion to dismiss with prejudice and finding factor one in defendant's favor: "a reasonable observer who came across the video would quickly grasp its critical purpose"); *Thicc Boy Prods. Inc. v. Swindelle*, No. 22-CV-00090-MSM-PAS, 2024 WL 733425, at *3 (D.R.I. Feb. 22, 2024) (factor one favored fair use because "reaction videos used the copyrighted works to criticize or comment upon them rather than to supersede the work's original objects"); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp.3d 1094, 1105 (C.D. Cal. 2015) (YouTube show's use of videos was either to criticize or make fun of them and thus transformative; commercial nature of the show is outweighed by the transformative nature of the use). *See also Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544-45, 143 S. Ct. 1258, 1284 (2023) ("[T]he meaning of a secondary work . . . should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides otherwise unavailable information about the original."); *Campbell*, 510 U.S. at 578-79, 583 (the fair use inquiry may be guided by the specific examples stated at the beginning of Section 107, including criticism and commentary, with the "central purpose" of the first factor to see whether the new work "merely supersedes the objects of the original creation," that is, "supplanting the original," or instead transforms the original to add a new meaning or message; "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use") (quotations and citations omitted).

As to the second factor, there is some question as to whether the Work is creative in nature. The Work was not

made for entertainment purposes, but rather for Braun to go through the factual history of her dispute with Day and her position related to that dispute. Courts have found that when the original work is informational in nature, more leeway is given towards a finding of fair use. *See, e.g.*, *In re DMCA Section 512(h) Subpoena,* 581 F. Supp. 3d at 521-22 (citations omitted); *Thicc Boy Prods. Inc,* 2024 WL 733425 at *3 (podcast discussing current events, popular culture and their lives found to "fall closer to the factual end of the copyright spectrum than the creative end"). However, even assuming that the Board viewed this as a creative work, the weight of this factor is almost negligible when the use of the creative work is for a clear transformative purpose such as criticism or commentary. *See, e.g.*, *Monster Communications, Inc. v. Turner Broadcasting System, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) (finding this factor neutral, in part because taking "too narrow a view of the fair use defense" where the work used is creative "could materially undermine the ability of . . . biographers to tell" an important story); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612-13 (2d Cir. 2006) (recognizing "that the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose" and finding limited weight where the "use was to emphasize the images' historical rather than creative value"); *Red Label Music Publishing, Inc. v. Chila Productions*, 388 F. Supp. 3d 975, 985 (N.D. Ill. 2019) (finding this factor neutral where the use of the work was "not related to its mode of expression but rather to its historical facts"); *Campbell*, 510 U.S. at 586 (this factor "is not much help" in the fair use analysis when, for instance, a transformative use must take the original to achieve its purpose); *Hughes*, 437 F. Supp.3d at 393 (same). As such, this factor is neutral in the analysis here, or at best, slightly weighs against fair use.

The "amount and substantiality" factor weighs somewhat in favor of fair use. In terms of the clip's relation to the Work as a whole, Respondents took only one minute out of an eight-and-a-half minute video, which amounts to approximately 11-12 percent of the Work (and it made up approximately 1-2 percent of the Episode). While Claimant objects that what was taken was the "heart," of the Work, there is no evidence to support that position. Braun IP Party Statement ¶ 50. Braun IP also says that "the fact of the matter is that Respondents did not need to display any of the portion of the Work at all." *Id.* ¶ 51. That argument is meritless and undermines Claimant's credibility. As discussed above, Respondents clearly used the Work to provide context so that they could properly

critique it. Furthermore, it does not appear that Respondents used any more than was reasonable to use, limiting their use of the Work to the specific parts they were criticizing. *See, e.g.*, *Brown v. Netflix, Inc.*, 855 Fed. Appx. 61, 64 (2d Cir. 2021) ("The fair use doctrine does not obligate the Film to use the shortest possible snippet to convey its message of commentary and criticism. . . . [The amount used] was reasonably necessary to convey the Film's message."); *Red Label*, 388 F. Supp. 3d at 986 (factor favored fair use where insubstantial use amounting to 2 percent of the music and 17 percent of the video was made and "was no more than necessary to serve as a historical reference point"); *Campbell*, 510 U.S. at 589 (where "no more was taken than necessary" for a fair purpose, copying cannot be considered excessive); *Hofheinz v. AMC Productions, Inc.*, 147 F. Supp. 2d 127, 139-40 (E.D.N.Y. 2001) (defendants took no more "than was necessary in light of the subject matter of their Documentary"); *Hughes*, 437 F. Supp. 3d at 393-94 (defendant "copied as much of [the original work] as was deemed reasonably necessary for him to convey his critical message"). Furthermore, this is not a case where Respondents used a work and made minimal commentary: they spent over an hour criticizing a one-minute clip and the events surrounding it.

Finally, as to factor four, there is no meaningful evidence that the use of the Work affected the market or value of the Work. Respondents took a small portion of the Work to criticize its content. To suggest that Respondents' use interfered with Braun IP Law's ability to monetize the Work on online platforms, Claimant states that "both parties operate within the same online content market." Braun IP Party Statement ¶ 60. Claimant even appears to argue that because other Braun IP videos discuss legal issues on the Internet, including issues related to her firm, Braun IP's typical videos can also "be classified as 'internet drama.'" Reply Party Statement ¶ 20. That argument also lacks any credibility. Claimant is a law firm. While Claimant may also post content online and get paid by TikTok depending on Braun's viewership, there is no evidence that Claimant's typical genre is internet drama or that the Work did not greatly deviate from Braun's typical posts, which are legal in nature to promote Braun IP's business. The one prior clip Claimant created (on fair use) that was also shown in the Episode supports the notion that Claimant's typical videos—predictably—are aimed at a discussion of copyright law generally. Exhibit E4 at 00:40-1:10.

While it is true that a copyright owner can be harmed by not being allowed to decide who gets to use or not use

11

their work, there is no rational argument here that Claimant and Respondents were competitors or that use of a small portion of the Work to criticize Braun and her position in the Day-Braun dispute would have replaced Braun's market for the Work—to the extent one existed—and thus acted "as a substitute for the original." *See SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use.") (citations omitted); *Brown*, 855 Fed. Appx. at 64 ("[T]he intended audience for the Song would be unlikely to purchase the Film in preference to the original.") (citations omitted); *In re DMCA Section 512(h) Subpoena*, 581 F. Supp. 3d at 523 (finding "no danger" that a critical work will usurp the market for the original work or that the markets would be the same).

Braun IP submits two sample licenses for prior works of hers, showing there may be some market for licensing some of her works, but as mentioned previously, the Work appears to be far different than Braun IP's other videos, and there is no evidence that there is any market for the licensing of short clips from the Work or licensing activity for critiques of Braun IP's works. Exhibit I. *See Brown*, 855 Fed. Appx. at 64 ("Because fair use always results in some loss of royalty revenue, however, we consider only the challenged use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets.") (citation omitted); *Bill Graham*, 448 F.3d at 614-15 (same principle, and also stating that copyright owners cannot "preempt exploitation of transformative markets" regardless of whether there may be a loss of license fees) (citation omitted); *Campbell*, 510 U.S. at 592 ("the law recognizes no derivative market for critical works" even if demand for the original work is suppressed (as opposed to usurped)).

In sum, the weight of the fair use factors clearly favors fair use in this case. Accordingly, the Board dismisses the claim against Respondents with prejudice.

## IV.    Conclusion

The Board dismisses the claim against Jessica Vazquez and Lily Marston with prejudice.


Copyright Claims Board

**Exhibit D**



# COPYRIGHT CLAIMS BOARD

**Docket number:** 23-CCB-0404
March 7, 2025

| Braun IP Law, LLC | | Jessica Vazquez and Lily Marston |
|---|---|---|
| **BRAUN IP** | *v.* | **RESPONDENTS** |

## ORDER ON REQUEST FOR RECONSIDERATION

Claimant Braun IP Law, LLC ("Braun IP" or "Claimant") initiated this copyright infringement claim against Respondents Jessica Vazquez ("Vazquez") and Lily Marston ("Marston") (collectively, "Respondents") on December 11, 2023. Claim (Dkt. 1). The Copyright Claims Board (Board) issued the Final Determination in this proceeding on January 31, 2025 (Dkt. 86), finding for Respondents and dismissing the Claim with prejudice. As a review of the Final Determination reveals, this case was not close: Respondents' use of the work at issue was a textbook example of fair use. Many of the arguments made by Claimant were utterly meritless, some to the point that they undermined Claimant's credibility. Moreover, the Board did not take a cursory review of the Work[1] at issue and its use, but watched both works several times, detailed in the Final Determination's Factual History section, which lays out Respondents' clearly transformative use of the work for criticism and commentary.

Despite the detailed nature of the Final Determination, on March 2, 2025, Claimant filed a Request for Reconsideration. Request (Dkt. 87). A request for reconsideration of a final determination must identify a clear error of law or fact that was material to the outcome, or a technical mistake. 17 U.S.C. § 1506(w); 37 C.F.R. §§ 230.1-230.2. Just as importantly, the "request shall not merely repeat any oral or written argument made to the Board as part of the proceeding but shall be specific as to the purported error or technical mistake that is the subject of the request." 37 C.F.R. § 230.2. Notwithstanding that rule, the Request is simply a 12-page brief rehashing the greatest hits of the party statements Claimant filed in the written testimony phase.

---

[1] The Board uses the same definitions as in the Final Determination.

The Board could simply deny the Request on that basis. The arguments continue to be meritless and no clear error of law or fact or technical mistake is presented. However, rather than merely denying the Request in a cursory order, the Board will briefly rehash why the Episode so obviously qualifies for fair use for educational purposes.

## I. Factual History

For a detailed factual history, including the many ways in which the allegedly infringing work (the "Episode") uses Claimant's Work to critique it, *see* the Final Determination at 2-7. Suffice it to say here that the entirety of Claimant's Work depicts Braun IP's owner, Jeanette Braun, sitting at her desk, recording on a computer or phone camera a generally factual recitation of her position in a dispute with an internet personality named Bekah Day. Braun did not like that Day accused Braun of filing "false copyright strikes" against "small creators" such as podcasters and influencers on the internet so that she can get things her clients do not like taken down. Braun's defense to Day's accusations in the Work is highly semantic: that *she* does not file a copyright strike, but rather files a *request* for a strike and the online service provider performs the strike.

The "tea and drama" referred to in the Work was squarely in the wheelhouse of Respondents' Podcast. In the course of discussing the Day-Braun fight and Braun's position related to that dispute, Respondents played a one-minute clip from the eight-and-a-half minute Work, and spent approximately an hour commenting on and critiquing it, completely dismantling all of Braun's arguments in the Work as well as expressing their displeasure with Braun's tactics on behalf of her clients. Respondents also discussed at length the concept of fair use and additionally argued that Braun engages in hypocrisy by sending takedown notices against instances of fair use and material potentially not protected by copyright even though she has previously educated the public in other videos she has published that a fair use analysis should be made before sending a takedown notice.

On December 3, 2023, Braun IP sent a takedown to YouTube regarding the Episode, and Respondents sent YouTube a counternotice. As previously noted, YouTube's opinion does not factor into the Board's decision, but YouTube unilaterally made the decision that (regardless of whether Braun IP filed a copyright infringement lawsuit concerning the Episode) they would not take the Episode down because YouTube independently determined that the Episode's use of the Work clearly fell within the category of fair use.

2

Related to potential damages and market harm, Braun IP stated that it uses a standard licensing agreement for videos it creates, for which it charges $7,500, and attached two sample licensing agreements. It was unclear what types of videos the licenses covered and whether those videos were anything like the Work, although Braun IP now admits that that the licenses were for very different types of videos as the Work was an outlier to Braun IP's typical material. Request, at 9.

## II.    Fair Use

Rather than trying to identify a specific "clear error of law," the Request is dedicated to rearguing the fair use principle, including the first, third, and fourth factors. Again, it would be easy for the Board to deny the Request on that basis alone since every point made by Claimant was already made by her in her party statements. However, it will briefly explain the fair use factors again with the hope that Braun IP might change its tactics in the future.

Four non-exclusive factors are considered when analyzing a fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and, (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107; *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012).

As to the first factor, Claimant misunderstands the esteem that critique and commentary, explicitly called out in Section 107, holds in a fair use analysis. Braun IP argues that the commercial nature of the Podcast outweighs the transformative use of the Work, but the fact that the Podcast was commercial carries little weight when the purpose of the use was to critique the Claimant's Work. As the Supreme Court has said, "the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character," and if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities are generally conducted for profit in this country." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (citation omitted). *See also Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 32 (2021) ("There is no doubt that a finding that copying was not commercial in nature tips the

scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are indisputably commercial. For instance, the text of § 107 includes examples like 'news reporting,' which is often done for commercial profit.").

Claimant quotes the syllabus (as opposed to the actual decision) in *Andy Warhol Foundation for Visual Arts v. Goldsmith*, 598 U.S. 508 (2023) for the proposition that when a secondary use is "transformative to some extent," the first factor can still weigh against fair use when the transformative elements are "outweighed by other factors, such as the use's commercial nature." However, the *Warhol* opinion noted that criticism and comment (the purposes of Respondents' use of the video clip) "are the sorts of copying that courts and Congress most commonly have found to be fair uses, and so may guide the first factor inquiry." *Id.* at 528 (citation and internal quotation marks omitted). The court also noted that "commentary or criticism that targets an original work may have compelling reason to conjure up the original by borrowing from it." *Id.* at 532. Respondents' use of Claimant's film clip was precisely for the purpose of commentary and criticism targeting Claimant's work, and therefore highly transformative. *See, e.g., City of Inglewood v. Teixeira*, No. CV-15-01815-MWF, 2015 WL 5025839, at *8 (C.D. Cal. Aug. 20, 2015); 4 Nimmer on Copyright § 13F.10 ("[C]onsider the nearly universal recognition of fair use in connection with the function of criticism and review. Here, it is permissible to quote substantial passages precisely because the review supplements, but does not replace, the function of the work being reviewed."). In short, Respondents' use was not merely "transformative to some extent"; it is precisely the type of highly transformative use that is fair even when done for profit.

Braun also raises a strange argument (while citing some of the cases finding fair use already cited by the Board), that the Episode "recreated" the Work's creative expression. As already stated by the Board, Respondents used the one-minute clip to accurately report on the story they were discussing and to allow their viewers to understand the context of the story and their critiques of Braun and of specific content in the clip. The "re-creation" argument is just a different way of stating Braun IP's meritless argument in prior written testimony that the clip was used for its original purpose, which was to "provide Jeanette Braun's (and Braun IP Law's) side of an online dispute between her and another online content creator." Braun IP Party Statement ¶¶ 34-35. (Dkt. 37).

4

As stated in the Final Determination, Respondents' use was for the opposite purpose of any possible creative expression in the Work: to go through a detailed critique of Braun's content and give reasons why Braun's side of the story did not hold water. There is no doubt that this use falls into the category of "criticism" and "comment[ary]."

Braun IP does not seem to have learned a basic lesson from the cases cited by the Board: when one video is used to present a point of view and the second video uses the first to criticize that position, the use is "fundamentally at odds with [the] original purpose" of the first work and, therefore, inherently transformative. *See, e.g., In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 519-20 (S.D.N.Y. 2022); *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991); *Hughes v. Benjamin*, 437 F. Supp.3d 382, 392 (S.D.N.Y. 2020); *Thiccc Boy Prods. Inc. v. Swindelle*, No. 22-CV-00090-MSM-PAS, 2024 WL 733425, at *3 (D.R.I. Feb. 22, 2024); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp.3d 1094, 1105 (C.D. Cal. 2015); *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544-45, 143 S. Ct. 1258, 1284 (2023); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994).

As Braun IP does not challenge the Board's findings on the second factor (including that where a work is used to critique that specific work, this factor is of little relevance), the Board moves to factor three, the "amount and substantiality" of the Work taken.

On this third factor, the Request is certainly no more than a rehashing of Claimant's prior argument, rejected by the Board, that the "heart" of the Work was taken. Braun IP does not dispute the Board's finding that a small amount of the Work was taken: Respondents took only one minute out of an eight-and-a-half minute video, which amounts to approximately 11-12 percent of the Work (and it made up approximately 1-2 percent of the Episode). However, Braun IP suggests that, unless Respondents could affirmatively prove that the portion taken was *not* the heart of the Work, the Board should take Claimant's argument as fact, even if there was no evidence to support it. In so doing, Braun IP cites cases not dealing with criticism and where a plaintiff actually proved what was taken was the heart of the work. Request, at 5-7. This is preposterous as is Claimant seemingly suggesting that this factor must *always* go against a finding of fair use by arguing that the mere fact that Respondents chose this portion of the

Work to critique it is "prima facie evidence that these clips were the most important moments of the work." Request, at 7. Again, Claimant only serves to undermine its credibility by making such arguments.

As discussed in the Final Determination, Respondents used the Work to provide context so that they could properly critique it, using no more than was reasonable and limiting their use of the Work to the specific parts they were criticizing. *See, e.g.*, *Brown v. Netflix, Inc.*, 855 Fed. Appx. 61, 64 (2d Cir. 2021); *Red Label Music Publishing, Inc. v. Chila Productions*, 388 F. Supp. 3d 975, 986 (N.D. Ill. 2019); *Campbell*, 510 U.S. at 589; *Hofheinz v. AMC Productions, Inc.*, 147 F. Supp. 2d 127, 139-40 (E.D.N.Y. 2001); *Hughes*, 437 F. Supp. 3d at 393-94.

Finally, the Request fares no better as to factor four. As an initial point, the Request assumes that the Board's finding that Respondents' use was transformative and used for criticism and commentary was incorrect. It was not, and Claimant has certainly not shown a clear error of law. The Request seems to—in order to reargue that Claimant and Respondents were competitors and Respondents usurped Claimant's market for the Work—admit that the Work was an outlier from Braun IP's typical videos about copyright law in general. Regardless, as stated in the Final Determination, and as not challenged by Braun IP in the Request, Braun IP presented no meaningful evidence that Respondents' use of the Work affected the market or value of the Work; and, with this admission, the licenses Braun IP presented with its written testimony go from practically meaningless to absolutely meaningless.

Respondents took a small portion of the Work to criticize its content, full stop. As stated in the Final Determination, there is no rational argument here that Claimant and Respondents were competitors or that use of a small portion of the Work to criticize Braun and her position in the Day-Braun dispute would have replaced any possible market Braun had for the Work and thus acted "as a substitute for the original." *See SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013); *Brown*, 855 Fed. Appx. at 64; *In re DMCA Section 512(h) Subpoena*, 581 F. Supp. 3d at 523; *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614-15 (2d Cir. 2006); *Campbell*, 510 U.S. at 592.

In sum, Braun IP, which promotes itself as a law firm knowledgeable about and experienced in intellectual property law, has not presented any argument that would amount to an error of law or fact, never mind a clear one or one material to the Final Determination.

**III.    Conclusion**

The Request for Reconsideration is denied.


Copyright Claims Board