**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| v. | ) ) | |
| REBEKAH M. DAY NEE BOX, KRISTA CARTER, & LILY MARSTON | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT KRISTA CARTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

1

I.   INTRODUCTION

Plaintiff Lauren Propson's ("Propson") latest attempt to hold Defendant Krista Carter ("Carter") liable—now narrowed to two claims of tortious interference—is merely a repackaging of previously rejected defamation allegations cloaked in a different legal theory. But changing the label does not change the law. The Court has already ruled that Carter's alleged statements—describing Propson as a "TERF" and liking "transphobic" content—are constitutionally protected opinions that cannot form the basis of a defamation claim. Yet the Third Amended Complaint ("TAC") seeks to circumvent that ruling by reasserting similar allegations as the foundation for claims of tortious interference with contract and with economic advantage.

That effort fails for multiple, independent reasons. As a matter of law, constitutionally protected speech cannot form the basis for "unjustified" interference under Wisconsin tort law. Nor does the TAC plausibly allege that Carter had knowledge of the contracts or acted with a specific intent to interfere—both required elements. Finally, the TAC fails to identify any "concrete and definite" business expectation that might support a prospective economic advantage claim, offering instead vague references to lost opportunities and public backlash.

These claims are not only legally deficient; they are foreclosed by this Court's prior ruling and controlling precedent. Accordingly, Counts VII and VIII of the TAC should be dismissed with prejudice under Rule 12(b)(6).

II.   BACKGROUND

   A.   **Procedural Background and Prior Motion to Dismiss Order.**

Propson is a licensed mortician and social media personality with allegedly "millions of followers" on Tik Tok, and Plaintiff Jeanette Braun/Braun IP Law, LLC (collectively, "Braun") is her lawyer. (TAC, ¶¶ 12-13, 44, 53). On June 30, 2024, Plaintiffs filed a Second Amended Complaint

1

("SAC") that asserted a total of sixteen (16) counts against Defendants Carter, Rebekah M. Day ("Day"), Lily Marston ("Marston") and Jessica Vazquez ("Vasquez") arising out of allegations that all four Defendants made defamatory or injurious statements about Plaintiffs on social media, in podcasts, or both. Specifically, Propson asserted claims for defamation, trade libel, tortious interference with contract, and intentional infliction of emotional distress against Carter only, while Braun asserted claims for defamation, false light, trade libel, tortious interference with potential and existing relationships, and intentional infliction of emotional distress against Carter, Day, Marston and Vazquez. [Doc. No. 29]. Defendants moved to dismiss all sixteen claims asserted by Plaintiffs, and on February 28, 2025, the district court granted that motion in large part, finding that the vast majority of the statements made by Defendants online (e.g., referring to Propson as a "TERF", stating Braun filed "false copyright strikes" and was "unethical") were non-actionable, constitutionally-protected opinions and dismissing those claims with prejudice ("MTD Order"). [Doc. No. 59]. With respect to Carter specifically, the Court found that Propson's defamation claim was based on constitutionally-protected opinions, *i.e.*, statements that Propson is a "TERF" (or trans-exclusionary radical feminist) and Propson liked posts that contained "transphobic and hateful rhetoric content". (*Id.,* pp. 11-13). Thus, the Court dismissed Propson's defamation claim with prejudice. (*Id.,* p. 13).

The Court dismissed Propson's tortious interference with contract claim against Carter on the grounds that Propson could not satisfy the essential element that Carter's alleged interference in any contract was unjustified. (MTD Order, p. 21). Namely, the Court concluded that "Propson has alleged no conduct that is forbidden by law by Carter. And in her opposition brief, Propson's sole argument is that Carter 'made false statements' about Propson. For the reasons discussed above, Propson has not sufficiently alleged Carter made any false statements as opposed to opinions." (*Id.*) The Court also held that "conclusory allegations" that Carter's actions were "unjustified and unlawful" were "not sufficient to state a claim." (*Id.*)

2

Finally, the Court dismissed Propson's claim for intentional infliction of emotional distress against Carter on the grounds that it was based on the nonactionable defamation claim and failed to allege that Carter had engaged in "extreme and outrageous conduct". (*Id.,* pp. 22-23). While the Court recognized that allegations in the SAC regarding harassment of Plaintiffs by an "online mob" were troubling, it found that Plaintiffs did *not* allege that Defendants themselves engaged in this conduct or directed "the mob" to do so. (*Id.*) Because "Plaintiffs have not identified any authority indicating that a defendant can be liable for intentional infliction of emotional distress based on the actions of non-parties—even if they were inspired by the defendant's otherwise non-actionable conduct," the Court dismissed the claims without prejudice. (*Id.*)

B. **Allegations of the TAC.**

Plaintiffs' TAC filed on August 4, 2025, asserts nine causes of action and names only Carter, Day, and Marston as defendants. Only two claims are asserted against Carter by Propson, Counts VII and VIII for tortious interference. Count VII of the TAC is a claim for tortious interference with contract asserted by Propson against Carter based on an allegation that Propson had a "valid and enforceable agreement with the Travel Channel and Pair Eyewear under which she was to appear in a series of digital videos published on a monthly basis . . . ." (TAC, ¶ 191). The TAC alleges that Carter "was aware of this agreement" and "[a]round October 24, 2023, Carter published social media videos in which she falsely accused Propson of being a 'TERF,' 'transphobic,' and of liking 'incredibly transphobic and hateful rhetoric and content." (TAC, ¶ 192). The TAC further alleges that in addition to these "defamatory posts, Carter took steps to interfere with Propson's contract relationships, such as the Travel Channel, by encouraging others to report or shame the company for working with Propson." (TAC, ¶ 194). Plaintiffs allege that "[f]ollowing Carter's actions, several sponsors including the Travel Channel and Pair Eyewear terminated their contracts with Propson, citing concerns over reputational backlash. Multiple sponsorship discussions and potential

3

collaborations were also abandoned as a result of the reputational fallout." (*Id,* ¶ 195).

Count VIII of the TAC is a claim for tortious interference with economic advantage by Propson against Carter based on allegations that Propson "had a reasonable expectation of entering into additional business relationships and contracts with various media outlets, sponsors, and commercial partners, based on her existing audience engagement, recent inquiries, and past commercial success." (*Id.,* ¶ 301)[1]. The FAC alleges that Carter "knew or reasonably should have known that Plaintiff Propson maintained such ongoing and developing commercial relationships" and "[d]espite that knowledge, Defendant Carter intentionally published multiple defamatory and misleading statements accusing Plaintiff Propson of transphobia and hateful conduct, framing her conduct as bigoted and unethical. These statements were designed to discourage others from working with or supporting Plaintiff." (*Id.,* ¶ 303). Further, Propson alleges that Carter "encouraged her followers to publicly report and call out Plaintiff Propson for being transphobic through public comments and direct messages." (*Id.,* ¶ 304). The FAC alleges that as a "direct and proximate result of Defendant Carter's actions, Plaintiff Propson was wrongfully cast as transphobic and lost multiple sponsorship opportunities and commercial relationships, including but not limited to those with content platforms, product partnerships, and brand sponsorships. These lost opportunities have caused financial harm and reputational injury." (*Id.,* ¶ 307).

### III. ARGUMENT

Propson's two claims asserted against Carter in the TAC - tortious interference with contract and tortious interference with economic advantage - fail on numerous grounds. Under Wisconsin law[2], a claim for intentional interference with an existing or prospective contract requires that a party

---

[1] The paragraphs of the TAC are incorrectly numbered, as they jump from Paragraph 198 to Paragraph 300 on page 33 of the TAC, and then from 308 to 199 on page 34 of the TAC. (TAC, pp. 33-34). This Motion refers to the Paragraphs as numbered in the TAC.
[2] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case (*Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 165 (2007)), and in the case of defamation that is the state in which the

must allege that: "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Duct-O-Wire Co. v. United States Crane*, 31 F.3d 506, 509 (7th Cir. 1994). The TAC makes clear that these elements have not been satisfied.

*First*, the TAC fails to demonstrate that Carter's conduct was "unjustified." In ruling on the Motion to Dismiss the SAC, this Court concluded that Propson cannot maintain a defamation claim against Carter because Carter' statements are constitutionally protected opinions (MTD Order, pp. 11-13). Propson has nonetheless asserted a tortious interference with contract and tortious interference with economic advantage claims against Carter arising out of *those same constitutionally-protected statements*. (TAC, ¶¶ 192-193, 303) (alleging that Carter interfered with Propson's contracts by "falsely accus[ing] Propson of being a 'TERF', 'transphobic,' and of liking and promoting incredibly transphobic and hateful rhetoric and content" and alleging that Carter accused Propson "of transphobia and hateful conduct, framing her conduct as bigoted and unethical" to "discourage others from working with or supporting [Propson]"). However, as this Court explained in its MTD Order, under Wisconsin law, a claim for tortious interference with contract requires Propson to plead facts showing that Carter's "alleged interference in any contract was unjustified." (MTD Order, p. 21). Because all of Carter's alleged statements are – once again – constitutionally-protected opinions, they cannot support either claim for tortious interference. *See Fredin v. Klasfeld*, 2025 U.S. Dist. LEXIS 55312, at *32-33 (W.D. Wis. Mar. 21, 2025) ("plaintiffs cannot bring other tort claims essentially restating defamation claims"); *Next Techs., Inc. v. Beyond the Office Door LLC*, 2020 U.S. Dist. LEXIS 102413, at *39-40 (W.D. Wis. June 10, 2020) (dismissing tortious interference

---

plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases). Here, the TAC alleges that Propson is a citizen of the state of Wisconsin. (TAC, ¶ 4).

5

claims predicated on defamatory speech on the grounds that they were subject to the same constitutional protections as defamation claims).

In addition to basing her two interference claims on Carter's constitutionally-protected statements, Propson also alleges that Carter interfered with her existing contracts and prospective relationships by "encouraging others to report or shame the company for working with Propson" and by "encourage[ing] her followers to publicly report and call out Plaintiff Propson for being transphobic through public comments and direct messages." (TAC, ¶¶ 194, 304). Again, however, these allegations fail to establish that Carter's conduct was "unjustified" or anything other than her expressing her constitutionally-protected opinion. There is no allegation that Carter's purported statements to her followers (which the TAC fails to actually identify or describe in any detail) constitute defamation or any other type of "unjustified" conduct. To the contrary, the TAC alleges that Carter's fans purportedly commented on the Travel Channel's posts accusing Propson of being "transphobic" (TAC, ¶ 48), again, statements that are nonactionable opinions. (MTD Order, pp. 11-13).

**Second**, Propson's tortious interference claims against Carter fail because the TAC does not allege any facts establishing that Carter "act[ed] with a purpose to interfere with the ... contract." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 209 (Wis. Ct. App. 1995). "If an actor lacks 'the purpose to interfere' then his or her 'conduct does not subject [him or her] to liability even if it has the unintended effect of deterring [a third party] from dealing with the [plaintiff]." *Id.* Necessarily, "[t]o be subject to liability [for tortious interference with a contract], the actor must have knowledge of the contract with which [s]he is interfering and the fact that [s]he is interfering with the performance of the contract." Restatement (Second) of Torts, § 766, cmt. i. The TAC alleges no *facts* establishing that Carter knew about Propson's alleged contracts and that she "acted with the purpose of interfering with that contract." Rather, the TAC relies on nothing more than conclusory and insufficient

6

allegations devoid of any facts. (TAC, ¶ 192 (alleging only that "Krista Carter was aware of this agreement"), ¶ 196 (alleging that Carter's actions were "intentional and unjustified"). However, a "vague and conclusory allegation is insufficient to state a plausible claim for tortious interference." *Roumann Consulting Inc. v. Symbiont Construction, Inc.,* 2019 WL 3501527, at *9 (E.D. Wis. Aug. 1, 2019). Indeed, the TAC makes clear that Carter's motivation in making the statements about Propson on Tik Tok was to clear up confusion between Propson and Carter (*see* TAC, ¶ 33) – *not* to interfere with Propson's existing or potential contracts.

**Third**, the TAC is devoid of *any factual allegations* establishing that *Carter's* statements were the *cause* of the documentary channel's termination of its contract with Propson. *Duct-O-Wire*, 31 F.3d at 509 (essential element of tortious interference claim is that "a causal connection exists between the interference and the damages"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 550 (2007) (complaint must allege "enough facts to state a claim to relief that is plausible on its face . . .").

**Fourth**, Propson's claim for tortious interference with *economic advantage* fails because Wisconsin law requires a showing that "an actual or prospective contract existed between the plaintiff and a third party" with which the defendant interfered. *Bredberg v. Soil Sci. Soc'y of Am.,* 2012 U.S. Dist. LEXIS 204711, at *13 (W.D. Wis. May 17, 2012). "A tortious interference claim cannot stand without a showing by the plaintiff that the defendant has interfered with some bargained-for right of his or, at a bare minimum, a '**sufficiently certain, concrete and definite prospective relationship**' between the plaintiff and the third party." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 680 (7th Cir. 1999)), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (emphasis added). The "mere possibility that he may have trouble winning contracts in the future is not sufficient to allow him to proceed on this claim." *Bredberg,* 2012 U.S. Dist. LEXIS 204711, at *13; *Armament Sys. & Procedures, Inc. v. Emissive Energy Corp.*, 2007 U.S. Dist. LEXIS 65723, at *13 (E.D. Wis. Sep. 5, 2007) ("a bare assertion that [defendant] disrupted [plaintiff's] general business prospects

does not state a claim"). Here, the TAC alleges only that "Plaintiff Propson had a reasonable expectation of entering into additional business relationships and contracts with various media outlets, sponsors, and commercial partners, based on her existing audience engagement, recent inquiries, and past commercial success." (TAC, ¶ 301). Because the TAC does not allege a "sufficiently certain, concrete and definite" prospective relationship, this claim fails as a matter of law.

### III. CONCLUSION.

Based on the foregoing, Carter respectfully requests that this Court dismiss Counts VII and VIII of the TAC for failure to state a claim under Rule 12(b)(6).

Dated: August 27, 2025

Respectfully Submitted,

*s/     Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com


*s/     Amy Doig*
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

8

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

>Benjamin C.R. Lockyer
>Lockyer Law LLC
>100 N. Riverside Plaza, Suite 2400
>Chicago, Illinois 60606
>ben@lockyerlaw.com

>*Attorney for Plaintiffs*

Dated: August 27, 2025 /s/ *Brandon J. Witkow*
Brandon J. Witkow