**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN, | ) | |
| BRAUN IP LAW, LLC & | ) | |
| LAUREN PROPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| | ) | |
| v. | ) | Hon. J. Mary Rowland |
| | ) | |
| REBEKAH M. DAY NEE BOXX, | ) | Mag. J. M. David Weisman |
| KRISTA CARTER, & | ) | |
| LILY MARSTON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION**
**TO DEFENDANT DAY AND MARSTON'S MOTIONS TO DISMISS**

Plaintiffs Jeanette Braun ("Braun"), Braun IP Law LLC ("Braun Law") (collectively "Plaintiff"), by and through their attorney, present their memorandum of law in opposition to Defendant Rebekah M. Day nee Boxx ("Day") and Lily Marston's ("Marston") (collectively "Defendants") motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and states as follows:

## INTRODUCTION

Defendants Rebekah M. Day and Lily Marston again move to dismiss claims that are properly pled and supported by detailed factual allegations. Plaintiffs' Third Amended Complaint ("TAC") identifies the precise defamatory words, pleads why those words are verifiably false, and details concrete reputational and economic harm suffered as a result.

Defendants' arguments that their statements are "substantially true," "innocent construction," or "privileged" raise factual issues that cannot be resolved on a motion to dismiss. At this stage, the Court must accept Plaintiffs' well-pled allegations as true and draw all inferences

1

in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Because Plaintiffs plead verifiable falsehoods and resulting harm, and because Defendants' asserted defenses require factual development, the motion should be denied in its entirety.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests only the sufficiency of the complaint, not the merits. The complaint survives so long as it states a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. All factual allegations must be taken as true and construed in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678.

Affirmative defenses such as truth or privilege generally cannot be resolved at the pleading stage unless they are apparent on the face of the complaint. *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 737–38 (N.D. Ill. 2020).

## ARGUMENT

## I. Day's ARDC Fabrication States a Claim for Defamation Per Se.

Defendants' motion to dismiss Plaintiffs' defamation per se claim against Day should be denied because the TAC pleads a verifiably false statement imputing unethical and criminal conduct. Illinois law is clear: a statement imputing professional misconduct to a licensed attorney constitutes defamation per se. *Green v. Rogers*, 234 Ill. 2d 478, 491–92 (2009); *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 581 (2006). Day publicly stated that she "got confirmation from the Illinois Attorney Registration & Disciplinary Commission [ARDC] that they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating this matter." [76] Third Amended Complaint ("TAC") ¶ 85.

The TAC pleads that this statement was false: the ARDC does not confirm or characterize complaints to the public, it did not deem any "credible," and it did not assign "multiple attorneys" to investigate Braun. TAC ¶¶ 87–98, 143. Alleging that the ARDC confirmed "credible complaints" and opened an investigation strikes at the heart of Braun's professional integrity.

Day's invocation of "substantial truth" cannot resolve the falsity element at this stage. The "gist" of her claim was not simply that complaints existed—it was that the ARDC itself confirmed multiple credible complaints and assigned multiple attorneys, a fabrication that lends an air of official authority. Whether that "gist" is true cannot be decided on a motion to dismiss. *Osundairo*, 447 F. Supp. 3d at 738.

## II.    Marston's Perjury Accusation States a Claim for Defamation Per Se.

Defendants' motion to dismiss Plaintiffs' defamation per se claim against Marston should be denied because the TAC pleads a criminal accusation that is not substantially true. Under Illinois law, falsely imputing commission of a crime (such as perjury) is defamation per se. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006); *Green v. Rogers*, 234 Ill. 2d 478, 491–95 (2009). On December 10, 2023, Marston tweeted:

> "Do we think Demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her."

TAC ¶ 151.

This is a direct accusation of criminal conduct. Defendants attempt to reframe this as "substantially true" because Braun filed a DMCA takedown under penalty of perjury that the Copyright Claims Board (CCB) later rejected. [81]-1 Defs' Memo and Points of Auth Memo at 8–10. But a failed copyright claim is not perjury. The CCB did not find that Braun lied under oath, let alone that she committed a felony. Whether Marston's statement was protected hyperbole or a false criminal allegation is a factual question for a jury, not a Rule 12(b)(6) dismissal.

3

### III.    Plaintiffs State Claims for False Light.

Defendants' motion to dismiss Plaintiffs' false light claims should be denied because the TAC alleges highly offensive misrepresentations made with actual malice. Illinois recognizes false light where a defendant (1) places plaintiff in a false light before the public, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant acted with actual malice. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). The TAC alleges that Day's fabricated "ARDC confirmation" and Marston's "perjury" statement placed Braun in the false light of an unethical, even criminal attorney. TAC ¶¶ 162–171. Courts have held that false accusations of criminality or dishonesty satisfy the offensiveness element. *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 419–23 (1989).

The TAC also pleads actual malice: Defendants knew their statements were false or acted with reckless disregard. TAC ¶¶ 91, 158. Malice may be alleged generally and inferred from circumstances, including financial motive and repeated targeting. *Osundairo*, 447 F. Supp. 3d at 742.

### IV.    Plaintiffs State Claims for Trade Libel.

Defendants' motion to dismiss Plaintiffs' trade libel claims should be denied because the TAC pleads false statements disparaging Plaintiffs' professional services. Trade libel requires an injurious falsehood directed at the quality of a plaintiff's services. *Evanger's Cat & Dog Food Co. v. Thixton*, 412 F. Supp. 3d 889, 904 (N.D. Ill. 2019). Day's statements that Braun was under ARDC investigation and filed false copyright strikes, and Marston's accusation of perjury, go directly to the quality and legitimacy of Braun's professional services. TAC ¶¶ 178–189. Plaintiffs further allege actual harm, including lost clients such as Alyssa DeFord (Bunnie XO) and Monsters

and Martians. TAC ¶ 132. These are precisely the sort of reputational and commercial injuries trade libel protects against.

## V.      Plaintiffs State a Claim for Tortious Interference.

Defendants' motion to dismiss Plaintiffs' tortious interference claim should be denied because the TAC identifies specific client relationships and pleads intentional disruption. Illinois law requires (1) a valid business relationship, (2) defendant's knowledge of it, (3) purposeful interference, and (4) resulting damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–56 (1989). Unlike prior complaints, the TAC specifically names clients— Alyssa DeFord (Bunnie XO), Kaitlynn Dempsey (Demps), and Monsters and Martians—whose representation was lost as a result of Defendants' defamatory campaign. TAC ¶¶ 207–208. Plaintiffs also allege numerous prospective relationships that were thwarted when potential clients were dissuaded by the controversy Defendants incited. TAC ¶¶ 200–216. Defendants' argument that these allegations are "speculative" invites the Court to resolve causation disputes in their favor. That is impermissible at the pleading stage. *Twombly*, 550 U.S. at 570.

## VI.     Defendants' Invocations of "Substantial Truth," "Innocent Construction," and "Qualified Privilege" Are Fact Questions for Summary Judgment.

Truth, privilege, and innocent construction are affirmative defenses not apparent on the face of the TAC. Whether Day's statement was "substantially true" because one ARDC attorney reviewed complaints, or whether Marston's accusation of "perjury" was hyperbolic, cannot be determined without a factual record. See *Maki Constr. Co. v. Chi. Reg'l Council of Carpenters*, 379 Ill. App. 3d 189, 203 (2008) (noting substantial truth requires jury evaluation of "gist" or "sting").

5

Similarly, qualified privilege turns on motive and malice, which are inherently fact-intensive. *Kuwik v. Starmark Star Marketing*, 156 Ill. 2d 16, 30 (1993). The TAC pleads malice with supporting facts, which is sufficient at this stage.

## VII. Defendants' Arguments of Substantial Truth, Innocent Construction, and Qualified Privilege Cannot Defeat Plaintiffs' Claims at the Pleading Stage

First. Substantial truth is a fact question focused on the "gist" or "sting" that the challenged words convey, not on a defendant's after-the-fact minimization. See *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614–16 (7th Cir. 2013); *J. Maki Constr. Co. v. Chi. Reg'l Council of Carpenters*, 379 Ill. App. 3d 189, 203 (1st Dist. 2008). Here, the sting of Day's statement is not merely that "someone complained," but that the ARDC itself "confirmed" there were "multiple credible complaints" and that "multiple attorneys" had been assigned—an attribution of official imprimatur that materially heightens reputational harm and is provably false. See *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (liability where alteration materially changes meaning). Likewise, labeling a lawyer as "actively committing perjury" imputes a specific felony, not a disputed legal position, and cannot be declared "substantially true" at Rule 12(b)(6) by citing later fair-use determinations outside the pleadings. *Tuite v. Corbitt*, 224 Ill. 2d at 501.

Second. The innocent-construction rule does not apply because, read in context and with their natural and obvious meaning, the words at issue reasonably convey criminality and official suspicion of professional misconduct. The rule requires dismissal only if an innocent meaning is at least as reasonable as the defamatory one. *Green v. Rogers*, 234 Ill. 2d 478, 499–501 (2009); *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). A purported ARDC "confirmation" of "multiple credible complaints" and "multiple" assigned investigators necessarily impeaches a lawyer's integrity in her profession, and accusing her of "actively committing perjury" squarely

imputes a crime—both classic categories of defamation per se under Illinois law. See *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 10–11 (1992); *Tuite v. Corbitt*, 224 Ill. 2d at 501.

Third. Qualified privilege is an affirmative defense that turns on the occasion, audience, scope, and motive of the publication, as well as whether any privilege was abused by malice or excessive publication—quintessential fact questions that cannot be resolved on the pleadings. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 30–31, 619 N.E.2d 129, 136–37 (1993). Any arguable "common-interest" privilege is defeated at this stage by Plaintiffs' allegations that Defendants knowingly or recklessly published false statements to a broad, undifferentiated social-media audience to maximize reach and harm, far beyond any discrete group sharing a corresponding interest. See id.; Fed. R. Civ. P. 9(b) (malice may be alleged generally).

## VIII. The TAC Pleads Malice With Specific Factual Support.

Defendants argue that Plaintiffs' allegations of malice are "boilerplate" and therefore insufficient to overcome qualified privilege. That mischaracterizes the TAC. The TAC does not merely recite the word "malice"; it pleads detailed facts from which malice may be reasonably inferred.

### A. Day's knowledge of falsity.

The TAC alleges that Day stated she had received "confirmation from the Illinois ARDC" that it had "multiple credible complaints" against Braun and had "assigned multiple attorneys" to investigate her. TAC ¶ 85. Plaintiffs specifically plead that "the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney," TAC ¶ 97, and that "all attorney investigations are confidential until the Commission brings a complaint against an attorney." TAC ¶ 96. In other words, Day knew or should have known that the ARDC never provides such "confirmations" to the public. The TAC further pleads

that Day intentionally fabricated the supposed "confirmation" to "sensationalize her social media post, add credibility to her claims, and disparage Braun before the public." TAC ¶ 90. These are not conclusory allegations; they are concrete facts demonstrating Day's reckless disregard for the truth.

**B.   Marston's reckless disregard.**

The TAC also pleads that Marston stated Braun was "actively committing perjury" in connection with her representation of a client. TAC ¶ 151. The TAC makes clear that this accusation was false because Braun "has never committed perjury, nor has she been found by any court or agency to have engaged in any unethical or criminal conduct." TAC ¶ 154. Moreover, Marston's charge of "perjury" ignored obvious limits on the meaning of that term: Braun's DMCA takedown was submitted pursuant to statute and later litigated as a fair use dispute, not a criminal perjury proceeding. The TAC pleads that Marston acted "with actual malice—knowingly, or with reckless disregard as to its falsity—and for the purpose of damaging Plaintiff Braun and Braun Law's professional reputation and inciting public backlash." TAC ¶ 158. The surrounding factual allegations show Marston was well aware that accusing an attorney of an ongoing felony was grossly disproportionate to the underlying copyright dispute.

**C.   Contextual allegations of the Defendants' motives.**

Beyond the falsity of the statements themselves, the TAC pleads facts showing Day and Marston had strong financial and reputational motives to sensationalize their attacks on Braun. Day is alleged to monetize her TikTok channel and to have "received compensation from TikTok based on the number of views a video receives." TAC ¶ 60. Marston is alleged to have profited through her podcast, "Do We Know Them," which is monetized on YouTube and other platforms. TAC ¶ 105. Plaintiffs allege that both Day and Marston amplified their attacks on Braun to boost

8

engagement and income, even after being informed of their falsity. TAC ¶¶ 68–69, 108–109, 132–134. Courts recognize that such allegations of motive and profit, combined with fabricated facts, are sufficient to plead malice at the Rule 12(b)(6) stage. See *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 742 (N.D. Ill. 2020) (finding allegations of knowing falsity and reckless disregard sufficient to plead actual malice).

Taken together, these allegations go well beyond conclusory recitals. They plead that Day fabricated an "ARDC confirmation" that could not exist, and that Marston leveled a knowingly false accusation of a felony crime, both with the purpose of monetizing controversy and destroying Plaintiffs' reputations. That is more than enough to allege malice and defeat any privilege argument at the pleading stage.

## IX. Defendants' Reliance on a "Public Interest" Privilege Fails Because Their Broad Social Media Publications Far Exceed Any Recognized Privilege

Defendants argue that their statements are protected by a qualified "public interest" privilege because they addressed alleged misuse of copyright strikes and legal processes in the online creator community. That argument fails for two reasons: (1) Illinois courts limit privilege to communications directed to discrete audiences with a legitimate shared interest, not mass broadcast to the public at large; and (2) the TAC pleads abuse of any arguable privilege through malice and excessive publication.

The Illinois Supreme Court has made clear that qualified privilege applies where "the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published," but only when both share a corresponding interest in the subject. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 24, 619 N.E.2d 129, 133 (1993). Courts applying *Kuwik* have consistently rejected privilege arguments where the statement is blasted indiscriminately to the general public, rather than confined to those with a

need to know. See, e.g., *Gerba v. Nat'l Hellenic Museum*, 2019 U.S. Dist. LEXIS 17208, at *21–24 (N.D. Ill. Feb. 4, 2019) (privilege exists only where publication is made to individuals sharing a direct interest, such as co-workers or supervisors); *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 845 (N.D. Ill. 2015) (privilege applied to student's complaint to university officials with an interest in resolving safety concerns).

By contrast, the TAC pleads that Day and Marston published their statements on TikTok, X (formerly Twitter), YouTube, and podcast platforms—each with hundreds of thousands of followers, monetized through views, and designed to maximize viral spread. TAC ¶¶ 59–61, 105, 108–109. Their audiences were not confined to individuals with a shared "interest" in ethics or copyright law; they were the general public and social media consumers, many of whom had no legitimate reason to receive purported disciplinary information about an Illinois attorney. Disseminating allegations to a mass social media audience is the opposite of the narrow, need-to-know publication that a qualified privilege requires.

Privilege is lost when abused by malice or excessive publication. Even if some arguable common-interest privilege applied, the TAC pleads abuse sufficient to defeat it. Privilege is forfeited when the speaker acts "with a direct intention to injure another or a reckless disregard of the plaintiff's rights" or engages in "excessive publication." *Kuwik*, 156 Ill. 2d at 30–31, 619 N.E.2d at 136–37. Here, the TAC alleges that Day and Marston knowingly fabricated or recklessly disregarded the falsity of their statements (TAC ¶¶ 85–90, 151–158), broadcast them to massive, monetized audiences (TAC ¶¶ 59–61, 105, 108–109), and continued amplifying them even after Plaintiffs and third parties alerted them to the harm (TAC ¶¶ 127–134). Such allegations of broad dissemination and intentional amplification for profit squarely allege abuse of privilege.

In short, Illinois law does not extend qualified privilege to mass social media blasts, and even if it did, the TAC pleads abuse sufficient to defeat it. Defendants' "public interest" argument therefore provides no basis for dismissal at the pleading stage.

## X.   The TAC Pleads Causation With Specific Allegations of Contractual Losses and Reputational Backlash

Defendants also argue that Plaintiffs have not plausibly alleged a causal connection between Day and Marston's false statements and Plaintiffs' lost clients and business relationships. The TAC, however, pleads causation in detail, identifying specific clients who severed ties and explaining how reputational backlash triggered by Defendants' campaign drove those losses.

### A.   Lost clients directly tied to Defendants' conduct.

The TAC pleads that "[a]s a result of the false and defamatory statements by Defendants Marston and Day, Ms. Braun lost her client Alyssa DeFord p/k/a Bunnie XO and her client Monsters and Martians." TAC ¶ 131. It further alleges that "Ms. DeFord and Monsters and Martians chose to terminate Ms. Braun's representation because of the online scrutiny caused by Defendant Day and Defendant Marston's false statements and promotion of the online controversy." TAC ¶ 132. These allegations are not generalized reputational harm; they identify named clients and specific terminations linked to Defendants' actions.

### B.   Reputational backlash incited by Defendants.

The TAC also alleges that Defendants' false statements and online commentary incited an "angry internet mob comprising the Defendants' followers" that generated threats, harassment, and reputational harm. TAC ¶ 122. That mob activity included "numerous intimidating communications and threats of harm to the Plaintiffs" (TAC ¶ 124), "threats of violence against her and threats to burn her home down" (TAC ¶ 126), and "false 1-Star Google Reviews against

Ms. Braun and Braun Law to harm its reputation." TAC ¶ 129. Plaintiffs allege that this reputational backlash was "a direct result of the statements made by the Defendants." TAC ¶ 125.

### C. Causation pled for interference claim.

Finally, the TAC makes explicit that "[a]s a proximate cause of Defendant Day and Defendant Marston's false and defamatory statements, Plaintiff Braun and Braun Law lost work from numerous clients including, Ms. DeFord and Ms. Dempsey." TAC ¶ 207. It further pleads that "multiple clients, including Ms. DeFord and Monsters and Martians, began to distance themselves from Braun Law and Plaintiff Jeanette Braun" as a direct result of Defendants' campaign. TAC ¶ 208.

Taken together, these allegations plead exactly what Defendants say is missing: a causal chain between Defendants' false statements, the reputational harm those statements unleashed, and the concrete loss of named clients. At the pleading stage, that is more than sufficient to allege causation. See *Duct-O-Wire Co. v. United States Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994) (causation element satisfied by plausible allegations that interference led to loss).

### CONCLUSION

Plaintiffs have pled detailed factual allegations supporting each element of their claims. Defendants' arguments rely on factual disputes and affirmative defenses that cannot be resolved on a motion to dismiss. For these reasons, the Court should deny Defendants Day and Marston's Motion to Dismiss in its entirety.

Respectfully Submitted,

*s/      Benjamin Lockyer*

Benjamin C.R. Lockyer
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
ben@lockyerlaw.com

*Attorney for Plaintiffs*