**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| v. | ) ) | |
| REBEKAH M. DAY NEE BOX, KRISTA CARTER, & LILY MARSTON | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT KRISTA CARTER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

I.  INTRODUCTION

Plaintiff Lauren Propson ("Propson") Opposition avoids the fundamental issue this Court already addressed: her interference claims remain legally deficient because they are based on constitutionally-protected expression and unsupported by any well-pleaded factual allegations. In dismissing the tortious interference claim in the Second Amended Complaint ("SAC"), the Court held that Propson failed to plead any facts showing that Defendant Krista Carter's ("Carter") conduct was "unjustified," noting that her allegations were based entirely on protected statements of opinion and that no unlawful conduct was alleged. The Court also rejected the notion that Carter's speech could support liability in the absence of false statements or impermissible conduct.

The Third Amended Complaint ("TAC") repeats the same core theory the Court already rejected, centered on Carter's October 24, 2023 TikTok video. While Propson now attempts to reframe her tortious interference claims by asserting in the Opposition that Carter also "incited" an online mob and "urged sponsors to drop her," there are no factual allegations in the TAC of any such conduct: no statements by Carter directing anyone to act, no messages to sponsors, and no detail regarding what her followers allegedly said or did. The TAC contains only vague, conclusory references to Carter "encouraging" others or "inciting" action, but without any supporting facts that would allow the Court to evaluate whether any such conduct was unjustified or even occurred. This is a critical omission, particularly where Propson relies so heavily on that theory to salvage her claims.

The Opposition also fails to explain how these recycled claims now satisfy the elements of intent, causation, or the existence of specific contractual or prospective relationships. Propson points to no new allegations in the TAC that would change this Court's analysis, nor does she distinguish the case law, including this Court's prior ruling, holding that protected expression cannot support interference claims. In short, the TAC does not fix the deficiencies the Court already identified, and

1

the Opposition does not justify a different outcome. These claims should be dismissed again, this time with prejudice.

II. **PROPSON'S OPPOSITION FAILS TO EXPLAIN HOW HER TORTIOUS INTERFERENCE CLAIMS CAN SURVIVE A MOTION TO DISMISS.**

**A. Propson Has Failed to Satisfy the "Unjustified" Element of the Interference Claims.**

As explained in Carter's Motion to Dismiss, Propson's claim for tortious interference with contract and tortious interference with economic advantage should be dismissed because the TAC fails to allege that Carter's conduct was "unjustified," an essential element of both causes of action under Wisconsin law. *Duct-O-Wire Co. v. United States Crane*, 31 F.3d 506, 509 (7th Cir. 1994) (under Wisconsin law, a claim for intentional interference with an existing or prospective contract requires that a party allege that the "defendant was not justified or privileged to interfere.") As explained in Carter's Motion, this Court has already covered this issue in ruling on the Motion to Dismiss the SAC.

Specifically, in dismissing Propson's claim for tortious interference with contract against Carter in the SAC, this Court held that "Propson cannot satisfy the fifth element because she has not pled any facts showing that Carter's alleged interference in any contract was unjustified. Under Wisconsin law, 'a defendant's conduct may only be found justified if the means employed by the defendant were lawful.' Conduct is 'lawful' when it is '. . . not contrary to nor forbidden by law.' Propson has alleged no conduct that is forbidden by law by Carter. And in her opposition brief, Propson's sole argument is that Carter 'made false statements' about Propson. For the reasons, discussed above, Propson has not sufficiently alleged that Carter made any false statements as opposed to opinions." (Memorandum Opinion and Order dated 2/28/25 ("MTD Order"), p. 21) (internal citations omitted).

Here, again, Propson's interference claims are based on the same constitutionally-protected opinions as the prior interference claim that this Court found inadequate and, therefore, this Court

2

should dismiss these defective claims once again. (TAC, ¶¶ 192-193, 303) (alleging that Carter interfered with Propson's contracts by "falsely accus[ing] Propson of being a 'TERF', 'transphobic,' and of liking and promoting incredibly transphobic and hateful rhetoric and content" and alleging that Carter accused Propson "of transphobia and hateful conduct, framing her conduct as bigoted and unethical" to "discourage others from working with or supporting [Propson]"). This is a very simple case of Plaintiff blatantly ignoring the Court's prior ruling and restating interference claims based on constitutionally-protected conduct that in no way can be considered "unjustified." *Fredin v. Klasfeld*, 2025 U.S. Dist. LEXIS 55312, at *32-33 (W.D. Wis. Mar. 21, 2025) ("plaintiffs cannot bring other tort claims essentially restating defamation claims"); *Next Techs., Inc. v. Beyond the Office Door LLC*, 2020 U.S. Dist. LEXIS 102413, at *39-40 (W.D. Wis. June 10, 2020) (dismissing tortious interference claims predicated on defamatory speech on the grounds that they were subject to the same constitutional protections as defamation claims). Because she cannot point to any allegations of the TAC that have salvaged her interference claims, Propson's Opposition repeatedly asserts a myriad of nonsensical and meritless arguments that ignore this Court's prior ruling.

*First*, Propson argues that "whether interference is justified is fact-intensive, turning on motive and means." (Opp., p. 3). Defendant cites *Kuwik v. Starmark Mktg.,* 156 Ill. 2d 16, 20 (1993) for this alleged proposition, but that case concerns only a claim for defamation and makes no mention of a determination of "justification" in an interference claim.[1] Contrary to Propson's unsupported claim, courts can and routinely do determine whether conduct is or is not "unjustified" in determining whether an interference claim based on defamatory statements has been adequately plead – as this

---

[1] *Kuwick* actually holds that "the issue of whether a qualified privilege exists has been a question of law for the court . . . ." *Id.* at 25. Later in the Opposition, Propson appears to rely on *Liebe v. City Fin. Co.,* 98 Wis. 2d 10, 14-15 (1980) for the proposition that whether interference is justified depends on fact intensive inquiries and "cannot be resolved on a Rule 12(b)(6) motion." (Opp., p. 5). However, *Liebe* did not involve a motion to dismiss, but rather considered whether the trial court was correct in granting defendant a directed verdict when the interference claim was based on statements that were entirely true and, therefore, constitute free speech. The Court affirmed the directed verdict in that case. *Liebe, supra.*

3

Court did in ruling on the MTD the SAC. (MTD Order, p. 21); *see also Dumas v. Koebel,* 841 N.W.2d 319*,* 328 (WI. App. 2013) (dismissing contract-interference claims based on statements that were constitutionally-protected); *Next Techs., Inc.*, 2020 U.S. Dist. LEXIS 102413, at *39-40 (dismissing tortious interference claims based on defamatory speech at pleading stage). Thus, Propson's claim that this Court cannot make a determination of whether the "unjustified" element of her interference claims has been satisfied at the pleadings stage is unsupported and without merit.

*Second*, Propson argues that the Court's prior dismissal of her interference claim based on Carter's constitutionally-protected opinions does not dispose of her current interference claim because Carter's liability "arises not from labeling Propson as 'TERF', but from Carter's targeted conduct- urging sponsors to drop Propson, and inciting her followers to pressure companies until they did." (Opp., p. 4). As a preliminary matter, no matter how hard Carter tries to recharacterize her allegations in the Opposition, the TAC itself makes clear that the interference claims ***are actually*** based on Carter's constitutionally-protected opinions, as discussed above (not any "targeting" of sponsors).

In Paragraph 192 of the TAC, Propson alleges that Carter "was aware of this [Travel Channel] agreement. Around October 24, 2023, Carter published multiple social media videos in which she falsely accused Propson of being a "TERF," "transphobic," and of liking and promoting "incredibly transphobic and hateful rhetoric and content." These accusations were not based in fact and misrepresented the content and context of Propson's social media activity." (TAC, ¶ 192). In Paragraph 303 of the TAC, Propson alleges that despite Carter's alleged knowledge of Propson's relationships, "Defendant Carter intentionally published multiple defamatory and misleading statements accusing Plaintiff Propson of transphobia and hateful conduct, framing her conduct as bigoted and unethical. These statements were designed to discourage others from working with or supporting Plaintiff." (TAC, ¶ 303). It is without question that Propson's interference claims *are based* on Carter's constitutionally-protected opinions and, therefore, are *not* based on "unjustified"

4

conduct as required under Wisconsin law.

As for Propson's claim that Carter interfered with Propson's contracts and relationships by "urging sponsors to drop Propson, and inciting her followers to pressure companies until they did," the TAC contains no *facts* supporting such conclusory allegations. Indeed, the only *factual* allegations regarding Carter's conduct relate to the statements Carter made in her October 24, 2023 Tik Tok video. The allegations regarding those statements are detailed and extremely specific, and they demonstrate that *absolutely nowhere* in that video does Carter *ever* urge or pressure companies to "drop" Carter or end their relationships with her. Those allegations also demonstrate that *nowhere* in that video does Carter *ever* urger or "incite" her followers to pressure companies to "drop" Carter or end their relationships with her. (TAC, ¶¶ 18-34). Indeed, the Opposition refers several times to Carter "orchestrating a mob campaign to pressure companies" (Opp., p. 4), "urging sponsors to drop Propson" (*id.*), "inciting followers to pressure companies" (*id.*), "inciting and mobilizing her online followers to pressure sponsors into severing their relationships with Propson" (*id.,* p. 5), "weaponizing a social-media platform to induce specific breaches" (*id.*), "inciting an economic boycott by unleashing an online mob" (*id.,* p. 6). However, there are *no facts* in the TAC to support these assertions. *At most,* the TAC contains conclusory, factually-devoid allegations of communications by Carter to her followers: "Defendant Carter actively engaged with and further incited her fans and the general public through public social comments, and upon information and belief, through direct messages" (TAC, ¶ 37); "In addition to her defamatory posts, Carter took steps to interfere with Propson's contract relationships, such as the Travel Channel, by encouraging others to report or shame the company for working with Propson" (TAC, ¶ 194), "Upon information and belief, Carter further encouraged her followers to publicly report and call out Plaintiff Propson for being transphobic through public comments and direct messages," (TAC, ¶ 304). There are *no* factual allegations anywhere in the TAC of any statements by Carter *to The Travel Channel or any other*

5

*company* with which Propson allegedly had a relationship or an expectancy of a relationship.

Further, as for the allegations of statements by Carter *to her followers* that encouraged them to "interfere" with Propson's relationships, unlike the detailed allegations regarding the October 24, 2023 TikTok video, complete with screenshots, there are no allegations explaining precisely what Carter said to her followers that purportedly "incited them" to interfere with Propson's relationships and contracts. To the contrary, these allegations are so vague that it makes it impossible for Carter or this Court to determine whether these alleged statements were "unjustified." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) ("courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim").

Not only is the TAC devoid of any factual allegations regarding what Carter said to her followers in order to "incite" them to interfere with Propson's contracts, but there is essentially no factual allegation as to what these alleged followers actually said to the companies. The only reference to this alleged "interference" appears in Paragraph 48, where Propson alleges that "[f]ans of Defendant Carter's commented on The Travel Channel's posts accusing Ms. Propson of being transphobic." (TAC, ¶ 48). This Court has already held that calling someone "transphobic" is a constitutionally-protected opinion. (MTD Order, p. 11-13). Therefore, the followers' alleged statements cannot constitute interference, as they are not "unjustified." If the followers cannot be liable for expressing constitutionally-protected opinions, Carter likewise cannot be liable for purportedly "encouraging" that speech. The Opposition cites *Frandsen v. Jensen-Sundquist Agency, Inc.*, 802 F.2d 941, 947 (7th Cir. 1986) for the proposition that "weaponizing a social media platform to induce specific breaches is actionable interference", and courts have "long distinguished interference from defamation on the basis." However, *Frandsen* has nothing to do with defamation

6

or social media, nor does it in any way support the proposition for which Propson has cited it.[2] Equally misplaced is Propson's reliance on *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.,* 90 Wis. 2d 97, 105 (Ct. App. 1979) for the proposition that "[u]nder Wisconsin law, inciting an economic boycott by unleashing an online mob is not automatically privileged." (Opp., p. 6). Again, that case has nothing to do with an "economic boycott" or an "online mob," but rather holds that interference with contract can apply to contracts that are terminable at will. *Id.* at 107.

Nowhere in Propson's Opposition does she point to any factual allegations of the TAC or any legal authorities holding that Carter can be held liable for the conduct of unidentified, anonymous third parties who follow her on social media simply based on the expression of her constitutionally-protected opinions. Indeed, in dismissing Carter's intentional infliction of emotional distress claims set forth in the SAC, this Court found that "Plaintiffs have not identified any authority indicating that a defendant can be liable for intentional infliction of emotional distress based on the actions of non-parties – even if they were inspired by the defendant's otherwise non-actionable conduct." (MTD Order, p. 24). The same logic applies to Propson's claim for interference based on the actions of non-parties; Carter cannot be liable for any alleged, un-plead actions of those third parties (especially when they are only expressing their opinions), even if those third parties were inspired by Carter's non-actionable conduct. Because Propson has not alleged any facts satisfying the "unjustified" element of both her claims for interference with contract and interference with economic advantage, those claims cannot survive under Fed. R. Civ. P. 12(b)(6).

**B. Propson Has Failed to Satisfy the "Intent" Element of the Interference Claims.**

As explained in Carter's Motion, Propson's tortious interference claims against Carter fail because the TAC does not allege any facts establishing that Carter "act[ed] with a purpose to interfere

---

[2] It is unclear why Plaintiff cited to *Frandsen* as this case involved "issues of Wisconsin contract and tort law in the setting of a dispute over the rights of a minority shareholder in a closely held corporation." 802 F.2d at 942.

with the ... contract." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 209 (Wis. Ct. App. 1995). The TAC alleges no *facts* establishing that Carter knew about Propson's alleged contracts and that she "acted with the purpose of interfering with that contract." Rather, the TAC relies on nothing more than conclusory and insufficient allegations devoid of any facts. (TAC, ¶ 192 (alleging only that "Krista Carter was aware of this agreement"), ¶ 196 (alleging that Carter's actions were "intentional and unjustified"). However, a "vague and conclusory allegation is insufficient to state a plausible claim for tortious interference." *Roumann Consulting Inc. v. Symbiont Construction, Inc.,* 2019 WL 3501527, at *9 (E.D. Wis. Aug. 1, 2019). Indeed, the TAC makes clear that Carter's motivation in making the statements about Propson on TikTok was to clear up confusion between Propson and Carter (*see* TAC, ¶ 33) – *not* to interfere with Propson's existing or potential contracts.

In her Opposition, Propson argues that "intent to interfere may be inferred where the actor knows interference is substantially certain to result." (Opp., p. 3) (*citing Foseid*, 541 N.W.2d at 209) However, *Foseid* does not stand for the proposition that a court can "infer intent to interfere" when ruling on a motion to dismiss. *Id.* (finding that there was **not** evidence from which one could reasonably infer an intent to interfere and an interference could *not* be based on "conjecture and speculation"). While courts can make inferences regarding intent, "[p]leadings must nonetheless 'allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'" *Simonian v. Edgecraft Corp.*, 2010 U.S. Dist. LEXIS 123077, at *8 (N.D. Ill. Sep. 20, 2010). Here, there are <u>no facts alleged</u> that would allow this Court to infer that Carter made the alleged statements to her followers about Propson with the *intent* to interfere with Propson's contract with The Travel Company or anyone else. To the contrary, if the allegations of the TAC are true, Carter's intent in making the statements about Propson was to highlight the differences in the fundamental beliefs between herself and Propson to ensure that her followers did not confuse her and Propson. (TAC, ¶ 33). Given this allegation, her intent to dispel any such confusion is the far more

8

likely explanation for her statement than her desire to destroy the relationship between Propson and The Travel Channel (or any other company). Absent allegations suggesting *why* Carter would have wanted to interfere with Propson's contract with The Travel Channel, the claim does not have the requisite plausibility to survive a motion to dismiss.[3] *See Dellis v. Fay Servicing, LLC,* 2018 U.S. Dist. LEXIS 174582, at *12-13 (E.D. Wis. Oct. 10, 2018) (dismissing interference claim holding that "[a]bsent some allegation suggesting why [defendant] would have wanted to interfere with Plaintiffs' contract with Juniper, the claim has no more plausibility than the anti-trust claim at issue in *Twombly*"). There are no such allegations in the TAC, warranting dismissal.

### C. Propson Has Failed to Satisfy the "Causation" Element of the Interference Claims.

As explained in the Motion to Dismiss, the TAC is devoid of any factual allegations establishing that Carter's statements were the *cause* of the documentary channel's termination of its contract with Propson. *Duct-O-Wire*, 31 F.3d at 509 (essential element of tortious interference claim is that "a causal connection exists between the interference and the damages"). In her Opposition, Propson argues that "within days of Carter's October 24, 2023 campaign, the Travel Channel informed Propson that it would cease posting her videos 'due to the online controversy, and Pair Eyewear terminated its sponsorship.'" (Opp., p. 3). Propson claims that this "temporal proximity and direct causal link satisfy the pleading requirement", citing *Twombly.* (*Id.*) However, as explained above, *Twombly* requires that the plaintiff "provid[e] some specific facts" to support the legal claims asserted in the complaint. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.*

---

[3] The TAC alleges only that Carter's actions were "interference was intentional and unjustified" and "motivated by animus and retaliation, not public discourse. (TAC, ¶ 196; *see also* TAC, ¶ 308 (alleging Carter's "actions were motivated by animus and executed with the intent to cause economic harm to a rival social media influencer"). Again, these allegations are too "sketchy" to survive a motion to dismiss. *Brooks,* 578 F.3d at 581.

9

The TAC does not provide *any* facts to support that The Travel Channel or Pair Eyewear canceled their alleged contracts with Propson *because of Carter's statements.* Rather, the TAC alleges only that Carter's fans allegedly "commented on The Travel Channel's posts accusing Ms. Propson of being transphobic," which "led to The Travel Channel deleting comments accusing Ms. Propson of being transphobic", and then The Travel Channel told Propson that "due to the online controversy surrounding her, they needed to protect themselves from the negativity and would no longer post her videos." (TAC, ¶¶ 48-50). There is no allegation that The Travel Channel told Propson that they would no longer post her videos *because of* Carter's statements specifically; rather, the only reason given – per the TAC – is a reference to a generic "online controversy." (*Id.,* ¶ 50). Even more tenuous is the allegation that Pair Eyewear terminated its alleged relationship with Propson because it could not "work with someone who has this kind of content out there." (TAC, ¶ 52). If anything, this allegation demonstrates that it was Propson's own content that drove the alleged decision by Pair Eyewear, not any statements by Carter. Thus, both interference claims should be dismissed for the failure to allege the element of causation.

D. **Propson Has Failed to Satisfy the "Contract or Relationship" Element of the Interference Claims.**

Finally, Propson's claim for tortious interference with economic advantage fails because Wisconsin law requires a showing that "an actual or prospective contract existed between the plaintiff and a third party" with which the defendant interfered. *Bredberg v. Soil Sci. Soc'y of Am.,* 2012 U.S. Dist. LEXIS 204711, at *13 (W.D. Wis. May 17, 2012). As explained in Carter's Motion, the TAC alleges only that "Plaintiff Propson had a reasonable expectation of entering into additional business relationships and contracts with various media outlets, sponsors, and commercial partners, based on her existing audience engagement, recent inquiries, and past commercial success." (TAC, ¶ 301). Because the TAC does not allege a "sufficiently certain, concrete and definite" prospective relationship, this claim fails as a matter of law. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 680

10

(7th Cir. 1999)), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (emphasis added) ("A tortious interference claim cannot stand without a showing by the plaintiff . . . at a bare minimum, [of] a '***sufficiently certain, concrete and definite prospective relationship***' between the plaintiff and the third party").

Propson's Opposition argues that the "TAC alleges that Propson was in active negotiations for a podcast deal and other sponsorships, and that those negotiations collapsed due to Carter's campaign." (Opp., p. 4). However, being in "negotiations" with *unidentified third parties* is not an allegation of "sufficiently certain, concrete, and definite" relationships as required under Wisconsin law. *See e.g., Extang Corp. v. Laurmark Enters.,* 2013 U.S. Dist. LEXIS 201959, at *27-28 (W.D. Wis. Apr. 11, 2013) (dismissing interference claim based on "conclusory allegations" that "fail to *identify any specific existing or prospective contracts or any specific third parties*") (emphasis added).

### III. CONCLUSION.

Based on the foregoing, Carter respectfully requests that this Court dismiss Counts VII and VIII of the TAC for failure to state a claim under Rule 12(b)(6).

Dated: October 21, 2025

Respectfully Submitted,

s/ *Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*s/     Amy Doig*
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

    Benjamin C.R. Lockyer
    Lockyer Law LLC
    100 N. Riverside Plaza, Suite 2400
    Chicago, Illinois 60606
    ben@lockyerlaw.com

    *Attorney for Plaintiffs*

Dated: October 21, 2025                                              /s/ *Brandon J. Witkow*
                                                                                    Brandon J. Witkow