**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, | ) | |
| & LAUREN PROPSON, | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| v. | ) | |
| | ) | |
| REBEKAH M. DAY NEE BOX, KRISTA | ) | |
| CARTER, & LILY MARSTON | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS REBEKAH M. DAY AND LILY MARSTON'S REPLY BRIEF IN**
**SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(B)(6)**

# I. INTRODUCTION.

Plaintiff Jeanette Braun and Braun IP's Law, LLC's (collectively "Braun") Opposition to Defendant Rebekah M. Day's ("Day") and Lily Marston's ("Marston") Motion to Dismiss confirms rather than cures the fatal defects in her claims against Day and Marston. Unable to identify any false, actionable statements or plead facts showing actual malice or abuse of privilege, Braun relies instead on conclusory assertions and gross mischaracterizations of controlling law. But a plaintiff cannot avoid dismissal by re-labeling nonactionable statements as defamatory, nor can she manufacture a factual dispute where her own pleadings concede the essential truth of the statements at issue.

As to Day, Braun does not, and cannot, dispute that the Illinois Attorney Registration & Disciplinary Commission ("ARDC") received complaints about her and assigned an attorney to investigate. That uncontested reality is the "gist" of Day's statement, and bland allegations about the source of the information does no incremental reputational harm. As to Marston, Braun likewise does not refute that she filed a DMCA takedown notice under penalty of perjury against content that was subsequently found to be a "textbook example of fair use." Those uncontroverted facts render Marston's statement substantially true as a matter of law.

Moreover, Braun's Opposition fails to plead facts showing that either Day or Marston acted with the requisite knowledge of falsity or reckless disregard for the truth. Instead, Braun offers only boilerplate allegations and irrelevant assertions of supposed financial motive and ill will--none of which satisfy the rigorous standard for overcoming the qualified privilege that applies to their statements. And because the defamation claims fail, so too must the derivative false light and trade libel claims.

Finally, Braun's tortious interference claim remains both factually and legally deficient. Despite identifying specific *examples* of lost clients in the TAC, her claim continues to be based on allegations of interference with unidentified clients and prospective clients, and it alleges no plausible facts linking Day or Marston's statements to any lost business relationships or demonstrating a reasonable expectation of continued representation, as Illinois law requires.

For all of these reasons, and as explained more fully below, Braun's Opposition does nothing to salvage claims that are legally deficient on their face. Thus, Day and Marston respectfully request that the Court grant Defendants' Motion to Dismiss in its entirety.

## II. BRAUN'S OPPOSITION FAILS TO EXPLAIN HOW HER CLAIMS AGAINST DAY AND MARSTON CAN SURVIVE A MOTION TO DISMISS.

### A. Day and Marston's Alleged Statements Are Not Actionable as Fraud, Trade Libel or False Light.

#### 1. The "Gist" of Day's Statement is Substantially True and Subject to an Innocent Construction.

Plaintiff's claims against Day for defamation, false light, trade libel, and tortious interference are based on a single statement made by Day on Tik Tok, and neither the TAC nor Plaintiff's Opposition establish that this statement actually is false. Specifically, the TAC alleges that Day's statement that she "[j]ust got confirmation from the Illinois Attorney Registration & Disciplinary Commission [("ARDC")] thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter" is false because the ARDC did not actually communicate this information to Day, it does not comment on provide such information to the public, and such investigations are confidential. (TAC, ¶¶ 85, 87, 88, 96, 143, 144, 163). Critically, nowhere in the TAC does Braun allege that the ARDC did ***not*** receive any complaints about her or that the ARDC was ***not*** investigating such complaints. (*Id.*) Braun's Opposition confirms that Day's statements is false because the ARDC allegedly did not relay information to Day – *not because* the ARDC did not actually receive any complaints about Braun or

was not investigating her. (Opp., p. 3). That Braun has **not once** alleged or argued that there were **no complaints** made about her to the ARDC and that the ARDC was not investigating her speaks volumes. Not only that, but the TAC alleges that there *were* complaints made about her to the ARDC and the ARDC assigned at least one attorney to investigate her. (TAC, ¶ 99 ("Despite Defendant Day's that claim that 'multiple attorneys' were assigned to the 'multiple credible complaints' against Ms. Braun, the ARDC only assigned one attorney to review the matter", ¶ 100 ("The ARDC closed the complaints against Ms. Braun")).

As explained in the Motion to Dismiss, "[t]o establish truth as a defense in a defamation action, [] it is not necessary to establish the literal truth of the [Day's statement], rather, only 'substantial truth' is required for this defense." *Vachet v. Cent. Newspapers, Inc*., 816 F.2d 313, 316 (7th Cir. 1987) (citing *American Int'l Hosp. v. Chicago Tribune*, 136 Ill. App. 3d 1019, 1022 (1985)). "In other words, a showing of the truth of the 'gist' or 'sting' of the alleged defamatory imputation is sufficient." *Tunney v. American Broadcasting Co*., 109 Ill. App. 3d 769, 774 (1982). The Opposition argues that the "gist" of Braun's claim was that "the ARDC itself confirmed multiple credible complaints and assigned multiple attorneys, a fabrication that lends an air of official authority" – not that the complaints were never made or that no investigation occurred. (Opp., p. 3). However, under Illinois law, "[t]he 'gist' or 'sting' of the alleged defamation means the heart of the matter in question -- **the hurtfulness of the utterance**." *Vachet,* 815 F.2d at 316 (*citing Tunney*, 109 Ill. App. 3d at 774) (emphasis added). Assuming, as the Court must at this stage of the proceedings, Braun's allegation that Day did not receive this information from the ARDC, such an alleged falsehood does not constitute the "hurtfulness of the utterance," as it *pales* in comparison to the uncontested *true* facts that the ARDC actually *did* receive complaints about Braun and actually *did* assign at least one attorney to investigate the matter. *Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1228 (7th Cir. 1993) ("Beside these uncontested facts . . . the alleged falsehoods pale"). Stated another way, Day's alleged

false statement that the ARDC provided this information to her does "not exhibit [Braun] in a worse light than a bare recitation of the uncontested facts" that the ARDC *did* receive complaints about her and *did* assign at least one attorney to investigate her. *Id.* ("Substitute the true for the false", and the "damage to [Braun's] reputation would be no less"). "The rule of substantial truth is based on a recognition that falsehoods which do no incremental damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects." *Id.* ("Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable"); *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) ("the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced'"). Braun's Opposition argues that Day's statement is defamatory because it "imput[es] unethical and criminal conduct" to her (Opp., p. 2), but a statement that the ARDC *told* Day that it received complaints about her and was investigating the matter does not "impute unethical and criminal conduct to her" *more than* the admittedly true facts that the ARDC did receive complaints about and was investigating Braun.

While Braun may not like that Day publicly revealed complaints and an investigation that she alleges is typically kept confidential (Opp., p. 3), Day's revelation of the truth cannot constitute defamation. "A person does not have a legally protected right to a reputation based on the concealment of the truth. This is implicit in the rule that truth – not just known truth – is a complete defense to defamation. And the burden of proving falsity rests on the plaintiff." *Haynes*, at 1228 (*citing Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)) (internal citations omitted). Here, Braun cannot satisfy her burden of proving falsity.

Finally, Braun's Opposition argues that the question of "substantial truth" "cannot be decided on a motion to dismiss", relying on *Osundario v. Geragos,* 447 F.Supp. 3d 727, 738 (N.D.Ill. 2020) and *Maki Constr. Co. v. Chi. Reg'l Council of Carpenters,* 379 Ill. App. 3d 189, 203 (2008). (Opp.,

pp. 3, 5).  Nowhere in *Osundario* does this Court hold that the question of "substantial truth" cannot

be decided on a motion to dismiss. Equally inapplicable is *Maki,* a state court case, holding (contrary

to Braun's claim that "substantial truth requires jury evaluation") that "the question is one of law

where no reasonable jury could find that substantial truth had not been established." *Id.* at 203.[1]

Indeed, Seventh Circuit and Illinois district courts routinely hold that, "[a] motion to dismiss on

grounds of truth may be proper, . . . if the plaintiff more or less concedes the essential truth of the

alleged defamatory statement, or if there is no basis for a reasonable jury to find that the alleged

defamatory statement was not substantially true even as framed in the plaintiff's own allegations."

*Tamburo v. Estate of Dworkin*, 2011 U.S. Dist. LEXIS 172107, at *8 (N.D. Ill. Sep. 21, 2011) (*citing

Trudeau v. ConsumerAffairs.com, Inc.*, 2011 U.S. Dist. LEXIS 99852, 2011 WL 3898041, at *7 (N.D.

Ill. Sept. 6, 2011); *see also Fiduciaries, LLC v. Gannett Co.,* 46 F.4th 654, 667 (7th Cir. 2022)

(affirming dismissal of defamation claims on grounds that defamatory statements were "substantially

true and privileged"); *Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir. 1987) (holding that a complaint

does not allege actionable defamation where it concedes the truth of the allegedly defamatory

statements).  Because the TAC concedes that the ARDC received complaints about Braun and

concedes that at least one attorney was investigating Braun, which is the "essential truth" of Day's

alleged statement, a motion to dismiss the claim for defamation is appropriate. *Id.*

Finally, as explained in the Motion to Dismiss, a statement regarding "complaints" about a

professional are not actionable because they are subject to an innocent construction.  (*See* MTD, p. 9)

(*citing Green v. Trinity Int'l Univ.,* 344 Ill. App. 3d 1079, 1095 (2003) (such statements "do not

necessary imply that plaintiff was unskilled or unqualified in his profession, or that he lacked

---

[1] Braun's Opposition also cites *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 614-16 (7th Cir. 2013) for the proposition that "substantial truth is a fact question". As is the case with many of Plaintiffs' legal citations, *Pippen* does not stand for this proposition and this case does not even address the question of "substantial truth" in ruling on a motion to dismiss. In actuality, the *Pippen* Court *affirmed* the dismissal of a defamation claim *at the Rule 12(b)(6) stage*, but did so based on the plaintiff's failure to plead actual malice. *Id.* at 614-615.

integrity"); *see also Am. Int'l Hosp. v. Chi. Tribune Co.*, 136 Ill. App. 3d 1019, 1022-23 (1985) (holding that the decision not to renew an accreditation was so obviously and naturally harmful as to have damaged plaintiff's reputation). In her Opposition, Braun argues that the "innocent construction" rule requires dismissal "only if an innocent meaning is at least as reasonable as the defamatory one", *citing Green v. Rogers,* 234 Ill. 2d 478, 499-501 (2009) and *Chapski v. Copley Press,* 92 Ill. 2d 344, 352 (1982). (Opp., p. 6). However, neither case stands for this proposition. To the contrary, the Court in *Green* held that "a statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions." 234 Ill. 2d at 500. Again, whether the statement is subject to an innocent construction is a question the Court can determine on a motion to dismiss. *See Lott v. Levitt,* 556 F.3d 564, 569 (7th Cir. 2009) ("Figuring out the meaning of a statement and whether it is reasonably susceptible to an innocent construction is a question of law for the courts to resolve").

### 2. The "Gist" of Marston's Statement is Substantially True.

As explained in detail in the Motion to Dismiss, Marston's questioning of whether Braun's client knew her client was "actively committing perjury" was substantially true, because it was made in the context of Braun's undisputed submission of a Notification of Copyright Infringement ("Takedown Notice") to YouTube under the Digital Millennium Copyright Act ("DMCA") *under penalty of perjury* as part of her effort to have Episode 97 of Marston's podcast removed from YouTube. As set forth in judicially noticeable documents,[2] the Copyright Claims Board found that Braun's allegations that Episode 97 was infringing Braun's copyrights to be "utterly meritless", "strange", and "preposterous," as Episode 97 was a "textbook example of fair use." (MTD, pp. 4-6, 10). Once again, Braun's Opposition does not refute any of these judicially-noticeable facts. Instead,

---

[2] *See e.g., Menomonee Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (holding it is proper to consider matters not in the plaintiff's complaint but that are subject to judicial notice; that is, historical documents, documents contained in the public record, and reports of administrative bodies).

Braun argues only that "a failed copyright claim is not perjury. The CCB did not find that Braun lied under oath, let alone that she committed a felony." (Opp., p 3).

However, whether the CCB "found" that Braun lied under oath or found that Braun "committed a felony" is irrelevant. Marston did not state that the CCB *found* that Braun committed perjury, she did not state that Braun was convicted of perjury, and she did not state that Braun "committed a felony." Rather, as explained in the Motion to Dismiss, the "gist" of Marston's statement was that Braun was "actively committing perjury", and that statement was made in the context of Braun submitting the meritless Takedown Notice for Episode 97 *under oath*. (MTD, pp. 9-10). Under Illinois law, a "person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law the oath or affirmation is required, he or she makes a false statement, material to the issue or point in question, knowing the statement is false." *See* 720 Ill. Comp. Stat. Ann. 5/32-2. There is no question that Braun, a lawyer, submitted a Takedown Notice for Episode 97 "under oath" despite Episode 97 constituting a "textbook example of fair use", and, therefore, there is no question that Braun's conduct falls within this definition of "perjury". Once again, the Opposition does not refute that Braun, submitted the Takedown Notice under penalty of perjury and does not refute that the CCB found that Episode 97 was a "textbook example of fair use", making these judicially noticeable facts uncontroverted and making Marston's statement "substantially true."

As with Day, Braun also asserts that this Court cannot determine whether Marston's statement was "substantially true" on a motion to dismiss, claiming it is a "factual question for the jury." (Opp., p. 3). As explained above, a motion to dismiss on the grounds of truth *is* proper if "there is no basis for a reasonable jury to find that the alleged defamatory statement was not substantially true even as framed in the plaintiff's own allegations." *See e.g., Tamburo,* 2011 U.S. Dist. LEXIS 172107, at *8. Here, the allegations of the TAC, along with judicially noticeable documents demonstrate that there

is no basis for a reasonable jury to find that Marston's statement was not substantially true; thus, Marston's statement is not actionable as defamation.

### 3. Both Day and Marston's Statements are Privileged.

As explained in the Motion to Dismiss, in addition to being substantially true, both statements at issue are subject to the public interest privilege under Illinois law. (MTD, pp. 11-13). The allegations of the TAC demonstrate that Day and Marston's statements relate to their own interest and the interest of other content creators who follow them in protecting their freedom of speech and *not* being subject to intimidating tactics by Braun such as submitting baseless DMCA takedown complaints. (TAC, ¶¶ 69, 76). Likewise, Episode 97 (which this Court may view in its entirety given it is central to the allegations of the TAC) demonstrates that Marston's statements relate to her and her viewers' interest in preventing Braun's "scare tactics" designed to suppress their First Amendment right to criticize Braun's clients. (MTD, p. 11) (*citing* Episode 97 link,[3] at 6:47-7:13). Day and Marston, as content creators, have an interest in ensuring that their content and other creators' content is not unjustifiably taken down, and their statements about Braun unquestionably relate to that interest. *See e.g., Haywood v. Lucent Techs. Inc.,* 169 F. Supp. 2d 890, 917 (N.D. Ill. 2001) ("Because the alleged communication was made on an occasion where not only the interests of [defendant] were involved, but where [other] interests were involved as well, 'a misstatement of information should be afforded some degree of protection in order to facilitate the free flow of correct information'"); *see Ludlow v. Northwestern Univ.,* 79 F.Supp.3d 824, 845 (N.D.Ill. 2015) (university student's complaint regarding an alleged sexual assault by an employee clearly implicated both her interest in her own safety and the university's interest in student safety and the resolution of claims against employees).

In her Opposition, Braun does not refute that Day and Marston's statements related to a public

---

[3] Lauren the Mortician's Lawyer is WAY WORSE Than We Thought + VLOG SQUAD: Where Are They NOW? (Ep 97) (youtube.com)

interest, nor does Braun distinguish any of the arguments or authorities set forth in the Motion to Dismiss. Instead, Braun argues only that "qualified privilege turns on motive and malice, which are inherently fact-intensive." (Opp., p. 6). Illinois courts, however, hold that "[w]hether a qualified privilege exists is a question of law for the court, whereas whether a privilege was abused is usually a question of fact for the jury. However, just because an issue is generally one for a trier of fact to resolve does not mean that a defamation plaintiff is automatically entitled to present his case to a jury when a qualified privilege applies. ***A court may determine that as a matter of law insufficient facts are alleged to show an abuse of the applicable qualified privilege***.'" *Gerba v. Nat'l Hellenic Museum*, 2019 U.S. Dist. LEXIS 17208, at *21-22 (N.D. Ill. Feb. 4, 2019) (emphasis added). Thus, Illinois district courts can and do dismiss claims for defamation at the pleadings stage based on allegations that establish the existence of a qualified privilege and the absence of any factual allegations of an abuse of that privilege by the defendant. *See e.g., Ludlow,* 79 F.Supp.3d at 846 ("Without more, the Court does not find that Ludlow has pleaded an abuse of qualified privilege. Ludlow's defamation claim against Leydon-Hardy is dismissed").

Here, the TAC fails to allege sufficient facts to plead an abuse of the qualified privilege. 'To overcome the privilege, the plaintiff must show not just that the statements were untrue, but that the defendant abused the privilege by intentionally publishing false material or by displaying a 'reckless disregard' as to its truth or falsity—meaning that the defendant 'entertained serious doubts about the truth of the statement but failed to properly investigate the truth.'" *Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1214 (N.D. Ill. 2013).

In the Opposition, Braun argues the following factual allegations are sufficient to plead an abuse of the qualified privilege as to Day: (1) "the ARDC does not comment or provide input on the merits of an investigation to anyone calling to inquire about a registered attorney"; (2) "all attorney investigations are confidential until the Commission brings a complaint against an attorney"; and (3)

Day made the allegedly false statement to "sensationalize her social media post, add credibility to her claims, and disparage Braun before the public." (MTD, pp. 7-8) (*citing* TAC, ¶¶ 90, 96, 97). None of these statements demonstrate that Day "entertained serious doubts about the truth of her statement" at the time she made it but failed to "properly investigate the truth" as is required to plead an abuse of the privilege. Whether it is the ARDC's practice not to provide input to the public about an attorney investigation or whether it is the ARDC's practice to keep investigations confidential *does not* establish that Day knew her statement was false or that she entertained serious doubts about it. Likewise, a purported explanation as to *why* Day may have made the allegedly false statement does not demonstrate that she knew it was false or entertained serious doubts about its truth. As in *Ludlow,* "[n]one of these details create any kind of inference related to [Day's] state of mind." 79 F.Supp.2d at 845.

Equally deficient are the allegations Braun points to in her Opposition to claim that she has overcome the qualified privilege with respect to Marston. The Opposition argues that the TAC "makes clear that [Marston's accusation regarding "perjury"] was false because Braun has never committed perjury, nor has she been found by any court or agency to have engaged in any unethical or criminal conduct." (Opp., p. 8) (*citing* TAC, ¶ 154). This allegation simply reiterates that Marston's statement was false, and an allegation that Marston's statement was false does nothing to plead that Marston *knew* the statement was false or entertained serious doubts about its truth. If that were sufficient then an allegation of falsity alone would always constitute malice, and that simply is not the case. The Opposition goes on to argue that "the TAC pleads that Marston acted 'with actual malice – knowingly, or with reckless disregard as to its falsity – and for the purpose of damaging Plaintiff Bruan and Braun Law's professional reputation and inciting public backlash." (Opp., p. 8) (*citing* TAC, ¶ 158). This is nothing more than a boilerplate conclusory allegation of falsity devoid of any factual support which, as explained in the Motion to Dismiss, is entirely insufficient. *See e.g., Abc-Naco, Inc v. Deruyter,*

1999 U.S. Dist. LEXIS 11025, at *9 (N.D. Ill. July 13, 1999) (holding that plaintiff "must plead more than a gut instinct" to support allegation of malice); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 742 (N.D. Ill. 2020) ("the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss").[4]

The Opposition also argues that the TAC overcomes the qualified privilege because it contains allegations that Day and Marston generally received compensation based on the number of views their posts/videos receive. Specifically, the Opposition cites paragraph 60 of the TAC, alleging that "[u]pon information and belief, Defendant Day receives compensation from TikTok based on the number of views a video receives." (Opp., p. 8). The Opposition also cites paragraph 105 of the TAC, alleging that "[u]pon information and belief, Defendant Marston is paid by YouTube and at least 18 other platforms based on the number of views/plays their videos/podcast receives and thus is profiting from her posts that spread the false statements about Ms. Braun that are described in this Complaint." (*Id.*) Again, however, the fact that Day and Marston receive compensation for their posts/videos does not provide any inference as to their state of mind when they made the statements at issue. While the Opposition argues that "courts recognize that allegations of motive and profit, combined with fabricated facts, are sufficient to plead malice at the Rule 12(b)(6) stage," Braun has no support for this assertion. The only authority Braun cites is *Osundairo,* which in no way stands for the proposition that allegations of motive and profit are sufficient to plead that the defendant knew the statement was false or entertained serious doubts. To the contrary, in *Osundairo* this Court found that the complaint's allegation regarding Defendant Glandian's role as Jesse Smollet's attorney was sufficient to infer that

---

[4] The Opposition also argues that the "surrounding factual allegations show that Marston was well aware that accusing an attorney of an ongoing felony was gross disproportionate to the underlying copyright dispute" (Opp., p. 8), but the Opposition does not identify these "surrounding factual allegations" that show Marston's "awareness". There is no citation to them in the Opposition because they simply do not exist.

Glandian, as the attorney with direct access to the evidence, would possess knowledge that her statement that the plaintiffs may have been wearing "whiteface" when attacking Mr. Smollett was false. 447 F.Supp.3d at 742. There are no such factual allegations in the TAC that would allow an inference that Day and Marston *knew* their statements were false or that they had serious doubts about their truth. That is Plaintiff's burden, and she has failed to satisfy it.  Moreover, under Illinois law, allegations of an improper (financial) motive or of any ill will felt by Marston and Day toward Braun are irrelevant to establishing the knowledge or reckless disregard for falsity needed to overcome the qualified privilege. See *Conseco Grp. Risk Mgmt. Co. v. Ahrens Fin. Sys.*, 2001 U.S. Dist. LEXIS 2306, at *31 (N.D. Ill. Mar. 5, 2001) ("Illinois courts draw a distinction between common law malice and actual malice. Common law malice denotes ill will and evil motive, whereas actual malice denotes knowledge of or reckless disregard for the falsity of a defamatory statement.  To satisfy the malice requirement in a defamation suit, a plaintiff must plead the statement was made with knowledge of its falsity or reckless disregard as to its truth") (*citing Winters v. Greeley*, 189 Ill. App. 3d 590, 594 (1989)); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 612 (7th Cir. 2013) (noting that "actual malice" for purposes of defamation is a "term that looks as if it might mean 'ill will' but in fact means knowledge the statement is false or reckless disregard of whether it is false"); *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co*., 2010 U.S. Dist. LEXIS 63982, at *8 (N.D. Ind. June 25, 2010) ("Contrary to the belief of many litigants, in the context of defamation, malice does not refer to an evil intent or spiteful motive"). Thus, allegations regarding Day and Marston's improper financial motive or ill will towards Braun do nothing to establish an abuse of the public interest qualified privilege.

Finally, the Opposition argues that Day and Marston have abused the privilege because their statements were published on "Tik Tok, X (formerly Twitter), YouTube, and podcast platforms – each with hundreds of thousands of followers, monetized through views, and designed to maximize viral

spread." (Opp., p. 10). This argument is not supported by any allegations of the TAC. Rather, the TAC alleges only that Day published her statement on a TikTok story and Marston published her statement on X (formerly known as Twitter). (TAC, ¶¶ 85-86, 118-119). Neither statement was published on YouTube or podcast platforms, and there is no allegation in the TAC regarding the number of followers that Day and Marston had on these platforms or the number of people that viewed the posts. Certainly, there are no factual allegations supporting the Opposition's claim that these two statements were viewed by "hundreds of thousands of people." To the contrary, the TAC reveals that only 133 people viewed Marston's statement. (TAC, ¶ 119). Moreover, the two statements were not made *indiscriminately* to the general public; rather, Day and Marston made these statements to their followers, followers who also used social media and have a direct interest whether Braun was using DMCA takedown notices to improperly restrict social media users' First Amendment right to express their opinions. By making these statements to users of social media who followed them on TikTok and X, Day and Marston's audience was targeted to those who shared or would take an interest in their concern and was not so "excessive" so as to abuse the privilege. Similarly, in *Tamburo,* the defendant published on her website, as well as in an online community, her statements that the plaintiff had stolen a database of data she had worked to compile. The district court held that those statements were subject to a qualified privilege and her posting of statements online was not excessive, as it was shared with others who had a common interest in maintaining the availability of the data Defendant stated Plaintiff had stolen and protecting the rights of those who had worked to compile it. 974 F.Supp. 2d at 1215. Finally, while the Opposition argues that "Illinois law does not extend [a] qualified privilege to mass social media blasts", Braun offers no legal authority to support this claim. Because the TAC establishes the existence of a qualified privilege and is devoid of any absence of any factual allegations establishing the abuse of that privilege by the Day or Marston, this Court should dismiss the defamation claims on the additional ground that they are subject to a qualified

privilege. *See e.g., Ludlow,* 79 F.Supp.3d at 846.

### 4. Because the Statements are Not Actionable as Defamation, the Claims for False Light and Trade Libel Also Fail.

As explained in the Motion to Dismiss, because Braun cannot state a claim for defamation against Day or Marston, her claims for false light and trade libel based on the same alleged defamatory statements fail as well. (MTD, p. 13) (citing *Madison v. Frazier,* 539 F.3d 646, 659 (7th Cir. 2008; *Evanger's Cat and Dog Food Co., Inc. v. Thixton,* 412 F.Supp.3d 889, 904 (N.D.Ill. 2019)). The Opposition does nothing to salvage these failed claims and confirms that the false light and trade libel claims are based on the same substantially true, privileged statements as Braun's failed defamation claims. (Opp., p. 4). Thus, dismissal of these claims is appropriate.

### B. Braun's Claim for Tortious Interference with Existing and Potential Business Relationships is Insufficiently Plead.

Braun's Opposition argues that her latest version of a tortious interference claim against Day and Marston is sufficiently plead because "[u]nlike prior complaints, the TAC specifically names clients-Alyssa DeFord (Bunnie XO), Kaitlynn Dempsey (Demps), and Monsters and Martians-whose representation was lost as a result" of the alleged defamation. (Opp., p. 5). Braun then cites *Twombly* for the proposition that any argument that her allegations are "speculative" is improper at the pleading stage because it "invites the Court to resolve causation disputes in their favor." (Opp., 5). Braun's interpretation of this seminal case is nonsensical; *Twombly* holds the precise opposite: "Factual allegations must be enough to raise a right to relief above the speculative level." *Bel Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As explained in the Motion to Dismiss, the TAC fails to satisfy *Twombly* with respect to the tortious interference claim. While the TAC may have identified *examples* of clients Braun claims she has lost, it is still improperly based on vague references to unidentified clients (TAC, ¶¶ 207, 209, 210), which this Court *already* has held requires her claim to "necessarily fail[]." (MTD Order, p. 22).

The Motion to Dismiss also explains how the TAC fails to contain any factual allegations (as opposed to conclusory assertions) establishing that Ms. DeFord, Ms. Dempsey, or Monsters and Martians stopped using Braun's services *as a result* of Day or Marston's statements. (MTD, p. 15). The Opposition argues that that she has plead factual allegations of causation because she alleged that Braun lost these clients "as a result of" or "because of" the alleged defamation. (Opp., p. 11). These conclusory claims are not enough.[5] Moreover, the Opposition does not address the TAC's failure to allege that Braun had a reasonable expectation that her relationship with these specific clients would continue longer than they did, which Illinois law makes clear must be plead. (MTD, p. 15) (*citing Fellhouer v. City of Geneva,* 568 N.E.2d 870, 878 (Ill. 1991)).[6]

## III. CONCLUSION.

Based on the foregoing, Braun and Day respectfully requests that this Court dismiss Counts I-VI and IX of the TAC for failure to state a claim under Rule 12(b)(6).

Dated: October 21, 2025

Respectfully Submitted,

s/    Brandon J. Witkow
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

---

[5] These conclusory allegations are nothing like the tortious interference claim plead in *Duct-O-Wire Co. v. U.S. Crane, Inc.,* 31 F.3d 506, 509 (7th Cir. 1994) relied on by Braun in her Opposition. In that case, the complaint alleged that U.S. Crane interfered with Duct-O-Wire's business relationships by subscribing to Duct-O-Wire's old phone number and taking orders for products that were meant for Duct-O-Wire without informing Duct-O-Wire. Under those allegations, it is clear that U.S. Crane's improper interception of orders that were intended for Duct-O-Wire would have been received by Duct-O-Wire *but for* U.S. Crane's use of the phone number (and failure to inform customers that they were a different company). Here, in contrast, the allegations are insufficient to establish that had Day not made the "ARDC" statement or had Marston not made the "perjury" statement, Braun's relationship with these clients would have continued.

[6] Braun's reference to allegations of the TAC regarding an "angry internet mob" that "generated threats, harassment, and reputational harm," (Opp., p. 11), are irrelevant to Braun's tortious interference claims. They in no way relate to a specific, identifiable relationship that Day or Marston intended to interfere with and actually did interfere with as a result of their statements.

_s/      Amy Doig_
Attorney for Defendants

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

_Attorneys for Defendants_

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

_**Attorney for Plaintiffs**_

Dated: October 21, 2025                    _/s/ Brandon J. Witkow_
                                           Brandon J. Witkow