IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON,<br><br>               Plaintiffs,<br>v.<br><br>REBEKAH M. DAY NEE BOX, KRISTA CARTER & LILY MARSTON<br><br>               Defendants. | Case No. 23 C 16856<br><br>Presented to:<br>Magistrate Judge M. David Weisman |

**DEFENDANTS REBEKAH M. DAY, KRISTA CARTER, AND LILY MARSTON'S MOTION COMPEL FULL AND COMPLETE RESPONSES TO INTERROGATORIES [SET ONE] FROM PLAINTIFFS JEANNETE BRAUN, BRAUN IP LAW, LLC, AND LAUREN PROPSON**

Defendants REBEKAH M. DAY, KRISTA CARTER, AND LILY MARSTON (collectively, "Defendants"), by and through their attorneys, hereby bring this Motion to Compel Full and Complete Responses to Interrogatories [Set One] From Plaintiffs Jeanette Braun, Braun IP Law, LLP, and Lauren Propson, and state as follows:

## INTRODUCTION

Defendants bring this Motion to Compel because, despite extensive efforts to meet and confer, Plaintiffs Lauren Propson ("Propson"), Jeanette Braun and Braun IP Law, LLC (collectively, "Braun") continue to disregard their fundamental discovery obligations. Plaintiffs' supplemental responses to Defendants' interrogatories remain woefully deficient, evasive, and noncompliant with the Federal Rules of Civil Procedure. Rather than providing full and verified answers under oath as required by Rule 33, Plaintiffs have relied on vague qualifiers, baseless objections, improper references to unspecified documents, and meritless assertions of privilege.

Plaintiffs' discovery conduct has effectively obstructed Defendants' ability to obtain basic information central to the remaining claims, such as the factual basis for Plaintiffs' allegations of falsity, the identity of alleged lost clients or business opportunities, and the nature and scope of any claimed damages. Following the exchange of multiple letters and email communications, the parties met and conferred regarding these issues telephonically, as required by Local Rule 37.2, and were unable to reach a resolution.[1] Accordingly, Defendants respectfully request that the Court compel Plaintiffs to serve full and complete interrogatory responses and award Defendants sanctions under Rule 37 in the amount of attorneys' fees and costs incurred in bringing the instant motion.

## RELEVANT FACTUAL BACKGROUND

### A. Procedural Background and Summary of Plaintiffs' Claims

Propson is a licensed mortician and social media personality and Braun is her lawyer. (Third Amended Complaint ("TAC") [Dkt. No. 76], ¶¶ 12-13, 44, 53). This action arises out of allegations that Defendants made defamatory or injurious statements about Plaintiffs on social media, in podcasts, or both. Plaintiffs filed the TAC on August 4, 2025, following the Court's grant of Defendants' Motion to Dismiss the Second Amended Complaint, finding that the vast majority of the statements made by Defendants online (*e.g.*, referring to Propson as a "TERF", stating Braun filed "false copyright strikes" and was "unethical") were non-actionable, constitutionally-protected opinions ("MTD Order" [Dkt. No. 59]).

The TAC asserts six defamation and related claims based on two (2) allegedly defamatory statements that were *not* dismissed with prejudice in the Court's MTD Order: (1) a statement by Day in a TikTok story that she "[j]ust got confirmation from the Illinois Attorney

---

[1] Meet and confer efforts are detailed in Section C of the Relevant Factual Background, as well as in Paragraphs 6-8 of the Declaration of Brandon J. Witkow in support of this Motion, filed concurrently herewith.

2

Registration & Disciplinary Commission [("ARDC")] thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter"; and (2) a statement by Marston on X (formerly Twitter) posted on December 10, 2023, in which Marston stated: "I gotta say . . . one of our biggest questions in all of this is do we think demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her." (TAC, ¶¶ 85, 119). In addition to the claims based on these two defamatory statements, Braun asserts a claim for tortious interference with existing and potential business relationships against Day and Marston. (*Id.,* ¶¶ 207-208). Propson asserts two claims against Carter for tortious interference with contract and tortious interference with economic advantage based on allegations that Carter's online statements about Propson (that the Court ruled were constitutionally-protected opinions in the MTD Order) interfered with her sponsorship contracts with Pair Eyewear and The Travel Channel, as well as with other unidentified opportunities and relationships. (TAC, ¶¶ 191-195, 301-307). On August 27, 2025, Day and Marston filed a Motion to Dismiss the claims asserted by Braun against them in TAC, as did Carter with respect to the claims asserted against her by Propson. [Dkt. Nos. 81, 82].

**B. Defendants' Service of Written Discovery Requests and Plaintiffs' Inadequate Responses.**

Prior to the service of any written discovery by either party, Plaintiffs raised their perceived need for a protective order with the Court in the Joint Status Report [Dkt 79], and the Court addressed this issue in its August 18, 2025 Order [Dkt. No. 80]. In that Order, the Court instructed Plaintiffs to file any needed Motion for Protective Order by September 5, 2025, "after Plaintiffs review the discovery requests." (*Id.*) On August 27, 2025, Day, Marston and Carter each served on Braun and Carter, respectively, their First Set of Interrogatories, First Set of

3

Requests for Admission, and First Set of Requests for Production of Documents ("RFPs"), all of which were targeted specifically at discovering the basis for Plaintiffs' allegations in the TAC, including facts regarding the alleged falsity of the two remaining alleged defamatory statements, facts regarding the alleged tortious interference with specific contracts and/or relationships between Plaintiffs and third parties by Defendants, facts regarding Plaintiffs' loss of business and/or clients as a result of Defendants' alleged statements, and seeking the production of documents relating to these highly relevant issues. (Declaration of Brandon J. Witkow ("Witkow Decl."), ¶ 2). After receiving and presumably reviewing these written requests, Plaintiffs did *not* file a motion for protective order by September 5, 2025, despite the Court's mandate in its August 18, 2025 Order, and Plaintiffs have never filed any such Motion to date. (*Id*., ¶ 3).

Plaintiffs served their written responses to Defendants' written discovery requests on September 26, 2025, and Plaintiffs' responses to all four sets of interrogatories were entirely inadequate. (*Id*., ¶ 4 and Exhs. 1-8). Moreover, while Plaintiffs' responses to the RFPs were due on September 26, 2025, their document production was not served until almost a month later on October 23, 2025, despite Defendants' counsel's repeated requests on September 30, 2025, October 14, 2025, October 16, 2025, and October 20, 2025. (*Id.,* ¶ 13 and Exh. 9).

C. **Defendants' Counsel's Meet and Confer Efforts.**

Following receipt of the document production, on October 31, 2025, Defendants' counsel sent Plaintiffs' counsel a detailed meet and confer letter identifying the deficiencies in Plaintiffs' written responses and document production and requesting that the parties engage in a telephonic conference in accordance with Local Rule 37.2. (*Id.,* ¶ 14 and Exh. 10). Counsel exchanged additional letters and correspondence on the discovery issues and then scheduled and conducted a telephonic conference to discuss the deficiencies on November 7, 2025 at 12 p.m. (*Id*., ¶ 15 and

4

Exhs. 11-13). The participants in the conference were Brandon Witkow and Cory Baskin on behalf of Defendants and Ben Lockyer and Ryan LeZara on behalf of Plaintiffs. (*Id*., ¶ 16). The conference lasted approximately 1.5 hours. (*Id.*) During the conference, Plaintiff's counsel indicated that he would provide supplemental responses, additional documents, and a "categorical" privilege log by November 10, 2025, but was noncommittal regarding scope of the supplemental responses or the document production. (*Id.*) Defendants' counsel also agreed to supplement certain of Defendants' written responses.

On November 10, 2025, Defendants' counsel served its supplemental responses on Plaintiffs. (*Id.,* ¶ 17). Plaintiffs, however, failed to provide any supplemental responses, documents, or privilege log on November 10, 2025. (*Id.*) On November 11, 2025, at 7:48 p.m., Plaintiffs' counsel served Plaintiffs' supplemental interrogatory responses and a supplemental production of documents. (*Id.,* ¶ 17 and Exhs. 14-17). Plaintiffs have not served supplemental RFP responses or a privilege log. (*Id.,* ¶ 18).

## LEGAL STANDARD

A party may move for an order compelling production if a responding party fails to answer an interrogatory submitted under Rules 33. Fed. R. Civ. P. 37(a)(3)(B)(iii).

## ARGUMENT

I. **Plaintiffs' Supplemental Interrogatory Responses are Entirely Deficient**.

    A. <u>Propson's Supplemental Interrogatory Responses to Carter's Rog. Nos. 1-4-13, 15-25 Fail to Comply with Fed. R. Civ. P. 33.</u>

Propson failed to respond to any of the twenty-five interrogatories that Carter served on her with any substantive information, instead blatantly disregarding her obligations under Rule 33 and thwarting Carter's effort to obtain the most basic information relating to Propson's claims. Specifically, these interrogatories seek critical information on which Propson bases her

remaining claims for interference against Carter, including "all facts" or information that support specific allegations in certain paragraphs of the TAC (Witkow Decl., Exh. 14 (Carter Interrogatory ("Rog.") Nos. 1-9, 21-22)), the identification of communications with and/or the identities of the clients and business Propson alleges she lost as a result of Carter's conduct (*Id.* (Carter Rog. Nos. 10-19)), all facts supporting Propson's claim for damages (Carter Rog. Nos. 20), and communications relating to Propson's denial of statements made by Carter that Propson claims constituted "tortious interference" (*Id.* (Carter Rog. Nos. 23-25)).

In response to Carter Rog. Nos. 1-4. 6-10, 12, 17-18, 20, and 22, Propson responded by simply listing specific Bates numbered documents from Plaintiffs' document production. (Witkow Decl., Exh. 14). In response to Carter's Rog. Nos. 5, 11, 13, 15-16, 19, and 21, Propson responded either with a statement that her "search for relevant documents is still ongoing" and she "reserves the right to supplement this request", that she "is not in possession of any documents or information that is responsive to this request," or that she is "in the process of identifying responsive documents to this request and reserves the right to supplement the request. (*Id.*) Finally, Propson refused to provide any information or refer to any documents in response to Carter's Rog. Nos. 23-25. (*Id.*)

Propson's reference to Bates numbers or documents that she is searching for or in the process of identifying, *rather than providing the information requested*, is wholly inappropriate. Equally inappropriate is her response that she is not in possession of documents or information responsive to these requests. These are *interrogatories,* not document requests, the purpose of which is "to require a party to commit to a position and to give support for that position." *Flores v. Guevara*, 2024 U.S. Dist. LEXIS 166268, at *6-7 (N.D. Ill. Sep. 16, 2024); *Bouto v. Guevara*, 2020 U.S. Dist. LEXIS 137348, 2020 WL 4437669, at *2 (N.D. Ill. Aug. 3, 2020) ("The entire

6

purpose of interrogatories is to get opposing parties to identify a specific subset of evidentiary support for their claims and defenses"). They "ask specific questions and merit specific answers." *Flores,* 2024 U.S. Dist. LEXIS 166268, at *8. And Propson's "cross references" to Bates numbered documents, documents that *might* exist, or the *lack* of documents is improper. *Id*. (holding that reference to other responses and documents instead of providing information requested in interrogatory is improper). Indeed, it is well-settled that "[i]nterrogatory responses are supposed to stand on their own" and cannot incorporate by reference other documents except to the extent permitted by Rule 33(d)*. Id.* (citing *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA, Inc.*, 2020 U.S. Dist. LEXIS 61634, 2020 WL 1701861, at *7 (N.D. Ill. Apr. 8, 2020); *Ropak Corp. v. Plastican, Inc*., 2006 U.S. Dist. LEXIS 19912, 2006 WL 1005406, at *4 (N.D. Ill. Apr. 17, 2006) ("An interrogatory answer should stand on its own, be complete, and not refer to pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers")).

Here, Plaintiff's reference to documents is *not* permissible under Rule 33(d). "A party responding to an interrogatory may not take advantage of Rule 33(d) unless it can show that the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." *In re Sulfuric Acid Antitrust Litig*., 231 F.R.D. 351, 366 (N.D. Ill. 2005) (citations omitted). That burden would be much greater on Carter than on Propson, given that Propson is familiar with the documents and have already reviewed them in connection with their production. *Id*. Even more importantly, it would be impossible for Defendants to obtain the information requested simply by reviewing documents produced by Plaintiffs. For example, Interrogatory No. 1 seeks "all facts" that support Propson's allegation in

Paragraph 32 of the TAC that Carter's "motive and intent behind the posts were to tarnish and damage Propson's reputation while boosting her own social media career." (Witkow Decl., Exh. 14). The Bates numbers listed by Propson correspond to screenshots of social media posts (many of which were not posted by Propson) and/or comments to those posts by individuals other than Propson. (*Id.*) How is it easier for Carter to determine what "facts" Propson contends supports this allegation from hundreds of pages of screenshots of social media posts and comments thereto? *It isn't*.

Moreover, much of the information sought by the interrogatories is limited to names, dates or specific communications that Plaintiffs could readily provide by simply referring to its own records, making their reliance on Rule 33(d) even more nonsensical. *Heisley v. Barclays Bus. Credit, Inc.*, 1990 U.S. Dist. LEXIS 12644, at *8-9 (N.D. Ill. Sep. 25, 1990) ("If only limited information is sought and the interrogated party can readily answer the interrogatories with reference to its own records, Rule 33(d) should not be invoked"). This is particularly true with respect to those interrogatories to which Propson does not even identify specific Bates numbers (Witkow Decl., Exh. 14 at Rog. Nos. 5, 11, 21). *See Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 366 (holding that responses that "merely referred plaintiffs, generally, to [document production] for the answers to their interrogatory" is "an abuse of the option" of Rule 33(d)).

Finally, Plaintiff's response to Rog. Nos. 13, 15-16, and 19 (seeking an identification of communications between Propson and entities with which she claims she lost endorsement opportunities) that Plaintiff "is not in possession of any documents responsive to this request" is nonsensical and inappropriate. If Propson "lacks knowledge or information" about any communications responsive to the interrogatories, she needs to say that. *Hannah's Boutique v. Surdej,* 2014 U.S. Dist. LEXIS 38979, at *11-12 (N.D. Ill. Mar. 25, 2014) ("If Defendants do not

recall some or all requested details for particular agreements, they must state that in their response, specifying the information they cannot recall for each particular agreement, and then certify their response"). If she *does* know the information, she needs to provide it, regardless of whether there are any "documents in her possession" that reflect this information. While it is true that answering interrogatories can require parties to "spend considerable time and energy" (*Bell*, 2005 U.S. Distr. LEXIS 4451, at *7), that does not entitle Propson to shift that burden to Carter simply because Propson does not want to put in the necessary "time and energy" to respond.

      Finally, Propson has no basis for refusing to respond to Rog. Nos. 23-25. The TAC alleges that Carter interfered with Propson's relationships by making certain statements about her thereby causing her the damages she seeks in this litigation, and these interrogatories seek information directly relating to veracity of those statements, as well as the impact of the statements on Propson. (Witkow Decl., Exh. 14). Propson cannot put these matters into issue and then deny Carter discovery into them simply because she does not want to produce "private communications with third parties." (*Id.*, at pp. 10-11). In *Beverly v. Watson*, 2016 U.S. Dist. LEXIS 87725, at *27 (N.D. Ill. July 7, 2016), the court noted that the plaintiffs chose to raise a particular issue repeatedly in their complaint, but refused to identify the very individuals who could provide direct evidence and testimony as to those allegations on the grounds that identities of the individuals were confidential. The court rejected this argument and granted the motion to compel, holding that "[i]n essence, Plaintiffs ask Defendants to simply accept as true an essential fact they must prove, the chilling of their speech, and prohibit discovery on the basis that there would be more of said chilling were they required to provide even minimal support for their underlying allegations. Of course, that is not how discovery works." *Id.* Propson must respond

9

to the interrogatories on matters that *she* put into issue, and the Court should compel her to provide full and complete *substantive* responses.

      B. <u>Braun's Supplemental Interrogatory Responses Fail to Comply with Rule 33.</u>

         1. Braun Referenced Only Documents (or Lack Thereof) in Response to Day's Rog. Nos. 1, 3, 5, 12-19, 24, 26, Carter's Rog. Nos. 1-5, 9, and Marston's Rog. Nos. 2, 7-11, 14, 16-17.

Braun's supplemental interrogatory responses to the interrogatories served by Marston, Day, and Carter fail to correct the inadequacies in her original responses and suffer from the same defects as the supplemental responses served by Propson explained above. As a preliminary matter, the interrogatories Defendants served on Braun seek highly relevant and targeted information about specific allegations asserted in the TAC (Day Rog. Nos. 5, 8-16, 21-26; Marston Rog. Nos. 7-14, 16-18, 20-22, 25; Carter Rog. Nos. 3, 5), identification of facts/communications relating to the two remaining alleged defamatory statements about Braun, (Carter Rog. Nos. 8, Marston Rog. Nos. 1-4, 6, Day Rog. Nos. 1-3, 18-20), the identification of communications with and/or the identities of the clients and business Braun and Propson allege they lost as a result of Carter's conduct (Carter Rog. Nos. 1-4, Marston Rog. Nos. 5, 15, 23, Day Rog. No. 7), and Braun's alleged damages. (Day Rog. No. 17).

Like Propson, Braun responded to the following Interrogatories by simply referencing Bates numbers of documents produced, with no substantive response or information: Supplemental Responses to Day's Rog. Nos. 1, 3, 5, 12-19, 24, 26, and Supplemental Response to Carter Rog. No. 5. (Witkow Decl., Exh. 15, 17). Braun also responded to many of the interrogatories by stating that she is not in possession of documents that are responsive to the interrogatory, namely: Supplemental Responses to Carter's Rog. Nos. 1-4, 9 and Supplemental Response to Day Rog. No. 2. (Witkow Decl., Exhs. 15, 17). Braun also responded to many of the

10

interrogatories by stating that she "will produce" responsive documents or that she has already produced "examples" of responsive documents that she believes "provides representative evidence responsive to this request [or interrogatory] without any reference to Bates numbers: Supplemental Responses to Marston's Rog. Nos. 2, 7-11, 14, 16-17. (Witkow Decl., Exh. 16).

For the reasons explained above with respect to Propson's supplemental responses, Braun's reference to a list of Bates numbers, general response that she "will produce" responsive documents, or statement that she is not in the possession of any responsive documents is inadequate under Rule 33. (*See* Argument, Section I.A., *supra*). Furthermore, Braun's statement that she has produced examples of responsive documents that provide "representative evidence" is entirely inappropriate, particularly when she has not even provided Defendants with any Bates numbers to these specific documents. (Witkow Decl., Exh. 16 (Marston's Rog. Nos. 2, 7-11, 14, 16-17)). As the court held in *Hannah's Boutique*, a "response-by-example is evasive and incomplete"; rather, a party "must provide a complete list—not just examples" of the information requested. 2014 U.S. Dist. LEXIS 38979, at *10 (citing Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath")). Braun must be compelled to produce full and complete responses.

    2. Braun Refused to Provide Any Information In Response to Day's Rog. No. 2, Marston's Rog. Nos. 1, 3-4, 6, 12, 15, 18-19, and Carter's Rog. Nos. 8, 9, 12.

Braun also responded to many interrogatories with a wholesale refusal to provide any of the information requested, which is inappropriate and unjustified. For example, Carter's Interrogatory No. 8 requested that Braun describe all efforts she undertook in making a determination that Carter's content did not constitute fair use, prior to her submission of DMCA takedown requests. (Witkow Decl., Exh. 17). Similarly, Marston's Rog. Nos. 1, 3-4, and 6 seek information and facts regarding Braun's submission of DMCA takedown requests. (Witkow

Decl., Exh. 16). As explained in detail in Day and Marston's Motion to Dismiss the TAC, whether Carter submitted a DMCA takedown request for content she *knew* constituted fair use is directly relevant to one of the remaining alleged defamatory statements, i.e., Braun was "actively committing perjury" when she submitted DMCA takedown requests under penalty of perjury knowing the content at issue constituted fair use. (MTD [Dkt. No. 81], at pp. 4-6, 9-10). In response to these interrogatories, Braun refused to provide any substantive information or refer Defendants to any documents, instead asserting relevance, burden, and privilege objections. As discussed above, Braun cannot sue Marston for defamation based on a statement that she committed "perjury" by filing DMCA takedown notices under penalty of perjury on behalf of her clients against content Braun *knew* constituted fair use, and then claim that Marston is not entitled to discovery of information regarding the propriety of her DMCA takedown notices – information that would prove the truth of Marston's statement. *See Beverly, supra,* 2016 U.S. Dist. LEXIS 87725, at *27; *Remus v. Sheahan*, 2006 U.S. Dist. LEXIS 37231, at *10 (N.D. Ill. May 23, 2006) (holding that by bringing his claim, plaintiff "affirmatively put at issue the underlying litigation, including attorney-client communications and work product that occurred during that litigation. To the extent any such communications or documents are responsive to interrogatories [], plaintiff must disclose them"). Defendants are not required to "simply accept as true" that Braun had a good faith basis for submitting DMCA takedown notices while being denied the ability to conduct discovery on the issue because Braun does not want to discuss work that she has done for other clients. *See Beverly, supra,* 2016 U.S. Dist. LEXIS 87725, at *27.

Along those same lines, Braun refused to respond to Marston's Rog. No. 15, which seeks the contact information for Monsters and Martians, a client Braun alleges she lost because of Defendants' conduct. (Witkow Decl., Exh. 16). Braun put this client squarely at issue when she

12

alleged in the TAC that she lost them (along with Ms. DeFord and Ms. Dempsey) as a result of Defendants' actions. [TAC, ¶¶ 131-132, 207-208]. Yet, Braun provided only a general "info" email address in her response, stating that she would not disclose additional identifying information or "privileged" client information about any of these allegedly "lost clients" without "client consent or further court order." (Witkow Decl., Exh. 16). The contact information for this client (or former client) is not privileged nor is it confidential. *See e.g.*, *Lee v. Chi. Youth Ctrs.*, 304 F.R.D. 242, 253 (N.D. Ill. 2014) ("Courts have consistently held that the general subject matters of clients' representations are not privileged"). Moreover, as explained above, the time has long expired for Plaintiffs to move for a protective order, as mandated by this Court. [Dkt. 80]. Once again, Braun cannot deny Defendants discovery from a client she contends she lost as a result of Defendants' conduct simply because she does not want to disclose their contact information. *Beverly,* 2016 U.S. Dist. LEXIS 87725, at *27; *Remus*, 2006 U.S. Dist. LEXIS 37231, at *10. Defendants are entitled to depose these claimed "lost clients".

Likewise, Braun refused to provide any response to Marston's Rog. No. 18, which seeks an identification of persons who submitted complaints to the Illinois ARDC against Braun. (Witkow Decl., Exh. 16 at p. 11). As with the identities of her clients, Braun argues that the names of these individuals are confidential and privileged. (*Id.*) Again, Braun has asserted a defamation claim against Day claiming that Day falsely stated that the ARDC told her they had received multiple complaints against Braun. (TAC, ¶¶ 85-102). Certainly, Defendants are entitled to information Braun may have about complaints filed against her. By filing this defamation claim, Braun has affirmatively put at issue ARDC complaints against her, she cannot

13

deny Defendants discovery by hiding behind claims of confidentiality and privilege. *Beverly,* 2016 U.S. Dist. LEXIS 87725, at *27; *Remus*, 2006 U.S. Dist. LEXIS 37231, at *10.[2]

       3.   Braun Provided Insufficient Responses to Day's Rog. Nos. 9, 22, 23, 25 and Marston's Rog. Nos. 5, 20-22, 25.

Day's Rog. Nos. 9, 22, 23, and 25 and Marston's Rog. Nos. 5, 20-22, and 25 all seek highly relevant information from Braun regarding her allegations that she lost clients because of Defendants' actions. (Witkow Decl., Exhs. 15-16). In response to these Interrogatories, Braun claimed she could not provide information due to the attorney-client privilege, claimed she needed "consent" from clients to disclose their names, and/or provided vague and woefully inadequate conclusory assertions or no response at all. (*Id.*) Details regarding Braun's alleged lost clients are undoubtedly relevant to her claims for damages and tortious interference, and she cannot claim that such information is privileged or that she needs "consent" from her clients to disclose it. Once again, the names and contact information of Braun's clients or the scope of the work she performed for them are not privileged, especially where Braun herself has placed these clients at issue by alleging they ceased using her services as a result of Defendants' conduct. *Lee*, 304 F.R.D. at 253; *Beverly,* 2016 U.S. Dist. LEXIS 87725, at *27; *Remus*, 2006 U.S. Dist. LEXIS 37231, at *10. Her cursory and vague responses regarding this lost work are insufficient. *Watkins v. Nielsen*, 405 Fed. App'x 42, 43-44 (7th Cir. 2010) (discovery responses that provided

---

[2] Braun also refused to provide any response to Carter's Rog. No. 12, which seeks an identification of all facts supporting the denial of any Request for Admission. (Witkow Decl., Exh. 17 at p. 7). This is an entirely appropriate interrogatory, and Braun has no basis for her refusal to respond. *Commerce Bank, N.A. v. Widger*, 2008 U.S. Dist. LEXIS 16820, at *6 (C.D. Ill. Mar. 5, 2008). Equally appropriate is Marston's Rog. No. 19, which seeks an identification of any statements, declarations, or testimony Braun intends to use against Marston. (Witkow Decl., Exh. 16 at p. 11). Braun responded to this Interrogatory by stating that she has "not yet finalized the list of statements, declarations, or testimony" that she may rely on; thus, she will not provide any information "at this time." Carter served an identical interrogatory on Braun, and Braun responded that she is still "in the process of finding persons that are willing to testify against the Defendants", claiming that many people are "afraid to involve themselves in this case . . . ." (Witkow Decl., Exh. 17 at p. 6). Ms. Braun (and counsel Lockyer) were required to have a good faith basis to assert her claims in the first place, not search for witnesses after the Complaint has been filed to support the claims asserted.

general information only and omitted requested details were non-responsive). Moreover, her offer to be deposed on these topics cannot replace her obligation under Rule 33 (*see* Supp. Response to Day Rog. No. 23) to answer these relevant interrogatories fully and completely. *See* Fed. R. Civ. P. 37(a)(4) (An "evasive or incomplete" "must be treated as a failure to . . . answer"); *see also Watkins v. Nielsen*, 405 Fed. App'x 42, 43-44 (7th Cir. 2010) (responses that provided general information only and omitted requested details were non-responsive).[3]

## II. Defendants Request Sanctions Under Fed. R. Civ. P. 37.

A prevailing party on a motion to compel is entitled to their expenses, including reasonable attorneys' fees, unless the opposing party's nondisclosure, response, or objection was substantially justified. *See* Fed. R. Civ. P. 37(a)(5). An award of expenses does not require a showing of willfulness or improper intent; rather, the standard is whether there was "substantial justification" for the losing party's conduct. *Bardwell v. K & R Delivery, Inc.*, 1987 U.S. Dist. LEXIS 11738, at *1 (N.D. Ill. Dec. 11, 1987). Thus, the burden is on the losing party to demonstrate that its position was substantially justified. *Id.* Plaintiffs' position that they need not provide narrative responses to essentially any of the interrogatories served by Defendants (but can instead refer Defendants to their document production) is in no way "substantially justified", particularly when faced with applicable authorities to the contrary during the meet and confer process. Plaintiffs are the ones who initiated this litigation, forcing three individual Defendants to incur the burdensome cost of litigation, to refuse to provide substantive responses to even the

---

[3] Plaintiffs also did not sign their Supplemental Responses under oath in violation of Fed. R. Civ. P. 33(b)(3), (5). "Interrogatory responses that are unsigned and unverified by the party upon whom they were served are fatally flawed and 'do not qualify as answers to interrogatories.'" *Connelly v. Cook Cty. Assessor's Office*, 2022 U.S. Dist. LEXIS 225908, at *10 (N.D. Ill. Dec. 15, 2022).

most basic and targeted interrogatories to the elements of their claims is unreasonable and warrants the issuance of sanctions.[4]

Dated: November 17, 2025

                                              *s/      Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*s/      Amy Doig*
Attorney for Defendants

Amy M. Doig
Cozen O'Connor
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

---

[4] If the Court is inclined to award sanctions, counsel for Defendants will submit a Declaration detailing the costs incurred by Defendants in connection with this Motion.

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

*Attorney for Plaintiffs*

Dated: November 17, 2025                                     /s/ *Brandon J. Witkow*
                                                             Brandon J. Witkow