IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON,<br><br>                    Plaintiffs,<br>v.<br><br>REBEKAH M. DAY NEE BOX, KRISTA CARTER & LILY MARSTON<br><br>                    Defendants. | Case No. 23 C 16856<br><br>Presented to:<br>Magistrate Judge M. David Weisman |

**DEFENDANTS REBEKAH M. DAY, KRISTA CARTER, AND LILY MARSTON'S MOTION COMPEL FULL AND COMPLETE RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS [SET ONE] AND FURTHER DOCUMENT PRODUCTION FROM PLAINTIFFS JEANNETE BRAUN, BRAUN IP LAW, LLC, AND LAUREN PROPSON**

Defendants REBEKAH M. DAY, KRISTA CARTER, AND LILY MARSTON (collectively, "Defendants"), by and through their attorneys, hereby bring this Motion to Compel Full and Complete Responses to Request for Production of Documents [Set One] and Further Document Production From Plaintiffs Jeanette Braun, Braun IP Law, LLP, and Lauren Propson (collectively "Plaintiffs"), and state as follows:

**INTRODUCTION**

Plaintiffs, despite being the parties who initiated this lawsuit, have engaged in a consistent pattern of refusing to comply with even the most basic discovery requirements. As explained below, they have failed to provide proper responses to document requests, asserted meritless and boilerplate objections, withheld documents on "confidentiality" grounds while making no effort to file the protective order the Court instructed them to seek months ago, their document production violates Rule 34 because it is disorganized, incomplete, and not produced as kept in the usual

1

course of business, and they still have not served the required privilege log they promised they would serve. Plaintiffs cannot have it both ways: they cannot force Defendants to expend substantial time and resources defending this action while refusing to undertake the corresponding effort to meet their own discovery obligations. Following the exchange of multiple letters and email communications, the parties met and conferred regarding these issues telephonically, as required by Local Rule 37.2, and were unable to reach a resolution.[1] Accordingly, Defendants respectfully request that the Court grant Defendants' Motion to Compel Plaintiffs to serve full and complete responses and further document production in the proper format, including a privilege log. Given their unreasonable and blatant disregard of their discovery obligations under Rule 34, Defendants also request that the Court award Defendants sanctions under Rule 37 in the amount of attorneys' fees and costs incurred in bringing the instant motion.

## RELEVANT FACTUAL BACKGROUND

### A. Procedural Background and Summary of Plaintiffs' Claims

Propson is a licensed mortician and social media personality and Braun is her lawyer. (Third Amended Complaint ("TAC") [Dkt. No. 76], ¶¶ 12-13, 44, 53). This action arises out of allegations that Defendants made defamatory or injurious statements about Plaintiffs on social media, in podcasts, or both. Plaintiffs filed the TAC on August 4, 2025, following the Court's grant of Defendants' Motion to Dismiss the Second Amended Complaint, finding that the vast majority of the statements made by Defendants online (*e.g.*, referring to Propson as a "TERF", stating Braun filed "false copyright strikes" and was "unethical") were non-actionable, constitutionally-protected opinions ("MTD Order" [Dkt. No. 59]).

The TAC asserts six defamation and related claims based on two (2) allegedly defamatory

---

[1] Meet and confer efforts are detailed in Section C of the Relevant Factual Background, as well as in Paragraphs 6-8 of the Declaration of Brandon J. Witkow in support of this Motion, filed concurrently herewith.

statements that were *not* dismissed with prejudice in the Court's MTD Order: (1) a statement by Day in a TikTok story that she "[j]ust got confirmation from the Illinois Attorney Registration & Disciplinary Commission [("ARDC")] thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter"; and (2) a statement by Marston on X (formerly Twitter) posted on December 10, 2023, in which Marston stated: "I gotta say . . . one of our biggest questions in all of this is do we think demps knows that her embarrassing excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her." (TAC, ¶¶ 85, 119). In addition to the claims based on these two defamatory statements, Braun asserts a claim for tortious interference with existing and potential business relationships against Day and Marston. (*Id.*, ¶¶ 207-208). Propson asserts two claims against Carter for tortious interference with contract and tortious interference with economic advantage based on allegations that Carter's online statements about Propson (that the Court ruled were constitutionally-protected opinions in the MTD Order) interfered with her sponsorship contracts with Pair Eyewear and The Travel Channel, as well as with other unidentified opportunities and relationships. (TAC, ¶¶ 191-195, 301-307). On August 27, 2025, Day and Marston filed a Motion to Dismiss the claims asserted by Braun against them in TAC, as did Carter with respect to the claims asserted against her by Propson. [Dkt. Nos. 81, 82].

**B. Defendants' Service of Written Discovery Requests and Plaintiffs' Inadequate Responses.**

Prior to the service of any written discovery by either party, Plaintiffs raised their perceived need for a protective order with the Court in the Joint Status Report [Dkt 79], and the Court addressed this issue in its August 18, 2025 Order [Dkt. No. 80]. In that Order, the Court instructed Plaintiffs to file any needed Motion for Protective Order by September 5, 2025, "after Plaintiffs review the discovery requests." (*Id.*) On August 27, 2025, Day, Marston and Carter each served

3

on Braun and Carter, respectively, their First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production of Documents ("RFPs"), all of which were targeted specifically at discovering the basis for Plaintiffs' allegations in the TAC, including facts regarding the alleged falsity of the two remaining alleged defamatory statements, facts regarding the alleged tortious interference with specific contracts and/or relationships between Plaintiffs and third parties by Defendants, facts regarding Plaintiffs' loss of business and/or clients as a result of Defendants' alleged statements, and seeking the production of documents relating to these highly relevant issues. (Declaration of Brandon J. Witkow ("Witkow Decl."), ¶ 2). After receiving and presumably reviewing these written requests, Plaintiffs did *not* file a motion for protective order by September 5, 2025, despite the Court's mandate in its August 18, 2025 Order, and Plaintiffs have never filed any such Motion to date. (*Id*., ¶ 3).

Plaintiffs served their written responses to Defendants' written discovery requests on September 26, 2025, and Plaintiffs' responses to all four sets of RFPs were entirely inadequate. (*Id*., ¶ 4 and Exhs. 1-8). Moreover, while Plaintiffs' responses to the RFPs were due on September 26, 2025, their document production was not served until almost a month later on October 23, 2025, despite Defendants' counsel's repeated requests on September 30, 2025, October 14, 2025, October 16, 2025, and October 20, 2025. (*Id.,* ¶ 13 and Exh. 9).

**C. Defendants' Counsel's Meet and Confer Efforts.**

Following receipt of the document production, on October 31, 2025, Defendants' counsel sent Plaintiffs' counsel a detailed meet and confer letter identifying the deficiencies in Plaintiffs' written responses and document production and requesting that the parties engage in a telephonic conference in accordance with Local Rule 37.2. (*Id.,* ¶ 14 and Exh. 10). Counsel exchanged additional letters and correspondence on the discovery issues and then scheduled and conducted a

4

telephonic conference to discuss the deficiencies on November 7, 2025 at 12 p.m. (*Id*., ¶ 15 and Exhs. 11-13). The participants in the conference were Brandon Witkow and Cory Baskin on behalf of Defendants and Ben Lockyer and Ryan LeZara on behalf of Plaintiffs. (*Id*., ¶ 16). The conference lasted approximately 1.5 hours. (*Id.*) During the conference, Plaintiff's counsel indicated that he would provide supplemental responses, additional documents, and a "categorical" privilege log by November 10, 2025, but was noncommittal regarding scope of the supplemental responses or the document production. (*Id.*) As to documents Plaintiffs' viewed as confidential, Plaintiff's counsel indicated that if Defendants' did not stipulate to a protective order, Plaintiffs would "stand on their confidentiality and privilege objections . . . ." (Witkow Decl., Exh. 11 at p. 2). During the meet and confer telephonic conference, Defendants' counsel also agreed to supplement certain of Defendants' written responses. (*Id.*)

On November 10, 2025, Defendants' counsel served supplemental responses on Plaintiffs. (*Id.,* ¶ 17). Plaintiffs, however, failed to provide any supplemental responses, documents, or privilege log on November 10, 2025. (*Id.*)  On November 11, 2025, at 7:48 p.m., Plaintiffs' counsel served Plaintiffs' supplemental interrogatory responses and a supplemental production of documents. (*Id.,* ¶ 17 and Exhs. 14-17). Plaintiffs have not served supplemental RFP responses or a privilege log. (*Id.,* ¶ 18).

## **LEGAL STANDARD**

A party may move for an order compelling production if a responding party fails to properly respond to a document request submitted under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

## **ARGUMENT**

I. **Plaintiffs' RFP Responses are Entirely Deficient**.

Braun and Propson's written responses to Defendants' RFPs suffer from various defects and are noncompliant with the requirements of Fed. R. Civ. P. 34. Despite Defendants' counsel's meet and confer efforts regarding these issues, neither Propson nor Braun committed to serve supplemental RFP responses, and to date, none have been served.

A. <u>Plaintiffs Improperly Agree to Produce "Subject to a Protective Order".</u>

The vast majority of Plaintiffs' RFP responses state that Plaintiffs will produce documents "subject to a protective order." (*See* Witkow Decl., Exh. 5 (Propson's Responses to Carter's RFP Nos. 1-15, 26, 45-46, 51, 54), Exh. 8 (Braun's Responses to Carter's RFP No. 15), Exh. 6 (Braun's Responses to Day's RFP Nos. 1-34), Exh. 7 (Braun's Responses to Marston's RFP Nos. 2-3, 8-10, 12, 14-15, 19-26, 30-51)). Again, the time for Plaintiffs' request for a protective order has long passed. As discussed above, this Court made clear that to the extent Plaintiffs believed a protective order was warranted in this case, they needed to file a motion for a protective order no later than September 5, 2025. [Dkt. 80]. Plaintiffs never did, and it is too late for them to withhold documents on the ground that the Court has not entered a protective order. *Yet, that is precisely what Plaintiffs are doing*. Plaintiffs' counsel has indicated during the meet and confer process that "[i]f Defendants refuse to stipulate [to a protective order], Plaintiffs will stand on their confidentiality and privilege objections . . . ." (Witkow Decl., Exh. 11 at p. 2). Thus, Plaintiffs have no intention of filing a motion for a protective order yet refuse to produce documents that they contend are "confidential" or "privileged" without one. Once again, Plaintiffs insist on pursuing this lawsuit and forcing Defendants to bear the substantial cost of defending it, yet they refuse to undertake even the minimal effort required of them, including seeking a protective order, the burden of which is *on Plaintiffs* pursuant to Rule 26. *Boyd Grp. (U.S.), Inc. v. D'Orazio*, 2015 U.S. Dist. LEXIS 122984, at *2-3 (N.D. Ill. Sep. 15, 2015) ("the party seeking protection bears the burden of

establishing that: 1) the information is in fact a trade secret or confidential commercial information and 2) there is good cause to protect the information" under Rule 26(c)).

Regardless of their failure to timely file the motion, and has been explained to Plaintiffs on numerous occasions [Dkt. No. 79, at pg. 5], there actually is no need for a protective order in this case, as the RFPs do not seek trade secrets, confidential commercial information, or private matters; thus, there is no good cause to justify a protective order under Rule 26(c). For example, Braun claimed that she would produce documents "subject to a protective order" in response to ***every single one of the 34 RFPs*** served by Day, which consist of RFPs seeking documents supporting specific allegations of the TAC, including Braun's damages claim (Witkow Decl., Exh. 6 (Day RFP Nos. 3-5, 7-33)), documents sufficient to identify each client Braun claimed they lost as a result of Day's alleged conduct (*id.* (Day's RFP No. 6)), communications between Braun and the ARDC (*id.* (Day's RFP No.1-2)), and communications between Braun and any third party relating to Marston or the allegations of the TAC (*id.* (Day's RFP No. 34)); *see also* Witkow Decl., Exh. 8 (Carter's RFP No. 15) (seeking documents relating to communications between Braun and a third party relating to Defendants)). It is wholly inappropriate for Braun to withhold documents that relate to the specific allegations of the TAC, in particular her claim that Day's ARDC statement was false, on the grounds of "confidentiality." *SGM Grp. Inc. v. Colgate-Palmolive Co.*, 1990 U.S. Dist. LEXIS 9980, at *9 (N.D. Ill. July 31, 1990) ("Defendant correctly observes that it is entitled to discovery of all non-privileged documents supporting the allegations of plaintiffs' complaint"); *Beverly v. Watson*, 2016 U.S. Dist. LEXIS 87725, at *27 (N.D. Ill. July 7, 2016) (granting motion to compel information regarding alleged "confidential sources", holding that plaintiffs could not refuse to disclose the identities of confidential sources when those sources were central to the plaintiffs' allegations). Likewise, documents identifying Braun's alleged lost clients

are not "confidential" materials that she may withhold, especially because Braun herself has placed these individuals squarely at issue by basing her damages claims on their purported loss. (TAC, ¶¶ 131-132, 207-210). Indeed, the TAC expressly names some of these alleged "lost clients": Ms. DeFord, Ms. Dempsey, and Monsters and Martians. (*Id.,* ¶¶ 131-32, 207-208). This type of information does not remotely fall within the scope of "trade secret or other confidential research, development, or commercial information" set forth in Fed. R. Civ. P. 26(c)(1)(G) and must be produced. *See Iosello v. Lawrence*, 2004 U.S. Dist. LEXIS 3908, at *5-6 (N.D. Ill. Mar. 1, 2004) ("The general rule is that the identity of a client is not a confidential communication within the attorney/client privilege"); *Lee v. Chi. Youth Ctrs.*, 304 F.R.D. 242, 253 (N.D. Ill. 2014) ("Courts have consistently held that the general subject matters of clients' representations are not privileged"). Finally, communications between Braun and third parties regarding Defendants are in no way "confidential" or the proper subject of a protective order, which is Braun's burden to prove. *Boyd Grp.*, 2015 U.S. Dist. LEXIS 122984, at *2-3 (party seeking protection bears the burden of establishing that the "information is in fact a trade secret or confidential commercial" and "broad allegations of harm unsubstantiated by specific examples of articulated reasoning do not satisfy the Rule 26(c) test").

Braun also improperly claimed the need for a protective order with respect to a significant number of RFPs served by Marston, including RFPs seeking: documents relating to the specific allegations of the TAC (Witkow Decl., Exh. 7 (Marston RFP Nos. 9-10, 12, 14-15, 19-26, 30-33, 36-39, 44-47)), documents relating to Braun's lost clients and/or damages (*id.* (Marston RFP Nos. 8, 31, 34-35, 49)), and documents relating to Braun's practice of submitting DMCA takedown notices, which relate directly to her claim for defamation against Marston (i.e., Marston's statement that Braun was "actively committing perjury" by submitting a DMCA takedown notice

8

for content she knew constituted fair use) (*id.* (Marston RFP Nos. 2-3, 51)). As with Day, Braun has no justification for refusing to produce these documents on the grounds of "confidentiality" when she has put them squarely at issue through the allegations of the TAC. *SGM Grp. Inc.*, 1990 U.S. Dist. LEXIS 9980, at *9; *Beverly*, 2016 U.S. Dist. LEXIS 87725, at *27. [2]

Propson has also responded to many of Carter's RFPs with an agreement to produce "subject to a protective order." (Witkow Decl., Exh. 5 (Propson's Responses to Carter's RFP Nos. 16-26, 45-46, 49-51, 54)). Once again, these RFPs are directly targeted at the allegations of the TAC, including documents relating to Propson's damages and claims she lost specific clients/opportunities as a result of Carter's actions (*id.* (Carter's RFP Nos. 16-26, 46, 54), documents relating to Carter's alleged interference with Propson's relationships (*id.* (Carter's RFP Nos. 45)), documents relating to communications between Propson and third parties about Defendants (*id.* (Carter's RFP Nos. 49-51)). For the reasons discussed, above, Propson's refusal to produce these documents on "confidentiality" grounds is not only untimely, but improper.

B. <u>Plaintiffs Refuse to Produce Any Documents</u>

Not only have Plaintiffs improperly refused to produce documents on "confidentiality" grounds, but they also responded to many of the RFPs with a statement that ***no documents would be produced*** (protective order or not), despite the fact that the requests are targeted and well within the scope of discovery. (*See* Witkow Decl., Exh. 5 (Propson's Response to Carter's RFP Nos. 50-51, 55), Exh. 7 (Braun's Responses to Marston's RFP Nos. 4-7)). Propson refused to respond to RFP No. 55, which seeks communications between Propson and Alyssa DeFord, who the TAC makes clear is a critical witness in this action. Namely, Braun claims that DeFord terminated her

---

[2] Plaintiffs also responded to many RFPs by stating that responsive documents would be produced "in accordance with scheduling orders." This assertion makes no sense. The Court has not issued any scheduling order in this case that would alter Plaintiffs' obligation under Rule 34 to timely respond to the RFPs and produce all responsive documents.

9

relationship with Braun as a result of Defendants' statements (TAC, ¶ 131); thus, any communication between Propson (also a client of Braun) and DeFord is discoverable and would not constitute "confidential client communications", as there is no attorney/client relationship between these two individuals. *Belcastro v. United Airlines, Inc.,* 2019 U.S. Dist. LEXIS 65847, at *7 (N.D. Ill. Apr. 17, 2019) ("Discovery is ordinarily allowed 'if there is any possibility that the information sought may be relevant to the subject matter of the action'"). Equally meritless are Propson's boilerplate objections that this request is "overbroad" and "unduly burdensome." *Id.* at *10 (holding that a "party that relies on a burdensomeness claim must address "what documents would have to be reviewed, what costs would be incurred, or how long it would take to respond to [the] requests"). The same can be said for Propson's Responses to RFP Nos. 50-51, which seek communications between Propson and third parties relating to Defendants. (Witkow Decl., Exh. 5). Any communications that Propson has regarding Defendants, who she alleges intentionally interfered with her business relationships and opportunities is most certainly within the scope of discovery, and in no way "overbroad" or "unduly burdensome." *Id.*

Braun refused to produce any documents in response to Marston's RFP Nos. 4-7, which seek documents relating to Braun's submission of takedown notices under the DMCA in connection with Marston's podcast Episode 97, as well as on behalf of other clients. (Witkow Decl., Exh. 7). Given that Marston's statement regarding Braun "actively committing perjury" is tied directly to Braun's conduct of submitting meritless takedown notices for Episode 97, these requests are unquestionably relevant. Braun's only objections to these RFPs are that they seek privileged information. As explained above, Braun has put these documents squarely into issue with her defamation claim against Marston, and she cannot deny Defendants' discovery of them. *SGM Grp. Inc.*, 1990 U.S. Dist. LEXIS 9980, at *9; *Beverly*, 2016 U.S. Dist. LEXIS 87725, at

*27. Moreover, Braun has yet to produce a privilege log listing these documents. (Witkow Decl., ¶ 18). "Rule 26(b)(5)(A) requires a party that withholds documents on the grounds that they are attorney work product or are protected by attorney client privilege to submit a privilege log that describes the nature of the withheld documents in a way 'that, without revealing any information itself privileged or protected, will enable other parties to assess the claim.'" *Kaufman v. Am. Exp. Travel Related Servs. Co*., 2011 U.S. Dist. LEXIS 4420, at *12-13 (N.D. Ill. Jan. 14, 2011) (citations omitted). "Rule 34(b) requires this privilege log to be served within 30 days of receipt of the document requests that seek privileged information", and "[f]ailure to follow these rules may result in waiver of the privilege." *Id.* Braun also objects that the documents "may be in the possession of third parties," but assuming that is true, it does not relieve Braun of the obligation of producing those documents in *her* possession. Finally, boilerplate objections of overbroad, unduly burdensome, and relevance, are improper and should be disregarded. *EEOC v. Safeway Store, Inc*., 2002 U.S. Dist. LEXIS 25200, at *4 (N.D. Ill. Sept. 16, 2002) (boilerplate objections are "inadequate and tantamount to not making any objection at all.")

  C. <u>Plaintiffs' Improperly Limit Production to "Examples" of Responsive Documents</u>

Plaintiffs also responded to certain RFPs by agreeing to produce only "examples" of responsive documents. (Witkow Decl., Exh. 7 (Braun's Responses to Marston's RFP Nos. 11, 13, 21, 24, 36, 41), Exh. 6 (Braun's Responses to Day's RFP Nos. 17), Exh. 5 (Propson's Responses to Carter's RFP Nos. 5, 8)). Plaintiffs' unilateral limitation of their document production to just "examples" is improper and falls short of their obligation under Rule 34. *Kaufman*, 2011 U.S. Dist. LEXIS 4420, at *7 ("It is not for [responding party] to unilaterally determine how much discovery is sufficient"); *Hannah's Boutique v. Surdej,* 2014 U.S. Dist. LEXIS 38979, at *10 (N.D. Ill. Mar. 25, 2014) (holding that a discovery "response-by-example is evasive and incomplete"; rather, a

party "must provide a complete list—not just examples" of the information requested). Thus, Plaintiffs must produce *all* non-privileged, responsive documents in their possession, custody or control, not cherry-picked "examples."

## II. Plaintiffs' Document Production Fails to Comply with Rule 34.

As explained above, Plaintiffs' document production was served almost *one month* after the deadline for Plaintiffs to respond to Defendants' RFPs (Witkow Decl., ¶ 13), and when Defendants' reviewed the documents, it became apparent, Plaintiffs' expended minimal effort, if that, to comply with their obligations under Fed. R. Civ. P. 34. As a preliminary matter, Rule 34(b)(2)(E)(i) states that the responding party must do one of the following: (a) produce documents as they are kept in the usual course of business, or (b) organize and label them to correspond to the categories in the request. Plaintiffs' production fails to comply with either requirement. *See* Fed. R. Civ. P. 34(b)(2)(E)(i).

First, the requests issued by Defendants were to each of Braun and Propson, separate parties requiring separate productions, produced as the documents were kept in the usual course of business by each Plaintiff *or* organized and labeled to correspond to the categories in the respective RFPs served on each Plaintiff. (Witkow Decl., Exhs. 5-8). Instead, Plaintiffs have improperly lumped these productions together with documents pertaining to Braun mixed in with documents pertaining to Propson, with no organization or logical arrangement whatsoever. (*Id.,* ¶ 19). Then, as explained in detail in the Declaration of Brandon J. Witkow filed concurrently herewith, within this single production multiple documents were provided in an incomplete form and appear randomly inserted between unrelated materials with no logical grouping or continuity, the production includes material entirely unrelated to any party or issue in this case, and the production contains excessive duplication, including instances in which dozens of identical

screenshots appear repeatedly back to back, as well as the same sequences across hundreds of pages being repeated at various stages of the document. (*Id.*) As an example, in just the first 200 pages of Plaintiffs' production alone, once the duplicates are removed, only 67 pages remain—three of which contain no content at all. (*Id.*). Thus, only 64 of the first 200 pages are unique, and the other two thirds are effectively useless. (*Id.*)

The disorganization of the production makes apparent that Plaintiffs made no effort to either produce documents as they are kept in the usual course of business or organize and label them to correspond to the categories in the request. This is their indisputable obligation under Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure. *See e.g., Alford v. Aaron Rents, Inc.*, No. 2010 U.S. Dist. LEXIS 67790, at *70-71 (S.D. Ill. May 17, 2010) (holding that if it is not possible for party to produce the documents "as they were 'kept in the usual course of business'", the producing party is left "with the obligation to 'organize and label; the documents to correspond to the document requests"). As with so many of their discovery obligations, Plaintiffs contend they are not obligated to undertake this effort, admitting that they simply produced the documents "as they were provided to Plaintiffs' counsel". (Witkow Decl., Exh. 11 at p. 3). Simply because Plaintiffs provided their counsel an incoherent document dump, does not entitle Plaintiffs' counsel to pass that along to Defendants. Rule 34 is clear, and Plaintiffs' blatant disregard of it is indefensible. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005) (responding party is "not at liberty under federal discovery rules to dump massive amounts of documents, which [they] concede have 'no logical order to them,' . . . on their adversaries and demand that they try to find what they are looking for") (citing *Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997) (production of three large storage boxes papers and numerous other unrelated, non-responsive materials in response to court-ordered production was sanctionable)).

Not only did Plaintiffs fail to produce their document production in the proper format, but the document production is missing numerous categories of highly relevant, and responsive documents, such as: contracts between Propson and the two specific clients she claims she lost as a result of Carter's actions (Pair Eyewear and The Travel Channel), any documents relating to any other of Propson's alleged lost clients or lost opportunities, any documents relating to either Plaintiffs' proof of damages or lost clients, documents regarding Braun's filing of a DMCA takedown request with respect to Marston's Episode 97 (which are directly relevant to Marston's alleged defamatory statement that Braun was "actively committing perjury" when she filed that DMCA takedown request), and there are no communications from Braun to the ARDC regarding ethics complaints filed against her (only the complaints themselves were produced and the final resolution letter – nothing in between). (Witkow Decl., ¶ 20). Plaintiffs did not respond to a single RFP with a statement that no responsive documents existed, so Defendants are left to assume that these documents *do* exist, and Plaintiffs are withholding them improperly. (Witkow Decl., Exhs. 5-8). Again, Plaintiffs are the ones who initiated this litigation, and they cannot evade their discovery obligations simply because complying with them requires time and effort.

Finally, Plaintiffs have failed, to date, to provide any privilege log, despite their representations during the meet and confer process that they would provide a "categorical" privilege log by November 10, 2025. (Witkow Decl., ¶ 18 and Exh. 11 at p. 3). Based on this failure, Defendants request that the Court compel Plaintiffs to provide a full and complete privilege log, *not* one that provides only a "categorical description" of withheld materials, which appears to be Plaintiffs' intention (Witkow Decl., Exh. 11 at pg. 3 ("Plaintiffs will therefore provide only a categorical description of withheld materials")). Contrary to Plaintiffs' contention, courts in this district hold that "the party asserting the privilege must produce a privilege log 'that identifies for

each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.'" *Schmalz v. Vill. N. Riverside*, 2018 U.S. Dist. LEXIS 19623, at *7 (N.D. Ill. Feb. 7, 2018); *Muro v. Target Corp.*, 2006 U.S. Dist. LEXIS 86030, at *6 (N.D.Ill. Nov. 28, 2006) (same). Plaintiffs should not be permitted to rely on vague assurances or incomplete disclosures, and the Court should require strict compliance with these well-established privilege log requirements.

### III. Defendants Request Sanctions Under Fed. R. Civ. P. 37.

A prevailing party on a motion to compel is entitled to their expenses, including reasonable attorneys' fees, unless the opposing party's nondisclosure, response, or objection was substantially justified. *See* Fed. R. Civ. P. 37(a)(5). An award of expenses does not require a showing of willfulness or improper intent; rather, the standard is whether there was "substantial justification" for the losing party's conduct. *Bardwell v. K & R Delivery, Inc.*, 1987 U.S. Dist. LEXIS 11738, at *1 (N.D. Ill. Dec. 11, 1987). Thus, the burden is on the losing party to demonstrate that its position was substantially justified. *Id.* The unreasonable positions taken by Plaintiffs (*e.g.*, they are not obligated to file a motion for protective order, they do not need to serve a detailed privilege log, they can produce documents "as they were provided to counsel") are in no way "substantially justified", particularly when faced with applicable authorities to the contrary during the meet and confer process. Plaintiffs' blatant disregard of their discovery obligation warrants the issuance of sanctions.[3]

---

[3] If the Court is inclined to award sanctions, counsel for Defendants will submit a Declaration detailing the costs incurred by Defendants in connection with this Motion.

Dated: November 17, 2025

      *s/     Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*s/     Amy Doig*
Attorney for Defendants

Amy M. Doig
Cozen O'Connor
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com

*__Attorney for Plaintiffs__*

Dated: November 17, 2025                  /s/ *Brandon J. Witkow*
                                                         Brandon J. Witkow