IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE BRAUN, <br> BRAUN IP LAW, LLC & <br> LAUREN PROPSON, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Case No. 23 C 16856 |
| v. | ) <br> ) | Hon. J. Mary Rowland |
| REBEKAH M. DAY NEE BOXX, <br> KRISTA CARTER, <br> LILY MARSTON, & <br> JESSICA VAZQUEZ, | ) <br> ) <br> ) <br> ) <br> ) | Mag. J. M. David Weisman |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITONTO DEFENDANTS' MOTION
TO COMPEL PRODUCTION AND RESPONSES TO INTERROGATORIES**

Plaintiffs, Jeanette Braun, Braun IP Law, LLC, and Lauren Propson (collectively "Plaintiffs"), by and through their attorney, present there response in opposition to Defendants Rebekah M. Day, Krista Carter, and Lily Marston's (collectively "Defendants") Motion to Compel Full and Complete Responses to Interrogatories [ECF Dkt. No 88] and Motion to Compel Full and Complete Responses to Requests for Production [Set One] and Further Document Requests from Plaintiffs [ECF Dkt No. 89], and in support states as follows:

**ARGUMENT**

**I.  Defendants motion is moot. Plaintiffs have answered and supplement their responses and provided all non-privileged documents within their possession and control**

Plaintiffs satisfactorily answered the Defendants discovery requests prior to the filing of the instant Motion and provided the bate stamp numbers to which documents produced answered the request. Since Defendants filed their motion, Plaintiffs have served verified supplemental responses to every set of interrogatories and requests for production directed to Braun, Braun IP

1

Law, and Propson, and have produced additional documents on damages and harassment. That supplementation:

1. adds narrative "all facts" answers to the contention and damages interrogatories for both Braun and Propson;

2. ties each contention answer to specific Bates ranges or states that there are not any responsive documents;

3. clarifies Braun's damages theory (lost gross income and reputational/emotional harm, not a global "lost clients" theory);

4. produces additional financial records (redacted tax returns, invoices, and profit and loss statements) for opportunities Plaintiffs can ethically identify; and

5. serves a privilege log identifying categories of requested client communications being withheld on privilege grounds.

The only substantial production still at issue is the first 1–1330 document set. Those materials consist almost entirely of social media screenshots and video recordings that Plaintiffs' clients provided in their first production. The screenshots and media files were not maintained in any organized "usual course of business" by Plaintiffs and were provided in the same manner produced to counsel. Subsequent productions, financials, sponsorship documents, and newer harassment evidence, have expressly identified by Bates number in Plaintiffs' supplemental responses.

Given these supplements, most of the relief Defendants seek is simply no longer live.

**II.     The remaining categories they pursue are privileged, confidential, or irrelevant.**

Defendants' briefing does not meaningfully engage with the specific objections in the new responses. Nor do they explain the relevance or proportionality for such requests. Instead, they continue to press for broad categories of information that are either privileged, ethically non-disclosable, or plainly outside Rule 26(b)(1).

      **A.    ARDC communications and complainant identities.**

Requests directed to "all documents and communications" with the ARDC and to the identities of complainants (Day RFPs 1–3, 12–20) run squarely into Illinois Supreme Court Rule 766, which makes ARDC disciplinary communications and investigative materials confidential. Plaintiffs have produced the only non-privileged documents still in their possession and explained that any other information is maintained by the ARDC and is confidential. Defendants also already possess their own exhibits and documents related to their own ARDC complaints.

Further, Plaintiff Braun produced all documents in her possession, and does not possess the original complaints and all materials that were submitted to the ARDC. The original complaint files were provided to Braun via a file sharing link due to the volume and file size of the complaints and attachments received. Plaintiff Braun did not download the complaints because of the size of the files and the link is no longer active. She is only in possession of the closure letters, which she has provided. On April 24, 2024, she asked the ARDC to refresh the link and the ARDC declined to respond to that email. The closure letters produced to Defendants identify the names of the individuals that filed the ARDC complaints, which include the Defendants and some of their collaborators.

      **B.    Plaintiff Braun Notified Defendant During the Meet and Confer that She Does Not Intend to Seek Damages Related to Specific Lost Clients.**

Plaintiff Braun is an attorney and is bound by ethical duties that she must abide by. The clients Defendants seek to identify are legal clients, not brand sponsors. Rule 1.6 and the attorney–client privilege bar disclosure of most of these relationships and communications. Due to fear of

<mark>

harassment from Defendants, their collaborator Ian Runkle,[1] and the online mob they have repeatedly mobilized, Plaintiff Braun's clients have been fearful of identifying themselves or being a part of public pleadings.[2] Plaintiffs have therefore narrowed Braun's damages theory: she seeks damages based on (1) lost gross revenue, documented through redacted returns and invoices, and (2) reputational and emotional harm, supported by representative harassment evidence. She is not seeking damages for unidentified, confidential clients. Because Plaintiffs are not relying on those unnamed clients for damages, there is no need (and no legal basis) to compel their identities. Any remaining requests for "each client" who left or "distanced" (e.g., Day RFPs 6–8, 21–26; Day Interrogs. 7–8, 11, 21–22, 25) seek privileged and ethically protected information and should be denied.

As to the law, Defendants cite the general rule that client identity is often not privileged. But the Seventh Circuit has recognized a limited but important exception: where revealing the client's identity would also reveal the client's confidential motive for seeking legal advice about a specific matter, the identity may itself be privileged. See *United States v. BDO Seidman, LLP*, 337 F.3d 802, 811–12 (7th Cir. 2003) (recognizing privilege for client identities where disclosure would necessarily reveal the nature of confidential consultation. Given some of clients' fear of harassment and express requests not to have their identities disclosed, Braun cannot disclose these names without violating her clients' request for confidentiality and attorney-client privilege.

---

[1] Mr. Runkle is a Canadian lawyer with a Youtube channel that has been publicly endorsed by the Defendants and has made nearly two dozen videos disparaging Plaintiffs' case. Mr. Runkle's videos have motivated individuals to file ARDC complaints contacted some of Ms. Braun's clients that have been named in this suit. Due to fear of harassment or exposure from Mr. Runkle's videos

[2] Despite repeated attempts to work out an agreement to prevent harassment, Defendants have refused on several occasions to agree to appropriate safeguards to prevent harassment of Plaintiff Braun's clients. Defendants' counsel has argued that he must be able to confer with his clients and would not agree to attorney's eyes only designation. Given that Defendants have sought discovery of non-relevant communications and documents from Plaintiff Braun's clients (including ones unaffiliated with this lawsuit or lost from it), Plaintiff Braun is not able to contain consent from her clients due to fear of being harassed by Defendants.

C.    **DMCA and fair-use analysis.**

Marston's discovery requests seek all DMCA communications filed by Braun, despite her statement being related to Braun committing perjury while representing her client Kaitlynn Dempsey.[3] In addition, Marston seeks "all efforts" Braun undertook to determine that Episode 97 did not constitute fair use. Those requests target legal research, strategy, and advice given to clients; core work product and attorney–client communications. Plaintiffs have produced factual DMCA notices related to Ms. Dempsey and clarified that Braun did not submit the December 3 Episode 97 YouTube strike at issue. Requiring production of internal legal analysis on DMCA practice or other clients' takedowns would be disproportionate and unnecessary to resolve whether Defendants defamed or committed the acts alleged in the Third Amended Complaint against Braun.

D.    **Requests to Identify the Name and Contact Information for the Anonymous "fans," online commenters, and the "angry mob" is unduly burdensome and not proportional to the needs of this case.**

Defendants demand identification of "all fans" and "members of the public" who supposedly joined an "angry mob" (Day and Marston RFPs 7, 11, 17, 23, 36; related interrogatories). Plaintiffs have explained that many of these users are anonymous, that Plaintiffs do not maintain logs of usernames, IP addresses, or timestamps, and that the work required to unmask or catalog every comment would be enormous. Plaintiffs instead produced representative screenshots and media, identified by Bates number, that illustrate the harassment and its effect. That is a reasonable and proportional response; Rule 26 does not require a comprehensive doxxing of strangers on the internet.

---

[3] Plaintiff Braun and Braun IP Law have provided all non-privileged DMCA communications involving Kaitlynn Dempsey.

E. **Defendants' Requests for Private Conversations to Parties not Involved in This Matter are Influencer-Drama Side Issues.**

Requests directed to private or privileged communications with third-party online personalities (Anthony Raimondi, Gabi Egan, Reby Hardy, etc.) and to Propson's private denials of being a "TERF," "anti-vaxxer," or "child safety expert" have no bearing on the falsity of Defendants' statements or on damages. They are discovery sideshows that do not go to the Parties' claims and affirmative defenses. Plaintiffs have properly objected to these requests as irrelevant and declined to produce anything further.

III. **Defendants' Own Discovery Conduct Underscores the Imbalance and Burden of Their Requests, and Lack of Prejudice.**

Defendants' motion also omits key context.

First, Defendants served extraordinarily voluminous discovery: 55 document requests to and 40 interrogatories to Propson, and 105 requests for production and 88 interrogatories to Braun and Braun IP across three defendants. Many of those requests are not relevant to the claims or defenses in this matter. For example, global demands for every DMCA notice issued since 2022, and personal communications about Propson's beliefs on vaccinations, and Braun's communications with clients unrelated to this case. These requests are not targeted efforts to obtain missing core evidence; they are scattershot and harassing.

Second, Defendants characterize Plaintiffs' initial 1–1330 production as a "document dump." That unjust criticism ignores context:

1) The 1–1330 set consists almost entirely of social-media screenshots and video recordings provided to counsel by Plaintiffs and others as part of an initial evidence collection—not materials maintained in any "usual course of business."

2) Subsequent productions (financials, sponsorship documents, newer harassment evidence) have been Bates-labeled and tied to specific TAC paragraphs and to particular RFPs and interrogatories in Plaintiffs' supplemental responses.

Further, Defendants reliance on *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351 (N.D. Ill. 2005), and *Rothman v. Emory Univ.*, 123 F.3d 446 (7th Cir. 1997) is distinguishable as these cases involved physical productions and pre-date modern e-discovery. Unlike *Rothman*—where a party responded to a court-ordered production by **sending physical boxes of unsorted and largely irrelevant documents**—Plaintiffs' initial production of an electronic file with approximately 1,000 pages was a discrete category of case-related evidence, and linked to particular claims in Plaintiffs' original responses. *Id.* Defendants themselves have produced large volumes of unlabeled documents without Bates numbers or clear organization. In this posture, sanctions are neither necessary nor appropriate; at most, if the Court desires further organization of the 1–1330 set, Plaintiffs respectfully ask that the Court direct the parties to agree on targeted sub-sets or indices.

Third, Defendants also fail to identify any prejudice flowing from the alleged deficiencies. Plaintiffs served complete supplemental interrogatory responses and produced the requested documents relating to Ms. Propson's sponsorship records and Ms. Dempsey's DMCA matters. The supplemental interrogatories expressly identify, by Bates number, the precise documents that respond to or correspond with each request—information that Defendants could have ascertained from the Bates-stamped production themselves. Plaintiffs likewise served their supplemental responses to Defendants' extensive requests for production on December 1, after confirming whether any additional documents remained to be produced. Given the scope of Defendants' discovery (approximately 160 RFPs), and the nature of Plaintiffs' evidence—primarily screenshots and media files not kept in a structured "usual course" by Plaintiffs—this

7

supplementation was completed as promptly as practicable. Aside from some additional financial records and several instances of more recent harassment, Plaintiffs' production has remained consistent with the initial and agreed supplemental productions. Defendants identify no material gap in the record, nor any harm resulting from Plaintiffs' timing or the form of production. On this record, Rule 37(a) relief is unwarranted.

Finally, to the extent Defendants suggest delay, the record shows that Defendants were fully aware that undersigned counsel was traveling and repeatedly requested additional time to complete Plaintiffs' production after serving the supplemental interrogatories and initial document sets. As reflected in the parties' correspondence, undersigned counsel informed Defendants that he had just completed a federal jury trial beginning October 1 and would be traveling for hearings immediately thereafter. During this same period, counsel was simultaneously coordinating Plaintiffs' renewed document search and reviewing responses to approximately 160 separate RFPs served across multiple defendants—many of which required Plaintiffs to locate materials from third parties or obtain client consent that was not always forthcoming. Despite being aware of counsel's travel schedule and his request for a brief extension to finalize the remaining materials, Defendants did not follow up before filing their motion. Plaintiffs nevertheless continued working to complete their production and have now served comprehensive supplemental responses and produced every non-privileged document in their possession, custody, or control.

**IV.      Sanctions and Fees Are Not Warranted Under Rule 37(a)(5).**

Even if the Court were to conclude that some narrow category of information remains discoverable, Rule 37(a)(5) bars fee-shifting where the movant (1) failed to attempt in good faith to resolve the issue, (2) the opposing party's position was substantially justified, or (3) other circumstances make a fee award unjust. All three exceptions apply here.

First, Defendants did not make a good-faith effort to resolve anything before filing their motion to compel. Plaintiffs timely provided their supplemental interrogatory responses identifying relevant documents by bates stamp and an additional production of documents on November 11, 2025. The undersigned counsel also notified counsel for Defendants that he was traveling and that he needed additional time to finish the supplemental responses and produce additional documents. Counsel followed up again that evening explaining that the responses were taking longer than anticipated due to the volume of requests propounded by Plaintiff. In the three days following these messages, Defendants did not respond, did not ask any follow-up questions, and did not warn Plaintiff's that they intended to file a motion. They simply filed their motion Monday morning. That alone defeats fee-shifting.

Compounding the problem, local counsel Amy Doig (counsel of record for Defendants) has never participated in any discovery discussions, was not copied on discovery correspondence until the undersigned began including her. Further, Ms. Doig was directly asked to attend the meet and confer conference to ensure productive discussions and to ensure compliance with Local Rule 37.2. Despite being directly asked, she did not appear or respond. This raises legitimate concerns: discovery in this case has been conducted entirely by out-of-state counsel admitted *pro hac vice*, without local counsel's supervision or involvement. Now, in addition, Defendants seek fees for work performed by Mr. Baskin, who has not filed an appearance and is not counsel of record. Rule 37 does not authorize fee awards to non-appearing lawyers, nor does it reward a party for bypassing its own obligations under the Local Rules.

Second, Plaintiffs' positions were substantially justified. Plaintiffs faced requests aimed at privileged materials (Braun's client communications), confidential ARDC information protected by Illinois Supreme Court Rule 766, demands for the identities of anonymous commenters, and

9

broad requests for influencer gossip and DMCA legal analysis that bear no relationship to any claim or defense. Plaintiffs nonetheless undertook a comprehensive supplementation:

1. providing narrative answers to the interrogatories Defendants identified,
2. identifying the exact Bates ranges for the documents responsive to each contention,
3. producing additional sponsorship and financial documents for Propson,
4. producing invoices and redacted income records for Braun,
5. producing all non-privileged ARDC materials in Plaintiffs' possession, and
6. serving a privilege log.

Plaintiffs even provided the very documents Defendants specifically requested, and Propson supplemented again on December 1—all before Defendants made any attempt to avoid motion practice.

Third, multiple circumstances make any fee award unjust in this situation. Defendants served extraordinarily burdensome discovery—far exceeding the scope contemplated by the Rules—and then refused to agree to a protective order with necessary protections, such as Attorney's Eyes Only, while simultaneously demanding sensitive financial information and client identities. Their own productions were initially disorganized and contained numerous un-Bates-labeled media files. Plaintiffs, by contrast, undertook the manual task of identifying, Bates-labeling, and mapping their screenshot-based evidence to each RFP and interrogatory. Defendants knew exactly which documents were responsive because the supplemental interrogatories identified the relied upon documents and provided narrative responses. Defendants still chose to file this motion without conferring. And it bears noting that Defendants are litigating with the

support of more than $100,000 in public donations,[4] making any fee award not a remedy but a windfall.

On this record, sanctions are inappropriate. Plaintiffs have fully supplemented their responses, produced all non-privileged documents in their possession, and eliminated the issues identified in Defendants' motion. Defendants, by contrast, have not identified any prejudice, have not demonstrated a failure to cooperate by Plaintiffs, and did not satisfy their own good-faith obligations before seeking court intervention. The Court should deny the request for fees and deny the motion to compel except, at most, as to any narrow, residual issues the Court identifies at the hearing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Deny Defendants' Motions to Compel (ECF 88 & 89) to the extent they seek broad ARDC communications, complainant identities, client identities beyond those tied to specific, live damages claims, global DMCA and fair-use analysis, and exhaustive "angry mob" or influencer-drama discovery;

2. To the extent the Court finds any further supplementation warranted, limit it to targeted categories clearly proportional to the needs of this case and permit Plaintiffs to cure any remaining privilege-log issues by supplementation; and

3. Deny Defendants' requests for fees and sanctions under Rule 37(a)(5).

Respectfully submitted,

*/s/ Benjamin C.R. Lockyer*
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
***Attorney for Plaintiffs***

---

[4] https://www.gofundme.com/f/the-girlies-vs-janet