IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANETTE BRAUN & BRAUN IP LAW, LLC,[1] <br><br>Plaintiffs, <br><br>v. <br><br>REBEKAH M. DAY NEE BOX, KRISTA CARTER, and LILY MARSTON <br><br>Defendants. | Case No. 23-cv-16856 <br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jeanette Braun & Braun IP Law, LLC,[2] have sued Defendants Rebekah M. Day, Kristina Carter, Lily Marston, bringing a total of seven counts stemming from allegedly defamatory or injurious statements made over social media, in podcasts, or both. Day, Marston, [81] and Carter [82] have filed motions to dismiss the Third Amended Complaint (the "TAC"). [76]. For the reasons stated herein, Day and Marston's motion [81] is granted in part and denied in part, and Carter's motion [82] is denied without prejudice as moot.

## BACKGROUND

### I. Factual Background

*A. Propson and Carter dispute*

---

[1] Lauren Propson was originally a Plaintiff. On March 10, 2026, Propson voluntarily dismissed her claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). [115].
[2] Because both Bruan and Braun IP Law, LLC bring the same counts against the same Defendants, the Court refers to both collectively in this memorandum as "Braun."

1

Propson is a licensed mortician who operates at least one social media account under the handle "Lauren the Mortician," where she posts about matters related to her profession. TAC ¶¶ 4, 12. She posts about matters related to her profession. TAC ¶ 12. Carter is likewise a social media personality and a self-described "life coach villain" who operates under the handle "@CaffinatedKitti." TAC ¶ 14.

On or around October 24, 2023, Carter published a video on TikTok where she accused Propson of being transphobic and a "TERF." TAC ¶ 19. Specifically, Carter said "Lauren the Mortician is a TERF, I have receipts, I have deets, and you should just go ahead and take a seat." TAC ¶ 20. "TERF" is an acronym meaning "trans-exclusionary radical feminist" that at least one dictionary defines as "an advocate of radical feminism who does not believe that transgender people's gender identities are legitimate, and who is hostile to the inclusion of trans-women in the feminist movement." TAC ¶ 22. Carter further explained that the "receipts" and/or "deets" referenced were evidence of Propson liking "incredibly transphobic and hateful rhetoric and content." TAC ¶ 27. Carter later explained that she made the post because people were confusing her for Propson. TAC ¶ 33.

Plaintiffs allege that because of Propson's online following, the allegations of her transphobia "spread quickly throughout the internet and became the source of multiple posts, comments, and blog articles." TAC ¶ 38. The allegations lowered her standing in the community, dissuaded people "in the content creation community" from associating with her and caused her to lose followers. TAC ¶¶ 42-43.

2

Propson also alleges that Carter "actively engaged with and further incited her fans and the general public through public social comments, and upon information and belief, through direct messages on social media platforms." TAC ¶ 37. Propson alleges that Carter accused her of being transphobic "in an attempt to incite pro-LGBTQ community members to engage in a cancel culture campaign against" her. TAC ¶ 39.

At some point during Propson and Carter's dispute, Propson hired Braun, an attorney, to assist in filing a Digital Millennium Copyright Act ("DMCA") complaint against Carter related to various videos that Carter posted on Facebook.

### B. Braun's Claims Against Day

At some point, a separate influencer became involved in the dispute. Braun alleges that Defendant Day is a self-stylized "unbiased content creator" and "independent investigative reporter" who has no journalistic training. TAC ¶¶ 56-57. Day allegedly creates content and monetizes videos that disparage social media creators and celebrities, and she has allegedly been accused of posting false and untrue statements about public figures. [29] ¶¶ 60-61.

Day posted a "deep dive" video about the dispute and wrote that she has "proof of another VERY large & well-liked content creator that is utilizing the same attorney that Lauren the Mortician has used ([Braun]) to harass a small creator on this app & misuse the copyright strike system to have her account taken down." TAC ¶ 65-69. In a separate video, Day discussed Braun's representation of a client named Demps and accused Braun of filing false copyright claims. TAC ¶¶ 70-73.

3

In December 2023, Day posted a video on social media stating that she "[j]ust got confirmation from the Illinois Attorney Registration & Disciplinary Commission [("ARDC")] thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun and they have assigned multiple attorneys to investigating [sic] this matter." (the "ARDC Statement").[3] TAC ¶ 85 (emphasis in original). Plaintiffs allege the ARDC *did* receive multiple complaints regarding Braun, but they claim that it is false that (1) the ARDC confirmed the existence of the complaints to Day, (2) that they assigned multiple attorneys to investigate the complaints, or (3) that the complaints were credible. TAC ¶¶ 87-100.

### C. Braun's Claims Against Marston

At or around the same time, Defendant Marston, who co-hosts and owns a weekly podcast, began covering the controversy. TAC ¶¶ 103-105. In a since-deleted tweet, Marston said:

> I gotta say… one of our biggest questions in all of this, is do we think demps knows that her embarassing [sic] excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her.

TAC ¶¶ 118-19 (the "Perjury Tweet").

### D. Procedural Background

On February 28, 2025, the Court granted in part and denied in part Defendants' motions to dismiss the second amended complaint (the "SAC"). [58]. The SAC contained 16 claims, including claims by Propson, premised on the conduct described *supra* for defamation, trade libel, false light, tortious interference, and intentional

---

[3] This text appeared as a caption in the video that Day allegedly posted. *See* TAC ¶ 86.

4

infliction of emotion distress. The Court determined that to the extent the SAC alleged that Defendants asserted that Plaintiffs — in Propson's case, that she was transphobic; in Braun's that she was unethical — were sufficiently injurious to state a cause of action. *See generally* [56]. The Court rejected 13 of the SAC's 16 claims, reasoning that the complained-of opinions were constitutionally protected. On August 4, 2025, Plaintiffs filed the TAC, which contains the following claims:

| Count | Plaintiff | Defendant | Cause of Action |
|---|---|---|---|
| I | Braun | Day | Defamation Per Se |
| II | Braun | Marston | Defamation Per Se |
| III | Braun | Day | False Light |
| IV | Braun | Marston | False Light |
| V | Braun | Day | Trade Libel |
| VI | Braun | Marston | Trade Libel |
| VII | Propson | Carter | Tortious Interference with Contract |
| VIII | Propson | Carter | Tortious Interference with Economic Advantage |
| IX | Braun | Day & Marson | Tortious Interference with Existing and Potential Business Relationships |

As noted previously, Counts VII and VIII have been voluntarily dismissed.

## LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing

5

that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Count I – Braun's Defamation Per Se Claim Against Day

Braun alleges that Day defamed her by publicly claiming that Day received "confirmation from the Illinois Attorney Registration & Disciplinary Commission thay [sic] they have received multiple CREDIBLE complaints about Jeanette Braun

6

and they have assigned multiple attorneys to investigating [sic] this matter." TAC ¶ 136.

To state a claim for defamation under Illinois[4] law, a plaintiff must plead facts showing: "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kadner*, 814 N.E.2d 951, 956-57 (Ill. App. Ct. 2004). Day argues that Count I should be dismissed because the ARDC statement was substantially true and because the statement was protected by a qualified privilege. The Court disagrees.

Day is right in that an otherwise defamatory claim is not actionable where the claim is "substantially true." *J. Maki Const. Co. v. Chicago Reg'l Council of Carpenters*, 882 N.E.2d 1173, 1186 (Ill. App. Ct. 2008) "While determining 'substantial truth' is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established. Substantial truth refers to the fact that a defendant need prove the truth of only the 'gist' or 'sting' of the statement." *Id.*; *Hardiman v. Aslam*, 125 N.E.3d 1185, 1189 (2019) ("To be substantially true does not mean that every detail of the statement needs to be accurate"). "The 'gist' or 'sting' of the alleged defamation means the heart of the matter in question—the hurtfulness of the utterance." *Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987) (citations omitted) (affirming

---

[4] Under Illinois law, the law of the state where the injury occurred governs the substantive issues of the case. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 899 (Ill. 2007). In the case of defamation that is the state in which the plaintiff is domiciled. *See Kamelgard v. Macura*, 585 F. 3d 334, 341-42 (7th Cir. 2009) (collecting cases). The TAC alleges that Braun is domiciled in Illinois. TAC, ¶¶ 2-3.

7

summary judgment to a defendant where inaccuracies in an allegedly defamatory statement were only "inoffensive details of secondary importance."); *see also Coghlan v. Beck*, 984 N.E.2d 132, 146 (Ill. App. Ct. 2013) ("allegedly defamatory material is not actionable even where it is not technically accurate in every detail").

Day argues that the ARDC Statement was substantially true because Braun does not contest (and indeed pleads) that the ARDC *did* receive multiple complaints about her. But Day went further than simply stating that complaints were made. Day also said that the ARDC itself confirmed that the complaints were "CREDIBLE." TAC ¶ 136 (emphasis in original). Day attempts to elide this distinction by arguing that that whether or not the complaints were credible does not get at "the hurtfulness of the utterance" and is thus immaterial. [87] at 3 (citing *Vachet*, 816 F.2d at 316). The Court cannot say that no reasonable jury would disagree with that assessment. Indeed, Day's claim that the complaints were credible may well be the most damaging part of the statement. Day's substantial truth argument thus fails.

Day's qualified privilege argument fares no better. A qualified privilege "is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Dent v. Constellation NewEnergy, Inc.*, 202 N.E.3d 248 (Ill. 2022), *reh'g denied* (Sept. 26, 2022) (citing *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E. 2d 129 (Ill. 1993)). The privilege exists as a matter of law "where the following elements are present: (1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper

8

occasion; and (5) publication in a proper manner and to proper parties only." *Kuwik*, 619 N.E.2d at 133.

Day contends that the ARDC Statement "relate[s] to [her] own and [her] viewers' interest in protecting their freedom of speech as social media content creators and not being subject to intimidating litigation tactics by Braun on behalf of her clients, as well as the public interest in protective free speech on social media." [81] at 11. Even assuming that is true, Day does not address the remaining elements necessary to find that her statement was privileged. For example, it is challenging to imagine how the ARDC Statement, which was published indiscriminately on social media and contained factually false claims, could be said to have been made for a limited purpose, on a proper occasion, and "in a proper manner and to the proper parties only." *Kuwik*, 619 N.E.2d at 133. Accordingly, Count I survives dismissal.

## II.    Count II – Braun's Defamation Per Se Claim Against Marston

Braun alleges that Marston defamed her in the Perjury Tweet, wherein Marston said:

> I gotta say... one of our biggest questions in all of this, is do we think demps knows that her embarrassing [sic] excuse for a lawyer is using her name while actively committing perjury? Someone might wanna tell her.

TAC ¶¶ 118-19. In Illinois, words imputing that a person has committed a crime are *per se* defamatory. *Harrison v. Addington*, 955 N.E.2d 700, 706 (Ill. App. Ct. 2011). Like Day, Marston argues that Count II should be dismissed because the Perjury Tweet is substantially true and because it was privileged.

Marston argues that the Perjury Tweet is substantially true because (1) Braun submitted a DMCA complaint to YouTube, claiming that in Episode 97 of Marston's podcast, Marston used Braun's copyrighted material, (2) YouTube and the Copyright Claims Board ("CCB") reviewed and rejected her claim, (3) Braun made the DMCA complaint under penalty of perjury, and (4) Marston was referring to Braun's failed DMCA complaint when she tweeted that Braun was "actively committing perjury." [81] at 9-10.[5]

The CCB findings certainly indicate that Braun's DMCA complaint lacked rigor, to put it delicately. *See* [81-2] (finding that Braun's DMCA arguments were "meritless," "strange," "preposterous," and "did not hold water"). But the CCB did *not* find that Braun was at any point "actively committing perjury," as Marston claimed in her tweet. Further, and despite Marston's contentions otherwise, it is not clear to the Court that Marston *was* referring to the DMCA complaint referenced in the CCB findings when she accused Braun of committing perjury. Braun published the Perjury Tweet on December 10, 2023. TAC ¶ 119. But the CCB findings that Marston relies on refer to a DMCA complaint filed on December 11, 2023, a day *after* Marston published the Perjury Tweet. [81-2] at 28. To hold that the Perjury Tweet was

---

[5] In making this argument, Marston relies extensively on documents—including the DMCA Takedown Notice [81-2] Ex. A, the CCB Final Determination [81-2] Ex. C, and the CCB Order on Request for Reconsideration, [81-2] Ex. D—that are not contained in the TAC or any prior pleading, urging the Court to take judicial notice of each. Braun does not respond to the request for judicial notice or the substance of the relevant documents. In any event, the Court finds that judicial notice is proper here. *See, e.g., Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (judicial notice proper where proceedings in other tribunals bear directly on issues before the court); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

10

substantially true at the pleadings stage, it must be that no reasonable jury could find otherwise. Marston has not met her burden at this early stage of the litigation.

And Marston's argument that the Perjury Tweet is privileged fails for the same reason that Day's failed. Even assuming Marston identified a valid public interest, Marston fails to argue that the Perjury Tweet was made for a limited purpose, on a proper occasion, and "in a proper manner and to the proper parties only." *Kuwik*, 619 N.E.2d at 133. Accordingly, Count II also survives dismissal.

### III. Counts III-VI – Braun's False Light and Trade Libel Claims Against Day and Marston

Day and Marston's sole argument in favor of dismissing the false light and trade libel claims against them is that these counts fail because the underlying defamation claim fails. [81] at 13 (citing *Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation per se claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well."). But because the Court has held that the underlying defamation claims against Day and Marston survive dismissal, each claim for false light and trade libel survives as well.

### IV. Count IX – Braun's Tortious Interference with Existing and Potential Business Relationships Claim against Day and Marston

To state a claim for tortious interference with business relationships under Illinois law, a plaintiff must plead "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference." *Chicago's*

11

*Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 993 (Ill. App. Ct. 2008). A plaintiff must also identify the specific third party with whose relationship the defendants interfered. *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005). The tort "requires some conduct 'directed toward a third party through which defendants purposely cause that third party not to enter into or continue' a relationship with the plaintiff." *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 949 (N.D. Ill. 2008) (citing *McIntosh v. Magna Systems, Inc.*, 539 F. Supp. 1185 (N.D. Ill. 1982).

The Court previously dismissed Braun's tortious interference claims against Day and Marston because Braun failed to identify any specific relationships with which either Defendant allegedly interfered. The TAC remedies that problem, identifying three clients—Ms. Dempsy, Ms. DeFord, and Monsters and Martians—who stopped working with Braun "as a proximate cause of Defendants' smear campaign." TAC ¶¶ 131-32, 207-08.

But as just explained, Braun must also allege that Defendants directed "some conduct toward [the] third party" that caused the third party to choose not to enter or continue a business relationship with her. *Hackman*, 557 F. Supp. 2d at 949. Here, the TAC falls short, alleging only conclusively and vaguely that she lost clients as a result of the *general controversy* surrounding her. *E.g.*, TAC ¶ 131 (alleging she lost clients because of Defendants' "false and defamatory statements"); ¶ 132 (alleging that clients "chose to terminate Ms. Braun's representation because of the online scrutiny caused by" Defendants); ¶ 207 (alleging lost clients because of the "smear

12

campaign"); ¶ 208 (same); 210 (alleging false statements caused her to receive 1 star google reviews). Because these allegations only describe conduct *directed at Braun*, rather than a third party, they are insufficient to state a claim. *McIntosh v. Magna Sys., Inc.*, 539 F. Supp. 1185, 1193 (N.D. Ill. 1982) (applying Illinois law and dismissing tortious interference claim where the plaintiff, not a third party, was the subject of allegedly tortious conduct).

The TAC does allege *some* conduct directed towards third parties, but it is too vague and conclusory to state a claim. For example, the TAC alleges that Day "made unsolicited communications to Ms. Braun's client in attempts to obtain disparaging information." TAC ¶ 82. But the TAC does not allege who this client was or whether that client ended their business relationship with Braun as a result of defendants' conduct. The TAC also alleges that Day and Marston made statements that "included specific references to" Deford and Dempsey. TAC ¶ 205. But the TAC nowhere alleges that Deford and Dempsey ended their relationship with Braun *because of those statements*. Rather, as noted above, the TAC alleges that Deford and Dempsey ended their relationship with Braun because of the controversy surrounding Braun. The TAC further contains some allegations indicating her clients were harassed by Defendants' "followers." But absent some indication that those followers were acting at Defendants' direction or under their control, or indeed *any* allegations about what kind of harassment they endured or what the followers' intent in harassing them was, such vague statements are insufficient to state a claim. Accordingly, Count IX is dismissed.

13

## V. Conclusion

Defendant Day's and Marston's motion to dismiss [81] are granted in part and denied in part. Counts I-VI survive dismissal; Count IX is dismissed. Defendant Carter's motion to dismiss [82] is denied without prejudice as moot. Counts VII and VIII were previously dismissed. Defendant Carter is dismissed from this litigation.

E N T E R:

Dated: March 13, 2026

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge