**EXHIBIT A**

| | |
|---|---|
| **From:** | Jeanette M. Braun |
| **To:** | Brandon Witkow |
| **Cc:** | adoig@cozen.com; Cory Baskin |
| **Subject:** | Re: Braun v Day: Plaintiff Second Supplemental ROGS |
| **Date:** | Tuesday, April 14, 2026 1:54:52 PM |
| **Attachments:** | Supposed to be JOINT Status Report (4.15.26).docx |

Counselors,

Attached is my revised Joint Status Report in redline. If you revise it in any way, you do not have authority yet to add my signature. Please send me revisions to review and approve or dispute prior to filing.

Regards,
Jeanette

On Mon, Apr 13, 2026 at 7:56 PM Jeanette M. Braun <jmbraun@brauniplaw.com> wrote:
Mr. Witkow,

Your last email reflected a tone that is not considered appropriate under the IRPC. I am willing to treat this as a one time lapse, but I expect all future communications to remain civil and professional. Because you are now practicing in Illinois, I encourage you to review the following resource regarding professionalism and civility: https://www.2civility.org/civility/.

Best,
Jeanette

On Mon, Apr 13, 2026 at 7:52 PM Brandon Witkow <bw@witkowlaw.com> wrote:

Im not wasting time on this. If you do not timely provide me your insert to the joint report, I will file as is.

**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700

Woodland Hills I California I 91364

818.296.9508 office I 818.296.9510 facsimile

bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

---

**From:** Jeanette M. Braun <jmbraun@brauniplaw.com>
**Sent:** Monday, April 13, 2026 4:50 PM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** adoig@cozen.com; Cory Baskin <Cb@witkowlaw.com>
**Subject:** Re: Braun v Day: Plaintiff Second Supplemental ROGS

Respectfully, no.  The language is clear: Parties (in the plural). Judge Rowland would have said Defendants if that is who she meant.

On Mon, Apr 13, 2026 at 7:47 PM Brandon Witkow <bw@witkowlaw.com> wrote:

> That refers to Defendants' motion to compel which was filed before the discovery cutoff.
>
>
> **Brandon J. Witkow**
>
> _____
>
>
> witkow | baskin
>
>
> 21031 Ventura Boulevard I Suite 700
>
> Woodland Hills I California I 91364
>
> 818.296.9508 office I 818.296.9510 facsimile

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JEANETTE BRAUN, & BRAUN IP LAW, LLC & ~~LAUREN PROPSON,~~ | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | Hon. J. Mary Rowland |
| REBEKAH M. DAY NEE BOXX, & ~~KRISTA CARTER,~~ ~~LILY MARSTON, &~~ ~~JESSICA VAZQUEZ,~~ | ) ) ) ) | Mag. J. M. David Weisman |
| Defendants. | ) ) | |

## JOINT STATUS REPORT

Pursuant to this Court's March 10, 2026 Order [Dkt. # 117], Defendants Rebekah M. Day and Lily Marston (together, the "Defendants") and Plaintiffs Jeanette Braun and Braun IP Law, LLC (together, "Braun") hereby submit the following joint report on the status of: (1) Braun's counsel following withdrawal of Benjamin Lockyer as counsel for Braun, and (2) the parties' discovery discussions.

**I.** **STATUS OF ~~DISCOVERY DISCUSSIONS~~COUNSEL APPEARANCE FOR PLAINTIFFS.**

Following Mr. Lockyer's withdrawal, Jeanette Braun ~~appears to~~ will be representing Plaintiffs in this action ~~but no notice of appearance~~ and her appearance will be filed once she is granted access to ECF. Braun anticipates having her appearance on file on April 15, 2026. ~~has been filed~~.

Plaintiffs report that they have encountered substantial difficulty in securing replacement counsel, and that the obstacle has been the ongoing disparagement and interference by Ian Runkle, owner of the Runkle of the Bailey YouTube channel. The following information is necessary to

1

address and dispel public speculation concerning why Plaintiffs have not yet retained substitute counsel, and to make clear that Plaintiffs' claims are not frivolous, meritless, or otherwise subject to the pejorative descriptions Ian Runkle has used publicly, including "diaper fire" and "tire fire." The Court's March 13, 2026, Order demonstrates that Plaintiffs' claims were sufficiently supported to proceed to the next phase of the litigation. Plaintiffs include this information in an effort to counter the misinformation and mischaracterizations that Plaintiffs contend Defendants and Runkle have propagated concerning both the facts underlying this case and the procedural history to date.

Mr. Runkle is a Canadian firearms and criminal defense lawyer, barred in Edmonton, Canada, who has a monetized YouTube channel where he sensationalizes court cases and is paid per view of his videos. Braun has a pending petition for a no-contact stalking order against Runkle in the Circuit Court of Cook County, 25OP74761, which survived his last Motion to Dismiss pursuant to 735 ILCS 5/2-615 and 5/2-619. Plaintiffs believe this is the individual referenced by the Court during the April 17, 2024, hearing, when the Court stated: "…and I would say disparaging the plaintiffs' case and telling me I should seek the advice of MadCatster, the YouTube lawyer, who I believe is a lawyer from Canada." "Madcatster" appears to refer to Michael P. Marsille, Esq., an attorney with The Flynn Law Group in Boston, Massachusetts, who operates a YouTube channel under "Madcatster" and produces similar content to Mr. Runkle.

Publicly available information indicates that Mr. Runkle and Mr. Marsille are professionally acquainted and may be associated with a broader informal network of attorneys who produce videos in the same vein as Mr. Runkle and Mr. Marsille, sometimes referred to as "LawTube." Members of this network appear to interact or collaborate in connection with their online activities.

Plaintiffs further state that Mr. Runkle has not limited his conduct to disparaging Plaintiffs, but has also publicly disparaged attorneys who have represented Braun, including Ben Lockyer, and has then publicized those matters online in a manner that would reasonably deter other attorneys

2

**Formatted:** Indent: Left: 0"

from undertaking representation.

For example, on March 10, 2026, Mr. Runkle posted a YouTube video with the thumbnail title, "Everyone is fleeing Braun's Sinking Ship." In that video, while reviewing Mr. Lockyer's Motion to Withdraw, Runkle stated at approximately 5:30, "I have criticized [Ben] in the past but it appears there are better decisions being made." Plaintiffs understand that statement, and the video as a whole, to characterize counsel's withdrawal as a positive development and to portray representation of Plaintiffs as harmful to an attorney's professional interests. Runkle also suggested, in substance, that Braun was harming her own reputation by bringing disputes to civil court rather than litigating them in what he referred to as "social media court."[1]

Mr. Runkle has continued this pattern of disparagement outside YouTube as well. For instance, on February 4, 2026, Runkle posted on X: "...my assessment of Benji is that he really sucks at lawyering...." Plaintiffs state that such public attacks on counsel make it understandable why other attorneys may be reluctant to appear in this matter. Plaintiffs believe few attorneys would want to risk becoming the subject of Runkle's videos, online disparagement, or contact with their clients, current or former, as has already occurred with respect to Plaintiffs' own clients. Plaintiffs further state that Mr. Runkle has contacted Braun's clients through a Facebook profile that would cause reasonable concern to anyone receiving such contact. Mr. Runkle's Facebook profile, found at https://www.facebook.com/ian.runkle, features a banner image showing him laying on a hay bale with a long rifle, and a profile image in which his face is painted white with black around his eyes and mouth, like a skeleton, which is a disturbing image, particularly when seen in tandem with the gun image. Plaintiffs state that conduct of that nature would reasonably give pause to attorneys

---

[1] "Social media court" refers to the phenomenon in which disputes are adjudicated or evaluated on their perceived merits by many non-participants/members of the public on platforms such as YouTube, X (formerly Twitter), and similar media, often outside the evidentiary record and without the procedural safeguards governing judicial proceedings. In some instances, participants or audiences may seek to impose consequences or "punishments," carried out by unidentified individuals through various means. The term is used to distinguish such activity from adjudication by a court of law.

3

**Formatted:** Indent: Left: 0"

considering whether to represent her in this matter.

Plaintiffs further state that documents produced by Defendants in discovery reflect that Defendants have had a relationship with Mr. Runkle since at least December 2023. Braun is presently reviewing and organizing those materials. Plaintiffs also note that the production was not fully Bates-stamped and did not consistently identify the dates and times on which certain materials, including voice messages and text messages, were created, sent, received, or otherwise transmitted, which has made review more burdensome.

Plaintiffs state their inability, to date, to secure substitute counsel is not due to any lack of diligence, nor is it because this case lacks merit. Rather, the difficulty has resulted, at least in substantial part, from what appears to be ongoing litigation interference and public disparagement directed not only at Plaintiffs, but also at attorneys associated with them. Plaintiffs remain actively engaged in trying to secure counsel and are hopeful they will be able to do so soon.

## II. STATUS OF DISCOVERY DISCUSSIONS.

### A. Interrogatories and Document Requests.

As indicated in the Joint Motion for Extension of Time, on February 9, 2026, February 25, 2026, and again on March 3, 2026, the Parties engaged in a lengthy meet and confer via Zoom regarding the ~~continued issues~~ dispute between the Parties with Braun's responses to the interrogatories, document productions and privilege log at issue in Defendants' pending Motions to Compel. During those meet and confer efforts, conducted by Brandon J. Witkow on behalf of Defendants' and Mr. Lockyer on behalf of Plaintiffs. ~~Braun, many of the requests at issue concerned Braun's failure to identify the clients with whom Braun claimed their relationship was disrupted as a result of Defendants' alleged conduct, which allegation was the basis for her damages (i.e. lost client revenue).~~ As agreed d~~D~~uring the meet and confer process, ~~Braun's counsel indicated that Plaintiffs' allegation that Braun lost work from numerous clients is~~Plaintiffs have limited to only

4

three clients: Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians ("Identified Clients"). ~~Braun~~ Plaintiffs have also ~~further represented that they are no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendants' alleged conduct. Moreover, Plaintiffs represented that they are no longer seeking any damages in this action based on lost clients or lost client revenue. Rather, the only~~ followed through with modifying their damages claims to ~~now claimed by Plaintiffs in this action are~~: (1) the cost of repairing ~~Braun's~~ Plaintiffs' professional reputation online, and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

On April 6, 2026, Braun did serve Second Supplemental Responses to Defendant Day's First Set of Interrogatories and Defendant Marston's First Set of Interrogatories ("April 6, 2026 Supplemental Interrogatory Responses"), which do include statements that Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendants' alleged conduct. Moreover, the April 6, 2026, Supplemental Interrogatory Responses also included a statement that Braun is no longer seeking any damages in this action based on lost clients or lost client revenue. Rather, the only damages now claimed by Braun in this action are: (1) the cost of repairing Braun's professional reputation online, and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

Given Braun's newly taken position that she is no longer seeking any damages based on lost clients or lost client revenue, and given this Court's dismissal of Count IX of the Third Amended Complaint by Braun against Day and Marston for tortious interference with existing and potential business relationships [Dkt. # 118], discovery regarding the alleged work Braun lost from the three Identified Clients is now moot.

Given that Krista Carter has been dismissed from the case, her discovery requests have also been rendered moot and no dispute remains.

5

Nevertheless, in her April 6, 2026 Supplemental Responses, Braun continues to details alleged interference by Defendants with Braun's client relationships, not only with the three Identified Clients, but with other named and unnamed clients, and the ambiguity of the responses leave open the possibility that Braun may nonetheless claim damages for lost clients/lost revenue for her remaining defamation, false light and trade libel claims.

For example, in Braun's April 6, 2026 Supplemental Responses, Braun modified her response to Day's Interrogatory No. 6, which requested that Braun identify "in detail all 'detrimental effects on Ms. Braun, her former clients, her practice, and emotional distress and harm," as alleged in Paragraph 81 of the TAC.'" In the April 6, 2026 version of the responses, Braun responded, in relevant part, as follows:

> "Ms. Braun has experienced substantial and ongoing reputational harm, professional disruption, and emotional distress as a result of Defendant's conduct and the public amplification of their statements . . . Several clients and prospective clients have expressed fear or hesitation to continue or initiate engagements with Ms. Braun due to concerns about becoming targets of Defendants' internet followers . . . Ms. Braun has also lost clients and professional opportunities due to the negative publicity generated by Defendants' conduct and the ongoing attention surrounding this case."

There is no statement in this response that Braun does not seek damages for lost clients/lost revenue, rendering the response ambiguous as to whether Braun does in fact intend to seek such damages for her remaining claims. However, in response to Marston's Interrogatory No. 20, which seeks that Braun identify "all facts" supporting their "claim for damages," Braun responds that they are "no longer seeking any damages based on lost clients or lost client revenue"; rather, the only damages claimed are "(1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct."

Furthermore, Defendants have been materially prejudiced by Braun's eleventh-hour decision—after the close of discovery—to recast her damages as limited to (1) the cost of repairing her professional reputation online and (2) alleged emotional distress arising from Defendants'

**Commented [JB1]:** If this is causing you pause, why didn't you say so by email? I didn't notice it was still there. No need to burden the court with this. I'll remove it.

6

purportedly defamatory conduct. This newly asserted theory is not only untimely, but fundamentally inconsistent with the operative Third Amended Complaint, which contains no supporting factual allegations for such damages beyond conclusory references to emotional harm. By advancing a damages theory that was neither pleaded nor explored during discovery, Braun deprives Defendants of a fair opportunity to test and rebut these claims, resulting in clear and substantial prejudice.

Thus, Defendants request that the Court permit them to serve no more than fifteen (15) interrogatories, fifteen (15) requests for admission, and fifteen (15) document requests to: (1) confirm that Braun does not seek lost clients/lost revenue damages for her remaining claims, and (2) ascertain the basis for newly limited damages claims for "reputational harm" and "emotional distress."[2]

Aside from the need for targeted discovery regarding Braun's new damages claim, the only remaining issue with respect to Braun's interrogatory responses is Braun's refusal to provide any response Defendant Krista Carter's Interrogatory No. 12, which seeks an identification of all facts supporting the denial of any Request for Admission. This is an entirely appropriate interrogatory, but Braun continues to refuse to respond to it.

**Commented [JB2]:** Carter was dismissed from the litigation. Moot.

As to any remaining issues with the document requests served by Defendants on Braun, during the Parties' meet and confer discussions, Mr. Lockyer represented on behalf of Braun that Braun would supplement her responses to Marston RFP Nos. 8 and 39 and Day RFP Nos. 22 and 23. The parties exchanged proposed drafts of supplemental responses to these RFPs. To date, Braun has not served any further supplemental RFP responses, despite Mr. Lockyer's representations, because they are moot by the revised damages theory. The undersigned counsel emailed Ms. Braun on April 11, 2026, requesting whether such supplemental responses would be served, but and Braun has not

---

[2] Such discovery will be focused on: (a) the precise type of "reputational harm" allegedly suffered, the identities of the online or other vendors Ms. Braun engaged to repair her reputational harm, the costs associated with these efforts etc.; and (b) the nature, extent, and duration of the distress, therapy, counseling and psychiatric care, the identities of physicians who saw Braun, medication, hospital/institutional visits related to the distress, alternative stressors or preexisting conditions etc.

~~responded to this inquiry~~requested information from each of Defendants' counsel to explain how and why they are still relevant based on the Court's March 13, 2026, Order, and revised damages claims. Plaintiffs have not received a response from any of Defendants' counsel to this inquiry.

**B.** **Privilege Log.**

The final remaining discovery issue is Defendants insisting that Braun~~'s~~ fail~~ed~~~~ure~~ to serve an adequate privilege log. Plaintiffs have maintained their objections that the information sought is overbroad, not relevant, etc., and the Defendants are overreaching with their requests. The information sought needs to be narrowed by the Defendants to comply with the Federal Rules of Civil Procedure and the needs for the case. Further, Plaintiffs are under the belief that this Court has held the privilege log was adequate during the January 13, 2026, hearing.  If Plaintiffs have misunderstood, the information sought by Defendants would need judicial review to determine whether the requests are proper or if Defendants are a fishing expedition and have overstepped their bounds.   ~~To date, the only privilege log served by Braun contains three columns: one that lists the name of the person who sent the document, one that lists the name of the person who received the document, and a third column that simply states: "attorney client". There is no indication of what the document is, what it concerns, how long it is, or why it constitutes "attorney client privilege." Defendants have communicated to Braun in both their motion to compel and in the meet and confer discussions that this barebones log does not comply with the expectations of courts in this District, yet to date, Braun has failed to supplement the log in any way. *Schmalz v. Vill. N. Riverside*, 2018 U.S. Dist. LEXIS 19623, at \*7 (N.D. Ill. Feb. 7, 2018) ("the party asserting the privilege must produce a privilege log 'that identifies for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is~~

8

~~privileged");~~ *~~Muro v. Target Corp~~*~~., 2006 U.S. Dist. LEXIS 86030, at \*6 (N.D.Ill. Nov. 28,~~ ~~2006) (same). As with the supplemental document requests discussed above, Ms. Braun has~~ ~~failed to respond to counsel's inquiry regarding whether a compliant privilege log will be~~ ~~served.~~

April 15, 2026

Respectfully submitted,

s/_____
Attorney for Plaintiffs

Jeanette M. Braun [pro hac vice]
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
(312) 373-0330
docket@brauniplaw.com

*Attorneys for Plaintiffs*

s/Brandon J. Witkow_____
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
Cory A. Baskin
WITKOW|BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*Attorneys for Defendants*

9

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Jeanette M. Braun
Braun IP Law, LLC
1600 W. Lake Street
Suite 103B
Addison, IL 60101
jmbraun@brauniplaw.comdocket@brauniplaw.com

10

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

Brandon J. Witkow
Cory A. Baskin
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com
cb@witkowlaw.com

Dated: April 15, 2026              /s/ Brandon J. Witkow_____

11