**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNETE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) | |
| | ) | |
| REBEKAH M. DAY NEE BOX, KRISTA CARTER & LILY MARSTON | ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BRANDON J. WITKOW & EXHIBITS IN SUPPORT OF
DEFENDANTS REBEKAH M. DAY AND LILY MARSTON'S REVISED MOTION
COMPEL REGARDING INTERROGATORY AND REQUEST FOR PRODUCTION
RESPONSES THAT REMAIN AT ISSUE AND A FULL AND COMPLETE
<u>PRIVILEGE LOG FROM PLAINTIFFS BRAUN</u>**

I, Brandon J. Witkow, hereby declare as follows:

1. I am counsel of record for Defendants Rebekah M. Day ("Day") and Lily Marston ("Marston") (collectively, "Defendants") in the above-captioned action. I make this declaration in support of Defendants' Revised Motion to Compel Regarding Interrogatory and Request for Production Responses That Remain at Issue and a Full and Complete Privilege Log from Plaintiff Jeanette Braun and Braun IP Law, LLC. I have personal knowledge of the facts set forth herein and can testify competently to them.

2. On or about November 17, 2025, Defendants, along with recently-dismissed Defendant Krista Carter ("Carter"), filed: (1) a Motion to Compel Full and Complete Responses to Requests for Production of Documents and Further Document Production from Braun and recently-dismissed Plaintiff Lauren Propson ("Propson"), and (2) a Motion to Compel Full and Complete Responses to Interrogatories from Braun and Propson (collectively, "Motions to Compel"). The Court ordered the parties to meet and confer further regarding the issues raised in

the Motions to Compel, which the parties did on February 9, 2026, February 25, 2026, and again on March 3, 2026. I participated in those meet and confer discussions on behalf of Defendants. During those discussions, counsel for Braun at the time, Benjamin Lockyer, represented that Braun is no longer seeking any damages in this action based on lost clients or lost client revenue. Rather, the only damages now claimed by Braun are: (1) the cost of repairing Braun's professional reputation online, and (2) emotional harm resulting from Defendants' alleged defamatory conduct. During the meet and confer discussions, Mr. Lockyer requested that Defendants propose revised language for Braun's interrogatory and document request responses that was consistent with Braun's new damages theory, and Defendants provided this draft by email on February 26, 2026. On March 5, 2026, Braun's counsel provided Defendants' counsel with Braun's "requested edits to [Defendants'] recommended responses." (*Id.*) The language proposed by Braun included supplemental responses to Defendant Marston's RFP Nos. 8 and 39, and Day RFP Nos. 22 and 23. Attached hereto as **Exhibit A** is a true and correct copy of an email thread between myself and Mr. Lockyer that contains my email to Mr. Lockyer dated February 26, 2026, as well as Mr. Lockyer's response dated March 5, 2026, and the attachment to Mr. Lockyer's March 5, 2026 response.

3. On April 6, 2026, Braun served Second Supplemental Responses to Day's Interrogatories and Second Supplemental Responses to Marston's Interrogatories. True and correct copies of Braun's Second Supplemental Responses to Day's Interrogatories and Second Supplemental Responses to Marston's Interrogatories are attached hereto as **Exhibit B.** Braun did not file any supplemental responses to either Day or Marston's RFPs, despite Mr. Lockyer's representations to the contrary during the meet and confer process that Braun would supplement certain RFPs, i.e., Marston RFP Nos. 8 and 39 and Day RFP Nos. 22 and 23.

4. During the meet and confer process, Defendants and Braun failed to reach an agreement as to Defendant Krista Carter's Interrogatory No. 12 (seeking all facts on which Braun denies any Requests for Admission), as Braun refuses to provide any substantive response and has indicated that they will be standing on their objections to this interrogatory. Namely, Braun's second supplemental response to Interrogatory No. 12 states: "Subject to and without waiving objections, will not produce any information in response to this request. Many of the documents produced by Defendants, which number in the thousands, contain the information sought and Plaintiffs are still reviewing those documents." A true and correct copy of Braun's Second Supplemental Responses to Carter's Interrogatories is attached hereto as **Exhibit C.** During the meet and confer process and in a Status Report filed with this Court, Braun communicated that they believe this interrogatory is now moot or "no longer at issue" because the Court dismissed claims against Carter after the filing of the Motions to Compel.

5. Attached hereto as **Exhibit D** is a true and correct copy of the privilege log served by Braun in this action.

6. ]**L.R. 37.2 Statement:** The parties have met and conferred regarding these issues on numerous occasions prior to and after the filing of Defendants' original Motions to Compel, including meet and conferring by videoconference on February 9, 2026, February 25, 2026, and again on March 3, 2026. The parties also met and conferred on these issues prior to the filing Status Reports regarding remaining discovery issues on April 15, 2026, in which Braun indicated her unwillingness to supplement these responses and/or provide a more detailed privilege log. Pursuant to the Court's March 10, 2026 Order, if the parties were unable to reach a resolution of any issues raised in Defendants' original Motions to Compel, "Defendants may bring a revised motion to compel if necessary", and the parties were to file and motions to compel by April 22, 2026 that

"details the outstanding discovery that remains in dispute following the meet and confer process." In accordance with this Order, Defendants' Motion details the outstanding discovery that remains in dispute following a lengthy meet and confer process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed in Los Angeles, California on April 22, 2026.


_____
Brandon J. Witkow

**Exhibit A**

**Brandon Witkow**

| | |
|---|---|
| **From:** | Ben Lockyer <ben@lockyerlaw.com> |
| **Sent:** | Thursday, March 5, 2026 1:00 PM |
| **To:** | Brandon Witkow |
| **Cc:** | David Turnell; Jakub Barrera; Brandon Witkow |
| **Subject:** | Re: Meet and Confer - Revised List By Category |
| **Attachments:** | ROGS THAT RELATE TO ALLEGED LOST CLIENTS.docx |

Brandon,

I am writing to follow up on the discovery responses. I am attaching Ms. Braun's requested edits to your recommended responses. In light of the fact that I will be filing my motion to withdraw today, Ms. Braun has requested that her changes in red be a part of her response.

From my review, I believe that this narrows the list down to the issues related to attorney client privilege and ARDC confidentiality. I am working on a draft of the joint status report that will outline each issue below.

We will follow up shortly with a draft of the joint status report.

Thank you,

Ben

**Benjamin C.R. Lockyer** | PRINCIPAL



6515 W. Archer Ave. | Chicago, IL 60638 | Direct: (773) 340-0011 | lockyerlaw.com

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.

1

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Wednesday, March 4, 2026 at 5:01 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** David Turnell <david@lockyerlaw.com>, Jakub Barrera <jakub@lockyerlaw.com>, Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Meet and Confer - Revised List By Category

Ben:

Im following up on this again.   In our call yesterday, you advised that you would have your position on the proposed responses and/or any edits to those responses by noon PST today.   As a reminder, we have our status report due tomorrow and you are not leaving me much time to consider your proposed amended responses before we have to prepare our report.

-Brandon


**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Sent:** Thursday, February 26, 2026 8:46 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** David Turnell <david@lockyerlaw.com>; Jakub Barrera <jakub@lockyerlaw.com>; Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Meet and Confer - Revised List By Category

Ben:

As discussed during our Zoom meet and confer, Plaintiffs Braun/Braun IP Law ("Braun") are now limiting their claims to allege the loss of only three specific clients : (1) Kaitlynn Dempsey, (2) Alyssa DeFord, and (3) Monsters & Martians ("Identified Clients"). Thus, Braun is now limiting her claim to exclude any allegations that they lost clients or that Defendants interfered with their relationships or prospective relationships with any other unidentified clients outside of the three Identified Clients  ("Unidentified Clients"). As for Braun's damages claim, you represented during our meet and confer that Braun is not claiming any *damages* for the alleged loss of, or interference with, either the Identified Clients or the Unidentified Clients. As I mentioned during the meet and confer, the proposed supplemental discovery responses Braun served regarding lost clients/work does not reflect this position. Thus, you asked that I propose revised language for these interrogatory responses that are consistent with the position you have laid out during our meet and confer. That **PROPOSED** language is below for your consideration.

2

Separately, we did not discuss in our meet and confer the issues raised in category #8 of my 2.6.26 email below (Propson's RFPs relating to damages/lost profits and interference claims) as you stated that Ms. Propson was no longer is interested in being a part of this lawsuit and intends to dismiss her pending claims. You stated that you would send me an email confirming the dismissal. I have not yet received that email so please do send it over. Otherwise, the issues for category #8 still remain pending and must be addressed in our meet and confer Tuesday if you do not intend to dismiss her claims.

**ROGS THAT RELATE TO ALLEGED LOST CLIENTS/PROFITS AS A RESULT OF STATEMENTS BY DAY AND MARSTON:**

***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 21 (IDENTIFY the "professional relationships with clients" disrupted as alleged in Paragraph 201 of the TAC):***

Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical obligations. Subject to these limitations, Plaintiffs previously identified certain clients whose professional relationships were disrupted as a result of Defendants' conduct: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted professional relationships with clients is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients was disrupted as a result of Defendant's conduct.

***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 25 (IDENTIFY the "clients [that] end[ed] their use of Braun Law for legal services out of fear of harassment," as alleged in Paragraph 210 of the TAC):***

Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical obligations. Subject to these limitations, Plaintiffs previously identified certain clients who ended their use of Braun Law for legal services out of fear of harassment: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that clients ended their use of Braun Law for legal services out of fear or harassment is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct.

***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 5 (IDENTIFY each client that YOU contend was lost as a result of the conduct YOU allege against MARSTON in the TAC):***

Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost clients as a result of Marston's conduct is limited to only these three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct.

*PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 21* (IDENTIFY all facts supporting YOUR claim that existing and prospective clients were deterred from hiring Braun, as alleged in Paragraph 188 of the TAC):

Following Defendants' public statements and coordinated online activity, Defendants' YouTube videos, Reddit posts, and social media content on platforms including X and TikTok began appearing prominently in internet search results for "Jeanette Braun," "Braun IP Law," and related terms. These results included videos and posts repeating Defendants' allegations and commentary concerning Plaintiff Braun. As a result, when existing and prospective clients searched for Plaintiff Braun or her law firm, Defendants' content appeared as part of the initial search results. Plaintiffs are informed and believe that this widespread online publication materially affected client perceptions and business relationships. Numerous clients expressed concern regarding the visibility of the allegations and the potential reputational consequences of being associated with Plaintiff Braun during the ongoing online controversy. Certain clients discontinued representation or declined to proceed with new engagements after the online campaign escalated. Among the disrupted relationships were Kaitlynn Dempsey and Alyssa DeFord (professionally known as "Bunnie XO"). Ms. DeFord publicly posted that she was leaving Plaintiff Braun. In addition, Defendant Bekah Day directly contacted and emailed Ms. Dempsey and Ms. DeFord concerning their representation by Plaintiff Braun. Plaintiffs are informed and believe that such direct outreach further interfered with and destabilized those professional relationships. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that existing and prospective clients were deterred from hiring Braun is limited to only Alyssa DeFord, Kaitlynn Dempsey and Monsters and Martians ("Identified Clients"), and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct.

**ROGS THAT RELATE TO "WORK THAT WAS LOST" AS A RESULT OF STATEMENTS BY DAY AND MARSTON:**
*PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 22* **(Describe in detail what YOU mean by YOUR clients "distancing" themselves from YOU as a result of the conduct alleged against DAY, as alleged in Paragraph 208 of the TAC)** *and Day's Interrogatory No. 22* **(IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as alleged in Paragraph 207 of the TAC):**

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, Plaintiffs state as follows: The "work" referenced in Paragraph 207 of the Third Amended Complaint includes legal services that Plaintiffs were performing, or reasonably expected to continue performing, for the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Without disclosing privileged communications, confidential client strategy, or proprietary billing information, the categories of work performed for the Identified Clients include:
1.     Trademark prosecution and portfolio management services for Ms. DeFord (professionally known as "Bunnie XO") and Monsters and Martians, including preparation and filing of trademark applications, responding to USPTO office actions, advising on classification strategy, monitoring deadlines, and ongoing brand management counseling.
2.     Copyright prosecution services for Ms. DeFord, including preparation and filing of copyright applications and related advisory services concerning registration strategy and protection of creative works.
3.     Online enforcement and brand protection services for both Ms. DeFord and Ms. Dempsey (professionally known as "Demps"), including monitoring for infringement, issuing takedown demands, coordinating with platforms regarding unauthorized use of intellectual property, and advising on brand-protection strategy.
4.     Contract review and advisory services for Ms. Dempsey, including review of proposed agreements and related legal counseling concerning business and entertainment transactions.
Plaintiffs will produce non-privileged documents sufficient to reflect the existence and general nature of such work, subject to entry of an appropriate protective order.

**RFPs RELATING TO DAMAGES/LOST PROFITS AND INTERFERENCE CLAIMS**:

4

*PROPOSED Revised Supplemental Response to Marston RFP No. 8* **(DOCUMENTS sufficient to identify each of YOUR clients that YOU contend DAY has made "unsolicited communications…in an effort to obtain disparaging information," as alleged in Paragraph 82 of the TAC):**

The first paragraph in the response should be clarified as follows:
Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted or interfered with professional relationships with clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct.

*PROPOSED Revised Supplemental Response to Marston RFP No. 39* **(All DOCUMENTS supporting YOUR allegation in Paragraph 207 of the TAC regarding lost work from clients):**

Plaintiffs maintain and incorporate their prior objections. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted or interfered with professional relationships with clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. Accordingly, documents reflecting lost revenue or profits, client communications, billing records, engagement agreements, or other materials relating to alleged "lost work" are not relevant to Plaintiffs' remaining damages theories and are further protected by the attorney–client privilege, work product doctrine, and applicable professional confidentiality obligations.

[Ben, please note that the following sentence has been removed as these documents reflect alleged lost revenue, which you have made clear that Plaintiffs are no longer basing their damages claim upon: "The documents Plaintiffs presently intend to rely upon in support of their damages claims are limited to those produced in the range of BRAUN 1762–1773"].

*PROPOSED Revised Supplemental Response to Day RFP No. 22* **(All DOCUMENTS supporting YOUR allegation in Paragraph 207 of the TAC that "As a proximate cause of the Defendants' smear campaign and Defendant Day and Defendant Marston's false and defamatory statements, Plaintiff Braun and Braun Law lost work from numerous clients including Ms. DeFord and Ms. Dempsey"):**

Plaintiffs incorporate and maintain all prior objections. Answering further, subject to and without waiving those objections, Plaintiffs state that responsive, non-privileged documents include Defendants' public social media posts, videos, online commentary, and related communications evidencing the campaign referenced in Paragraph 207 of the TAC. By way of example, document BD00706 reflects a public post made by Defendant Bekah Day concerning Plaintiff Braun and her clients. Defendant Day made multiple public statements referencing Plaintiff Braun and, in some instances, referencing or tagging her clients. These posts were publicly accessible and contributed to reputational harm and client disruption. Responsive documents further include communications between Defendant Day and Alyssa DeFord (professionally known as "Bunnie XO"), reflecting direct back-and-forth exchanges regarding Ms. DeFord's representation by Plaintiff Braun. While Ms. DeFord publicly defended herself in response to Defendant Day's commentary, those communications demonstrate that Defendant Day directly engaged Plaintiff Braun's client concerning the representation and repeatedly raised allegations about Plaintiff Braun. Plaintiffs are informed and believe that such direct outreach placed Ms. DeFord in the position of having to address Defendant Day's accusations publicly and contributed to instability in the professional relationship.
Additional responsive documents include communications and publicly available content reflecting Defendant Day's outreach to Kaitlynn Dempsey and other clients, as well as evidence that client relationships were reduced, discontinued, or not renewed following Defendants' online campaign.

5

Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, subject to a protective order where necessary to protect confidential client information. Plaintiffs object to the extent this Interrogatory seeks documents not within their possession or control, including documents held exclusively by third parties. Plaintiffs reserve the right to supplement pursuant to Rule 26(e).

***PROPOSED Revised Supplemental Response to Day RFP No. 23*** **(DOCUMENTS sufficient to identify the "work" that was "lost" from "numerous clients including Ms. DeFord and Ms. Dempsey" as a result of the conduct alleged against DAY, as alleged in Paragraph 207 of the TAC):**

Plaintiffs incorporate and maintain their prior objections, including that this Request is vague, ambiguous, overbroad, and seeks confidential client information protected under Illinois Rule of Professional Conduct 1.6. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Plaintiffs state that the categories of work alleged to have been lost from the three Identified Clients included:
· Trademark prosecution and portfolio management services;
· Copyright prosecution and registration services;
· Online enforcement and brand protection services;
· Contract review and transactional advisory services.

Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. To the extent this Request seeks documents reflecting lost profits or revenue, confidential client communications, billing records, engagement terms, or other information protected under Illinois Rule of Professional Conduct 1.6, Plaintiffs will not produce such materials as Braun is not seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Because Plaintiffs are not seeking damages for lost clients or lost client revenue and because production would require disclosure of protected client confidences, no further responsive documents will be produced. Plaintiffs reserve the right to supplement pursuant to Rule 26(e).

**CONTACT INFO FOR MONSTERS AND MARTIANS:**

Ben, you advised you would provide her contact information (i.e. address/phone etc.)

**FACTS SUPPORTING GENERAL (ANY OTHER) DAMAGES CLAIMS:**

**PROPOSED *Revised Second Supplemental Response to Marston's Interrogatory No. 20* (Identify all facts supporting YOUR claim for damages as alleged in Paragraph 177 of the TAC):**

Answering subject to the objections and without waiving them, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden. "All facts" is objected to. Plaintiffs provide many material facts below. As alleged in the Third Amended Complaint, Defendants engaged in a coordinated campaign of false and disparaging online statements designed to incite an internet mob against Plaintiffs and to interfere with

6

Plaintiffs' law practice, and the foreseeable result has been sustained harassment and reputational harm. Each time Plaintiffs publish a video or written content, anonymous accounts appear and post comments that repeat and regurgitate the same false accusations Defendants made in their social media posts and in updates to their GoFundMe page, demonstrating the ongoing influence and reach of Defendants' statements. The voicemail recordings Defendant produced in discovery further show that Defendant worked with others to coordinate the timing of posts to maximize harm, including intentionally publishing content on holidays when the public is more likely to be home and scrolling social media. Defendants also searched USPTO records to identify Plaintiffs' clients and then harassed or attempted to harass those clients by contacting them directly and by posting stories about them, which has caused Plaintiffs to fear filing new trademark applications or litigation because of the risk that Defendants or their co conspirators will target and harass clients associated with those filings. Plaintiffs are now required to disclose this risk to prospective clients during intake, resulting in lost business when individuals decline representation out of fear of being publicly attacked or damaged by Defendants and their supporters. Plaintiffs have likewise consulted with other attorneys for assistance in various matters, only to have attorneys decline involvement due to fear of being harassed and reputationally damaged. Plaintiffs cannot use a Google Business Profile, which is an industry standard tool, because anonymous and unidentifiable individuals with no legitimate interaction with Plaintiffs have posted false one star reviews as part of the same campaign. Plaintiffs have been forced to sever backlinks to their website that were not placed by Plaintiffs and that link to AI generated articles repeating Defendants' false allegations in order to prevent those articles from appearing in search results associated with Plaintiffs' firm. Plaintiffs have also installed call screening software to address the barrage of hang up and harassing phone calls generated by Defendants' campaign, which wastes firm resources and disrupts daily operations. Plaintiffs have spent countless hours responding to frivolous and meritless ARDC complaints prompted by Defendants' statements, and Plaintiffs cannot meaningfully invest in advertising, publications, or other marketing because such efforts are undermined by the public's continued repetition of Defendants' false claims, requiring Plaintiffs to divert substantial time and resources to mitigating and responding to ongoing digital attacks. Plaintiffs removed the listing of its employees from its website to save them from becoming targets. Plaintiffs have had potential employees or contractors decline positions with the firm because of fear of becoming a target of the campaign. Plaintiffs will have to hire a PR company to repair her reputation once they are able to make online posts without pouring fuel on the fire. When Plaintiffs post on their social media accounts, members of the public regurgitate what Defendant has said and leave an angry face or thumbs down on the post, leaving Plaintiffs to either respond to the comments to correct the narrative, or ignoring the comment. Further, Plaintiffs observed an increase in emails for anonymous people threatening them and in hang up calls, or calls that regurgitate what Defendant has said and the person hangs up after the regurgitation. Plaintiffs anticipate the cost of the PR company to be somewhere around $8,000.00 a month, and the amount of time needed will be over 12 months based on information publicly available. Plaintiffs anticipate needing an expert to discuss this at trial. Notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Moreover, notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

**FACTS SUPPORTING INTERFERENCE CLAIMS:**

***PROPOSED Revised Second Supplemental Response to Marston's Interrogatory No. 25* (Identify the professional relationships disrupted as alleged in Paragraph 201 of the TAC):**

Plaintiffs maintain and incorporate their prior objections. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun's professional relationships were disrupted is limited to only Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians ("Identified Clients"). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Moreover, notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that they are no longer seeking any damages in this action based on

lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. Accordingly, disclosure of additional client identities, client communications, or confidential professional relationships is not relevant to Plaintiffs' remaining damages theories and would implicate attorney–client privilege, work product protections, and professional confidentiality obligations.

## DMCA TAKEDOWN OF MARSTON'S CONTENT (Episode 97):

**Revised Supplemental Response to Marston's Interrogatory Nos. 3-4, Second Supplemental Response to Marston's Interrogatory No. 6**

As discussed during our Zoom meet and confer, it is not permissible for an interrogatory response to refer or rely on other documents such as Copyright Claims Board filings. Defendants are entitled to a full and complete response to these interrogatories that does not incorporate arguments made by Plaintiff to the Copyright Claims Board.  You agreed to either provide a discrete response to this interrogatory, or *identify the specific* Copyright Claims Board filings you intend to incorporate by reference, including by page number/line.

## Marston RFP 4-7 & 9

As discussed, to the extent Braun is withholding documents responsive to these RFPs on the basis of privilege, Braun must include them on a privilege log that complies with the Federal Rules.

## ARDC INVESTIGATIONS/COMPLAINTS AGAINST BRAUN:

We agreed to withdraw this request and instead seek the documents directly from the ARDC via deposition subpoena.

## FACTUAL BASES FOR DENIAL OF RFAs

You stated you would be standing on your current objection/response to this interrogatory, so this remains an issue to be resolved by the Court.

## PRIVILEGE LOG

We did not discuss this in our meet and confer but the current version of your log remains deficient for the reasons previously identified and must be supplemented.   We can further discuss in our call Tuesday whether you will agree to supplement.

**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Sent:** Tuesday, February 24, 2026 12:07 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>; David Turnell <david@lockyerlaw.com>; Jakub Barrera <jakub@lockyerlaw.com>
**Subject:** Re: Meet and Confer - Revised List By Category

Brandon,

Please see the updated responses. I could meet at 11 AM on wednesday morning if you are available.

Below, I have added some quick notes (in red) relating to Plaintiff's general position to the current requests. It is my hope that this streamlines any disputes that we still need to bring to the court.

Thank you,

Ben
**Benjamin C.R. Lockyer** | PRINCIPAL



6515 W. Archer Ave. | Chicago, IL 60638 | Direct: (773) 340-0011 | lockyerlaw.com

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Monday, February 23, 2026 at 1:22 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Meet and Confer - Revised List By Category

Hi Ben, I am generally open in the mornings PST tomorrow and Wednesday if that works for you.   Thursday is much more limited and I am out of the office on Friday.   Is your plan to send me over the draft amended responses in advance of our call so I can review and then we can address and continuing issues in our call?

**Brandon J. Witkow**
_____

witkow | baskin

21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

---

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Sent:** Monday, February 23, 2026 11:04 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Meet and Confer - Revised List By Category

Brandon,

I just gave your office a call. I am writing to follow up on the status of Plaintiff's supplemental responses. I appreciate your patience on this. During the course of working on the responses with my clients, additional time was needed to review evidence and prepare their responses.

I am finalizing the responses and will provide them shortly. If you could provide some times you are available to meet and confer this week, I would like to discuss a few points that my client is concerned about.

Best,

Ben

**Benjamin C.R. Lockyer** | PRINCIPAL



6515 W. Archer Ave. | Chicago, IL 60638 | Direct: (773) 340-0011 | lockyerlaw.com

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.

---

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Friday, February 6, 2026 at 12:18 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Meet and Confer - Revised List By Category
Ben:

For our call, here is a revised list of requests separated by category for ease of reference.

1. **Damages – Lost Profits/Interference.**

**Rogs that relate to lost clients/profits as a result of statements by Day and Marston:**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 21, 25** (IDENTIFY the "professional relationships with clients" disrupted as alleged in Paragraph 201 of the TAC and IDENTIFY the "clients [that] end[ed] their use of Braun Law for legal services out of fear of harassment," as alleged in Paragraph 210 of the TAC.)**:** Braun improperly reserves the right to supplement the response with deposition testimony. Additionally, in hers first supplemental responses to these interrogatories, Plaintiff identified Kaitlynn Dempsey, Alyssa DeFord, Monsters and Martians. *Now, in the second supplemental responses, Braun claims that she is precluded from identifying client names under Rule of Professional Conduct 1.6.* As explained above, the names of clients (especially when already revealed) are not privileged, especially when Plaintiff puts them squarely in issue.

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 5** (IDENTIFY each client that YOU contend was lost as a result of the conduct YOU allege against MARSTON in the TAC): Braun improperly reserved the right to supplement with deposition testimony, and while the first supplemental response identified specific lost clients, the second supplemental response asserted that Braun was prohibited from identifying clients under Rule of Professional Conduct 1.6. Plaintiff's supplementation to take AWAY information is nonsensical and disingenuous. Plaintiff has asserted interference and damages claims based on lost clients/income, and she cannot refuse to identify those clients.

Plaintiff Braun has now expressly limited her damages theory. She is no longer seeking damages for unidentified lost clients or generalized lost profits. The only client relationships identified were Kaitlynn Dempsey, Alyssa DeFord, and Monsters & Martians, and even as to those, Braun is not pursuing an economic lost-revenue theory. Her damages are limited to reputational repair costs and emotional harm. Accordingly, further discovery into unidentified clients or broad client lists is not relevant and is moot.

**Rogs that relate to "work that was lost" as a result of statements by Day and Marston:**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 22** (IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as alleged in Paragraph 207 of the TAC). Braun improperly reserves the right to supplement the response with deposition testimony. Additionally, in her first supplemental response she provided a generic description of "trademark and copyright work," and now in the second supplemental response she is claiming she cannot provide any information pursuant to Rule of Professional Conduct 1.6.

**Braun/Braun IP Law's Supplemental Response to Martson's Interrogatory No. 22 (**IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as a result of the conduct alleged against DAY, as alleged in Paragraph 207 of the TAC): Braun did not supplement her response with a second supplemental response to this interrogatory. Braun's response only lists examples of lost work, and she states that she cannot get consent from other clients to provide their names to Defendants. Client names are not privileged, and Braun does not need consent to comply with her discovery obligations, particularly when she has put lost clients at issue in this case through interference claims and lost profit claims.

Plaintiff already provided categorical descriptions of the types of work allegedly disrupted (trademark prosecution, copyright prosecution, online enforcement, contract review). However, because Braun is not pursuing damages for lost client revenue, the specific economic value of that work is no longer at issue. There is no remaining lost-profit claim requiring serial numbers, registrations, or client file disclosure. To the extent privileged client communications are implicated, they remain protected under IRPC 1.6.

**RFPs relating to damages/lost profits and interference claims:**

11

- Braun's responses to Day RFP Nos. 22-23 and Marston RFP Nos. 8, 31, 32, 39, 41 (documents relating to either Plaintiffs' proof of damages or lost clients)

Plaintiff has clarified that she is not seeking lost-client damages. The only damages documents she intends to rely on are those related to reputational repair and emotional harm. Therefore, discovery into client billing records, engagement letters, or lost revenue calculations is not relevant to any live damages theory. That dispute should now be moot.

2. **Contact Info for Monsters & Martians:**

**Braun/Braun IP Law's Supplemental Response to Martson's** Interrogatory No. 15 (IDENTIFY the contact information for Monsters and Martians): Braun did not supplement this response further and refuses to provide contact information (other than a general, publicly available email address) on the improper grounds that such information is privileged.

Plaintiff provided the business contact email used for communication. She does not possess additional private contact information beyond what has already been disclosed. Because she is not seeking economic damages tied to that relationship, additional personal identifying information is not proportional or necessary. If Defendants seek to subpoena the entity directly, they are free to do so.

3. **Facts supporting GENERAL (any other) damages claims:**

**Braun/Braun IP Law's Second Supplemental Response to Martson's** Interrogatory No. 20 (IDENTIFY all facts supporting YOUR claim for damages as alleged in Paragraph 177 of the TAC): In her second supplemental response, Braun responds with only the following inadequate statement: "Plaintiffs reserve the right to supplement this right with deposition testimony. See the answer to ROG 26 -1 for Day. Paragraph 177 of the TAC refers to Day's conduct causing damage." Braun's reference to deposition testimony, other interrogatory answers, and the TAC is improper for the reasons discussed in Defendant's Motion to Compel. Braun's damages theory is limited to:
(1) reputational harm and costs to repair online reputation; and
(2) emotional distress and related professional disruption.

The factual bases are detailed in prior supplemental responses and supported by Bates ranges already produced (including 000001–001330 and related harassment productions). The anticipated PR mitigation costs (approximately $8,000/month over 12+ months) will be supported by testimony and, if necessary, expert evidence. There is no hidden economic-loss model beyond what has been disclosed.

4. **Facts supporting Interference Claims:**

**Braun/Braun IP Law's Supplemental Response to Martson's** Interrogatory No. 21 – **relates to interference claim** (IDENTIFY all facts supporting YOUR claim that existing and prospective clients were deterred from hiring Braun, as alleged in Paragraph 188 of the TAC): Braun did not supplement her response with a second supplemental response to this interrogatory. While Braun does provide a general narrative response about unidentified clients discontinuing work with her, she also claims that she is standing on "privilege and work-product objections and will not disclose privileged or confidential attorney–client communications regarding specific clients", which leaves Defendants to wonder if Braun is withholding responsive information on such grounds.

**Braun/Braun IP Law's Second Supplemental Response to Martson's** Interrogatory No. 25 (IDENTIFY the professional relationships disrupted as alleged in Paragraph 201 of the TAC): In her first supplemental response, Braun identified examples of relationships that allegedly had been disrupted, i.e., "Alyssa DeFord (p/k/a "Bunnie XO"), Kaitlynn Dempsey (p/k/a "Demps"), and Monsters and Martians, among others". Yet, in her second supplemental response, she no longer identifies *any* disrupted relationships, instead improperly

claiming that she is prohibited from identifying such relationships under Rule of Professional Conduct 1.6. Braun's refusal to provide a complete and straightforward response to this basic interrogatory is improper.

Plaintiff has identified the specific client relationships referenced in the TAC and clarified she is not pursuing damages for unidentified clients. To the extent Defendants argue privilege prevents disclosure, the only remaining issue would concern confidential communications about client reasoning — which are not relevant now that lost-profit damages have been withdrawn. There is no withholding of non-privileged client identities beyond what has already been disclosed.

5. **DMCA Takedown of Marston's content (Episode 97)**

**Interrogatories and RFPs relating to Braun's Fair Use Determination Re Marston's content (Episode 97):**

**Braun/Braun IP Law's Supplemental Responses to Martson's Interrogatory Nos. 3-4** (Interrogatories pertaining to DMCA takedown of Marston's Episode 97): Braun provide **no** second supplemental response, and her first supplemental response refused to provide any substantive response, instead standing on objections.

Plaintiff did not submit a DMCA takedown on December 3, 2023. That submission contained inconsistencies (including use of Demps' stage name) and was not filed by Braun. Plaintiff did submit a separate takedown on December 7, 2023.

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 6** (IDENTIFY the factual and legal bases for YOUR submission of a takedown notice to YouTube RELATING TO EPISODE 97 on December 3, 2023): Braun improperly reserves the right to supplement with deposition testimony.

The fair-use basis for the December 7 takedown is fully set forth in the Copyright Claims Board filings, which Defendants already possess. Those filings articulate the factual and legal bases relied upon in good faith. Internal legal analysis remains protected work product. There are no additional non-privileged documents beyond what has been produced.

**Marston RFP 4-7 & 9: documents regarding Braun's filing of a DMCA takedown request with respect to Marston's Episode 97** (which are directly relevant to Marston's alleged defamatory statement that Braun was "actively committing perjury" when she filed that DMCA takedown request)

Plaintiff did not submit a DMCA takedown on December 3, 2023. That submission contained inconsistencies (including use of Demps' stage name) and was not filed by Braun. Plaintiff did submit a separate takedown on December 7, 2023.

6. **ARDC Investigations/Complaints against Braun**

**Interrogatories and RFPs relating to ARDC Complaints**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory Nos. 1-3** (ARDC complaints): Braun's second supplemental response referred Defendants to her response to Interrogatory No. 13 and unidentified "business records" that have been produced. Reference to another interrogatory response and to generic "business records" in response to these interrogatories is improper for the reasons identified in Defendants' motion to compel. Braun's response to Interrogatory No. 13 also does not provide the information responsive to this request.

**Braun/Braun IP Law's Second Supplemental Responses to Day's** Interrogatory No. 13 (IDENTIFY all facts that support YOUR allegation in Paragraph 87 of the TAC that "Defendant Day's statement … is false and did not occur): Plaintiffs improperly reserved the right to supplement their response with deposition testimony.

**Day's RFP** Nos. 1, 2- communications from Braun to the ARDC regarding ethics complaints filed against her (only the complaints themselves were produced and the final resolution letter – nothing in between)

Plaintiff has produced all non-privileged ARDC documents in her possession (complaints and resolution letters). ARDC investigations are confidential under Illinois Supreme Court Rule 766. There are no additional non-privileged communications to produce. The factual basis for falsity of Day's statements is supported by the ARDC's written policy language and the fact that only one attorney (John Cesario) handled the investigation.

7. **Factual Bases for Denial of RFAs**

**Braun/Braun IP Law's Second Supplemental Responses to Carter's** No. 12 (For each response to the Requests for Admission that is not an unqualified, admission, IDENTIFY all facts, persons, and documents supporting the denial): Braun continues to refuse to provide a response to this interrogatory, instead responding in the second supplemental response that she "will not produce any information in response to this request. Many of the documents produced by Defendants, which number in the thousands, contain the information sought and Plaintiffs are still reviewing those documents". If Braun denied a particular RFA, she certainly had a factual basis for doing so. At a minimum, she can provide that factual basis in response to this interrogatory, even if she is unable to identify every supporting document due to her failure to review Defendants document production, despite having over four months to do so (documents produced on 9/26/25).

Plaintiff has provided the factual bases supporting her denials, including citations to produced materials and public video links. To the extent Defendants demand a complete catalog of every supporting document, that exceeds Rule 33's requirements and improperly seeks to convert each denial into a narrative brief. Plaintiffs will supplement through deposition testimony as appropriate, consistent with Rule 26.

8. **Propson RFPs relating to damages/lost profits and interference claims:**

- Propson responses to Carter RFP Nos. 23-25 (documents relating to the two specific clients she claims she lost as a result of Carter's actions (Pair Eyewear and The Travel Channel))
- Propson responses to Carter RFP No. 26 (documents relating to any other of Propson's alleged lost clients or lost opportunities)

Per our discussion in the meet and confer, this issue should be moot.

**Brandon J. Witkow**

_____

**witkow | baskin**

21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

Brandon,

I want to give you an update on the response. I am about done with the updated responses, but need additional time to talk to Ms. Braun. Yesterday, I had an emergency and was not able to talk to her as planned. We are scheduled to speak today.

I will keep you posted. I am hoping we can play to meet on Friday.

Ben

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Date:** Wednesday, February 18, 2026 at 11:41 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Braun v Day Meet and Confer

Brandon,

I am sorry for the delay on this. I am working on getting a response today. I have been needing to confer with my clients on a few items.

Ben

**Benjamin C.R. Lockyer** | PRINCIPAL



6515 W. Archer Ave. | Chicago, IL 60638 | Direct: (773) 340-0011 | lockyerlaw.com

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Tuesday, February 17, 2026 at 10:31 AM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Braun v Day Meet and Confer

Ben, following up on this again. I thought you stated you would have the proposed amended responses to me by last week so I could review and then we can schedule the next meet and confer conference. Please advise when you will have these ready as I don't want to get jammed up again with the submission of our status report in early March.

**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Sent:** Thursday, February 12, 2026 7:16 AM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Braun v Day Meet and Confer

Ben, I assume you saw the Court's order yesterday. If you are serious re he dismissal of Propson's case, lets get this done so we can at least eliminate those discovery responses from our continued meet and confer. Please advise as to what you intend to do here.

**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Sent:** Monday, February 9, 2026 11:43 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Braun v Day Meet and Confer

This is correct. I will send over a draft of the joint extension of time.

Ben

16

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Monday, February 9, 2026 at 1:41 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Braun v Day Meet and Confer

Ben:

I just want to confirm that we are not doing our Zoom conference at 12pm PST shortly, per our emails below.  Correct?

**Brandon J. Witkow**
_____

witkow | baskin

21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Sent:** Monday, February 9, 2026 9:18 AM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Braun v Day Meet and Confer

OK, thank you, I'll standby for review. On a separate note were you going to send over the email regarding the dismissal of Propson's case?

**Brandon J. Witkow**
_____

witkow | baskin
21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Sent:** Monday, February 9, 2026 9:09:19 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Braun v Day Meet and Confer

I agree. I can get this drafted for us.

Ben

**Benjamin C.R. Lockyer** | PRINCIPAL



6515 W. Archer Ave. | Chicago, IL 60638 | Direct: (773) 340-0011 | lockyerlaw.com

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Monday, February 9, 2026 at 10:10 AM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Cc:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** RE: Braun v Day Meet and Confer

That should be fine. Are you literally going through each of the responses listed in my email and making proposed line edits to address the issues I raised? If that is the plan, and to ensure the revisions are thorough rather than rushed, it may be worth discussing whether the parties should seek a brief extension of the deadline to submit the joint status report and to continue the February 17 hearing. Taking additional time now may reduce the likelihood that we will need to revisit the same issues again.

**Brandon J. Witkow**
_____

**witkow**|**baskin**

21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not

disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**From:** Ben Lockyer <ben@lockyerlaw.com>
**Sent:** Monday, February 9, 2026 8:06 AM
**To:** Brandon Witkow <bw@witkowlaw.com>
**Subject:** Re: Braun v Day Meet and Confer

Brandon,

I need a little more time to complete the updates to the discovery requests. Are we able to push our meeting to this evening? I am hoping to give us some more time to be able to go through the responses.

To hopefully make the review process faster, I will be making edits in track changes so you can see what the changes to the response are.

Ben

**From:** Brandon Witkow <bw@witkowlaw.com>
**Date:** Friday, February 6, 2026 at 1:04 PM
**To:** Ben Lockyer <ben@lockyerlaw.com>
**Subject:** Accepted: Braun v Day Meet and Confer

Ben:

For our call, here is a revised list of requests separated by category for ease of reference.

1. **Damages – Lost Profits/Interference.**

**Rogs that relate to lost clients/profits as a result of statements by Day and Marston:**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 21, 25** (IDENTIFY the "professional relationships with clients" disrupted as alleged in Paragraph 201 of the TAC and IDENTIFY the "clients [that] end[ed] their use of Braun Law for legal services out of fear of harassment," as alleged in Paragraph 210 of the TAC.)**:** Braun improperly reserves the right to supplement the response with deposition testimony. Additionally, in hers first supplemental responses to these interrogatories, Plaintiff identified Kaitlynn Dempsey, Alyssa DeFord, Monsters and Martians. *Now, in the second supplemental responses, Braun claims that she is precluded from identifying client names under Rule of Professional Conduct 1.6.* As explained above, the names of clients (especially when already revealed) are not privileged, especially when Plaintiff puts them squarely in issue.

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 5** (IDENTIFY each client that YOU contend was lost as a result of the conduct YOU allege against MARSTON in the TAC): Braun improperly reserved the right to supplement with deposition testimony, and while the first supplemental response identified specific lost clients, the second supplemental response asserted that Braun was prohibited from identifying clients under Rule of Professional Conduct 1.6. Plaintiff's supplementation to take AWAY information is nonsensical and disingenuous. Plaintiff has asserted interference and damages claims based on lost clients/income, and she cannot refuse to identify those clients.

**Rogs that relate to "work that was lost" as a result of statements by Day and Marston:**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 22** (IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as alleged in Paragraph 207 of the TAC). Braun improperly reserves the right to supplement the response with deposition testimony. Additionally, in her first supplemental response she provided a generic description of "trademark and copyright work," and now in the second supplemental response she is claiming she cannot provide any information pursuant to Rule of Professional Conduct 1.6.

**Braun/Braun IP Law's Supplemental Response to Martson's Interrogatory No. 22 (**IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as a result of the conduct alleged against DAY, as alleged in Paragraph 207 of the TAC): Braun did not supplement her response with a second supplemental response to this interrogatory. Braun's response only lists examples of lost work, and she states that she cannot get consent from other clients to provide their names to Defendants. Client names are not privileged, and Braun does not need consent to comply with her discovery obligations, particularly when she has put lost clients at issue in this case through interference claims and lost profit claims.

**RFPs relating to damages/lost profits and interference claims:**

- Braun's responses to Day RFP Nos. 22-23 and Marston RFP Nos. 8, 31, 32, 39, 41 (documents relating to either Plaintiffs' proof of damages or lost clients)

2. **Contact Info for Monsters & Martians:**

**Braun/Braun IP Law's Supplemental Response to Martson's Interrogatory No. 15 (**IDENTIFY the contact information for Monsters and Martians): Braun did not supplement this response further and refuses to provide contact information (other than a general, publicly available email address) on the improper grounds that such information is privileged.

3. **Facts supporting GENERAL (any other) damages claims:**

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 20** (IDENTIFY all facts supporting YOUR claim for damages as alleged in Paragraph 177 of the TAC): In her second supplemental response, Braun responds with only the following inadequate statement: "Plaintiffs reserve the right to supplement this right with deposition testimony. See the answer to ROG 26 -1 for Day. Paragraph 177 of the TAC refers to Day's conduct causing damage." Braun's reference to deposition testimony, other interrogatory answers, and the TAC is improper for the reasons discussed in Defendant's Motion to Compel.

4. **Facts supporting Interference Claims:**

**Braun/Braun IP Law's Supplemental Response to Martson's Interrogatory No. 21 – relates to interference claim** (IDENTIFY all facts supporting YOUR claim that existing and prospective clients were deterred from hiring Braun, as alleged in Paragraph 188 of the TAC): Braun did not supplement her response with a second supplemental response to this interrogatory. While Braun does provide a general narrative response about unidentified clients discontinuing work with her, she also claims that she is standing on "privilege and work-product objections and will not disclose privileged or confidential attorney–client communications regarding specific clients", which leaves Defendants to wonder if Braun is withholding responsive information on such grounds.

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 25** (IDENTIFY the professional relationships disrupted as alleged in Paragraph 201 of the TAC): In her first supplemental response, Braun identified examples of relationships that allegedly had been disrupted, i.e., "Alyssa DeFord (p/k/a "Bunnie XO"), Kaitlynn Dempsey (p/k/a "Demps"), and Monsters and Martians, among others". Yet, in her second supplemental response, she no longer identifies *any* disrupted relationships, instead improperly claiming that she is prohibited from identifying such relationships under Rule of Professional Conduct 1.6. Braun's refusal to provide a complete and straightforward response to this basic interrogatory is improper.

5. **DMCA Takedown of Marston's content (Episode 97)**

**Interrogatories and RFPs relating to Braun's Fair Use Determination Re Marston's content (Episode 97):**

**Braun/Braun IP Law's Supplemental Responses to Martson's Interrogatory Nos. 3-4** (Interrogatories pertaining to DMCA takedown of Marston's Episode 97): Braun provide *no* second supplemental response, and her first supplemental response refused to provide any substantive response, instead standing on objections.

**Braun/Braun IP Law's Second Supplemental Response to Martson's Interrogatory No. 6** (IDENTIFY the factual and legal bases for YOUR submission of a takedown notice to YouTube RELATING TO EPISODE 97 on December 3, 2023): Braun improperly reserves the right to supplement with deposition testimony.

**Marston RFP 4-7 & 9**: documents regarding Braun's filing of a DMCA takedown request with respect to **Marston's Episode 97** (which are directly relevant to Marston's alleged defamatory statement that Braun was "actively committing perjury" when she filed that DMCA takedown request)

6. **ARDC Investigations/Complaints against Braun**

**Interrogatories and RFPs relating to ARDC Complaints**

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory Nos. 1-3** (ARDC complaints): Braun's second supplemental response referred Defendants to her response to Interrogatory No. 13 and unidentified "business records" that have been produced. Reference to another interrogatory response and to generic "business records" in response to these interrogatories is improper for the reasons identified in Defendants' motion to compel. Braun's response to Interrogatory No. 13 also does not provide the information responsive to this request.

**Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 13** (IDENTIFY all facts that support YOUR allegation in Paragraph 87 of the TAC that "Defendant Day's statement … is false and did not occur): Plaintiffs improperly reserved the right to supplement their response with deposition testimony.

**Day's RFP Nos. 1, 2-** communications from Braun to the ARDC regarding ethics complaints filed against her (only the complaints themselves were produced and the final resolution letter – nothing in between)

7. **Factual Bases for Denial of RFAs**

**Braun/Braun IP Law's Second Supplemental Responses to Carter's No. 12** (For each response to the Requests for Admission that is not an unqualified, admission, IDENTIFY all facts, persons, and documents supporting the denial): Braun continues to refuse to provide a response to this interrogatory, instead responding in the second supplemental response that she "will not produce any information in response to this request. Many of the documents produced by Defendants, which number in the thousands, contain the information sought and Plaintiffs are still reviewing those documents". If Braun denied a particular RFA, she certainly had a factual basis for doing so. At a minimum, she can provide that factual basis in response to this interrogatory, even if she is unable to identify every supporting document due to her failure to review Defendants document production, despite having over four months to do so (documents produced on 9/26/25).

8. **Propson RFPs relating to damages/lost profits and interference claims:**

- Propson responses to Carter RFP Nos. 23-25 (documents relating to the two specific clients she claims she lost as a result of Carter's actions (Pair Eyewear and The Travel Channel))

- Propson responses to Carter RFP No. 26 (documents relating to any other of Propson's alleged lost clients or lost opportunities)

**Brandon J. Witkow**

_____



21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
818.296.9508 office I 818.296.9510 facsimile
bw@witkowlaw.com I witkowlaw.com

IMPORTANT/CONFIDENTIAL: This message from the law firm of witkow|baskin is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient (or authorized to act on behalf of the intended recipient) of this message, you may not disclose, forward, distribute, copy, or use this message or its contents. If you have received this communication in error, please notify us immediately by return e-mail and delete the original message from your e-mail system. Thank you.

**ROGS THAT RELATE TO ALLEGED LOST CLIENTS/PROFITS AS A RESULT OF STATEMENTS BY DAY AND MARSTON:**

***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 21 (IDENTIFY the "professional relationships with clients" disrupted as alleged in Paragraph 201 of the TAC):***

Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical obligations under IRPC 1.6 and will follow comment 15. Subject to these limitations, Plaintiffs previously identified certain clients whose professional relationships were disrupted as a result of Defendants' conduct: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted professional relationships with clients is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients was disrupted as a result of Defendant's conduct.

***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Responses to Day's Interrogatory No. 25 (IDENTIFY the "clients [that] end[ed] their use of Braun Law for legal services out of fear of harassment," as alleged in Paragraph 210 of the TAC):***

Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical obligations under IRPC 1.6 and will follow comment 15. Defendants' have provided documents in their discovery responses, such as voice memos and text messages, stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Subject to these limitations, Plaintiffs previously identified certain clients who ended their use of Braun Law for legal services out of fear of harassment: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that clients ended their use of Braun Law for legal services out of fear or harassment is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or

disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

**PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 5 (IDENTIFY each client that YOU contend was lost as a result of the conduct YOU allege against MARSTON in the TAC):**

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, and in view of the documents Defendants' have provided in their discovery responses, such as voice memos and text messages, stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public.  Further, one of their co-conspirators, as evidenced by various items in Defendants' production, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024.  Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients.  Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost clients as a result of Marston's conduct is limited to only these three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

**PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 21** (IDENTIFY all facts supporting YOUR claim that existing and prospective clients were deterred from hiring Braun, as alleged in Paragraph 188 of the TAC):

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, following Defendants' public statements and coordinated online activity, Defendants' YouTube videos, Reddit posts, and social media content on platforms including X and TikTok began appearing prominently in internet search results for "Jeanette Braun," "Braun IP Law," and related terms. These results included videos and posts repeating Defendants' allegations and commentary concerning Plaintiff Braun. As a result, when existing and prospective clients searched for Plaintiff Braun or her law firm, Defendants' content appeared as part of the initial search results. Plaintiffs are informed and believe that this widespread online publication materially affected client perceptions and business relationships. Numerous clients expressed concern regarding the visibility of the allegations and the potential reputational consequences of being associated with Plaintiff Braun during the ongoing online controversy, along with fear of becoming the Defendants next target. Certain clients discontinued representation or declined to proceed with new engagements after the online campaign escalated. Among the disrupted relationships were Kaitlynn Dempsey and Alyssa DeFord (professionally known as "Bunnie XO"). Ms. DeFord publicly posted that she was leaving Plaintiff Braun. In addition, Defendant Bekah Day directly contacted and emailed Ms. Dempsey and Ms. DeFord concerning their representation by Plaintiff Braun. Plaintiffs are informed and believe that such direct outreach further interfered with and destabilized those professional relationships. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that existing and prospective clients

were deterred from hiring Braun is limited to only Alyssa DeFord, Kaitlynn Dempsey and Monsters and Martians ("Identified Clients"), and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

**ROGS THAT RELATE TO "WORK THAT WAS LOST" AS A RESULT OF STATEMENTS BY DAY AND MARSTON:** ***PROPOSED Revised Braun/Braun IP Law's Second Supplemental Response to Marston's Interrogatory No. 22 (Describe in detail what YOU mean by YOUR clients "distancing" themselves from YOU as a result of the conduct alleged against DAY, as alleged in Paragraph 208 of the TAC) and Day's Interrogatory No. 22 (IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as alleged in Paragraph 207 of the TAC):***

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, Plaintiffs state as follows: The "work" referenced in Paragraph 207 of the Third Amended Complaint includes legal services that Plaintiffs were performing, or reasonably expected to continue performing, for the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Without disclosing privileged communications, confidential client strategy, or proprietary billing information, the categories of work performed for the Identified Clients include:

1. Trademark prosecution and portfolio management services for Ms. DeFord (professionally known as "Bunnie XO") and Monsters and Martians, including preparation and filing of trademark applications, responding to USPTO office actions, advising on classification strategy, monitoring deadlines, and ongoing brand management counseling.
2. Copyright prosecution services for Ms. DeFord, including preparation and filing of copyright applications and related advisory services concerning registration strategy and protection of creative works.
3. Online enforcement and brand protection services for both Ms. DeFord and Ms. Dempsey (professionally known as "Demps"), including monitoring for infringement, issuing takedown demands, coordinating with platforms regarding unauthorized use of intellectual property, and advising on brand-protection strategy.
4. Contract review and advisory services for Ms. Dempsey, including review of proposed agreements and related legal counseling concerning business and entertainment transactions.

Plaintiffs will produce non-privileged documents sufficient to reflect the existence and general nature of such work, subject to entry of an appropriate protective order.

**RFPs RELATING TO DAMAGES/LOST PROFITS AND INTERFERENCE CLAIMS:**

***PROPOSED Revised Supplemental Response to Marston RFP No. 8 (DOCUMENTS sufficient to identify each of YOUR clients that YOU contend DAY has made "unsolicited communications…in an effort to obtain disparaging information," as alleged in Paragraph 82 of the TAC):***

The first paragraph in the response should be clarified as follows:
Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted or interfered with professional relationships with clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting this allegation and also stating they will

make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients.

***PROPOSED Revised Supplemental Response to Marston RFP No. 39*** **(All DOCUMENTS supporting YOUR allegation in Paragraph 207 of the TAC regarding lost work from clients):**

Plaintiffs maintain and incorporate their prior objections. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted or interfered with professional relationships with clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting Plaintiffs' allegation and also stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. Accordingly, documents reflecting lost revenue or profits, client communications, billing records, engagement agreements, or other materials relating to alleged "lost work" are not relevant to Plaintiffs' remaining damages theories and are further protected by the attorney–client privilege, work product doctrine, and applicable professional confidentiality obligations.

[Ben, please note that the following sentence has been removed as these documents reflect alleged lost revenue, which you have made clear that Plaintiffs are no longer basing their damages claim upon: "The documents Plaintiffs presently intend to rely upon in support of their damages claims are limited to those produced in the range of BRAUN 1762–1773"]. Plaintiffs' damages will be based on the cost of repairing their reputation through a company that does such work.

***PROPOSED Revised Supplemental Response to Day RFP No. 22*** **(All DOCUMENTS supporting YOUR allegation in Paragraph 207 of the TAC that "As a proximate cause of the Defendants' smear campaign and Defendant Day and Defendant Marston's false and defamatory statements, Plaintiff Braun and Braun Law lost work from numerous clients including Ms. DeFord and Ms. Dempsey"):**

Plaintiffs incorporate and maintain all prior objections. Answering further, subject to and without waiving those objections, Plaintiffs state that responsive, non-privileged documents include Defendants' public social media posts, videos, online commentary, and related communications evidencing the campaign referenced in Paragraph 207 of the TAC. Defendants' have provided documents in their

discovery responses, such as voice memos and text messages, stating that this was their intent, and those will be relied on. By way of example, document BD00706 reflects a public post made by Defendant Bekah Day concerning Plaintiff Braun and her clients. Defendant Day made multiple public statements referencing Plaintiff Braun and, in some instances, referencing or tagging her clients. These posts were publicly accessible and contributed to reputational harm and client disruption. Responsive documents further include communications between Defendant Day and Alyssa DeFord (professionally known as "Bunnie XO"), reflecting direct back-and-forth exchanges regarding Ms. DeFord's representation by Plaintiff Braun. While Ms. DeFord publicly defended herself in response to Defendant Day's commentary, those communications demonstrate that Defendant Day directly engaged Plaintiff Braun's client concerning the representation and repeatedly raised allegations about Plaintiff Braun. Plaintiffs are informed and believe that such direct outreach placed Ms. DeFord in the position of having to address Defendant Day's accusations publicly and contributed to instability in the professional relationship. Additional responsive documents include communications and publicly available content reflecting Defendant Day's outreach to Kaitlynn Dempsey and other clients, as well as evidence that client relationships were reduced, discontinued, or not renewed following Defendants' online campaign.

Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting this allegation and stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public.  Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct.  Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, subject to a protective order where necessary to protect confidential client information. Plaintiffs object to the extent this Interrogatory seeks documents not within their possession or control, including documents held exclusively by third parties. Plaintiffs reserve the right to supplement pursuant to Rule 26(e).

***PROPOSED Revised Supplemental Response to Day RFP No. 23** (**DOCUMENTS sufficient to identify the "work" that was "lost" from "numerous clients including Ms. DeFord and Ms. Dempsey" as a result of the conduct alleged against DAY, as alleged in Paragraph 207 of the TAC):*

Plaintiffs incorporate and maintain their prior objections, including that this Request is vague, ambiguous, overbroad, and seeks confidential client information protected under Illinois Rule of Professional Conduct 1.6.

Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024.  Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct. Plaintiffs state that the categories of work alleged to have been lost from the three Identified Clients included:

· Trademark prosecution and portfolio management services;
· Copyright prosecution and registration services;
· Online enforcement and brand protection services;
· Contract review and transactional advisory services.

Moreover, notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. To the extent this Request seeks documents reflecting lost profits or revenue, confidential client communications, billing records, engagement terms, or other information protected under Illinois Rule of Professional Conduct 1.6, Plaintiffs will not produce such materials as Braun is not seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients.  Because Plaintiffs are not seeking damages for lost clients or lost client revenue and because production would require disclosure of protected client confidences, no further responsive documents will be produced.  Plaintiffs reserve the right to supplement pursuant to Rule 26(e).

**CONTACT INFO FOR MONSTERS AND MARTIANS:**

Ben, you advised you would provide her contact information (i.e. address/phone etc.):
Ken Reil, Monsters and Martians, 6416 Sea Swallow St, NORTH LAS VEGAS, NV, 89084, info@monstersandmartians.com 702-403-8542

**FACTS SUPPORTING GENERAL (ANY OTHER) DAMAGES CLAIMS:**

**PROPOSED *Revised Second Supplemental Response to Marston's Interrogatory No. 20* (Identify all facts supporting YOUR claim for damages as alleged in Paragraph 177 of the TAC):**

Answering subject to the objections and without waiving them, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden.  "All facts" is objected to. Plaintiffs provide many material facts below.

As alleged in the Third Amended Complaint, Defendants engaged in a coordinated campaign of false and disparaging online statements designed to incite an internet mob against Plaintiffs and to interfere with Plaintiffs' law practice, and the foreseeable result has been sustained harassment and reputational harm. Each time Plaintiffs publish a video or written content, anonymous accounts appear and post comments that repeat and regurgitate the same false accusations Defendants made in their social media posts and in updates to their GoFundMe page, demonstrating the ongoing influence and reach of Defendants' statements. The voicemail recordings Defendant produced in discovery further show that Defendant worked with others to coordinate the timing of posts to maximize harm, including intentionally publishing content on holidays when the public is more likely to be home and scrolling social media. Defendants also searched USPTO records to identify Plaintiffs' clients and then harassed or attempted to harass those clients by contacting them directly and by posting stories about them, which has caused Plaintiffs to fear filing new trademark applications or litigation because of the risk that Defendants or their co conspirators will target and harass clients associated with those filings. Plaintiffs are now required to disclose this risk to prospective clients during intake, resulting in lost business when individuals decline representation out of fear of being publicly attacked or damaged by Defendants and their supporters. Plaintiffs have likewise consulted with other attorneys for assistance in various matters, only to have attorneys decline involvement due to fear of being harassed and reputationally damaged. Plaintiffs cannot use a Google Business Profile, which is an industry standard tool, because anonymous and unidentifiable individuals with no legitimate interaction with Plaintiffs have posted false one star reviews as part of the same campaign. Plaintiffs have been forced to sever backlinks to their website that were not placed by Plaintiffs and that link to AI generated articles repeating Defendants' false allegations in order to prevent those articles from appearing in search results associated with Plaintiffs' firm. Plaintiffs have also installed call screening software to address the barrage of hang up and harassing phone calls generated by Defendants' campaign, which wastes firm resources and disrupts daily operations. Plaintiffs have spent countless hours responding to frivolous and meritless ARDC complaints prompted by Defendants' statements, and Plaintiffs cannot meaningfully invest in advertising, publications, or other marketing because such efforts are undermined by the public's continued repetition of Defendants' false claims, requiring Plaintiffs to divert substantial time and resources to mitigating and responding to ongoing digital attacks. Plaintiffs removed the listing of its employees from its website to save them from becoming targets. Plaintiffs have had potential employees or contractors decline positions with the firm because of fear of becoming a target of the campaign. Plaintiffs will have to hire a PR company to repair her reputation once they are able to make online posts without pouring fuel on the fire. When Plaintiffs post on their social media accounts, members of the public regurgitate what Defendant has said and leave an angry face or thumbs down on the post, leaving Plaintiffs to either respond to the comments to correct the narrative, or ignoring the comment. Further, Plaintiffs observed an increase in emails for anonymous people threatening them and in hang up calls, or calls that regurgitate what Defendant has said and the person hangs up after the regurgitation. Plaintiffs anticipate the cost of the PR company to be somewhere around $8,000.00 a month, and the amount of time needed will be over 12 months based on information publicly available. Plaintiffs anticipate needing an expert to discuss this at trial. Notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting this allegation and stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-

2021. Ms. Jenkins posted a video responding to it in 2024.  Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered. Moreover, notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

**FACTS SUPPORTING INTERFERENCE CLAIMS:**

***PROPOSED Revised Second Supplemental Response to Marston's Interrogatory No. 25* (Identify the professional relationships disrupted as alleged in Paragraph 201 of the TAC):**

Plaintiffs maintain and incorporate their prior objections. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun's professional relationships were disrupted is limited to only Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians ("Identified Clients"). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting the allegations in the TAC, and also stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public.  Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024.  Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered. Moreover, notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct. Accordingly, disclosure of additional client identities, client communications, or confidential professional relationships is not relevant to Plaintiffs' remaining damages theories and would implicate attorney–client privilege, work product protections, and professional confidentiality obligations.

**DMCA TAKEDOWN OF MARSTON'S CONTENT (Episode 97):**

**Revised Supplemental Response to Marston's Interrogatory Nos. 3-4, Second Supplemental Response to Marston's Interrogatory No. 6**

As discussed during our Zoom meet and confer, it is not permissible for an interrogatory response to refer or rely on other documents such as Copyright Claims Board filings. Defendants are entitled to a full and complete response to these interrogatories that does not incorporate arguments made by Plaintiff to the Copyright Claims Board.  You agreed to either provide a discrete response to this interrogatory, or *identify the specific* Copyright Claims Board filings you intend to incorporate by reference, including by page number/line.

Answering further, subject to and without waiving the objections made, such is relevance, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, Petitioner's Complaint, entire document, Opening Brief, entire document, and Reply Brief, entire document.  These are public record and already in Marston's possession.

**Marston RFP 4-7 & 9**

As discussed, to the extent Braun is withholding documents responsive to these RFPs on the basis of privilege, Braun must include them on a privilege log that complies with the Federal Rules.

4 is overbroad, not relevant, objection to "any," and seeks attorney-client privileged information.  This one will need to be resolved by the court.
5 is moot based on the changes above.
6 was answered and properly objected to. Nothing withheld. What more do you want?
7 was answered and properly objected to.  Nothing withheld. What more do you want? This one may need to be resolved by the court.
9 was answered and properly objected to. Nothing withheld. What more do you want?  This may need to be resolved by the court.

**ARDC INVESTIGATIONS/COMPLAINTS AGAINST BRAUN:**

We agreed to withdraw this request and instead seek the documents directly from the ARDC via deposition subpoena.

**FACTUAL BASES FOR DENIAL OF RFAs**

You stated you would be standing on your current objection/response to this interrogatory, so this remains an issue to be resolved by the Court.

**PRIVILEGE LOG**

We did not discuss this in our meet and confer but the current version of your log remains deficient for the reasons previously identified and must be supplemented.   We can further discuss in our call Tuesday whether you will agree to supplement.

**Exhibit B**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN, & | ) | |
| BRAUN IP LAW, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| | ) | |
| v. | ) | Hon. J. Mary Rowland |
| | ) | |
| REBEKAH M. DAY NEE BOXX, & | ) | Mag. J. M. David Weisman |
| LILY MARSTON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS BRAUN AND BRAUN IP LAW LLC'S**
**SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT**
**REBEKAH DAY'S FIRST SET OF INTERROGATORIES**

Plaintiffs Jeanette Braun and Braun IP Law, LLC ("Plaintiffs"), by and through undersigned counsel, hereby further responds to Defendant Rebekah Day's First Interrogatories, subject to and without waiving the general and specific objections set forth herein.

These responses are made solely for purposes of this litigation. By responding, Plaintiffs do not concede the relevance, materiality, or admissibility of any information provided, nor waive any objections to the use of such information for any purpose other than this action.

Plaintiffs object to each Interrogatory to the extent it seeks information beyond the scope of permissible discovery under Rules 26 and 33 of the Federal Rules of Civil Procedure, including information that is irrelevant, disproportionate to the needs of the case, unduly burdensome, or not reasonably accessible. Plaintiffs further object to each Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, common interest doctrine, or any other applicable privilege or protection.

1

To the extent any Interrogatory requests information that may be in the possession of third parties or otherwise outside Plaintiffs' custody or control, Plaintiffs object on the ground that they cannot be compelled to produce such information.

The responses provided herein reflect information presently known to Plaintiffs after a reasonable inquiry. Plaintiffs reserve the right to supplement, amend, or correct these responses if additional information becomes available in accordance with Rule 26(e).

## General Objections

1. Overbreadth / Burden: Plaintiffs object to each Interrogatory to the extent it is overly broad, unduly burdensome, or not reasonably limited in time, scope, or subject matter.

2. Relevance: Plaintiffs object to each Interrogatory to the extent it seeks information that is irrelevant to any claim or defense in this action or not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).

3. Privilege: Plaintiffs object to each Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or protection. Any inadvertent disclosure of such protected information shall not constitute a waiver.

4. Confidential / Sensitive Information: Plaintiffs object to each Interrogatory to the extent it seeks disclosure of confidential, private, proprietary, or commercially sensitive information, including client identities and communications, unless subject to an appropriate protective order.

5. Speculation / Legal Conclusions: Plaintiffs object to each Interrogatory to the extent it

2

assumes facts not established, calls for speculation, seeks legal conclusions, or requires Plaintiffs to adopt Defendant's characterization of facts, issues, or law.

6. Vagueness / Ambiguity: Plaintiffs object to each Interrogatory to the extent it is vague, ambiguous, unintelligible, or uses undefined terms subject to multiple interpretations.

7. Third-Party Information: Plaintiffs object to each Interrogatory to the extent it seeks information not within Plaintiffs' possession, custody, or control, including information that may be held by third parties.

8. Premature / Expert Discovery: Plaintiffs object to any Interrogatory that calls for premature disclosure of expert testimony, trial exhibits, or witness statements outside the scope and timing of expert discovery or pretrial disclosures.

9. Reservation of Rights: Plaintiffs reserve all objections to the admissibility, competency, relevance, or materiality of any information provided herein. Plaintiffs further reserve the right to supplement or amend these responses in accordance with Rule 26(e).

## INTERROGATORY RESPONSES

**Interrogatory No. 1** IDENTIFY all DOCUMENTS, including COMMUNICATIONS, by and between YOU and the ARDC.

**Response:**
Plaintiffs object as overbroad, unduly burdensome, vague, and seeking confidential ARDC materials protected under Illinois Supreme Court rules. Plaintiffs further object to the extent this Interrogatory seeks information not within Plaintiffs' possession, custody, or control.
Subject to and without waiving objections, and pursuant to Rule 33(d), Plaintiffs will produce non-privileged, relevant documents in their possession, if any, subject to a protective order.

**Supplemental Response:** Subject to the objections raised above, Plaintiff provides the following updates response, under Illinois Supreme Court Rule 766, communications and investigations with the ARDC are confidential and Plaintiff Braun and Braun Law are not obligated to produce documents in response to this request. Subject to this objection, Braun and Braun Law are providing

3

copies of the ARDC complaints and communications from the ARDC noting that each investigation was resolved. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Interrogatory No. 2** IDENTIFY all DOCUMENTS YOU provided to the ARDC in response to any inquiry or investigatory demand.

**Response:**
Same objections as Interrogatory No. 1.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents in their possession, if any, subject to a protective order.

**Supplemental Response:** Under Illinois Supreme Court Rule 766, communications and investigations with the ARDC are confidential and Plaintiff Braun and Braun Law will not produce documents in response to this request. Subject to this objection, Plaintiff will produce a privilege log on this topic.

**Interrogatory No. 3** IDENTIFY all facts RELATING TO any investigation of YOU by the ARDC.

**Response:**
Plaintiffs object as overbroad, vague, unduly burdensome, and seeking disclosure of confidential ARDC materials outside Plaintiffs' control. Plaintiffs further object that this Interrogatory calls for speculation.
Subject to and without waiving objections, and pursuant to Rule 33(d), Plaintiffs will produce non-privileged, relevant documents in their possession, if any, subject to a protective order.

**Supplemental Response:** Subject to the objections raised above, Plaintiff provides the following updates response, under Illinois Supreme Court Rule 766, communications and investigations with the ARDC are confidential and Plaintiff Braun and Braun Law are not obligated to produce documents in response to this request. Subject to this objection, this response is best answered by providing the documents and complaints that initiated each ARDC investigation; see copies of the ARDC complaints and communications from the ARDC noting that each investigation was resolved. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Interrogatory No. 4** IDENTIFY by name, address, phone number, email, social media handle and any other identifying information as to the "stalker that Ms. Dempsey has obtained numerous protective orders against," as alleged in Paragraph 71 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, unduly burdensome, and seeking private or protected information of third parties. Plaintiffs further object to the extent this seeks information outside Plaintiffs' knowledge or control.
Subject to and without waiving objections, Plaintiffs the identity of the stalker is Erica Fisk who has the email address of ericafisk1@gmail.com.

**Interrogatory No. 5** IDENTIFY all facts that support YOUR allegations in Paragraph 80 of the TAC that DAY sought to "incite her fans to become an angry mob and engage in a harassment campaign against Ms. Braun and her past clients."

4

**Response:**
Plaintiffs object as vague, ambiguous, argumentative, overbroad, and unduly burdensome to the extent it seeks "all facts." Plaintiffs further object that this Interrogatory improperly seeks attorney work product.
Subject to and without waiving objections, and pursuant to Rule 33(d), Plaintiffs will produce non-privileged, relevant documents, if any, sufficient to respond to this request.

**Supplemental Response:** Subject to the above objections, Plaintiffs provide the following supplemental response: Plaintiffs search for evidence of Day's incitement of the internet mob is ongoing and relevant documents may be in the possession of third parties or may be currently unknown to the Plaintiffs. As such, Plaintiffs reserve the right to supplement this response. Answering subject to this, see: Plaintiffs_000001-522, 580-654, 847, 854-864, 883-941.

**Interrogatory No. 6** IDENTIFY in detail all "detrimental effects on Ms. Braun, her former clients, her practice, and emotional distress and harm," as alleged in Paragraph 81 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and unduly burdensome. Plaintiffs further object to the extent it seeks private or privileged client information.
Subject to and without waiving objections, and pursuant to Rule 33(d), Plaintiffs will produce non-privileged, relevant documents evidencing such harm, if any, subject to a protective order.

**Supplemental Response:** Subject to and without waiving that objection, Plaintiff responds as follows:
Ms. Braun has experienced substantial and ongoing reputational harm, professional disruption, and emotional distress as a result of Defendants' conduct and the public amplification of their statements. She has been subjected to online harassment and threats by individuals and internet commentators associated with or inspired by Defendants and their collaborator, Ian Runkle. This has included the circulation of false and defamatory claims about her ethics and professionalism, as well as targeted attacks on her online presence, including false "review bombing" of her business profile and dissemination of identifying information about her and her clients.
As a consequence of these actions, Ms. Braun has had to conceal her residence for safety reasons and has repeatedly been forced to reassure clients and colleagues that her representation does not expose them to harassment or retaliation. Several clients and prospective clients have expressed fear or hesitation to continue or initiate engagements with Ms. Braun due to concerns about becoming targets of Defendants' internet followers. At least one therapist and several clients have indicated reluctance to testify in this matter out of fear of further exposure and harassment. Ms. Braun has also lost clients and professional opportunities due to the negative publicity generated by Defendants' conduct and the ongoing attention surrounding this case.
In addition to reputational and professional harm, Ms. Braun has suffered emotional distress and anxiety from the continued need to defend her professional integrity and reputation publicly and to explain Defendants' allegations to clients, peers, and family. These detrimental effects are continuing, as Defendants' statements and related online content remain accessible and continue to circulate.
Damages are ongoing, and Plaintiff reserves the right to supplement this response as additional information becomes available or as discovery continues. Pursuant to Rule 33(d), Plaintiff is also willing to provide further details regarding these matters through deposition testimony at a mutually convenient time.

5

**Interrogatory No. 7** IDENTIFY each client that YOU contend was lost as a result of DAY's alleged conduct.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking disclosure of confidential client information.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents sufficient to identify such clients, if any, subject to a protective order.

**Supplemental Response:** Answering subject to the above objections, Plaintiff is unable to reveal the identity of all clients that she has lost work from due to attorney-client privilege. Clients that Plaintiffs Braun and Braun Law can identify as losing work from are: Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians.

**Interrogatory No. 8** IDENTIFY each of YOUR clients that YOU contend DAY made "unsolicited communications" to in an effort to obtain disparaging information, as alleged in Paragraph 82 of the TAC.

**Response:**
Same objections as Interrogatory No. 7.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents sufficient to identify such clients, if any, subject to a protective order.

**Supplemental Response:** Plaintiffs object to this request as vague, ambiguous, overbroad, and seeking disclosure of confidential client information. Answering subject to and without waiving said objections, Defendant Day has contacted Kaitlynn Dempsey and Alyssa DeFord. Plaintiffs search of clients that Defendant Day has contacted is ongoing, and as such, Plaintiff reserves the right to supplement this request.

**Interrogatory No. 9** IDENTIFY the "clients" that "Defendant Day contacted on March 21, 2024," as alleged in Paragraph 83 of the TAC.

**Response:**
Same objections as Interrogatory No. 7.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents sufficient to identify such clients, if any, subject to a protective order.

**Supplemental Response:** Answering subject to this objection, Plaintiffs are unable to obtain the necessary consent from to identify the persons contacted by Bekah Day at this time. Plaintiffs further object that Defendant Day has access to this information and is in an equal if not better position to obtain the information sought in this request.

**Interrogatory No. 11** IDENTIFY each of YOUR clients that YOU contend DAY contacted to intimidate, interfere with contracts, or collect statements, as alleged in Paragraph 83 of the TAC.

**Response:**
Same objections as Interrogatory No. 7.

6

Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents sufficient to identify such clients, if any, subject to a protective order.

**Supplemental Response:** Kaitlynn Dempsey and Alyssa DeFord.

**Interrogatory No. 12** IDENTIFY all facts that support YOUR allegation in Paragraph 85 of the TAC that DAY falsely claimed the ARDC confirmed receiving "multiple credible complaints."

**Response:** Plaintiffs object as vague, ambiguous, argumentative, overbroad, and unduly burdensome to the extent it seeks "all facts." Plaintiffs further object to the extent it seeks confidential ARDC information.
Subject to and without waiving objections, and pursuant to Rule 33(d), Plaintiffs will produce non-privileged, relevant documents, if any, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 14. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden.

**Interrogatory No. 13** IDENTIFY all facts that support YOUR allegation in Paragraph 87 of the TAC that "Defendant Day's statement … is false and did not occur."

**Response:**
Same objections as Interrogatory No. 12.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents, if any, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony.  The initial letter(s) from the ARDC, see Plaintiffs_000523 for one example, state "It is our policy to consider all communications we receive regarding attorneys who practice law in Illinois, although *our initial inquiries are not intended to lend credence to any allegations they may contain*." (emphasis added).  The ARDC states plainly that they do not lend credence to initial complaints.  Further, the ARDC complaint review process is governed by statute, and the statute says initial investigations or inquiries are confidential.  The ARDC complies with the statute in its governance and actions. See https://www.iardc.org/Files/ARDC%20Complaint%20Flowchart%20PRINT_ERCH.pdf.  None of the complaints filed against me passed the initial inquiry stage and are, therefore, all confidential,

7

and the ARDC found nothing further to investigate. A post authored by Mary F. Andreoni (ARDC Ethics Education Senior Counsel) explains Rule 766 confidentiality and states (paraphrased, but very directly) that an ARDC investigation (pending or closed): is not public, is not displayed on the ARDC website, and is not otherwise disclosed by the ARDC except under narrow Rule 766(b) exceptions. https://www.illinoiscourts.gov/News/1050/Five-ethics-rules-you-may-not-know/news-detail/.  Rule 766(a) expressly includes "investigations conducted by the Administrator" among the matters that are "private and confidential." This is the legal backbone for why, in the initial stage, ARDC generally cannot confirm/discuss investigation status publicly. https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/571d4d10-e0ae-4b18-a517-d214ac153ae2/Rule%20766.pdf

See also: https://pathlms.iardc.org/courses/104504. The ARDC teaches attorneys about its process through CLE courses, and initial inquiry investigations are kept confidential by the ARDC pursuant to statute.  The facts that support Plaintiffs' allegation are available from the ARDC website, materials, and trainings.

**Interrogatory No. 14** IDENTIFY all facts that support YOUR allegation in Paragraph 88 of the TAC that "Upon information and belief, the ARDC did not comment or provide information to Defendant Day."

**Response:**
Same objections as Interrogatory No. 12.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents, if any, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 14. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden.

**Interrogatory No. 15** IDENTIFY all facts that support YOUR allegation in Paragraph 91 of the TAC that Day acted with actual malice.

**Response:**
Plaintiffs object as vague, ambiguous, argumentative, overbroad, and unduly burdensome. Plaintiffs further object that this Interrogatory improperly seeks attorney work product.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents.

**Supplemental Response:** Subject to the above objections, Plaintiffs provide the following supplemental response: Plaintiffs search for evidence of Day's actual malice in her statements is ongoing and relevant documents may be in the possession of third parties or may be currently

8

unknown to the Plaintiffs. As such, Plaintiffs reserve the right to supplement this response. Answering subject to this, see: Plaintiffs_000001-522, 580-654, 847, 854-864, 883-941.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Defendant admits to receiving a letter from the ARDC in her ROG 17 answer, and that she shared it publicly, but does not identify by Bates number where the letter is in her production or if she produced it at all. The ARDC makes it plainly clear on its website, where the complaint form is found, that initial inquiries are confidential (see response to ROG 14 above), Defendant purports to be an investigative journalist, has admitted to visiting the ARDC website, and the link to the flow chart above is on the ARDC webpage that is titled FILE A COMPLAINT. Defendant reviewed the ARDC website to find the complaint form and had to visit the page with the flow chart. Defendant made the post after she submitted the complaint using the form from the ARDC webpage that contained the flow chart. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden.

**Interrogatory No. 16** IDENTIFY all facts that support YOUR allegation in Paragraph 92 of the TAC that Day encouraged the public to make ethics complaints.

**Response:**
Same objections as Interrogatory No. 15.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents.

**Supplemental Response:** Subject to the above objections, Plaintiffs provide the following supplemental response: Plaintiffs search for evidence of Day's incitement of the public in her statements is ongoing and relevant documents may be in the possession of third parties or may be currently unknown to the Plaintiffs. As such, Plaintiffs reserve the right to supplement this response. Answering subject to this, see: Plaintiffs_000001-522, 580-654, 847, 854-864, 883-941.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden and the videos along with the usernames of the people who liked the posts and also commented thereon are in Defendant's possession.

Defendant's motive and intent to incite the public to submit ethical complaints against Ms. Braun can be reasonably inferred from the content of her posts, the timing and tone in which she published them, and Defendant's repeated engagement with her followers to push the false narrative that Ms. Braun committed ethical violations. One such post displayed typed text by the Defendant that said "I have an attorney representing me locally and in Illinois now to ensure this woman [Ms. Braun] is stopped. Enough is enough." Defendant's followers Plaintiff alleges that Defendant amplified negative narratives about Ms. Braun to incite her followers to join the fight against Ms. Braun to stop her from practicing law, and leveraging the controversy to increase her own audience

9

engagement. These actions demonstrate an intent to incite her followers while benefiting the Defendant's own social-media presence.

**Interrogatory No. 17** IDENTIFY all "members of the public" who were incited as a result of DAY's post.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and unduly burdensome, and seeking information outside Plaintiffs' knowledge or control (e.g., anonymous internet users).
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Subject to the above objections, Plaintiffs provide the following supplemental response: Plaintiffs search for evidence of Day's incitement of the public in her statements is ongoing and relevant documents may be in the possession of third parties or may be currently unknown to the Plaintiffs. As such, Plaintiffs reserve the right to supplement this response. Answering subject to this, see: Plaintiffs_000001-522, 580-654, 847, 854-864, 883-941.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden and the videos along with the usernames of the people who liked the posts and also commented thereon are in Defendant's possession. One username from TikTok is blueberry unicorn.

**Interrogatory No. 18** IDENTIFY the PERSON(S) who submitted "ethics complaint(s) to the ARDC against Ms. Braun."

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking information outside Plaintiffs' knowledge or control (complaints are confidential with ARDC).
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information in their possession, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden. Jamie Grayson, Rebekkah Day, Krista Carter, Sarah Rodden, Jessica Vazquez, Mariana Theriault, Ashley Danielson, Mariya Avanesyan, Danielle Rollins Harris, Erin Grosch, and Erica Fisk.

10

**Interrogatory No. 19** IDENTIFY the PERSONS who submitted "complaint(s) to the ARDC and requested the ARDC to investigate Ms. Braun."

**Response:**
Same objections as Interrogatory No. 18.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information in their possession, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. See Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 18. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden and the videos along with the comments thereon are in Defendant's possession.

**Interrogatory No. 20** IDENTIFY the "one attorney" assigned by the ARDC to investigate YOU.

**Response:**
Plaintiffs object as vague, ambiguous, and seeking confidential ARDC information not in Plaintiffs' control.
Subject to and without waiving objections, Plaintiffs will identify the attorney, subject to a protective order

**Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiff search for relevant documents, testimony, and information is ongoing, and will file a timely supplement this response. Answering subject to the above, John Cesario is the only attorney that was assigned to oversee the investigation of the ARDC complaints filed in Plaintiffs_000341, 523, 574, 588, 738, 824-828, 839-842, 922-923, 1044-1047, 1203-1206, 1253-1259.

**Interrogatory No. 21** IDENTIFY the "professional relationships with clients" disrupted as alleged in Paragraph 201 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking confidential client information.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents, if any, and information sufficient to identify such relationships, subject to a protective order.

**Supplemental Response:** Answering subject to the above objections, Kaitlynn Dempsey, Alyssa DeFord, Monsters and Martians.

11

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Illinois Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information *relating to the representation of a client* unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation, or an exception under Rule 1.6(b) applies. By its plain terms, Rule 1.6 protects all information "relating to the representation of a client," and such information must remain confidential unless consent is obtained or a narrow exception applies. [15] "A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order." Plaintiffs have no informed consent from the affected clients or former clients to disclose their identities. Several current and/or former clients have expressly declined to consent because they fear harassment, retaliation, or other harmful contact by Defendants and/or persons acting in concert with Defendants (including followers, affiliates, agents, or alleged co-conspirators). Those clients/former clients also seek to avoid the attendant reputational, emotional, and professional damage that can result from being publicly identified in this litigation or in related communications. Comment [15] to Rule 1.6 provides that, absent informed consent, counsel should "assert on behalf of the client all nonfrivolous claims" that compelled disclosure is not authorized or that the information is protected. Comment [15] further addresses counsel's obligation to consult with the client regarding appeal in the event of an adverse ruling. Consistent with Comment [15], if the Court orders Plaintiffs to disclose client and former client identities over the clients' and former clients' objections, Plaintiffs will take all nonfrivolous steps available to protect client confidentiality, including seeking reconsideration and other appropriate relief to protect them. This Request, and the Motion to Compel sanctions for non-disclosure of client identities, appears designed by Defendant to create a "gotcha" scenario, pressuring Plaintiffs to violate their ethical duties under the threat of sanctions. Plaintiffs will not be intimidated into violating the Illinois Rules of Professional Conduct. Plaintiffs will continue to comply fully with IRPC 1.6, Comment [15], and all other applicable professional obligations.

Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical

12

obligations under IRPC 1.6 and will follow comment 15. Subject to these limitations, Plaintiffs previously identified certain clients whose professional relationships were disrupted as a result of Defendants' conduct: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Defendants disrupted professional relationships with clients is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients was disrupted as a result of Defendant's conduct.

**Interrogatory No. 22** IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as alleged in Paragraph 207 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking confidential client information. Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents sufficient to identify such work, if any, subject to a protective order.

**Supplemental Response:** Answering subject to the above, Plaintiff cannot disclose the full nature of her engagements due to attorney client privilege. Answering generally, and without waiving attorney client privilege, Plaintiff lost trademark and copyright work from her clients.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 22. Plaintiffs do not have consent to reveal this information at this time.

**Interrogatory No. 23** Describe what YOU mean by YOUR clients "distancing" themselves, as alleged in Paragraph 208 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, and overbroad.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents sufficient to show such distancing, if any, subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiff offers a deposition on this topic and reserves the right to supplement her answer. Answering subject to this, Plaintiff lost work from her clients following the negative publicity caused by the Defendants.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 22. Plaintiffs' clients and former clients have stopped associating with Plaintiffs, or stopped associating in ways that show the public they are still associating with them. Plaintiffs were asked to leave a Facebook group to stop discourse among the members over Plaintiffs being a part of the group. At least one of Plaintiffs' clients has stopped communicating with them altogether: emails and text messages have gone unanswered.

13

**Interrogatory No. 24** IDENTIFY the PERSONS who submitted "several 1 star google reviews for Braun Law," as alleged in Paragraph 210 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking information outside Plaintiffs' control (anonymous reviewers).
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information in their possession.

**Supplemental Response:** Answering subject to and without waiving the above objections, Plaintiff cannot reasonably identify the identity of the persons that left 1-star google reviews. Answering subject to this objection, See Plaintiffs_001377-1378.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden. The actual identity of those persons is unknown to Plaintiffs as the usernames may not comprise the real identity of those persons. Plaintiffs are not in possession, custody, or control of the information sought in this request.

**Interrogatory No. 25** IDENTIFY the "clients [that] end[ed] their use of Braun Law for legal services out of fear of harassment," as alleged in Paragraph 210 of the TAC.

**Response:** Plaintiffs object as vague, ambiguous, overbroad, and seeking confidential client information.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents sufficient to identify such clients, if any, , subject to a protective order.

**Supplemental Response:** Answering subject to these objections, Plaintiffs cannot identify all lost clients due to attorney client privilege. Answering subject to this, see Kaitlynn Dempsey, Monsters and Martians, and Alyssa DeFord.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Plaintiffs refer the requesting party to their response to interrogatory number 22.  Plaintiffs Braun and Braun IP Law maintain and incorporate their prior objections, including that this Interrogatory is vague, ambiguous, overbroad, and seeks confidential client information protected by Illinois Rule of Professional Conduct 1.6 and applicable privilege law. Answering further, subject to and without waiving those objections, Plaintiffs state that disclosure of all client identities and professional relationships disrupted by Defendants' statements would require revelation of confidential client information and the nature of specific legal engagements. Plaintiffs therefore cannot disclose the full universe of disrupted relationships without violating their ethical obligations under IRPC 1.6 and will follow comment 15.  Defendants' have provided documents in their discovery responses, such as voice memos and text messages, stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public.  Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024,

14

regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024.  Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Subject to these limitations, Plaintiffs previously identified certain clients who ended their use of Braun Law for legal services out of fear of harassment: Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that clients ended their use of Braun Law for legal services out of fear or harassment is limited to only the three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

**Interrogatory No. 26:[1]** IDENTIFY all facts supporting YOUR allegation in Paragraph 212 of the TAC that "Defendants' past and present false statements on their aforesaid social media platforms caused great damage to Plaintiff Braun and Braun IP Law's business and harm to their reputation."

**Response:** Plaintiff objects that this request for "all facts" is overly burdensome and not proportional to the needs of this case. Plaintiff further objects that this interrogatory is better answered through a deposition.

Answering subject to, see: Plaintiffs_000001-523, 574, 580-654, 738, 824-828, 839-842, 847, 854-864, 883-941, 1044-1047, 1203-1206, 1253-1259.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden.  "All facts" is objected to. Plaintiffs provide many material facts below.

**Response:** Plaintiffs object to this ROG to the extent it is vague, ambiguous, overbroad, unduly burdensome, seeks speculation, seeks information not within Plaintiffs' possession, custody, or control, or seeks disclosure of confidential client information or privileged material; subject to and without waiving these objections, Plaintiffs state as follows. As alleged in the Third Amended Complaint, Defendants engaged in a coordinated campaign of false and disparaging online statements designed to incite an internet mob against Plaintiffs and to interfere with Plaintiffs' law practice, and the foreseeable result has been sustained harassment and reputational harm. Each time Plaintiffs publish a video or written content, anonymous accounts appear and post comments that repeat and regurgitate the same false accusations Defendants made in their social media posts and in updates to their GoFundMe page, demonstrating the ongoing influence and reach of Defendants' statements. The voicemail recordings Defendant produced in discovery further show that Defendant worked with others to coordinate the timing of posts to maximize harm, including intentionally publishing content on holidays when the public is more likely to be home and scrolling social media. Defendants also searched USPTO records to identify Plaintiffs' clients and then harassed or attempted to harass those clients by contacting them directly and by posting stories about them,

---

[1] Defendant Day did not serve an interrogatory No. 10. Per the Parties' agreement, Plaintiff will treat Interrogatory No. 26 as Defendant Day's 25th interrogatory. Plaintiffs Braun and Braun Law maintain their objections to answering any interrogatories beyond the 25 interrogatories permitted under Rule 33(a)(1).

which has caused Plaintiffs to fear filing new trademark applications or litigation because of the risk that Defendants or their co conspirators will target and harass clients associated with those filings. Plaintiffs are now required to disclose this risk to prospective clients during intake, resulting in lost business when individuals decline representation out of fear of being publicly attacked or damaged by Defendants and their supporters. Plaintiffs have likewise consulted with other attorneys for assistance in various matters, only to have attorneys decline involvement due to fear of being harassed and reputationally damaged. Plaintiffs cannot use a Google Business Profile, which is an industry standard tool, because anonymous and unidentifiable individuals with no legitimate interaction with Plaintiffs have posted false one star reviews as part of the same campaign. Plaintiffs have been forced to sever backlinks to their website that were not placed by Plaintiffs and that link to AI generated articles repeating Defendants' false allegations in order to prevent those articles from appearing in search results associated with Plaintiffs' firm. Plaintiffs have also installed call screening software to address the barrage of hang up and harassing phone calls generated by Defendants' campaign, which wastes firm resources and disrupts daily operations. Plaintiffs have spent countless hours responding to frivolous and meritless ARDC complaints prompted by Defendants' statements, and Plaintiffs cannot meaningfully invest in advertising, publications, or other marketing because such efforts are undermined by the public's continued repetition of Defendants' false claims, requiring Plaintiffs to divert substantial time and resources to mitigating and responding to ongoing digital attacks.  Plaintiffs removed the listing of its employees from its website to save them from becoming targets.  Plaintiffs have had potential employees or contractors decline positions with the firm because of fear of becoming a target of the campaign.

**Objection to Interrogatories 27–35**

Plaintiffs object to Interrogatories Nos. 27 through 35 on the ground that they exceed the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1), which limits parties to 25 interrogatories, including all discrete subparts, absent stipulation or leave of court. Defendant has neither obtained Plaintiffs' consent nor leave of court to exceed this limit. Plaintiffs therefore decline to provide substantive responses to Interrogatories Nos. 26–35.

*I hereby certify that the foregoing responses are complete and correct as of the time they are made based on the party's knowledge, information, and belief formed after a reasonable inquiry.*

Dated: April 6, 2026                                    Respectfully submitted,

*/s/Jeanette Braun*
Jeanette Braun
Pro Se Litigant
1600 W. Lake Street,
Suite 103B
Addison, IL 60101
(312) 373-0330

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I have thereby electronically served Defendant's counsel with a copy of PLAINTIFFS BRAUN AND BRAUN IP LAW LLC'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT REBEKAH DAY'S FIRST SET OF INTERROGATORIES via email to:

Brandon Witkow
bw@witkowlaw.com
21031 Ventura Boulevard
 Suite 700
Woodland Hills, CA 91364

Cory Alexander Baskin
Witkow, Baskin
21031 Ventura Blvd
Suite 700
Wooodland Hills, CA
cb@witkowlaw.com

Amy Doig
Cozen & O'Connor
123 N Wacker Drive
Suite 1800
Chicago, IL 60606
adoig@cozen.com


Date: April 6, 2026                                    */s/Jeanette Braun*
                                                       Jeanette Braun
                                                       Pro Se Litigant
                                                       1600 W. Lake Street,
                                                       Suite 103B
                                                       Addison, IL 60101
                                                       (312) 373-0330

17

**Exhibit C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN, & | ) | |
| BRAUN IP LAW, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| | ) | |
| v. | ) | Hon. J. Mary Rowland |
| | ) | |
| REBEKAH M. DAY NEE BOXX, & | ) | Mag. J. M. David Weisman |
| LILY MARSTON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS BRAUN AND BRAUN IP LAW LLC'S SECOND SUPPLEMENTAL
RESPONSE TO DEFENDANT LILY MARSTON'S FIRST SET OF
INTERROGATORIES**

Plaintiffs Jeanette Braun and Braun IP Law, LLC ("Plaintiffs"), by and through undersigned counsel, hereby further responds to Defendant Lily Marston's First Interrogatories, subject to and without waiving the general and specific objections set forth herein.

These responses are made solely for purposes of this litigation. By responding, Plaintiffs do not concede the relevance, materiality, or admissibility of any information provided, nor waive any objections to the use of such information for any purpose other than this action.

Plaintiffs object to each Interrogatory to the extent it seeks information beyond the scope of permissible discovery under Rules 26 and 33 of the Federal Rules of Civil Procedure, including information that is irrelevant, disproportionate to the needs of the case, unduly burdensome, or not reasonably accessible. Plaintiffs further object to each Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, common interest doctrine, or any other applicable privilege or protection.

1

To the extent any Interrogatory requests information that may be in the possession of third parties or otherwise outside Plaintiffs' custody or control, Plaintiffs object on the ground that they cannot be compelled to produce such information.

The responses provided herein reflect information presently known to Plaintiffs after a reasonable inquiry. Plaintiffs reserve the right to supplement, amend, or correct these responses if additional information becomes available in accordance with Rule 26(e).

### General Objections

1.  Overbreadth / Burden: Plaintiffs object to each Interrogatory to the extent it is overly broad, unduly burdensome, or not reasonably limited in time, scope, or subject matter.

2.  Relevance: Plaintiffs object to each Interrogatory to the extent it seeks information that is irrelevant to any claim or defense in this action or not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).

3.  Privilege: Plaintiffs object to each Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or protection. Any inadvertent disclosure of such protected information shall not constitute a waiver.

4.  Confidential / Sensitive Information: Plaintiffs object to each Interrogatory to the extent it seeks disclosure of confidential, private, proprietary, or commercially sensitive information, including client identities and communications, unless subject to an appropriate protective order.

5.  Speculation / Legal Conclusions: Plaintiffs object to each Interrogatory to the extent it

2

assumes facts not established, calls for speculation, seeks legal conclusions, or requires

Plaintiffs to adopt Defendant's characterization of facts, issues, or law.

6. Vagueness / Ambiguity: Plaintiffs object to each Interrogatory to the extent it is vague,

   ambiguous, unintelligible, or uses undefined terms subject to multiple interpretations.

7. Third-Party Information: Plaintiffs object to each Interrogatory to the extent it seeks

   information not within Plaintiffs' possession, custody, or control, including information

   that may be held by third parties.

8. Premature / Expert Discovery: Plaintiffs object to any Interrogatory that calls for premature

   disclosure of expert testimony, trial exhibits, or witness statements outside the scope and

   timing of expert discovery or pretrial disclosures.

9. Reservation of Rights: Plaintiffs reserve all objections to the admissibility, competency,

   relevance, or materiality of any information provided herein. Plaintiffs further reserve the

   right to supplement or amend these responses in accordance with Rule 26(e).

## INTERROGATORY RESPONSES

**Interrogatory No. 1** IDENTIFY all COMMUNICATIONS YOU have issued on behalf of Alyssa DeFord p/k/a "Bunnie XO" pursuant to the DMCA to PLATFORMS demanding that they "take down" content.

**Response:**
Plaintiffs object as overbroad, unduly burdensome, irrelevant, and seeking privileged client communications. Plaintiffs further object that this Interrogatory seeks information outside Plaintiffs' possession, custody, or control.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant communications in their possession with Alyssa DeFord, if any, subject to a protective order.

**Supplemental Response:** Answering subject to and without waiving the foregoing objections, Plaintiffs state as follows: Plaintiffs are not producing additional documents or information responsive to this Interrogatory because it seeks material that is irrelevant, disproportionate to the

needs of the case, and unduly burdensome. Defendant Marston's statements that are the subject of this litigation specifically reference allegations of "perjury" relating to the Demps DMCA filings, not to any takedowns involving Alyssa DeFord p/k/a Bunnie XO. Communications concerning other clients or DMCA matters are therefore outside the scope of the pleadings and have no bearing on the claims or defenses in this case. Additionally, the Interrogatory seeks client communications that are protected by the attorney–client privilege and work product doctrine, and that would require the disclosure of confidential and proprietary client information unrelated to this lawsuit. Producing such materials would be unduly burdensome and invasive, particularly given the absence of any showing that they are relevant or proportional under Rule 26(b)(1). Accordingly, Plaintiffs decline to produce further information in response to this Interrogatory on the grounds of relevance, proportionality, undue burden, and privilege.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Illinois Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information *relating to the representation of a client* unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation, or an exception under Rule 1.6(b) applies. By its plain terms, Rule 1.6 protects all information "relating to the representation of a client," and such information must remain confidential unless consent is obtained or a narrow exception applies. [15] "A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order." Plaintiffs have no informed consent from the affected clients or former clients to disclose work done on their behalf. Several current and/or former clients have expressly declined to consent because they fear harassment, retaliation, or other harmful contact by Defendants and/or persons acting in concert with Defendants (including followers, affiliates, agents, or alleged co-conspirators). Those clients/former clients also seek to avoid the attendant reputational, emotional, and professional damage that can result from being publicly identified in this litigation or in related communications. Comment [15] to Rule 1.6 provides that, absent informed consent, counsel should "assert on behalf of the client all nonfrivolous claims" that compelled disclosure is not authorized or that the information is protected. Comment [15] further addresses counsel's obligation to consult with the client regarding appeal in the event of an adverse ruling. Consistent with Comment [15], if the Court orders Plaintiffs to disclose client and former client work product without consent or over the clients' and former clients' objections, Plaintiffs will take all nonfrivolous steps available to protect client confidentiality, including seeking reconsideration and other appropriate relief to protect them. This Request, and the Motion to Compel sanctions for non-disclosure of client identities, appears designed by Defendant to create a "gotcha" scenario, pressuring Plaintiffs to violate their ethical duties under the threat of sanctions. Plaintiffs will not be intimidated into violating the Illinois Rules of Professional Conduct. Plaintiffs will continue to comply fully with IRPC 1.6, Comment [15], and all other applicable professional obligations.

**Interrogatory No. 2**

4

IDENTIFY all COMMUNICATIONS YOU have issued on behalf of Kaitlynn Dempsey p/k/a "Demps" pursuant to the DMCA to PLATFORMS demanding that they "take down" content.

**Response:**
Same objections as Interrogatory No. 1.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant communications in their possession with Kaitlynn Dempsey, if any, subject to a protective order.

**Supplemental Response:** Plaintiffs object to this Interrogatory as overbroad, unduly burdensome, and seeking information protected by the attorney–client privilege and attorney work product doctrine. Plaintiffs further object that this Interrogatory seeks confidential client communications unrelated to the claims or defenses in this matter. Subject to and without waiving these objections, Plaintiffs state that they will produce non-privileged, relevant communications in their possession relating to DMCA takedown notices issued on behalf of Kaitlynn Dempsey p/k/a "Demps", if any, and only to the extent such communications are not protected by privilege or work product.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Illinois Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information *relating to the representation of a client* unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation, or an exception under Rule 1.6(b) applies. By its plain terms, Rule 1.6 protects all information "relating to the representation of a client," and such information must remain confidential unless consent is obtained or a narrow exception applies. [15] "A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order." Plaintiffs have no informed consent from the affected clients or former clients to disclose work done on their behalf. Several current and/or former clients have expressly declined to consent because they fear harassment, retaliation, or other harmful contact by Defendants and/or persons acting in concert with Defendants (including followers, affiliates, agents, or alleged co-conspirators). Those clients/former clients also seek to avoid the attendant reputational, emotional, and professional damage that can result from being publicly identified in this litigation or in related communications. Comment [15] to Rule 1.6 provides that, absent informed consent, counsel should "assert on behalf of the client all nonfrivolous claims" that compelled disclosure is not authorized or that the information is protected. Comment [15] further addresses counsel's obligation to consult with the client regarding appeal in the event of an adverse ruling. Consistent with Comment [15], if the Court orders Plaintiffs to disclose client and former client work product without consent or over the clients' and former clients' objections, Plaintiffs will take all nonfrivolous steps available to protect client confidentiality, including seeking reconsideration and other appropriate relief to protect them. This Request, and the Motion to Compel sanctions for non-disclosure of client identities, appears designed by Defendant to create a "gotcha" scenario, pressuring Plaintiffs to violate their ethical duties under the threat of sanctions. Plaintiffs will not be intimidated into violating the Illinois Rules of Professional Conduct. Plaintiffs will continue to comply fully with IRPC 1.6, Comment [15], and all other applicable professional obligations.

5

**Interrogatory No. 3** IDENTIFY all efforts YOU undertook to determine that EPISODE 97 did not constitute "fair use," including any opinion of counsel, prior to YOUR submission of a takedown notice to YouTube on December 3, 2023.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, irrelevant, and seeking attorney–client privileged information and work product.
Subject to and without waiving objections, Plaintiffs state they reviewed Episode 97 and determined it was not protected fair use. Plaintiffs will produce non-privileged, relevant documents in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, irrelevant, and as seeking information protected by the attorney–client privilege and attorney work product doctrine. The Interrogatory improperly seeks disclosure of legal analysis, opinions of counsel, and attorney mental impressions regarding copyright and fair use determinations made in connection with a client matter. Such information is privileged and protected from discovery under Federal Rule of Civil Procedure 26(b)(3). Plaintiffs further object that the Interrogatory calls for disclosure of attorney–client communications and counsel's legal reasoning, which are not subject to production. Plaintiffs stand on these objections and will not produce any information or documents in response.

**Interrogatory No. 4** IDENTIFY all DOCUMENTS, including COMMUNICATIONS, YOU have issued on behalf of ANY of YOUR clients pursuant to the DMCA to PLATFORMS demanding takedown of content from January 1, 2022 to present.

**Response:**
Plaintiffs object as overbroad, unduly burdensome, irrelevant, and seeking privileged client communications.
Subject to and without waiving objections, Plaintiffs will not produce documents in response to this request.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, irrelevant, and as seeking information protected by the attorney–client privilege and attorney work product doctrine. The Interrogatory improperly seeks disclosure of legal analysis, opinions of counsel, and attorney mental impressions regarding copyright and fair use determinations made in connection with a client matter. Such information is privileged and protected from discovery under Federal Rule of Civil Procedure 26(b)(3). Plaintiffs further object that the Interrogatory calls for disclosure of attorney–client communications and counsel's legal reasoning, which are not subject to production. Plaintiffs stand on these objections and will not produce any information or documents in response.

**Interrogatory No. 5** IDENTIFY each client that YOU contend was lost as a result of the conduct YOU allege against MARSTON in the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking confidential client information.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents sufficient to identify such clients, if any, subject to a protective order.

6

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, and as seeking the disclosure of confidential and privileged client information protected by the attorney–client privilege and attorney work product doctrine. Plaintiffs cannot identify all clients or disclose information regarding attorney–client relationships without violating those protections. Answering subject to and without waiving these objections, Plaintiffs state that the following clients were lost or adversely affected as a result of the conduct alleged against Defendant Marston in the Third Amended Complaint: Kaitlynn Dempsey (p/k/a "Demps"), Alyssa DeFord (p/k/a "Bunnie XO"), and Monsters and Martians. Plaintiffs further state that the process of obtaining consent from certain clients to disclose their names is ongoing, and Plaintiffs expressly reserve the right to supplement this response as additional information or client consent becomes available.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Illinois Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information *relating to the representation of a client* unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation, or an exception under Rule 1.6(b) applies. By its plain terms, Rule 1.6 protects all information "relating to the representation of a client," and such information must remain confidential unless consent is obtained or a narrow exception applies. [15] "A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order." Plaintiffs have no informed consent from the affected clients or former clients to disclose their identities. Several current and/or former clients have expressly declined to consent because they fear harassment, retaliation, or other harmful contact by Defendants and/or persons acting in concert with Defendants (including followers, affiliates, agents, or alleged co-conspirators). Those clients/former clients also seek to avoid the attendant reputational, emotional, and professional damage that can result from being publicly identified in this litigation or in related communications. Comment [15] to Rule 1.6 provides that, absent informed consent, counsel should "assert on behalf of the client all nonfrivolous claims" that compelled disclosure is not authorized or that the information is protected. Comment [15] further addresses counsel's obligation to consult with the client regarding appeal in the event of an adverse ruling. Consistent with Comment [15], if the Court orders Plaintiffs to disclose client and former client identities without consent or over the clients' and former clients' objections, Plaintiffs will take all nonfrivolous steps available to protect client confidentiality, including seeking reconsideration and other appropriate relief to protect them. This Request, and the Motion to Compel sanctions for non-disclosure of client identities, appears designed by Defendant to create a "gotcha" scenario, pressuring Plaintiffs to violate their ethical duties under the threat of sanctions. Plaintiffs will not be intimidated into violating the Illinois Rules of Professional Conduct. Plaintiffs will continue to comply fully with IRPC 1.6, Comment [15], and all other applicable professional obligations. Further, in view of the documents Defendants' have provided in their discovery responses, such as voice memos and text messages, stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, as evidenced by various items in Defendants' production, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started

7

against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Kaitlynn Dempsey, Alyssa DeFord, and Monsters and Martians ("Identified Clients"). Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that Braun lost clients as a result of Marston's conduct is limited to only these three Identified Clients, and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

**Interrogatory No. 6** IDENTIFY the factual and legal bases for YOUR submission of a takedown notice to YouTube RELATING TO EPISODE 97 on December 3, 2023.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, irrelevant, and seeking privileged communications and work product.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents in their possession, if any, subject to a protective order.

**Supplemental Response: Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, irrelevant, and as seeking information protected by the attorney–client privilege and attorney work product doctrine. The Interrogatory improperly seeks disclosure of legal analysis, opinions of counsel, and attorney mental impressions regarding copyright and fair use determinations made in connection with a client matter. Such information is privileged and protected from discovery under Federal Rule of Civil Procedure 26(b)(3). Plaintiffs further object that the Interrogatory calls for disclosure of attorney–client communications and counsel's legal reasoning, which are not subject to production. Plaintiffs stand on these objections and will not produce any information or documents in response.
**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Defendant copied the work without authorization from Plaintiffs, for a commercial purpose, did not transform it, took the heart of the work, took a substantial portion of the work, distributed it widely, and destroyed Plaintiffs ability to profit from the work. Plaintiffs own the copyright to the work. Petitioner's Complaint, entire document, Opening Brief, entire document, and Reply Brief, entire document. These are public record and already in Marston's possession.

**Interrogatory No. 7** IDENTIFY the identity of each PERSON in the "angry internet mob" alleged in Paragraph 122 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, unduly burdensome, and seeking information outside Plaintiffs' knowledge or control.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. The term "angry internet mob," as used in Paragraph 122 of the Third Amended Complaint, refers to a large and indeterminate group of individuals on social media who have engaged in coordinated or spontaneous harassment, defamation, and threats toward Plaintiffs and their clients. Identifying each

8

such person individually would be impossible and unduly burdensome, as the group consists of potentially hundreds of anonymous online users and third parties whose identities are unknown to Plaintiffs. Answering subject to and without waiving these objections, Plaintiffs refer to the examples, screenshots, and other materials previously produced in discovery that illustrate the nature and scope of this online harassment. These materials are contained within Plaintiffs' document production, including social-media posts, comments, messages, and correspondence that reflect the conduct described in Paragraph 122 of the TAC. Plaintiffs believe this production provides representative evidence responsive to this request and will supplement as appropriate under Rule 26(e) if additional identifiable individuals or materials become known.

**Interrogatory No. 4** IDENTIFY each "public comment, video, and message" alleged in Paragraph 123 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and unduly burdensome.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. The phrase "public comment, video, and message," as used in Paragraph 123 of the Third Amended Complaint, refers to a large and indeterminate number of statements, posts, videos, and online messages made by Defendants and by individuals acting in concert with or inspired by them. These communications occurred across multiple social media platforms and include both coordinated and spontaneous attacks, harassment, and defamatory commentary directed at Plaintiffs and their clients. Identifying each such comment, video, or message individually would be impossible and unduly burdensome, as many of the posts are anonymous or no longer accessible, and the volume of such content numbers in the hundreds or more. Answering subject to and without waiving these objections, Plaintiffs refer to the representative examples, screenshots, and materials already produced in discovery that reflect the nature, tone, and scope of the online conduct described in Paragraph 123 of the TAC. These materials are contained within Plaintiffs' prior document production, including social-media posts, videos, comments, and messages illustrating the described harassment. Plaintiffs believe this production provides representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive materials become known or available.

**Interrogatory No. 9** IDENTIFY each "statement made by Defendants" that incited threats as alleged in Paragraph 124 of the TAC.

**Response:**
Same objections as Interrogatory No. 8.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. The phrase "each statement made by Defendants" as used in Paragraph 124 of the Third Amended Complaint refers to a broad and indeterminate set of online statements, posts, and comments made

9

by Defendants that encouraged, instigated, or otherwise contributed to harassment and threats directed at Plaintiffs and their clients. Identifying every such statement individually would be impossible and unduly burdensome, as these communications occurred across multiple platforms, were amplified by Defendants' followers, and involve potentially hundreds of third-party comments and reposts, many of which are anonymous or no longer accessible. Answering subject to and without waiving these objections, Plaintiffs refer to the representative examples, screenshots, and materials already produced in discovery that illustrate the statements made by Defendants and the resulting online threats described in Paragraph 124 of the TAC. These materials are contained within Plaintiffs' prior document production, including social-media posts, videos, and related correspondence reflecting the incitement and harassment referenced in the Complaint. Plaintiffs believe this production provides representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive statements or materials become known or available.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. This information is equally available to Defendant at a lesser burden. Plaintiffs respond that Defendant is a monetized social media content creator who promotes discourse and drama that she monetizes from sponsorships, views, and user engagement, including compensation from Youtube, and over 12 different audio platforms based on views, and that after Plaintiff Braun assisted Propson with a DMCA complaint that resulted in removal of Carter's Facebook post, Defendant posted a series of inflammatory videos accusing Braun by name of professional misconduct, including filing false copyright claims and acting in bad faith as an attorney; Defendant escalated by identifying Braun by name and repeating false accusations across platforms including YouTube, Spotify, Twitter, and a GoFundMe, to name a few, campaign page while fundraising, that these accusations were made during settlement discussions and were designed to discredit Braun's professional conduct, and that the posts received hundreds of thousands of views, supporting the inference that the content was crafted to mobilize Defendant's followers; Defendant framed her accusations as objective fact and repeated the accusations made by Carter emphasizing tha Carter had receipts, deets, and proof, presenting supposed evidence through screenshots and lists, and using a compilation that Plaintiffs allege was misleading and decontextualized, which supports Plaintiffs' contention that the statements were designed to rally her audience by presenting the accusations as proven; Plaintiffs also rely on widely reported dynamics that screencaps and evidence style callouts can be weaponized to trigger pile ons against a named target, and in light of that context Plaintiffs contend the conduct alleged in the Third Amended Complaint, including naming Braun, accusing her of unethical conduct, and amplifying the message to a mass audience for profit and while fundraising, supports the allegation that the statements were designed to incite Defendant's fanbase against Braun; as to the identity of the fans so incited, Plaintiffs' present knowledge is limited and much of the identifying information is held by third party platforms, and Plaintiffs identify the fans so incited as the individuals who comprise Defendant's audience and who engaged with the Braun related TikTok video or videos and the GoFundMe campaign page described in the Third Amended Complaint, including those who viewed, liked, commented, reposted or shared, and or donated in response to those posts, but Plaintiffs do not possess complete real world identifying information for all such individuals and to the extent identities exist they are typically reflected only as platform usernames or display names or donor identifiers displayed on fundraising pages, with any additional identifying information residing with the platforms or other third parties; accordingly, to the extent the Interrogatory seeks names of specific individuals, Plaintiffs' identification at this stage is limited to publicly visible

account identifiers and donation identifiers reflected in the relevant platform records and any non party identifiers that may be produced by third parties in discovery.

**Interrogatory No. 10** IDENTIFY each "intimidating communication or threat" alleged in Paragraph 125 of the TAC.

**Response:**
Same objections as Interrogatory No. 8.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. The phrase "intimidating communication or threat," as used in Paragraph 125 of the Third Amended Complaint, refers to numerous messages, posts, and other online conduct by Defendants and individuals acting in concert with or inspired by them that conveyed harassment, intimidation, or threats toward Plaintiffs and their clients. These communications occurred across multiple platforms, often anonymously, and in some cases have since been deleted or are otherwise inaccessible. Identifying each communication or threat individually would be impossible and unduly burdensome given the volume, anonymity, and constantly evolving nature of the online activity at issue. Answering subject to and without waiving these objections, Plaintiffs refer to the representative examples, screenshots, and materials already produced in discovery that illustrate the threatening and intimidating communications described in Paragraph 125 of the TAC. These materials are contained within Plaintiffs' prior document production, including social-media posts, direct messages, comments, and correspondence evidencing the harassment and threats directed at Plaintiffs and their clients. Plaintiffs believe this production provides representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive materials become known or available.

**Interrogatory No. 11**

IDENTIFY each "threat of violence" alleged in Paragraph 126 of the TAC.

**Response:**
Same objections as Interrogatory No. 8.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. The phrase "threat of violence," as used in Paragraph 126 of the Third Amended Complaint, refers to numerous messages, posts, and other online conduct by Defendants and individuals acting in concert with or inspired by them that conveyed harassment, intimidation, violence or threats toward Plaintiffs and their clients. These communications occurred on Defendant's platforms, such as YouTube, Twitter, and Reddit, across multiple platforms, often anonymously, like on Reddit, and in some cases have since been deleted or are otherwise inaccessible. Identifying each communication or threat individually would be impossible and unduly burdensome given the volume, anonymity, and constantly evolving nature of the online activity at issue. Defendant has access to these more so

11

than Plaintiffs do. Defendant has the ability to delete them, which may have happened. Answering subject to and without waiving these objections, Plaintiffs refer to the representative examples, screenshots, and materials already produced in discovery that illustrate the threatening and intimidating communications described in Paragraph 126 of the TAC. These materials are contained within Plaintiffs' prior document production, including social-media posts, direct messages, comments, and correspondence evidencing the harassment and threats directed at Plaintiffs and their clients. Plaintiffs believe this production provides representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive materials become known or available.

**Interrogatory No. 12** IDENTIFY each "ex parte communication from the internet mob" alleged in Paragraph 128 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking information outside Plaintiffs' possession, custody, or control.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant materials in their possession, if any.

**Supplemental Response:** Answering subject to and without waiving the above objections, Plaintiffs are not in possession of any responsive documents requested in the interrogatory. As Defendants should remember, the list of all communications received by the Court was raised in a status hearing before the Court. Defendants are in an equal position to obtain a transcript of the Court's comments on the ex-parte communications.

**Interrogatory No. 13** IDENTIFY the PERSONS who submitted "negative and 1 star google reviews" alleged in Paragraph 129 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking information outside Plaintiffs' control (e.g., anonymous reviewers).
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information in their possession, if any.

**Supplemental Response:** Answering subject to and without waiving the above objections, Plaintiff cannot reasonably identify the identity of the persons that left 1-star google reviews. Answering subject to this objection, See Plaintiffs_001377-1378.

**Interrogatory No. 14** IDENTIFY posts/content where Defendants allegedly encouraged disparaging content as described in Paragraph 130 of the TAC.

**Response:**
Same objections as Interrogatory No. 8.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control.

12

The phrase "posts/content where Defendants allegedly encouraged disparaging content," as used in Paragraph 130 of the Third Amended Complaint, refers to a broad and indeterminate set of online posts, videos, and messages by Defendants that invited, encouraged, or amplified disparaging, defamatory, or harassing statements about Plaintiffs and their clients. These communications occurred across multiple social media platforms and were often reposted, commented on, or otherwise magnified by Defendants' followers and third parties. Identifying each such instance individually would be impossible and unduly burdensome given the scope, anonymity, and ephemeral nature of the online conduct at issue. Answering subject to and without waiving these objections, Plaintiffs refer to the representative examples, screenshots, and materials already produced in discovery that illustrate the nature and scope of the disparaging content and Defendants' role in promoting or encouraging it, as described in Paragraph 130 of the TAC. These materials are contained within Plaintiffs' prior document production, including social-media posts, comments, and correspondence reflecting Defendants' encouragement of disparaging content. Plaintiffs believe this production provides representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive materials become known or available.

**Interrogatory No. 15** IDENTIFY the contact information for Monsters and Martians.

**Response:**
Plaintiffs object as harassing, overbroad, unduly burdensome, irrelevant, and seeking confidential third-party information.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant identifying information in their possession, subject to a protective order.

**Supplemental Response:** Plaintiffs object to this Interrogatory as harassing, overbroad, unduly burdensome, irrelevant, and as seeking confidential and privileged third-party information, including information protected by the attorney–client privilege. Plaintiffs further object that this Interrogatory seeks information not proportional to the needs of the case and unrelated to any claim or defense. Answering subject to and without waiving these objections, Plaintiffs state that the publicly available business contact information for Monsters and Martians is info@monstersandmartians.com, 6416 Sea Swallow St, NORTH LAS VEGAS, NV, 89084, 702-403-8542. Plaintiffs will not disclose additional identifying or privileged client information without client consent or further court order.

**Interrogatory No. 16** IDENTIFY all facts supporting YOUR allegation in Paragraph 133 of the TAC that Defendants conspired with third parties.

**Response:**
Plaintiffs object as vague, ambiguous, argumentative, overbroad, and unduly burdensome. Plaintiffs further object to the extent this Interrogatory seeks "all facts" and attorney work product.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents in their possession, if any.

**Supplemental Response:** Plaintiffs maintain their objections that this Interrogatory is vague, ambiguous, argumentative, overbroad, and unduly burdensome, and further object to the extent it seeks disclosure of all facts, attorney work product, and information protected by the attorney–client privilege. Plaintiffs also object that this Interrogatory seeks information beyond the scope of Rule 26(b)(1) and not proportional to the needs of the case. Answering subject to and without waiving these objections, Plaintiffs state that their investigation and search for responsive, non-privileged

13

information are ongoing, and they will supplement this response as appropriate under Rule 26(e) upon identifying additional relevant facts or materials. Plaintiffs further refer to the non-privileged, representative documents and communications already produced in discovery that reflect Defendants' coordination and collaboration with third parties concerning Plaintiffs and the subject matter of the Third Amended Complaint.

**Second Supplemental Response:** Answering subject to the objections, Plaintiffs reserve the right to supplement this right with deposition testimony. This information is equally available to Defendant at a lesser burden. The Defendants produce to Plaintiffs voice memos that are not Bates numbered where Day, Carter, and Grayson conspired to post content during times that would damage Plaintiffs the most, such as during the holidays when most people are scrolling on social media, and Day states she talked with Marston about the timing of the posts and which platform should be posted to first, and who should post first, and more. Plaintiffs are still processing the over 1500 voice memos received from Defendants and reserve the right to supplement this answer as the process continues.

**Interrogatory No. 17:** IDENTIFY by name, address, phone number, email, social media handle and any other identifying information all "members of the public" who were incited as a result of DAY's post (specified in paragraphs 85 & 86 of the TAC).

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and as seeking information outside Plaintiffs' personal knowledge or control. Plaintiffs further object that this Interrogatory seeks the identification of third parties, including anonymous online users, whose personal information is confidential, not reasonably obtainable, and not proportional to the needs of the case under Rule 26(b)(1). Plaintiffs also object that the request calls for speculation and seeks information not within Plaintiffs' possession, custody, or control. Answering subject to and without waiving these objections, Plaintiffs state that they do not possess identifying information for every member of the public who was incited by Defendant Day's posts described in Paragraphs 85 and 86 of the Third Amended Complaint. The term "members of the public" refers to a large and indeterminate group of online users and followers who engaged in harassing or defamatory conduct toward Plaintiffs and their clients in response to Defendant Day's statements. Identifying each such person individually would be impossible and unduly burdensome, as many are anonymous or no longer accessible. Plaintiffs refer to the representative examples, screenshots, and other materials previously produced in discovery that reflect the nature and scope of the public's reaction to Defendant Day's posts, including comments, messages, and posts evidencing harassment or incitement. Plaintiffs believe these materials provide representative evidence responsive to this Interrogatory and will supplement as appropriate under Rule 26(e) if additional responsive information becomes available.

**Interrogatory No. 18:** IDENTIFY by name, address, phone number, email, social media handle and any other identifying information the PERSON(S) who submitted "ethics complaint(s) to the ARDC against Ms. Braun," as alleged in paragraph 92 of the TAC.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, overbroad, unduly burdensome, and seeking information that is confidential and protected from disclosure under Illinois Supreme Court Rule 766, which provides that all proceedings before the Attorney Registration and Disciplinary Commission ("ARDC") and its Administrator are confidential unless and until a formal complaint is filed and becomes public. Plaintiffs further object that the Interrogatory seeks privileged attorney–client communications, attorney work product, and

14

confidential third-party information not proportional to the needs of the case under Rule 26(b)(1). Answering subject to and without waiving these objections, Plaintiffs state that they cannot identify or disclose the names or contact information of any individuals who may have submitted ethics complaints or related communications to the ARDC regarding Ms. Braun because such information is confidential under Rule 766 and not subject to disclosure absent authorization by the ARDC or a court order. Plaintiffs further state that they are not aware of any public filing or formal disciplinary complaint by the ARDC against Ms. Braun. Plaintiffs expressly stand on these objections and will not produce additional information responsive to this Interrogatory absent authorization from the ARDC or directive of the Court.

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. This information is equally available to Defendant at a lesser burden. Without waiving any objections, the names are Jamie Grayson, Rebekkah Day, Krista Carter, Sarah Rodden, Jessica Vazquez, Mariana Theriault, Ashley Danielson, Mariya Avanesyan, Danielle Rollins Harris, Erin Grosch, and Erica Fisk. The contact information for Jamie Grayson, Rebekkah Day, Krista Carter and Jessica Vazquez is already in Defendant's possession. Plaintiff does not possess the contact information for Mariana Theriault, Ashley Danielson, or Mariya Avanesyan. These complaints were sent to Plaintiffs by the ARDC through a link and access to the link has expired or been stopped. Sarah Rodden's email address is <sarahkrodden@gmail.com>. Plaintiffs do not have her address, phone number, social media handle, or any other information requested for her because she did not include it in her complaint. Danielle Rollins Harris Danielle.Rollins@gmail.com (817) 821-1516 6628 Richardson Dr., Watauga, TX 76148. Plaintiffs do not possess the rest of the information requested as it was not included in her complaint. Erica Fisk, 1910 Wieneke Rd., Saginaw, MI 48638, 989-412-3907, efisk2168@gmail.com. Ms. Fisk has many social media accounts and consistently opens new accounts under usernames that are not readily identifiable as her accounts. She is known to have social media accounts on TikTok and Reddit. One of her known accounts on TikTok was @snarkysnarks but Plaintiffs do not know the status of that account. Erin Grosch, 23619 81st St., Salem, WI, 53168, work phone 847-395-3000, cell phone is 262-716-2320. ering0615@yahoo.com.

**Interrogatory No. 19** IDENTIFY any statements, declarations, or testimony you intend to use against Marston.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and premature to the extent it seeks trial exhibits or witness testimony before required under Rule 26.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, overbroad, unduly burdensome, and as premature to the extent it seeks the identification of statements, declarations, or testimony that Plaintiffs may use at trial or in future motion practice. Plaintiffs further object on the grounds that this Interrogatory seeks disclosure of attorney–client communications, attorney work product, and mental impressions of counsel regarding trial strategy and anticipated evidence, which are protected from discovery under Federal Rule of Civil Procedure 26(b)(3) and applicable privilege law. Answering subject to and without waiving these objections, Plaintiffs state that they have not yet finalized the list of statements, declarations, or testimony they may rely upon in support of their claims against Defendant Marston. Plaintiffs will identify such materials, to the extent

15

required, in accordance with their obligations under Rule 26(a)(3) and any applicable pretrial scheduling order. Plaintiffs expressly stand on their privilege and work-product objections and will not provide further information in response at this time.

**Interrogatory No. 20** IDENTIFY all facts supporting YOUR claim for damages as alleged in Paragraph 177 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and unduly burdensome to the extent it seeks "all facts." Plaintiffs further object as premature and seeking expert testimony.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents evidencing damages, if any.

**Supplemental Response**: Plaintiffs maintain their objections that this Interrogatory is vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that it seeks disclosure of attorney–client communications, attorney work product, and counsel's mental impressions and legal theories concerning the analysis and computation of damages, which are protected from discovery under Federal Rule of Civil Procedure 26(b)(3) and applicable privilege law. Answering subject to and without waiving these objections, Plaintiffs state that their damages continue to accrue and are based on reputational harm, loss of clients and business opportunities, emotional distress, and expenses incurred in mitigating the damage caused by Defendants' conduct. Plaintiffs' investigation and analysis of damages are ongoing, and they will supplement this response under Rule 26(e) as additional non-privileged, relevant information becomes available or as expert discovery proceeds. Plaintiffs expressly stand on their privilege and work-product objections and will not disclose privileged analyses or attorney communications regarding damages calculations.

**Second Supplemental Response:** Answering subject to the objections, Plaintiffs reserve the right to supplement this right with deposition testimony. See the answer to ROG 26 -1 for Day. Paragraph 177 of the TAC refers to Day's conduct causing damage. Answering subject to the objections and without waiving them, Plaintiffs reserve the right to supplement this right with deposition testimony. Pursuant to Rule 33(d), Plaintiffs also refer the requesting party to the business records being produced previously from which the information responsive to this Interrogatory may be derived or ascertained with equal burden. "All facts" is objected to. Plaintiffs provide many material facts below.
As alleged in the Third Amended Complaint, Defendants engaged in a coordinated campaign of false and disparaging online statements designed to incite an internet mob against Plaintiffs and to interfere with Plaintiffs' law practice, and the foreseeable result has been sustained harassment and reputational harm. Each time Plaintiffs publish a video or written content, anonymous accounts appear and post comments that repeat and regurgitate the same false accusations Defendants made in their social media posts and in updates to their GoFundMe page, demonstrating the ongoing influence and reach of Defendants' statements. The voicemail recordings Defendant produced in discovery further show that Defendant worked with others to coordinate the timing of posts to maximize harm, including intentionally publishing content on holidays when the public is more likely to be home and scrolling social media. Defendants also searched USPTO records to identify Plaintiffs' clients and then harassed or attempted to harass those clients by contacting them directly and by posting stories about them, which has caused Plaintiffs to fear filing new trademark applications or litigation because of the risk that Defendants or their co conspirators will target and harass clients associated with those filings. Plaintiffs are now required to disclose this risk to prospective clients during intake, resulting in lost business when individuals decline representation out of fear of being publicly attacked or damaged by Defendants and their supporters. Plaintiffs have likewise consulted with other attorneys for assistance in various matters, only to have attorneys decline involvement due to fear of being harassed and reputationally

16

damaged. Plaintiffs cannot use a Google Business Profile, which is an industry standard tool, because anonymous and unidentifiable individuals with no legitimate interaction with Plaintiffs have posted false one star reviews as part of the same campaign. Plaintiffs have been forced to sever backlinks to their website that were not placed by Plaintiffs and that link to AI generated articles repeating Defendants' false allegations in order to prevent those articles from appearing in search results associated with Plaintiffs' firm. Plaintiffs have also installed call screening software to address the barrage of hang up and harassing phone calls generated by Defendants' campaign, which wastes firm resources and disrupts daily operations. Plaintiffs have spent countless hours responding to frivolous and meritless ARDC complaints prompted by Defendants' statements, and Plaintiffs cannot meaningfully invest in advertising, publications, or other marketing because such efforts are undermined by the public's continued repetition of Defendants' false claims, requiring Plaintiffs to divert substantial time and resources to mitigating and responding to ongoing digital attacks. Plaintiffs removed the listing of its employees from its website to save them from becoming targets. Plaintiffs have had potential employees or contractors decline positions with the firm because of fear of becoming a target of the campaign. Plaintiffs will have to hire a PR company to repair her reputation once they are able to make online posts without pouring fuel on the fire. When Plaintiffs post on their social media accounts, members of the public regurgitate what Defendant has said and leave an angry face or thumbs down on the post, leaving Plaintiffs to either respond to the comments to correct the narrative, or ignoring the comment. Further, Plaintiffs observed an increase in emails for anonymous people threatening them and in hang up calls, or calls that regurgitate what Defendant has said and the person hangs up after the regurgitation. Plaintiffs anticipate the cost of the PR company to be somewhere around $8,000.00 a month, and the amount of time needed will be over 12 months based on information publicly available. Plaintiffs anticipate needing an expert to discuss this at trial. Notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that their allegation that Braun lost work from numerous clients is limited to only the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Defendants' have provided documents in their discovery responses, such as voice memos and text messages, supporting this allegation and stating they will make content off of this litigation, and they have posted about Plaintiffs' clients who have been named, one of the client's has a NCSO against an online stalker, which protects her child, yet Defendants still made posts to rile up the public. Further, one of their co-conspirators, CC Suarez, posted a video about Plaintiffs' client Jacinda Jenkins on or about December 2023-January 2024, regurgitating a smear campaign that was started against her in 2020-2021. Ms. Jenkins posted a video responding to it in 2024. Ms. Jenkins took her own life on September 30, 2025. Plaintiffs do not want to subject any other clients to the harassment that Defendants directly or indirectly cause their clients. Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were disrupted or lost as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered. Moreover, notwithstanding the allegations of the Third Amended Complaint and the above response, Plaintiffs respond that they are no longer seeking any damages in this action based on lost clients or lost client revenue from the Identified Clients. Rather, the only damages claimed by Plaintiffs in this action are (1) the cost of repairing Braun's professional reputation online and (2) emotional harm resulting from Defendants' alleged defamatory conduct.

**Interrogatory No. 21** IDENTIFY all facts supporting YOUR claim that existing and prospective clients were deterred from hiring Braun, as alleged in Paragraph 188 of the TAC.

**Response:**
Same objections as Interrogatory No. 20.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant documents in their possession, if any, subject to a protective order where client identities are involved.

17

**Supplemental Response:** Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that it seeks the disclosure of attorney–client communications, attorney work product, and other confidential client information protected under the Illinois Rules of Professional Conduct and applicable privilege law. Plaintiffs also object to the extent this Interrogatory calls for speculation regarding the subjective motivations of third parties, including prospective clients, which are not within Plaintiffs' personal knowledge. Answering subject to and without waiving these objections, Plaintiffs state that following Defendants' public statements and online campaign, existing and prospective clients expressed concerns about Ms. Braun's reputation, credibility, and online exposure. Several clients and potential clients communicated to Ms. Braun that they were reluctant to engage or continue engagement with her due to the public nature of the allegations made by Defendants and the online harassment surrounding this case. Plaintiffs further state that some clients have discontinued representation, declined to retain Ms. Braun, or expressed fear of being associated with her due to the possibility of becoming targets of Defendants' followers or online commentators. Plaintiffs' damages arising from this deterrence are ongoing, and the process of identifying additional supporting information and obtaining consent to disclose certain client communications is continuing. Plaintiffs will supplement this response as appropriate under Rule 26(e) as additional non-privileged, relevant information becomes available. Plaintiffs expressly stand on their privilege and work-product objections and will not disclose privileged or confidential attorney–client communications regarding specific clients.

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, following Defendants' public statements and coordinated online activity, Defendants' YouTube videos, Reddit posts, and social media content on platforms including X and TikTok began appearing prominently in internet search results for "Jeanette Braun," "Braun IP Law," and related terms. These results included videos and posts repeating Defendants' allegations and commentary concerning Plaintiff Braun. As a result, when existing and prospective clients searched for Plaintiff Braun or her law firm, Defendants' content appeared as part of the initial search results. Plaintiffs are informed and believe that this widespread online publication materially affected client perceptions and business relationships. Numerous clients expressed concern regarding the visibility of the allegations and the potential reputational consequences of being associated with Plaintiff Braun during the ongoing online controversy, along with fear of becoming the Defendants next target. Certain clients discontinued representation or declined to proceed with new engagements after the online campaign escalated. Among the disrupted relationships were Kaitlynn Dempsey and Alyssa DeFord (professionally known as "Bunnie XO"). Ms. DeFord publicly posted that she was leaving Plaintiff Braun. In addition, Defendant Bekah Day directly contacted and emailed Ms. Dempsey and Ms. DeFord concerning their representation by Plaintiff Braun. Plaintiffs are informed and believe that such direct outreach further interfered with and destabilized those professional relationships. Notwithstanding the allegations of the Third Amended Complaint, Plaintiffs respond that their allegation that existing and prospective clients were deterred from hiring Braun is limited to only Alyssa DeFord, Kaitlynn Dempsey and Monsters and Martians ("Identified Clients"), and Braun is no longer alleging that any relationships with clients beyond the three Identified Clients were lost or disrupted as a result of Defendant's conduct in an attempt to protect them from suffering what others have suffered.

18

**Interrogatory Nos. 22:** IDENTIFY the "work" that was "lost" from "numerous clients including, Ms. DeFord and Ms. Dempsey" as a result of the conduct alleged against DAY, as alleged in Paragraph 207 of the TAC.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that the Interrogatory seeks disclosure of confidential client information, attorney–client communications, and attorney work product, all of which are protected from discovery under the Illinois Rules of Professional Conduct and Federal Rule of Civil Procedure 26(b)(3). Plaintiffs also object that the Interrogatory calls for disclosure of information that would invade client privacy and reveal details of privileged legal work or representation unrelated to any claim or defense in this case. Answering subject to and without waiving these objections, Plaintiffs state that Ms. Braun lost or was forced to suspend professional work and engagements for several clients and projects as a direct result of Defendant Day's conduct and the subsequent online harassment campaign. This includes legal and consulting work for Alyssa DeFord (p/k/a "Bunnie XO"), Kaitlynn Dempsey (p/k/a "Demps"), and Monsters and Martians, among others. Ms. Braun's relationships with these clients were disrupted due to reputational harm, public allegations, and fear of harassment or retaliation by Defendant Day's followers and online collaborators. Plaintiffs' efforts to obtain client consent to disclose additional details of lost or suspended work are ongoing, and Plaintiffs will supplement this response as appropriate under Rule 26(e) upon obtaining such consent or as additional non-privileged information becomes available. Plaintiffs expressly stand on their attorney–client privilege and work-product objections and will not disclose privileged communications or details of client representation.

**Interrogatory Nos. 22:** Describe in detail what YOU mean by YOUR clients "distancing" themselves from YOU as a result of the conduct alleged against DAY, as alleged in Paragraph 208 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, unduly burdensome, and seeking information outside Plaintiffs' knowledge or control.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant examples in their possession, if any.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that it seeks disclosure of confidential client information, attorney–client communications, and attorney work product, all of which are protected under the Illinois Rules of Professional Conduct and Federal Rule of Civil Procedure 26(b)(3). Plaintiffs also object to the extent this Interrogatory calls for speculation regarding the subjective motivations or perceptions of third parties, including clients, which are not within Plaintiffs' personal knowledge. Answering subject to and without waiving these objections, Plaintiffs state that following Defendant Day's conduct and the resulting online harassment campaign, some existing and prospective clients "distanced" themselves from Ms. Braun by terminating their relationships, pausing ongoing engagements, or expressing reluctance to communicate or continue work with her. Several clients indicated concern that continued association with Ms. Braun could expose them to harassment, unwanted publicity, or online attacks by Defendant Day's followers or collaborators. Others declined to provide public support, refused to allow use of their names in professional contexts, or avoided interaction altogether to minimize their

19

own exposure. These actions reflect the professional and reputational harm Ms. Braun suffered as a direct result of Defendant Day's statements and their online amplification. Plaintiffs' investigation into additional examples and communications reflecting this client distancing is ongoing, and Plaintiffs will supplement this response as appropriate under Rule 26(e) if additional non-privileged, relevant information becomes available. Plaintiffs expressly stand on their privilege and work-product objections and will not disclose privileged or confidential communications with clients regarding their decisions or the content of their attorney–client relationships.

Answering further, subject to and without waiving the foregoing objections, and without waiving the attorney–client privilege, work product doctrine, or any other applicable protection, Plaintiffs state as follows: The "work" referenced in Paragraph 207 of the Third Amended Complaint includes legal services that Plaintiffs were performing, or reasonably expected to continue performing, for the three Identified Clients (Alyssa DeFord, Kaitlynn Dempsey, and Monsters and Martians). Without disclosing privileged communications, confidential client strategy, or proprietary billing information, the categories of work performed for the Identified Clients include:

1.    Trademark prosecution and portfolio management services for Ms. DeFord (professionally known as "Bunnie XO") and Monsters and Martians, including preparation and filing of trademark applications, responding to USPTO office actions, advising on classification strategy, monitoring deadlines, and ongoing brand management counseling.

2.    Copyright prosecution services for Ms. DeFord, including preparation and filing of copyright applications and related advisory services concerning registration strategy and protection of creative works.

3.    Online enforcement and brand protection services for both Ms. DeFord and Ms. Dempsey (professionally known as "Demps"), including monitoring for infringement, issuing takedown demands, coordinating with platforms regarding unauthorized use of intellectual property, and advising on brand-protection strategy.

4.    Contract review and advisory services for Ms. Dempsey, including review of proposed agreements and related legal counseling concerning business and entertainment transactions.

Plaintiffs will produce non-privileged documents sufficient to reflect the existence and general nature of such work, subject to entry of an appropriate protective order.

**Interrogatory No. 24** IDENTIFY all facts supporting YOUR claim for "injury to business and reputation" as alleged in Paragraph 189 of the TAC.

**Response:**
Same objections as Interrogatory No. 20.
Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents in their possession, if any, subject to a protective order.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that it seeks disclosure of attorney–client communications, attorney work product, and confidential client information protected by the Illinois Rules of Professional Conduct and Federal Rule of Civil

20

Procedure 26(b)(3). Plaintiffs also object to the extent this Interrogatory calls for speculation about the opinions or motivations of third parties, including clients and members of the public, which are not within Plaintiffs' personal knowledge. Answering subject to and without waiving these objections, Plaintiffs state that Ms. Braun has suffered injury to her business and reputation as a result of the statements and conduct alleged in the Third Amended Complaint. The false and defamatory statements made and promoted by Defendants have caused Ms. Braun's professional reputation to be questioned by clients, colleagues, and members of the public. She has lost clients and prospective clients who no longer wished to be associated with her due to the negative publicity, fear of harassment, and the spread of misinformation concerning her ethics and professionalism. Ms. Braun has also been subjected to repeated online attacks, defamatory commentary, and targeted harassment campaigns, resulting in the loss of professional opportunities, business referrals, and goodwill. Plaintiffs' investigation and assessment of reputational and business damages are ongoing, and Plaintiffs will supplement this response as appropriate under Rule 26(e) as additional non-privileged, relevant information becomes available. Plaintiffs expressly stand on their attorney–client privilege and work-product objections and will not disclose privileged communications or confidential client information in response to this Interrogatory.

**Interrogatory No. 25** IDENTIFY the professional relationships disrupted as alleged in Paragraph 201 of the TAC.

**Response:**
Plaintiffs object as vague, ambiguous, overbroad, and seeking confidential client information. Subject to and without waiving objections, Plaintiffs will produce non-privileged, relevant information and documents sufficient to identify such relationships, if any, subject to a protective order.

**Supplemental Response:** Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs further object that it seeks disclosure of confidential client information, attorney–client communications, and attorney work product, all of which are protected by the Illinois Rules of Professional Conduct and Federal Rule of Civil Procedure 26(b)(3). Plaintiffs also object that the Interrogatory calls for the disclosure of sensitive client relationships and professional associations unrelated to any claim or defense in this case and implicates client privacy concerns. Answering subject to and without waiving these objections, Plaintiffs state that several of Ms. Braun's professional relationships and business engagements were disrupted as a result of the conduct alleged in the Third Amended Complaint, including relationships with Alyssa DeFord (p/k/a "Bunnie XO"), Kaitlynn Dempsey (p/k/a "Demps"), and Monsters and Martians, among others. These relationships were impacted due to reputational harm, fear of online harassment, and concerns about continued association with Ms. Braun amid the negative publicity and coordinated online attacks. The process of obtaining consent from additional clients and professional contacts to disclose their identities is ongoing, and Plaintiffs will supplement this response as appropriate under Rule 26(e) as additional non-privileged, relevant information becomes available or as client consent is received. Plaintiffs expressly stand on their attorney–client privilege and work-product objections and will not disclose privileged communications or confidential client information without client consent or court order.

21

**Second Supplemental Response:** Answering subject to these objections, Plaintiffs reserve the right to supplement this right with deposition testimony. Illinois Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information *relating to the representation of a client* unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation, or an exception under Rule 1.6(b) applies. By its plain terms, Rule 1.6 protects all information "relating to the representation of a client," and such information must remain confidential unless consent is obtained or a narrow exception applies. [15] "A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order." Plaintiffs have no informed consent from the affected clients or former clients to disclose their identities. Several current and/or former clients have expressly declined to consent because they fear harassment, retaliation, or other harmful contact by Defendants and/or persons acting in concert with Defendants (including followers, affiliates, agents, or alleged co-conspirators). Those clients/former clients also seek to avoid the attendant reputational, emotional, and professional damage that can result from being publicly identified in this litigation or in related communications. Comment [15] to Rule 1.6 provides that, absent informed consent, counsel should "assert on behalf of the client all nonfrivolous claims" that compelled disclosure is not authorized or that the information is protected. Comment [15] further addresses counsel's obligation to consult with the client regarding appeal in the event of an adverse ruling.

 Consistent with Comment [15], if the Court orders Plaintiffs to disclose client and former client identities over the clients' and former clients' objections, Plaintiffs will take all nonfrivolous steps available to protect client confidentiality, including seeking reconsideration and other appropriate relief to protect them. This Request, and the Motion to Compel sanctions for non-disclosure of client identities, appears designed by Defendant to create a "gotcha" scenario, pressuring Plaintiffs to violate their ethical duties under the threat of sanctions. Plaintiffs will not be intimidated into violating the Illinois Rules of Professional Conduct. Plaintiffs will continue to comply fully with IRPC 1.6, Comment [15], and all other applicable professional obligations.

**Interrogatories Nos. 26–41**

**Response to Each:**
Plaintiffs object to Interrogatories Nos. 26 through 41 on the ground that they exceed the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1), which limits each party to 25 interrogatories, including discrete subparts, absent stipulation or leave of Court. Defendant has neither obtained leave nor Plaintiffs' consent. Plaintiffs therefore decline to provide substantive responses.

*I hereby certify that the foregoing responses are complete and correct as of the time they are made based on the party's knowledge, information, and belief formed after a reasonable inquiry.*

Dated: April 6, 2026

Respectfully submitted,

/s/ Jeanette Braun
Jeanette Braun
Pro Se Litigant
1600 W. Lake Street,
Suite 103B
Addison, IL 60101
(312) 373-0330

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I have thereby electronically served Defendant's counsel with a copy of PLAINTIFFS BRAUN AND BRAUN IP LAW LLC'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT LILY MARSTON'S FIRST SET OF INTERROGATORIES via email to:

Brandon Witkow
bw@witkowlaw.com
21031 Ventura Boulevard
 Suite 700
Woodland Hills, CA 91364

Cory Alexander Baskin
Witkow, Baskin
21031 Ventura Blvd
Suite 700
Wooodland Hills, CA
cb@witkowlaw.com

Amy Doig
Cozen & O'Connor
123 N Wacker Drive
Suite 1800
Chicago, IL 60606
adoig@cozen.com

Date: April 6, 2026

/s/Jeanette Braun
Jeanette Braun
Pro Se Litigant
1600 W. Lake Street,
Suite 103B
Addison, IL 60101
(312) 373-0330

23

**Exhibit D**

Braun v. Day General Attorney Privilege Log

| Sender | Recipient | Privilege |
|---|---|---|
| Benjamin Lockyer | Jeanette Braun | Attorney Client |
| Benjamin Lockyer | Lauren Propson | Attorney Client |
| Lauren Propson | Benjamin Lockyer | Attorney Client |
| Lauren Propson | Jeanette Braun | Attorney Client |
| Jeanette Braun | Benjamin Lockyer | Attorney Client |
| Jeanette Braun | Lauren Propson | Attorney Client |
| Jeanette Braun | Kaitlynn Dempsey | Attorney Client |
| Jeanette Braun | Alyssa DeFord | Attorney Client |
| Jeanette Braun | Gabi Egan | Attorney Client |
| Jeanette Braun | Reby Hardy | Attorney Client |
| Jeanette Braun | Monsters and Martians | Attorney Client |
| Kaitlynn Dempsey | Jeanette Braun | Attorney Client |
| Alyssa DeFord | Jeanette Braun | Attorney Client |
| Monsters and Martians | Jeanette Braun | Attorney Client |
| Reby Hardy | Jeanette Braun | Attorney Client |
| Gabi Egan | Jeanette Braun | Attorney Client |