**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANETTE BRAUN, BRAUN IP LAW, LLC, & LAUREN PROPSON, | ) ) | |
| Plaintiffs, | ) ) | Case No. 23 C 16856 |
| v. | ) ) | Presented to: Hon. J. Mary Rowland |
| REBEKAH M. DAY NEE BOX, KRISTA CARTER & LILY MARSTON | ) ) | |
| | ) ) | |
| Defendants. | ) | |

**<u>DEFENDANT REBEKAH DAY'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL</u>**

## I. INTRODUCTION.

Defendant Rebekah Day ("Defendant" or "Day"), by and through her attorneys, respectfully submits this Opposition to Plaintiffs' Motion to Compel. The Motion should be denied in its entirety for three independent grounds: (1) the Motion fails at the procedural threshold—Braun violated Local Rule 37.2 by filing without conducting the required meet and confer, and the Motion is facially untimely having been filed nearly five months after the November 30, 2025 written discovery cutoff without justification or good cause; (2) the Motion and substantial portions thereof should be stricken because Braun submitted AI-generated content—including ChatGPT's own drafting instructions—without any meaningful prefiling review, and Braun is presently subject to a sanctions motion in an Illinois state court based on the identical practice; and (3) Defendant's discovery responses—including her November 7, 2025 amended interrogatory responses, which the Motion largely ignores—are legally sufficient under the Federal Rules and the standards consistently applied in this District.[1]

---

[1] Braun's Motion fails to attach the responses of Defendant Day at issue so the Court can view the actual responses provided, and not just Braun's characterization of such.

The Motion is the product of Braun's own tactical choices and disregard for this Court's schedule. Written discovery closed on November 30, 2025. [Dkt. #80]. Defendant served her original discovery responses on September 29, 2025, and comprehensive amended interrogatory responses on November 7, 2025. Braun had no fewer than three weeks before the discovery cutoff to raise any deficiencies with the Court. She did not do so.

Instead, after sitting on Defendant's responses for over five months, Braun transmitted a sweeping 7-page deficiency letter at approximately 11:00 p.m. CT on April 23, 2026 addressing three full sets of discovery responses involving more than 136 total requests across two defendants. Defendant's counsel responded the following day, acknowledging receipt and advising that the volume of the letter required adequate time to review, and that a substantive response would be provided as soon as possible. Less than 48 hours after receiving Braun's letter, on April 26, 2026, Defendant's counsel served an 8-page, substantive, request-by-request response addressing every category of alleged deficiency. (*See* Consolidated Declaration of Brandon J. Witkow ("Witkow Decl."), at Exh. 1). Braun filed this Motion at noon on April 27, 2026—the very next day—without any further communication with Defendant's counsel and without ever scheduling a conference as Local Rule 37.2 expressly requires.

These are not close calls. The Motion fails at the threshold on procedural and timeliness grounds, and it fails on the merits as well. Defendant respectfully requests that the Court deny the Motion in its entirety.

## II. THE MOTION FAILS AT THE THRESHOLD: BRAUN VIOLATED LOCAL RULE 37.2 AND THE MOTION IS FACIALLY UNTIMELY.

### A. Braun Did Not Conduct the Required Meet and Confer Before Filing.

Local Rule 37.2 mandates that before any party may file a motion to compel discovery, counsel must first "consult in person or by telephone" and make a "good faith attempt" to resolve the dispute. N.D. Ill. L.R. 37.2. The motion itself must include a

2

statement that the parties were unable to reach an accord "after consultation in person or by telephone and good faith attempts to resolve differences." *Id.* Courts in this District have uniformly emphasized that the Rule's purpose is "to curtail undue delay and expense in the administration of justice" and to prevent the Court from being burdened with disputes the parties could resolve themselves.

The meet and confer requirement is not satisfied by a letter. It requires an actual telephone, video, or in-person conference. *Guster-Hines v. McDonald's USA, LLC,* No. 20-cv-00117, 2025 U.S. Dist. LEXIS 45852, at *9 (N.D. Ill. Mar. 3, 2025) (requiring "phone, video, or in person conferences on all disputed discovery matters"). A last-minute communication sent on the eve of filing does not cure this deficiency. In *Guster-Hines*, the court found Local Rule 37.2 unsatisfied even where plaintiffs sent an email the day before the deadline asking whether the opposing party intended to stand on its objections and whether counsel would be available for a conference the following day, a situation materially indistinguishable from what occurred here. The court held that this approach was insufficient and warned that future motions failing to reflect the required conferral would be stricken. *Id.*

The timeline here confirms that no meaningful meet and confer occurred. Braun transmitted her deficiency letters for both defendants between 11:00 p.m. CT on April 23, 2026 and 1:16 a.m. CT on April 24, 2026, letters that, by her own description, addressed three separate sets of discovery covering over 80 requests directed at Defendant Day alone, plus additional sets directed at Defendant Marston, totaling 15 pages and more than 136 requests in the aggregate. Defendant's counsel responded the same day (April 24, 2026), acknowledging receipt and expressly committing to provide a substantive response as soon as possible to enable a meaningful meet and confer consistent with Local Rule 37.2. Defendant's counsel then delivered an 8-page, detailed, request-by-request response on the afternoon of April 26, 2026—less than 48 hours after receiving Braun's letter. (*See* Witkow Decl., at Exhs. 1 & 2). Rather than respond to that letter, schedule a telephone conference,

or make any further contact with Defendant's counsel, Braun filed this Motion at noon on April 27, 2026.

At no point did the parties conduct a telephone, video, or in-person conference. No impasse was ever reached through the required process, because the process was never completed. Braun's decision to file immediately after receiving a substantive written response is the antithesis of the good-faith conferral Local Rule 37.2 *and this Court* demands. *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 U.S. Dist. LEXIS 70668, at *19 (N.D. Ill. Apr. 22, 2020) (Local Rule 37.2 "directs a party that wishes to file a motion to compel to meet and confer in person or by phone with opposing counsel regarding the discovery dispute"); *see also* Case Procedures for Judge Mary M. Rowland, Discovery Motions ("An exchange of correspondence -- as opposed to an in-person or telephonic conference -- ordinarily will not suffice"). The Court should deny the Motion on this basis alone.

**B.     The Motion Is Also Untimely and Should Be Denied on That Basis.**

**1.     Written Discovery Closed November 30, 2025.**

This Court's August 18, 2025 Order set written discovery to be completed by November 30, 2025. [Dkt. #80]. Defendant served her responses to Plaintiffs' First Set of Requests for Admission, First Set of Interrogatories, and First and Second Requests for Production on September 29, 2025. Defendant served comprehensive amended interrogatory responses on November 7, 2025. Braun thus had Defendant's full discovery responses in hand no later than November 7, 2025, and the discovery period remained open for another three weeks thereafter. Braun did not file a motion to compel, did not initiate a meet and confer, and did not raise any discovery dispute with this Court before the November 30, 2025 cutoff.

Courts in this Circuit are unambiguous: "motions to compel filed after the close of discovery are almost always deemed untimely." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (citing *Packman v. Chicago Tribune Co.*,

4

267 F.3d 628, 647 (7th Cir. 2001)). This district has affirmed that it is "rarely an abuse of discretion to deny a motion to compel that is filed after the close of discovery." *Friedman v. Wolfspeed, Inc*., No. 22 C 2253, 2023 U.S. Dist. LEXIS 107126, at *5 (N.D. Ill. June 21, 2023) (citing *Packman v. Chicago Tribune Co*., 267 F.3d 628, 647 (7th Cir.2001)). Such delays "take judicial time and resources away from other cases and inconvenience other litigants waiting in the queue." *Id.* (holding that two-month delay in filing a motion to compel was "not diligence, and the law demands diligence."). A party that fails to bring perceived discovery deficiencies to the court within the discovery period has "no grounds for complaining about the denial of a motion to compel." *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000).

### 2. The March 10, 2026 Order Did Not Reopen the Written Discovery Period or Establish a New Compel Deadline for Braun.

As Defendants explained in their Opposition to Braun's Motion for Extension of Time [Dkt. #130], the March 10 Order specifically addressed the unresolved issues in Defendants' own previously filed Motions to Compel [Dkt. #88, #89].[2] The Court invited Defendants to bring revised motions as to issues that "remain in dispute following the meet and confer process"—a conditional authorization premised on an ongoing bilateral dispute that Defendants had been actively pursuing since November 2025.

The March 10 Order did not *sua sponte* create a new discovery compel deadline for Braun's benefit, did not reopen the November 30, 2025 written discovery cutoff, and did not authorize new discovery disputes that had never been raised or briefed. Braun cannot bootstrap a court order addressing Defendants' pending motions into blanket authorization to file new discovery motions of her own on issues she never raised with the Court. *See*

---

[2] Braun appears to predicate her filing on this Court's March 10, 2026 Order [Dkt. #117], which directed that "[b]y 4/22/26 Parties are also to file any motion to compel that details the outstanding discovery *that remain in dispute following the meet and confer process*." (Emphasis added.) That Order was issued in the specific context of Defendants' own Motions to Compel [Dkt. #88, #89], which had been pending for months and were the subject of extensive meet and confer proceedings and status reports.

5

Fed. R. Civ. P. 16(b)(4) (schedule may be modified "only for good cause and with the judge's consent"); *Friedman,* 2023 U.S. Dist. LEXIS 107126, at *4 n.2 ("[p]arties cannot simply extend or reopen . . . discovery on their own").

### 3. Braun Offers No Justification for Her Five-Month Delay.

Courts will "excuse a late motion to compel where the moving party has reasonable and persuasive justification for its untimeliness," but "[a]bsent such justification, courts' general aversion to unjustified delays usually results in denials." *Friedman*, 2023 U.S. Dist. LEXIS 107126, at *5. Braun offers no justification here. Defendant's original responses were served September 29, 2025; her amended interrogatory responses were served November 7, 2025. Braun had every one of those responses in hand before the discovery cutoff. She is a practicing attorney who has represented herself in this matter and who has had ample time to review discovery responses served over five months ago. Her deficiency letters, transmitted on April 23 & 24, 2026, reflects that she had in fact reviewed those responses in detail, which makes her failure to raise any issues before the November 30 cutoff all the more inexplicable.

The Seventh Circuit's reasoning in *Packman* is directly on point. There, the court affirmed denial of a motion to compel as untimely where the plaintiff was aware of perceived inadequacies in discovery before the close of the discovery period, was specifically warned by the court not to "tarry" in filing such a motion, and nevertheless waited until after discovery closed, the summary judgment briefing schedule was set, and defendants had filed their summary judgment motion. *Packman*, 267 F.3d at 647. Braun's situation is no different—and arguably worse, given the length of the delay and the complete absence of any excuse. The consequences Braun would visit on Defendant by requiring full briefing on over 80 discovery requests five months after the close of written discovery would be precisely the prejudice that discovery deadlines exist to prevent. *See In re Sulfuric Acid*, 231 F.R.D. at 332.

6

### III. THE MOTION SHOULD BE STRICKEN: BRAUN SUBMITTED UNREVIEWED AI-GENERATED CONTENT.

At the top of page 6 of the Motion, Braun pasted verbatim not only what appears to be ChatGPT's substantive output but ChatGPT's own instructions on how that section should be structured and argued.

> opposition to Defendant's motion by the deadline set by the Court.
>
> Here is a **court-ready section you can insert into your motion**. It is calibrated for NDIL practice and Judge Rowland's preferences: neutral tone, no overstatement of waiver, grounded in Rule 26(b)(5)(A), and tied to the record without speculation.
>
> ---
>
> Defendant has asserted attorney-client privilege and work product objections but has not provided a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5)(A). Defendant's

The presence of those meta-directives in a signed court filing is powerful evidence that the Motion was submitted without any meaningful review. This is not an isolated lapse: Defendant submits a Request for Judicial Notice concurrently herewith establishing that Braun is presently subject to a pending sanctions motion in an Illinois state court proceeding based on the identical practice, pasting verbatim AI output into a court filing. That parallel proceeding, combined with the evidence on the face of this Motion, establishes a pattern of substituting AI output for professional judgment in submissions to courts.

This conduct violates Rule 11(b)'s "nondelegable" duty to conduct a reasonable inquiry before signing any filing. *Wadsworth v. Walmart Inc*, 348 F.R.D. 489, 495 (D. Wyo. 2025). It also violates Illinois Rules of Professional Conduct 1.1 (competence, including knowledge of AI risks), 3.3(a)(1) (candor to tribunal), and 8.4(c) (misrepresentation), rules the Illinois Appellate Court held are implicated whenever an attorney submits unverified AI output to a tribunal, constituting "[a]t a minimum, inexcusable carelessness." *People v. Lerin H. (In re Baby Boy)*, 2025 IL App (4th) 241427, ¶ 115, 271 N.E.3d 524, 552 (Ill. App. Ct. 2025). The Illinois Supreme Court's AI Policy (eff. Jan. 1, 2025) is unambiguous: attorneys "must thoroughly review AI-generated

7

content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations." *BKA Holdings, LLC v. Sam*, 2025 IL App (2d) 250160-U, ¶ 21 (Ill. App. Ct. 2025). The citation record independently confirms the absence of any prefiling review. Of the nine cases cited in the Day Motion, at least three appear to be AI hallucinations. *EEOC v. AutoZone, Inc.*, No. 11 C 0195, 2012 WL 3061482 (N.D. Ill. July 26, 2012), *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2017 WL 1022010, at *3 (N.D. Ill. Mar. 16, 2017), and *Westefer v. Snyder*, No. 07 C 2798, 2008 WL 190317 (N.D. Ill. Jan. 18, 2008)  -- cited at pages 3, 4, and 5, respectively -- cannot be located by docket number, WL citation, or party name in any legal database. This is precisely the failure mode courts have identified when AI-generated briefs go unreviewed: the model produces citations with the syntax of real opinions that correspond to no actual decision. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023); *In re Baby Boy*, 2025 IL App (4th) 241427, at *40 (¶ 113) ("by obtaining these nonexistent case citations and accompanying quotations using AI without independently verifying their accuracy, Mr. Panichi failed to comply with the Illinois Supreme Court Policy on Artificial Intelligence, which emphasizes that attorneys "are accountable for their final work product" and "must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations"). A basic Westlaw search before signing would have exposed both.[3] *See BKA Holdings, LLC,* 2025 IL App (2d) 250160-U, ¶ 23 (awarding sanctions and striking reply brief that included AI hallucinated cases).

---

[3] Other citations in the Day Motion fare little better. *United States v. Kasuboski*, 834 F.2d 1345 (7th Cir. 1987), is cited for the Rule 36(a)(4) "reasonable inquiry" standard — but that case addresses the consequences of failing to respond to requests for admission at all, not the standard of inquiry required in a response. *Thermal Design, Inc. v. American Society of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832 (7th Cir. 2014), is cited for the proposition that safety concerns require a Rule 26(c) protective order rather than unilateral withholding — a proposition the case nowhere addresses. And *Harry F. Chaveriat, Jr. v. Williams Pipe Line Company*, 11 F.3d 1420, 1426–27 (7th Cir. 1993), is inverted: the Seventh Circuit held that a party is not obligated to produce documents held by a third party simply because it could obtain them on request, the opposite of Braun's stated use. These are not misremembered citations; they are AI-confident misattributions that no reviewing attorney would have missed.

Rule 11(b)(2) requires certification that each legal contention "is warranted by existing law." Illinois Rule of Professional Conduct 1.1, Comment 8, requires competence with the benefits and risks of relevant technology. Submitting three unverifiable citations and multiple demonstrably misapplied ones, alongside the AI output drafting instructions left visible on page six, establishes that Braun did neither.

Because Braun appears before this Court on a pro hac vice basis[4] — a "privilege, not a right" — this conduct also implicates her continued admission. *Merle Royce v. Michael R. Needle P.C.*, 950 F.3d 939 (7th Cir. 2020). "False statements to the court are a sound basis for revoking an attorney's pro hac vice admission," *Bailey v. Worthington Cylinders Wis. LLC*, No. 16 C 07548, 2021 U.S. Dist. LEXIS 144942, at *7 (N.D. Ill. Aug. 3, 2021), and AI-generated submissions without verification have already produced pro hac vice revocation in federal court. *Wadsworth*, 348 F.R.D. at 498–99. "Even if there is not one bold ground to revoke an attorney's pro hac vice admission, the Court has the discretion to revoke based on the combined effect of an attorney's misconduct." *La Michoacana Nat., LLC v. Maestre,* 611 F. Supp. 3d 87, 93 (W.D.N.C. 2020).

Defendant respectfully requests that this Court: (a) strike the Motion or the AI-generated portions thereof; (b) order Braun to identify which portions were AI-generated and what verification steps, if any, she took; (c) require disclosure of the status of the pending Illinois sanctions motion; and (d) order Braun to show cause why her pro hac vice admission should not be subject to further inquiry. *See In re Baby Boy*, 2025 IL App (4th) 241427, at ¶¶ 129–132; *Johnson v. Dunn*, 792 F.Supp.3d 1241 (N.D. Ala. 2025).

## IV. EVEN ON THE MERITS, DEFENDANT'S DISCOVERY RESPONSES ARE LEGALLY SUFFICIENT.

---

[4] Braun, an Illinois-licensed attorney, is not a member of the Bar of this Court, but instead has chosen to appear pro hac vice [Docket #119].

Should the Court reach the merits, Defendant's responses, including her November 7, 2025 amended interrogatory responses that the Motion substantially ignores, are legally adequate in each category addressed.

### A. The Requests for Admission Are Properly Answered.

#### 1. RFA No. 3 (Metadata Denial).

Day admitted possession of the native version of the December 11, 2023 TikTok Story Post. Her partial denial as to associated metadata reflects a specific, honest qualification: she lacks the technical expertise to determine whether metadata is embedded in the file and, if so, what it contains. Rule 36(a)(4) requires only "reasonable inquiry," and a lay person's inability to assess embedded metadata within a social media file is a legitimate factual limitation, not evasion. *See* Rule 36(a)(4) (2007 amendments to Rule 36 and the advisory committee notes); *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981); *U.S. SBA v. McInerney,* No. 16 cv 7099, 2017 U.S. Dist. LEXIS 237812, at *5 (N.D. Ill. Apr. 4, 2017). If Braun believes metadata is material, the appropriate remedy is a subpoena to TikTok—a remedy she failed to pursue within the discovery period.

#### 2. RFA Nos. 7, 8, 9, and 11 (ARDC "Attorney" Qualification).

Day denied these requests because she cannot confirm whether the ARDC representative with whom she spoke held attorney status. This is a specific, identified factual uncertainty, not blanket evasion. Rule 36(a)(4) explicitly permits a party to "qualify" an answer when good faith requires, and to "admit or deny only a part" of a request. Fed. R. Civ. P. 36(a)(4). Day does not dispute that she communicated with ARDC personnel; she disputes only whether that individual held attorney status, which is a distinction directly relevant to Braun's theory that the statements in the TikTok story were fabricated. Day's amended interrogatory responses name specific ARDC personnel, provide dates, and detail the substance of each communication. Whether each named

individual held attorney status is a question properly pursued by deposition or subpoena, not compelled admission.

### 3.   *RFA Nos. 13 and 14.*

Day's response to RFA No. 13 names Kimberly Butler and John R. Cesario as ARDC attorneys assigned to investigate complaints against Jeanette Braun, while noting uncertainty about the status of the representative who verbally confirmed receipt of "multiple credible complaints." This is a textbook partial admission with a qualified denial under Rule 36(a)(4). RFA No. 14 is a flat denial. Neither response is deficient.

### 4.   *RFA Nos. 17, 18, and 24 (ARDC "Authorization").*

These requests ask Day to admit that the ARDC "did not authorize" or "did not grant permission" for her to make public statements about an investigation. The premise is legally infirm: no provision of ARDC rules and no federal statute requires a private citizen to obtain "authorization" before publicly discussing information received through her own complaint filings and follow-up inquiries. A request for admission premised on a legally incorrect assumption does not compel an admission that endorses that assumption. Day's objections and denials are appropriate under Rule 36(a)(4).

### 5.   *RFA Nos. 19, 22, 23, and 28.*

The distinction between "public" and "non-public" ARDC information is a legal and institutional determination that Day—a private citizen—cannot make unilaterally, and her denial of RFA No. 19 reflects an honest qualification under Rule 36(a)(4). Day's denials of RFAs Nos. 22 and 23 are consistent with her sustained position that the information she received and conveyed was accurate and grounded in direct, documented contact with ARDC personnel. And RFA No. 28, which asks Day to admit in a single response that she intended four independent propositions, that her statements were facts, not jokes, not hyperbole, and not satire, is compound on its face in violation of Rule 36(a)(2).

**B.   Defendant's Interrogatory Responses Are Substantive and Complete.**

### 1. The Operative Responses Are the November 7, 2025 Amended Responses.

Braun's Motion largely attacks Defendant's September 29, 2025 original interrogatory responses while ignoring the comprehensive amended responses served on November 7, 2025. The amended responses provide specific Bates citations throughout: Interrogatory No. 3 cites BD 00694–BD 00719, BD 00631, BD 00720, and BD 00721; Interrogatory No. 5 cites BD 00374; Interrogatory No. 7 cites BD 00008–BD 00257 and BD 00375–BD 00377; Interrogatory No. 8 cites BD 00406–BD 00410; Interrogatory No. 10 provides an extensive multi-range Bates block; Interrogatory No. 14 cites BD 00683–BD 00693.

Rule 33(d) is satisfied when a party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them," and the Seventh Circuit has confirmed that the level of specificity required "depends on a number of factors, including the amount of discovery exchanged." *Bobby Johnson, Jr. v. Hix Wrecker Serv., Inc.*, 528 F. App'x 636, 640 (7th Cir. 2013). The specific Bates citations in the amended responses satisfy this standard. The premise that Defendant's Rule 33(d) references are generalized or non-specific is simply incorrect as to the operative amended responses.

### 2. Interrogatory No. 1 (Account Identification / Safety Concerns).

Day identified all of her social media and messaging accounts—TikTok, YouTube, Reddit, two X/Twitter accounts, Instagram, and Facebook, with full profile URLs—and withheld only her private email address and personal phone number based on documented, objectively reasonable safety concerns arising from a substantial pattern of harassment tied to this litigation. This is a narrow, justified withholding. If Braun requires these narrow identifiers, the appropriate mechanism is a protective order designating them "attorneys' eyes only," not a compulsion order. *See* Fed. R. Civ. P. 26(c).

### 3. Interrogatory No. 14 (ARDC Communications)

This response is the most detailed in the set and represents the factual heart of Day's defense. It identifies four ARDC phone calls spanning December 5, 2023 through January 9, 2024; provides the substance of each call; names ARDC personnel including Kimberly Butler, John R. Cesario, and Maria Sheppard; describes a written confirmation received December 14, 2023; identifies six other individuals who separately filed complaints; and cites specific Bates ranges (BD 00683–BD 00693) in the amended response. This response runs several pages and is among the most comprehensive in the record. Any claim that it is deficient lacks a factual foundation is utterly belied by the record.

### 4. Interrogatory No. 15 (Analytics) and Preservation Interrogatories.

Interrogatory No. 15 provides a seventeen-row analytics table for each relevant video, including likes, shares, comments, views, run time, and average watch time. Interrogatories Nos. 18 and 19 confirm no data was deleted, that Stories expired per platform policy, and that copyright-struck videos remain in Defendant's possession and were produced. These are complete responses.

### C. Defendant's RFP Responses Are Consistent with Rule 34 and Seventh Circuit Standards.

### 1. "Subject to and Without Waiving" Language / Rule 34(b)(2)(C).

To the extent Rule 34(b)(2)(C) requires an affirmative statement whether materials are being withheld on the basis of each objection, Defendant notes: (a) her responses in many instances confirm the non-existence of responsive documents; (b) where she stated she "will produce," that production occurred and no responsive non-privileged material is withheld beyond the stated format and scope objections; and (c) Braun's own discovery responses in this action employ identical formulations, rendering her complaint an exercise in selective enforcement.

### 2. RFP No. 1 (Documents "Sufficient to Identify" Accounts).

13

Rule 34 governs the production of existing documents—it does not obligate a party to create or compile a new document in response to a request that is more appropriately framed as an interrogatory. *See Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). Day identified her accounts fully in her amended interrogatory response. Existing documents reflecting those accounts have been produced.

### 3. RFP No. 2 (Platform Data Exports / Native Format).

Rule 34(b)(2)(E)(ii) requires production in a "reasonably usable form"—not necessarily native format with full JSON metadata. The N.D. Ill. Standing Order Relating to ESI establishes that metadata is not automatically required absent a specific showing of need. N.D. Ill. Standing Order Relating to Disc. of ESI, Principle 2.04(d). The parties' Joint Rule 26(f) Report did not address native format production; no ESI protocol has been entered; and Braun herself did not produce her own discovery in native format. This Court should decline to impose the type of exhaustive ESI demands reflected in Braun's requests as disproportionate to the needs of the case. *Motorola Sols., Inc. v. Hytera Communs. Corp*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) *("*Under Rule 26, the discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.")

### 4. Responses Stating "No Documents Exist."

For each request where Defendant responded that no responsive documents exist, that statement was made following a diligent search supervised by counsel in compliance with Rule 26(g)(1)'s reasonable inquiry standard.

### 5. RFP Nos. 15–18 and 22 (Publicly Available Content).

While public availability does not categorically excuse production, proportionality must be assessed on the specific circumstances of each case. *Cty. of Cook v. Bank of Am.*

14

*Corp.*, No. 14 C 2280, 2019 U.S. Dist. LEXIS 203931, at *12 (N.D. Ill. Nov. 25, 2019) (the fact that documents are publicly available "is not necessarily a valid reason in and of itself for a party not to produce discoverable documents," but "issues of burden and proportionality must be considered" in each case). The TikTok videos and YouTube posts at issue remain live and publicly accessible using the account identifiers already provided in Defendant's interrogatory responses. This is not a case involving thousands of documents in an institutional database—it is a case where Braun can view the same content by navigating to a URL.

### 6.     *RFP No. 32 (Communications Between Defendant and Herself).*

This request asks Day to produce communications "between you and Rebekah (Bekah) Day"—that is, communications between Day and herself. The request is nonsensical on its face, and no obligation exists to respond to a request that cannot be logically parsed. Discovery has closed, and Braun is no longer in a position to serve corrected requests.

### 7.     *RFP No. 56 (All Social Media Posts Regarding Plaintiffs).*

This request, as drafted, potentially encompasses every mention of Jeanette Braun or Lauren Propson across every platform for an unlimited timeframe. An unbounded social media dragnet is disproportionate in a case arising from a discrete set of posts. Rule 26(b)(1) requires that discovery be "proportional to the needs of the case." Defendant has produced materials relating to the posts at issue in the operative complaint.

### D.     The ESI and Collection Arguments Are Without Merit.

This is a defamation case arising from a defined set of social media posts by an individual creator—not a large-scale commercial dispute requiring terabytes of corporate email. Defendant's amended interrogatory responses identify the specific data sources, Bates ranges covering all collected materials (BD 00008 through BD 00528 and additional ranges), and the preservation steps taken. Counsel supervised the collection process and

certified the responses accordingly in compliance with Rule 26(g). No relevant data was deleted.

The parties' Joint Rule 26(f) Report did not contemplate the engagement of an ESI vendor, and imposing that obligation now—months after discovery has closed—is inconsistent with the proportionality principles this Court and the Seventh Circuit consistently apply. *See* N.D. Ill. Standing Order on ESI, Principles 2.05–2.06; *Motorola Sols.*, 365 F. Supp. 3d at 924 ("An assessment of proportionality is essential"). Braun's assertion that Defendant's reference to third-party platform subpoenas was improper misreads Defendant's position: subpoenas were offered as a supplemental avenue for server-side materials that platforms control and Defendant cannot readily access through user-facing exports—not as a substitute for Defendant's own production obligations. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993).

## V.    CONCLUSION

For the foregoing reasons, Defendant Rebekah Day respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety and grant the additional relief set forth in Section III above. Braun failed to conduct the meet and confer that Local Rule 37.2 requires. She filed the Motion five months after the written discovery cutoff with no justification for the delay, and she did so the day after receiving a detailed, substantive eight-page response to her deficiency letter—having never once scheduled a telephone or video conference with Defendant's counsel. Independently, the Motion and substantial portions thereof are subject to being stricken because Braun submitted AI-generated content, including ChatGPT's own structural directives, to this Court without any meaningful prefiling review, submitting at least three non-existent citations and multiple demonstrably misapplied ones in the process. On the merits, Defendant's responses are legally adequate. Defendant further requests that the Court award such other and further relief as it deems just and proper, including the costs of opposing this Motion.

Dated: April 28, 2026

        *s/      Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
Cory A. Baskin
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Jeanette Braun
1600 W. Lake Street
Suite 103B
Addison, IL 60101
jmbraun@brauniplaw.com

***Attorney for Plaintiffs***

Dated: April 28, 2026

/s/ *Brandon J. Witkow*
Brandon J. Witkow