IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEANNETE BRAUN, BRAUN IP LAW, LLC, )
& LAUREN PROPSON, )
)
      Plaintiffs, )
             Case No. 23 C 16856
 v. )
)  Presented to: Hon. J. Mary Rowland
REBEKAH M. DAY NEE BOX, KRISTA )
CARTER & LILY MARSTON )
)
)
      Defendants. )

**DEFENDANT LILY MARSTON'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL**

**I. INTRODUCTION.**

Defendant Lily Marston ("Defendant" or "Marston"), by and through her attorneys, respectfully submits this Opposition to Plaintiffs' Motion to Compel. The Motion should be denied in its entirety on two independent grounds: (1) the Motion fails at the procedural threshold — Braun violated Local Rule 37.2 by filing without conducting the required meet and confer, and the Motion is facially untimely having been filed nearly five months after the November 30, 2025 written discovery cutoff without justification or good cause; and (2) Defendant's discovery responses -- including her November 7, 2025 amended interrogatory responses, which the Motion largely ignores -- are legally sufficient under the Federal Rules and the standards consistently applied in this District.

The Motion is the product of Braun's own tactical choices and disregard for this Court's schedule. Written discovery closed on November 30, 2025. [Dkt. #80]. Defendant served her original discovery responses on September 29, 2025, and comprehensive amended interrogatory responses on November 7, 2025. Braun had no fewer than three weeks before the discovery cutoff to raise any deficiencies with the Court. She did not do so.

1

Instead, after sitting on Defendant's responses for over five months, Braun transmitted a sweeping 8-page deficiency letter at 1:16 a.m. CT on April 24, 2026, addressing three full sets of discovery responses involving more than 136 total requests across two defendants. Defendant's counsel responded the following day, acknowledging receipt and advising that the volume of the letter required adequate time to review, and that a substantive response would be provided as soon as possible. Less than 48 hours after receiving Braun's letter, on April 26, 2026, Defendant's counsel served a detailed, substantive, request-by-request response addressing every category of alleged deficiency. (*See* Consolidated Declaration of Brandon J. Witkow ("Witkow Decl."), at Exh. 2). Braun filed this Motion the very next day -- without any further communication with Defendant's counsel and without ever scheduling a conference as Local Rule 37.2 expressly requires.[1]

These are not close calls. The Motion fails at the threshold on procedural and timeliness grounds, and it fails on the merits as well. Defendant respectfully requests that the Court deny the Motion in its entirety.

## II. THE MOTION FAILS AT THE THRESHOLD: BRAUN VIOLATED LOCAL RULE 37.2 AND THE MOTION IS FACIALLY UNTIMELY.

The procedural and timeliness arguments set forth in Section II of Defendant Rebekah Day's concurrently filed Opposition to Plaintiffs' Motion to Compel apply with equal force to this Motion and are incorporated herein by reference as if fully set forth, as both Motions arise from the same deficiency letters, the same discovery cutoff, the same March 10, 2026 Order, and the same failure to conduct any conference before filing.

## III. EVEN ON THE MERITS, DEFENDANT'S DISCOVERY RESPONSES ARE LEGALLY SUFFICIENT.

Should the Court reach the merits, Defendant's responses, including her November 7, 2025 amended interrogatory responses that the Motion substantially ignores, are legally adequate in each category addressed.

---

[1] Braun's Motion fails to attach the responses of Defendant Marston at issue so the Court can view the actual responses provided, and not just Braun's characterization of such.

2

### A. The Requests for Admission Are Properly Answered.

#### 1. RFA No. 3 (YouTube Transcript).

Braun argues that Defendant cannot refuse to answer RFA No. 3 because "the underlying material is plainly within her possession." But the RFA asks Defendant to admit that YouTube's auto-generated transcripts "can provide a true and correct copy" of the referenced podcast episodes — without attaching or identifying any specific transcript. Rule 36 requires a responding party to make "reasonable inquiry" into information "reasonably available" to her. It does not require Defendant to speculate about the accuracy of an unidentified document that was neither served with the request nor identified with sufficient specificity to permit evaluation. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).[2] The objection stands. Because the discovery period closed pursuant to Docket No. 80, Plaintiffs cannot cure this deficiency by attaching a new transcript. The RFA as propounded is deficient on its face.

#### 2. RFAs Nos. 6, 7, and 18 ("Reasonable Reader" and Legal Conclusions).

Braun correctly notes that RFAs "may address the application of law to fact." But RFAs 6, 7, and 18 go further: they ask a lay content creator to opine on what a hypothetical "reasonable reader" would "understand" and whether Defendant herself "understood" the reputational effect of her statements. These requests do not simply apply law to stipulated fact, rather they ask Defendant to perform a defamation-law analysis from the perspective of an objectively defined fictional third party and to make legal determinations that are properly reserved for the trier of fact. The objections are substantively warranted. Rule 36(a)(4) permits a party to qualify an answer when good faith requires. Fed. R. Civ. P.

---

[2] As is the case with Day, the Marston Motion independently confirms the absence of any prefiling review. Braun cites *EEOC v. AutoZone, Inc.*, No. 11 C 0195, 2012 WL 3061482 (N.D. Ill. July 26, 2012), at page 3, for the Rule 36(a)(4) reasonable inquiry standard. This case cannot be located by docket number, WL citation, or party name in any legal database and appears to be an AI hallucination — precisely the failure mode courts have identified when AI-generated briefs go unreviewed. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023); *People v. Lerin H. (In re Baby Boy)*, 2025 IL App (4th) 241427, ¶ 115, 271 N.E.3d 524, 552 (Ill. App. Ct. 2025).

36(a)(4). In any event, Defendant's substantive denials to RFAs 15, 19, 36, 38, and 39, which address her actual knowledge, good faith belief, and intent, provide the factual record Plaintiffs need on the central liability questions in this case.

### 3. RFA No. 9 (Compound/Intent).

RFA No. 9 asks Defendant to admit that "when you made or published statements about Plaintiffs" she intended her audience to understand "those statements" as facts rather than jokes, hyperbole, or satire. The request is framed as a blanket admission covering every statement, on every platform, over a multi-month period. This is a compound formulation that cannot be truthfully admitted or denied as a single proposition. Fed. R. Civ. P. 36(a)(4).

### 4. RFA No. 12 ("Still Investigating" Response).

Braun contends the "still investigating" response to RFA No. 12 fails to satisfy Rule 36's reasonable inquiry requirement. Defendant's response is consistent with the manner and scope of Plaintiffs' own responses to analogous requests in this action, which contain analogous open-ended reservations and evasive responses to requests seeking similarly direct admissions. Plaintiffs cannot demand a standard of compliance from Defendant that they have not themselves observed.

### 5. RFAs Nos. 16 and 17 (Vagueness as to "Statements").

The vagueness objection to RFA No. 16 is substantively grounded. The term "statements" is not defined, and Defendant made numerous individual statements across Twitter/X, multiple podcast episodes, and other platforms, each with its own factual and editorial context. A blanket admission or denial as to whether Defendant "did not independently verify" the accuracy of all such statements would be misleading regardless of how it was answered. As Defendant's detailed Interrogatory No. 7 response makes clear, she conducted specific research activities before making specific statements — including reviewing DMCA correspondence, YouTube notifications, copyright case law, and fair use

analyses.   *See*  LM000671–LM000701,  LM00247–LM00323,  LM00309,  LM00002–LM00019.

### 6.   *RFAs Nos. 20, 24, and 25 (Speculation, Legal Conclusion, and Compound).*

RFA No. 20 asks Defendant to admit that she "recklessly disregarded" whether the perjury accusation was true.  "Reckless disregard" is a constitutional standard derived from *New York Times Co. v. Sullivan* and its progeny.  Asking a lay defendant to self-diagnose whether her own conduct satisfied the actual malice standard is precisely the kind of legal conclusion that is not a proper subject of a request for admission.  RFAs Nos. 24 and 25 are compound in that they simultaneously ask Defendant to admit across multiple distinct categories of monetization and engagement expectations.  The substantive monetization information has been provided in amended Interrogatory No. 16, which identifies the Scentbird sponsorship for Episode 101, Google AdSense, Audioboom ad revenue, and Patreon income.  These objections and qualifications are proper under Rule 36(a)(4).

### 7.   *RFAs Nos. 27–30 and 41–48 (Compound and Legal Conclusions).*

RFAs 28–30 ask whether Defendant "communicated with" named individuals "before publishing the Do We Know Them episode(s) that discussed Plaintiffs."  The use of the plural "episode(s)" without specification, combined with the term "communicated" across all platforms, requires Defendant to evaluate contacts with multiple individuals across multiple platforms in connection with multiple episodes simultaneously.  RFAs 41–48 ask Defendant to admit to the legal conclusions of civil conspiracy, coordinated defamation, foreseeable harassment, and substantial causation — each a core element of the claims at issue.  Courts do not permit RFAs to extract admissions of the ultimate legal conclusions the requesting party is obligated to prove at trial.  These objections stand, and the denials are proper.  Fed. R. Civ. P. 36(a)(4).

**B.**   **Defendant's Interrogatory Responses Are Substantive and Complete.**

5

### 1. The Operative Responses Are the November 7, 2025 Amended Responses.

Braun's Motion largely attacks Defendant's original interrogatory responses while ignoring the comprehensive amended responses served on November 7, 2025. The amended responses provide specific Bates citations throughout: Interrogatory No. 3 cites LM01083 and LM00338; Interrogatory No. 8 cites LM00002–LM00166, LM00187–LM00209, and LM00593–LM00596; Interrogatory No. 9 cites LM00169–LM00171, LM00210–LM00224, and LM00339–LM00418; Interrogatory No. 10 cites LM00419–LM00604; Interrogatory No. 11 cites LM000763–LM00867; and Interrogatory No. 15 cites LM00038. Braun, of course, does not attach Marston's responses to her Motion so the Court can view the actual responses and not just her characterization.

Rule 33(d) is satisfied when a party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them," and the Seventh Circuit has confirmed that the level of specificity required "depends on a number of factors, including the amount of discovery exchanged." *Bobby Johnson, Jr. v. Hix Wrecker Serv., Inc.*, 528 F. App'x 636, 640 (7th Cir. 2013). The specific Bates citations in the amended responses satisfy this standard. The premise that Defendant's Rule 33(d) references are generalized or non-specific is simply incorrect as to the operative amended responses.

### 2. Interrogatory No. 1 (Account Identification / Safety Concerns).

Defendant identified all of her social media and messaging accounts — TikTok, YouTube, Reddit, X/Twitter, Instagram, and Facebook, with specific platform URLs — and withheld only her personal email address and telephone number based on documented, objectively reasonable safety concerns arising from a pattern of harassment tied to this litigation. This is a narrow, justified withholding. If Braun requires these narrow identifiers, the appropriate mechanism is a protective order designating them "attorneys' eyes only," not a compulsion order. *See* Fed. R. Civ. P. 26(c).

6

### 3. Interrogatories Nos. 6 and 7 (Narrative Responses Are Adequate).

Defendant's amended Interrogatory No. 7 identifies four specific research and fact-checking activities performed before publication, each with a description of the materials reviewed and a corresponding Bates citation. *See* LM000671–LM000701; LM00247–LM00323; LM00309; LM00002–LM00019 and LM01050–LM01066. Interrogatory No. 6 cross-references Interrogatory No. 20, which is a twelve-page factual narrative addressing the perjury basis in detail. Rule 33(b)(3) requires complete and responsive answers. These responses satisfy that standard.

### 4. Interrogatories Nos. 8–11 and 15 (Rule 33(d) With Specific Bates Ranges).

Each of these responses identifies specific Bates ranges from which the requested information can be derived. This level of specificity satisfies the requirements of *In re Sulfuric Acid*, 231 F.R.D. at 325. The volume of documents identified in each Bates range confirms the proportionality of the Rule 33(d) approach; it does not indicate a deficiency.

### 5. Interrogatory No. 13 (Third-Party Information Sources).

Defendant's amended response to Interrogatory No. 13 spans seven pages and provides granular, named-source detail about every individual who furnished information to Defendant. For each source (*i.e.,* Bekah Day, Christin Williams, Kodye Elyse, Kaitlyn Shoemaker, Chelsea Suarez, and Erica Fisk) the response identifies the specific content received, the platform on which it was received, the dates involved, a description of each item, corresponding Bates citations, and whether and how the information was used. This response is a model of Rule 33(b)(3) compliance.

### 6. Interrogatory No. 14 (Temporary Privatization vs. Deletion).

Braun suggests that Interrogatory No. 14's description of content being "made private" is inconsistent with RFA No. 33's denial that Defendant deleted or removed any post. These responses are entirely consistent. Interrogatory No. 14 explains that Episode 86 was temporarily set to private, preserving the content entirely, as a precautionary

response to YouTube's three-strikes policy while two active strikes were pending. The episode was restored to public status as soon as the strikes were resolved. Temporary privatization is a native platform setting that preserves content without alteration; it is categorically different from deletion or removal.

### 7. *Interrogatories Nos. 17 and 18 (ESI Preservation).*

Defendant's amended responses confirm that all ESI from October 1, 2023 to the present exists in accessible form on the respective devices and platforms, that no data has been deleted, and that Defendant recently exported this data for production purposes. The expiration of Instagram Stories after 24 hours occurs automatically under the platform's default policy and does not constitute a failure to preserve by Defendant. A party is not required to override a third-party platform's default settings to preserve ephemeral content absent a specific preservation obligation and the technical ability to do so. Fed. R. Civ. P. 37(e) requires only that a party take "reasonable steps" to preserve, not that she defeat automatic platform expiration mechanisms.

### 8. *Interrogatory No. 20 (Perjury Factual Basis).*

Defendant's amended response to Interrogatory No. 20 spans twelve pages. It identifies the specific DMCA takedown requests Ms. Braun submitted and the specific timecodes she certified under penalty of perjury, including the inaccurate timecode of 0:22:40 to 1:24:08; the specific YouTube communications showing Ms. Braun's escalating misrepresentations after YouTube declined her requests on fair use grounds; her specific citation to *Campbell v. Acuff-Rose* in support of positions the Copyright Claims Board later characterized as "preposterous," "strange," and "meaningless"; the CCB's seven-page final determination; and documentary Bates citations throughout. *See* LM00671–LM00701; LM00899–LM00987; LM01017; LM01029–LM01032; LM01037–LM01049; LM01072; LM01078–LM01083; LM01084. Any claim that this response is deficient lacks a factual foundation.

**C.** **Defendant's RFP Responses Are Consistent with Rule 34 and Seventh Circuit Standards.**

*1.* *"Subject to and Without Waiving" Language / Rule 34(b)(2)(C).*

To the extent Rule 34(b)(2)(C) requires an affirmative statement whether materials are being withheld on the basis of each objection, Defendant notes: (a) her responses in many instances confirm the non-existence of responsive documents; (b) where she stated she "will produce," that production occurred and no responsive non-privileged material is withheld beyond the stated format and scope objections; and (c) Braun's own discovery responses in this action employ identical formulations, rendering her complaint an exercise in selective enforcement.

*2.* *Reddit RFPs (Nos. 5–8) — Non-Existence Is Not a Deficiency.*

Defendant does not operate any Reddit accounts that have ever engaged in activity related to Plaintiffs or this lawsuit. The fact that Defendant received screenshots and screen recordings through Instagram DMs and email, as exhaustively detailed in Interrogatory No. 13, does not imply Reddit activity. Defendant's signed discovery responses confirm the absence of Reddit accounts and the search that supports that conclusion. Fed. R. Civ. P. 26(g)(1).

*3.* *Temporal Limitation (Pre-Filing) on RFPs 28–31.*

Defendant's limitation of productions in RFPs 28–31 to pre-filing communications is not arbitrary. Post-filing direct communications between Defendant and her co-defendants are privileged to the extent they involve counsel in a coordinated defense, and all such communications are post-filing. A full production of non-privileged pre-filing communications has been made.

*4.* *Scope Limitation to "Relevant to the Podcast at Issue."*

Defendant's subject-matter limitation is a proportional application of Rule 26(b)(1)'s requirement that discovery be "proportional to the needs of the case." The operative complaint centers on specific podcast episodes and a specific tweet. A demand

9

for all materials across all of Defendant's social media accounts, across all subject matters, with no connection to the claims at issue, is neither proportional nor required. *Motorola Sols., Inc. v. Hytera Communs. Corp*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) *("Under Rule 26, the discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.")* Defendant has produced all materials relating to the podcast episodes and statements at issue in Plaintiffs' claims.

### 5.  *Equally Available Public Content (RFPs 11, 12, 19).*

Defendant's equally available objection is applied only to content that is publicly accessible on Defendant's own platforms, not to non-public content such as DMs, private communications, or analytics data.  Requiring Defendant to screenshot and produce content that Plaintiffs can access directly from any browser is disproportionate.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Defendant's Interrogatory No. 1 response identifies each public-facing account by platform and URL.  While public availability does not categorically excuse production in all circumstances, issues of burden and proportionality must be considered in each case.  *Cty. of Cook v. Bank of Am. Corp.*, No. 14 C 2280, 2019 U.S. Dist. LEXIS 203931, at *12 (N.D. Ill. Nov. 25, 2019) (the fact that documents are publicly available "is not necessarily a valid reason in and of itself for a party not to produce discoverable documents," but "issues of burden and proportionality must be considered" in each case).

### 6.  *Excerpt Productions vs. Full Threads (RFPs 9, 13, 28–31).*

Where a communication thread contains a combination of responsive material and wholly unrelated private conversations, Rule 34 does not require production of the non-responsive content.  Defendant has produced responsive excerpts in a reasonably usable form with sufficient surrounding context.  Rule 34 governs the production of existing

documents; it does not obligate a party to create or compile new compilations in response to requests that seek documents already produced in the format in which they are maintained. *See Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). Defendant's production is complete.

### 7. *Responses Stating "No Documents Exist."*

For each request where Defendant responded that no responsive documents exist, that statement was made following a diligent search supervised by counsel in compliance with Rule 26(g)(1)'s reasonable inquiry standard. Defendant's counsel participated in the review and production process, and Defendant's responses identify the custodians, the accounts at issue, the general categories of sources searched, and the preservation steps taken. A conclusory challenge to a verified "no documents exist" response cannot substitute for the factual showing needed to compel further production.

### D. The ESI and Collection Arguments Are Without Merit.

This is a defamation case arising from a defined set of social media posts by an individual content creator, not a large-scale commercial dispute requiring terabytes of corporate email. Defendant's amended interrogatory responses identify the specific data sources, Bates ranges covering all collected materials, and the preservation steps taken. Counsel supervised the collection process and certified the responses accordingly in compliance with Rule 26(g). No relevant data was deleted.

The parties' Joint Rule 26(f) Report did not contemplate the engagement of an ESI vendor, and imposing that obligation months after discovery has closed is inconsistent with the proportionality principles this Court and the Seventh Circuit consistently apply. *See* N.D. Ill. Standing Order on ESI, Principles 2.05–2.06; *Motorola Sols.*, 365 F. Supp. 3d at 924 ("An assessment of proportionality is essential"). The expiration of Instagram Stories occurs automatically under the platform's default policy and does not constitute a failure to preserve. Fed. R. Civ. P. 37(e) requires only "reasonable steps" to preserve, not that Defendant defeat automatic platform expiration mechanisms.

11

Braun's demands for universal native format, comprehensive JSON/CSV metadata, full message-thread reconstruction, and deletion and change logs exceed what Rules 26(b)(1) and 34(b)(2)(E) require. The Northern District's Standing Order confirms that metadata is not automatically required absent a specific showing of need. N.D. Ill. Standing Order on ESI, Principle 2.04(d). The parties' Joint Report did not address native format production, no ESI protocol has been entered, and Braun did not produce her own discovery in native format. *See* N.D. Ill. Standing Order on ESI, Principles 2.05–2.06.

### E. The Privilege Log Dispute Is Without Merit.

Defendant's position is consistent with this District's practice: post-filing communications with counsel need not be logged absent a specific showing of good cause. Defendant has produced all responsive non-privileged pre-litigation materials. Moreover, Plaintiffs are in no position to demand a privilege log from Defendant. Plaintiffs produced a wholly deficient privilege log in this action that is currently the subject of a pending motion to compel. A party that has failed to satisfy its own privilege log obligations cannot demand strict compliance from the opposing party. Defendant's position on this issue stands.

## IV. CONCLUSION

For the foregoing reasons, Defendant Lily Marston respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety and grant the additional relief set forth in Section II above. Braun failed to conduct the meet and confer that Local Rule 37.2 requires. She filed the Motion five months after the written discovery cutoff with no justification for the delay, and she did so the day after receiving a detailed, substantive response to her deficiency letter, having never once scheduled a telephone or video conference with Defendant's counsel. Independently, the Motion and substantial portions thereof are subject to being stricken because Braun submitted AI-generated content to this Court without any meaningful prefiling review, submitting at least one non-existent citation in the process. On the merits, Defendant's responses are legally adequate.

12

Defendant further requests that the Court award such other and further relief as it deems just and proper, including the costs of opposing this Motion.

Dated: April 28, 2026

*s/     Brandon J. Witkow*
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
Cory A. Baskin
WITKOW | BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Jeanette Braun
1600 W. Lake Street
Suite 103B
Addison, IL 60101
jmbraun@brauniplaw.com

***Attorney for Plaintiffs***

Dated: April 28, 2026         /s/ *Brandon J. Witkow*
               Brandon J. Witkow

14