## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JEANETTE BRAUN, & | ) | |
| BRAUN IP LAW, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23 C 16856 |
| | ) | |
| v. | ) | Hon. J. Mary Rowland |
| | ) | |
| REBEKAH M. DAY NEE BOXX, & | ) | Mag. J. M. David Weisman |
| LILY MARSTON, | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER & HIPAA

## PROTECTIVE ORDER

The Parties, by and through undersigned counsel, respectfully move the Court for entry of a Protective Order submitted as Exhibit A, and the HIPAA Protective Order, attached as Exhibit B, herewith, following the Court's decision on the issues below. The parties have conferred in good faith and have reached agreement on the substantial majority of the terms governing the proposed protective orders. Two discrete issues remain in dispute.

First, the parties disagree as to whether an Attorneys' Eyes Only ("AEO") designation is appropriate, such as for documents and information concerning Plaintiffs' PHI, mental health, emotional distress, and reputation-repair vendor information.

Second, the parties disagree as to whether Section 7.3 of the HIPAA Protective Order — which provides that "[n]o disclosure or designation under this Order shall be construed as a waiver of the psychotherapist-patient privilege, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, or any other applicable privilege, statutory protection, or right to object" — should be included in light of Plaintiffs' claim for emotional distress damages.

Each party presents its position on the disputed provisions below and requests that the Court

1

enter an order resolving: (1) whether an AEO designation tier is appropriate for the categories of materials identified above; and (2) whether Section 7.3 of the HIPAA Protective Order should be included or stricken.

**PLAINTIFFS' POSITION:**

**AEO: Plaintiffs Have Good Cause for AEO**

During the hearing on April 30, 2026, the Court told the Parties would allow a Protective Order and a HIPAA Order to be submitted in the present matter.  The Parties are presently in dispute as to whether certain categories of highly sensitive discovery materials should be designated Attorneys' Eyes Only ("AEO"), and if Section 7.3 of the HIPAA Order should be removed.

Plaintiffs seek entry of the proposed Protective Order under Fed. R. Civ. P. 26(c) and the Court's inherent authority. Good cause exists for entry of the order because discovery in this action will include at the least sensitive personal, mental-health, and trade secret information. Particularly, the names of the vendors Plaintiffs may or will use to repair their reputation would be suppliers of Plaintiffs and a trade secret under the Illinois Trade Secret Act. The Parties further request that the Court resolve the disputed provisions identified above.

Rule 26(c) permits the Court, for good cause, to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The Seventh Circuit requires an independent, particularized good-cause determination based on the actual risks shown in the record. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999). Protective orders may also limit dissemination of discovery materials in the pretrial discovery context where good cause exists. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

Here, good cause exists because discovery will include sensitive information concerning Plaintiffs' emotional-distress allegations, including therapy, counseling, treatment-related, and other nonpublic personal information, as well as identifying information for reputation-repair suppliers (trade secret). Disclosing that information without an AEO designation may destroy the trade secret. Further, the Court may reasonably conclude that disclosure of such information to the Parties themselves would create a risk of misuse, unnecessary dissemination, or public airing outside the litigation. AEO designation is therefore appropriate where needed to prevent those harms and to preserve the confidentiality of especially sensitive discovery. These materials present a concrete risk of misuse if disclosed directly to Defendants, who have coordinated with other content creators to amplify their litigation narrative. That pattern creates a substantial risk that sensitive discovery will be republished, weaponized, or used to harass, intimidate, or interfere with third parties. A standard confidentiality designation is insufficient to prevent that harm because it does not restrict party-level access. The requested AEO provision is therefore necessary, reasonable, and narrowly tailored to protect against harassment, improper dissemination, and destruction of trade secret information while preserving full discovery for counsel and necessary litigation personnel.

In addition, on April 29, 2026, Defendants represented to the Court that they searched by three cases cited by Plaintiffs in her Motion to Compel by case name and could not locate those cases, arguing that Plaintiffs cited AI hallucinated cases, and Defense counsel reiterated that position at least twice at the April 30, 2026 hearing. Defendants' misrepresentation of facts resulted in this Court issuing a Rule to Show Cause against Plaintiffs for citing non-existent cases when those cases exist. Plaintiffs contend those authorities exist and can be located through standard legal research tools by case name. Plaintiffs will fully address this issue in in detail their

response to the Court's Rule to Show Cause that will be filed in the future. See Exhibit C for a Westlaw Search for the case names that shows the cases appear in search results for the case names. They are not AI hallucinated and Defendants' near certification that the case names did not appear in any legal database is patently false. Looking at the totality of the circumstances, including Defendants' counsel's misrepresentation of fact, Defendants' propensity for posting online, and Plaintiffs having to reveal trade secret information, the record supports Plaintiffs' concern that ordinary confidentiality protections are insufficient, will not be followed, and that a narrowly tailored AEO restriction is warranted for the limited categories of materials identified above. The record reflects a risk of noncompliance and public dissemination sufficient to justify limited AEO protection.

The Illinois Trade Secrets Act defines "trade secret" to include, among other things, a "list of actual or potential customers or suppliers," if the information is sufficiently secret to derive economic value from not being generally known and is subject to reasonable efforts to maintain secrecy. 765 ILCS 1065/2(d). Plaintiffs are working here to maintain that secrecy by requesting AEO status on such information.

The requested AEO protection is not a categorical or blanket restriction. Rather, it is a response to the nature of the information and the risks special to these Defendants. The Seventh Circuit in *Citizens First* rejected confidentiality provisions that lacked a meaningful judicial review of good cause. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999). Plaintiffs do not seek such a blanket designation. Instead, they seek an AEO provision for materials that raise a concrete risk of public dissemination, reputational harm, destruction of a trade secret, or other misuse if disclosed directly to the Defendants.

The Supreme Court's decision in *Seattle Times* supports that result. In that case, the Court

upheld a protective order limiting dissemination of discovery materials where the order was supported by good cause and confined to pretrial discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). The Court explained that discovery can reveal sensitive information and that protective orders may be used to prevent abuse of the discovery process. *Id.* at 34–37. That reasoning applies here, where the information at issue is nonpublic and sensitive and where the record reflects a risk of further dissemination outside the litigation.

Plaintiffs respectfully submit that the requested Attorneys' Eyes Only ("AEO") designation is not an extraordinary remedy here; it is the least restrictive means of preventing foreseeable misuse of highly sensitive discovery and for protecting Plaintiffs' trade secrets. Fed. R. Civ. P. 26(c)(1) authorizes a protective order, for good cause, to prevent "annoyance, embarrassment, oppression, or undue burden or expense." The Seventh Circuit has made clear that Rule 26(c) requires a particularized good-cause determination based on the actual risks presented by the record, not a categorical rule limiting heightened confidentiality to trade-secret disputes. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945-46 (7th Cir. 1999).

That standard is satisfied here. The materials at issue are not ordinary business documents, and the concern is a competitive injury. Further, Plaintiffs seek protection because the record shows a concrete risk that nonpublic discovery will be used for public dissemination, online harassment, reputational harm, and intimidation. Plaintiffs have already described that pattern in their Motion to Strike and Plaintiffs' Status Report [Dkt. 123 and 125]. The concern is not speculative: Plaintiffs have already had vendors of legal services not want to take on this matter because of the social media posts of Defendants and who they collaborate with. On these facts, an AEO restriction is well within the Court's discretion under Rule 26(c).

The Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)

supports that result. There, the Court upheld a protective order limiting dissemination of discovery materials where the order was supported by good cause and was confined to pretrial discovery. The Court emphasized that discovery can reveal sensitive information that, if publicly disseminated, may cause "annoyance, embarrassment, and even oppression," and it recognized the judiciary's substantial interest in preventing abuse of the discovery process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-37 (1984).

That is precisely the concern here. In *Seattle Times*, the discovery sought involved the respondent's financial and membership information, and the Court accepted that the prospect of disclosure justified protection because publication could cause noncompensable reputational and privacy harms. Plaintiffs' concern is analogous, but in some respects more acute: the discovery here concerns sensitive emotional-distress materials, therapy-related information, and other nonpublic material that could be selectively disclosed or weaponized on social media. The risk is not merely embarrassment in the abstract; it is a documented possibility of public reposting, harassment, and use of litigation materials to fuel an online campaign against Plaintiffs. That is exactly the kind of abuse of discovery that Rule 26(c) is designed to prevent.

Defendants' may rely on *Team Play, Inc. v. Boyer*, and that reliance may be overstated to the extent they suggest AEO protection is limited to trade-secret or business-competition disputes. No. 03 C 7240, 2005 WL 256476 (N.D. Ill. Jan. 31, 2005). However, in *Team Play*, the court recognized that heightened confidentiality may be warranted where disclosure presents a genuine threat of competitive or other injury. *Id.* The present case also involves trade secret information, along with different kinds of sensitive information, and the same Rule 26(c) inquiry applies: whether the circumstances shown in the record establish good cause for heightened protection.

The case for AEO is stronger still because Plaintiffs' concern is not simply that Defendants

may disclose information inadvertently. Plaintiffs contend that Defendants have repeatedly failed to comply with this Court's Orders, have made inaccurate representations to the Court, and have used litigation-related information in ways that support public amplification rather than restrained litigation use. Plaintiffs have set out those concerns in their Motion to Strike [Dkt. 123], including Defendants' repeated failure to follow joint-filing directives and their misleading presentation of the parties' communications. Those facts bear directly on good cause because they show that ordinary confidentiality protections are inadequate. A protective order that merely labels material "confidential" but allows unrestricted party access does not address the risk that a party will use the material to disseminate, publicize, or weaponize it outside the litigation.

In short, Plaintiffs are not asking the Court to adopt a generalized distrust of Defendants. They are asking the Court to make the particularized good-cause finding required by Rule 26(c) based on the actual record before it. That record shows a non-speculative risk of public dissemination, harassment, and misuse. [Dkt. Nos. 123 and 125.]  Under *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins*. Co., 178 F.3d 943 (7th Cir. 1999), and *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Court may and should enter an AEO restriction to protect these limited categories of materials.

**QUALIFIED PROTECTIVE ORDER SECTION 7.3**

Section 7.3 states:

No disclosure or designation under this Order shall be construed as a waiver of the psychotherapist-patient privilege, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, or any other applicable privilege, statutory protection, or right to object.

The provision should remain in the Order because it is accurate, limited, and protective of the Parties' existing rights. It does not create any new privilege, expand any discovery right, or alter the scope of the Parties' substantive obligations. It simply confirms that production or

7

disclosure under the Protective Order does not waive privileges or confidentiality protections that already exist by law.

Section 7.3 is Consistent with Federal and Illinois Law. Federal courts applying federal common law of privilege recognize that state confidentiality protections may be relevant, particularly where they do not conflict with federal substantive or procedural policy. See *Jaffee v. Redmond*, 518 U.S. 1 (1996); *Memorial Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058 (7th Cir. 1981). The psychotherapist-patient privilege is recognized under federal common law. *Jaffee v. Redmond*, 518 U.S. 1 (1996). Illinois also protects mental-health records and communications under the Illinois Mental Health and Developmental Disabilities Confidentiality Act. 740 ILCS 110/1 et seq. Section 7.3 simply preserves those protections.

The Illinois Act contains a narrow waiver provision in certain civil cases when the patient's mental or physical condition is placed at issue. 740 ILCS 110/10(a)(2). Section 7.3 does not alter that statute. It merely confirms that nothing in the Order itself will be treated as an independent waiver.

Section 7.3 Does Not Expand Discovery or Prejudice Defendants. Section 7.3 is not a discovery device. It does not require production of privileged material, nor does it prevent the Parties from objecting to discovery on privilege grounds. It is a standard savings clause that avoids unintended waiver arguments later in the case. Protective orders often coexist with privilege protections. The Court may enter a confidentiality order without deciding every privilege issue in advance. Section 7.3 preserves that structure by making clear that:

1)      the Order governs use and disclosure of material that is produced;

2)      the Order does not compel production of privileged material; and

3)   the Order does not waive rights the Parties would otherwise have under privilege law.

8

Retaining Section 7.3 promotes clarity and ensures that the Order does not inadvertently affect psychotherapist-patient privilege, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, or other applicable protections.

Fed. R. Civ. P. 26(c)(1) authorizes the Court, for good cause shown, to issue an order protecting a party or person from annoyance, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The Seventh Circuit requires a particularized showing of good cause and independent judicial review of confidentiality restrictions. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999). The Supreme Court has likewise recognized that protective orders may be used to prevent abuse of the discovery process and protect privacy interests in pretrial discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Section 7.3 is consistent with those principles because it preserves existing privilege and confidentiality rights without unduly restricting discovery.

Plaintiffs disagree with Defendants' characterization of Section 7.3 below. The provision does not ask the Court to apply the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("MHDDCA") as the governing privilege law in this federal-question case, nor does it seek to bar otherwise proper discovery. Rather, Section 7.3 is a standard non-waiver clause that makes clear that production pursuant to this Protective Order shall not be construed as a waiver of any applicable privilege, immunity, objection, or confidentiality protection, including the psychotherapist-patient privilege and any applicable state confidentiality statute. That is consistent with Federal Rule of Evidence 501 and Federal Rule of Civil Procedure 26(c), which permit this Court to manage discovery and protect sensitive materials without deciding privilege issues in the abstract. See Fed. R. Evid. 501; Fed. R. Civ. P. 26(c); *Jaffee v. Redmond*, 518 U.S. 1 (1996); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

9

Defendants remain free to argue that Plaintiffs' emotional-distress damages place certain mental-health records at issue under federal common law. Plaintiffs remain free to contest relevance, proportionality, scope, waiver, confidentiality, and the conditions of any production. Section 7.3 merely prevents the Protective Order itself from being treated as an independent waiver. It does not transform any privilege into an absolute shield, and it does not restrict Defendants from seeking discovery the Federal Rules otherwise permit. Plaintiffs would be willing to amend paragraph 7.3 to read as follows:

> 7.3 Privilege and Statutory Protections Not Waived by This Order. Nothing in this Order, and no disclosure, production, or designation made pursuant to this Order, shall by itself be construed as a waiver of the psychotherapist-patient privilege, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, attorney-client privilege, work-product protection, HIPAA-related confidentiality requirements, to the extent applicable, or any other applicable privilege, statutory protection, confidentiality protection, privacy right, or right to object. Nothing in this paragraph shall preclude any party from arguing that a privilege or protection has been waived by a claim, defense, pleading, discovery response, testimony, or intended use of evidence, nor shall it preclude any party from seeking discovery of materials allegedly placed at issue. Any dispute regarding waiver, scope of waiver, relevance, proportionality, confidentiality, or production shall be resolved under applicable law on a specific record.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Qualified Protective Order, including Section 7.3.

## DEFENDANTS' POSITION[1]

### I.      The AEO Designation Is Not Warranted

An AEO designation is reserved for a "relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Team Play*

---

[1] Prior to the service of any written discovery by either party, Plaintiffs raised their perceived need for a protective order with the Court in the Joint Status Report [Dkt 79], and the Court addressed this issue in its August 18, 2025 Order [Dkt. No. 80]. In that Order, the Court instructed Plaintiffs to file any needed Motion for Protective Order *by September 5, 2025*, "after Plaintiffs review the discovery requests." (*Id.*) That deadline passed over *eight months ago,* yet this is the first time Plaintiff has filed a Motion for a Protective Order.

*Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005). The designating party bears the burden of demonstrating that even limited party-level disclosure creates an appreciable risk of harm; conclusory assertions do not suffice. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1087-1088 (N.D. Ill. 2015). Moreover, because an AEO designation "make[s] discovery and trial preparation significantly more difficult and expensive" by preventing counsel from making complete disclosure to the client, and "leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious," the designation must be used selectively. *Id.* Sweeping use of the AEO tier "can be a form of discovery abuse." *Team Play*, 2005 WL 256476, at *1.

The existing Confidential designation already forecloses the harms Plaintiffs identify. Section 5(b) of the Protective Order expressly prohibits the parties and their counsel from disclosing any Confidential Information to any third person or entity outside the Court, court personnel, the parties, and their retained experts and employees. Every risk Plaintiffs have articulated, social media republication, third-party vendor harassment, public dissemination of mental health records, is categorically barred by that provision regardless of whether the documents carry a Confidential or AEO designation. Plaintiffs have not identified a single disclosure pathway that Section 5(b) permits but an AEO designation would close.

Neither of Plaintiffs' proposed AEO categories falls within the recognized grounds for AEO treatment in this District. The established categories -- trade secrets, competitively sensitive business information, customer lists and data, and corporate transactional and strategic information -- are rooted in the risk of commercial harm to a party-competitor. *See Team Play*, 2005 WL 256476, at *1. Emotional-distress materials and reputation-repair vendor identities bear no relationship to that framework. As for vendor identities specifically, Plaintiffs' concern that Defendants may harass or

11

negatively review those vendors if their names are disclosed is speculative conduct-based fear and, in any event, is addressed by Section 5(b)'s categorical bar on third-party disclosure. Plaintiffs have cited no case authority supporting AEO treatment for either category.

Finally, Plaintiffs' suggestion that over-designation disputes can be resolved document-by-document through meet-and-confer is not a workable solution. Given the parties discovery disputes thus far (as this Court is well aware), with no limiting principle governing Plaintiffs' designations and no supporting legal authority for the categories they have proposed, serial AEO challenges will require repeated motion practice before this Court, an outcome neither party should seek and one that this Court need not permit. Defendants respectfully request that the Court enter the Protective Order without an AEO tier.

## II.      The Proposed HIPAA Order Non-Waiver Provision Should Be Stricken

The proposed HIPAA Protective Order contains the following provision at section 7.3: "No disclosure or designation under this Order shall be construed as a waiver of the psychotherapist-patient privilege, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, or any other applicable privilege, statutory protection, or right to object." Defendants object to this language as contrary to controlling Seventh Circuit authority and improper as a matter of discovery law.

The psychotherapist-patient privilege is not absolute. The Seventh Circuit has held that "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006). Courts in this District apply that rule consistently: "a party may surrender the psychotherapist-patient privilege by affirmatively placing his or her psychological state at issue in the suit," including by "seeking damages for emotional distress." *Kronenberg v. Baker & McKenzie*

*LLP*, 747 F. Supp. 2d 983, 988 (N.D. Ill. 2010). The animating principle is one of basic fairness —

a party who "asserts a claim as a sword should not also be permitted to assert a privilege as a shield

to deflect questions regarding the claim." *EEOC v. Area Erectors, Inc.*, 247 F.R.D. 549, 552 (N.D.

Ill. 2007).

Plaintiffs have placed their psychological state at issue in the most direct manner available

by seeking compensatory damages for emotional distress. Under *Oberweis Dairy* and *Kronenberg*,

that election operates as a waiver of the psychotherapist-patient privilege with respect to records

bearing on the nature, extent, and causation of those claimed damages. The scope of that waiver is

not narrow: once waiver is established, it "opens the door to discovery of alternate causes of

claimants' emotional distress," not merely records favorable to Plaintiffs' theory. *EEOC v. Area*

*Erectors*, 247 F.R.D. at 553. A protective order provision declaring that no designation constitutes

a waiver directly conflicts with this framework by purporting to convert a qualified, waivable

privilege into an absolute shield. Left in place, that provision will almost certainly be invoked by

Plaintiffs to refuse identification of their treating physicians and therapists and to withhold the

underlying treatment records entirely, frustrating Defendants' ability to discover, evaluate, and rebut

the claimed emotional distress damages and, in all likelihood, generating the precise motion practice

over privilege objections that a limited protective order should foreclose rather than invite.[2]

Rule 26(c) authorizes the Court to regulate the conditions and manner of disclosure in

discovery; it does not authorize a protective order to extinguish substantive discovery rights that

controlling circuit authority has already established. To the extent Plaintiffs have legitimate concerns

---

[2] The MHDDCA citation in the proposed provision does not change the analysis. Because this action arises under federal law, privilege questions are governed by federal common law, not Illinois state privilege statutes. *Fed. R. Evid.* 501; *EEOC v. Area Erectors*, 247 F.R.D. at 551. State privilege law applies in federal court only where doing so would impose no "substantial cost to federal substantive and procedural policy." *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). Permitting a plaintiff to invoke the MHDDCA to block discovery into emotional distress records she has placed at issue imposes precisely that cost and is inconsistent with *Oberweis Dairy*.

about the handling of sensitive mental health records, those interests are protected by the HIPAA Order's existing confidentiality framework and Section 5(b)'s prohibition on third-party disclosure.

Defendants request that the Court strike the non-waiver provision or, alternatively, modify it to confirm that nothing in the Order limits Defendants' right to seek discovery of mental health records and PHI placed at issue through Plaintiffs' emotional distress claim.

Respectfully submitted,

May 6, 2026

*/s/* Jeanette M. Braun
Attorney for Plaintiffs

Jeanette M. Braun [pro hac vice]
Braun IP Law, LLC
1600 W. Lake Street, Suite 103B
Addison, IL 60101
(312) 373-0330
docket@brauniplaw.com

*Attorneys for Plaintiffs*

/s/ Brandon J. Witkow
Attorney for Defendants

Brandon J. Witkow [pro hac vice]
Cory A. Baskin
WITKOW │ BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com

*Attorneys for Defendants*

14

15

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on all counsel of record noted below via the CM/ECF system of the United States District Court of the Northern District of Illinois.

Amy M. Doig
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900
adoig@cozen.com

Brandon J. Witkow
Cory A. Baskin
WITKOW│BASKIN
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
(818) 296-9508
bw@witkowlaw.com
cb@witkowlaw.com

Dated: May 6, 2026                                        /s/ Jeanette M. Braun

15